CARTER LEDYARD & MILBURN, LLP
James Gadsden (JG 4990)
Gerald W. Griffin (GG 2778)
Two Wall Street
New York, New York 10005
(212) 732-3200



Attorneys for Plaintiff, The Bank of New York, as Indenture Trustee

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE BANK OF NEW YORK, as Indenture Trustee<br><br>Plaintiff,<br><br>– against –<br><br>TYCO INTERNATIONAL GROUP, S.A., and TYCO INTERNATIONAL, LTD<br><br>Defendants. | Action<br>No.<br><br>**07 CIV 4659**<br><br>COMPLAINT |

Plaintiff, The Bank of New York, as Indenture Trustee (the "Trustee")

under the Indentures dated as of June 9, 1998 and November 12, 2003 (the "Indentures"),

by its attorneys, Carter Ledyard & Milburn LLP, for its complaint against defendants

Tyco International Group, S.A. ("TIGSA") and Tyco International Ltd. ("Tyco

International"; collectively, the "Company"), alleges as follows:

<u>NATURE OF THE ACTION</u>

1.  There is an existing dispute concerning the demand by the Company

that the Trustee execute the Proposed Supplements (as hereinafter defined) to the

Indentures to facilitate the Proposed Separation (as hereafter defined) of the Company's

businesses.

2.  The Trustee brings this action seeking a declaratory judgment to

determine whether execution of the Proposed Supplements is permitted or authorized by

1

6189994.1

the Indentures. The Company has demanded that the Trustee execute the Proposed Supplements. Trustee has received a direction from the holders of a majority of the Notes under each of the Indentures directing it not to do so. The Noteholders assert that the Proposed Separation would violate the successor obligor covenant of each Indenture because, giving effect to all of the transactions included in the Proposed Separation, no successor obligor will hold substantially all of TIGSA's assets.

3. The Trustee also seeks a judgment declaring that TIGSA is liable to pay and reimburse the Trustee all of its reasonable expenses incurred in resolving the proper construction of the Indentures, including attorneys' fees and expenses.

## THE PARTIES

4. The Bank of New York is a New York State chartered bank with trust powers with its principal place of business located at One Wall Street, New York, New York 10005.

5. Defendant Tyco International Group S.A. is a Luxembourg company with its principal place of business located at Boulevard Royal 26, Luxembourg, Luxembourg L-2449.

6. Defendant Tyco International, Ltd. is a Bermuda company with its principal place of business located at 90 Pitts Bay Road, Pembroke HM 08, Bermuda.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. Section 1332 based on diversity of the parties, and pursuant to 28 U.S.C. §§ 2201 and 2202 in that Plaintiff seeks a declaratory judgment.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

2

9.  Defendants consented to the jurisdiction and venue of this Court in the Indentures.  Section 10.8 of the 1998 Indenture and Section 13.04 of the 2003 Indenture each provide that any legal suit, action or proceeding based upon the Indenture shall be governed by New York law.  Section 10.9 of the 1998 Indenture and Section 13.13 of the 2003 Indenture each provide that each party to the Indentures irrevocably submits to the exclusive jurisdiction of the state and federal courts located in the City and State of New York.

### FACTUAL BACKGROUND

10. The Bank of New York is Indenture Trustee under the Indenture dated as of June 9, 1998 (the "1998 Indenture") with TIGSA as issuer and Tyco International as Guarantor pursuant to which the 6.125% Notes due 2008, the 6.125% Notes due 2009, the 6.75% Notes due 2011, the 6.375% Notes due 2011, the 7.0% Notes due 2028 and the 6.875% Notes due 2029 were issued.  Notes in the aggregate principal amount of $4,600,000,000 were issued under the 1998 Indenture. A true and correct copy of the 1998 Indenture is attached to this Complaint as Exhibit A.

11. The Bank of New York is Indenture Trustee under the Indenture dated as of November 12, 2003 (the "2003 Indenture") with TIGSA as issuer and Tyco International as Guarantor pursuant to which the 6.0% Notes due 2013 were issued. Notes in the aggregate principal amount of $1,000,000,000 were issued under the 2003 Indenture. A true and correct copy of the 2003 Indenture is attached to this Complaint as Exhibit B.

12. Each of the Indentures prohibits each of TIGSA and Tyco International from disposing of all or substantially all of its assets unless the person

3

acquiring all or substantially all of the assets of the company assume the liabilities of the company under the Indentures (1998 Indenture Art. 8; Ex. A., pp. 39-40; 2003 Indenture, Art. 10, Exhibit B, pp. 39-40).

13. As described in an Offer to Purchase and Consent Solicitation dated April 27, 2007 (the "Consent Solicitation"), the Company has announced its intent to engage in a series of transactions that effect a disposition of all of the assets of TIGSA in a manner that the Noteholders allege does not comport with the terms of the Indentures. A true and correct copy of the Consent Solicitation is attached to this Complaint as Exhibit C. The Tyco International board of directors approved a plan to implement the series of transactions, described as the "Proposed Separation" to separate the Company into three independent, publicly traded companies: one for Tyco's electronics business ("Tyco Electronics"), one for its healthcare businesses ("Covidien") with the third continuing its fire and security and engineered products and services business (the "Service Businesses") with the assets of the Service Businesses held by a newly organized subsidiary Tyco International Finance S.A. ("TIFSA"). The Company then proposes to dissolve TIGSA and distribute the shares of Tyco Electronics and Covidien to the shareholders of Tyco International. (Consent Solicitation, Exhibit C, p. 6).

14. The Noteholders assert that the effect of the Proposed Separation would be a disposition by TIGSA of all or substantially all of its assets other than to an entity that assumed the obligations under the Indentures since, after the distribution of the shares of Tyco Electronics and Covidien to its shareholders, Tyco International would not hold all or substantially all of the assets of TIGSA.

4

15. The Noteholders assert that they would be harmed by the Proposed Separation because the Tyco Electric and Covidien businesses, which the Company has represented to be approximately 53% of the value of the businesses presently owned by TIGSA, will be distributed to the shareholders of Tyco International through a distribution of the shares of those companies to Tyco International's shareholders. Those businesses will no longer be owned by the entities with continuing liability for the billions of dollars in principal amount of outstanding Notes.

16. Acknowledging at least the need to "clarify" whether the Proposed Separation transactions were permitted by the Indentures, the Company initiated a tender offer and consent solicitation under which it offered to purchase any or all of the outstanding Notes. It was a condition to the tender that the tendering Noteholders consent to amendments to the Indentures to "clarify" that the transactions to implement the Proposed Separation would not trigger a default under the Indentures (Consent Solicitation, Ex. C, pp. 9-10).

17. On May 9, 2007, Noteholders commenced an action in this court, seeking a declaratory judgment that the Proposed Separation (identified therein as the Proposed Liquidation Transaction) violated the successor obligor clauses of the Indentures and for other relief, AIG Global Investment Corp. v. Tyco International Group, S.A. 07-Civ.-03693-(SAS). That action was voluntary dismissed without prejudice on May 25, 2007.

18. The Company was informed that more than a majority of the Noteholders would not tender their Notes and consent to the amendments to the Indentures.

5

19. The Consent Solicitation expired without the Company obtaining the consent of the majority of the Noteholders under either Indenture necessary to approve the amendments which were the subject of the Consent Solicitation. On May 25, 2007, the Company announced that as of the expiration of the Consent Solicitation, 33.67% of the Notes outstanding under the 1998 Indenture and 34.39% of the Notes outstanding under the 2003 Indenture had tendered their securities and executed the consents sought by the Company.

20. On May 25, 2007, the Trustee received a direction executed by Noteholders holding more than 50% of the Notes under each of the Indentures (the "Majority Noteholders") directing it not to execute any supplement authorizing the Proposed Separation (identified therein as the Proposed Liquidation Transaction).

21. Despite the failure to obtain the consents necessary to amend the Indentures in the manner sought by the Consent Solicitation, the Company has proceeded to seek to implement the Proposed Separation through supplements to the Indentures.

22. On May 30, 2007, the Company tendered to the Trustee Supplement No. 21 to the 1998 Indenture and Supplement No. 2 to the 2003 Indenture, each dated as of May 31, 2007 (the "First Step Supplements"). True and correct copies of the First Step Supplements and the accompanying Officers' Certificates and Opinions of Counsel are attached to this Complaint as Exhibits D.

23. On May 31, 2007, the Company tendered to the Trustee Supplement No. 22 to the 1998 Indenture and Supplement No. 3 to the 2003 Indenture, each dated as of June 1, 2007 (the "Second Step Supplements; together with the First Step Supplements, the "Proposed Supplements"). True and correct copies of the Second Step

6

Supplements and the accompanying Officers' Certificates and Opinions of Counsel are attached to this Complaint as Exhibits E.

24. Pursuant to First Step Supplements, TIFSA, the subsidiary newly organized to hold the assets of the Services Businesses, is to become a co-obligor under the Indentures.

25. Pursuant to the Second Step Supplements, all of the assets of TIGSA are distributed to Tyco International and Tyco International assumes liability for the obligations under the Indenture.

26. The Company has informed the Trustee that it intends to proceed with the Proposed Separation, including the distribution of the stock of Tyco Electronics and Covidien to the shareholders of Tyco International upon the execution of the Proposed Supplements and has demanded that the Trustee execute the Proposed Supplements.

27. The Majority Noteholders have directed the Trustee not to execute the Proposed Supplements.

28. The Majority Noteholders assert that the Proposed Supplements are not permitted under the Indenture since they facilitate the Proposed Separation and, after the completion of the Proposed Separation, Tyco International will not hold all or substantially all of the assets of TIGSA.

<u>FIRST CAUSE OF ACTION</u>

(Declaratory Judgment)

29. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 28 hereof as though fully set forth herein.

7

30. Based on the foregoing, an actual controversy exists concerning the interpretation of the Indentures.  This dispute is suitable for resolution by the Court through the entry of a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

31. The Trustee is entitled a declaratory judgment determining whether or not the execution of the Proposed Supplements is permitted or authorized under the Indentures.

## SECOND CAUSE OF ACTION

### (Trustee's Fees and Expenses)

32. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 31 hereof as though fully set forth herein.

33.  Section of the 5.6 of the 1998 Indenture and Section 7.6 of the 2003 Indenture require TIGSA to pay the Trustee reasonable compensation and to pay and reimburse the Trustee for all reasonable expenses, including the fees and expenses of counsel and to indemnify the Trustee against liabilities incurred in connection to the administration of its duties under the Indentures.

34. The Trustee is entitled to a declaratory judgment that TIGSA is obligated to pay the Trustee reasonable compensation and to pay and reimburse the Trustee for all reasonable expenses, including the fees and expenses of its counsel incurred in connection with the steps taken by the Company to implement the Proposed Separation, including the fees and expenses of counsel incurred resolving the proper interpretation of the Indentures, including those incurred in connection with this action.

WHEREFORE, the Trustee respectfully request entry of judgment

(a)     determining whether  the execution of the Proposed Supplements is permitted or authorized by the Indentures;

8

61189994.1

(b)    declaring that TIGSA is liable to pay to the Trustee reasonable compensation and to pay and reimburse it for all of its reasonable expenses, including fees and expense of counsel incurred in connection with the steps taken by the Company to implement the proposed Separation, including the attorneys fees and expenses incurred in resolving the proper interpretation of the Indentures, including those incurred in connection with this action; and

(c)    granting the Trustee such other and further relief as may be just

and proper.

Dated:    New York, New York
          June 4, 2007

CARTER LEDYARD & MILBURN LLP

By:
James Gadsden (JG 4990)
Gerald W. Griffin (GG 2778)
Two Wall Street
New York, New York  10005
(212) 732-3200
Attorneys for The Bank of New York, as Indenture
Trustee

6189994.1

# EXHIBIT A

---

TYCO INTERNATIONAL GROUP S.A.,
as Issuer

AND

TYCO INTERNATIONAL LTD.,
as Guarantor

AND

THE BANK OF NEW YORK,
as Trustee

Indenture

Dated as of June 9, 1998

----------------

---

TABLE OF CONTENTS

|  | Page |
|---|---|
| ARTICLE ONE: DEFINITIONS | 1 |
| SECTION 1.1 Certain Terms Defined | 1 |
| ARTICLE TWO: SECURITIES | 7 |
| SECTION 2.1 Forms Generally | 7 |
| SECTION 2.2 Form of Guarantee | 7 |
| SECTION 2.3 Form of Trustee's Certificate of Authentication | 8 |
| SECTION 2.4 Amount Unlimited; Issuable in Series | 8 |
| SECTION 2.5 Authentication and Delivery of Securities | 9 |
| SECTION 2.6 Execution of Securities | 10 |
| SECTION 2.7 Certificate of Authentication | 11 |
| SECTION 2.8 Denomination and Date of Securities; Payments of Interest | 11 |
| SECTION 2.9 Registration, Transfer and Exchange | 11 |
| SECTION 2.10 Mutilated, Defaced, Destroyed, Lost and Stolen Securities | 12 |
| SECTION 2.11 Cancellation of Securities; Destruction Thereof | 13 |
| SECTION 2.12 Temporary Securities | 13 |
| SECTION 2.13 Securities Issuable in the Form of a Global Security | 14 |
| SECTION 2.14 CUSIP Numbers | 15 |
| ARTICLE THREE: COVENANTS OF THE ISSUER AND THE TRUSTEE | 15 |
| SECTION 3.1 Payment of Principal and Interest | 15 |
| SECTION 3.2 Offices for Payments, etc. | 16 |
| SECTION 3.3 Appointment to Fill a Vacancy in Office of Trustee | 16 |
| SECTION 3.4 Paying Agent | 16 |
| SECTION 3.5 Certificate of the Issuer and the Guarantors | 17 |
| SECTION 3.6 Securityholders Lists | 17 |
| SECTION 3.7 Reports by the Issuer and Tyco | 17 |
| SECTION 3.8 Reports by the Trustee | 17 |
| SECTION 3.9 Limitations on Liens | 17 |
| SECTION 3.10 Limitation on Sale and Lease-Back Transactions | 19 |
| SECTION 3.11 Limitation on Indebtedness of Subsidiaries | 20 |
| SECTION 3.12 Notice to Trustee | 21 |
| ARTICLE FOUR: REMEDIES OF THE TRUSTEE AND SECURITYHOLDERS ON EVENT OF DEFAULT | 21 |
| SECTION 4.1 Event of Default Defined; Acceleration of Maturity; Waiver of Default | 21 |
| SECTION 4.2 Collection of Indebtedness by Trustee; Trustee May Prove Debt | 24 |
| SECTION 4.3 Application of Proceeds | 25 |
| SECTION 4.4 Suits for Enforcement | 26 |
| SECTION 4.5 Restoration of Rights on Abandonment of Proceedings | 26 |
| SECTION 4.6 Limitations on Suits by Securityholders | 27 |
| SECTION 4.7 Unconditional Right of Securityholders to Institute Certain Suits | 27 |
| SECTION 4.8 Powers and Remedies Cumulative; Delay or Omission Not Waiver of Default | 27 |

Page

SECTION 4.9  Control by Securityholders.................................................27
SECTION 4.10 Waiver of Past Defaults....................................................28
SECTION 4.11 Trustee to Give Notice of Default, But May Withhold in Certain Circumstances.....28
SECTION 4.12 Right of Court to Require Filing of Undertaking to Pay Costs......................29

ARTICLE FIVE:  CONCERNING THE TRUSTEE ................................................29

SECTION 5.1  Duties and Responsibilities of the Trustee; During Default; Prior to Default............29
SECTION 5.2  Certain Rights of the Trustee...............................................30
SECTION 5.3  Trustee Not Responsible for Recitals, Disposition of Securities or Application of
             Proceeds Thereof...........................................................31
SECTION 5.4  Trustee and Agents May Hold Securities; Collections, etc.........................32
SECTION 5.5  Moneys Held by Trustee.....................................................32
SECTION 5.6  Compensation and Indemnification of Trustee and Its Prior Claim..................32
SECTION 5.7  Right of Trustee to Rely on Officers' Certificate, etc...........................32
SECTION 5.8  Persons Eligible for Appointment as Trustee.....................................33
SECTION 5.9  Resignation and Removal; Appointment of Successor Trustee........................33
SECTION 5.10 Acceptance of Appointment by Successor Trustee..................................34
SECTION 5.11 Appointment of Co-Trustee....................................................35
SECTION 5.13 Merger, Conversion, Consolidation or Succession to Business of Trustee............36

ARTICLE SIX:  CONCERNING THE SECURITYHOLDERS ..........................................36

SECTION 6.1  Evidence of Action Taken by Securityholders...................................36
SECTION 6.2  Proof of Execution of Instruments and of Holding of Securities; Record Date......36
SECTION 6.3  Holders to be Treated as Owners.............................................37
SECTION 6.4  Securities Owned by Issuer Deemed Not Outstanding.............................37
SECTION 6.5  Right of Revocation of Action Taken.........................................37

ARTICLE SEVEN:  SUPPLEMENTAL INDENTURES ..............................................38

SECTION 7.1  Supplemental Indentures Without Consent of Securityholders....................38
SECTION 7.2  Supplemental Indentures With Consent of Securityholders.......................38
SECTION 7.3  Effect of Supplemental Indenture............................................40
SECTION 7.4  Documents to Be Given to Trustee............................................40
SECTION 7.5  Notation on Securities in Respect of Supplemental Indentures..................40

ARTICLE EIGHT:  CONSOLIDATION, MERGER, SALE OR CONVEYANCE ............................40

SECTION 8.1  Issuer and Guarantors May Consolidate, etc., on Certain Terms.................41
SECTION 8.2  Successor Entity Substituted................................................41
SECTION 8.3  Opinion of Counsel to Trustee...............................................41
SECTION 8.4  Exception Applicable to Certain Guarantors..................................42

2

Page

ARTICLE NINE:  SATISFACTION AND DISCHARGE OF INDENTURE; UNCLAIMED MONEYS.................................42

        SECTION 9.2   Issuer's Option to Effect Defeasance or Covenant Defeasance.................43
        SECTION 9.3   Defeasance and Discharge.................................................43
        SECTION 9.4   Covenant Defeasance.....................................................43
        SECTION 9.5   Conditions to Defeasance or Covenant Defeasance.........................43
        SECTION 9.6   Application by Trustee of Funds Deposited for Payment of Securities......44
        SECTION 9.7   Repayment of Moneys Held by Paying Agent.................................45
        SECTION 9.8   Return of Moneys Held by Trustee and Paying Agent Unclaimed for Two Years.45
        SECTION 9.9   Indemnity for Direct Obligations of the United States....................46
        SECTION 9.10  Reinstatement...........................................................46

ARTICLE TEN:  MISCELLANEOUS PROVISIONS......................................................46

        SECTION 10.1  Incorporators, Shareholders, Officers and Directors of Issuer and Guarantors
                      Exempt from Individual Liability........................................46
        SECTION 10.2  Provisions of Indenture for the Sole Benefit of Parties and Securityholders.46
        SECTION 10.3  Successors and Assigns of Issuer and Guarantors Bound by Indenture.......47
        SECTION 10.4  Notices and Demands on Issuer, Guarantors Trustee and Securityholders....47
        SECTION 10.5  Officers' Certificates and Opinions of Counsel; Statements to Be Contained Therein.48
        SECTION 10.6  Payments Due on Saturdays, Sundays and Holidays.........................49
        SECTION 10.7  Conflict of Any Provision of Indenture with Trust Indenture Act of 1939..49
        SECTION 10.8  New York Law to Govern..................................................49
        SECTION 10.9  Consent to Jurisdiction and Service of Process..........................49
        SECTION 10.8  Judgment Currency.......................................................50
        SECTION 10.9  Counterparts............................................................50
        SECTION 10.10 Effect of Headings......................................................50

ARTICLE ELEVEN:  REDEMPTION OF SECURITIES AND SINKING FUNDS..................................50

        SECTION 11.1  Applicability of Article................................................50
        SECTION 11.2  Notice of Redemption; Partial Redemptions...............................50
        SECTION 11.3  Payment of Securities Called for Redemption.............................52
        SECTION 11.4  Exclusion of Certain Securities from Eligibility for Selection for Redemption.52
        SECTION 11.5  Mandatory and Optional Sinking Funds....................................53

ARTICLE TWELVE:  ADDITIONAL AMOUNTS; CERTAIN TAX PROVISIONS..................................54

        SECTION 12.1  Redemption Upon Changes in Withholding Taxes............................54
        SECTION 12.3  Payment of Additional Amounts...........................................54

ARTICLE THIRTEEN:  GUARANTEES...............................................................56

Page

SECTION 13.1  Guarantee.................................................................54
SECTION 13.2  Execution and Delivery of Guarantees...................................37
SECTION 13.3  Release of Guarantees....................................................54
SECTION 13.4  Additional Guarantors....................................................54

4

THIS INDENTURE, dated as of June 9, 1998, among TYCO INTERNATIONAL GROUP S.A., a Luxembourg company (the "Issuer"), TYCO INTERNATIONAL LTD., a Bermuda company ("Tyco"), and THE BANK OF NEW YORK, a New York banking corporation (the "Trustee").

W I T N E S S E T H :

WHEREAS, the Issuer has duly authorized the issue from time to time of its unsecured debentures, notes or other evidences of indebtedness to be issued in one or more series (the "Securities") up to such principal amount or amounts as may from time to time be authorized in accordance with the terms of this Indenture and to provide, among other things, for the authentication, delivery and administration thereof, and the Issuer has duly authorized the execution and delivery of this Indenture;

WHEREAS, Tyco has duly authorized the execution and delivery of this Indenture and deems it appropriate from time to time to issue its guarantees of the Securities on the terms and substantially in the form herein provided; and

WHEREAS, all things necessary to make this Indenture a valid indenture and agreement according to its terms have been done;

NOW, THEREFORE:

In consideration of the premises and the purchase of the Securities by the holders thereof, the Issuer, Tyco and the Trustee mutually covenant and agree for the equal and proportionate benefit of the respective holders from time to time of the Securities as follows:

## ARTICLE ONE

## DEFINITIONS

SECTION 1.1 Certain Terms Defined. The following terms (except as otherwise expressly provided or unless the context otherwise clearly requires) for all purposes of this Indenture and of any indenture supplemental hereto shall have the respective meanings specified in this Section. All other terms used in this Indenture that are defined in the Trust Indenture Act of 1939 or the definitions of which in the Securities Act of 1933 are referred to in the Trust Indenture Act of 1939, including terms defined therein by reference to the Securities Act of 1933 (except as herein otherwise expressly provided or unless the context otherwise clearly requires), shall have the meanings assigned to such terms in said Trust Indenture Act and in said Securities Act as in force at the date of this Indenture. All accounting terms used herein and not expressly defined shall have the meanings assigned to such terms in accordance with generally accepted accounting principles, and the terms "generally accepted accounting principles" means such accounting principles as are generally accepted in the United States at the time of any computation. The words "herein", "hereof" and "hereunder" and other words of similar import refer to this Indenture as a whole and not to any particular Article, Section or other subdivision. The terms defined in this Article have the meanings assigned to them in this Article and include the plural as well as the singular.

"Acquired Indebtedness" means Indebtedness of a Person (i) existing at the time such Person becomes a Restricted Subsidiary or (ii) assumed in connection with the acquisition of assets by such Person, in each case, other than Indebtedness incurred in connection with, or in contemplation of, such Person becoming a Restricted Subsidiary or such acquisition, as the case

1

may be.

"Affiliate" means, with respect to any specified Person: (i) any other Person directly or indirectly controlling or controlled by or under direct or indirect common control with such specified Person, (ii) any other Person that owns, directly or indirectly, 10% or more of such specified Person's Capital Stock or any officer or director of any such specified Person or other Person; (iii) any other Person 10% or more of the Voting Stock of which is beneficially owned or held directly or indirectly by such specified Person. For the purposes of this definition, "control" when used with respect to any specified Person means the power to direct the management and policies of such Person, directly or indirectly, whether through ownership of voting securities, by contract or otherwise; and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

"Attributable Debt" means in connection with a Sale and Lease-Back Transaction, as of any particular time, the aggregate of present values (discounted at a rate per annum equal to the average interest borne by all outstanding Debt Securities (or, if set forth in a resolution of the Board of Directors or a supplemental indenture pursuant to Section 2.4 with respect to one or more series, the Outstanding Securities of such series) determined on a weighted average basis and compounded semi-annually) of the obligations of the Issuer or any Restricted Subsidiary for net rental payments during the remaining term of the applicable lease (including any period for which such lease has been extended or may, at the option of the lessor, be extended). The term "net rental payments" under any lease of any period shall mean the sum of the rental and other payments required to be paid in such period by the lessee thereunder, not including, however, any amounts required to be paid by such lessee (whether or not designated as rental or additional rental) on account of maintenance and repairs, reconstruction, insurance, taxes, assessments, water rates or similar charges required to be paid by such lessee thereunder or any amounts required to be paid by such lessee thereunder contingent upon the amount of sales, maintenance and repairs, reconstruction, insurance, taxes, assessments, water rates or similar charges.

"Board of Directors" means either the Board of Directors of the Issuer, Tyco or any other Guarantor, as the case may be, or any committee of such Board of Directors duly authorized to act hereunder.

"Business Day" means, with respect to any Security, a day that in the city (or in any of the cities, if more than one) in which amounts are payable, as specified in the form of such Security, is not a day on which banking institutions are authorized by law or regulation to close.

"Capital Stock" of any Person means any and all shares, interests, participations, rights in or other equivalents (however designated) of such Person's capital stock, other equity interests whether now outstanding or issued after the date of this Indenture, partnership interests, (whether general or limited), any other interest or participation that confers on a Person that right to receive a share of the profits and losses of, or distributions of assets of, the issuing Person and any rights (other than debt securities convertible into Capital Stock), warrants or options exchangeable for or convertible into such Capital Stock.

"Commission" means the Securities and Exchange Commission, as from time to time constituted, created under the Securities Exchange Act of 1934, or if at any time after the execution and delivery of this Indenture such Commission is not existing and performing the duties now assigned to it under the Trust Indenture Act of 1939, then the body performing such duties on such date.

"Consolidated Net Worth" means, at any date, the total assets less the total

2

liabilities, in each case appearing on the most recently prepared consolidated balance sheet of the Issuer and its subsidiaries as of the end of a fiscal quarter of the Issuer, prepared in accordance with generally accepted accounting principles as in effect on the date of calculation.

"Consolidated Tangible Assets" means, at any date, the total assets less all intangible assets appearing on the most recently prepared consolidated balance sheet of the Issuer and its subsidiaries as of the end of a fiscal quarter of the Issuer, prepared in accordance with generally accepted accounting principles as in effect on the date of calculation. "Intangible Assets" means the amount (if any) which would be stated under the heading "Costs in Excess of Net Assets of Acquired Companies" or under any other heading relating to intangible assets separately listed, in each case on the face of the aforesaid consolidated balance sheet.

"Corporate Trust Office" means the office of the Trustee at which the corporate trust business of the Trustee shall, at any particular time, be principally administered, which office is, at the date as of which this Indenture is dated, located at 101 Barclay Street, 21 W, New York, New York 10286, Attention: Corporate Trust Administration.

"Depositary" means, unless otherwise specified by the Issuer pursuant to either Section 2.4 or 2.15, with respect to Securities of any series issuable or issued as a Global Security, The Depository Trust Company, New York, New York, or any successor thereto registered under the Securities Exchange Act of 1934 or other applicable statute or regulation.

"Event of Default" means any event or condition specified as such in Section 4.1.

"Funded Indebtedness" means any Indebtedness maturing by its terms more than one year from the date of the determination thereof, including any Indebtedness renewable or extendible at the option of the obligor to a date later than one year from the date of the determination thereof.

"Global Security" means a Security issued to evidence all or part of any series of Securities which is executed by the Issuer and authenticated and delivered by the Trustee to the Depositary or pursuant to the Depositary's instruction, all in accordance with this Indenture and pursuant to an Issuer order which shall be registered in the name of the Depositary or its nominee.

"Guarantee" means the unconditional and unsubordinated guarantee by Tyco or any other Guarantor of the due and punctual payment of principal of and interest on the Securities when and as the same shall become due and payable, whether at the stated maturity, by acceleration, call for redemption or otherwise in accordance with the terms of the Securities and this Indenture.

"Guarantor" means Tyco or any Subsidiary that after the date of this Indenture executes a guarantee of the Debt Securities contemplated by Section 3.11 until a successor replaces such party pursuant to the applicable provisions of this Indenture and, thereafter, shall mean such successor.

"Holder", "holder of Securities", "Securityholder" or other similar terms mean the registered holder of any Security.

"Indebtedness" means, without duplication, the principal or face amount of (i) all obligations for borrowed money, (ii) all obligations evidenced by debentures, notes or other similar instruments, (iii) all obligations in respect of letters of credit or bankers acceptances or similar instruments (or reimbursement obligations with respect thereto), (iv) all obligations to pay

3

the deferred purchase price of property or services, except trade accounts payable arising in the ordinary course of business, (v) all obligations as lessee which are capitalized in accordance with generally accepted accounting principles, and (vi) all Indebtedness of others guaranteed by the Issuer or any of its subsidiaries or for which the Issuer or any of its subsidiaries is legally responsible or liable (whether by agreement to purchase indebtedness of, or to supply funds or to invest in, others).

"Indenture" means this instrument as originally executed and delivered or, if amended or supplemented as herein provided, as so amended or supplemented or both, and shall include the forms and terms of particular series of Securities established as contemplated hereunder.

"Interest" means, when used with respect to non-interest bearing Securities, interest payable after maturity.

"Issuer" means (except as otherwise provided in Article Five) Tyco International Group S.A., and, subject to Article Eight, its successors and assigns.

"Non-Recourse Indebtedness" means Indebtedness upon the enforcement of which recourse may be had by the holder(s) thereof only to identified assets of the Issuer, Tyco or any Subsidiary and not to the Issuer, Tyco or any Subsidiary personally.

"Officers' Certificate" means a certificate signed by two managing directors or by the chairman or any vice chairman of the Board of Directors or the president or any vice president and by the treasurer or any assistant treasurer or the secretary or any assistant secretary of the Issuer, Tyco or any other Guarantor, as the case may be, and delivered to the Trustee. Each such certificate shall comply with Section 314 of the Trust Indenture Act of 1939 and include the statements provided for in Section 10.5.

"Opinion of Counsel" means an opinion in writing signed by legal counsel who may be an employee of or counsel to the Issuer and who shall be satisfactory to the Trustee. Each such opinion shall comply with Section 314 of the Trust Indenture Act of 1939 and include the statements provided for in Section 10.5, if and to the extent required hereby.

"Original issue date" of any Security (or portion thereof) means the earlier of (a) the date of such Security or (b) the date of any Security (or portion thereof) for which such Security was issued (directly or indirectly) on registration of transfer, exchange or substitution.

"Original Issue Discount Security" means a Security that provides for an amount less than the principal amount thereof to be due and payable upon a declaration of acceleration of the maturity thereof pursuant to Section 6.1.

"Outstanding", when used with reference to Securities, shall, subject to the provisions of Section 6.4, mean, as of any particular time, all Securities authenticated and delivered by the Trustee under this Indenture, except

(a) Securities theretofore canceled by the Trustee or delivered to the Trustee for cancellation;

(b) Securities, or portions thereof, for the payment or redemption of which moneys in the necessary amount shall have been deposited in trust with the Trustee or with any paying agent (other than the Issuer) or shall have been set aside, segregated and

4

held in trust by the Issuer for the Holders of such Securities (if the Issuer shall act as its own paying agent), provided that if such Securities, or portions thereof, are to be redeemed prior to the maturity thereof, notice of such redemption shall have been given as herein provided, or provision satisfactory to the Trustee shall have been made for giving such notice; and

(c) Securities in substitution for which other Securities shall have been authenticated and delivered, or which shall have been paid, pursuant to the terms of Section 2.9 (except with respect to any such Security as to which proof satisfactory to the Trustee is presented that such Security is held by a person in whose hands such Security is a legal, valid and binding obligation of the Issuer).

In determining whether the holders of the requisite principal amount of Outstanding Securities of any or all series have given any request, demand, authorization, direction, notice, consent or waiver hereunder, the principal amount of an Original Issue Discount Security that shall be deemed to be Outstanding for such purposes shall be the amount of the principal thereof that would be due and payable as of the date of such determination upon a declaration of acceleration of the maturity thereof pursuant to Section 6.1.

"Permitted Subsidiary Indebtedness" means any of the following: (i) Indebtedness in an aggregate amount, without duplication, not to exceed, as of the date of determination, 5% of the Consolidated Tangible Assets of the Issuer (which Indebtedness is exclusive of the Indebtedness described in clauses (ii) through (viii) hereof), (ii) Indebtedness owed to the Issuer, Tyco or any Subsidiary, (iii) obligations under standby letters of credit or similar arrangements supporting the performance of a Person under a contract or agreement in the ordinary course of business, (iv) obligations as lessee in the ordinary course of business which are capitalized in accordance with United States generally accepted accounting principles, (v) Indebtedness that was Permitted Subsidiary Indebtedness at the time that it was first incurred, (vi) Acquired Indebtedness that by its terms is not callable or redeemable prior to its stated maturity and that remains outstanding following such time as the Subsidiary obligated under such Acquired Indebtedness in good faith has made or caused to be made an offer to acquire all such Indebtedness, including, without limitation, an offer to exchange such Indebtedness for securities of the Issuer, on terms which, in the opinion of an independent investment banking firm of national reputation and standing, are consistent with market practices in existence at the time for offers of a similar nature, provided that the initial expiration date of any such offer shall not be later than the expiration of the time period set forth in Section 3.11(c), (vii) Indebtedness outstanding on the date of the Indenture and (viii) any renewals, extensions, substitutions, refundings, refinancings or replacements (collectively, a "refinancing") of any Indebtedness referred to in clause (vii) of this definition of "Permitted Subsidiary Indebtedness" of a Subsidiary organized under a jurisdiction other than the United States or any State thereof or the District of Columbia, including any successive refinancings so long as the borrower under such refinancing is such a Subsidiary and the aggregate principal amount of Indebtedness represented thereby (or if such Indebtedness provides for an amount less than the principal amount thereof to be due and payable upon a declaration of acceleration of the maturity thereof, the original issue price of such Indebtedness plus any accreted value attributable thereto since the original issuance of such Indebtedness) is not increased by such refinancing plus the lesser of (A) the stated amount of any premium or other payment required to be paid in connection with such a refinancing pursuant to the terms of the Indebtedness being refinanced or (B) the amount of premium or other payment actually paid at such time to refinance the Indebtedness, plus, in either case, the amount of expenses of such Subsidiary incurred in connection with such refinancing.

"Person" means any individual, corporation, partnership, limited liability company,

5

joint venture, association, joint stock company, trust, unincorporated organization or government or any agency or political subdivision thereof.

"principal" whenever used with reference to the Securities or any Security or any portion thereof, shall be deemed to include "and premium, if any".

"Principal Property" means any manufacturing, processing or assembly plant or facility or any warehouse or distribution facility which is used by any U.S. Subsidiary after the date hereof, other than any such plants, facilities, warehouses or portions thereof, which in the opinion of the Board of Directors of the Issuer, are not collectively of material importance to the total business conducted by the Issuer and its Restricted Subsidiaries as an entirety, or which, in each case, has a book value, on the date of the acquisition or completion of the initial construction thereof by the Issuer, of less than 1.5% of Consolidated Tangible Assets.

"Responsible Officer" when used with respect to the Trustee means any vice president, the treasurer, any trust officer, any assistant trust officer, any assistant vice president, any assistant treasurer, or any other officer or assistant officer of the Trustee customarily performing functions similar to those performed by the Persons who at the time shall be such officers, respectively, or to whom any corporate trust matter is referred because of his knowledge of and familiarity with the particular subject.

"Restricted Subsidiary" means any Subsidiary which owns or leases a Principal Property.

"Sale and Lease-Back Transaction" means an arrangement with any Person providing for the leasing by the Issuer or a Restricted Subsidiary of any Principal Property whereby such Principal Property has been or is to be sold or transferred by the Issuer or a Restricted Subsidiary to such Person; provided, however, that the foregoing shall not apply to any such arrangement involving a lease for a term, including renewal rights, for not more than three years.

"Security" or "Securities" has the meaning stated in the first recital of this Indenture, or, as the case may be, Securities that have been authenticated and delivered under this Indenture.

"Significant Subsidiary Guarantor" means any one or more Guarantors (other than Tyco) which, at the date of determination, together with its or their respective Subsidiaries in the aggregate, (i) for the most recently completed fiscal year of the Issuer accounted for more than 10% of the consolidated revenues of the Issuer or (ii) at the end of such fiscal year, was the owner (beneficial or otherwise) of more than 10% of the consolidated assets of the Issuer, as determined in accordance with generally accepted accounting principles and reflected on the Issuer's consolidated financial statements.

"Subsidiary" means any Person of which at least a majority of the outstanding Voting Stock shall at the time directly or indirectly be owned or controlled by the Issuer or by one or more Subsidiaries or by the Issuer and one or more Subsidiaries.

"Trustee" means the Person identified as "Trustee" in the first paragraph hereof and, subject to the provisions of Article Five, shall also include any successor trustee.

"Trust Indenture Act of 1939" (except as otherwise provided in Sections 7.1 and 7.2) means the Trust Indenture Act of 1939 as in force at the date as of which this Indenture was

6

originally executed.

"vice president" when used with respect to the Issuer, Tyco, any other Guarantor or the Trustee, means any vice president, whether or not designated by a number or a word or words added before or after the title of "vice president".

"Voting Stock" of a Person means Capital Stock of such Person of the class or classes pursuant to which the holders thereof have the general voting power under ordinary circumstances to elect at least a majority of the board of directors, managers or trustees of such Person (irrespective of whether or not at the time Capital Stock of any other class or classes shall have or might have voting power by reason of the happening of any contingency).

"Yield to Maturity" means the yield to maturity on a series of Securities, calculated at the time of issuance of such series, or, if applicable, at the most recent redetermination of interest on such series, and calculated in accordance with accepted financial practice.

## ARTICLE TWO

### SECURITIES

SECTION 2.1 Forms Generally. The Securities of each series shall be substantially in such form (not inconsistent with this Indenture) as shall be established by or pursuant to a resolution of the Board of Directors of the Issuer, or in one or more indentures supplemental hereto, in each case with such appropriate insertions, omissions, substitutions and other variations as are required or permitted by this Indenture and may have imprinted or otherwise reproduced thereon such legend or legends, not inconsistent with the provisions of this Indenture, as may be required to comply with any law or with any rules or regulations pursuant thereto, or with any rules of any securities exchange or to conform to general usage, all as may be determined by the officers executing such Securities, as evidenced by their execution of the Securities.

The definitive Securities shall be printed, lithographed or engraved on steel engraved borders or may be produced in any other manner, all as determined by the officers executing such Securities as evidenced by their execution of such Securities.

SECTION 2.2, Form of Guarantee. The form of Guarantee shall be set forth on the Securities substantially as follows:

### GUARANTEE

For value received, Tyco hereby absolutely, unconditionally and irrevocably guarantees to the holder of this Security the payment of principal of, interest on and Additional Amounts in respect of the Security upon which this Guarantee is endorsed in the amounts and at the time when due and payable whether by declaration thereof, or otherwise, and interest on the overdue principal and interest, if any, of such Security, if lawful, and the payment or performance of all other obligations of the Issuer under the Indenture or the Securities, to the holder of such Security and the Trustee, all in accordance with and subject to the terms and limitations of such Security and Article Thirteen of the Indenture. This Guarantee will not become effective until the Trustee duly executes the certificate of authentication on this Security. This Guarantee shall be governed by and construed in accordance with the laws of the State of New York, without regard to conflict of law principles thereof.

7

Dated:

TYCO INTERNATIONAL LTD.

By:
-----------------------------
Name:
Title:

SECTION 2.3 Form of Trustee's Certificate of Authentication. The Trustee's certificate of authentication on all securities shall be in substantially the following form:

This is one of the Securities of the series designated herein and referred to in the within-mentioned Indenture.

THE BANK OF NEW YORK, as Trustee

By
-----------------------------
Authorized Signatory

SECTION 2.4 Amount Unlimited; Issuable in Series. The aggregate principal amount of Securities which may be authenticated and delivered under this Indenture is unlimited.

The Securities may be issued in one or more series. There shall be established in or pursuant to a resolution of the Board of Directors of the Issuer and set forth in an Officers' Certificate of the Issuer, or established in one or more indentures supplemental hereto, prior to the issuance of Securities of any series:

(1) the title of the Securities of the series (which shall distinguish the Securities of the series from all other Securities);

(2) any limit upon the aggregate principal amount of the Securities of the series that may be authenticated and delivered under this Indenture (except for Securities authenticated and delivered upon registration of transfer of, or in exchange for, or in lieu of, other Securities of the series pursuant to Section 2.9, 2.10, 2.12 or 11.7);

(3) the date or dates on which the principal of the Securities of the series is payable;

(4) the rate or rates at which the Securities of the series shall bear interest, if any, or the method by which such rate shall be determined, the date or dates from which such interest shall accrue, the interest payment dates on which such interest shall be payable and the record dates for the determination of Holders to whom interest is payable;

(5) the place or places where the principal of and any interest on Securities of the series shall be payable (if other than as provided in Section 3.2);

(6) the obligation, if any, of the Issuer to redeem, purchase or repay Securities of the series pursuant to any sinking fund or analogous provisions or at the option of a Holder thereof and the price or prices at which and the period or periods within which and the terms and conditions upon which Securities of the series shall be redeemed, purchased

8

or repaid, in whole or in part, pursuant to such obligation;

(7) if other than denominations of $1,000 and any multiple thereof, the denominations in which Securities of the series shall be issuable;

(8) if other than the principal amount thereof, the portion of the principal amount of Securities of the series which shall be payable upon declaration of acceleration of the maturity thereof pursuant to Section 4.1 or provable in bankruptcy pursuant to Section 4.2;

(9) whether the Securities of the series shall be issued in whole or in part in the form of a Global Security or Securities; the terms and conditions, if any, upon which such Global Security or Securities may be exchanged in whole or in part for other individual Securities; and the Depositary for Global Security or Securities;

(10) any other terms of the series (which terms shall not be inconsistent with the provisions of this Indenture); and

(11) if other than the Trustee, any trustees, authenticating or paying agents, transfer agents or registrars or any other agents with respect to the Securities of such series.

All Securities of any one series shall be substantially identical except as to denomination and except as may otherwise be provided in or pursuant to such resolution of the Board of Directors or in any such indenture supplemental hereto.

SECTION 2.5 Authentication and Delivery of Securities. At any time and from time to time after the execution and delivery of this Indenture, the Issuer may deliver Securities (with Guarantees endorsed thereon) of any series executed by the Issuer to the Trustee for authentication, and the Trustee shall thereupon authenticate and deliver such Securities to or upon the written order of the Issuer, signed by any two managing directors or by both (a) the chairman of its Board of Directors, or any vice chairman of its Board of Directors, or its president or vice president and (b) its secretary or any assistant secretary or its treasurer or any assistant treasurer, without any further action by the Issuer. In authenticating such Securities and accepting the additional responsibilities under this Indenture in relation to such Securities, the Trustee shall be entitled to receive, and (subject to Section 5.1) shall be fully protected in relying upon:

(1) a certified copy of any resolution or resolutions of the Board of Directors of the Issuer authorizing the action taken pursuant to the resolution or resolutions delivered under clause (2) below;

(2) a copy of any resolution or resolutions of the Board of Directors of the Issuer relating to such series, in each case certified by a director the secretary or any assistant secretary of the Issuer;

(3) an executed supplemental indenture setting forth the form and terms of the Securities as required pursuant to Sections 2.1 and 2.4 respectively, if any;

(4) an Officers' Certificate of the Issuer setting forth the form and terms of the Securities as required pursuant to Section 2.1 and 2.4, respectively and prepared in accordance with Section 10.5;

9

(5) an Opinion of Counsel, prepared in accordance with Section 10.5, to the effect that

(a) that the form or forms and terms of such Securities have been established by or pursuant to a resolution of the Board of Directors of the Issuer or by a supplemental indenture as permitted by Sections 2.1 and 2.4 in conformity with the provisions of this Indenture;

(b) that such Securities, when authenticated in accordance with the terms of this Indenture and delivered by the Trustee and issued by and delivered by or to the order of the Issuer, against payment therefor, in the manner and subject to any conditions specified in such Opinion of Counsel, will constitute valid and binding obligations of the Issuer;

(c) that all laws and requirements in respect of the execution and delivery by the Issuer of the Securities have been complied with; and

(d) covering such other matters as the Trustee may reasonably request.

Notwithstanding the provisions of the preceding paragraph, if all Securities of a series are not to be originally issued at one time, it shall not be necessary to deliver an Opinion of Counsel otherwise required pursuant to such preceding paragraph at or prior to the authentication of such Security of such series if an Opinion of Counsel is delivered at or prior to the authentication upon original issuance of the first Security of such series to be issued and reasonably contemplates such authentication of each such Security.

The Trustee shall have the right to decline to authenticate and deliver any Securities under this Section if the Trustee, being advised by counsel, determines that such action may not lawfully be taken by the Issuer or if the Trustee in good faith shall determine that such action would expose the Trustee to personal liability to existing Holders.

SECTION 2.6 Execution of Securities. The Securities shall be signed on behalf of the Issuer by any two managing directors or by both (a) the chairman of its Board of Directors or any vice chairman of its Board of Directors or its president or any vice president and (b) the its treasurer or any assistant treasurer or its secretary or any assistant secretary, which may, but need not, be attested. Such signatures may be the manual or facsimile signatures of the present or any future such officers. The seal of the Issuer may be in the form of a facsimile thereof and may be impressed, affixed, imprinted or otherwise reproduced on the Securities. Typographical and other minor errors or defects in any such reproduction of the seal or any such signature shall not affect the validity or enforceability of any Security that has been duly authenticated and delivered by the Trustee.

In case any managing director or officer of the Issuer who shall have signed any of the Securities shall cease to be such managing director or officer before the Security so signed shall be authenticated and delivered by the Trustee or disposed of by the Issuer, such Security nevertheless may be authenticated and delivered or disposed of as though the person who signed such Security had not ceased to be such officer of the Issuer; and any Security may be signed on behalf of the Issuer by such persons as, at the actual date of the execution of such Security, shall be the proper managing directors or officers of the Issuer, although at the date of the execution and delivery of this Indenture any such Person was not such a managing director or an officer.

10

SECTION 2.7 Certificate of Authentication. Only such Securities (and Guarantees endorsed thereon) as shall bear thereon a certificate of authentication substantially in the form hereinbefore recited, executed by the Trustee by the manual signature of one of its authorized signatories, shall be entitled to the benefits of this Indenture or be valid or obligatory for any purpose. Such certificate by the Trustee upon any Security executed by the Issuer shall be conclusive evidence that the Security so authenticated has been duly authenticated and delivered hereunder and that the holder is entitled to the benefits of this Indenture.

SECTION 2.8 Denomination and Date of Securities; Payments of Interest. The Securities shall be issuable as registered securities without coupons and in denominations as shall be specified as contemplated by Section 2.4. In the absence of any such specification with respect to the Securities of any series, the Securities of such series shall be issuable in denominations of $1,000 and any multiple thereof. The Securities shall be numbered, lettered, or otherwise distinguished in such manner or in accordance with such plan as the officers of the Issuer executing the same may determine with the approval of the Trustee as evidenced by the execution and authentication thereof.

Each Security shall be dated the date of its authentication, shall bear interest, if any, from the date and shall be payable on the dates, in each case, which shall be specified as contemplated by Section 2.4.

The Person in whose name any Security of any series is registered at the close of business on any record date applicable to a particular series with respect to any interest payment date for such series shall be entitled to receive the interest, if any, payable on such interest payment date notwithstanding any transfer or exchange of such Security subsequent to the record date and prior to such interest payment date, except if and to the extent the Issuer shall default in the payment of the interest due on such interest payment date for such series, in which case such defaulted interest shall be paid to the persons in whose names Outstanding Securities for such series are registered at the close of business on a subsequent record date (which shall not be less than five Business Days prior to the date of payment of such defaulted interest) established by notice given by mail by or on behalf of the Issuer to the holders of Securities not less than 15 days preceding such subsequent record date. The term "record date" as used with respect to any interest payment date (except a date for payment of defaulted interest) shall mean the date specified as such in the terms of the Securities of any particular series, or, if no such date is so specified, if such interest payment date is the first day of a calendar month, the fifteenth day of the next preceding calendar month or, if such interest payment date is the fifteenth day of a calendar month, the first day of such calendar month, whether or not such record date is a Business Day.

SECTION 2.9 Registration, Transfer and Exchange. The Issuer will keep or cause to be kept at each office or agency to be maintained for the purpose as provided in Section 3.2 a Security register for each series of Securities in which, subject to such reasonable regulations as it may prescribe, it will register, and will register the transfer of, Securities as in this Article provided. Such register shall be in written form in the English language or in any other form capable of being converted into such form within a reasonable time. At all reasonable times such Security register shall be open for inspection by the Trustee.

Upon due presentation for registration of transfer of any Security of any series at any such office or agency to be maintained for the purpose as provided in Section 3.2, the Issuer shall execute and the Trustee shall authenticate and deliver in the name of the transferee or transferees a new Security or Securities of the same series in authorized denominations for a like aggregate principal amount, and the Issuer shall record or cause to be recorded the transfer in the Security register or registers.

11

Any Security or Securities of any series may be exchanged for a Security or Securities of the same series in other authorized denominations, in an equal aggregate principal amount. Securities of any series to be exchanged shall be surrendered at any office or agency to be maintained by the Issuer for the purpose as provided in Section 3.2, and the Issuer shall execute and the Trustee shall authenticate and deliver in exchange therefor the Security or Securities of the same series which the Securityholder making the exchange shall be entitled to receive, bearing numbers not contemporaneously outstanding.

All Securities presented for registration of transfer, exchange, redemption or payment shall (if so required by the Issuer or the Trustee) be duly endorsed by, or be accompanied by a written instrument or instruments of transfer in form satisfactory to the Issuer and the Trustee, duly executed by the Holder or his attorney duly authorized in writing.

The Issuer may require payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in connection with any exchange or registration of transfer of Securities. No service charge shall be made for any such transaction.

The Issuer shall not be required to exchange or register a transfer of (a) any Securities of any series for a period of 15 days next preceding the first mailing of notice of redemption of Securities of such series to be redeemed, or (b) any Securities selected, called or being called for redemption except, in the case of any Security where public notice has been given that such Security is to be redeemed in part, the portion thereof not so to be redeemed.

All Securities issued upon any transfer or exchange of Securities shall be valid obligations of the Issuer, evidencing the same debt, and entitled to the same benefits under this Indenture, as the Securities surrendered upon such transfer or exchange.

None of the Issuer, any Guarantor, the Trustee or any Paying Agent will have any responsibility or liability for any aspect of the records relating to or payments made on account of beneficial ownership interests of a Global Security or for maintaining, supervising or reviewing any records relating to such beneficial interests.

SECTION 2.10 Mutilated, Defaced, Destroyed, Lost and Stolen Securities. In case any temporary or definitive Security shall become mutilated, defaced or be destroyed, lost or stolen, the Issuer in its discretion may execute, and upon the written request of any officer of the Issuer, the Trustee shall authenticate and deliver, a new Security of the same series, bearing a number not contemporaneously outstanding, in exchange and substitution for the mutilated or defaced Security, or in lieu of and substitution for the Security so destroyed, lost or stolen. In every case the applicant for a substitute Security shall furnish to the Issuer, any Guarantor and to the Trustee and any agent of the Issuer, such Guarantor or the Trustee such security or indemnity as may be required by them to indemnify and defend and to save each of them harmless and, in every case of destruction, loss or theft, evidence to their satisfaction of the destruction, loss or theft of such Security and of the ownership thereof.

Upon the issuance of any substitute Security, the Issuer may require the payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in relation thereto and any other expenses (including the fees and expenses of the Trustee and any Guarantor) connected therewith. In case any security which has matured or is about to mature or has been called for redemption in full shall become mutilated or defaced or be destroyed, lost or stolen, the Issuer may instead of issuing a substitute Security, pay or authorize the payment of the same (without surrender thereof except in the case of a mutilated or defaced Security), if the

12

applicant for such payment shall furnish to the Issuer, the Guarantors and to the Trustee and any agent of the Issuer, the Guarantors or the Trustee such security or indemnity as any of them may require to save each of them harmless, and, in every case of destruction, loss or theft, the applicant shall also furnish to the Issuer and the Trustee and any agent of the Issuer or the Trustee evidence to their satisfaction of the destruction, loss or theft of such Security and of the ownership thereof.

Every substitute Security of any series issued pursuant to the provisions of this Section by virtue of the fact that any such security is destroyed, lost or stolen shall constitute an additional contractual obligation of the Issuer, whether or not the destroyed, lost or stolen Security shall be at any time enforceable by anyone and shall be entitled to all the benefits of (but shall be subject to all the limitations of rights set forth in) this Indenture equally and proportionately with any and all other Securities of such series duly authenticated and delivered hereunder. All Securities shall be held and owned upon the express condition that, to the extent permitted by law, the foregoing provisions are exclusive with respect to the replacement or payment of mutilated, defaced or destroyed, lost or stolen Securities and shall preclude any and all other rights or remedies notwithstanding any law or statute existing or hereafter enacted to the contrary with respect to the replacement or payment of negotiable instruments or other securities without their surrender.

SECTION 2.11 Cancellation of Securities; Destruction Thereof. All Securities surrendered for payment, redemption, registration of transfer or exchange, or for credit against any payment in respect of a sinking or analogous fund, if surrendered to the Issuer or any agent of the Issuer or the Trustee, shall be delivered to the Trustee for cancellation or, if surrendered to the Trustee, shall be canceled by it; and no Securities shall be issued in lieu thereof except as expressly permitted by any of the provisions of this Indenture. The Trustee shall dispose of canceled Securities held by it in accordance with its policy of disposal or, upon the written request of the Issuer, deliver such canceled Securities to the Issuer. If the Issuer shall acquire any of the Securities, such acquisition shall not operate as a redemption or satisfaction of the indebtedness represented by such Securities unless and until the same are delivered to the Trustee for cancellation.

SECTION 2.12 Temporary Securities. Pending the preparation of definitive Securities for any series, the Issuer may execute, the Guarantors shall endorse and the Trustee shall authenticate and deliver temporary Securities for such series (printed, lithographed, typewritten or otherwise reproduced, in each case in form satisfactory to the Trustee). Temporary Securities of any series shall be issuable as registered Securities without coupons, of any authorized denomination, and substantially in the form of the definitive Securities of such series but with such omissions, insertions and variations as may be appropriate for temporary Securities, all as may be determined by the Issuer with the concurrence of the Trustee. Temporary Securities may contain such reference to any provisions of this Indenture as may be appropriate. Every temporary Security shall be executed by the Issuer, endorsed by the Guarantors and be authenticated by the Trustee upon the same conditions and in substantially the same manner, and with like effect, as the definitive Securities. Without unreasonable delay the Issuer shall execute and shall furnish definitive Securities of such series and thereupon temporary securities of such series may be surrendered in exchange therefor without charge at each office or agency to be maintained by the Issuer for that purpose pursuant to Section 3.2, and the Trustee shall authenticate and deliver in exchange for such temporary Securities of such series a like aggregate principal amount of definitive Securities of the same series of authorized denominations. Until so exchanged, the temporary Securities of any series shall be entitled to the same benefits under this Indenture as definitive Securities of such series.

12

SECTION 2.11 Securities Issuable in the Form of a Global Security. (a) If the Issuer shall establish pursuant to Section 2.4 that the Securities of a particular series are to be issued in whole or in part in the form of one or more Global Securities, then the Issuer shall execute and the Trustee shall, in accordance with Section 2.5 and the Issuer order delivered to the Trustee thereunder, authenticate and deliver, such Global Security or Securities, which (i) shall represent, and shall be denominated in an amount equal to the aggregate principal amount of, the Outstanding Securities of such series to be represented by such Global Security or Securities, (ii) shall be registered in the name of the Depositary for such Global Security or Securities or its nominee, (iii) shall be delivered by the Trustee to the Depositary or pursuant to the Depositary's instruction and (iv) shall bear a legend substantially to the following effect: "Unless and until it is exchanged in whole or in part for the individual Securities represented hereby, this Global Security may not be transferred except as a whole by the Depositary to a nominee of the Depositary or by a nominee of the Depositary to the Depositary or another nominee of the Depositary or by the Depositary or any such nominee to a successor Depositary or a nominee of such successor Depositary."

(b) Notwithstanding any other provision of this Section 2.11 or of Section 2.3, unless the terms of a Global Security expressly permit such Global Security to be exchanged in whole or in part for individual Securities, a Global Security may be transferred, in whole but not in part and in the manner provided in Section 2.9, only to another nominee of the Depositary for such Global Security, or by the nominee of the Depositary to the Depositary, or to a successor Depositary for such Global Security selected or approved by the Issuer or to a nominee of such successor Depositary.

(c) (i) If at any time the Depositary for a Global Security notifies the Issuer that it is unwilling or unable to continue as Depositary for such Global Security or if at any time the Depositary for the Securities for such series shall no longer be eligible or in good standing under the Securities Exchange Act of 1934, or other applicable statute or regulation, the Issuer shall appoint a successor Depositary with respect to such Global Security. If a successor Depositary for such Global Security is not appointed by the Issuer within 90 days after the Issuer receives notice or becomes aware of such ineligibility, the Issuer's election pursuant to Section 2.4(9) shall no longer be effective with respect to such Global Security and the Issuer will execute, and the Trustee, upon receipt of an Issuer order for the authentication and delivery of individual Securities of such series in exchange for such Global Security, will authenticate and deliver individual Securities of such series of like tenor and terms in a definitive form in an aggregate principal amount equal to the principal amount of the Global Security in exchange for such Global Security.

(ii) The Issuer may at any time and in its sole discretion determine that the Securities of any series issued or issuable in the form of one or more Global Securities shall no longer be represented by such Global Security or Securities. In such event the Issuer will execute, and the Trustee, upon receipt of an Issuer order for the authentication and delivery of individual Securities of such series in exchange in whole or in part for such Global Security, will authenticate and deliver individual Securities of such series of like tenor and terms in a definitive form in an aggregate principal amount equal to the principal amount of such Global Security or Securities representing such series in exchange for such Global Security or Securities.

(iii) If specified by the Issuer pursuant to Section 2.4 with respect to Securities issued or issuable in the form of a Global Security, the Depositary for such Global Security may surrender such Global Security in exchange in whole or in part for individual Securities of such series of like tenor and terms in definitive form on such terms as are acceptable to the Issuer and such Depositary. Thereupon the Issuer shall execute, and the Trustee shall authenticate and

14

deliver, without service charge, (1) to each Person specified by such Depositary a new Security or Securities of the same series of like tenor and terms and of any authorized denomination as requested by such Person in aggregate principal amount equal to and in exchange for such person's beneficial interest in the Global Security; and (2) to such Depositary a new Global Security of like tenor - and terms and in a denomination equal to the difference, if any, between the principal amount of the surrendered Global Security and the aggregate principal amount of Securities delivered to Holders thereof.

(iv) In any exchange provided for in any of the preceding three paragraphs, the Issuer will execute, the Guarantors will endorse and the Trustee will authenticate and deliver individual Securities in definitive registered form in authorized denominations. Upon the exchange of a Global Security for individual Securities, such Global Security shall be canceled by the Trustee. Securities issued in exchange for a Global Security pursuant to this Section shall be registered in such names and in such authorized denominations as the Depositary for such Global Security, pursuant to instructions from its direct or indirect participants or otherwise, shall instruct the Trustee. The Trustee shall deliver such Securities to the Persons in whose names such Securities are so registered.

SECTION 2.14 CUSIP Numbers. The Issuer in issuing the Securities may use "CUSIP" numbers (if then generally in use), and, if so, the Trustee shall use "CUSIP" numbers in notices of redemption as a convenience to Holders; provided that any such notice may state that no representation is made as to the correctness of such numbers either as printed on the Securities or as contained in any notice of a redemption and that reliance may be placed only on the other identification numbers printed on the Securities, and any such redemption shall not be affected by any defect in or omission of such numbers. The Issuer will promptly notify the Trustee of any change in the "CUSIP" numbers.

### ARTICLE THREE

#### COVENANTS OF THE ISSUER AND THE TRUSTEE
----------------------------------------------

SECTION 3.1 Payment of Principal and Interest. The Issuer covenants and agrees for the benefit of each series of Securities that it will duly and punctually pay or cause to be paid the principal of, and interest on, each of the Securities of such series at the place or places, at the respective times and in the manner provided in such Securities. Each installment of such interest on the Securities of any series may be paid by mailing checks for such interest payable to or upon the written order of the holders of the Securities entitled thereto as they shall appear on the registry books of the Issuer.

SECTION 3.2 Offices for Payments, etc. So long as any of the Securities remain outstanding, the Issuer will maintain in The Borough of Manhattan, The City of New York for each series: an office or agency (a) where the Securities may be presented for payment, (b) where the Securities may be presented for registration of transfer and for exchange as in this Indenture provided and (c) where notices and demands to or upon the Issuer in respect of the Securities or of this Indenture may be served. The Issuer will give to the Trustee written notice of the location of any such office or agency and of any change of location thereof. Unless otherwise specified in accordance with Section 2.4, the Issuer hereby initially designates the Corporate Trust Office of The Bank of New York, 101 Barclay Street, 21 W, New York, New York 10286, acting as the Issuer's agent, as the office to be maintained by it for each such purpose. In case the Issuer shall fail to so designate or maintain any such office or agency or shall fail to give such notice of the location or of any change in the location thereof, presentations and demands may be made and notices may be served at the Corporate Trust Office.

15

SECTION 3.3 Appointment to Fill a Vacancy in Office of Trustee. The Issuer, whenever necessary to avoid or fill a vacancy in the office of the Trustee, will appoint, in the manner provided in Section 5.9, a Trustee, so that there shall at all times be a Trustee with respect to each series of Securities hereunder.

SECTION 3.4 Paying Agent. Whenever the Issuer shall appoint a paying agent other than the Trustee with respect to the Securities of any series, it will cause such paying agent to execute and deliver to the Trustee an instrument in which such agent shall agree with the Trustee, subject to the provisions of this Section.

(a) that it will hold all sums received by it as such agent for the payment of the principal of or interest on the Securities of such series (whether such sums have been paid to it by the Issuer or by any other obligor on the Securities of such series) in trust for the benefit of the Holders of the Securities of such series or of the Trustee,

(b) that it will give the Trustee notice of any failure by the Issuer (or by any other obligor on the Securities of such series) to make any payment of the principal of or interest on the Securities of such series when the same shall be due and payable, and

(c) pay any such sums so held in trust by it to the Trustee upon the Trustee's written request at any time during the continuance of the failure referred to in clause (b) above.

The Issuer will, on or prior to each due date of the principal of or interest on the Securities of such series, deposit with the paying agent a sum sufficient to pay such principal or interest so becoming due, and (unless such paying agent is the Trustee) the Issuer will promptly notify the Trustee of any failure to take such action.

If the Issuer shall act as its own paying agent with respect to the Securities of any series, it will, on or before each due date of the principal of or interest on the Securities of such series, set aside, segregate and hold in trust for the benefit of the Holders of the Securities of such series a sum sufficient to pay such principal or interest so becoming due. The Issuer will promptly notify the Trustee of any failure to take such action.

Anything in this Section to the contrary notwithstanding, the Issuer may at any time, for the purpose of obtaining a satisfaction and discharge with respect to one or more or all series of Securities hereunder, or for any other reason, pay or cause to be paid to the Trustee all sums held in trust for any such series by the Issuer or any paying agent hereunder, as required by this Section, such sums to be held by the Trustee upon the trusts herein contained.

Anything in this Section to the contrary notwithstanding, the agreement to hold sums in trust as provided in this Section is subject to the provisions of Section 9.3 and 9.4.

SECTION 3.5 Certificate of the Issuer and the Guarantors. So long as any of the Securities remain outstanding, the Issuer, Tyco and any other Guarantor will furnish to the Trustee on or before March 31 in each year (beginning with 1999) a brief certificate (which need not comply with Section 10.5) executed by the principal executive, financial or accounting officer of each of the Issuer, Tyco and such Guarantor on their respective behalf as to his or her knowledge of the Issuer's, Tyco's and such Guarantor's, as the case may be, compliance with all covenants and agreements under the Indenture required to be complied with by the Issuer, Tyco and such Guarantor, respectively, (such compliance to be determined without regard to any

16

period of grace or requirement of notice provided under the Indenture), such certificate need not include a reference to any non-compliance that has been fully cured prior to the date as of which such certificate speaks.

SECTION 3.6 Securityholders Lists. If and so long as the Trustee shall not be the Security registrar for the Securities of any series, the Issuer will furnish or cause to be furnished to the Trustee a list in such form as the Trustee may reasonably require of the names and addresses of the holders of the Securities of such series pursuant to Section 312 of the Trust Indenture Act of 1939 (a) semi-annually not more than 15 days after each record date for the payment of interest on such Securities, as hereinabove specified, as of such record date and on dates to be determined pursuant to Section 2.4 for non-interest bearing securities in each year, and (b) at such other times as the Trustee may request in writing, within thirty days after receipt by the Issuer of any such request as of a date not more than 15 days prior to the time such information is furnished.

SECTION 3.7 Reports by the Issuer and Tyco. So long as any of the Securities remain outstanding, the Issuer and Tyco each covenants to file with the Trustee, within 15 days after the Issuer and Tyco are required to file the same with the Commission, copies of the annual reports and of the information, documents, and other reports which the Issuer and Tyco may be required to file with the Commission pursuant to Section 13 or Section 15(d) of the Securities Exchange Act of 1934; provided, however, that the Issuer and Tyco shall have no obligation to file such reports with the Trustee so long as no Securities of any series are Outstanding.

SECTION 3.8 Reports by the Trustee. Any Trustee's report required under Section 313(a) of the Trust Indenture Act of 1939 shall be transmitted on or before July 15 in each year following the date hereof, so long as any Securities are outstanding hereunder, and shall be dated as of a date convenient to the Trustee no more than 60 nor less than 45 days prior thereto.

SECTION 3.9 Limitations on Liens. After the date hereof and so long as any Securities are Outstanding (but subject to defeasance, as provided in the Indenture), the Issuer will not, and will not permit any Restricted Subsidiary to, issue, assume or guarantee any Indebtedness which is secured by a mortgage, pledge, security interest, lien or encumbrance (each a "lien") upon any Principal Property, or any shares of stock of or Indebtedness issued by any Restricted Subsidiary, whether now owned or hereafter acquired, without effectively providing that, for so long as such lien shall continue in existence with respect to such secured Indebtedness, the Securities (together with, if the Issuer shall so determine, any other Indebtedness of the Issuer ranking equally with the Securities, it being understood that for purposes hereof, Indebtedness which is secured by a lien and Indebtedness which is not so secured shall not, solely by reason of such lien, be deemed to be of different ranking) shall be equally and ratably secured by a lien ranking ratably with or equal to (or at the Issuer's option prior to) such secured Indebtedness; provided, however, that the foregoing covenant shall not apply to:

(a) liens existing on the date the Securities of the subject series are issued;

(b) liens on the stock, assets or Indebtedness of a Person existing at the same time such Person becomes a Restricted Subsidiary unless created in contemplation of such Restricted Subsidiary becoming such;

(c) liens on any assets or Indebtedness of a Person existing at the time such Person is merged into the Issuer or a Restricted Subsidiary or at the time of a purchase, lease or other acquisition of the assets of a corporation or firm as an entirety or substantially as an entirety by the Issuer or any Restricted Subsidiary;

17

(d) liens on any Principal Property existing at the time of acquisition thereof by the Issuer or any Restricted Subsidiary, or liens to secure the payment of the purchase price of such Principal Property by the Issuer or any Restricted Subsidiary, or to secure any Indebtedness incurred, assumed or guaranteed by the Issuer or a Restricted Subsidiary for the purpose of financing all or any part of the purchase price of such Principal Property or improvements or construction thereon, which Indebtedness is incurred, assumed or guaranteed prior to, at the time of, or within one year after such acquisition (or in the case of real property, completion of such improvement or construction or commencement of full operation of such property, whichever is later); provided, however, that in the case of any such acquisition, construction or improvement, the lien shall not apply to any Principal Property theretofore owned by the Issuer or a Restricted Subsidiary, other than the Principal Property so acquired, constructed or improved;

(e) liens securing Indebtedness owing by any Restricted Subsidiary to the Issuer, Tyco or a Subsidiary or by the Issuer to Tyco;

(f) liens in favor of the United States or any State thereof, or any department, agency or instrumentality or political subdivision of the United States of America or any State thereof, or in favor of any other country, or any political subdivision thereof, to secure partial, progress, advance or other payments pursuant to any contract, statute, rule or regulation or to secure any Indebtedness incurred or guaranteed for the purpose of financing all or any part of the purchase price (or, in the case of real property, the cost of construction or improvement) of the Principal Property subject to such liens (including but not limited to, liens incurred in connection with pollution control, industrial revenue or similar financings);

(g) pledges, liens or deposits under worker's compensation or similar legislation, and liens thereunder which are not currently dischargeable, or in connection with bids, tenders, contracts (other than for the payment of money) or leases to which the Issuer or any Restricted Subsidiary is a party, or to secure the public or statutory obligations of the Issuer or any Restricted Subsidiary, or in connection with obtaining or maintaining self-insurance, or to obtain the benefits of any law, regulation or arrangement pertaining to unemployment insurance, old age pensions, social security or similar matters, or to secure surety, performance, appeal or customs bonds to which the Issuer or any Restricted Subsidiary is a party, or in litigation or other proceedings in connection with the matters heretofore referred to in this clause, such as, but not limited to, interpleader proceedings, and other similar pledges, liens or deposits made or incurred in the ordinary course of business;

(h) liens created by or resulting from any litigation or other proceeding which is being contested in good faith by appropriate proceedings, including liens arising out of judgments or awards against the Issuer or any Restricted Subsidiary with respect to which the Issuer or such Restricted Subsidiary is in good faith prosecuting an appeal or proceedings for review or for which the time to make an appeal has not yet expired; or final unappealable judgment liens which are satisfied within 15 days of the date of judgment; or liens incurred by the Issuer or any Restricted Subsidiary for the purpose of obtaining a stay or discharge in the course of any litigation or other proceeding to which the Issuer or such Restricted Subsidiary is a party;

(i) liens for taxes or assessments or governmental charges or levies not yet due or delinquent; or which can thereafter be paid without penalty, or which are being contested in good faith by appropriate proceedings; landlord's liens on property held under lease; and any other liens or charges incidental to the conduct of the business of the Issuer or any Restricted Subsidiary, or the ownership of their respective assets, which were not incurred in connection with the borrowing of money or the obtaining of advances or credit and which do not, in the

18

opinion of the Board of Directors of the Issuer, materially impair the use of such assets in the operation of the business of the Issuer or such Restricted Subsidiary or the value of such Principal Property for the purposes of such business;

(j) liens to secure the Issuer's or any Restricted Subsidiary's obligations under agreements with respect to spot, forward, future and option transactions, entered into in the ordinary course of business;

(k) liens not permitted by the foregoing clauses (a) to (j), inclusive, if at the time of, and after giving effect to, the creation or assumption of any such lien, the aggregate amount of all outstanding Indebtedness of the Issuer and its Restricted Subsidiaries (without duplication) secured by all such liens not so permitted by the foregoing clauses (a) through (j), inclusive, together with the Attributable Debt in respect of Sale and Lease-Back Transactions permitted by paragraph (a) under Section 3.10 do not exceed the greater of $100,000,000 and 10% of Consolidated Net Worth; and

(l) any extension, renewal or replacement (or successive extensions, renewals or replacements) in whole or in part, of any lien referred to in the foregoing clauses (a) to (k), inclusive; provided, however, that the principal amount of Indebtedness secured thereby unless otherwise excepted under clauses (a) through (k) shall not exceed the principal amount of Indebtedness so secured at the time of such extension, renewal or replacement, and that such extension, renewal or replacement shall be limited to all or a part of the assets (or any replacements therefor) which secured the lien so extended, renewed or replaced (plus improvements and construction on real property).

SECTION 3.10 Limitation on Sale and Lease-Back Transactions. The Issuer will not, and will not permit any Restricted Subsidiary to, enter into any Sale and Lease-Back Transaction unless:

(a) the Issuer or such Restricted Subsidiary would, at the time of entering into a Sale and Lease-Back Transaction, be entitled to incur Indebtedness secured by a lien on the Principal Property to be leased in an amount at least equal to the Attributable Debt in respect of such Sale and Lease-Back Transaction, without equally and ratably securing the Securities pursuant to Section 3.9; or

(b) the direct or indirect proceeds of the sale of the Principal Property to be leased are at least equal to the fair value of such Principal Property (as determined by the Issuer's Board of Directors) and an amount equal to the net proceeds from the sale of the property or assets so leased are applied, within 180 days of the effective date of any such Sale and Lease-Back Transaction, to the purchase or acquisition (or, in the case of real property, commencement of the construction) of property or assets or to the retirement (other than at maturity or pursuant to a mandatory sinking fund or mandatory redemption provision) of Securities, or of Funded Indebtedness of the Issuer or a consolidated Subsidiary ranking on a parity with or senior to the Securities; provided that there shall be credited to the amount of net worth proceeds required to be applied pursuant to this clause (b) an amount equal to the sum of (i) the principal amount of Securities delivered within 180 days of the effective date of such Sale and Lease-Back Transaction to the Trustee for retirement and cancellation and (ii) the principal amount of other Funded Indebtedness voluntarily retired by the Issuer within such 180-day period, excluding retirements of Securities and other Funded Indebtedness as a result of conversions or pursuant to mandatory sinking fund or mandatory prepayment provisions.

19

SECTION 3.11 Limitation on Indebtedness of Subsidiaries. (a) The Issuer will not cause or permit any Subsidiary (which is not a Guarantor), directly or indirectly, to create, incur, assume, guarantee or otherwise in any manner become liable for the payment of or otherwise incur (collectively, "incur"), any Indebtedness (including any Acquired Indebtedness but excluding any Permitted Subsidiary Indebtedness) unless such Subsidiary simultaneously executes and delivers a supplemental indenture to the Indenture providing for a Guarantee of the Securities as provided in Section 3.16.

(b) Notwithstanding the foregoing, any Guarantee by a Subsidiary of the Securities shall provide by its terms that it (and all liens securing the same) shall be automatically and unconditionally released and discharged upon (i) any sale, exchange or transfer, to any Person not an Affiliate of the Issuer, of all of the Issuer's equity interests in, or all or substantially all the assets of, such Subsidiary, which transaction is in compliance with the terms of this Indenture and such Subsidiary is released from all guarantees, if any, by it of other Indebtedness of the Issuer or any Subsidiaries, (ii) the payment in full of all obligations under the Indebtedness giving rise to such Guarantee and (iii) with respect to Indebtedness described in clause (a) above constituting guarantees, the release by the holders of such Indebtedness of the guarantee by such Subsidiary (including any deemed release upon payment in full of all obligations under such Indebtedness), at such time as (A) no other Indebtedness (other than Permitted Subsidiary Indebtedness) has been guaranteed by such Subsidiary, as the case may be, or (B) the holders of all such other Indebtedness which is guaranteed by such Subsidiary also release the guarantee by such Subsidiary (including any deemed release upon payment in full of all obligations under such Indebtedness).

(c) For purposes of this Section 3.11, any Acquired Indebtedness shall not be deemed to have been incurred until 180 days from the date (A) the Person obligated on such Acquired Indebtedness becomes a Subsidiary or (B) the acquisition of assets in connection with which such Acquired Indebtedness was assumed is consummated.

SECTION 3.12 Notice to Trustee. The Issuer, Tyco or any other Guarantor shall provide written notice to the Trustee within 30 days of the occurrence of any Event of Default under Section 4.1.

### ARTICLE FOUR

### REMEDIES OF THE TRUSTEE AND SECURITYHOLDERS ON EVENT OF DEFAULT

SECTION 4.1 Event of Default Defined; Acceleration of Maturity; Waiver of Default. "Event of Default" with respect to Securities of any series wherever used herein, means each one of the following events which shall have occurred and be continuing (whatever the reason for such Event of Default and whether it shall be voluntary or involuntary or be effected by operation of law or pursuant to any judgment, decree or order of any court or any order, rule or regulation of any administrative or governmental body):

(a) default in the payment of any installment of interest upon or any Additional Amounts in respect of any of the Securities of such series as and when the same shall become due and payable, and continuance of such default for a period of 30 days; or

(b) default in the payment of all or any part of the principal on any of the

20

Securities of such series as and when the same shall become due and payable either at maturity, upon redemption, by declaration or otherwise; or

(c) default in the payment of any sinking fund installment as and when the same shall become due and payable by the terms of the Securities of such series; or

(d) default in the performance, or breach, of any covenant or agreement of the Issuer, Tyco or any other Guarantor in respect of the Securities of such series and related Guarantees (other than a covenant or agreement in respect of the Securities of such series and related Guarantees a default in whose performance or whose breach is elsewhere in this Section specifically dealt with), and continuance of such default or breach for a period of 90 days after the date on which there has been given, by registered or certified mail, to the Issuer by the Trustee or to the Issuer and the Trustee by the Holders of at least 25% in principal amount of the Outstanding Securities of all series affected thereby, a written notice specifying such default or breach and requiring it to be remedied and stating that such notice is a "Notice of Default" hereunder; or

(e) an event of default, as defined in any indenture, including this Indenture, or instrument evidencing or under which the Issuer, Tyco or any other Guarantor on the date any determination shall be made under this clause (e), shall have outstanding at least $50,000,000 aggregate principal amount of Indebtedness for borrowed money (other than Non-Recourse Indebtedness), shall happen and be continuing and such event of default shall involve the failure to pay the principal of or interest on such Indebtedness (or any part thereof) on the final maturity date thereof after the expiration of any applicable grace period with respect thereto, or such Indebtedness shall have been accelerated so that the same shall be or become due and payable prior to the date on which the same would otherwise have become due and payable, and such acceleration shall not be rescinded or annulled within ten Business Days after notice thereof shall have been given to the Issuer, Tyco or such Guarantor, as the case may be, by the Trustee (if such event be known to it), or to the Issuer, Tyco or such Guarantor, as the case may be, and the Trustee by the Holders of at least 25% in aggregate principal amount of all of the Securities at the time Outstanding (treated as one class); provided that, if such event of default under such indenture or instrument shall be remedied or cured by the Issuer, Tyco or such Guarantor, as the case may be, or waived by the requisite holders of such indebtedness, then the Event of Default hereunder by reason thereof shall be deemed likewise to have been thereupon remedied, cured or waived without further action upon the part of either the Trustee or any of the Securityholders, and provided further, however, that subject to the provisions of Sections 5.1 and 5.2, the Trustee shall not be charged with knowledge of any such event of default unless written notice thereof shall have been given to the Trustee by the Issuer, Tyco or such Guarantor, as the case may be, by the holder or an agent of the holder of any such Indebtedness, by the trustee then acting under any indenture or other instrument under which such default shall have occurred, or by the Holders of not less than 25% in the aggregate principal amount of the Securities at the time Outstanding (treated as one class);

(f) any Guarantee shall for any reason cease to be, or shall for any reason be asserted in writing by any Guarantor or the Issuer not to be in full force and effect and enforceable in accordance with its terms except to the extent contemplated by the Indenture and any such Guarantee;

(g) a court having jurisdiction in the premises shall enter a decree or order for relief in respect of the Issuer, Tyco or any Significant Subsidiary Guarantor in an

21

involuntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect, or appointing a receiver, liquidator, assignee, custodian, trustee or sequestrator (or similar official) of the Issuer, Tyco or such Significant Subsidiary Guarantor or - for any substantial part of its property or ordering the winding up or liquidation of its affairs, and such decree or order shall remain unstayed and in effect for a period of 60 consecutive days; or

(h) the Issuer, Tyco or any Significant Subsidiary Guarantor shall commence a voluntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect, or consent to the entry of an order for relief in an involuntary case under any such law, or consent to the appointment of or taking possession by a receiver, liquidator, assignee, custodian, trustee or sequestrator (or similar official) of the Issuer, Tyco or such Significant Subsidiary Guarantor or for any substantial part of its property, or make any general assignment for the benefit of creditors; or

(i) any other Event of Default provided in the supplemental indenture or resolution of the Board of Directors under which such series of Securities is issued or in the form of Security for such series.

If an Event of Default described in clauses (a), (b), (c), (d), (f) or (i) above (if the Event of Default under clause (d) or (i), as the case may be, is with respect to less than all series of Securities then Outstanding) occurs and is continuing, then, and in each and every such case, unless the principal of all of the Securities of such series shall have already become due and payable, either the Trustee or the Holders of not less than 25% in aggregate principal amount of the Securities of such series then Outstanding hereunder (each such series voting as a separate class) by notice in writing to the Issuer (and to the Trustee if given by Securityholders), may declare the entire principal (or, if the Securities of such series are Original Issue Discount Securities, such portion of the principal amount as may be specified in the terms of such series) of all Securities of such series and the interest accrued thereon, if any, to be due and payable immediately, and upon any such declaration the same shall become immediately due and payable. If an Event of Default described in clause (d) or (i) (if the Event of Default under clause (d) or (i), as the case may be, is with respect to all series of Securities then Outstanding), (e), (g) or (h) occurs and is continuing, then and in each and every such case, unless the principal of all the Securities shall have already become due and payable, either the Trustee or the Holders of not less than 25% in aggregate principal amount of all the Securities then Outstanding hereunder (treated as one class), by notice in writing to the Issuer (and the to Trustee if given by Securityholders), may declare the entire principal (or, if any Securities are Original Issue Discount Securities, such portion of the principal as may be specified in the terms thereof) of all the Securities then outstanding and interest accrued thereon, if any, to be due and payable immediately, and upon any such declaration the same shall become immediately due and payable.

The foregoing provisions, however, are subject to the condition that if, at any time after the principal (or, if the Securities are Original Issue Discount Securities, such portion of the principal as may be specified in the terms thereof) of the Securities of any series (or of all the Securities, as the case may be) shall have been so declared due and payable, and before any judgment or decree for the payment of the moneys due shall have been obtained or entered as hereinafter provided, the Issuer, Tyco or any other Guarantor shall pay or shall deposit with the Trustee a sum sufficient to pay all matured installments of interest upon all the Securities of such series (or of all the Securities, as the case may be) and the principal of any and all Securities of such series (or of all the Securities, as the case may be) which shall have become due otherwise than by acceleration (with interest upon such principal and, to the extent that payment of such interest is enforceable under applicable law, on overdue installments of interest, at the same rate

22

as the rate of interest or Yield to Maturity (in the case of Original Issue
Discount Securities) specified in the Securities of such series (or at the
respective rates of interest or Yields to Maturity of all the Securities, as the
case may be) to the date of such payment or deposit; and such amount as shall be
sufficient to cover reasonable compensation to the Trustee, its agents,
attorneys and counsel, and all other expenses and liabilities incurred, and all
advances made, by the Trustee except as a result of negligence or bad faith, and
if any and all Events of Default under the Indenture, other than the non-payment
of the principal of Securities which shall have become due by acceleration,
shall have been cured, waived or otherwise remedied as provided herein -- then
and in every such case the Holders of a majority in aggregate principal amount
of all the Securities of such series, each series voting as a separate class (or
of all the Securities, as the case may be, voting as a single class), then
outstanding, by written notice to the Issuer and to the Trustee, may waive all
defaults with respect to such series (or with respect to all the Securities, as
the case may be) and rescind and annul such declaration and its consequences,
but no such waiver or rescission and annulment shall extend to or shall affect
any subsequent default or shall impair any right consequent thereon.

For all purposes under this Indenture, if a portion of the principal
of any Original Issue Discount Securities shall have been accelerated and
declared due and payable pursuant to the provisions hereof, then, from and after
such declaration, unless such declaration has been rescinded and annulled, the
principal amount of such Original Issue Discount Securities shall be deemed, for
all purposes hereunder, to be such portion of the principal thereof as shall be
due and payable as a result of such acceleration, and payment of such portion of
the principal thereof as shall be due and payable as a result of such
acceleration, together with interest, if any, thereon and all other amounts
owing thereunder, shall constitute payment in full of such Original Issue
Discount Securities.

SECTION 4.2 Collection of Indebtedness by Trustee; Trustee May Prove
Debt. Each of the Issuer, Tyco and any other Guarantor covenants that (a) in
case default shall be made in the payment of any installment of interest on any
of the Securities of any series when such interest shall have become due and
payable, and such default shall have continued for a period of 30 days or (b) in
case default shall be made in the payment of all or any part of the principal of
any of the Securities of any series when the same shall have become due and
payable, whether upon maturity of the Securities of such series or upon any
redemption or by declaration or otherwise -- then upon demand of the Trustee,
the Issuer, Tyco and such Guarantor will pay to the Trustee for the benefit of
the Holders of the Securities of such series the whole amount that then shall
have become due and payable on all Securities of series for principal or
interest, as the case may be (with interest to the date of such payment upon the
overdue principal and to the extent that payment of such interest is enforceable
under applicable law, on overdue installments of interest at the same rate as
the rate of interest or Yield to Maturity (in the case of Original Issue
Discount Securities) specified in the Securities of such series); and in
addition thereto, such further amount as shall be sufficient to cover the costs
and expenses of collection, including reasonable compensation to the Trustee and
each predecessor Trustee, their respective agents, attorneys and counsel, and
any expenses and liabilities incurred, and all advances made, by the Trustee and
each predecessor Trustee except as a result of its negligence or bad faith.

Until such demand is made by the Trustee, the Issuer may pay the
principal of and interest on the Securities of any series to the Holders,
whether or not the principal of and interest on the Securities of such series be
overdue.

In case the Issuer, Tyco or any other Guarantor shall fail forthwith
to pay such amounts upon such demand, the Trustee, in its own name and as
trustee of an express trust, shall be entitled and empowered to institute any
action or proceedings at law or in equity for the

23

collection of the sums so due and unpaid, and may prosecute any such action or proceedings to judgment or final decree, and may enforce any such judgment or final decree against the Issuer, Tyco, such Guarantor or other obligor upon such Securities and collect in the manner provided by law out of the property of the Issuer, Tyco, such Guarantor or other obligor upon such Securities, wherever situated, the moneys adjudged or decreed to be payable.

In case there shall be pending proceedings relative to the Issuer, Tyco, any other Guarantor or any other obligor upon the Securities under Title 11 of the United States Code or any other applicable Federal or state bankruptcy, insolvency or other similar law, or in case a receiver, assignee or trustee in bankruptcy or reorganization, liquidator, sequestrator or similar official shall have been appointed for or taken possession of the Issuer, Tyco or such Guarantor or their respective property or such other obligor or its property, or in case of any other comparable judicial proceedings relative to the Issuer, Tyco, such Guarantor or other obligor upon the Securities of any series, or to the creditors or property of the Issuer, Tyco, such Guarantor or such other obligor, the Trustee, irrespective of whether the principal of any Securities shall then be due and payable as therein expressed or by declaration or otherwise and irrespective of whether the Trustee shall have made any demand pursuant to the provisions of this Section, shall be entitled and empowered, by intervention in such proceedings or otherwise:

(a) to file and prove a claim or claims for the whole amount of principal and interest (or, if the Securities of any series are Original Issue Discount Securities, such portion of the principal amount as may be specified in the terms of such series) owing and unpaid in respect of the Securities of any series, and to file such other papers or documents as may be necessary or advisable in order to have the claims of the Trustee (including any claim for reasonable compensation to the Trustee and each predecessor Trustee, and their respective agents, attorneys and counsel, and for reimbursement of all expenses and liabilities incurred, and all advances made, by the Trustee and each predecessor Trustee, except as a result of negligence or bad faith) and of the Securityholders allowed in any judicial proceedings relative to the Issuer Tyco, such Guarantor or other obligor upon the Securities of any series, or to the creditors or property of the Issuer Tyco, such Guarantor or such other obligor,

(b) unless prohibited by applicable law and regulations, to vote on behalf of the holders of the Securities of any series in any election of a trustee or a standby trustee in arrangement, reorganization, liquidation or other bankruptcy or insolvency proceedings or person performing similar functions in comparable proceedings, and

(c) to collect and receive any moneys or other property payable or deliverable on any such claims, and to distribute all amounts received with respect to the claims of the Securityholders and of the Trustee on their behalf; and any trustee, receiver, or liquidator, custodian or other similar official is hereby authorized by each of the Securityholders to make payments to the Trustee, and, in the event that the Trustee shall consent to the making of payments directly to the Securityholders, to pay to the Trustee such amounts as shall be sufficient to cover reasonable compensation to the Trustee, each predecessor Trustee and their respective agents, attorneys and counsel, and all other expenses and liabilities incurred, and all advances made, by the Trustee and each predecessor Trustee except as a result of negligence or bad faith and all other amounts due to the Trustee or any predecessor Trustee pursuant to Section 5.6.

Nothing herein contained shall be deemed to authorize the Trustee to authorize or consent to or vote for or accept or adopt on behalf of any Securityholder any plan or reorganization, arrangement, adjustment or composition affecting the Securities of any series or

26

the rights of any Holder thereof, or to authorize the Trustee to vote in respect of the claim of any securityholder in any such proceeding except, as aforesaid, to vote for the election of a trustee in bankruptcy or similar person.

All rights of action and of asserting claims under this Indenture, or under any of the Securities, may be enforced by the Trustee without the possession of any of the Securities or the production thereof in any trial or other proceedings relative thereto, and any such action or proceedings instituted by the Trustee shall be brought in its own name as trustee of an express trust, and any recovery of judgment, subject to the payment of the expenses, disbursements and compensation of the Trustee, each predecessor Trustee and their respective agents and attorneys, shall be for the ratable benefit of the Holders of the Securities in respect of which such action was taken.

In any proceedings brought by the Trustee (and also any proceedings involving the interpretation of any provision of this Indenture to which the Trustee shall be a party), the Trustee shall be held to represent all the Holders of the Securities in respect to which such action was taken, and it shall not be necessary to make any Holders of such Securities parties to any such proceedings.

SECTION 4.3 Application of Proceeds. Any moneys collected by the Trustee pursuant to this Article in respect of any series shall be applied in the following order at the date or dates fixed by the Trustee and, in case of the distribution of such moneys on account of principal or interest, upon presentation of the several Securities in respect of which monies have been collected and stamping (or otherwise noting) thereon the payment, or issuing Securities of such series in reduced principal amounts in exchange for the presented Securities of like series if only partially paid, or upon surrender thereof if fully paid;

FIRST: To the payment of costs and expenses applicable to such series in respect of which monies have been collected, including reasonable compensation to the Trustee and each predecessor Trustee and their respective agents and attorneys and of all expenses and liabilities incurred, and all advances made, by the Trustee and each predecessor Trustee except as a result of negligence or bad faith, and all other amounts due to the Trustee or any predecessor Trustee pursuant to Section 5.6;

SECOND: In case the principal of the Securities of such series in respect of which moneys have been collected shall not have become and be then due and payable, to the payment of interest on the Securities of such series in default in the order of the maturity of the installments of such interest, with interest (to the extent that such interest has been collected by the Trustee) upon the overdue installments of interest at the same rate as the rate of interest or Yield to Maturity (in the case of Original Issue Discount Securities) specified in such Securities, such payments to be made ratably to the persons entitled thereto, without discrimination or preference;

THIRD: in case the principal of the Securities of such series in respect of which moneys have been collected shall have become and shall be then due and payable, to the payment of the whole amount then owing and unpaid upon all the Securities of such series for principal and interest, with interest upon the overdue principal, and (to the extent that such interest has been collected by the Trustee) upon overdue installments of interest at the same rate as the rate of interest or Yield to Maturity (in the case of Original Issue Discount Securities) specified in the Securities of such series; and in case such moneys shall be insufficient to pay in full the whole amount so due and unpaid upon the Securities of such series, then to the payment of such principal and interest or Yield to Maturity,

25

without preference or priority of principal over interest or Yield to
Maturity, or of interest or Yield to Maturity over principal, or of any
installment of interest over any other installment of interest, or of any
Security of such series over any other Security of such series, ratably to
the aggregate of such principal and accrued and unpaid interest or Yield to
Maturity; and

FOURTH: To the payment of the remainder, if any, to the Issuer or any
other person lawfully entitled thereto.

SECTION 4.4 Suits for Enforcement. In case an Event of Default has
occurred, has not been waived and is continuing, the Trustee may in its
discretion proceed to protect and enforce the rights vested in it by this
Indenture by such appropriate judicial proceedings as the Trustee shall deem
most effectual to protect and enforce any of such rights, either at law or in
equity or in bankruptcy or otherwise, whether for the specific enforcement of
any covenant or agreement contained in this Indenture or in aid of the exercise
of any power granted in this Indenture or to enforce any other legal or
equitable right vested in the Trustee by this Indenture or by law.

SECTION 4.5 Restoration of Rights on Abandonment of Proceedings. In
case the Trustee shall have proceeded to enforce any right under this Indenture
and such proceedings shall have been discontinued or abandoned for any reason,
or shall have been determined adversely to the Trustee, then and in every such
case the Issuer and the Trustee shall be restored respectively to their former
positions and rights hereunder, and all rights, remedies and powers of the
Issuer, the Trustee and the Securityholders shall continue as though no such
proceedings had been taken.

SECTION 4.6 Limitations on Suits by Securityholders. No Holder of any
Security of any series shall have any right by virtue or by availing of any
provision of this Indenture to institute any action or proceeding at law or in
equity or in bankruptcy or otherwise upon or under or with respect to this
Indenture, or for the appointment of a trustee, receiver, liquidator, custodian
or other similar official or for any other remedy hereunder, unless such Holder
previously shall have given to the Trustee written notice of default and of the
continuance thereof, as hereinbefore provided, and unless also the Holders of
not less than 25% in aggregate principal amount of the Securities of such series
then outstanding shall have made written request upon the Trustee to institute
such action or proceedings in its own name as trustee hereunder and shall have
offered to the Trustee such reasonable indemnity as it may require against the
costs, expenses and liabilities to be incurred therein or thereby and the
Trustee for 60 days after its receipt of such notice, request and offer of
indemnity shall have failed to institute any such action or proceeding and no
direction inconsistent with such written request shall have been given to the
Trustee pursuant to Section 4.9; it being understood and intended, and being
expressly covenanted by the taker and Holder of every Security with every other
taker and Holder and the Trustee, that no one or more Holders of Securities of
any series shall have any right in any manner whatever by virtue or by availing
of any provision of this Indenture to affect, disturb or prejudice the rights of
any other such Holder of Securities, or to obtain or seek to obtain priority
over or preference to any other such Holder or to enforce any right under this
Indenture, except in the manner herein provided and for the equal, ratable and
common benefit of all Holders of Securities of the applicable series. For the
protection and enforcement of the provisions of this Section, each and every
Securityholder and the Trustee shall be entitled to such relief as can be given
either at law or in equity.

26

SECTION 4.7 Unconditional Right of Securityholders to Institute Certain Suits. Notwithstanding any other provision in this Indenture and any provision of any Security, the right of any Holder of any Security to receive payment of the principal of and interest on such Security on or after the respective due dates expressed in such Security, or to institute suit for the enforcement of any such payment on or after such respective dates, shall not be impaired or affected without the consent of such Holder.

SECTION 4.8 Powers and Remedies Cumulative; Delay or Omission Not Waiver of Default. Except as provided in Section 4.6, no right or remedy herein conferred upon or reserved to the Trustee or to the Securityholders is intended to be exclusive of any other right or remedy, and every right and remedy shall, to the extent permitted by law, be cumulative and in addition to every other right and remedy given hereunder or now or hereafter existing at law or in equity or otherwise. The assertion or employment of any right or remedy hereunder, or otherwise, shall not prevent the concurrent assertion or employment of any other appropriate right or remedy.

No delay or omission of the Trustee or of any Securityholder to exercise any right or power accruing upon any Event of Default occurring and continuing as aforesaid shall impair any such right or power or shall be construed to be a waiver of any such Event of Default or an acquiescence therein; and, subject to Section 4.6, every power and remedy given by this Indenture or by law to the Trustee or to the Securityholders may be exercised from time to time, and as often as shall be deemed expedient, by the Trustee or by the Securityholders.

SECTION 4.9 Control by Securityholders. The Holders of a majority in aggregate principal amount of the Securities of each series affected (with each series voting as a separate class) at the time Outstanding shall have the right to direct the time, method, and place of conducting any proceeding for any remedy available to the Trustee, or exercising any trust or power conferred on the Trustee with respect to the Securities of such series by this Indenture; provided that such direction shall not be otherwise than in accordance with law and the provisions of this Indenture and provided further that (subject to the provisions of Section 5.1) the Trustee shall have the right to decline to follow any such direction if the Trustee, being advised by counsel, shall determine that the action or proceeding so directed may not lawfully be taken or if the Trustee in good faith by its board of directors, the executive committee, or a trust committee of directors or Responsible Officers of the Trustee shall determine that the action or proceedings so directed would involve the Trustee in personal liability or if the Trustee in good faith shall so determine that the actions or forebearances specified in or pursuant to such direction would be unduly prejudicial to the interests of Holders of the Securities of all series so affected not joining in the giving of said direction, it being understood that (subject to Section 5.1) the Trustee shall have no duty to ascertain whether or not such actions or forebearances are unduly prejudicial to such Holders.

Nothing in this Indenture shall impair the right of the Trustee in its discretion to take any action deemed proper by the Trustee and which is not inconsistent with such direction or directions by Securityholders.

SECTION 4.10 Waiver of Past Defaults. Prior to a declaration of the acceleration of the maturity of the Securities of any series as provided in Section 4.1, the Holders of a majority in aggregate principal amount of the Securities of such series at the time Outstanding (each such series voting as a separate class) may on behalf of the Holders of all the Securities of such series waive any past default or Event of Default described in clause (d) or (i) of Section 4.1 which relates to less than all series of Securities then Outstanding, except a default in respect of a covenant or provision hereof which cannot be modified or amended without the consent of each

27

Holder affected as provided in Section 7.2. Prior to a declaration of acceleration of the maturity of the Securities of any series as provided in Section 4.1, the Holders of Securities of a majority in principal amount of all the Securities then Outstanding (voting as one class) may on behalf of all Holders waive any past default or Event of Default referred to in said clause (d) or (i) which relates to all series of Securities then Outstanding, or described in clause (e), (g) or (h) of Section 4.1, except a default in respect of a covenant or provision hereof which cannot be modified or amended without the consent of the Holder of each Security affected as provided in Section 7.2. In the case of any such waiver, the Issuer, Tyco, any other Guarantor, the Trustee and the Holders of the Securities of each series affected shall be restored to their former positions and rights hereunder, respectively.

Upon any such waiver, such default shall cease to exist and be deemed to have been cured and not to have occurred, and any Event of Default arising therefrom be deemed to have been cured, and not to have occurred for every purpose of this Indenture; but no such waiver shall extend to any subsequent or other default or Event of Default or impair any right consequent thereon.

SECTION 4.11 Trustee to Give Notice of Default, But May Withhold in Certain Circumstances. The Trustee shall give to the Securityholders of any series, as the names and addresses of such Holders appear on the registry books, notice by mail of all defaults known to the Trustee which have occurred with respect to such series, such notice to be transmitted within 90 days after the occurrence thereof, unless such defaults shall have been cured before the giving of such notice (the term "default" or "defaults" for the purposes of this Section being hereby defined to mean any event or condition which is, or with notice or lapse of time or both would become, an Event of Default); provided that, except in the case of default in the payment of the principal of or interest on any of the Securities of such series, or in the payment of any sinking or purchase fund installment with respect to the Securities of such series, the Trustee shall be protected in withholding such notice if and so long as the board of directors, the executive committee, or a trust committee of directors or trustees and/or Responsible Officers of the Trustee in good faith determines that the withholding of such notice is in the interests of the Securityholders of such series.

SECTION 4.12 Right of Court to Require Filing of Undertaking to Pay Costs. All parties to this Indenture agree, and each Holder of any Security by his acceptance thereof shall be deemed to have agreed, that any court may in its discretion require, in any suit for the enforcement of any right or remedy under this Indenture or in any suit against the Trustee for any action taken, suffered or omitted by it as Trustee, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, and that such court may in its discretion assess reasonable costs, including reasonable attorneys' fees, against any party litigant in such suit, having due regard to the merits and good faith of the claims or defenses made by such party litigant; but the provisions of this Section shall not apply to any suit instituted by the Trustee, to any suit instituted by any Securityholder or group of Securityholders of any series holding in the aggregate more than 10% in aggregate principal amount of the Securities of such series, or, in the case of any suit relating to or arising under clauses (d) or (i) of Section 4.1 (if the suit relates to Securities of more than one but less than all series), 10% in aggregate principal amount of Securities Outstanding affected thereby, or in the case of any suit relating to or arising under clauses (d) or (i) (if the suit relates to all the Securities then Outstanding (treated as one class), (e), (g) or (h) of Section 4.1, 10% in aggregate principal amount of all Securities Outstanding (treated as one class), or to any suit instituted by any Securityholder for the enforcement of the payment of the principal of or interest on any Security on or after the due date expressed in such Security.

ARTICLE FIVE

CONCERNING THE TRUSTEE

SECTION 5.1 Duties and Responsibilities of the Trustee; During Default; Prior to Default. With respect to the Holders of any series of Securities issued hereunder, the Trustee, prior to the occurrence of an Event of Default with respect to the Securities of a particular series and after the curing or waiving of all Events of Default which may have occurred with respect to such series, undertakes to perform such duties and only such duties as are specifically set forth in this Indenture. In case an Event of Default with respect to the Securities of a series has occurred (which has not been cured or waived) the Trustee shall exercise such of the rights and powers vested in it by this Indenture, and use the same degree of care and skill in their exercise, as a prudent man would exercise or use under the circumstances in the conduct of his own affairs.

No provision of this Indenture shall be construed to relieve the Trustee from liability for its own negligent action, its own negligent failure to act or its own willful misconduct, except that

(a) prior to the occurrence of an Event of Default with respect to the securities of any series and after the curing or waiving of all such Events of Default with respect to such series which may have occurred:

(i) the duties and obligations of the Trustee with respect to the Securities of any series shall be determined solely by the express provisions of this Indenture, and the Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth in this Indenture, and no implied covenants or obligations shall be read into this Indenture against the Trustee; and

(ii) in the absence of bad faith on the part of the Trustee, the Trustee may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon any statements, certificates or opinions furnished to the Trustee and conforming to the requirements of this Indenture; but in the case of any such statements, certificates or opinions which by any provision hereof are specifically required to be furnished to the Trustee, the Trustee shall be under a duty to examine the same to determine whether or not they conform to the requirements of this Indenture;

(b) the Trustee shall not be liable for any error of judgment made in good faith by a Responsible Officer or Responsible Officers of the Trustee, unless it shall be proved that the Trustee was negligent in ascertaining the pertinent facts; and

(c) the Trustee shall not be liable with respect to any action taken or omitted to be taken by it in good faith in accordance with the direction of the Holders pursuant to Section 4.9 relating to the time, method and place of conducting any proceeding for any remedy available to the Trustee, or exercising any trust or power conferred upon the Trustee, under this Indenture.

None of the provisions contained in this Indenture shall require the Trustee to expend or risk its own funds or otherwise incur personal financial liability in the performance of any of its duties or in the exercise of any of its rights or powers, if there shall be reasonable ground for believing that the repayment of such funds or adequate indemnity or security against

29

such liability is not reasonably assured to it.

The provisions of this Section 5.1 are in furtherance of and subject to Sections 315 and 316 of the Trust Indenture Act of 1939. Whether or not therein expressly so provided, every provision of this Indenture relating to the conduct or affecting the liability of or affording protection to the Trustee shall be subject to the provisions of this Section.

SECTION 5.2 Certain Rights of the Trustee. In furtherance of and subject to the Trust Indenture Act of 1939, and subject to Section 5.1:

(a) the Trustee may rely and shall be protected in acting or refraining from acting upon any resolution, Officers' Certificate or any other certificate, statement, instrument, opinion, report, notice, request, consent, order, bond, debenture, note, coupon, security or other paper or document believed by it to be genuine and to have been signed or presented by the proper party or parties;

(b) any request, direction, order or demand of the Issuer mentioned herein shall be sufficiently evidenced by an Officers' Certificate (unless other evidence in respect thereof be herein specifically prescribed); and any resolution of the Board of Directors may be evidenced to the Trustee by a copy thereof certified by any managing director or the secretary or an assistant secretary of the Issuer;

(c) the Trustee may consult with counsel and any advice or Opinion of Counsel shall be full and complete authorization and protection in respect of any action taken, suffered or omitted to be taken by it hereunder in good faith and in accordance with such advice or opinion of counsel;

(d) the Trustee shall be under no obligation to exercise any of the trusts or powers vested in it by this Indenture at the request, order or direction of any of the Securityholders pursuant to the provisions of this Indenture, unless such Securityholders shall have offered to the Trustee reasonable security or indemnity against the costs, expenses and liabilities which might be incurred therein or thereby;

(e) the Trustee shall not be liable for any action taken or omitted by it in good faith and believed by it to be authorized or within the discretion, rights or powers conferred upon it by this Indenture;

(f) prior to the occurrence of an Event of Default hereunder and after the curing or waiving of all Events of Default, the Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, approval, appraisal, bond, debenture, note, coupon, security, or other paper or document unless requested in writing so to do by the Holders of not less than a majority in aggregate principal amount of the Securities of all series affected then Outstanding; provided that, if the payment within a reasonable time to the Trustee of the costs, expenses or liabilities likely to be incurred by it in the making of such investigation is, in the opinion of the Trustee, not reasonably assured to the Trustee by the security afforded to it by the terms of this Indenture, the Trustee may require reasonable indemnity against such expenses or liabilities as a condition to proceeding; the reasonable expenses of every such investigation reasonably requested by the Holders as aforesaid shall be paid by the Issuer or, if paid by the Trustee or any predecessor trustee, shall be repaid by the Issuer upon demand; and

30

indebtedness shall be a lien senior to that of the Securities upon all property and funds held or collected by the Trustee as such, except funds held in trust for the benefit of the holders of particular Securities, and the Securities are hereby subordinated to such lien.

SECTION 5.7 Right of Trustee to Rely on Officers' Certificate, etc. Subject to Sections 5.1 and 5.2, whenever in the administration of the trusts of this Indenture the Trustee shall deem it necessary or desirable that a matter be proved or established prior to taking or suffering or omitting any action hereunder, such matter (unless other evidence in respect thereof be herein specifically prescribed) may, in the absence of negligence or bad faith on the part of the Trustee, be deemed to be conclusively proved and established by an Officers' Certificate delivered to the Trustee, and such certificate, in the absence of negligence or bad faith on the part of the Trustee, shall be full warrant to the Trustee for any action taken, suffered or omitted by it under the provisions of this Indenture upon the faith thereof.

SECTION 5.8 Persons Eligible for Appointment as Trustee. The Trustee for each series of Securities hereunder shall at all times be a corporation or national banking association having a combined capital and surplus of at least $50,000,000, and which is eligible in accordance with the provisions of Section 310(a) of the Trust Indenture Act of 1939. If such corporation or national banking association publishes reports of condition at least annually, pursuant to law or to the requirements of a Federal, State or District of Columbia supervising or examining authority, then for the purposes of this Section, the combined capital and surplus of such corporation shall be deemed to be its combined capital and surplus as set forth in its most recent report of condition so published.

SECTION 5.9 Resignation and Removal; Appointment of Successor Trustee. (a) The Trustee, or any trustee or trustees hereafter appointed, may at any time resign with respect to one or more or all series of Securities by giving written notice of resignation to the Issuer and by mailing notice thereof by first class mail to Holders of the applicable series of Securities at their last addresses as they shall appear on the Security register. Upon receiving such notice of resignation, the Issuer shall promptly appoint a successor trustee or trustees with respect to the applicable series by written instrument in duplicate, executed by authority of the Board of Directors of the Issuer, one copy of which instrument shall be delivered to the resigning Trustee and one copy to the successor trustee or trustees. If no successor trustee shall have been so appointed with respect to any series and have accepted appointment within 30 days after the mailing of such notice of resignation, the resigning trustee may petition any court of competent jurisdiction for the appointment of a successor trustee, or any Securityholder who has been a bona fide Holder of a Security or Securities of the applicable series for at least six months may, subject to the provisions of Section 4.11, on behalf of himself and all others similarly situated, petition any such court for the appointment of a successor trustee. Such court may thereupon, after such notice, if any, as it may deem proper and prescribe, appoint a successor trustee.

(b) In case at any time any of the following shall occur:

(i) the Trustee shall fail to comply with the provisions of Section 310(b) of the Trust Indenture Act of 1939 with respect to any series of Securities after written request therefor by the Issuer or by any Securityholder who has been a bona fide Holder of a Security or Securities of such series for at least six months; or

(ii) the Trustee shall cease to be eligible in accordance with the provisions of Section 310(a) of the Trust Indenture Act of 1939 and shall fail to resign after written request therefor by the Issuer or by any Securityholder; or

32

(iii) the Trustee shall become incapable of acting with respect to any series of Securities, or shall be adjudged a bankrupt or insolvent, or a receiver or liquidator of the Trustee or of its property shall be appointed, or any public officer shall take charge or control of the Trustee or of its property or affairs for the purpose of rehabilitation, conservation or liquidation;

then, in any such case, the Issuer may remove the Trustee with respect to the applicable series of Securities and appoint a successor trustee for such series by written instrument, in duplicate, executed by order of the Board of Directors of the Issuer, one copy of which instrument shall be delivered to the Trustee so removed and one copy to the successor trustee, or, subject to Section 315(e) of the Trust Indenture Act of 1939, any Securityholder who has been a bona fide holder of a Security or Securities of such series for at least six months may on behalf of himself and all others similarly situated, petition any court of competent jurisdiction for the removal of the Trustee and the appointment of a successor trustee with respect to such series. Such court may thereupon, after such notice, if any, as it may deem proper and prescribe, remove the Trustee and appoint a successor trustee.

(c) The Holders of a majority in aggregate principal amount of the Securities of such series at the time outstanding may at any time remove the Trustee with respect to Securities of such series and appoint a successor trustee with respect to the securities of such series by delivering to the Trustee so removed, to the successor trustee so appointed and to the Issuer the evidence provided for in Section 6.1 of the action in that regard taken by the Securityholders.

(d) Any resignation or removal of the Trustee with respect to any series and any appointment of a successor trustee with respect to such series pursuant to any of the provisions of this Section 5.9 shall become effective upon acceptance of appointment by the successor trustee as provided in Section 5.10.

SECTION 5.10 Acceptance of Appointment by Successor Trustee. Any successor trustee appointed as provided in Section 5.9 shall execute and deliver to the Issuer and to its predecessor trustee an instrument accepting such appointment hereunder, and thereupon the resignation or removal of the predecessor trustee with respect to all or any applicable series shall become effective and such successor trustee, without any further act, deed or conveyance, shall become vested with all rights, powers, duties and obligations with respect to such series of its predecessor hereunder, with like effect as if originally named as trustee for such series hereunder; but, nevertheless, on the written request of the Issuer or of the successor trustee, upon payment of its charges then unpaid, the trustee ceasing to act shall, subject to Section 9.8, pay over to the successor trustee all moneys at the time held by it hereunder and shall execute and deliver an instrument transferring to such successor trustee all such rights, powers, duties and obligations. Upon request of any such successor trustee, the Issuer shall execute any and all instruments in writing for more fully and certainly vesting in and confirming to such successor trustee all such rights and powers. Any trustee ceasing to act shall, nevertheless, retain a prior claim upon all property or funds held or collected by such trustee to secure any amounts then due it pursuant to the provisions of Section 5.6.

If a successor trustee is appointed with respect to the securities of one or more (but not all) series, the Issuer, the predecessor Trustee and each successor trustee with respect to the Securities of any applicable series shall execute and deliver an indenture supplemental hereto which shall contain such provisions as shall be deemed necessary or desirable to confirm that all the rights, powers, trusts and duties of the predecessor Trustee with respect to the securities of

33

any series as to which the predecessor Trustee is not retiring shall continue to be vested in the predecessor Trustee, and shall add to or change any of the provisions of this Indenture as shall be necessary to provide for or facilitate the administration of the trusts hereunder by more than one trustee, it being understood that nothing herein or in such supplemental indenture shall constitute such trustees co-trustees of the same trust and that each such trustee shall be trustee of a trust or trusts under separate indentures.

Upon acceptance of appointment by any successor trustee as provided in this Section 5.10, the Issuer shall mail notice thereof by first-class mail to the Holders of Securities of any series for which such successor trustee is acting as trustee at their last addresses as they shall appear in the Security register. If the acceptance of appointment is substantially contemporaneous with the resignation, then the notice called for by the preceding sentence may be combined with the notice called for by Section 5.9. If the Issuer fails to mail such notice within ten days after acceptance of appointment by the successor trustee, the successor trustee shall cause such notice to be mailed at the expense of the Issuer.

SECTION 5.11 Appointment of Co-Trustee.

(a) Notwithstanding any other provisions of this Indenture, at any time, for the purpose of meeting any legal requirement of any jurisdiction in which any part of any trust created under this Indenture may at the time be located, the Trustee shall have the power and may execute and deliver all instruments necessary to appoint one or more Persons to act as a co-trustee or co-trustees, or separate trustee or separate trustees and to vest in such Person or Persons, in such capacity and for the benefit of the Holders, such powers, duties, obligations, rights and trusts as the Trustee may consider necessary or desirable. No co-trustee or separate trustee hereunder shall be required to meet the terms of eligibility as a successor trustee under Section 5.13 and no notice to Holders of the appointment of any co-trustee or separate trustee shall be required under Section 5.8 hereof.

(b) Every separate trustee and co-trustee shall, to the extent permitted by law, be appointed and act subject to the following provisions and conditions:

(i) all rights, powers, duties and obligations conferred or imposed upon the Trustee shall be conferred or imposed upon and exercised or performed by the Trustee and such separate trustee or co-trustee jointly (it being understood that such separate trustee or co-trustee is not authorized to act separately without the Trustee joining in such act), except to the extent that under any law of any jurisdiction in which any particular act or acts are to be performed the Trustee shall be incompetent or unqualified to perform such act or acts, in which event such rights, powers, duties and obligations (including the holding of title to any trust or any portion thereof in any such jurisdiction) shall be exercised and performed singly by such separate trustee or co-trustee, but solely at the direction of the Trustee;

(ii) no trustee hereunder shall be personally liable by reason of any act or omission of any other trustee hereunder; and

(iii) the Trustee may at any time accept the resignation of or remove any separate trustee or co-trustee.

(c) Any notice, request or other writing given to the Trustee shall be deemed to have been given to each of the then separate trustees and co-trustees, as effectively as if given to each of them. Every instrument appointing any separate trustee or co-trustee shall refer to this

34

Indenture and the conditions of this Article Five. Each separate trustee and co-trustee, upon its acceptance of the trusts conferred, shall be vested with the estates or property specified in its instrument of appointment, either jointly with the Trustee or separately, as may be provided therein, subject to all the provisions of this Indenture, specifically including every provision of this Indenture relating to the conduct of, affecting the liability of, or affording protection to, the Trustee. Every such instrument shall be filed with the Trustee.

(d) Any separate trustee or co-trustee may at any time constitute the Trustee, its agent or attorney-in-fact with full power and authority, to the extent not prohibited by law, to do any lawful act under or in respect of this Indenture on its behalf and in its name. If any separate trustee or co-trustee shall die, become incapable of acting, resign or be removed, all of its estates, properties, rights, remedies and trusts shall vest in and be exercised by the Trustee, to the extent permitted by law, without the appointment of a new or successor trustee.

SECTION 5.12 Merger, Conversion, Consolidation or Succession to Business of Trustee. Any corporation or national banking association into which the Trustee may be merged or converted or with which it may be consolidated, or any corporation or national banking association resulting from any merger, conversion or consolidation to which the Trustee shall be a party, or any corporation or national banking association succeeding to the corporate trust business of the Trustee, shall be the successor of the Trustee hereunder, provided that such corporation or national banking association shall be eligible under the provisions of Section 5.9, without the execution or filing of any paper or any further act on the part of any of the parties hereto, anything herein to the contrary notwithstanding.

In case at the time such successor to the Trustee shall succeed to the trusts created by this Indenture any of the Securities of any series shall have been authenticated but not delivered, any such successor to the Trustee may adopt the certificate of authentication of any predecessor Trustee and deliver such Securities so authenticated; and, in case at that time any of the Securities of any series shall not have been authenticated, any successor to the Trustee may authenticate such Securities either in the name of any predecessor hereunder or in the name of the successor trustee; and in all such cases such certificate shall have the full force which it is anywhere in the Securities of such series or in this Indenture provided that the certificate of the Trustee shall have; provided, that the right to adopt the certificate of authentication of any predecessor trustee or to authenticate Securities of any series in the name of any predecessor trustee shall apply only to its successor or successors by merger, conversion or consolidation.

## ARTICLE SIX

### CONCERNING THE SECURITYHOLDERS

SECTION 6.1 Evidence of Action Taken by Securityholders. Any request, demand, authorization, direction, notice, consent, waiver or other action provided by this Indenture to be given or taken by a specified percentage in principal amount of the Securityholders of any or all series may be embodied in and evidenced by one or more instruments of substantially similar tenor signed by such specified percentage of Securityholders in person or by agent duly appointed in writing; and, except as herein otherwise expressly provided, such action shall become effective when such instrument or instruments are delivered to the Trustee. Proof of execution of any instrument or of a writing appointing any such agent shall be sufficient for any purpose of this Indenture and (subject to Sections 5.1 and 5.2) conclusive in favor of the Trustee and the Issuer, if made in the manner provided in this Article.

35

SECTION 6.2 Proof of Execution of Instruments and of Holding of Securities; Record Date. Subject to Sections 8.1 and 8.2, the execution of any instrument by a Securityholder or his agent or proxy may be proved in accordance with such reasonable rules and regulations as may be prescribed by the Trustee or in such manner as shall be satisfactory to the Trustee. The holding of Securities shall be proved by the Security register or by a certificate of the registrar thereof. The Issuer may set a record date for purposes of determining the identity of holders of Securities of any series entitled to vote or consent to any action referred to in Section 6.1, which record date may be set at any time or from time to time by notice to the Trustee, for any date or dates (in the case of any adjournment or reconsideration) not more than 60 days nor less than five days prior to the proposed date of such vote or consent, and thereafter, notwithstanding any other provisions hereof, only Holders of Securities of such series of record on such record date shall be entitled to so vote or give such consent or revoke such vote or consent.

SECTION 6.3 Holders to be Treated as Owners. The Issuer, Tyco, any other Guarantor, the Trustee and any agent of the Issuer, Tyco, such Guarantor or the Trustee may deem and treat the Person in whose name any Security shall be registered upon the Security register for such series as the absolute owner of such Security (whether or not such Security shall be overdue and notwithstanding any notation of ownership or other writing thereon) for the purpose of receiving payment of or on account of the principal of and, subject to the provisions of this Indenture, interest on such Security and for all other purposes; and none of the Issuer, Tyco, such Guarantor or the Trustee or any agent of the Issuer, Tyco, such Guarantor or the Trustee shall be affected by any notice to the contrary. All such payments so made to any such Person, or upon his order, shall be valid, and, to the extent of the sum or sums so paid, effectual to satisfy and discharge the liability for moneys payable upon any such Security.

SECTION 6.4 Securities Owned by Issuer Deemed Not Outstanding. In determining whether the Holders of the requisite aggregate principal amount of Outstanding Securities of any or all series have concurred in any direction, consent or waiver under this Indenture, Securities which are owned by the Issuer, Tyco, any other Guarantor, or any other obligor on the Securities with respect to which such determination is being made or by any Person directly or indirectly controlling or controlled by or under direct or indirect common control with the Issuer, Tyco, such Guarantor or any other obligor on the Securities with respect to which such determination is being made shall be disregarded and deemed not to be Outstanding for the purpose of any such determination, except that for the purpose of determining whether the Trustee shall be protected in relying on any such direction, consent or waiver only Securities which the Trustee knows are so owned shall be so disregarded. Securities so owned which have been pledged in good faith may be regarded as outstanding if the pledgee establishes to the satisfaction of the Trustee the pledgee's right so to act with respect to such Securities and that the pledgee is not the Issuer, Tyco, such Guarantor or any other obligor upon the Securities or any person directly or indirectly controlling or controlled by or under direct or indirect common control on the Securities. In case of a dispute as to such right, the advice of counsel shall be full protection in respect of any decision made by the Trustee in accordance with such advice. Upon request of the Trustee, the Issuer, Tyco or such Guarantor shall furnish to the Trustee promptly an Officers' Certificate listing and identifying all Securities, if any, known by the Issuer, Tyco or such Guarantor to be owned or held by or for the account of any of the above-described Persons; and, subject to Sections 8.1 and 8.2, the Trustee shall be entitled to accept such Officers' Certificate as conclusive evidence of the facts therein set forth and of the fact that all Securities not listed therein are Outstanding for the purpose of any such determination.

SECTION 6.5 Right of Revocation of Action Taken. At any time prior to (but

36

not after) the evidencing to the Trustee, as provided in Section 6.1, of
the taking of any action by the Holders of the percentage in aggregate principal
amount of the Securities of any or all series, as the case may be, specified in
this Indenture in connection with such action, any Holder of a Security the
serial number of which is shown by the evidence to be included among the serial
numbers of the Securities the Holders of which have consented to such action
may, by filing written notice at the Corporate Trust Office and upon proof of
holding as provided in this Article, revoke such action so far as concerns such
Security. Except as aforesaid any such action taken by the Holder of any
Security shall be conclusive and binding upon such Holder and upon all future
Holders and owners of such Security and of any Securities issued in exchange or
substitution therefor, irrespective of whether or not any notation in regard
thereto is made upon any such Security. Any action taken by the Holders of the
percentage in aggregate principal amount of the Securities of any or all series,
as the case may be, specified in this Indenture in connection with such action
shall be conclusively binding upon the Issuer, Tyco, any other Guarantor, the
Trustee and the Holders of all the Securities affected by such action.

## ARTICLE SEVEN

### SUPPLEMENTAL INDENTURES

SECTION 7.1 Supplemental Indentures Without Consent of
Securityholders. The Issuer, Tyco and any other Guarantor when authorized by
resolutions of their respective Board of Directors, and the Trustee may from
time to time and at any time enter into an indenture or indentures supplemental
hereto for one or more of the following purposes:

(a) to convey, transfer, assign, mortgage or pledge to the Trustee as
security for the Securities of one or more series any property or assets;

(b) to evidence the succession of another corporation to the Issuer or
any Guarantor, or successive successions, and the assumption by the
successor Person of the covenants, agreements and obligations of the Issuer
pursuant to Article Eight;

(c) to add to the covenants of the Issuer or any Guarantor such
further covenants, restrictions, conditions or provisions as its Board of
Directors and the Trustee shall consider to be for the protection of the
Holders of Securities, and to make the occurrence, or the occurrence and
continuance, of a default in any such additional covenants, restrictions,
conditions or provisions an Event of Default permitting the enforcement of
all or any of the several remedies provided in this Indenture as herein set
forth; provided, that in respect of any such additional covenant,
restriction, condition or provision such supplemental indenture may provide
for a particular period of grace after default (which period may be shorter
or longer than that allowed in the case of other defaults) or may provide
for an immediate enforcement upon such an Event of Default or may limit the
remedies available to the Trustee upon such an Event of Default or may
limit the right of the Holders of a majority in aggregate principal amount
of the Securities of such series to waive such an Event of Default;

(d) to cure any ambiguity or to correct or supplement any provision
contained herein or in any supplemental indenture which may be defective or
inconsistent with any other provision contained herein or in any
supplemental indenture; or to make such other provisions in regard to
matters or questions arising under this Indenture or under any supplemental
indenture as the Board of Directors of the Issuer may deem necessary or

37

desirable and which shall not adversely affect the interests of the Holders of the Securities in any material respect;

(e) to establish the form or terms of Securities of any series as permitted by Sections 2.1 and 2.4;

(f) to add a Guarantor pursuant to the provisions of Sections 1.11 and 13.4; and

(g) to evidence and provide for the acceptance of appointment hereunder by a successor trustee with respect to the Securities of one or more series and to add to or change any of the provisions of this Indenture as shall be necessary to provide for or facilitate the administration of the trusts hereunder by more than one trustee, pursuant to the requirements of Section 5.10.

The Trustee is hereby authorized to join with the Issuer, Tyco and any other Guarantor in the execution of any such supplemental indenture, to make any further appropriate agreements and stipulations which may be therein contained and to accept the conveyance, transfer, assignment, mortgage or pledge of any property thereunder, but the Trustee shall not be obligated to enter into any such supplemental indenture which affects the Trustee's own rights, duties or immunities under this Indenture or otherwise.

Any supplemental indenture authorized by the provisions of this Section may be executed without the consent of the Holders of any of the Securities at the time outstanding, notwithstanding any of the provisions of Section 7.2.

SECTION 7.2 Supplemental Indentures With Consent of Securityholders. With the consent (evidenced as provided in Article Six) of the Holders of not less than a majority in aggregate principal amount of the Securities at the time outstanding of all series affected by such supplemental indenture (voting as one class), the Issuer, Tyco and any other Guarantor, when authorized by resolutions of their respective Boards of Directors, and the Trustee may, from time to time and at any time, enter into an indenture or indentures supplemental hereto for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of this Indenture or of any supplemental indenture or of modifying in any manner the rights of the Holders of the Securities of each such series; provided, that no such supplemental indenture shall (a) extend the final maturity of any Security, or reduce the principal amount thereof, or reduce the rate or extend the time of payment of interest thereon, or reduce any amount payable on redemption thereof or reduce the amount of the principal of an Original Issue Discount Security that would be due and payable upon an acceleration of the maturity thereof pursuant to Section 4.2, or impair or affect the right of any Securityholder to institute suit for the payment thereof or, if the Securities provide therefor, any right of repayment at the option of the Securityholder without the consent of the Holder of each Security so affected, or (b) reduce the aforesaid percentage of Securities of any series, the consent of the Holders of which is required for any such supplemental indenture, without the consent of the Holders of each Security so affected.

Upon the request of the Issuer, accompanied by a copy of a resolution of the Board of Directors certified by a Managing director or the secretary or an assistant secretary of the Issuer authorizing the execution of any such supplemental indenture, and upon the filing with the Trustee of evidence of the consent of Securityholders as aforesaid and other documents, if any, required by Section 6.1, the Trustee shall join with the Issuer, Tyco and any other Guarantor in the execution of such supplemental indenture unless such supplemental indenture affects the

38

Trustee's own rights, duties or immunities under this Indenture, or otherwise, in which case the Trustee may in its discretion, but shall not be obligated to, enter into such supplemental indenture.

It shall not be necessary for the consent of the Securityholders under this Section to approve the particular form of any proposed supplemental indenture, but it shall be sufficient if such consent shall approve the substance thereof.

Promptly after the execution by the Issuer, Tyco, any other Guarantor and the Trustee of any supplemental indenture pursuant to the provisions of this Section, the Issuer shall mail a notice thereof by first class mail to the Holders of Securities of each series affected thereby at their addresses as they shall appear on the registry books of the Issuer, setting forth in general terms the substance of such supplemental indenture. Any failure of the Issuer to mail such notice, or any defect therein, shall not, however, in any way impair or affect the validity of any such supplemental indenture.

SECTION 7.3 Effect of Supplemental Indenture. Upon the execution of any supplemental indenture pursuant to the provisions hereof, this Indenture shall be and be deemed to be modified and amended in accordance therewith and the respective rights, limitations of rights, obligations, duties and immunities under this Indenture of the Trustee, the Issuer, Tyco, any other Guarantor and the Holders of Securities of each series affected thereby shall thereafter be determined, exercised and enforced hereunder subject in all respects to such modifications and amendments, and all the terms and conditions of any such supplemental indenture shall be and be deemed to be part of the terms and conditions of this Indenture for any and all purposes.

SECTION 7.4 Documents to Be Given to Trustee. The Trustee, subject to the provisions of Sections 5.1 and 5.2, may receive an Officers' Certificate and an Opinion of Counsel as conclusive evidence that any supplemental indenture executed pursuant to this Article Seven complies with the applicable provisions of this Indenture.

SECTION 7.5 Notation on Securities in Respect of Supplemental Indentures. Securities of any series authenticated and delivered after the execution of any supplemental indenture pursuant to the provisions of this Article may bear a notation in form approved by the Trustee for such series as to any matter provided for by such supplemental indenture or as to any action taken at any such meeting. If the Issuer or the Trustee shall so determine, new Securities of any series so modified as to conform, in the opinion of the Trustee and the Board of Directors of the Issuer, to any modification of this Indenture contained in any such supplemental indenture may be prepared by the Issuer, Tyco and any other Guarantor, and authenticated by the Trustee and delivered in exchange for the Securities of such series then outstanding.

## ARTICLE EIGHT

### CONSOLIDATION, MERGER, SALE OR CONVEYANCE

SECTION 8.1 Issuer and Guarantors May Consolidate, etc., on Certain Terms. Each of the Issuer, Tyco and any other Guarantors, if any, covenants that it will not merge or consolidate with any other Person or sell or convey all or substantially all of its assets to any Person, unless (i) either the Issuer or such Guarantor, as the case may be, shall be the continuing entity, or the successor entity or the Person which acquires by sale or conveyance substantially all the assets of the Issuer or such Guarantor, as the case may be (if other than the Issuer or such Guarantor, as the case may be) shall expressly assume the due and punctual payment of the principal of and interest on all the Securities or the obligations under the Guarantees, as the case

39

may be, according to their tenor, and the due and punctual performance and
observance of all of the covenants and agreements of this Indenture to be
performed or observed by the Issuer or such Guarantor, as the case may be, by
supplemental indenture satisfactory to the Trustee, executed and delivered to
the Trustee by such corporation, and (ii) the Issuer or such Guarantor, as the
case may be, or such successor corporation, as the case may be, shall not,
immediately after such merger or consolidation, or such sale or conveyance, be
in default in the performance of any such covenant or agreement.

SECTION 8.2 Successor Entity Substituted. In case of any such
consolidation, merger, sale or conveyance in which the Issuer or any Guarantor,
as the case may be, is not the continuing entity, and following such an
assumption by the successor entity, such successor entity shall succeed to and
be substituted for the Issuer or such Guarantor, as the case may be, with the
same effect as if it had been named herein. Such successor entity may cause to
be signed, and may issue either in its own name or in the name of the Issuer or
such Guarantor, as the case may be, prior to such succession any or all of the
Securities or Guarantees as the case may be, issuable hereunder which
theretofore shall not have been signed by the Issuer or such Guarantor, as the
case may be, and delivered to the Trustee; and, upon the order of such successor
entity instead of the Issuer or such Guarantor, as the case may be, and subject
to all the terms, conditions and limitations in this Indenture prescribed, the
Trustee shall authenticate and shall deliver any Securities or Guarantees, as
the case may be, which previously shall have been signed and delivered by the
officers of the Issuer or such Guarantor, as the case may be, to the Trustee for
authentication, and any Securities or Guarantees, as the case may be, which such
successor entity thereafter shall cause to be signed and delivered to the
Trustee for that purpose. All of the Securities or Guarantees, as the case may
be, so issued shall in all respects have the same legal rank and benefit under
this Indenture as the Securities or Guarantees, as the case may be, theretofore
or thereafter issued in accordance with the terms of this Indenture as though
all of such Securities or such Guarantees, as the case may be, had been issued
at the date of the execution hereof.

In case of any such consolidation, merger, sale, lease or conveyance
such changes in phraseology and form (but not in substance) may be made in the
Securities or Guarantees thereafter to be issued as may be appropriate.

In the event of any such sale or conveyance (other than a conveyance
by way of lease) the Issuer or any Guarantor or any successor entity which shall
theretofore have become such in the manner described in this Article shall be
discharged from all obligations and covenants under this Indenture, the
Securities and any Guarantee and may be liquidated and dissolved.

SECTION 8.3 Opinion of Counsel to Trustee. The Trustee, subject to the
provisions of Sections 5.1 and 5.2, may receive an Opinion of Counsel, prepared
in accordance with Section 11.5, as conclusive evidence that any such
consolidation, merger, sale, lease or conveyance, and any such assumption, and
any such liquidation or dissolution, complies with the applicable provisions of
this Indenture.

SECTION 8.4 Exception Applicable to Certain Guarantors. The provisions
of this Article shall not apply to a merger, consolidation, sale or conveyance
of a Guarantor other than Tyco, if, in connection with such merger,
consolidation, sale or conveyance, the Guarantee of such Guarantor is released
and discharged in accordance with Section 3.11(b).

40

## ARTICLE NINE

### SATISFACTION AND DISCHARGE OF INDENTURE;
### UNCLAIMED MONEYS

SECTION 9.1 Satisfaction and Discharge of Indenture. If at any time (a) the Issuer or any Guarantor shall have paid or caused to be paid the principal of and interest on all the Securities of any series outstanding hereunder (other than Securities of such series which have been destroyed, lost or stolen and which have been replaced or paid as provided in Section 2.10) as and when the same shall have become due and payable, or (b) the Issuer shall have delivered to the Trustee for cancellation all Securities of any series theretofore authenticated (other than any Securities of such series which shall have been destroyed, lost or stolen and which shall have been replaced or paid as provided in Section 2.10) or (c) (i) all the Securities of such series not theretofore delivered to the Trustee for cancellation shall have become due and payable, or are by their terms to become due and payable within one year or may, at the option of the Issuer, be called for redemption within one year under arrangements satisfactory to the Trustee for the giving of notice of redemption, and (ii) the Issuer or any Guarantor shall have irrevocably deposited or caused to be deposited with the Trustee as trust funds the entire amount in cash (other than moneys repaid by the Trustee or any paying agent to the Issuer in accordance with Section 9.8) or direct obligations of the United States of America, backed by its full faith and credit, or a combination of cash and such direct obligations, maturing as to principal and interest in such amounts and at such times as will insure the availability of cash sufficient to pay at maturity or upon redemption all Securities of such series (other than any Securities of such series which shall have been destroyed, lost or stolen and which shall have been replaced or paid as provided in Section 2.10) not theretofore delivered to the Trustee for cancellation, including principal and interest due on or to become due on or prior to such date of maturity as the case may be, and if, in any such case, the Issuer shall also pay or cause to be paid all other sums payable hereunder by the Issuer with respect to Securities of such series, then this Indenture shall cease to be of further effect with respect to Securities of such series (except as to (i) rights of registration of transfer and exchange of Securities of such series, and the Issuer's right of optional redemption, if any, (ii) substitution of mutilated, defaced, destroyed, lost or stolen Securities, (iii) rights of Holders to receive payments of principal thereof and interest thereon upon the original stated due dates therefor (but not upon acceleration) and remaining rights of the Holders to receive mandatory sinking fund payments, if any, in each case solely out of property so deposited with the Trustee, and (iv) the rights, obligations and immunities of the Trustee hereunder, and the Trustee, on demand of the Issuer accompanied by an Officers' Certificate and an Opinion of Counsel and at the cost and expense of the Issuer, shall execute proper instruments acknowledging such satisfaction of and discharging this Indenture with respect to such series; provided, that the rights of Holders of the Securities to receive amounts in respect of principal of and interest on the Securities held by them shall not be delayed longer than required by then-applicable mandatory rules or policies of any securities exchange upon which the Securities are listed. The Issuer agrees to reimburse the Trustee for any costs or expenses thereafter reasonably and properly incurred and to compensate the Trustee for any, services thereafter reasonably and properly rendered by the Trustee in connection with this Indenture or the Securities of such series.

SECTION 9.2 Issuer's Option to Effect Defeasance or Covenant Defeasance. In addition to discharge of the Indenture pursuant to Section 9.1, with respect to any series of Securities where the exact amount of principal and interest due on which can be determined at the time of making the deposit referred to in Section 9.5(a), the Issuer may at its option by resolution of its Board of Directors elect at any time either (a) to effect a defeasance (as defined in Section 9.3) of the Securities of such series under Section 9.3 or (b) to effect a covenant defeasance (as defined in Section 9.4) of the Securities of such series under Section 9.4, in each case upon

41

compliance with the applicable conditions set forth below in this Article Nine.

SECTION 9.3 Defeasance and Discharge. Upon the Issuer's exercise of the option set forth in clause (a) of Section 9.2 with respect to the Securities of a series, the Issuer and each Guarantor shall be deemed to have been discharged from its obligations with respect to the Securities of such series on and after the date the conditions precedent set forth in Section 9.5 are satisfied (hereinafter, "defeasance"). For this purpose, such defeasance means that the Issuer shall be deemed to have paid and discharged the entire Indebtedness represented by the Securities of such series and the Issuer and each Guarantor shall be deemed to have satisfied all their respective other obligations under the Securities of such series and under this Indenture relating to the Securities of such series (and the Trustee, at the expense of the Issuer, shall execute proper instruments acknowledging the same), except for, (i) rights of registration of transfer and exchange of Securities of such series, and the Issuer's right of optional redemption, if any, (ii) substitution of mutilated, defaced, destroyed, lost or stolen Securities, (iii) rights of Holders to receive payments of principal thereof and interest thereon, upon the original stated due dates therefor (but not upon acceleration), and remaining rights of the Holders to receive mandatory sinking fund payments, if any, in each case solely from the trust funds described in Section 9.5(a); and (iv) the rights, obligations and immunities of the Trustee hereunder. Subject to compliance with this Article Nine, the Issuer may exercise its option under this Section 9.3 notwithstanding the prior exercise of its option under Section 9.4 with respect to the Securities of such series.

SECTION 9.4 Covenant Defeasance. Upon the Issuer's exercise of the option set forth in clause (b) of Section 9.2 with respect to the Securities of a series, the Issuer and each Guarantor shall be released from their respective obligations under Sections 3.8, 3.10, 3.11, 3.12 and Article 5 with respect to the Securities of such series on and after the date the conditions precedent set forth in Section 9.5 are satisfied (hereinafter, "covenant defeasance"). For this purpose, such covenant defeasance means that, with respect to the Securities of such series, the Issuer and each Guarantor may omit to comply with and shall have no liability in respect of any term, condition or limitation set forth in any such Section, whether directly or indirectly by reason of any reference elsewhere herein to any such Section or by reason of any reference in any such Section to any other provision herein or in any other document and such omission to comply, shall not constitute an Event of Default under Section 4.1, but the remainder of this Indenture and such Securities shall be unaffected thereby.

SECTION 9.5 Conditions to Defeasance or Covenant Defeasance. The following shall be the conditions precedent to the application of either Section 9.3 or Section 9.4 to the Securities of a series:

(a) the Issuer shall irrevocably have deposited or caused to be deposited with the Trustee, under the terms of an irrevocable trust agreement in form and substance satisfactory to the Trustee, as trust funds in trust, specifically pledged as security for, and dedicated solely to, the benefit of the holders of the Securities of such series (i) money in an amount, or (ii) direct obligations of the United States of America, backed by its full faith and credit, which through the scheduled payment of principal and interest in respect thereof in accordance with their terms will provide, not later than one day before the due date of any payment in respect of the Securities of such series, money in an amount, or (iii) a combination thereof, sufficient (without consideration of any reinvestment of such money, principal or interest), in the opinion of a nationally recognized firm of independent public accountants or a nationally recognized investment banking firm expressed in a written certification thereof delivered to the Trustee, to pay and discharge, and which shall be applied by the Trustee to pay and discharge, (A) the principal of and interest on all Securities of such series on each date such principal or interest is due and payable and (B)

42

any mandatory sinking fund payments on the dates on which such payments are due and payable in accordance with the terms of this Indenture and the Securities of such series. Before such a deposit the Issuer may make arrangements satisfactory to the Trustee for the redemption of the Securities of such series at a future date or dates in accordance with — Article Eleven, if applicable to the Securities of such series, which shall be given effect in applying the foregoing.

(b) No Event of Default or event which with notice or lapse of time or both would become an Event of Default with respect to the Securities of such series shall have occurred and be continuing (i) on the date of such deposit or (ii) insofar as Subsections 4.1(g) and 4.1(h) are concerned, at any time during the period ending on the 91st day after the date of such deposit or, if longer, ending on the date following the expiration of the longest preference period applicable to the Issuer in respect of such deposit (it being understood that this condition shall not be deemed satisfied until the expiration of such period).

(c) Such defeasance or covenant defeasance will not (i) cause the Trustee for the Securities of such series to have a conflicting interest for purposes of the Trust Indenture Act of 1939 with respect to any securities of the Issuer or any Guarantor or (ii) result in the trust arising from such deposit to constitute, unless it is qualified as, a regulated investment company under the Investment Company Act of 1940.

(d) Such defeasance or covenant defeasance will not result in a breach or violation of, or constitute a default under, this Indenture or any other agreement or instrument to which the Issuer or any Guarantor is a party or by which it is bound.

(e) If the Securities of such series are then listed on any national securities exchange registered under the Securities Exchange Act of 1934, the Issuer shall have delivered to the Trustee an Opinion of Counsel to the effect that the exercise of the option under Section 9.3 or 9.4, as the case may be, will not cause such Securities to be delisted.

(f) In the case of an election under Section 9.3, the Issuer shall have delivered to the Trustee an Opinion of Counsel stating that (i) the Issuer has received from the United States Internal Revenue Service (the "IRS") a private letter ruling, (ii) there has been published by the IRS a general revenue ruling, or (iii) since the date of this Indenture there has been a change in the applicable Federal income tax law, in each case to the effect that, and based thereon such opinion shall confirm that, the Holders of the Securities of such series will not recognize income, gain or loss for Federal income tax purposes as a result of such defeasance and will be subject to Federal income tax on the same amounts, in the same manner and at the same times as would have been the case if such defeasance had not occurred.

(g) In the case of an election under Section 9.4, the Issuer shall have delivered to the Trustee an Opinion of Counsel to the effect that the holders of the Securities of such series will not recognize income, gain or loss for United States Federal income tax purposes as a result of such covenant defeasance and will be subject to United States Federal income tax on the same amounts, in the same manner and at the same times as would have been the case if such covenant defeasance had not occurred.

(h) In the case of an election under either Section 9.3 or Section 9.4, the Issuer shall have delivered to the Trustee an Opinion of Counsel of Luxembourg counsel to the effect that (i) payments from the defeasance trust will be free and exempt from any and all

43

withholding and other taxes imposed or levied by or on behalf of Luxembourg
or any political subdivision thereof having the power to tax, and (ii)
Holders of the Securities of such series will not recognize any income,
gain or loss for Luxembourg income tax and other Luxembourg tax purposes as
a result of such deposit and defeasance or covenant defeasance, as
applicable, and will be subject to Luxembourg income tax and other
Luxembourg tax on the same amounts, in the same manner and at the same
times as would have been the case if such deposit and defeasance or
covenant defeasance, as applicable, had not occurred.

(i) Such defeasance or covenant defeasance shall be effected in
compliance with any additional terms, conditions or limitations which
may be imposed on the Issuer in connection therewith pursuant to
Section 2.4.

(j) The Issuer shall have delivered to the Trustee an Officers'
Certificate and an Opinion of Counsel, each stating that all
conditions precedent provided for relating to either the defeasance
under Section 9.3 or the covenant defeasance under Section 9.4 (as the
case may be) have been complied with.

SECTION 9.6 Application by Trustee of Funds Deposited for Payment of
Securities. Subject to Section 9.8, all moneys deposited with the Trustee
pursuant to Section 9.1 or 9.5 shall be held in trust and applied by it to the
payment, either directly or through any paying agent (including the Issuer
acting as its own paying agent), to the Holders of the particular Securities of
such series for the payment or redemption of which such moneys have been
deposited with the Trustee, of all sums due and to become due thereon for
principal and interest; but such money need not be segregated from other funds
except to the extent required by law.

SECTION 9.7 Repayment of Moneys Held by Paying Agent. In connection
with the satisfaction and discharge of this Indenture with respect to Securities
of any series, all moneys then held by any paying agent under the provisions of
this Indenture with respect to such series of Securities shall, upon demand of
the Issuer, be repaid to it or paid to the Trustee and thereupon such paying
agent shall be released from all further liability with respect to such moneys.

SECTION 9.8 Return of Moneys Held by Trustee and Paying Agent
Unclaimed for Two Years. Any moneys deposited with or paid to the Trustee or any
paying agent for the payment of the principal of or interest on any Security of
any series and not applied but remaining unclaimed for two years after the date
upon which such principal or interest shall have become due and payable, shall,
upon the written request of the Issuer or any Guarantor, as applicable and
unless otherwise required by mandatory provisions of applicable escheat or
abandoned or unclaimed property law, be repaid to the Issuer or such Guarantor
by the Trustee for such series or such paying agent, and the Holder of the
Security of such series shall, unless otherwise required by mandatory provisions
of applicable escheat or abandoned or unclaimed property laws, thereafter look
only to the Issuer or such Guarantor for any payment which such Holder may be
entitled to collect, and all liability of the Trustee or any paying agent with
respect to such moneys shall thereupon cease.

SECTION 9.9 Indemnity for Direct Obligations of the United States. The
Issuer shall pay and indemnify the Trustee against any tax, fee or other charge
imposed on or assessed against the money or the direct obligations of the United
States of America deposited pursuant to Section 9.1 or 9.3 or the principal or
interest received in respect of such obligations.

SECTION 9.10 Reinstatement. If the Trustee or the paying agent is
unable to apply any money or direct obligations of the United States of America
in accordance with Section

44

9.1 or 9.5 by reason of any legal proceedings or order or judgment or any court
or governmental authority enjoining, restraining or otherwise prohibiting such
application, then the Issuer's and any Guarantor's obligations under this
Indenture and the Securities of such series shall be revived and reinstated as
though no deposit had occurred pursuant to this Article Nine until such time as
the Trustee or paying agent is permitted to apply all such money in accordance
with this Article Nine; provided that, if the Issuer or any Guarantor makes any
payment of principal of or interest on any such Security following the
reinstatement of its obligations, the Issuer or such Guarantor shall be
subrogated to the rights of the holders of such Securities to receive such
payment from the money or direct obligations of the United States of America
held by the Trustee or the paying agent.

### ARTICLE TEN

#### MISCELLANEOUS PROVISIONS

SECTION 10.1 Incorporators, Shareholders, Officers and Directors of
Issuer and Guarantors Exempt from Individual Liability. No recourse under or
upon any obligation, covenant or agreement contained in this Indenture, or in
any Security, or because of any indebtedness evidenced thereby, shall be had
against any incorporator, as such or against any past, present or future
shareholder, officer or director, as such, of the Issuer, any Guarantor or of
any successor, either directly or through the Issuer, such Guarantor or any
successor, under any rule of law, statute or constitutional provision or by the
enforcement of any assessment or by any legal or equitable proceeding or
otherwise, all such liability being expressly waived and released by the
acceptance of the Securities by the holders thereof and as part of the
consideration for, and as a condition of, the issue of the Securities.

SECTION 10.2 Provisions of Indenture for the Sole Benefit of Parties
and Securityholders. Nothing in this Indenture or in the Securities, expressed
or implied, shall give or be construed to give to any person, firm or
corporation, other than the parties hereto and their successors and the Holders
of the Securities, any legal or equitable right, remedy or claim under this
Indenture or under any covenant or provision herein contained, all such
covenants and provisions being for the sole benefit of the parties hereto and
their successors and of the Holders of the Securities.

SECTION 10.3 Successors and Assigns of Issuer and Guarantors Bound by
Indenture. All the covenants, stipulations, promises and agreements in this
Indenture contained by or in behalf of the Issuer or any Guarantor shall bind
its successors and assigns, whether so expressed or not.

SECTION 10.4 Notices and Demands on Issuer, Guarantors, Trustee and
Securityholders. Any notice or demand which by any provision of this Indenture
is required or permitted to be given or served (i) by the Trustee shall be in
writing and be deposited postage prepaid in first class mail, delivered by a
nationally recognized overnight courier or transmitted by facsimile or (ii)
by the Holders of Securities shall be in writing and deposited postage
prepaid in first class mail or delivered by a nationally recognized overnight
courier, if to or on the Issuer, to Boulevard Royal, 26, Sixth Floor, L-2449
Luxembourg, Attention: the Managing Directors, facsimile no. (352) 464-3509;
if to or on Tyco, to The Gibbons Building, 10 Queen Street, Suite 301,
Hamilton HM11, Bermuda, Attention: Secretary, facsimile no. (441) 295-9647;
if to or on any other Guarantor, such address as may be provided in the
supplemental indenture providing for its Guarantee of the Securities, in each
case with a copy to Tyco (US) Inc. at One Tyco Park, Exeter, New Hampshire
03833, Attention: Treasurer, facsimile no. (603) 778-7330, or other such
address as may be set forth by notice to the Trustee and the Holders as
provided in this Section

10.4. Any notice, direction, request or demand by the Issuer or any Guarantor or any Securityholder to or upon the Trustee shall be deemed to have been sufficiently given or made, for all purposes, if given or made and received at the Corporate Trust Office.

Where this Indenture provides for notice to Holders, such notice shall be sufficiently given (unless otherwise herein expressly provided) if in writing and mailed, first-class postage prepaid or delivered by a nationally recognized courier, to each Holder entitled thereto, at his last address as it appears in the Security register. Neither the failure to mail or deliver any notice to Holders, nor any defect in any notice so mailed or delivered, to any particular Holder shall affect the sufficiency of such notice with respect to other Holders. Where this Indenture provides for notice in any manner, such notice may be waived in writing by the person entitled to receive such notice, either before or after the event, and such waiver shall be the equivalent of such notice. Waivers of notice by Holders shall be filed with the Trustee, but such filing shall not be a condition precedent to the validity of any action taken in reliance upon such waiver.

In case, by reason of the suspension of or irregularities in regular mail or courier service, it shall be impracticable to mail or deliver notice to the Issuer, any Guarantor and the Holders when such notice is required to be given pursuant to any provision of this Indenture, then any manner of giving such notice as shall be satisfactory to the Trustee shall be deemed to be a sufficient giving of such notice.

SECTION 10.5 Officers' Certificates and Opinions of Counsel; Statements to Be Contained Therein. Upon any application or demand by the Issuer or any Guarantor to the Trustee to take any action under any of the provisions of this Indenture, the Issuer or such Guarantor shall furnish to the Trustee an Officers' Certificate stating that all conditions precedent provided for in this Indenture relating to the proposed action have been complied with and an Opinion of Counsel stating that in the opinion of such counsel all such conditions precedent have been complied with, except that in the case of any such application or demand as to which the furnishing of such documents is specifically required by any provision of this Indenture relating to such particular application or demand, no additional certificate or opinion need be furnished.

Each certificate (other than those provided for in Section 3.5 and Section 11.5) or opinion provided for in this Indenture and delivered to the Trustee with respect to compliance with a condition or covenant provided for in this Indenture shall include (a) a statement that the Person making such certificate or opinion has read such covenant or condition, (b) a brief statement as to the nature and scope of the examination or investigation upon which the statements or opinions contained in such certificate or opinion are based, (c) a statement that, in the opinion of such Person, he has made such examination or investigation as is necessary to enable him to express an informed opinion as to whether or not such covenant or condition has been complied with and (d) a statement as to whether or not, in the opinion of such Person, such condition or covenant has been complied with.

Any certificate, statement or opinion of an officer of the Issuer or any Guarantor may be based, insofar as it relates to legal matters, upon a certificate or opinion of or representations by counsel, unless such officer knows that the certificate or opinion or representations with respect to the matters upon which his certificate, statement or opinion may be based as aforesaid are erroneous. Any certificate, statement or opinion of counsel may be based, insofar as it relates to factual matters, information with respect to which is in the possession of the Issuer or such Guarantor, upon the certificate, statement or opinion of or representations by an officer of officers of the Issuer or such Guarantor, as the case may be, unless such counsel knows that the certificate, statement or opinion or representations with respect to the matters upon which his certificate, statement or opinion may be based as aforesaid

46

are erroneous.

Any certificate, statement or opinion of an officer of the Issuer or any Guarantor or of counsel may be based, insofar as it relates to accounting matters, upon a certificate or opinion of or representations by an accountant or firm of accountants in the employ of the Issuer or such Guarantor, as the case may be, unless such officer or counsel, as the case may be, knows that the certificate or opinion or representations with respect to the accounting matters upon which his certificate, statement or opinion may be based as aforesaid are erroneous.

Any certificate or opinion of any independent firm of public accountants filed with the Trustee shall contain a statement that such firm is independent.

SECTION 10.6 Payments Due on Saturdays, Sundays and Holidays. If the date of maturity of interest on or principal of the Securities of any series or the date fixed for redemption or repayment of any such Security shall not be a Business Day, then payment of interest or principal need not be made on such date, but may be made on the next succeeding Business Day with the same force and effect as if made on the date of maturity or the date fixed for redemption, and no interest shall accrue for the period after such date.

SECTION 10.7 Conflict of Any Provision of Indenture with Trust Indenture Act of 1939. If and to the extent that any provision of this Indenture limits, qualifies or conflicts with another provision included in this Indenture by operation of Sections 310 to 317, inclusive, of the Trust Indenture Act of 1939 (an "incorporated provision"), such incorporated provision shall control.

SECTION 10.8 New York Law to Govern. This Indenture, each Security and each Guarantee shall be deemed to be a contract under the laws of the State of New York, and for all purposes shall be construed in accordance with the laws of such State, without regard to principles of the conflict of laws thereof.

SECTION 10.9 Consent to Jurisdiction and Service of Process. Each of the Issuer and Tyco agrees that any legal suit, action or proceeding brought by any party to enforce any rights under or with respect to this Indenture, any Security and any Guarantee or any other document or the transactions contemplated hereby or thereby may be instituted in any state or federal court in The City of New York, State of New York, United States of America, irrevocably waives to the fullest extent permitted by law any objection which it may now or hereafter have to the laying of venue of any such suit, action or proceeding, irrevocably waives to the fullest extent permitted by law any claim that and agrees not to claim or plead in any court that any such action, suit or proceeding brought in such court has been brought in an inconvenient forum and irrevocably submits to the non-exclusive jurisdiction of any such court in any such suit, action or proceeding or for recognition and enforcement of any judgment in respect thereof.

Each of the Issuer and Tyco hereby irrevocably and unconditionally designates and appoints CT Corporation System, 1633 Broadway, New York, New York 10019, U.S.A. (and any successor entity) as its authorized agent to receive and forward on its behalf service of any and all process which may be served in any such suit, action or proceeding in any such court and agrees that service of process upon CT Corporation shall be deemed in every respect effective service of process upon the Issuer in any such suit, action or proceeding and shall be taken and held to be valid personal service upon the Issuer or Tyco, as the case may be. Said designation and appointment shall be irrevocable. Nothing in this Section 10.9 shall affect the right of the Holders to serve process in any manner permitted by law or limit the right of the Holders to bring proceedings against the Issuer or Tyco in the courts of any jurisdiction or jurisdictions. Each of

47

the Issuer and Tyco further agrees to take any and all action, including the execution and filing of any and all such documents and instruments, as may be necessary to continue such designation and appointment of CT Corporation in full force and effect so long as the Securities are outstanding. Each of the Issuer and Tyco hereby irrevocably and unconditionally authorizes and directs CT Corporation to accept such service on its behalf. If for any reason CT Corporation ceases to be available to act as such, each of the Issuer and Tyco agrees to designate a new agent in New York City.

To the extent that the Issuer or Tyco has or hereafter may acquire any immunity from jurisdiction of any court (including, without limitation, any court in the United States, the State of New York, Luxembourg, Bermuda or any political subdivisions thereof) or from any legal process (whether through service of notice, attachment prior to judgment, attachment in aid of execution, execution or otherwise) with respect to itself or its property or assets, this Indenture, the Securities, the Guarantees or any other documents or actions to enforce judgments in respect of any thereof, the each of the Issuer and Tyco hereby irrevocably waives such immunity, and any defense based on such immunity, in respect of its obligations under the above-referenced documents and the transactions contemplated thereby, to the extent permitted by law.

SECTION 10.10 Judgment Currency. If pursuant to a judgment or order being made or registered against the Issuer or Tyco, any payment under or in connection with this Indenture, any Securities or any Guarantees to a Holder is made or satisfied in a currency (the "Judgment Currency") other than in United States dollars then, to the extent that the payment (when converted into United States dollars at the rate of exchange on the date of payment or, if it is not practicable for such Holder to purchase United States dollars with the Judgment Currency on the date of payment, at the rate of exchange as soon thereafter as it is practicable for it to do so) actually received by such Holder falls short of the amount due under the terms of this Indenture, any Securities or any Guarantees, each of the Issuer and Tyco shall, to the extent permitted by law, as a separate and independent obligation, indemnify and hold harmless such Holder against the amount of such short fall and such indemnity shall continue in full force and effect notwithstanding any such judgment or order as aforesaid. For the purpose of this Section, "rate of exchange" means the rate at which the Holder is able on the relevant date to purchase United States dollars with the Judgment Currency and shall take into account any premium and other costs of exchange.

SECTION 10.11 Counterparts. This Indenture may be executed in any number of counterparts, each of which shall be an original; but such counterparts shall together constitute but one and the same instrument.

SECTION 10.12 Effect of Headings. The Article and Section headings herein and the Table of Contents are for convenience only and shall not affect the construction hereof.

## ARTICLE ELEVEN

### REDEMPTION OF SECURITIES AND SINKING FUNDS

SECTION 11.1 Applicability of Article. The provisions of this Article shall be applicable any redemption pursuant to Section 12.1 and to the Securities of any series which are redeemable before their maturity or to any sinking fund for the retirement of Securities of a series except as otherwise specified as contemplated by Section 2.4 for Securities of such series.

SECTION 11.2 Notice of Redemption; Partial Redemptions. Notice of redemption to the Holders of Securities of any series to be redeemed as a whole or in part at the option of the Issuer shall be given by mailing notice of such redemption by first class mail, postage prepaid, at least 30 days and not more than 60 days prior to the date fixed for redemption to such Holders of Securities of such series at their last addresses as they shall appear upon the registry books. Any notice which is mailed in the manner herein provided shall be conclusively presumed to have been duly given, whether or not the Holder receives the notice. Failure to give notice by mail, or any defect in the notice to the Holder of any Security of a series designated for redemption as a whole or in part shall not affect the validity of the proceedings for the redemption of any other Security of such series.

The notice of redemption to each such Holder shall specify the principal amount of each Security of such series held by such Holder to be redeemed, the date fixed for redemption, the redemption price, the place or places of payment, that payment will be made upon presentation and surrender of such Securities, that such redemption is pursuant to the mandatory or optional sinking fund, or both, if such be the case, that interest accrued to the date fixed for redemption will be paid as specified in such notice and that on and after said date interest thereon or on the portions thereof to be redeemed will cease to accrue. In case any Security of a series is to be redeemed in part only the notice of redemption shall state the portion of the principal amount thereof to be redeemed and shall state that on and after the date fixed for redemption, upon surrender of such Security, a new Security or Securities of such series in principal amount equal to the unredeemed portion thereof will be issued.

The notice of redemption of Securities of any series to be redeemed at the option of the Issuer shall be given by the Issuer or, at the Issuer's request, by the Trustee in the name and at the expense of the Issuer.

At least one Business Day prior to the redemption date specified in the notice of redemption given as provided in this Section, the Issuer will deposit with the Trustee or with one or more paying agents (or, if the Issuer is acting as its own paying agent, set aside, segregate and hold in trust as provided in Section 5.4) an amount of money sufficient to redeem on the redemption date all the Securities of such series so called for redemption at the appropriate redemption price, together with accrued interest to the date fixed for redemption. If less than all the outstanding Securities of a series are to be redeemed, the Issuer will deliver to the Trustee at least 45 days prior to the date fixed for redemption (unless a shorter period shall be satisfactory to the Trustee), an Officers' Certificate stating the aggregate principal amount of Securities to be redeemed.

If less than all the Securities of a series are to be redeemed, the Trustee shall select, in such manner as it shall deem appropriate and fair, Securities of such series to be redeemed in whole or in part. Securities may be redeemed in part in multiples equal to the minimum authorized denomination for Securities of such series or any multiple thereof. The Trustee shall promptly notify the Issuer in writing of the Securities of such series selected for redemption and, in the case of any Securities of such series selected for partial redemption, the principal amount thereof to be redeemed. For all purposes of this Indenture, unless the context otherwise requires, all provisions relating to the redemption of Securities of any series shall relate, in the case of any Security redeemed or to be redeemed only in part, to the portion of the principal amount of such Security which has been or is to be redeemed.

SECTION 11.3 Payment of Securities Called for Redemption. If notice of redemption has been given as above provided, the Securities or portions of Securities specified in such notice shall become due and payable on the date and at the place stated in such notice at the

69

applicable redemption price, together with interest accrued to the date fixed for redemption, and on and after said date (unless the Issuer shall default in the payment of such Securities at the redemption price, together with interest accrued to said date) interest on the Securities or portions of Securities so called for redemption shall cease to accrue and, except as provided in Sections 5.5 and 9.8, such Securities shall cease from and after the date fixed for redemption to be entitled to any benefit or security under this Indenture, and the Holders thereof shall have no right in respect of such Securities except the right to receive the redemption price thereof and unpaid interest to the date fixed for redemption. On presentation and surrender of such Securities at a place of payment specified in said notice, said Securities or the specified portions thereof shall be paid and redeemed by the Issuer at the applicable redemption price, together with interest accrued thereon to the date fixed for redemption; provided that any semiannual payment of interest becoming due on the date fixed for redemption shall be payable to the Holders of such Securities registered as such on the relevant record date subject to the terms and provisions of Section 2.5 hereof.

If any Security called for redemption shall not be so paid upon surrender thereof for redemption, the principal shall, until paid or duly provided for, bear interest from the date fixed for redemption at the rate of interest or Yield to Maturity (in the case of an Original Issue Discount Security) borne by the Security.

Upon presentation of any Security redeemed in part only, the Issuer shall execute and the Trustee shall authenticate and deliver to or on the order of the Holder thereof, at the expense of the Issuer, a new Security or Securities of such series, of authorized denominations, in principal amount equal to the unredeemed portion of the Security so presented.

SECTION 11.4 Exclusion of Certain Securities from Eligibility for Selection for Redemption. Securities shall be excluded from eligibility for selection for redemption if they are identified by registration and certificate number in a written statement signed by a managing director or by an authorized officer of the Issuer and delivered to the Trustee at least 40 days prior to the last date on which notice of redemption may be given as being owned of record and beneficially by, and not pledged or hypothecated by either (a) the Issuer or (b) an entity specifically identified in such written statement directly or indirectly controlling or controlled by or under direct or indirect common control with the Issuer.

SECTION 11.5 Mandatory and Optional Sinking Funds. The minimum amount of any sinking fund payment provided for by the terms of Securities of any series is herein referred to as a "mandatory sinking fund payment", and any payment in excess of such minimum amount provided for by the terms of Securities of any series is herein referred to as an "optional sinking fund payment." The date on which a sinking fund payment is to be made is herein referred to as the "sinking fund payment date."

In lieu of making all or any part of any mandatory sinking fund payment with respect to any series of Securities in cash, the Issuer may at its option (a) deliver to the Trustee Securities of such series theretofore purchased or otherwise acquired (except upon redemption pursuant to the mandatory sinking fund) by the Issuer or receive credit for Securities of such series (not previously so credited) theretofore purchased or otherwise acquired (except as aforesaid) by the Issuer and delivered to the Trustee for cancellation pursuant to Section 2.8, (b) receive credit for optional sinking fund payments (not previously so credited) made pursuant to this Section, or (c) receive credit for Securities of such series (not previously so credited) redeemed by the Issuer through any optional redemption provision contained in the terms of such series. Securities so delivered or credited shall be received or credited by the Trustee at the sinking fund redemption price specified in such Securities.

On or before the forty-fifth day next preceding each sinking fund payment date for any series, the Issuer will deliver to the Trustee a written statement (which need not contain the statements required by Section 10.9) signed by a managing director or by an authorized officer of the Issuer (a) specifying the portion of the mandatory sinking fund payment to be satisfied by payment of cash and the portion to be satisfied by credit of Securities of such series, (b) stating that none of the Securities of such series has theretofore been so credited and, (c) stating whether or not the Issuer intends to exercise its right to make an optional sinking fund payment with respect to such series and, if so, specifying the amount of such optional sinking fund payment which the Issuer intends to pay on or before the next succeeding sinking fund payment date. Any Securities of such series to be credited and required to be delivered to the Trustee in order for the Issuer to be entitled to credit therefor as aforesaid which have not theretofore been delivered to the Trustee shall be delivered for cancellation pursuant to Section 2.11 to the Trustee with such written statement (or reasonably promptly thereafter if acceptable to the Trustee). Failure of the Issuer, on or before any such forty-fifth day, to deliver such written statement and Securities specified in this paragraph, if any, shall not constitute a default but shall constitute, on and as of such date, the irrevocable election of the Issuer (i) that the mandatory sinking fund payment for such series due on the next succeeding sinking fund payment date shall be paid entirely in cash without the option to deliver or credit Securities of such series in respect thereof and (ii) that the Issuer will make no optional sinking fund payment with respect to such series as provided in this Section.

If the sinking fund payment or payments (mandatory or optional or both) to be made in cash on the next succeeding sinking fund payment date plus any unused balance of any preceding sinking fund payments made in cash shall exceed $50,000 (or a lesser sum if the Issuer shall so request) with respect to the Securities of any particular series, such cash shall be applied on the next succeeding sinking fund payment date to the redemption of securities of such series at the sinking fund redemption price together with accrued interest to the date fixed for redemption. If such amount shall be $50,000 or less and the Issuer makes no such request then it shall be carried over until a sum in excess of $50,000 is available. The Trustee shall select, in the manner provided in Section 11.2, for redemption on such sinking fund payment date a sufficient principal amount of Securities of such series to absorb said cash, as nearly as may be, and shall (if requested in writing by the Issuer) inform the Issuer of the serial numbers of the Securities of such series (or portions thereof) so selected. Securities of any series which are (a) owned by the Issuer or an entity known by the Trustee to be directly or indirectly controlling or controlled by or under direct or indirect common control with the Issuer, as shown by the Security register, and not known to the Trustee to have been pledged or hypothecated by the Issuer or any such entity or (b) identified in an Officers' Certificate at least 60 days prior to the sinking fund payment date as being beneficially owned by, and not pledged or hypothecated by, the Issuer or an entity directly or indirectly controlling or controlled by or under direct or indirect common control with the Issuer shall be excluded from Securities of such series eligible for selection for redemption. The Trustee, in the name and at the expense of the Issuer (or the Issuer, if it shall so request the Trustee in writing) shall cause notice of redemption of the Securities of such series to be given in substantially the manner provided in Section 11.2 (and with the effect provided in Section 11.3) for the redemption of Securities of such series in part at the option of the Issuer. The amount of any sinking fund payments not so applied or allocated to the redemption of Securities of such series shall be added to the next cash sinking fund payment for such series and, together with such payment, shall be applied in accordance with the provisions of this Section. Any and all sinking fund moneys held on the stated maturity date of the Securities of any particular series (or earlier, if such maturity is accelerated), which are not held for the payment or redemption of particular Securities of such series shall be applied, together with other moneys, if necessary, sufficient for the purpose, to the payment of the principal of, and interest on, the Securities of such series at

51

maturity.

At least one Business Day before each sinking fund payment date, the Issuer shall pay to the Trustee in cash or shall otherwise provide for the payment of all interest accrued to the date fixed for redemption on Securities to be redeemed on the next following sinking fund payment date.

The Trustee shall not redeem or cause to be redeemed any Securities of a series with sinking fund moneys or mail any notice of redemption of Securities for such series by operation of the sinking fund during the continuance of a default in payment of interest on such Securities or of any Event of Default except that, where the mailing of notice of redemption of any Securities shall theretofore have been made, the Trustee shall redeem or cause to be redeemed such Securities, provided that it shall have received from the Issuer a sum sufficient for such redemption. Except as aforesaid, any moneys in the sinking fund for such series at the time when any such default or Event of Default shall occur, and any moneys thereafter paid into the sinking fund, shall, during the continuance of such default or Event of Default, be deemed to have been collected under Article Four and held for the payment of all such Securities. In case such Event of Default shall have been waived as provided in Section 4.9 or the default cured on or before the forty-fifth day preceding the sinking fund payment date in any year, such moneys shall thereafter be applied on the next succeeding sinking fund payment date in accordance with this Section to the redemption of such Securities.

## ARTICLE TWELVE

## ADDITIONAL AMOUNTS; CERTAIN TAX PROVISIONS

SECTION 12.1 Redemption Upon Changes in Withholding Taxes. The Securities of any series may be redeemed, as a whole but not in part, at the election of the Issuer, upon not less than 30 nor more than 60 days notice (which notice shall be irrevocable), at a redemption price equal to 100% of the principal amount thereof, together with accrued interest, if any, to the redemption date and Additional Amounts (as defined in Section 12.2), if any, if as a result of any amendment to, or change in, the laws or regulations of Luxembourg or any political subdivision or taxing authority thereof or therein having power to tax (a "Taxing Authority"), or any change in the application or official interpretation of such laws or regulations which amendment or change becomes effective after the date the Securities of such series are issued, the Issuer has become or will become obligated to pay Additional Amounts, on the next date on which any amount would be payable with respect to the Securities of such series, and such obligation cannot be avoided by the use of reasonable measures available to the Issuer; provided, however, that (a) no such notice of redemption may be given earlier than 60 days prior to the earliest date on which the Issuer would be obligated to pay such Additional Amounts, and (b) at the time such notice of redemption is given, such obligation to pay such Additional Amounts remains in effect. Prior to the giving of any notice of redemption described in this paragraph, the Issuer shall deliver to the Trustee (i) an Officer's Certificate of the Issuer stating that the obligation to pay Additional Amounts cannot be avoided by the Issuer taking reasonable measures available to it and (ii) a written opinion of independent legal counsel to the Issuer of recognised standing to the effect that the Issuer has or will become obligated to pay Additional Amounts as a result of a change, amendment, official interpretation or application described above and that the Issuer cannot avoid the payment of such Additional Amounts by taking reasonable measures available to it.

SECTION 12.2 Payment of Additional Amounts. All payments made by the Issuer, Tyco and any other Guarantor under or with respect to the Securities and the Guarantees will be made free and clear of and without withholding or deduction for or on account of any

52

present or future taxes, duties, levies, imposts, assessments or governmental charges of whatever nature imposed or levied by or on behalf of any Taxing Authority ("Taxes"), unless the Issuer, Tyco or such Guarantor, as the case may be, is required to withhold or deduct Taxes by law or by the interpretation or administration thereof. In the event that the Issuer, Tyco or such Guarantor is required to so withhold or deduct any amount for or on account of any Taxes from any payment made under or with respect to the Securities or the Guarantees, as the case may be, the Issuer, Tyco or such Guarantor, as the case may be, will pay such additional amounts ("Additional Amounts") as may be necessary so that the net amount received by each Holder of Securities (including Additional Amounts) after such withholding or deduction will equal the amount that such Holder would have received if such Taxes had not been required to be withheld or deducted; provided that no Additional Amounts will be payable with respect to a payment made to a Holder of Securities to the extent:

   (a) that any such Taxes would not have been so imposed but for the existence of any present or former connection between such Holder and the Taxing Authority imposing such Taxes (other than the mere receipt of such payment, acquisition, ownership or disposition of such Securities or the exercise or enforcement of rights under such Securities, the Guarantees or this Indenture);

   (b) of any estate, inheritance, gift, sales, transfer, or personal property Tax imposed with respect to such Securities, except as otherwise provided herein;

   (c) that any such Taxes would not have been so imposed but for the presentation of such Securities (where presentation is required) for payment on a date more than 30 days after the date on which such payment became due and payable or the date on which payment thereof is duly provided for, whichever is later, except to the extent that the beneficiary or Holder thereof would have been entitled to Additional Amounts had the Securities been presented for payment on any date during such 30-day period; or

   (d) that such Holder would not be liable or subject to such withholding or deduction of Taxes but for the failure to make a valid declaration of non-residence or other similar claim for exemption, if (x) the making of such declaration or claim is required or imposed by statute, treaty, regulation, ruling or administrative practice of the relevant Taxing Authority as a precondition to an exemption from, or reduction in, the relevant Taxes, and (y) at least 60 days prior to the first payment date with respect to which the Issuer, Tyco or such Guarantor shall apply this clause (d), the Issuer, Tyco or such Guarantor shall have notified all Holders of Securities in writing that they shall be required to provide such declaration or claim.

   The Issuer, Tyco or such Guarantor, as applicable, will also (i) make such withholding or deduction of Taxes and (ii) remit the full amount of Taxes so deducted or withheld to the relevant Taxing Authority in accordance with all applicable laws. The Issuer, Tyco or such Guarantor, as applicable, will use their reasonable best efforts to obtain certified copies of tax receipts evidencing the payment of any Taxes so deducted or withheld from each Taxing Authority imposing such Taxes. The Issuer, Tyco or such Guarantor, as the case may be, will, upon request, make available to the Holders of the Securities, within 60 days after the date the payment of any Taxes so deducted or withheld is due pursuant to applicable law, certified copies of tax receipts evidencing such payment by the Issuer, Tyco or such Guarantor or if, notwithstanding the Issuer's, Tyco's or such Guarantor's efforts to obtain such receipts, the same are not obtainable, other evidence of such payments by the Issuer, Tyco or such Guarantor.

   At least 30 days prior to each date on which any payment under or with respect to the

Securities is due and payable, if the Issuer, Tyco or such Guarantor will be obligated to pay Additional Amounts with respect to such payment, the Issuer, Tyco or such Guarantor will deliver to the Trustee an Officers' Certificate stating the fact that such Additional Amounts will be payable, the amounts so payable and will set forth such other information as is necessary to enable such Trustee to pay such Additional Amounts to Holders of Securities on the payment date.

The foregoing provisions shall survive any termination of the discharge of this Indenture and shall apply mutatis mutandis to any jurisdiction in which any successor Person to the Issuer, Tyco or such Guarantor, as the case may be, is organized or is engaged in business for tax purposes or any political subdivisions or taxing authority or agency thereof or therein.

In addition, the Issuer will pay any stamp, issue, registration, documentary or other similar taxes and duties, including interest, penalties and Additional Amounts with respect thereto, payable in Luxembourg or the United States or any political subdivision or taxing authority of or in the foregoing in respect of the creation, issue, offering, enforcement, redemption or retirement of the Securities.

Whenever in this Indenture or the Securities there is mentioned, in any context, the payment of principal, redemption price, interest or any other amount payable under or with respect to any Security, such mention shall be deemed to include mention of the payment of Additional Amounts to the extent that, in such context, Additional Amounts are, were or would be payable in respect thereof.

## ARTICLE THIRTEEN

### GUARANTEES

SECTION 13.1 Guarantees. Except as otherwise provided herein, Tyco and each Subsidiary that becomes a Guarantor after the date of this Indenture (collectively with Tyco, the "Guarantors") hereby, jointly and severally, fully and unconditionally guarantees to each Holder of a Security authenticated and delivered by the Trustee, and to the Trustee on behalf of such Holder, the due and punctual payment of the principal of and interest on such Security and all other obligations of the Issuer under this Indenture when and as the same shall become due and payable, whether at the stated maturity, by acceleration, call for redemption or otherwise, in accordance with the terms of such Security and of this Indenture. Each Guarantor hereby, jointly and severally, fully and unconditionally, also guarantees to the Trustee the due and punctual payment of all obligations of the Issuer to the Trustee under this Indenture. In case of the failure of the Issuer punctually to make any such payment, each Guarantor hereby, jointly and severally, agrees to cause such payment to be made punctually when and as the same shall become due and payable, whether at the stated maturity or by acceleration, call for redemption or otherwise, and as if such payment were made by the Issuer.

Each of the Guarantors hereby jointly and severally agrees that its obligations hereunder shall be absolute and unconditional, irrespective of, and shall be unaffected by, the validity, regularity or enforceability of such Security or this Indenture, the absence of any action to enforce the same or any release, amendment, waiver or indulgence granted to the Issuer or any Guarantor or any consent to departure from any requirement of any other guarantee of all or any of the Securities or any other circumstances which might otherwise constitute a legal or equitable discharge or defense of a surety or guarantor. Each of the Guarantors hereby waives the benefits of diligence, presentment, demand for payment, any requirement that the Trustee or any of the Holders protect, secure, perfect or insure any security interest in or other lien on any property subject thereto or exhaust any right or take any action against the Issuer or any other Person or

54

any collateral, filing of claims with a court in the event of insolvency or
bankruptcy of the Issuer, any right to require a proceeding first against the
Issuer, protest or notice with respect to such Security or the Indebtedness
evidenced thereby and all demands whatsoever, and covenants that this Guarantee
will not be discharged in respect of such Security except by complete
performance of the obligations contained in such Security and in such Guarantee.
Each Guarantor agrees that if, after the occurrence and during the continuance
of an Event of Default, the Trustee or any of the Holders are prevented by
applicable law from exercising their respective rights to accelerate the
maturity of the Securities, to collect interest on the Securities, or to enforce
or exercise any other right or remedy with respect to the Securities, such
Guarantor agrees to pay to the Trustee for the account of the Holders, upon
demand therefor, the amount that would otherwise have been due and payable had
such rights and remedies been permitted to be exercised by the Trustee or any of
the Holders.

     Each Guarantor shall be subrogated to all rights of the Holders of the
Securities upon which its Guarantee is endorsed against the Issuer in respect of
any amounts paid by such Guarantor on account of such Security pursuant to the
provisions of its Guarantee or this Indenture; provided, however, that no
Guarantor shall be entitled to enforce or to receive any payment arising out of,
or based upon, such right of subrogation until the principal of and interest on
all Securities issued hereunder shall have been paid in full.

     Each Guarantor that makes or is required to make any payment in
respect of its Guarantee shall be entitled to seek contribution from the other
Guarantors to the extent permitted by applicable law; provided, that no
Guarantor shall be entitled to enforce or receive any payments arising out of,
or based upon, such right of contribution until the principal of and interest on
all Securities issued hereunder shall have been paid in full.

     Each Guarantee shall remain in full force and effect and continue to
be effective should any petition be filed by or against the Issuer for
liquidation or reorganization, should the Issuer become insolvent or make an
assignment for the benefit of creditors or should a receiver or trustee be
appointed for all or any part of the Issuer's assets, and shall, to the fullest
extent permitted by law, continue to be effective or be reinstated, as the case
may be, if at any time payment and performance of the Securities, is, pursuant
to applicable law, rescinded or reduced in amount, or must otherwise be restored
or returned by any Holder of the Securities, whether as a "voidable preference,"
"fraudulent transfer," or otherwise, all as though such payment or performance
had not been made. In the event that any payment, or any part thereof, is
rescinded, reduced, restored or returned, the Securities shall, to the fullest
extent permitted by law, be reinstated and deemed reduced only by such amount
paid and not so rescinded, reduced, restored or returned.

     Any term or provision of any Guarantee to the contrary
notwithstanding, the aggregate amount of the obligations guaranteed hereunder
shall be reduced to the extent necessary to prevent such Guarantee from
violating or becoming voidable under applicable law relating to fraudulent
conveyance or fraudulent transfer or similar laws affecting the rights of
creditors generally.

     SECTION 13.2 Execution and Delivery of Guarantees. The Guarantees to
be endorsed on the Securities shall include the terms of the Guarantee set forth
in Section 13.1 and shall be substantially in the form established pursuant to
Section 2.2. Each of the Guarantors hereby agrees to execute its Guarantee, in a
form established pursuant to Section 2.2, to be endorsed on each Security
authenticated and delivered by the Trustee.

     The Guarantee shall be executed on behalf of each respective Guarantor
by any one of

                                    55

such Guarantor's chairman of the Board of Directors, president, vice presidents or other person duly authorized by the Board of Directors of such Guarantor. The signature of any or all of these persons on the Guarantee may be manual or facsimile.

A Guarantee bearing the manual or facsimile signature of individuals who were at any time the proper officers of a Guarantor shall bind such Guarantor, notwithstanding that such individuals or any of them have ceased to hold such offices prior to the authentication and delivery of the Security on which such Guarantee is endorsed or did not hold such offices at the date of such Guarantee.

The delivery of any Security by the Trustee, after the authentication thereof hereunder, shall constitute due delivery of the Guarantee endorsed thereon on behalf of the Guarantors and shall bind each Guarantor notwithstanding the fact that Guarantee does not bear the signature of such Guarantor. Each of the Guarantors hereby jointly and severally agrees that its Guarantee set forth in Section 13.1 and in the form of Guarantee established pursuant to Section 2.2 shall remain in full force and effect notwithstanding any failure to endorse a Guarantee on any Security.

SECTION 13.3 Release of Guarantees. Notwithstanding anything in this Article Thirteen to the contrary, concurrently with the payment in full of the principal of, premium, if any, and interest on the Securities, the Guarantors shall be released from and relieved of their obligations under this Article Thirteen. Upon the delivery by the Issuer to the Trustee of an Officers' Certificate and an Opinion of Counsel to the effect that the transaction giving rise to the release of this Guarantee was made by the Issuer in accordance with the provisions of this Indenture and the Securities, the Trustee shall execute any documents reasonably required in order to evidence the release of the Guarantors from their obligations under this Guarantee. If any of the obligations to pay the principal of, premium, if any, and interest on the Securities and all other obligations of the Issuer are revived and reinstated after the termination of this Guarantee, then all of the obligations of the Guarantors under this Guarantee shall be revived and reinstated as if this Guarantee had not been terminated until such time as the principal of, premium, if any, and interest on the Securities are paid in full, and each Guarantor shall enter into an amendment to this Guarantee, reasonably satisfactory to the Trustee, evidencing such revival and reinstatement.

This Guarantee shall terminate with respect to the applicable Guarantor and shall be automatically and unconditionally released and discharged as provided in Section 3.11(b).

SECTION 13.4 Additional Guarantors. A Subsidiary shall become a Guarantor with respect to the Securities, as contemplated by Section 3.11(a), by executing and delivering to the Trustee (a) a supplemental indenture, in form and substance reasonably satisfactory to the Trustee, which subjects such Person to the provisions (including the representations and warranties) of this Indenture as a Guarantor and (b) an Opinion of Counsel to the effect that such supplemental indenture has been duly authorized and executed by such Person and such supplemental indenture and such Person's obligations under its Guarantee and this Indenture constitute the legal, valid, binding and enforceable obligations of such Person (subject to such customary exceptions concerning creditors' rights and equitable principles.

56

IN WITNESS WHEREOF, the parties hereto have caused this Indenture to be duly executed, and their respective corporate seals to be hereunto affixed and attested, all as of June __, 1998.

TYCO INTERNATIONAL GROUP S.A., as Issuer

By:
-------------------------------------
  Name:
  Title:

TYCO INTERNATIONAL LTD., as Guarantor

By:
-------------------------------------
  Name:
  Title:

Attest:

By:
-----------------------

THE BANK OF NEW YORK, as Trustee

By:
-------------------------------------
  Name:
  Title:

Attest:

By:
-----------------------

57

# EXHIBIT B

Exhibit 4.1
EXECUTION COPY

**TYCO INTERNATIONAL GROUP S.A.,**
as Issuer

AND

**TYCO INTERNATIONAL LTD.,**
as Guarantor, if applicable

AND

**THE BANK OF NEW YORK,**
as Trustee

**INDENTURE**

Dated as of November 12, 2003

**UNSUBORDINATED DEBT SECURITIES**

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| **ARTICLE I. DEFINITIONS** | | 1 |
| Section 1.01 | Definitions of Terms | 1 |
| | | |
| **ARTICLE II. ISSUE, DESCRIPTION, TERMS, EXECUTION, REGISTRATION AND EXCHANGE OF SECURITIES** | | 8 |
| Section 2.01 | Designation and Terms of Securities | 8 |
| Section 2.02 | Form of Securities and Trustee's Certificate | 11 |
| Section 2.03 | Denominations; Provisions for Payment | 13 |
| Section 2.04 | Execution and Authentication | 15 |
| Section 2.05 | Transfer and Exchange | 15 |
| Section 2.06 | Temporary Securities | 22 |
| Section 2.07 | Mutilated, Destroyed, Lost or Stolen Securities | 23 |
| Section 2.08 | Cancellation | 24 |
| Section 2.09 | Benefits of Indenture | 24 |
| Section 2.10 | Authenticating Agent | 24 |
| Section 2.11 | Global Securities | 25 |
| Section 2.12 | CUSIP Numbers | 25 |
| Section 2.13 | Securities Denominated in Foreign Currencies | 25 |
| Section 2.14 | Wire Transfers | 26 |
| Section 2.15 | Designated Currency | 26 |
| Section 2.16 | Form of Guarantee | 26 |
| | | |
| **ARTICLE III. REDEMPTION OF SECURITIES AND SINKING FUND PROVISIONS** | | 27 |
| Section 3.01 | Redemption | 27 |
| Section 3.02 | Notice of Redemption | 27 |
| Section 3.03 | Payment Upon Redemption | 28 |
| Section 3.04 | Sinking Fund | 29 |
| Section 3.05 | Satisfaction of Sinking Fund Payments with Securities | 29 |
| Section 3.06 | Redemption of Securities for Sinking Fund | 30 |
| | | |
| **ARTICLE IV. CERTAIN COVENANTS** | | 30 |
| Section 4.01 | Payment of Principal, Premium and Interest | 30 |
| Section 4.02 | Maintenance of Office or Agency | 30 |
| Section 4.03 | Paying Agents | 31 |
| Section 4.04 | Statement by Officers as to Default | 31 |
| Section 4.05 | Appointment to Fill Vacancy in Office of Trustee | 32 |
| | | |
| **ARTICLE V. SECURITYHOLDERS' LISTS AND REPORTS BY THE COMPANY AND THE TRUSTEE** | | 32 |
| Section 5.01 | Company to Furnish Trustee Names and Addresses of Securityholders | 32 |
| Section 5.02 | Preservation of Information; Communications with Securityholders | 32 |
| Section 5.03 | Reports by the Company | 32 |

| | | |
|---|---|---|
| Section 5.04 | Reports by the Trustee. | 33 |
| | | |
| **ARTICLE VI. REMEDIES OF THE TRUSTEE AND SECURITYHOLDERS ON EVENT OF DEFAULT** | | 33 |
| Section 6.01 | Events of Default. | 33 |
| Section 6.02 | Collection of Indebtedness and Suits for Enforcement by Trustee | 35 |
| Section 6.03 | Application of Funds Collected. | 37 |
| Section 6.04 | Limitation on Suits. | 37 |
| Section 6.05 | Rights and Remedies Cumulative; Delay or Omission not Waiver. | 38 |
| Section 6.06 | Control by Securityholders. | 38 |
| Section 6.07 | Undertaking to Pay Costs. | 39 |
| Section 6.08 | Waiver Of Usury, Stay Or Extension Laws. | 39 |
| | | |
| **ARTICLE VII. CONCERNING THE TRUSTEE** | | 39 |
| Section 7.01 | Certain Duties and Responsibilities of Trustee. | 39 |
| Section 7.02 | Certain Rights of Trustee. | 41 |
| Section 7.03 | Trustee not Responsible for Recitals or Issuance of Securities. | 42 |
| Section 7.04 | May Hold Securities. | 42 |
| Section 7.05 | Funds Held in Trust. | 42 |
| Section 7.06 | Compensation and Reimbursement. | 42 |
| Section 7.07 | Reliance on Officers' Certificate. | 43 |
| Section 7.08 | Disqualification; Conflicting Interests. | 43 |
| Section 7.09 | Corporate Trustee Required; Eligibility. | 43 |
| Section 7.10 | Resignation and Removal; Appointment of Successor. | 44 |
| Section 7.11 | Acceptance of Appointment By Successor. | 45 |
| Section 7.12 | Merger, Conversion, Consolidation or Succession to Business. | 46 |
| Section 7.13 | Preferential Collection of Claims Against the Company. | 46 |
| | | |
| **ARTICLE VIII. CONCERNING THE SECURITYHOLDERS** | | 47 |
| Section 8.01 | Evidence of Action by Securityholders. | 47 |
| Section 8.02 | Proof of Execution by Securityholders. | 47 |
| Section 8.03 | Who May be Deemed Owners. | 48 |
| Section 8.04 | Certain Securities Owned by Company Disregarded. | 48 |
| Section 8.05 | Actions Binding on Future Securityholders. | 48 |
| | | |
| **ARTICLE IX. SUPPLEMENTAL INDENTURES** | | 49 |
| Section 9.01 | Supplemental Indentures Without the Consent of Securityholders. | 49 |
| Section 9.02 | Supplemental Indentures with Consent of Securityholders. | 50 |
| Section 9.03 | Effect of Supplemental Indentures. | 51 |
| Section 9.04 | Securities Affected by Supplemental Indentures. | 51 |
| Section 9.05 | Execution of Supplemental Indentures. | 52 |
| | | |
| **ARTICLE X. SUCCESSOR CORPORATION** | | 52 |
| Section 10.01 | Consolidation, Merger and Sale of Assets. | 52 |
| Section 10.02 | Successor Person Substituted. | 53 |
| | | |
| **ARTICLE XI. SATISFACTION AND DISCHARGE** | | 54 |

Section 11.01    Applicability of Article.    54
Section 11.02    Satisfaction and Discharge of Indenture.    54
Section 11.03    Defeasance and Discharge of Obligations;    54
                Covenant Defeasance.
Section 11.04    Deposited Funds to be Held in Trust.    56
Section 11.05    Payment of Funds Held by Paying Agents.    56
Section 11.06    Repayment to Tyco or the Company.    57
Section 11.07    Reinstatement.    57

ARTICLE XII.  IMMUNITY OF INCORPORATORS, STOCKHOLDERS, OFFICERS AND DIRECTORS    57
Section 12.01    No Recourse.    57

ARTICLE XIII.  MISCELLANEOUS PROVISIONS    58
Section 13.01    Effect on Successors and Assigns.    58
Section 13.02    Actions by Successor.    58
Section 13.03    Notices.    58
Section 13.04    Governing Law.    60
Section 13.05    Treatment of Securities as Debt.    60
Section 13.06    Compliance Certificates and Opinions.    60
Section 13.07    Payments on Business Days.    60
Section 13.08    Conflict with Trust Indenture Act.    61
Section 13.09    Counterparts.    61
Section 13.10    Severability.    61
Section 13.11    No Adverse Interpretation of Other    61
                Agreements.
Section 13.12    Table of Contents, Headings, Etc.    61
Section 13.13    Consent to Jurisdiction and Service of    61
                Process.

ARTICLE XIV.  ADDITIONAL AMOUNTS; CERTAIN TAX PROVISIONS    62
Section 14.01    Redemption Upon Changes in Withholding    62
                Taxes.
Section 14.02    Payment of Additional Amounts.    63

ARTICLE XV.  GUARANTEES    65
Section 15.01    Guarantee.    65
Section 15.02    Execution and Delivery of Guarantee.    66
Section 15.03    Release of Guarantee.    67

iii

**Cross Reference Table***

| Section of Trust Indenture Act of 1939, as amended | Section of Indenture |
|---|---|
| 310(a) | 7.09 |
| 310(b) | 7.08 |
|  | 7.10 |
| 310(c) | Inapplicable |
| 311(a) | 7.13 |
| 311(b) | 7.13 |
| 311(c) | Inapplicable |
| 312(a) | 5.01 |
|  | 5.02(a) |
| 312(b) | 5.02(b) |
| 312(c) | 5.02(b) |
| 313(a) | 5.04(a) |
| 313(b) | 5.04(b) |
| 313(c) | 5.04(a) |
|  | 5.04(b) |
| 313(d) | 5.04(b) |
| 314(a) | 5.03 |
| 314(b) | Inapplicable |
| 314(c) | 13.06 |
| 314(d) | Inapplicable |
| 314(e) | 13.06 |
| 314(f) | Inapplicable |
| 315(a) | 7.01 |
| 315(b) | 5.04 |
| 315(c) | 7.01(a) |
| 315(d) | 7.01(b) |
| 315(e) | 6.07 |
| 316(a) | 6.06, 8.04 |
| 316(b) | 6.04 |
| 316(c) | 8.01 |
| 317(a) | 6.02 |
| 317(b) | 4.03 |
| 318(a) | 13.08 |

*   This Cross–Reference Table does not constitute part of the Indenture and shall not have any bearing on the interpretation of any of its terms or provisions.

iv

THIS INDENTURE is dated as of November 12, 2003 among Tyco International Group S.A., a Luxembourg company (the "Company"). Tyco International Ltd., a Bermuda company ("Tyco"), and The Bank Of New York. a New York banking corporation (the "Trustee").

## RECITALS

A.     This Indenture provides for the issuance of unsecured debt securities (the "Securities"), in an unlimited aggregate principal amount to be issued from time to time in one or more series, to be authenticated by the certificate of the Trustee, and for the issuance of guarantees of the Securities.

B.     This Indenture is subject to the provisions of the Trust Indenture Act that are deemed to be incorporated into this Indenture and shall, to the extent applicable, be governed by such provisions.

C.     All things necessary to make this Indenture a valid agreement, in accordance with its terms, have been done.

NOW, THEREFORE, in consideration of the premises and the purchase of the Securities by the holders thereof, it is mutually covenanted and agreed as follows for the equal and ratable benefit of the holders of Securities:

## ARTICLE I.

## DEFINITIONS

Section 1.01          Definitions of Terms.

The terms defined in this Section 1.01 (except as in this Indenture otherwise expressly provided or unless the context otherwise requires) for all purposes of this Indenture and of any indenture supplemental hereto shall have the respective meanings specified in this Section 1.01 and shall include the plural as well as the singular. All other terms used in this Indenture that are defined in the Trust Indenture Act or that are by reference in the Trust Indenture Act defined in the Securities Act of 1933, as amended (the "Securities Act") (except as herein otherwise expressly provided or unless the context otherwise requires), shall have the meanings assigned to such terms in said Trust Indenture Act and in said Securities Act as in force at the date of the execution of this instrument. All accounting terms used herein and not expressly defined shall have the meanings assigned to such terms in accordance with generally accepted accounting principles, and the term "generally accepted accounting principles" means such accounting principles as are generally accepted in the United States at the time of any computation.

"144A Global Security", with respect to any series of Securities, means one or more Global Securities bearing the Private Placement Legend that will be issued in an aggregate amount of denominations equal in total to the outstanding principal amount of the Securities of such series sold in global form in reliance on Rule 144A.

"Additional Amounts" has the meaning set forth in Section 14.02.

"**Affiliate**", with respect to any specified Person, means any other Person directly or indirectly controlling or controlled by or under direct or indirect common control with such specified Person. For the purposes of this definition, "control" when used with respect to any specified Person means the power to direct the management and policies of such Person, directly or indirectly, whether through ownership of voting securities, by contract or otherwise; and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

"**Applicable Procedures**", with respect to any transfer or exchange of or for beneficial interests in any Global Security for a series of Securities, means the rules and procedures of the Depositary, Euroclear and Clearstream that apply to such transfer or exchange at the relevant time.

"**Authenticating Agent**" means an authenticating agent with respect to all or any of the series of Securities appointed with respect to all or any series of the Securities by the Trustee pursuant to Section 2.10.

"**Board of Directors**" means the Board of Directors of the Company or Tyco or any duly authorized committee of such Board of Directors.

"**Board Resolution**" means a copy of a resolution certified by the Secretary or an Assistant Secretary of the Company or Tyco to have been duly adopted by the Board of Directors and to be in full force and effect on the date of such certification.

"**Business Day**", with respect to any series of Securities, means any day other than Saturday, Sunday or a day on which Federal or State banking institutions in the Borough of Manhattan, The City of New York, or in the city where the office or agency for payment on the Securities is maintained pursuant to Section 4.02, are authorized or obligated by law, executive order or regulation to close.

"**Capital Stock**" of any Person means any and all shares, interests, participations, rights in or other equivalents (however designated) of such Person's capital stock, other equity interests whether now outstanding or issued after the date of this Indenture, partnership interests (whether general or limited), any other interest or participation that confers on a Person the right to receive a share of the profits and losses of, or distributions of assets of, the issuing Person and any rights (other than debt securities convertible into Capital Stock), warrants or options exchangeable for or convertible into such Capital Stock.

"**Clearstream**" means Clearstream Banking S.A., or its successors.

"**Commission**" means the Securities and Exchange Commission.

"**Company**" means Tyco International Group S.A. until a successor entity shall have become such pursuant to Article X, and thereafter "Company" shall mean such successor entity.

"**Corporate Trust Office**" means the office of the Trustee at which, at any particular time, its corporate trust business shall be principally administered, which office at the date hereof is located at 101 Barclay Street, 21 W, New York, New York 10286, Attention: Corporate Trust Administration.

2

"Currency" means Dollars or Foreign Currency.

"Default" means any event, act or condition that with notice or lapse of time, or both, would constitute an Event of Default.

"Definitive Security" means a certificated Security registered in the name of the Securityholder thereof and issued in accordance with Section 2.05.

"Depositary", with respect to Securities of any series which the Company shall determine will be issued in whole or in part as a Global Security, means The Depository Trust Company ("DTC"), New York, New York, another clearing agency, or any successor registered as a clearing agency under the Securities Exchange Act of 1934, as amended (the "Exchange Act"), and any other applicable U.S. or foreign statute or regulation, which, in each case, shall be designated by the Company pursuant to Section 2.01.

"Designated Currency" has the meaning set forth in Section 2.15.

"Distribution Compliance Period" means the restricted period as defined in Rule 903(b)(3) under the Securities Act.

"Dollar" or "$" means such currency of the United States as at the time of payment is legal tender for the payment of public and private debts.

"Dollar Equivalent" means, with respect to any monetary amount in a Foreign Currency, at any time for the determination thereof, the amount of Dollars obtained by converting such Foreign Currency involved in such computation into Dollars at the spot rate for the purchase of Dollars with the applicable Foreign Currency as quoted by J.P. Morgan Chase Bank (unless another comparable financial institution is designated by the Company) in New York, New York, at approximately 11:00 a.m. (New York time) on the date two business days prior to such determination.

"Euroclear" means Euroclear Bank S.A./N.V., or its successor, as operator of the Euroclear System.

"Event of Default", with respect to Securities of a particular series, means any event specified in Section 6.01, continued for the period of time, if any, therein designated.

"Foreign Currency" means a currency issued by the government of any country other than the United States or a composite currency the value of which is determined by reference to the values of the currencies of any group of countries.

"Global Security", with respect to any series of Securities, means a Security executed by the Company and delivered by the Trustee to the Depositary or pursuant to the Depositary's instruction, all in accordance with the Indenture, which shall be registered in the name of the Depositary or its nominee.

"Governmental Obligations" means securities that are (i) direct obligations of the United States for the payment of which its full faith and credit is pledged or (ii) obligations of a

3

Person controlled or supervised by and acting as an agency or instrumentality of the United States, the payment of which is unconditionally guaranteed as a full faith and credit obligation by the United States that, in either case, are not callable or redeemable at the option of the issuer thereof, and shall also include a depositary receipt issued by a bank (as defined in Section 3(a)(2) of the Securities Act) as custodian with respect to any such Governmental Obligation or a specific payment of principal of or interest on any such Governmental Obligation held by such custodian for the account of the holder of such depositary receipt; provided, however, that (except as required by law) such custodian is not authorized to make any deduction from the amount payable to the holder of such depositary receipt from any amount received by the custodian in respect of the Governmental Obligation or the specific payment of principal of or interest on the Governmental Obligation evidenced by such depositary receipt.

"Guarantee" means the unconditional and unsubordinated guarantee by Tyco of the due and punctual payment of principal of and interest on a series of Securities when and as the same shall become due and payable, whether at the stated maturity, by acceleration, call for redemption or otherwise in accordance with the terms of the Securities and this Indenture.

"herein," "hereof" and "hereunder," and other words of similar import, refer to this Indenture as a whole and not to any particular Article, Section or other subdivision.

"Indenture" means this instrument as originally executed or as it may from time to time be supplemented or amended by one or more indentures supplemental hereto entered into in accordance with the terms hereof.

"Indirect Participant" means any entity that, with respect to DTC, clears through or maintains a direct or indirect, custodial relationship with a Participant.

"Institutional Accredited Investor" means an institution that is an "accredited investor" as defined in Rule 501(a)(1), (2), (3) or (7) under the Securities Act, who is not also a QIB.

"Interest Payment Date," when used with respect to any installment of interest on a Security of a particular series, means the date specified herein, in such Security or in a Board Resolution or in an indenture supplemental hereto with respect to such series as the fixed date on which an installment of interest with respect to Securities of that series is due and payable.

"Officer" means any managing director, the chairman or any vice chairman of the Board of Directors, the chief executive officer, the president, the chief financial officer, any vice president, the treasurer, any assistant treasurer, the secretary or any assistant secretary of the Company or Tyco, as the case may be.

"Officers' Certificate" means a certificate, signed by any two managing directors or by both (a) the chairman of the Board of Directors, or any vice chairman of the Board of Directors, or the chief executive officer, president, chief financial officer or vice president and (b) the secretary or any assistant secretary or the treasurer or any assistant treasurer of the Company or Tyco, as the case may be, that is delivered to the Trustee in accordance with the terms hereof. Each such certificate shall include the statements provided for in Section 13.06, if and to the extent required by the provisions thereof.

4

"**Opinion of Counsel**" means an opinion in writing of legal counsel, who may be an Officer or employee of or counsel for Tyco or the Company that is delivered to the Trustee in accordance with the terms hereof. Each such opinion shall include the statements provided for in Section 13.06, if and to the extent required by the provisions thereof.

"**Original Issue Discount Security**" means a Security that provides for an amount less than the principal amount thereof to be due and payable upon a declaration of acceleration of the maturity thereof pursuant to Section 6.01.

"**Outstanding**", when used with reference to Securities of any series, shall, subject to the provisions of Section 8.04, mean, as of any particular time, all Securities of such series authenticated and delivered by the Trustee under this Indenture, except

(a)    Securities theretofore canceled by the Trustee or delivered to the Trustee for cancellation;

(b)    Securities, or portions thereof, for the payment or redemption of which funds in the necessary amount shall have been deposited in trust with the Trustee or with any paying agent other than the Company, or, if the Company shall act as its own paying agent, shall have been set aside, segregated and held in trust by the Company for the Holders of such Securities, provided that if such Securities, or portions thereof, are to be redeemed prior to the maturity thereof, notice of such redemption shall have been given as herein provided, or provision satisfactory to the Trustee shall have been made for giving such notice; and

(c)    Securities in substitution for which other Securities shall have been authenticated and delivered, or which shall have been paid, pursuant to the terms of Section 2.07, except with respect to any Security as to which proof satisfactory to the Trustee is presented that such Security is held by a person in whose hands such Security is a legal, valid and binding obligation of the Company.

In determining whether the holders of the requisite principal amount of Outstanding Securities of any series have given any request, demand, authorization, direction, notice, consent or waiver hereunder, the principal amount of an Original Issue Discount Security that shall be deemed to be Outstanding for such purposes shall be the amount of the principal thereof that would be due and payable as of the date of such determination upon a declaration of acceleration of the maturity thereof pursuant to Section 6.01 and the principal amount of a Security denominated in one or more currencies that shall be deemed to be Outstanding for such purposes shall be based on the Dollar Equivalent on the date of original issuance of such Security, of the principal amount of such Security.

"**Participant**", with respect to the Depositary, Euroclear or Clearstream, means a Person who has an account with the Depositary, Euroclear or Clearstream, respectively (and, with respect to DTC, shall include Euroclear and Clearstream).

"**Person**" means any individual, corporation, limited liability company, partnership, joint venture, joint-stock company, unincorporated organization or government or any agency or political subdivision thereof.

"Predecessor Security" of any particular Security means every previous Security evidencing all or a portion of the same debt as that evidenced by such particular Security; and, for the purposes of this definition, any Security authenticated and delivered under Section 2.07 in lieu of a lost, destroyed or stolen Security shall be deemed to evidence the same debt as the lost, destroyed or stolen Security.

"Private Placement Legend" means the legend set forth in Section 2.02(b) to be placed on all Restricted Securities issued under this Indenture or pursuant to a Board Resolution or an indenture supplemental hereto with respect to a series of Securities, except where specifically stated otherwise by the provisions of this indenture, such Board Resolution or such supplemental indenture.

"QIB" means a "qualified institutional buyer" as defined in Rule 144A.

"Regulation S Global Security" means, with respect to any series of Securities, a Regulation S Temporary Global Security of such series if required by Rule 903 of Regulation S or a Regulation S Permanent Global Security of such series, as the case may be.

"Regulation S Permanent Global Security", with respect to any series of Securities, means one or more permanent Global Securities bearing the Private Placement Legend that will be issued in an aggregate amount of denominations equal in total to the outstanding principal amount of the Securities of such series initially sold or, if required by Rule 903 of Regulation S, of the Regulation S Temporary Global Security of such series upon expiration of the Distribution Compliance Period with respect to such series, as the case may be.

"Regulation S Temporary Global Security", with respect to any series of Securities, means one or more temporary Global Securities bearing the Private Placement Legend and the Regulation S Temporary Global Security Legend issued in an aggregate amount of denominations equal in total to the outstanding principal amount of the Securities of such series initially sold, if required by Rule 903 of Regulation S.

"Regulation S Temporary Global Security Legend" means the legend set forth in Section 2.02(d), which is required to be placed on all Regulation S Temporary Global Securities issued under this Indenture.

"Regulation S" means Regulation S promulgated under the Securities Act, as it may be amended from time to time, and any successor provision thereto.

"Responsible Officer" means any vice president, any trust officer, any assistant trust officer, any assistant vice president, any assistant treasurer, or any other officer of the Trustee customarily performing functions similar to those performed by the Persons who at the time shall be such officers, respectively, or to whom any corporate trust matter is referred because of his knowledge of and familiarity with the particular subject.

"Restricted Definitive Security", with respect to any series of Securities, means one or more Definitive Securities of such series bearing the Private Placement Legend issued under this Indenture.

"**Restricted Global Security**", with respect to any series of Securities, means one or more Global Securities of such series bearing the Private Placement Legend, issued under this Indenture.

"**Restricted Security**", with respect to any series of Securities, means a Security of such series, unless or until it has been (i) effectively registered under the Securities Act and disposed of in accordance with a registration statement with respect to such series or (ii) distributed to the public pursuant to Rule 144 under the Securities Act (or any similar provision then in force).

"**Rule 144A**" means Rule 144A promulgated under the Securities Act, as it may be amended from time to time, and any successor provision thereto.

"**Securities**" means the securities authenticated and delivered under this Indenture.

"**Securityholder**," "**Holder**," "**holder of Securities**," "**registered holder**," or other similar term, means the Person or Persons in whose name or names a particular Security shall be registered on the books of the Company kept for that purpose in accordance with the terms of this Indenture.

"**Security Register**" has the meaning set forth in Section 2.05(a).

"**Security Registrar**" has the meaning set forth in Section 2.05(a).

"**Stated Maturity**", with respect to any Security, means the date specified in such security as the fixed date on which the payment of principal of such security is due and payable, including pursuant to any mandatory redemption provision (but excluding any provision providing for the repurchase of such security at the option of the holder thereof upon the happening of any contingency beyond the control of the issuer unless such contingency has occurred).

"**Subsidiary**", with respect to any Person, means any other Person of which at least a majority of the outstanding Voting Stock at the time is owned or controlled directly or indirectly by such Person or by one or more Subsidiaries of such Person or by such Person and one or more Subsidiaries of such Person.

"**Taxes**" has the meaning set forth in Section 14.02.

"**Taxing Authority**" has the meaning set forth in Section 14.01.

"**Trustee**" means The Bank of New York and, subject to the provisions of Article VII, shall include its successors and assigns. The term "Trustee" as used with respect to a particular series of the Securities shall mean the trustee with respect to that series.

"**Trust Indenture Act**" means the Trust Indenture Act of 1939, as amended, as in effect at the date of execution of this instrument subject to the provisions of Sections 9.01, 9.02, and 10.01.

7

"Tyco" means Tyco International Ltd. until a successor entity shall have become such pursuant to Article X, and thereafter "Tyco" shall mean such successor entity.

"**Unrestricted Definitive Security**", with respect to any series of Securities, means one or more Definitive Securities representing such series of Securities that do not bear and are not required to bear the Private Placement Legend, issued under this Indenture.

"**Unrestricted Global Security**", with respect to any series of Securities, means one or more permanent Global Securities representing such series of Securities that do not bear and are not required to bear the Private Placement Legend, issued under this Indenture.

"**Unrestricted Securities**", with respect to any series of Securities, means a Security (i) effectively registered under the Securities Act and disposed of in accordance with a registration statement with respect to such series or (ii) distributed to the public pursuant to Rule 144 under the Securities Act (or any similar provision then in force).

"**Voting Stock**" of a Person means Capital Stock of such Person of the class or classes pursuant to which the holders thereof have the general voting power under ordinary circumstances to elect at least a majority of the board of directors, managers or trustees of such Person, irrespective of whether or not at the time Capital Stock of any other class or classes shall have or might have voting power by reason of the happening of any contingency.

## ARTICLE II.

### ISSUE, DESCRIPTION, TERMS, EXECUTION, REGISTRATION AND EXCHANGE OF SECURITIES

Section 2.01         **Designation and Terms of Securities.**

(a)      The aggregate principal amount of Securities that may be authenticated and delivered under this Indenture is unlimited. The Securities may be issued in one or more series up to the aggregate principal amount of Securities of that series from time to time authorized by or pursuant to a Board Resolution of the Company or pursuant to one or more indentures supplemental hereto. Prior to the initial issuance of Securities of any series, there shall be established in or pursuant to a Board Resolution of the Company, and set forth in an Officers' Certificate of the Company, or established in one or more indentures supplemental hereto, with respect to the Securities of the series:

(1)      the title of the Security of the series (which shall distinguish the Securities of the series from all other Securities);

(2)      any limit upon the aggregate principal amount of the Securities of that series that may be authenticated and delivered under this Indenture (except for Securities authenticated and delivered upon registration of transfer of, or in exchange for or in lieu of other Securities of that series);

(3)      the date or dates on which the principal and premium, if any, of the Securities of the series is payable;

8

(4)    the rate or rates (which may be fixed or variable) at which the Securities of the series shall bear interest or the manner of calculation of such rate or rates, if any (including any procedures to vary or reset such rate or rates), and the basis upon which interest will be calculated if other than that of a 360 day year of twelve 30-day months;

(5)    the date or dates from which such interest shall accrue, the Interest Payment Dates on which such interest will be payable or the manner of determination of such Interest Payment Dates, and the record date for the determination of holders to whom interest is payable on any such Interest Payment Dates;

(6)    any trustees, authenticating agents or paying agents with respect to such series, if different from those set forth in this Indenture;

(7)    the right, if any, to extend the interest payment periods or defer the payment of interest and the duration of such extension or deferral;

(8)    the period or periods within which, the price or prices at which and the terms and conditions upon which, Securities of the series may be redeemed, in whole or in part, at the option of the Company;

(9)    the obligation, if any, of the Company to redeem, purchase or repay Securities of the series pursuant to any sinking fund or analogous provisions (including payments made in cash in anticipation of future sinking fund obligations) or at the option of a holder thereof and the period or periods within which, the price or prices at which, and the terms and conditions upon which, Securities of the series shall be redeemed, purchased or repaid, in whole or in part, pursuant to such obligation;

(10)    the form of the Securities of the series including the form of the Trustee's certificate of authentication for such series;

(11)    if other than denominations of $1,000 or any integral multiple thereof, the denominations in which the Securities of the series shall be issuable;

(12)    the Currency or Currencies in which payment of the principal of, premium, if any, and interest on, Securities of the series shall be payable;

(13)    if the principal amount payable at the Stated Maturity of Securities of the series will not be determinable as of any one or more dates prior to such Stated Maturity, the amount which will be deemed to be such principal amount as of any such date for any purpose, including the principal amount thereof which will be due and payable upon any maturity other than the Stated Maturity or which will be deemed to be Outstanding as of any such date (or, in any such case, the manner in which such deemed principal amount is to be determined);

(14)    the terms of any repurchase or remarketing rights;

(15)    if the Securities of the series shall be issued in whole or in part in the form of a Global Security or Securities, the type of Global Security to be issued; the terms and conditions, if different from those contained in this Indenture, upon which such Global Security

9

or Securities may be exchanged in whole or in part for other individual Securities in definitive registered form; the Depositary for such Global Security or Securities; and the form of any legend or legends to be borne by any such Global Security or Securities in addition to or in lieu of the legends referred to in Section 2.02;

(16)    whether the Securities of the series will be convertible into or exchangeable for other Securities, shares of common stock or other securities of any kind of the Company or another obligor, and, if so, the terms and conditions upon which such Securities will be so convertible or exchangeable, including the initial conversion or exchange price or rate or the method of calculation, how and when the conversion price or exchange ratio may be adjusted, whether conversion or exchange is mandatory, at the option of the holder or at our option, the conversion or exchange period, and any other provision in addition to or in lieu of those described herein;

(17)    if other than the principal amount thereof, the portion of the principal amount of Securities of the series which shall be payable upon declaration of acceleration of the maturity thereof pursuant to Section 6.01;

(18)    any additional restrictive covenants or Events of Default that will apply to the Securities of the series, or any changes to the restrictive covenants set forth in Article IV or the Events of Default set forth in Section 6.01 that will apply to the Securities of the series, which may consist of establishing different terms or provisions from those set forth in Article IV or Section 6.01 or eliminating any such restrictive covenant or Event of Default with respect to the Securities of the series;

(19)    any provisions granting special rights to holders when a specified event occurs;

(20)    if the amount of principal or any premium or interest on Securities of a series may be determined with reference to an index or pursuant to a formula, the manner in which such amounts will be determined;

(21)    any special tax implications of the Securities, including provisions for original issue discount securities, if offered;

(22)    whether and upon what terms Securities of a series may be defeased if different from the provisions set forth in this Indenture;

(23)    with regard to the Securities of any series that do not bear interest, the dates for certain required reports to the Trustee;

(24)    whether the Securities of the series will be issued as Unrestricted Securities or Restricted Securities, and, if issued as Restricted Securities, the rule or regulation promulgated under the Securities Act in reliance on which they will be sold;

(25)    whether the Securities of the series will be guaranteed by Tyco; and

(26)    any and all additional, eliminated or changed terms that shall apply to the

Securities of the series, including any terms which may be required by or advisable under United States laws or regulations (including the Securities Act and the rules and regulations promulgated thereunder) or advisable in connection with the marketing of Securities of that series.

(b)     All Securities of any one series shall be substantially identical except that Securities of any particular series may be issued at various times, in different denominations, with different currency of payments due thereunder, with different dates on which the principal or any installment of principal is payable, with different rates of interest, if any, or different methods by which rates of interest may be determined, with different dates from which such interest may accrue or on which such interest may be payable, and with different redemption dates, and except as may otherwise be provided in or pursuant to any such Board Resolution or in any supplemental indenture. If any of the terms of the series are established by action taken pursuant to a Board Resolution of the Company, a copy of an appropriate record of such action shall be certified by the Secretary or an Assistant Secretary of the Company and delivered to the Trustee at or prior to the delivery of the Officers' Certificate of the Company setting forth the terms of the series. The terms of the Securities of any series may provide that such Securities shall be authenticated and delivered by the Trustee upon original issuance from time to time upon written order of persons designated in such Board Resolution or supplemental indenture and that such persons are authorized to determine, consistent with such Board Resolution or supplemental indenture, such terms and conditions of the Securities of such series.

### Section 2.02          Form of Securities and Trustee's Certificate.

(a)     The Securities of any series and the Trustee's certificate of authentication to be borne by such Securities shall be substantially of the tenor and purport as set forth in one or more indentures supplemental hereto or as provided in a Board Resolution of the Company and as set forth in an Officers' Certificate of the Company and may have such letters, numbers or other marks of identification or designation and such legends or endorsements printed, lithographed or engraved thereon as the Company may deem appropriate and as are not inconsistent with the provisions of this Indenture, any Board Resolution or any indenture supplemental hereto, or as may be required to comply with any law or with any rule or regulation made pursuant thereto or with any rule or regulation of any stock exchange on which Securities of that series may be listed, or to conform to usage.

(b)     Each Restricted Security (and all Restricted Securities issued in exchange therefor or substitution thereof) shall bear a Private Placement Legend in substantially the following form:

"THIS SECURITY (OR ITS PREDECESSOR) WAS ORIGINALLY ISSUED IN A TRANSACTION EXEMPT FROM REGISTRATION UNDER THE UNITED STATES SECURITIES ACT OF 1933 (THE "SECURITIES ACT"), THIS SECURITY MAY NOT BE OFFERED, SOLD OR OTHERWISE TRANSFERRED IN THE ABSENCE OF SUCH REGISTRATION OR AN APPLICABLE EXEMPTION THEREFROM. EACH PURCHASER OF THIS SECURITY IS HEREBY NOTIFIED THAT THE SELLER OF THIS SECURITY MAY BE RELYING ON THE EXEMPTION FROM THE

PROVISIONS OF SECTION 5 OF THE SECURITIES ACT PROVIDED BY RULE 144A THEREUNDER.

THE HOLDER OF THIS SECURITY AGREES FOR THE BENEFIT OF THE COMPANY THAT (A) THIS SECURITY MAY BE OFFERED, RESOLD, PLEDGED OR OTHERWISE TRANSFERRED, ONLY (I) IN THE UNITED STATES TO A PERSON WHOM THE SELLER REASONABLY BELIEVES IS A QUALIFIED INSTITUTIONAL BUYER (AS DEFINED IN RULE 144A UNDER THE SECURITIES ACT) IN A TRANSACTION MEETING THE REQUIREMENTS OF RULE 144A, (II) OUTSIDE THE UNITED STATES IN AN OFFSHORE TRANSACTION IN ACCORDANCE WITH RULE 904 UNDER THE SECURITIES ACT, (III) PURSUANT TO AN EXEMPTION FROM REGISTRATION UNDER THE SECURITIES ACT PROVIDED BY RULE 144 THEREUNDER (IF AVAILABLE), (IV) TO AN INSTITUTIONAL ACCREDITED INVESTOR (AS DEFINED IN RULE 501(a)(1), (2), (3) OR (7) OF REGULATION D UNDER THE SECURITIES ACT) THAT, PRIOR TO SUCH TRANSFER, FURNISHES THE TRUSTEE A SIGNED LETTER CONTAINING CERTAIN REPRESENTATIONS AND AGREEMENTS RELATING TO THE TRANSFER OF THIS SECURITY, OR (V) PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT UNDER THE SECURITIES ACT. IN EACH OF CASES (I) THROUGH (V) IN ACCORDANCE WITH ANY APPLICABLE SECURITIES LAWS OF ANY STATE OF THE UNITED STATES, AND (B) THE HOLDER WILL, AND EACH SUBSEQUENT HOLDER IS REQUIRED TO, NOTIFY ANY PURCHASER OF THIS SECURITY FROM IT OF THE RESALE RESTRICTIONS REFERRED TO IN (A) ABOVE."

(c)     To the extent required by the Depositary for particular series of Securities, each Global Security of such series shall bear legends in substantially the following form:

"THIS GLOBAL SECURITY IS HELD BY THE DEPOSITARY (AS DEFINED IN THE INDENTURE GOVERNING THIS SECURITY) OR ITS NOMINEE IN CUSTODY FOR THE BENEFIT OF THE BENEFICIAL OWNERS HEREOF, AND IS NOT TRANSFERABLE TO ANY PERSON UNDER ANY CIRCUMSTANCES EXCEPT THAT (I) THE TRUSTEE MAY MAKE ANY SUCH NOTATIONS HEREON AS MAY BE REQUIRED PURSUANT TO THE INDENTURE, (II) THIS GLOBAL SECURITY MAY BE EXCHANGED IN WHOLE BUT NOT IN PART PURSUANT TO SECTION 2.05(C) OF THE INDENTURE, (III) THIS GLOBAL SECURITY MAY BE DELIVERED TO THE TRUSTEE FOR CANCELLATION PURSUANT TO THE INDENTURE AND (IV) THIS GLOBAL SECURITY MAY BE TRANSFERRED TO A SUCCESSOR DEPOSITARY WITH THE PRIOR WRITTEN CONSENT OF THE COMPANY."

"UNLESS AND UNTIL IT IS EXCHANGED IN WHOLE OR IN PART FOR SECURITIES IN DEFINITIVE FORM, THIS SECURITY MAY NOT BE TRANSFERRED EXCEPT AS A WHOLE BY THE DEPOSITARY TO A

12

NOMINEE OF THE DEPOSITARY OR BY A NOMINEE OF THE DEPOSITARY TO THE DEPOSITARY OR TO ANOTHER NOMINEE OF THE DEPOSITARY OR BY THE DEPOSITARY OR ANY SUCH NOMINEE TO A SUCCESSOR DEPOSITARY OR A NOMINEE OF SUCH SUCCESSOR DEPOSITARY, UNLESS THIS CERTIFICATE IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITARY TO THE COMPANY OR ITS AGENT FOR REGISTRATION OF TRANSFER, EXCHANGE OR PAYMENT, AND ANY CERTIFICATE ISSUED IS REGISTERED IN THE NAME OF ANY ENTITY AS MAY BE REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITARY (AND ANY PAYMENT IS MADE TO SUCH ENTITY AS MAY BE REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITARY), ANY TRANSFER, PLEDGE OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF HAS AN INTEREST HEREIN."

(d)     To the extent required by the Depositary, each Regulation S Temporary Global Security shall bear a legend in substantially the following form:

"THE RIGHTS ATTACHING TO THIS REG S TEMPORARY GLOBAL SECURITY, AND THE CONDITIONS AND PROCEDURES GOVERNING ITS EXCHANGE FOR DEFINITIVE SECURITIES, ARE AS SPECIFIED IN THE INDENTURE (AS DEFINED HEREIN). NEITHER THE HOLDER NOR THE BENEFICIAL OWNERS OF THIS REG S TEMPORARY SECURITY SHALL BE ENTITLED TO RECEIVE CASH PAYMENTS OF INTEREST DURING THE PERIOD WHICH SUCH HOLDER HOLDS THIS SECURITY. NOTHING IN THIS LEGEND SHALL BE DEEMED TO PREVENT INTEREST FROM ACCRUING ON THIS SECURITY."

**Section 2.03**          **Denominations; Provisions for Payment.**

The Securities shall be issuable as registered Securities and in the denominations of $1,000 or any integral multiple thereof, subject to Section 2.01(a)(11). The Securities of a particular series shall bear interest payable on the dates and at the rate specified as provided in Section 2.01 with respect to that series. The principal of and the interest on the Securities of any series, as well as any premium thereon in case of redemption thereof prior to maturity, shall be payable in Dollars except as otherwise specified pursuant to Section 2.01(a)(12), at the office or agency of the Company maintained for that purpose pursuant to Section 4.02. Each Security shall be dated the date of its authentication. Unless otherwise specified with respect to a series of Securities in accordance with the provisions of Section 2.01(a)(4), interest on the Securities shall be computed on the basis of a 360-day year composed of twelve 30-day months.

The interest installment on any Security that is payable, and is punctually paid or duly provided for, on any Interest Payment Date for Securities of that series shall be paid to the Person in whose name said Security (or one or more Predecessor Securities) is registered at the close of business on the regular record date for such interest installment. In the event that any Security of a particular series or portion thereof is called for redemption and the redemption date

13

is subsequent to a regular record date with respect to any Interest Payment Date and prior to such Interest Payment Date, interest on such Security will be paid upon presentation and surrender of such Security as provided in Section 3.03.

Unless otherwise set forth in a Board Resolution or one or more indentures supplemental hereto establishing the terms of any series of any Securities pursuant to Section 2.01, the term "regular record date" as used in this Section 2.03 with respect to a series of Securities shall mean a date 15 days immediately preceding any Interest Payment Date. Subject to the provisions of this Section 2.03, each Security of a series delivered under this Indenture upon registration of transfer or in exchange for or in lieu of any other Security of such series shall carry the rights to interest accrued and unpaid, and to accrue, that were carried by such other Security.

Unless otherwise specified with respect to a series of Securities in accordance with the provisions of Section 2.01, any interest on any Security that is payable, but is not punctually paid or duly provided for, on any Interest Payment Date for such Security ("Defaulted Interest") shall forthwith cease to be payable to the registered holder on the relevant regular record date, and such Defaulted Interest shall be paid by the Company, at its election, as provided in clause (1) or clause (2) below.

(1)    The Company may make payment of any Defaulted Interest on Securities to the Persons in whose names such Securities (or their respective Predecessor Securities) are registered at the close of business on a special record date for the payment of such Defaulted Interest, which shall be fixed in the following manner: the Company shall notify the Trustee in writing of the amount of Defaulted Interest proposed to be paid on each such Security and the date of the proposed payment, and at the same time the Company shall deposit with the Trustee funds in an amount equal to the aggregate amount proposed to be paid in respect of such Defaulted Interest or shall make arrangements satisfactory to the Trustee for such deposit prior to the date of the proposed payment, such funds when deposited to be held in trust for the benefit of the Persons entitled to such Defaulted Interest as in this clause (1) provided. Thereupon the Trustee shall fix a special record date for the payment of such Defaulted Interest which shall not be more than 15 nor less than ten days prior to the date of the proposed payment and not less than ten days after the receipt by the Trustee of the notice of the proposed payment. The Trustee promptly shall notify the Company of such special record date and, in the name and at the expense of the Company, shall cause notice of the proposed payment of such Defaulted Interest and the special record date therefor to be mailed, first class postage prepaid, to each Securityholder at his or her address as it appears in the Security Register, not less than ten days prior to such special record date. Notice of the proposed payment of such Defaulted Interest and the special record date therefor having been mailed as aforesaid, such Defaulted Interest shall be paid to the Persons in whose names such Securities (or their respective Predecessor Securities) are registered on such special record date and shall not be payable pursuant to the following clause (2).

(2)    The Company may make payment of any Defaulted Interest on any Securities in any other lawful manner not inconsistent with the requirements of any securities exchange on which such Securities may be listed, and upon such notice as may be required by such exchange.

14

**Section 2.04**                    Execution and Authentications.

The Securities shall be signed on behalf of the Company by any two managing directors or by both (a) the chairman of its Board of Directors, any vice chairman of its Board of Directors, its president or vice president and (b) its secretary, any assistant secretary, its treasurer or any assistant treasurer. Signatures may be in the form of a manual or facsimile signature. In the case of Definitive Securities of any series, such signatures may be imprinted or otherwise reproduced on such Securities. The Securities may contain such notations, legends or endorsements required by law, stock exchange rule or usage. Each Security shall be dated the date of its authentication by the Trustee.

A Security shall not be valid until authenticated manually by an authorized signatory of the Trustee or by an Authenticating Agent. Such signature shall be conclusive evidence that the Security so authenticated has been duly authenticated and delivered hereunder and that the holder is entitled to the benefits of this Indenture. At any time and from time to time after the execution and delivery of this Indenture, the Company may deliver Securities of any series executed by the Company, and, if applicable, endorsed by Tyco, to the Trustee for authentication, together with a written order of the Company for the authentication and delivery of such Securities, signed by an Officer (an "Authentication Order"), and the Trustee in accordance with such written order shall authenticate and deliver such Securities.

**Section 2.05**                    Transfer and Exchange.

(a)          Registration of Transfer and Exchange.  The Company shall keep, or cause to be kept, at its office or agency designated for such purpose as provided in Section 4.02, a register or registers (the "Security Register") in which, subject to such reasonable regulations as it may prescribe, the Company shall register the Securities and the transfers of Securities as provided in this Article II and which at all reasonable times shall be open for inspection by the Trustee. The register for the purpose of registering Securities and the transfer of Securities as herein provided shall be appointed as authorized by Board Resolution (the "Security Registrar").  If the Company fails to appoint or maintain another entity as Security Registrar, the Trustee shall act as such.  The Company or any of its Subsidiaries may act as Security Registrar.

To permit registrations of transfers and exchanges, the Company shall execute, and if applicable Tyco shall endorse, and deliver and the Trustee shall authenticate a new Security or Securities of the same series as the Security presented for a like aggregate principal amount and in authorized denominations upon receipt of an Authentication Order. The Trustee shall not be required to register the transfer of or exchange any Security selected for redemption in whole or in part, except the unredeemed portion of any Security being redeemed in part.

All Securities issued upon any registration of transfer or exchange of Securities shall be the valid obligations of the Company, and if applicable Tyco, evidencing the same indebtedness, and entitled to the same benefits under this Indenture, as the Securities surrendered upon such registration of transfer or exchange. Prior to such due presentment for the registration of a transfer of any Security, the Trustee, the Company, any paying agent and the Security Registrar may deem and treat the Person in whose name any Security is registered as the absolute owner of such Security for the purpose of receiving payment of principal of and interest on such Securities

and for all other purposes, and none of the Trustee, the Company, the paying agent or the Security Registrar shall be affected by notice to the contrary.

All certifications, certificates and opinions of counsel required to be submitted to the Trustee pursuant to this Section 2.05 to effect a registration of transfer or exchange may be submitted by facsimile.

(b)    Service Charge.  No service charge shall be made to a holder of a beneficial interest in a Global Security or to a Holder of a Definitive Security for any exchange or registration of transfer of Securities, or issue of new Securities in case of partial redemption of any series, but the Company may require payment of a sum sufficient to cover any tax or other governmental charge in relation thereto (other than any such taxes or other governmental charge payable upon exchange or registration of transfer pursuant to Sections 2.06, 3.05(b) and 9.04).

(c)    Transfer and Exchange of Global Securities.  A Global Security may not be transferred except as a whole by the Depositary for a series of the Securities to a nominee of such Depositary, by a nominee of such Depositary to such Depositary or to another nominee of such Depositary, or by such Depositary or any such nominee to a successor Depositary for a series of the Securities or a nominee of such successor Depositary. If at any time the Depositary for a series of the Securities notifies the Company that it is unwilling or unable to continue as Depositary for such series or if at any time the Depositary for such series shall no longer be registered or in good standing under the Exchange Act or other applicable statute or regulation, and a successor Depositary for such series is not appointed by the Company within 90 days after the Company receives such notice or becomes aware of such condition, as the case may be, the provisions of Section 2.11 shall no longer be applicable to the Securities of such series. In addition, the Company may at any time determine that the Securities of any series shall no longer be represented by a Global Security and that the provisions of Section 2.11 shall no longer apply to the Securities of such series. In either such event the Company will execute, and if applicable Tyco will endorse, and subject to this Section 2.05 the Trustee, upon receipt of an Officers' Certificate evidencing such determination by the Company, if applicable, will authenticate and deliver the Definitive Securities of such series, in authorized denominations, and in an aggregate principal amount equal to the principal amount of the Global Security of such series in exchange for such Global Security. Upon the exchange of the Global Security of such series for such Definitive Securities of such series, the Global Security shall be canceled by the Trustee. Such Definitive Securities shall be registered in such names and in such authorized denominations as the Depositary, pursuant to instructions from its Participants or Indirect Participants or otherwise, shall instruct the Trustee. The Trustee shall deliver such Securities to the Depositary for delivery to the Persons in whose names such Securities are so registered.

Except as provided in Sections 2.06 and 2.07, a Global Security may not be exchanged for another Security other than as provided in this Section 2.05(c); however, beneficial interests in a Global Security may be transferred and exchanged as provided in Section 2.05(d) or (e). The provisions of this Section 2.05(c) are subject to Section 2.11.

(d)    Transfer and Exchange of Beneficial Interests in the Global Securities.  The transfer and exchange of beneficial interests in the Global Securities of a series shall be effected through the Depositary, in accordance with the provisions of this Indenture, any Board

16

Resolution and any one or more indentures supplemental hereto, and the Applicable Procedures. Beneficial interests in the Restricted Global Securities of a series shall be subject to restrictions on transfer comparable to those set forth herein to the extent required by the Securities Act. Transfers of beneficial interests in the Global Securities also shall require compliance with either subparagraph (1) or (2) below, as applicable, as well as one or more of the other following subparagraphs, as applicable:

(1)     Transfer of Beneficial Interests in the Same Global Security.  Beneficial interests in any Restricted Global Security of a series may be transferred to Persons who take delivery thereof in the form of a beneficial interest in the same Restricted Global Security in accordance with the transfer restrictions set forth in the Private Placement Legend. Beneficial interests in any Unrestricted Global Security of a series may be transferred to Persons who take delivery thereof in the form of a beneficial interest in an Unrestricted Global Security of such series. Subject to Section 2.05(e)(4), no written orders or instructions shall be required to be delivered to the Security Registrar to effect the transfers described in this Section 2.05(d)(1).

(2)     All Other Transfers and Exchanges of Beneficial Interests in Global Securities.  In connection with all transfers and exchanges of beneficial interests that are not subject to Section 2.05(d)(1) above, the transferor of such beneficial interest must deliver to the Security Registrar, as applicable, either:

(A)(1) an order from a Participant or an Indirect Participant given to the Depositary in accordance with the relevant Applicable Procedures directing the Depositary to credit or cause to be credited a beneficial interest in another Global Security of such series in an amount equal to the beneficial interest to be transferred or exchanged and (2) instructions given in accordance with the relevant Applicable Procedures containing information regarding the Participant account to be credited with such increase; or

(B)(1) an order from a Participant or an Indirect Participant given to the Depositary in accordance with the relevant Applicable Procedures directing the Depositary to cause to be issued a Definitive Security of such series in an amount equal to the beneficial interest to be transferred or exchanged and (2) instructions given by the Depositary to the Security Registrar containing information regarding the Person in whose name such Definitive Security shall be registered to effect the transfer or exchange referred to in (B)(1) above;

provided that in no event shall Definitive Securities of a series be issued upon the transfer or exchange of beneficial interests in the Regulation S Temporary Global Security of such series prior to (y) the expiration of the relevant Distribution Compliance Period and (z) the receipt by the Security Registrar of any certificates identified by the Company or its counsel to be required pursuant to Rule 903 and Rule 904 under the Securities Act. Upon satisfaction of all the requirements for transfer and exchange of beneficial interests in Global Securities of a series contained in this Indenture, any Board Resolution, or one or more indentures supplemental hereto and the Securities of such series or otherwise

17

applicable under the Securities Act, the Trustee shall adjust the principal amount of the relevant Global Security or Securities of such series pursuant to Section 2.05(h).

(3)     Transfer of Beneficial Interests to Another Restricted Global Security.  A beneficial interest in any Restricted Global Security of a series may be transferred to a Person who takes delivery thereof in the form of a beneficial interest in another Restricted Global Security of the same series if the transfer complies with the requirements of Section 2.05(d)(2) and the Security Registrar receives a completed certificate in the form of Exhibit A.

(4)     Transfer and Exchange of Beneficial Interests in a Restricted Global Security for Beneficial Interests in an Unrestricted Global Security.  A beneficial interest in any Restricted Global Security of any series may be exchanged by any holder thereof for a beneficial interest in an Unrestricted Global Security of such series or transferred to a Person who takes delivery thereof in the form of a beneficial interest in an Unrestricted Global Security of such series if the exchange or transfer complies with the requirements of Section 2.05(d)(2) above and the Security Registrar receives a completed certificate from such holder in the form of Exhibit A or Exhibit B, as applicable, and an opinion of counsel in form, and from legal counsel, reasonably acceptable to the Security Registrar and the Company to the effect that such exchange or transfer is in compliance with the Securities Act and that the restrictions on transfer contained herein and in the Private Placement Legend are no longer required in order to maintain compliance with the Securities Act.

If any such transfer is effected at a time when an Unrestricted Global Security of such series has not yet been issued, the Company shall issue and, upon receipt of an Authentication Order in accordance with Section 2.04, the Trustee shall authenticate one or more Unrestricted Global Securities of such series in an aggregate principal amount equal to the aggregate principal amount of beneficial interests so transferred. Beneficial interests in an Unrestricted Global Security of a series cannot be exchanged for, or transferred to Persons who take delivery thereof in the form of, a beneficial interest in a Restricted Global Security of such series.

(e)     Transfer or Exchange of Beneficial Interests for Definitive Securities.

(1)     Beneficial Interests in Restricted Global Securities to Restricted Definitive Securities.  If any holder of a beneficial interest in a Restricted Global Security of a series proposes to exchange such beneficial interest for a Restricted Definitive Security of such series or to transfer such beneficial interest to a Person who takes delivery thereof in the form of a Restricted Definitive Security of such series, then, upon receipt by the Security Registrar of a completed certificate from such holder in the form of Exhibit A or Exhibit B, as applicable, and certificates and opinions of counsel, if applicable, the trustee shall cause the aggregate principal amount of the applicable Restricted Global Security of such series to be reduced accordingly pursuant to Section 2.05(h), and the Company shall execute,

18

and if applicable Tyco shall endorse, and, upon receipt of an Authentication Order pursuant to Section 2.04, the Trustee shall authenticate and deliver to the Person designated in the instructions a Restricted Definitive Security of such series in the appropriate principal amount. Any Restricted Definitive Security of such series issued in exchange for a beneficial interest in a Restricted Global Security of such series pursuant to this Section 2.05(e) shall be registered in such name or names and in such authorized denomination or denominations as the holder of such beneficial interest shall instruct the Security Registrar through instructions from the Depositary for such series and the Participant or Indirect Participant. The Trustee shall deliver such Restricted Definitive Securities of such series to the Persons in whose names such Securities are so registered. Any Restricted Definitive Security of such series issued in exchange for a beneficial interest in a Restricted Global Security of such series pursuant to this Section 2.05(e)(1) shall bear the Private Placement Legend and shall be subject to all restrictions on transfer contained therein.

(2)     Beneficial Interests in Restricted Global Securities to Unrestricted Definitive Securities. A holder of a beneficial interest in a Restricted Global Security of a series may exchange such beneficial interest for an Unrestricted Definitive Security of such series or may transfer such beneficial interest to a Person who takes delivery thereof in the form of an Unrestricted Definitive Security of such series only if the Security Registrar receives a completed certificate from such holder in the form of Exhibit A or Exhibit B, as applicable and an opinion of counsel in form, and from legal counsel, reasonably acceptable to the Security Registrar and the Company to the effect that such exchange or transfer is in compliance with the Securities Act and that the restrictions on transfer contained herein and in the Private Placement Legend are no longer required in order to maintain compliance with the Securities Act.

(3)     Beneficial Interests in Unrestricted Global Securities to Unrestricted Definitive Securities. If any holder of a beneficial interest in an Unrestricted Global Security of a series proposes to exchange such beneficial interest for an Unrestricted Definitive Security of such series or to transfer such beneficial interest to a Person who takes delivery thereof in the form of an Unrestricted Definitive Security of such series, then, upon satisfaction of the conditions set forth in Section 2.05(d)(2), the Trustee shall cause the aggregate principal amount of the applicable Unrestricted Global Security of such series to be reduced accordingly pursuant to Section 2.05(h), and the Company shall execute, and if applicable Tyco shall endorse, and, upon receipt of an Authentication Order in accordance with Section 2.04, the Trustee shall authenticate and deliver to the Person designated in the instructions an Unrestricted Definitive Security of such series in the appropriate principal amount. Any Unrestricted Definitive Security issued in exchange for a

19

beneficial interest pursuant to this Section 2.05(e)(3) shall be registered in such name or names and in such authorized denomination or denominations as the holder of such beneficial interest shall instruct the Security Registrar through instructions from the Depositary for such series and the Participant or Indirect Participant. The Trustee shall deliver such Unrestricted Definitive Securities to the Persons in whose names such Securities are so registered. Any Unrestricted Definitive Security issued in exchange for a beneficial interest pursuant to this Section 2.05(e)(3) shall not bear the Private Placement Legend.

(4)    Transfer or Exchange of Regulation S Temporary Global Securities. Notwithstanding the other provisions of this Section 2.05, a beneficial interest in the Regulation S Temporary Global Security of a series may not be (A) exchanged for a Definitive Security of such series prior to (y) the expiration of the Distribution Compliance Period with respect to such series (unless such exchange is effected by the Company, does not require an investment decision on the part of the Holder thereof and does not violate the provisions of Regulation S) and (z) the receipt by the Security Registrar of any certificates identified by the Company or its counsel to be required pursuant to Rule 903(b)(3)(ii)(B) under the Securities Act or (B) transferred to a U.S. person (as such term is defined in Regulation S) or for the account or benefit of a U.S. person (other than an initial purchaser of such Regulation S Temporary Global Security) or a Person who takes delivery thereof in the form of a Definitive Security of such series prior to the events set forth in clause (A) above or unless the transfer is pursuant to an exemption from the registration requirements of the Securities Act other than Rule 903 or 904.

(f)    Transfer and Exchange of Definitive Securities for Beneficial Interests.

(1)    Restricted Definitive Securities to Beneficial Interests in Restricted Global Securities. If any Holder of a Restricted Definitive Security of a series proposes to exchange such Security for a beneficial interest in a Restricted Global Security of such series or to transfer such Restricted Definitive Securities of such series to a Person who takes delivery thereof in the form of a beneficial interest in a Restricted Global Security of such series, then, upon receipt by the Trustee of the following documentation:

(A) if the Holder of such Restricted Definitive Security of such series proposes to exchange such Security for a beneficial interest in a Restricted Global Security of such series, a completed certificate in the form of Exhibit B; or

(B) if such Restricted Definitive Note is being transferred to a QIB in accordance with Rule 144A under the Securities Act or to a non-U.S. person in an offshore transaction in accordance with Rule 903 or 904 under the Securities Act, a completed certificate to that effect set forth in Exhibit A,

the Trustee shall cancel the Restricted Definitive Security of such series, increase or cause to be increased the aggregate principal amount of, in the case of clause (A) above, the appropriate Restricted Global Security of such series and, in the case of clause (B) above, the 144A Global Security of such series or the Regulation S Global Security of such series as applicable.

(2)    Restricted Definitive Securities to Beneficial Interests in Unrestricted Global Securities. A Holder of a Restricted Definitive Security of a series may exchange such Security for a beneficial interest in an Unrestricted Global Security of such series or

20

transfer such Restricted Definitive Security of such series to a Person who takes delivery thereof in the form of a beneficial interest in an Unrestricted Global Security of such series only if the Security Registrar receives a completed certificate from such Holder in the form of Exhibit A or Exhibit B. as applicable, and an opinion of counsel in form, and from legal counsel, reasonably acceptable to the Security Registrar and the Company to the effect that such exchange or transfer is in compliance with the Securities Act and that the restrictions on transfer contained herein and in the Private Placement Legend are no longer required in order to maintain compliance with the Securities Act. Upon satisfaction of the conditions of any of the subparagraphs in this Section 2.05(f)(2), the Trustee shall cancel the Restricted Definitive Securities of such series so transferred or exchanged and increase or cause to be increased the aggregate principal amount of the Unrestricted Global Security of such series.

(3)     Unrestricted Definitive Securities to Beneficial Interests in Unrestricted Global Securities. A Holder of an Unrestricted Definitive Security of a series may exchange such Security for a beneficial interest in an Unrestricted Global Security of such series or transfer such Definitive Securities of such series to a Person who takes delivery thereof in the form of a beneficial interest in an Unrestricted Global Security of such series at any time. Upon receipt of a request for such an exchange or transfer, the Trustee shall cancel the applicable Unrestricted Definitive Security and increase or cause or be increased the aggregate principal amount of one of the Unrestricted Global Securities of such series. If any such exchange or transfer from a Definitive Security of a series to a beneficial interest is effected pursuant to subparagraphs (2) or (3) of this Section 2.05(f) at a time when an Unrestricted Global Security of such series has not yet been issued, the Company shall issue and, upon receipt of an Authentication Order in accordance with Section 2.04, the Trustee shall authenticate one or more Unrestricted Global Securities of such series in an aggregate principal amount equal to the principal amount of Definitive Securities of such series so transferred.

(g)     Transfer and Exchange of Definitive Securities for Definitive Securities. Upon request by a Holder of Definitive Securities of a series and such Holder's compliance with the provisions of this Section 2.05(g), the Trustee shall register the transfer or exchange of Definitive Securities of such series pursuant to the provisions of Section 2.05(s). In addition to the requirements set forth in Section 2.05(u), the requesting Holder shall provide any additional certifications, documents, and information, as applicable, required pursuant to the following provisions of this Section 2.05(g).

(1)     Restricted Definitive Securities to Restricted Definitive Securities. Any Restricted Definitive Security of a series may be transferred to and registered in the name of Persons who take delivery thereof in the form of a Restricted Definitive Security of such series if the Trustee receives a completed certificate in the form of Exhibit A, including the certifications, certificates and opinions of counsel required by item (3) thereof, if applicable.

(2)     Restricted Definitive Securities to Unrestricted Definitive Securities. Any Restricted Definitive Security of a series may be exchanged by the Holder thereof for an Unrestricted Definitive Security of such series or transferred to a Person or Persons who

21

take delivery thereof in the form of an Unrestricted Definitive Security of such series if the Security Registrar receives a completed certificate from such Holder in the form of Exhibit A or Exhibit B, as applicable and an opinion of counsel in form, and from legal counsel, reasonably acceptable to the Trustee and the Company to the effect that such exchange or transfer is in compliance with the Securities Act and that the restrictions on transfer contained herein and in the Private Placement Legend are no longer required in order to maintain compliance with the Securities Act.

(3)    Unrestricted Definitive Securities to Unrestricted Definitive Securities.  A Holder of Unrestricted Definitive Securities of a series may transfer such Securities to a Person who takes delivery thereof in the form of an Unrestricted Definitive Security of such series in accordance with subsection 2.05(a). Upon receipt of a request to register such a transfer, the Security Registrar shall register the Unrestricted Definitive Securities of such series pursuant to the instructions from the Holder thereof.

(b)    Cancellation and/or Adjustment of Global Securities.  At such time as all beneficial interests in a particular Global Security of a series have been exchanged for Definitive Securities of such series or a particular Global Security of a series has been redeemed, repurchased or cancelled in whole and not in part, each such Global Security of such series shall be returned to or retained and cancelled by the Trustee in accordance with Section 2.08. At any time prior to such cancellation, if any beneficial interest in a Global Security of such series is exchanged for or transferred to a Person who will take delivery thereof in the form of a beneficial interest in another Global Security of such series or for Definitive Securities of such series, the principal amount of Securities of such series represented by such Global Security shall be reduced accordingly and an endorsement may be made on such Global Security by the Trustee or by the Depositary at the direction of the Trustee to reflect such reduction; and if the beneficial interest is being exchanged for or transferred to a Person who will take delivery thereof in the form of a beneficial interest in another Global Security of such series, such other Global Security shall be increased accordingly and an endorsement may be made on such Global Security by the Trustee or by the Depositary at the direction of the Trustee to reflect such increase.

(i)    No Exchange or Transfer.  The Company shall not be required (i) to issue, exchange or register the transfer of any Securities during a period beginning at the opening of business 15 days before the day of the mailing of a notice of redemption of less than all the Outstanding Securities of the same series and ending at the close of business on the day of such mailing, (ii) to register the transfer of or exchange any Securities of any series or portions thereof called for redemption, nor (iii) to register the transfer of or exchange a Security of any series between the applicable record date pursuant to Section 2.01(a)(5) and the next succeeding Interest Payment Date.

**Section 2.06**          **Temporary Securities.**

Pending the preparation of definitive Securities of any series, the Company may execute, and if applicable Tyco may endorse, and the Trustee shall authenticate and deliver, temporary Securities (printed, lithographed or typewritten) of any authorized denomination. Such temporary Securities shall be substantially in the form of the definitive Securities in lieu of which they are

22

issued, but with such omissions, insertions and variations as may be appropriate for temporary Securities, all as may be determined by the Company. Every temporary Security of any series shall be executed by the Company, and if applicable endorsed by Tyco, and be authenticated by the Trustee upon the same conditions and in substantially the same manner, and with like effect, as the definitive Securities of such series. Without unnecessary delay the Company will execute, and if applicable Tyco will endorse, and will furnish definitive Securities of such series and thereupon any or all temporary Securities of such series may be surrendered in exchange therefor without charge to the holders, at the office or agency of the Company maintained pursuant to Section 4.02 for the purpose of exchanges of Securities of such series, and the Trustee shall authenticate and such office or agency shall deliver in exchange for such temporary Securities an equal aggregate principal amount of definitive Securities of such series, unless the Company advises the Trustee to the effect that definitive Securities need not be executed and furnished until further notice from the Company. Until so exchanged, temporary Securities of any series shall in all respects be entitled to the same benefits under this Indenture as definitive Securities of such series authenticated and delivered hereunder.

### Section 2.07          Mutilated, Destroyed, Lost or Stolen Securities.

In case any temporary or definitive Security shall become mutilated or be destroyed, lost or stolen, the Company (subject to the next succeeding sentence) shall execute, and if applicable Tyco shall endorse, and upon the Company's request the Trustee (subject to the next succeeding sentence) shall authenticate and deliver, a new Security of the same series, bearing a number not contemporaneously outstanding in exchange and substitution for the mutilated Security, or in lieu of and in substitution for the Security so destroyed, lost or stolen. In every case the applicant for a substituted Security shall furnish to the Company and the Trustee such security or indemnity as may be required by them to save each of them harmless, and, in every case of destruction, loss or theft, the applicant shall also furnish to the Company and the Trustee evidence to their satisfaction of the destruction, loss or theft of the applicant's Security and of the ownership thereof. The Trustee may authenticate any such substituted Security and deliver the same upon the written request or authorization of any Officer. Upon the issuance of any substituted Security, the Company may require the payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in relation thereto and any other expenses (including the fees and expenses of the Trustee) connected therewith. In case any Security that has matured or is about to mature shall become mutilated or be destroyed, lost or stolen, the Company, instead of issuing a substitute Security, may pay or authorize the payment of the same (without surrender thereof except in the case of a mutilated Security) if the applicant for such payment shall furnish to the Company and the Trustee such security or indemnity as they may require to save them harmless, and, in case of destruction, loss or theft, evidence to the satisfaction of the Company and the Trustee of the destruction, loss or theft of such Security and of the ownership thereof.

Every replacement Security issued pursuant to the provisions of this Section 2.07 shall constitute an additional contractual obligation of the Company whether or not the mutilated, destroyed, lost or stolen Security shall be found at any time, or be enforceable by anyone, and shall be entitled to all the benefits of this Indenture equally and proportionately with any and all other Securities of the same series duly issued hereunder. All Securities shall be held and owned upon the express condition that the foregoing provisions are exclusive with respect to the

23

replacement or payment of mutilated, destroyed, lost or stolen Securities, and shall preclude (to the extent lawful) any and all other rights or remedies, notwithstanding any law or statute existing or hereafter enacted to the contrary with respect to the replacement or payment of negotiable instruments or other securities without their surrender.

### Section 2.08         Cancellation.

All Securities surrendered for the purpose of payment, redemption, exchange or registration of transfer, if surrendered to the Company or any paying agent, shall be delivered to the Trustee for cancellation, or, if surrendered to the Trustee, shall be cancelled by it, and no Securities shall be issued in lieu thereof except as expressly required or permitted by any of the provisions of this Indenture. On written request of the Company at the time of such surrender, the Trustee shall deliver to the Company cancelled Securities held by the Trustee. In the absence of such request the Trustee may dispose of cancelled Securities in accordance with its standard procedures. If the Company shall otherwise acquire any of the Securities, however, such acquisition shall not operate as a redemption or satisfaction of the indebtedness represented by such Securities unless and until the same are delivered to the Trustee for cancellation.

### Section 2.09         Benefits of Indenture.

Nothing in this Indenture or in the Securities, express or implied, shall give or be construed to give to any Person, other than the parties hereto and the holders of the Securities, any legal or equitable right, remedy or claim under or in respect of this Indenture, or under any covenant, condition or provision herein contained; all such covenants, conditions and provisions being for the sole benefit of the parties hereto and of the holders of the Securities.

### Section 2.10         Authenticating Agent.

So long as any of the Securities of any series remain Outstanding, there may be an Authenticating Agent for any or all such series of Securities which the Trustee shall have the right to appoint. Said Authenticating Agent shall be authorized to act on behalf of the Trustee to authenticate Securities of such series, including Securities issued upon exchange, registration of transfer or partial redemption thereof, and Securities so authenticated shall be entitled to the benefits of this Indenture and shall be valid and obligatory for all purposes as if authenticated by the Trustee hereunder. All references in this Indenture to the authentication of Securities by the Trustee shall be deemed to include authentication by an Authenticating Agent for such series. Each Authenticating Agent shall be acceptable to the Company and shall be a corporation that has a combined capital and surplus, as most recently reported or determined by it, sufficient under the laws of any jurisdiction under which it is organized or in which it is doing business to conduct a trust business, and that is otherwise authorized under such laws to conduct such business and is subject to supervision or examination by Federal or State authorities. If at any time any Authenticating Agent shall cease to be eligible in accordance with these provisions, it shall resign immediately. Any Authenticating Agent may resign at any time by giving written notice of resignation to the Trustee and to the Company. The Trustee at any time may, and upon request by the Company shall, terminate the agency of any Authenticating Agent by giving written notice of termination to such Authenticating Agent and to the Company. Upon resignation, termination or cessation of eligibility of any Authenticating Agent, the Trustee may

24

appoint an eligible successor Authenticating Agent acceptable to the Company. Any successor Authenticating Agent, upon acceptance of its appointment hereunder, shall become vested with all the rights, powers and duties of its predecessor hereunder as if originally named as an Authenticating Agent pursuant hereto.

**Section 2.11          Global Securities.**

(a)          General. If the Company shall establish pursuant to Section 2.01 that the Securities of a particular series are to be issued as a Global Security, then the Company shall execute, and if applicable Tyco shall endorse, and the Trustee in accordance with Section 2.04 shall authenticate, a Global Security that (i) shall represent, and shall be denominated in an amount equal to the aggregate principal amount of, all of the Outstanding Securities of such series, (ii) shall be registered in the name of the Depositary or its nominee and (iii) shall be delivered to the Trustee as custodian for the Depositary or otherwise delivered pursuant to the Depositary's instructions. Global Securities may be issued in either temporary or permanent form.

(b)          Euroclear and Clearstream Procedures Applicable. The provisions of the "Operating Procedures of the Euroclear System" and the "Terms and Conditions Governing Use of Euroclear" and the "General Terms and Conditions of Clearstream Banking" and "Customer Handbook" of Clearstream, respectively, in effect at the relevant time shall be applicable to transfers of beneficial interests in the Regulation S Global Securities of such series that are held by Participants through Euroclear or Clearstream.

**Section 2.12          CUSIP Numbers.**

The Company in issuing the Securities of a series may use "CUSIP" numbers (if then generally in use), and, if so, the Trustee shall use "CUSIP" numbers in notices of redemption as a convenience to Securityholders; provided that any such notice may state that no representation is made as to the correctness of such numbers either as printed on the Securities or as contained in any notice of a redemption and that reliance may be placed only on the other identification numbers printed on the Securities, and any such redemption shall not be affected by any defect in or omission of such numbers. The Company will promptly notify the Trustee of any change in the "CUSIP" numbers.

**Section 2.13          Securities Denominated in Foreign Currencies.**

Except as otherwise specified pursuant to Section 2.01 for Securities of any series, payment of the principal of, premium, if any, and interest on, Securities of such series denominated in any Foreign Currency will be made in such Foreign Currency.

In the event any Foreign Currency or Currencies in which any payment with respect to any series of Securities may be made ceases to be a freely convertible Currency on United States Currency markets, for any date thereafter on which payment of principal of, premium, if any, or interest on the Securities of a series is due, the Company shall select the Currency of payment for use on such date, all as provided in the Securities of such series, in a Board Resolution or in one or more indentures supplemental hereto. In such event, the Company shall notify the Trustee of the Currency which it has selected to constitute the funds necessary to meet the Company's

25

obligations on such payment date and of the amount of such Currency to be paid. Such amount shall be determined as provided in the Securities of such series, in a Board Resolution or in one or more indentures supplemental hereto. The payment with respect to such payment date shall be deposited with the Trustee by the Company solely in the Currency so selected.

**Section 2.14**          **Wire Transfers.**

Notwithstanding any other provision to the contrary in this Indenture, the Company may make any payment required to be deposited with the Trustee on account of principal of, premium, if any, or interest on, the Securities by wire transfer in immediately available funds to an account designated by the Trustee on or before the date such payment is to be made to the Holders of the Securities in accordance with the terms hereof.

**Section 2.15**          **Designated Currency.**

The Company may provide pursuant to Section 2.01 for Securities of any series that:

(a) the obligation, if any, of the Company to pay the principal of, premium, if any, and interest on the Securities of any series in a Foreign Currency or Dollars (the "Designated Currency") as may be specified pursuant to Section 2.01(a)(12) is of the essence and agree that, to the fullest extent possible under applicable law, judgments in respect of Securities of such series shall be given in the Designated Currency;

(b) the obligation of the Company to make payments in the Designated Currency of the principal of, premium, if any, and interest on such Securities shall be discharged, notwithstanding any payment in any other Currency (whether pursuant to a judgment or otherwise), only to the extent of the amount in the Designated Currency that the Securityholder receiving such payment, in accordance with normal banking procedures, may purchase with the amount paid in such other Currency after any premium and cost of exchange on the business day in the country of issue of the Designated Currency or in the international banking community immediately following the day on which such Securityholder receives such payment;

(c) if the amount in the Designated Currency that may be so purchased for any reason falls short of the amount originally due, the Company shall pay such additional amounts as may be necessary to compensate for such shortfall; and

(d) any obligation of the Company not discharged by such payment shall be due as a separate and independent obligation and, until discharged as provided herein, shall continue in full force and effect.

**Section 2.16**          **Form of Guarantee.**

The form of Guarantee, if applicable, shall be set forth on the applicable series of Securities substantially as follows:

## GUARANTEE

For value received, Tyco hereby absolutely, unconditionally and irrevocably guarantees to the holder of this Security the payment of principal of, premium, if any, and interest on, the Security upon which this Guarantee is endorsed in the amounts and at the time when due and payable whether by declaration thereof, or otherwise, and interest on the overdue principal and interest, if any, of such Security, if lawful, to the holder of such Security and the Trustee on behalf of the Holders, all in accordance with and subject to the terms and limitations of such Security and Article XV of the Indenture. This Guarantee will not become effective until the Trustee or Authenticating Agent duly executes the certificate of authentication on this Security. This Guarantee shall be governed by and construed in accordance with the laws of the State of New York, without regard to conflict of law principles thereof.

Dated:
TYCO INTERNATIONAL LTD.

By: _____

    Name: _____
    Title:

## ARTICLE III.

### REDEMPTION OF SECURITIES AND SINKING FUND PROVISIONS

**Section 3.01**    **Redemption.**

The Company may redeem the Securities of any series issued hereunder on and after the dates and in accordance with the terms established for such series pursuant to Section 2.01 or 14.01.

**Section 3.02**    **Notice of Redemption.**

(a)    If the Company desires to exercise such right to redeem all or, as the case may be, a portion of the Securities of any series, the Company shall, or shall cause the Trustee to, give notice of such redemption to holders of the Securities of such series to be redeemed by mailing, first class postage prepaid, a notice of such redemption not less than 30 days and not more than 60 days before the date fixed for redemption of that series to such holders at their last addresses as they shall appear upon the Security Register (unless a shorter period is specified in the Securities to be redeemed). Any notice that is mailed in the manner herein provided shall be conclusively presumed to have been duly given, whether or not the registered holder receives the notice. In any case, failure duly to give such notice to the holder of any Security of any series designated for redemption in whole or in part, or any defect in the notice, shall not affect the validity of the proceedings for the redemption of any Securities of such series or any other series. In the case of any redemption of Securities prior to the expiration of any restriction on such redemption provided in the terms of such Securities or elsewhere in this Indenture, the

27

Company shall furnish the Trustee with an Officers' Certificate evidencing compliance with any such restriction.

Each such notice of redemption shall specify the date fixed for redemption and the redemption price at which Securities of that series are to be redeemed, and shall state that: (i) payment of the redemption price of such Securities to be redeemed will be made at the office or agency of the Company maintained for such purpose, or, if none, at the Corporate Trust Office of the Trustee, upon presentation and surrender of such Securities; (ii) interest accrued to the date fixed for redemption will be paid as specified in said notice; (iii) from and after said date interest will cease to accrue; and (iv) the redemption is for a sinking fund, if such is the case. If less than all the Securities of a series are to be redeemed, the notice to the holders of Securities of that series to be redeemed in whole or in part shall specify the particular Securities to be so redeemed. In case any Security is to be redeemed in part only, the notice that relates to such Security shall state the portion of the principal amount thereof to be redeemed, and shall state that on and after the redemption date, upon surrender of such Security, a new Security or Securities of such series in principal amount equal to the unredeemed portion thereof will be issued.

(b)    If all or less than all the Securities of a series are to be redeemed, the Company shall give the Trustee at least 45 days' notice (unless a shorter period shall be satisfactory to the Trustee) in advance of the date fixed for redemption as to the aggregate principal amount of Securities of the series to be redeemed. If less than all the Securities are to be redeemed, the Trustee thereupon shall select from Securities of such series Outstanding not previously called for redemption, in accordance with a method that it shall deem appropriate and fair (in such manner as complies with applicable legal and stock exchange requirements, if any) and that may provide for the selection of a portion or portions (equal to $1,000 or any integral multiple thereof) of the principal amount of such Securities of such series of a denomination larger than $1,000, the Securities of such series to be redeemed. The Trustee promptly shall notify the Company in writing of the numbers of the Securities of such series to be redeemed, in whole or in part.

The Company, if and whenever it shall so elect, by delivery of instructions signed on its behalf by any of its Officers, may instruct the Trustee or any paying agent to call all or any part of the Securities of a particular series for redemption and to give notice of redemption in the manner set forth in this Section 3.02, such notice to be in the name of the Company or its own name, as the Trustee or such paying agent may deem advisable. In any case in which notice of redemption is to be given by the Trustee or any such paying agent, the Company shall deliver or cause to be delivered to, or permit to remain with, the Trustee or such paying agent, as the case may be, such Security Register, transfer books or other records, or suitable copies or extracts therefrom, sufficient to enable the Trustee or such paying agent to give any notice by mail that may be required under the provisions of this Section 3.02.

Section 3.03          Payment Upon Redemption.

(a)    If the giving of notice of redemption shall have been completed as above provided, the Securities or portions of Securities of the series to be redeemed specified in such notice shall become due and payable on the date and at the place stated in such notice at the

28

applicable redemption price, together with interest accrued to the date fixed for redemption, in each case as established pursuant to Section 2.01 or 14.01. Interest on such Securities or portions of Securities shall cease to accrue on and after the date fixed for redemption, unless the Company shall default in the payment of such redemption price and accrued interest with respect to any such Security or portion thereof. On presentation and surrender of such Securities on or after the date fixed for redemption at the place of payment specified in the notice, said Securities shall be paid and redeemed at the applicable redemption price for such series, together with interest accrued thereon to the date fixed for redemption (but if the date fixed for redemption is an Interest Payment Date, the interest installment payable on such date shall be payable to the registered holder at the close of business on the applicable record date pursuant to Section 2.01).

(b)     Upon presentation of any Security of such series that is to be redeemed in part only, the Company shall execute, and if applicable Tyco shall endorse, and the Trustee shall authenticate, and the office or agency where the Security is presented shall deliver to the holder thereof, at the expense of the Company, a new Security of the same series and tenor of authorized denominations in principal amount equal to the unredeemed portion of the Security so presented; except that if a Global Security is so surrendered, the Company shall execute, and if applicable Tyco shall endorse, and, upon receipt of an Officers' Certificate requesting authentication and delivery, the Trustee shall authenticate and deliver to the Depositary for such Global Security, without service charge, a new Global Security of like tenor in a denomination equal to and in exchange for the unredeemed portion of the principal of the Global Security so surrendered.

### Section 3.04                 Sinking Fund.

The provisions of Sections 3.04, 3.05 and 3.06 shall be applicable to any sinking fund for the retirement of Securities of a series, except as otherwise specified as contemplated by Section 2.01 for Securities of such series.

The minimum amount of any sinking fund payment provided for by the terms of Securities of any series is referred to as a "mandatory sinking fund payment," and any payment in excess of such minimum amount provided for by the terms of Securities of any series is referred to as an "optional sinking fund payment." If provided for by the terms of Securities of any series, the cash amount of any sinking fund payment may be subject to reduction as provided in Section 3.05. Each sinking fund payment shall be applied to the redemption of Securities of any series as provided by the terms of Securities of such series.

### Section 3.05                 Satisfaction of Sinking Fund Payments with Securities.

The Company (i) may deliver Outstanding Securities of a series (other than any Securities previously called for redemption) and (ii) may apply as a credit Securities of a series that have been redeemed either at the election of the Company pursuant to the terms of such Securities or through the application of permitted optional sinking fund payments pursuant to the terms of such Securities, in each case in satisfaction of all or any part of any sinking fund payment with respect to the Securities of such series required to be made pursuant to the terms of such Securities, provided that such Securities have not been previously so credited. Such Securities shall be received and credited for such purpose by the Trustee at the redemption price

29

specified in such Securities for redemption through operation of the sinking fund and the amount of such sinking fund payment shall be reduced accordingly.

**Section 3.06**                    **Redemption of Securities for Sinking Fund.**

Not less than 30 days prior to each sinking fund payment date for any series of Securities, the Company will deliver to the Trustee an Officers' Certificate specifying the amount of the next ensuing sinking fund payment for that series pursuant to the terms of the series, the portion thereof, if any, that is to be satisfied by payment of cash in the Currency in which the Securities of such series are denominated (except as provided pursuant to Section 2.01), the portion thereof, if any, that is to be satisfied by delivering and crediting Securities of that series pursuant to Section 3.05 and the basis for such credit. Together with such Officers' Certificate, the Company will deliver to the Trustee any Securities to be so delivered. Not less than 30 days before each such sinking fund payment date the Trustee shall select the Securities to be redeemed upon such sinking fund payment date in the manner specified in Section 3.02 and cause notice of the redemption thereof to be given in the name of and at the expense of the Company in the manner provided in Section 3.02. Such notice having been duly given, the redemption of such Securities shall be made upon the terms and in the manner stated in Section 3.03.

## ARTICLE IV.

## CERTAIN COVENANTS

The following covenants shall apply to the Securities, except with respect to any series of Securities for which the supplemental indenture or resolution of the Board of Directors under which such series of Securities is issued or in the form of Security for such series expressly provides that any such covenant shall not apply to such series of Securities:

**Section 4.01**                    **Payment of Principal, Premium and Interest.**

The Company will duly and punctually pay or cause to be paid the principal of, premium, if any, and interest on the Securities of a series at the time and place and in the manner provided herein and established with respect to such Securities.

**Section 4.02**                    **Maintenance of Office or Agency.**

So long as any series of the Securities remain Outstanding, the Company will maintain for such series an office or agency where Securities of such series may be presented or surrendered for payment, where Securities of such series may be surrendered for registration of transfer or exchange and where notices and demands to or upon the Company in respect of the Securities of such series and this Indenture may be given or served. Such designation will continue with respect to each office or agency until the Company, by written notice signed by any Officer and delivered to the trustee, shall designate some other office or agency for such purposes or any of them. If at any time the Company shall fail to maintain any such required office or agency or shall fail to furnish the Trustee with the address thereof, such presentations, surrenders, notices and demands may be made or served at the Corporate Trust Office of the Trustee, and the Company hereby appoints the Trustee as its agent to receive all presentations, surrenders, notices and demands. Unless otherwise specified in accordance with Section 2.01

30

with respect to a series of Securities, the Company initially designates the Corporate Trust Office of The Bank of New York, 101 Barclay Street, 21 W, New York, New York 10286, acting as the Company's agent, as the office to be maintained by it for each such purpose.

**Section 4.03**      **Paying Agents.**

    (a)    The Company may appoint one or more paying agents, other than the Trustee, for all or any series of the Securities. If the Company fails to appoint or maintain another entity as paying agent, the Trustee shall act as such. Tyco, the Company or any of their Subsidiaries may act as paying agent.

    (b)    The Company shall require each paying agent other than the Trustee to agree in writing that the paying agent will hold in trust for the benefit of Securityholders or the Trustee all funds held by the paying agent for the payment of principal, premium, if any, or interest on the Securities, and will promptly notify the Trustee in writing of any default by the Company in making any such payment. While any such default continues, the Trustee may require a paying agent to pay all funds held by it to the Trustee. The Company at any time may require a paying agent to pay all funds held by it to the Trustee. Upon payment over to the Trustee, the paying agent (if other than Tyco, the Company or any of their Subsidiaries) shall have no further liability for the funds. If Tyco, the Company or any of their Subsidiaries acts as paying agent, it shall segregate and hold in a separate trust fund for the benefit of the Securityholders all funds held by it as paying agent.

    (c)    Notwithstanding anything in this Section to the contrary, (i) the agreement to hold funds in trust as provided in this Section 4.03 is subject to the provisions of Section 11.06, and (ii) the Company at any time, for the purpose of obtaining the satisfaction and discharge or defeasance of this Indenture or for any other purpose, may pay, or direct any paying agent to pay, to the Trustee all funds held in trust by the Company or such paying agent, such funds to be held by the Trustee upon the same terms and conditions as those upon which such funds were held by the Company or such paying agent. Upon such payment by any paying agent to the Trustee, such paying agent shall be released from all further liability with respect to such funds.

**Section 4.04**      **Statement by Officers as to Default.**

    So long as any of the Securities remain outstanding, the Company and Tyco will furnish to the Trustee on or before March 31 in each year a brief certificate (which need not comply with Section 13.06) executed by the principal executive, financial or accounting officer of each of the Company and Tyco on their respective behalf as to his or her knowledge of the Company's or Tyco's, as the case may be, compliance with all covenants and agreements under the Indenture required to be complied with by the Company and Tyco, respectively (such compliance to be determined without regard to any period of grace or requirement of notice provided under the Indenture). Such certificate need not include a reference to any non-compliance that has been fully cured prior to the date as of which such certificate speaks.

    The Company shall provide written notice to the Trustee within 30 days of the occurrence of any Event of Default under Section 6.01.

**Section 4.05**          <u>Appointment to Fill Vacancy in Office of Trustee.</u>

The Company, whenever necessary to avoid or to fill a vacancy in the office of Trustee, will appoint, in the manner provided in Section 7.10, a Trustee, so that there shall be at all times a Trustee hereunder.

### ARTICLE V.

### SECURITYHOLDERS' LISTS AND REPORTS BY THE COMPANY AND THE TRUSTEE

**Section 5.01**          <u>Company to Furnish Trustee Names and Addresses of Securityholders.</u>

The Company will furnish or cause to be furnished to the Trustee (a) semi-annually at least seven Business Days before each Interest Payment Date for a series of Securities (and in all events at intervals of not more than six months) a list, in such form as the Trustee may reasonably require, of the names and addresses of the holders of each series of Securities as of such date, provided that the Company shall not be obligated to furnish or cause to furnish such list at any time that the list shall not differ in any respect from the most recent list furnished to the Trustee by the Company and (b) at such other times as the Trustee may require in writing within 30 days after the receipt by the Company of any such request, a list of similar form and content as of a date not more than 15 days prior to the time such list is furnished; provided, however, that, in either case, no such list need be furnished for any series for which the Trustee shall be the Security Registrar.

**Section 5.02**          <u>Preservation of Information; Communications with Securityholders.</u>

(a)          The Trustee shall preserve, in as current a form as is reasonably practicable, all information as to the names and addresses of the holders of Securities contained in the most recent list furnished to it as provided in Section 5.01 and as to the names and addresses of holders of Securities received by the Trustee in its capacity as Security Registrar (if acting in such capacity).

(b)          Securityholders may communicate as provided in Section 312(b) of the Trust Indenture Act with other Securityholders with respect to their rights under this Indenture or under the Securities.

**Section 5.03**          <u>Reports by the Company.</u>

(a)          So long as any Securities are outstanding, the Company shall file with the Trustee, within 15 days after Tyco is required to file with the Commission, copies of the annual reports and of the information, documents and other reports (or copies of such portions of any of the foregoing as the Commission may from time to time by rules and regulations prescribe) that Tyco may be required to file with the Commission pursuant to Section 13 or Section 15(d) of the Exchange Act. The Company shall be deemed to have complied with the previous sentence to the extent that such information, documents and reports are filed with the Commission via EDGAR (or any successor electronic delivery procedure).

(b)    Delivery of such reports, information and documents to the Trustee is for informational purposes only and the Trustee's receipt of such shall not constitute constructive notice of any information contained therein or determinable from information contained therein, including the Company's compliance with any of its covenants hereunder (as to which the Trustee is entitled to rely exclusively on Officers' Certificates).

**Section 5.04**    **Reports by the Trustee.**

(a)    Any Trustee's report required under Section 313(a) of the Trust Indenture Act shall be transmitted on or before July 15 in each year following the date hereof, so long as any Securities are outstanding hereunder, and shall be dated as of a date convenient to the Trustee no more than 60 nor less than 45 days prior thereto.

(b)    A copy of each such report shall, at the time of such transmission to Securityholders, be filed by the Trustee with the Company, with any stock exchange upon which any Securities are listed and with the Commission. The Company agrees to notify the Trustee when any Securities become listed on any stock exchange or delisted therefrom.

## ARTICLE VI.

## REMEDIES OF THE TRUSTEE AND SECURITYHOLDERS ON
## EVENT OF DEFAULT

**Section 6.01**    **Events of Default.**

(a)    Whenever used herein with respect to Securities of a particular series, "**Event of Default**" means any one or more of the following events that has occurred and is continuing, except with respect to any series of Securities for which the supplemental indenture or resolution of the Board of Directors under which such series of Securities is issued or in the form of Security for such series expressly provides that any such Event of Default shall not apply to such series of Securities:

(1)    default in the payment of any installment of interest upon any of the Securities of such series as and when the same shall become due and payable, and continuance of such default for a period of 30 days; or

(2)    default in the payment of all or any part of the principal or premium, if any, on any of the Securities of such series as and when the same shall become due and payable either at maturity, upon redemption, by declaration or otherwise; or

(3)    default in the payment of any sinking fund installment as and when the same shall become due and payable by the terms of the Securities of such series; or

(4)    default in the performance, or breach, of any covenant or agreement of Tyco or the Company in respect of the Securities of such series and, if applicable, the related Guarantee (other than a covenant or agreement in respect of the Securities of such series and, if applicable, the related Guarantee a default in whose performance or whose breach is elsewhere in this Section specifically dealt with), and continuance of such

33

default or breach for a period of 90 days after the date on which there has been given, by registered or certified mail, to Tyco and the Company by the Trustee or to Tyco, the Company and the Trustee by the Holders of at least 25% in principal amount of the Outstanding Securities of all series affected thereby, a written notice specifying such default or breach and requiring it to be remedied and stating that such notice is a "Notice of Default" hereunder; or

(5)     if Tyco shall have issued a Guarantee with respect to such Securities, such Guarantee shall for any reason cease to be, or shall for any reason be asserted in writing by Tyco or the Company not to be, in full force and effect and enforceable in accordance with its terms except to the extent contemplated by the Indenture and any such Guarantee;

(6)     a court having jurisdiction in the premises shall enter a decree or order for relief in respect of the Company or, if Tyco shall have issued a Guarantee with respect to such Securities, Tyco in an involuntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect, or appointing a receiver, liquidator, assignee, custodian, trustee or sequestrator (or similar official) of the Company or, if applicable, Tyco or for any substantial part of its property or ordering the winding up or liquidation of its affairs, and such decree or order shall remain unstayed and in effect for a period of 90 consecutive days; or

(7)     the Company or, if Tyco shall have issued a Guarantee with respect to such Securities, Tyco shall commence a voluntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect, or consent to the entry of an order for relief in an involuntary case under any such law, or consent to the appointment of or taking possession by a receiver, liquidator, assignee, custodian, trustee or sequestrator (or similar official) of the Company or, if applicable, Tyco or for any substantial part of its property, or make any general assignment for the benefit of creditors; or

(8)     any other Event of Default provided in the supplemental indenture or resolution of the Board of Directors under which such series of Securities is issued or in the form of Security for such series.

(b)     In each and every such case, unless the principal of all the Securities of that series shall have already become due and payable, either the Trustee or the holders of not less than 25% in aggregate principal amount of the Securities of that series then Outstanding hereunder, by notice in writing to Tyco and the Company (and to the Trustee if given by such Securityholders), may declare the unpaid principal of all the Securities of that series to be due and payable immediately, and upon any such declaration the same shall become and shall be immediately due and payable, notwithstanding anything contained in this Indenture or in the Securities of that series or established with respect to that series pursuant to Section 2.01 to the contrary.

(c)     At any time after the principal of the Securities of that series shall have been so declared due and payable, and before any judgment or decree for the payment of the amount due shall have been obtained or entered as hereinafter provided, the holders of a majority in

34

aggregate principal amount of the Securities of that series then Outstanding hereunder, by written notice to Tyco and the Company and the Trustee, may rescind and annul such declaration and its consequences if: (i) the Company has or has caused to be paid or deposited with the Trustee an amount sufficient to pay all matured installments of interest upon all the Securities of that series and the principal of and premium, if any, on any and all Securities of that series that shall have become due otherwise than by acceleration (with interest upon such principal and premium, if any, and, to the extent that such payment is enforceable under applicable law, upon overdue installments of interest, at the rate expressed in the Securities of that series to the date of such payment or deposit), and (ii) any and all Events of Default under the Indenture with respect to such series, other than the nonpayment of principal on Securities of that series that shall not have become due by their terms, shall have been remedied or waived as provided in Section 6.06.

No such rescission and annulment shall extend to or shall affect any subsequent default or impair any right consequent thereon.

(d)    In case the Trustee shall have proceeded to enforce any right with respect to Securities of that series under this Indenture and such proceedings shall have been discontinued or abandoned because of such rescission or annulment or for any other reason or shall have been determined adversely to the Trustee, then and in every such case the Company and the Trustee shall be restored respectively to their former positions and rights hereunder, and all rights, remedies and powers of the Company and the Trustee shall continue as though no such proceedings had been taken.

(e)    The Trustee shall give to the Securityholders of any series, as the names and addresses of such Holders appear on the Security Register, notice by mail of all defaults known to the Trustee that have occurred with respect to such series, such notice to be transmitted within 90 days after the occurrence thereof, unless such defaults shall have been cured before the giving of such notice (the term "default" or "defaults" for the purposes of this Section 6.01(e) being hereby defined to mean any event or condition which is, or with notice or lapse of time or both would become, an Event of Default); provided that, except in the case of default in the payment of the principal of, premium, if any, or interest on any of the Securities of such series, or in the payment of any sinking or purchase fund installment with respect to the Securities of such series, the Trustee shall be protected in withholding such notice if and so long as the board of directors, the executive committee, or a trust committee of directors or trustees and/or Responsible Officers in good faith determines that the withholding of such notice is in the interests of the Securityholders of such series.

## Section 6.02    Collection of Indebtedness and Suits for Enforcement by Trustee.

(a)    The Company covenants that (i) in case it shall default in the payment of any installment of interest on any of the Securities of a series, or any payment required by any sinking or analogous fund established with respect to that series as and when the same shall have become due and payable, and such default shall have continued for a period of 30 days, or (ii) in case it shall default in the payment of the principal of, or premium, if any, on any of the Securities of a series when the same shall have become due and payable, whether upon maturity of the Securities of a series or upon redemption or upon declaration or otherwise, then, upon demand of the Trustee, the Company will pay to the Trustee, for the benefit of the holders of the

35

Securities of that series, the whole amount that then shall have been become due and payable on all such Securities for principal, premium, if any, or interest, or both, with interest upon the overdue principal, premium, if any, and (to the extent that payment of such interest is enforceable under applicable law) upon overdue installments of interest at the rate expressed in the Securities of that series; and, in addition thereto, such further amount as shall be sufficient to cover the costs and expenses of collection, and the amount payable to the Trustee under Section 7.06.

(b)     If the Company shall fail to pay such amounts forthwith upon such demand, the Trustee, in its own name and as trustee of an express trust, shall be entitled and empowered to institute any action or proceedings at law or in equity for the collection of the amounts so due and unpaid, and may prosecute any such action or proceeding to judgment or final decree, and may enforce any such judgment or final decree against the Company or Tyco if Tyco shall have issued a Guarantee with respect to such Securities and collect the amounts adjudged or decreed to be payable in the manner provided by law out of the property of the Company or, if applicable, Tyco, wherever situated.

(c)     In case of any receivership, insolvency, liquidation, bankruptcy, reorganization, readjustment, arrangement, composition or judicial proceedings affecting the Company, or its respective creditors or property, or Tyco or its respective creditors or property if Tyco shall have issued a Guarantee with respect to Securities of such series, the Trustee shall have power to intervene in such proceedings and take any action therein that may be permitted by the court and, except as otherwise provided by law, shall be entitled to file such proofs of claim and other papers and documents as may be necessary or advisable in order to have the claims of the Trustee and of the holders of Securities of such series allowed for the entire amount due and payable by the Company under the Indenture at the date of institution of such proceedings and for any additional amount that may become due and payable by the Company after such date, and to collect and receive any funds or other property payable or deliverable on any such claim, and to distribute the same in accordance with Section 6.03. Any receiver, assignee or trustee in bankruptcy or reorganization is hereby authorized by each of the holders of Securities of such series to make such payments to the Trustee, and, in the event that the Trustee shall consent to the making of such payments directly to such Securityholders, to pay to the Trustee any amount due it under Section 7.06.

(d)     All rights of action and of asserting claims under this Indenture, or under any of the terms established with respect to Securities of that series, may be enforced by the Trustee without the possession of any of such Securities, or the production thereof at any trial or other proceeding relative thereto. Any such suit or proceeding instituted by the Trustee shall be brought in its own name as trustee of an express trust, and any recovery of judgment shall, after provision for payment to the Trustee of any amounts due under Section 7.06, be for the ratable benefit of the holders of the Securities of such series.

In case of an Event of Default, the Trustee in its discretion may proceed to protect and enforce the rights vested in it by this Indenture by such appropriate judicial proceedings as the Trustee shall deem most effectual to protect and enforce any of such rights, either at law or in equity or in bankruptcy or otherwise, whether for the specific enforcement of any covenant or agreement contained in the Indenture or in aid of the exercise of any power granted in this

36

Indenture, or to enforce any other legal or equitable right vested in the Trustee by this Indenture or by law.

Nothing contained herein shall be deemed to authorize the Trustee to authorize or consent to or accept or adopt on behalf of any Securityholder any plan of reorganization, arrangement, adjustment or composition affecting the Securities of that series or the rights of any holder thereof or to authorize the Trustee to vote in respect of the claim of any Securityholder in any such proceeding.

### Section 6.03    Application of Funds Collected.

Any funds collected by the Trustee pursuant to this Article VI with respect to a particular series of Securities shall be applied in the following order, at the date or dates fixed by the Trustee and, in case of the distribution of such funds on account of principal, premium, if any, or interest, upon presentation of the Securities of that series, and notation thereon the payment, if only partially paid, and upon surrender thereof if fully paid:

FIRST: To the payment of costs and expenses of collection and of all amounts payable to the Trustee under Section 7.06;

SECOND: To the payment of the amounts then due and unpaid upon Securities of such series for principal, premium, if any, and interest, in respect of which or for the benefit of which such funds have been collected, ratably, without preference or priority of any kind, according to the amounts due and payable on such Securities for principal, premium, if any, and interest, respectively; and

THIRD: To the Company.

### Section 6.04    Limitation on Suits.

No holder of any Security of any series shall have any right by virtue or by availing of any provision of this Indenture to institute any suit, action or proceeding in equity or at law upon or under or with respect to this Indenture or for the appointment of a receiver or trustee, or for any other remedy hereunder, unless (i) such holder previously shall have given to the Trustee written notice of an Event of Default and of the continuance thereof with respect to the Securities of such series specifying such Event of Default; (ii) the holders of not less than 25% in aggregate principal amount of the Securities of such series then Outstanding shall have made written request upon the Trustee to institute such action, suit or proceeding in its own name as trustee hereunder; (iii) such holder or holders shall have offered to the Trustee such reasonable indemnity as it may require against the costs, expenses and liabilities to be incurred therein or thereby; (iv) the Trustee for 60 days after its receipt of such notice, request and offer of indemnity, shall have failed to institute any such action, suit or proceeding; and (v) during such 60 day period, the holders of a majority in principal amount of the Securities of that series do not give the Trustee a direction inconsistent with the request.

Notwithstanding anything contained herein to the contrary, any other provisions of this Indenture, the right of any holder of any Security to receive payment of the principal of, and premium, if any, and interest on such Security, as therein provided, on or after the respective due dates

expressed in such Security (or in the case of redemption, on the redemption date), or to institute suit for the enforcement of any such payment on or after such respective dates or redemption date, shall not be impaired or affected without the consent of such holder. By accepting a Security hereunder it is expressly understood, intended and covenanted by the taker and holder of every Security of such series with every other such taker and holder and the Trustee, that no one or more holders of Securities of such series shall have any right in any manner whatsoever by virtue or by availing of any provision of this Indenture to affect, disturb or prejudice the rights of the holders of any other of such Securities, or to obtain or seek to obtain priority over or preference to any other such holder, or to enforce any right under this Indenture, except in the manner herein provided and for the equal, ratable and common benefit of all holders of Securities of such series. For the protection and enforcement of the provisions of this Section 6.04, each Securityholder and the Trustee shall be entitled to such relief as can be given either at law or in equity.

**Section 6.05**     **Rights and Remedies Cumulative; Delay or Omission not Waiver.**

(a)     Except as otherwise provided in Section 2.07, all powers and remedies given by this Article VI to the Trustee or to the Securityholders, to the extent permitted by law, shall be deemed cumulative and not exclusive of any other powers and remedies available to the Trustee or the holders of the Securities, by judicial proceedings or otherwise, to enforce the performance or observance of the covenants and agreements contained in this Indenture or otherwise established with respect to such Securities.

(b)     No delay or omission of the Trustee or of any holder of any of the Securities to exercise any right or power accruing upon any Event of Default occurring and continuing shall impair any such right or power, or shall be construed to be a waiver of any such default or an acquiescence therein. Subject to the provisions of Section 6.04, every power and remedy given by this Article VI or by law to the Trustee or the Securityholders may be exercised from time to time, and as often as shall be deemed expedient, by the Trustee or by the Securityholders.

**Section 6.06**     **Control by Securityholders.**

The holders of a majority in aggregate principal amount of the Securities of any series at the time Outstanding, determined in accordance with Section 8.04, shall have the right to direct the time, method and place of conducting any proceeding for any remedy available to the Trustee or exercising any trust or power conferred on the Trustee with respect to such series; provided, however, that such direction shall not be in conflict with any rule of law or with this Indenture or be unduly prejudicial to the rights of holders of Securities of any other series at the time Outstanding determined in accordance with Section 8.04. Subject to the provisions of Section 7.01, the Trustee shall have the right to decline to follow any such direction if the Trustee in good faith, by a Responsible Officer or Responsible Officers of the Trustee, shall determine that the proceeding so directed would involve the Trustee in personal liability. The holders of a majority in aggregate principal amount of the Securities of any series at the time Outstanding affected thereby, determined in accordance with Section 8.04, on behalf of the holders of all of the Securities of such series may waive any past default in the performance of any of the covenants contained herein or established pursuant to Section 2.01 with respect to such series and its consequences, except a default in the payment of the principal of, premium, if any, or

38

interest on, any of the Securities of that series as and when the same shall become due by the terms of such Securities otherwise than by acceleration (unless such default has been cured and a sum sufficient to pay all matured installments of interest and principal and any premium has been deposited with the Trustee in accordance with Section 6.01(e). Upon any such waiver, the default covered thereby shall be deemed to be cured for all purposes of this Indenture and the Company, the Trustee and the holders of the Securities of such series shall be restored to their former positions and rights hereunder, respectively; but no such waiver shall extend to any subsequent or other default or impair any right consequent thereon.

### Section 6.07     Undertaking to Pay Costs.

All parties to this Indenture agree, and each holder of any Securities by such holder's acceptance thereof shall be deemed to have agreed, that any court may in its discretion require, in any suit for the enforcement of any right or remedy under this Indenture, or in any suit against the Trustee for any action taken or omitted by it as Trustee, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, and that such court may in its discretion assess reasonable costs, including reasonable attorneys' fees and expenses, against any party litigant in such suit, having due regard to the merits and good faith of the claims or defenses made by such party litigant; but the provisions of this Section 6.07 shall not apply to any suit instituted by the Trustee, to any suit instituted by any Securityholder, or group of Securityholders, holding more than 10% in aggregate principal amount of the Outstanding Securities of any series, or to any suit instituted by any Securityholder for the enforcement of the payment of the principal of, premium, if any, or interest on any Security of such series, on or after the respective due dates expressed in such Security or established pursuant to this Indenture.

### Section 6.08     Waiver Of Usury, Stay Or Extension Laws.

Each of Tyco and the Company covenants (to the extent that it may lawfully do so) that it will not at any time insist upon, or plead, or in any manner whatsoever claim or take the benefit or advantage of, any usury, stay or extension law wherever enacted, now or at any time hereafter in force, which may affect the covenants or the performance of this Indenture; and each of Tyco and the Company (to the extent that it may lawfully do so) hereby expressly waives all benefit or advantage of any such law and covenants that it will not, by resort to any such law, hinder, delay or impede the execution of any power herein granted to the Trustee, but will suffer and permit the execution of every such power as though no such law had been enacted.

### ARTICLE VII.

### CONCERNING THE TRUSTEE

### Section 7.01     Certain Duties and Responsibilities of Trustee.

(a)     In case an Event of Default with respect to the Securities of a series has occurred (that has not been cured or waived), the Trustee shall exercise with respect to Securities of that series such of the rights and powers vested in it by this Indenture, and use the same degree of

39

care and skill in their exercise, as a prudent person would exercise or use under the circumstances in the conduct of his or her own affairs.

(b)     No provision of this Indenture shall be construed to relieve the Trustee from liability for its own negligent action, its own negligent failure to act, or its own willful misconduct, except that:

(1)     prior to the occurrence of an Event of Default with respect to the Securities of a series and after the curing or waiving of all such Events of Default with respect to that series that may have occurred:

(i)     the duties and obligations of the Trustee shall with respect to the Securities of such series be determined solely by the express provisions of this Indenture, and the Trustee shall not be liable with respect to the Securities of such series except for the performance of such duties and obligations as are specifically set forth in this Indenture, and no implied covenants or obligations shall be read into this Indenture against the Trustee; and

(ii)     in the absence of bad faith on the part of the Trustee, the Trustee with respect to the Securities of such series may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon any certificates or opinions furnished to the Trustee and conforming to the requirements of this Indenture; but in the case of any such certificates or opinions that by any provision hereof are specifically required to be furnished to the Trustee, the Trustee shall be under a duty to examine the same to determine whether or not they conform to the requirements of this Indenture (but need not confirm or investigate the accuracy of mathematical computations or other facts stated therein);

(2)     the Trustee shall not be liable for any error of judgment made in good faith by a Responsible Officer or Responsible Officers of the Trustee, unless it shall be proved that the Trustee was negligent in ascertaining the pertinent facts;

(3)     the Trustee shall not be liable with respect to any action taken or omitted to be taken by it in good faith in accordance with the direction of the holders of not less than a majority in principal amount of the Securities of any series at the time Outstanding relating to the time, method and place of conducting any proceeding for any remedy available to the Trustee, or exercising any trust or power conferred upon the Trustee under this Indenture with respect to the Securities of that series; and

(4)     none of the provisions contained in this Indenture shall require the Trustee to expend or risk its own funds or otherwise incur personal financial liability in the performance of any of its duties or in the exercise of any of its rights or powers, if there is reasonable ground for believing that the repayment of such funds or liability is not reasonably assured to it under the terms of this Indenture or adequate indemnity against such risk is not reasonably assured to it.

40

Section 7.02          **Certain Rights of Trustee.**

Except as otherwise provided in Section 7.01:

(a)      The Trustee may conclusively rely and shall be fully protected in acting or refraining from acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, approval, bond, security or other paper or document (whether in its original or facsimile form) believed by it to be genuine and to have been signed or presented by the proper party or parties.

(b)      Any request, direction, order or demand of the Company mentioned herein shall be sufficiently evidenced by a Board Resolution or an instrument signed in the name of the Company by an Officer (unless other evidence in respect thereof is specifically prescribed herein).

(c)      The Trustee may consult with counsel of its own selection and the advice of such counsel or any Opinion of Counsel shall be full and complete authorization and protection in respect of any action taken or suffered or omitted hereunder in good faith and in reliance thereon.

(d)      The Trustee shall be under no obligation to exercise any of the rights or powers vested in it by this Indenture at the request, order or direction of any of the Securityholders, pursuant to the provisions of this Indenture, unless such Securityholders shall have offered to the Trustee indemnity satisfactory to it against the costs, expenses and liabilities that may be incurred therein or thereby.

(e)      The Trustee shall not be liable for any action taken or omitted to be taken by it in good faith and believed by it to be authorized or within the discretion or rights or powers conferred upon it by this Indenture.;

(f)      The Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, approval, bond, security or other papers or documents, but the Trustee, in its discretion, may make such further inquiry into such matters as it may see fit, and if the Trustee shall determine to make such further inquiry or investigation, it shall be entitled to examine the books, records and premises of the Company, personally or by agent or attorney at the sole cost of the Company and shall incur no liability or additional liability of any kind by reason of such inquiry or investigation.

(g)      The Trustee shall not be deemed to have notice of any Event of Default unless a Responsible Officer of the Trustee has actual knowledge thereof or unless written notice of any event which is in fact such a default is received by the Trustee at the Corporate Trust Office of the Trustee.

(h)      The Trustee may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents or attorneys and the Trustee shall not be responsible for any misconduct or negligence on the part of any agent or attorney appointed with due care by it hereunder.

41

(i)    The rights, privileges, protections, immunities and benefits given to the Trustee, including, without limitation, its right to be indemnified, are extended to, and shall be enforceable by, the Trustee in each of its capacities hereunder, and each agent, custodian and other Person employed to act hereunder.

(j)    The Trustee may request that the Company deliver an Officers' Certificate setting forth the names of individuals and/or titles of officers authorized at such time to take specified actions pursuant to this Indenture, which Officers' Certificate may be signed by any person authorized to sign an Officers' Certificate, including any person specified as so authorized in any such certificate previously delivered and not superceded.

## Section 7.03    Trustee not Responsible for Recitals or Issuance of Securities.

(a)    The recitals contained herein and in the Securities shall be taken as the statements of the Company, and the Trustee assumes no responsibility for the correctness of the same.

(b)    The Trustee makes no representations as to the validity or sufficiency of this Indenture or of the Securities.

(c)    The Trustee shall not be accountable for the use or application by the Company of any of the Securities or of the proceeds of such Securities, or for the use or application of any funds paid over by the Trustee in accordance with any provision of this Indenture or established pursuant to Section 3.01, or for the use or application of any funds received by any paying agent other than the Trustee.

## Section 7.04    May Hold Securities.

The Trustee or any paying agent or Security Registrar, in its individual or any other capacity, may become the owner or pledgee of Securities with the same rights it would have if it were not Trustee, paying agent or Security Registrar. However, the Trustee is subject to Sections 7.09 and 7.13.

## Section 7.05    Funds Held in Trust.

Subject to the provisions of Section 11.06, all funds received by the Trustee, until used or applied as herein provided, shall be held in trust for the purposes for which they were received, but need not be segregated from other funds except to the extent required by law. The Trustee shall be under no liability for interest on any funds received by it hereunder as it may agree with the Company to pay thereon.

## Section 7.06    Compensation and Reimbursement.

(a)    The Company shall pay to the Trustee, and the Trustee shall be entitled to be paid, such compensation (which shall not be limited by any provision of law in regard to the compensation of a trustee of an express trust), as the Company and the Trustee from time to time may agree in writing, for all services rendered by it in the execution of the trusts hereby created and in the exercise and performance of any of the powers and duties hereunder of the Trustee. Except as otherwise expressly provided herein, the Company will pay or reimburse the Trustee

42

upon its request for all reasonable expenses and disbursements incurred or made by the Trustee in accordance with any of the provisions of this Indenture (including the reasonable compensation and the expenses and disbursements of its counsel and of all Persons not regularly in its employ) except any such expense or disbursement as may arise from its own negligence or bad faith. The Company and Tyco shall indemnify the Trustee (and its officers, agents, directors and employees) for, and shall hold it harmless against, any and all loss, liability, claim, damage or expense, including taxes (other than taxes based upon, measured by or determined by the income of the Trustee) incurred without negligence or bad faith on the part of the Trustee and arising out of or in connection with the acceptance or administration of this trust, including the costs and expenses of defending itself against any claim of liability (whether asserted by the Company, any Holder or any other Person).

(b)      The obligations of the Company under this Section 7.06 to compensate and indemnify the Trustee and to pay or reimburse the Trustee for expenses and disbursements shall: (i) be secured by a lien prior to that of the Securities upon all property and funds held or collected by the Trustee as such, except funds held in trust for the benefit of the holders of particular Securities; and (ii) survive the termination of this Indenture and resignation or removal of the Trustee.

### Section 7.07                    Reliance on Officers' Certificate.

Except as otherwise provided in Section 7.01, whenever in the administration of the provisions of this Indenture the Trustee shall deem it necessary or desirable that a matter be proved or established prior to taking or suffering or omitting to take any action hereunder, such matter (unless other evidence in respect thereof be herein specifically prescribed), in the absence of negligence or bad faith on the part of the Trustee, may be deemed to be conclusively proved and established by an Officers' Certificate delivered to the Trustee and such certificate, in the absence of negligence or bad faith on the part of the Trustee, shall be full warrant to the Trustee for any action taken, suffered or omitted to be taken by it under the provisions of this Indenture upon the faith thereof.

### Section 7.08                    Disqualification: Conflicting Interests.

If the Trustee has or shall acquire any "conflicting interest" within the meaning of Section 310(b) of the Trust Indenture Act, the Trustee and the Company shall in all respects comply with the provisions of Section 310(b) of the Trust Indenture Act.

### Section 7.09                    Corporate Trustee Required: Eligibility.

There shall at all times be a Trustee with respect to the Securities issued hereunder which shall at all times be a corporation organized and doing business under the laws of the United States or any State or Territory thereof or of the District of Columbia, or a corporation or other Person permitted to act as trustee by the Commission, authorized under such laws to exercise corporate trust powers, having a combined capital and surplus of at least $100,000,000, and subject to supervision or examination by Federal, State, Territorial, or District of Columbia authority. If such corporation publishes reports of condition at least annually, pursuant to law or to the requirements of the aforesaid supervising or examining authority, then for the purposes of

43

this Section 7.09 the combined capital and surplus of such corporation shall be deemed to be its combined capital and surplus as set forth in its most recent report of condition so published. The Company may not, nor may any Affiliate of the Company, serve as Trustee. In case at any time the Trustee shall cease to be eligible in accordance with the provisions of this Section 7.09, the Trustee shall resign immediately in the manner and with the effect specified in Section 7.10.

Section 7.10          **Resignation and Removal; Appointment of Successor.**

(a)     The Trustee or any successor hereafter appointed may resign at any time with respect to the Securities of one or more series by giving written notice thereof to the Company and by transmitting notice of resignation by mail, first class postage prepaid, to the Securityholders of such series, as their names and addresses appear upon the Security Register. Upon receiving such notice of resignation, the Company promptly shall appoint a successor trustee with respect to Securities of such series. If no successor trustee shall have been so appointed and have accepted appointment within 60 days after the retiring Trustee resigns, the retiring Trustee, at the expense of the Company, or the Company may petition any court of competent jurisdiction for the appointment of a successor trustee with respect to Securities of such series, or any Securityholder of that series who has been a bona fide holder of a Security or Securities for at least six months may on behalf of himself and all others similarly situated, petition any such court for the appointment of a successor trustee. Such court may thereupon after such notice, if any, as it may deem proper and prescribe, appoint a successor trustee.

(b)     In case at any time any one of the following shall occur, the Company may remove the Trustee with respect to all or any series of Securities and appoint a successor trustee, or, unless the Trustee's duty to resign is stayed as provided herein, any Securityholder who has been a bona fide holder of a Security or Securities for at least six months, on behalf of that holder and all others similarly situated, may petition any court of competent jurisdiction for the removal of the Trustee and the appointment of a successor trustee. Such court may thereupon after such notice, if any, as it may deem proper and prescribe, remove the Trustee and appoint a successor trustee:

(1)     the Trustee shall fail to comply with the provisions of Section 7.08 after written request therefor by the Company or by any Securityholder who has been a bona fide holder of a Security or Securities for at least six months; or

(2)     the Trustee shall cease to be eligible in accordance with the provisions of Section 7.09 and shall fail to resign after written request therefor by the Company or by any such Securityholder; or

(3)     the Trustee shall become incapable of acting, or shall be adjudged a bankrupt or insolvent, or commence a voluntary bankruptcy proceeding, or a receiver of the Trustee or of its property shall be appointed or consented to, or any public officer shall take charge or control of the Trustee or of its property or affairs for the purpose of rehabilitation, conservation or liquidation.

If an instrument of acceptance by a successor Trustee shall not have been delivered to the Trustee within 30 days after the giving of such notice of removal, the Trustee being removed

44

may petition, at the expense of the Company, any court of competent jurisdiction for the appointment of a successor Trustee with respect to the Securities of such series.

(c)        The holders of a majority in aggregate principal amount of the Securities of any series at the time Outstanding at any time may remove the Trustee with respect to such series by so notifying the Trustee and the Company and may appoint a successor Trustee for such series with the consent of the Company.

(d)        Any resignation or removal of the Trustee and appointment of a successor trustee with respect to the Securities of a series pursuant to any of the provisions of this Section shall become effective upon acceptance of appointment by the successor trustee as provided in Section 7.11.

(e)        Any successor trustee appointed pursuant to this Section 7.10 may be appointed with respect to the Securities of one or more series or all of such series, and at any time there shall be only one Trustee with respect to the Securities of any particular series.

Section 7.11            Acceptance of Appointment By Successor.

(a)        In case of the appointment hereunder of a successor trustee with respect to all Securities, every such successor trustee so appointed shall execute, acknowledge and deliver to the Company and to the retiring Trustee an instrument accepting such appointment, and thereupon the resignation or removal of the retiring Trustee shall become effective and such successor trustee, without any further act, deed or conveyance, shall become vested with all the rights, powers, trusts and duties of the retiring Trustee. On the request of the Company or the successor trustee, such retiring Trustee, upon payment of its charges, shall execute and deliver an instrument transferring to such successor trustee all the rights, powers, and trusts of the retiring Trustee and shall assign, transfer and deliver to such successor trustee all property and funds held by such retiring Trustee hereunder.

(b)        In case of the appointment hereunder of a successor trustee with respect to the Securities of one or more (but not all) series, the Company, the retiring Trustee and each successor trustee with respect to the Securities of one or more series shall execute and deliver an indenture supplemental hereto wherein each successor trustee shall accept such appointment and which (i) shall contain such provisions as shall be necessary or desirable to transfer and confirm to, and to vest in, each successor trustee all the rights, powers, trusts and duties of the retiring Trustee with respect to the Securities of that or those series to which the appointment of such successor trustee relates, (ii) shall contain such provisions as shall be deemed necessary or desirable to confirm that all the rights, powers, trusts and duties of the retiring Trustee with respect to the Securities of that or those series as to which the retiring Trustee is not retiring shall continue to be vested in the retiring Trustee, and (iii) shall add to or change any of the provisions of this Indenture as shall be necessary to provide for or facilitate the administration of the trusts hereunder by more than one Trustee, it being understood that nothing herein or in such supplemental indenture shall constitute such Trustees co-trustees of the same trust, that each such Trustee shall be trustee of a trust or trusts hereunder separate and apart from any trust or trusts hereunder administered by any other such Trustee and that no Trustee shall be responsible for any act or failure to act on the part of any other Trustee hereunder.  Upon the execution and

45

delivery of such supplemental indenture the resignation or removal of the retiring Trustee shall become effective to the extent provided therein, and such retiring Trustee shall have no further responsibility with respect to the Securities of that or those series to which the appointment of such successor trustee relates for the exercise of rights and powers or for the performance of the duties and obligations vested in the Trustee under this Indenture. Each such successor trustee, without any further act, deed or conveyance, shall become vested with all the rights, powers, trusts and duties of the retiring Trustee with respect to the Securities of that or those series to which the appointment of such successor trustee relates. On request of the Company or any successor trustee, such retiring Trustee shall assign, transfer and deliver to such successor trustee, to the extent contemplated by such supplemental indenture, the property and funds held by such retiring Trustee hereunder with respect to the Securities of that or those series to which the appointment of such successor trustee relates.

(c)     Upon request of any such successor trustee, the Company may execute any and all instruments for more fully and certainly vesting in and confirming to such successor trustee all such rights, powers and trusts referred to in Section 7.11(a) or (b), as the case may be.

(d)     No successor trustee shall accept its appointment unless at the time of such acceptance such successor trustee shall be qualified and eligible under this Article VII.

(e)     Upon acceptance of appointment by a successor trustee as provided in this Section 7.11, the successor trustee shall cause a notice of its succession to be transmitted to Securityholders.

**Section 7.12         Merger, Conversion, Consolidation or Succession to Business.**

Any corporation into which the Trustee may be merged or converted or with which it may be consolidated, or any corporation resulting from any merger, conversion or consolidation to which the Trustee shall be a party, or any corporation succeeding to all or substantially all of the corporate trust business of the Trustee, shall be the successor of the Trustee hereunder, provided that such corporation shall be qualified under the provisions of Section 7.08 and eligible under the provisions of Section 7.09, without the execution or filing of any paper or any further act on the part of any of the parties hereto, anything herein to the contrary notwithstanding. In case any Securities shall have been authenticated, but not delivered, by the Trustee then in office, any successor by merger, conversion or consolidation to such authenticating Trustee may adopt such authentication and deliver the Securities so authenticated with the same effect as if such successor Trustee had itself authenticated such Securities.

**Section 7.13         Preferential Collection of Claims Against the Company.**

The Trustee shall comply with Section 311(a) of the Trust Indenture Act, excluding any creditor relationship described in Section 311(b) of the Trust Indenture Act. A Trustee who has resigned or been removed shall be subject to Section 311(a) of the Trust Indenture Act to the extent included therein.

## ARTICLE VIII

### CONCERNING THE SECURITYHOLDERS

**Section 8.01**         **Evidence of Action by Securityholders.**

Whenever in this Indenture it is provided that the holders of a majority or specified percentage in aggregate principal amount of the Securities of a particular series may take any action (including the making of any demand or request, the giving of any notice, consent or waiver or the taking of any other action), the fact that at the time of taking any such action the holders of such majority or specified percentage of that series have joined therein may be evidenced by any instrument or any number of instruments of similar tenor executed by such holders of Securities of that series in Person or by agent or proxy appointed in writing.

If the Company shall solicit from the Securityholders of any series any request, demand, authorization, direction, notice, consent, waiver or other action, the Company, at its option, as evidenced by an Officers' Certificate, may fix in advance a record date for such series for the determination of Securityholders entitled to give such request, demand, authorization, direction, notice, consent, waiver or other action, but the Company shall have no obligation to do so. If such a record date is fixed, such request, demand, authorization, direction, notice, consent, waiver or other action may be given before or after the record date, but only the Securityholders of record at the close of business on the record date shall be deemed to be Securityholders for the purposes of determining whether Securityholders of the requisite proportion of Outstanding Securities of that series have authorized or agreed or consented to such request, demand, authorization, direction, notice, consent, waiver or other action, and for that purpose the Outstanding Securities of that series shall be computed as of the record date; provided, however, that no such authorization, agreement or consent by such Securityholders on the record date shall be deemed effective unless it shall become effective pursuant to the provisions of this Indenture not later than six months after the record date.

**Section 8.02**         **Proof of Execution by Securityholders.**

Subject to the provisions of Section 7.01, proof of the execution of any instrument by a Securityholder (such proof will not require notarization) or his agent or proxy and proof of the holding by any Person of any of the Securities shall be sufficient if made in the following manner:

(a)         The fact and date of the execution by any such Person of any instrument may be proved in any reasonable manner acceptable to the Trustee.

(b)         The ownership of Securities shall be proved by the Security Register of such Securities or by a certificate of the Security Registrar thereof.

(c)         The Trustee may require such additional proof of any matter referred to in this Section as it shall deem necessary.

**Section 8.03**    **Who May be Deemed Owners.**

Prior to the due presentment for registration of transfer of any Security, the Company, the Trustee, any paying agent and any Security Registrar may deem and treat the Person in whose name such Security shall be registered upon the books of the Company as the absolute owner of such Security (whether or not such Security shall be overdue and notwithstanding any notice of ownership or writing thereon made by anyone other than the Security Registrar) for the purpose of receiving payment of or on account of the principal of, premium, if any, and (subject to Section 2.03) interest on such Security and for all other purposes; and neither the Company nor the Trustee nor any paying agent nor any Security Registrar shall be affected by any notice to the contrary.

None of the Company, the Trustee, any paying agent or the Security Registrar will have any responsibility or liability for any aspect of the records relating to or payments made on account of beneficial ownership interests in a Global Security or for maintaining, supervising or reviewing any records relating to such beneficial ownership interests.

**Section 8.04**    **Certain Securities Owned by Company Disregarded.**

In determining whether the holders of the requisite aggregate principal amount of Securities of a particular series have concurred in any direction, consent of waiver under this Indenture, the Securities of that series that are owned by Tyco, the Company or any other obligor on the Securities of that series or by an Affiliate of Tyco or the Company shall be disregarded and deemed not to be Outstanding for the purpose of any such determination, except that for the purpose of determining whether the Trustee shall be protected in relying on any such direction, consent or waiver, only Securities of such series that a Responsible Officer of the Trustee knows are so owned shall be so disregarded. The Securities so owned that have been pledged in good faith may be regarded as Outstanding for the purposes of this Section, if the pledgee shall establish to the satisfaction of the Trustee the pledgee's right so to act with respect to such Securities and that the pledge is not an Affiliate. In case of a dispute as to such right, any decision by the Trustee taken upon the advice of counsel shall be full protection to the Trustee. Upon request of the Trustee, the Company shall furnish to the Trustee promptly an Officers' Certificate listing and identifying all Securities of a particular series, if any known by Tyco or the Company to be owned or held by or for the account of any of the above described Persons and, subject to Sections 7.01 and 7.02, the Trustee shall be entitled to accept such Officers' Certificate as conclusive evidence of the facts therein set forth and of the fact that all Securities of such particular series not listed therein are Outstanding for the purpose of any such determination.

**Section 8.05**    **Actions Binding on Future Securityholders.**

At any time prior to the evidencing to the Trustee, as provided in Section 8.01, of the taking of any action by the holders of the majority or percentage in aggregate principal amount of the Securities of a particular series specified in this Indenture in connection with such action, any holder of a Security of that series that is shown by the evidence to be included in the Securities the holders of which have consented to such action, by filing written notice with the Trustee, and upon proof of holding as provided in Section 8.02, may revoke such action so far as

concerns such Security. Except as aforesaid any such action taken by the holder of any Security shall be conclusive and binding upon such holder and upon all future holders and owners of such Security, and of any Security issued in exchange therefor, on registration of transfer thereof or in place thereof, irrespective of whether or not any notation in regard thereto is made upon such Security. Any action taken by the holders of the majority or percentage in aggregate principal amount of the Securities of a particular series specified in this Indenture in connection with such action shall be conclusively binding upon the Company, the Trustee and the holders of all the Securities of that series.

### ARTICLE IX.

### SUPPLEMENTAL INDENTURES

Section 9.01                    Supplemental Indentures Without the Consent of Securityholders.

In addition to any supplemental indenture otherwise authorized by this Indenture, Tyco, the Company and the Trustee from time to time and at any time may enter into an indenture or indentures supplemental hereto (which shall conform to the provisions of the Trust Indenture Act as then in effect), without the consent of the Securityholders, for one or more of the following purposes:

(a)    to cure any ambiguity, defect, or inconsistency herein or in the Securities of any series, including making such changes as are required for this Indenture to comply with the Trust Indenture Act, or to make such other provisions in regard to matters or questions arising under this Indenture or under any supplemental indenture as the Board of Directors of the Company may deem necessary or desirable, and which shall not in either case adversely affect the interests of the Holders of the Securities in any material respects;

(b)    to evidence the succession of another Person to Tyco or the Company, or successive successions, and the assumption by the successor Person of the covenants, agreements and obligations of Tyco or the Company, as the case may be, pursuant to Article X;

(c)    to provide for uncertificated Securities in addition to or in place of certificated Securities;

(d)    to add to the covenants of the Company for the benefit of the holders of all or any outstanding series of Securities (and if such covenants are to be for the benefit of less than all outstanding series of Securities, stating that such covenants are expressly being included solely for the benefit of such series) or to surrender any right or power herein conferred upon Tyco or the Company;

(e)    to add any additional Events of Default for the benefit of the holders of all or any outstanding series of Securities (and if such Events of Default are to be applicable to less than all outstanding series, stating that such Events of Default are expressly being included solely to be applicable to such series);

(f)    to change or eliminate any of the provisions of this Indenture, provided that any such change or elimination shall not become effective with respect to any outstanding Security of

49

any series created prior to the execution of such supplemental indenture which is entitled to the benefit of such provision and as to which such supplemental indenture would apply;

(g)    to secure the Securities or to provide that any of the Company's obligations under any series of the Securities or this Indenture shall be guaranteed and the terms and conditions for the release or substitution of such security or guarantee;

(h)    to make any other change that does not adversely affect the rights of any Securityholder of Outstanding Securities in any material respect;

(i)    to provide for the issuance of and establish the form and terms and conditions of the Securities of any series as provided in Section 2.01, to provide which, if any, of the covenants of the Company shall apply to such series, to provide which of the Events of Default shall apply to such series, to establish the form of any certifications required to be furnished pursuant to the terms of this Indenture or any series of Securities, or to define the rights of the holders of any series of Securities;

(j)    to issue additional Securities of any series; provided that such additional Securities have the same terms as, and be deemed part of the same series as, the applicable series of Securities issued hereunder to the extent required by Section 2.01(b); or

(k)    to evidence and provide for the acceptance of appointment hereunder by a successor Trustee with respect to the Securities of one or more series and to add to or change any of the provision of this Indenture as shall be necessary to provide for or facilitate the administration of the trust hereunder by more than one Trustee.

Upon the request of the Company, accompanied by Board Resolutions authorizing the execution of any such supplemental indenture, and upon receipt by the Trustee of the documents described in Section 9.05, the Trustee shall join with Tyco and the Company in the execution of any such supplemental indenture, and to make any further appropriate agreements and stipulations that may be therein contained, but the Trustee shall not be obligated to enter into any such supplemental indenture that affects the Trustee's own rights, duties or immunities under this Indenture or otherwise.

Any supplemental indenture authorized by the provisions of this Section 9.01 may be executed by Tyco, the Company and the Trustee without the consent of the holders of any of the Securities at the time Outstanding, notwithstanding any of the provisions of Section 9.02.

Section 9.02        Supplemental Indentures with Consent of Securityholders.

With the consent (evidenced as provided in Section 8.01) of the holders of not less than a majority in aggregate principal amount of the Securities of each series at the time Outstanding affected by such supplemental indenture or indentures, Tyco and the Company, when authorized by Board Resolutions, and the Trustee from time to time and at any time may enter into an indenture or indentures supplemental hereto (which shall conform to the provisions of the Trust Indenture Act as then in effect) for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of this Indenture or of any supplemental indenture or of modifying in any manner not covered by Section 9.01 the rights of the holders of the

50

Securities of such series under this Indenture; provided, however, that no such supplemental indenture, without the consent of the holders of each Security then Outstanding and affected thereby, shall (i) extend a fixed maturity of or any installment of principal of any Securities of any series or reduce the principal amount thereof or reduce the amount of principal of any original issue discount security that would be due and payable upon declaration of acceleration of the maturity thereof; (ii) reduce the rate of or extend the time for payment of interest on any Security of any series; (iii) reduce the premium payable upon the redemption of any Security; (iv) make any Security payable in Currency other than that stated in the Security; (v) impair the right to institute suit for the enforcement of any payment on or after the fixed maturity thereof (or in the case of redemption, on or after the redemption date); or (vi) reduce the aforesaid percentage of Securities, the holders of which are required to consent to any such supplemental indenture or indentures.

A supplemental indenture which changes or eliminates any covenant, Event of Default or other provision of this Indenture that has been expressly included solely for the benefit of one or more particular series of Securities, if any, or which modifies the rights of the holders of Securities of such series with respect to such covenant, Event of Default or other provision, shall be deemed not to affect the rights under this Indenture of the holders of Securities, if any, of any other series.

It shall not be necessary for the consent of Securityholders of a series affected thereby under this Section 9.02 to approve the particular form of any proposed supplemental indenture, but it shall be sufficient if such consent shall approve the substance thereof.

Promptly after the execution by Tyco, the Company and the Trustee of any supplemental indenture pursuant to the provisions of this Section 9.02, the Company shall mail or caused to be mailed a notice thereof by first class mail to the Holders of Securities of each series affected thereby at their addresses as they shall appear on the Security Register, setting forth in general terms the substance of such supplemental indenture. Any failure of the Company to mail such notice, or any defect therein, shall not in any way impair or affect the validity of any such supplemental indenture.

### Section 9.03    Effect of Supplemental Indentures.

Upon the execution of any supplemental indenture pursuant to the provisions of this Article IX or Section 10.01, this Indenture shall be and be deemed to be modified and amended with respect to such series in accordance therewith and the respective rights, limitations of rights, obligations, duties and immunities under this Indenture of the Trustee, Tyco, the Company and the holders of Securities of the series affected thereby shall thereafter be determined, exercised and enforced hereunder subject in all respects to such modifications and amendments, and all the terms and conditions of any such supplemental indenture shall be and be deemed to be part of the terms and conditions of this Indenture for any and all purposes.

### Section 9.04    Securities Affected by Supplemental Indentures.

Securities of any series affected by a supplemental indenture and authenticated and delivered after the execution of such supplemental indenture pursuant to the provisions of this

51

Article or of Section 10.01 may bear a notation in form approved by the Company, provided such form meets the requirements of any exchange upon which such series may be listed, as to any matter provided for in such supplemental indenture. If the Company shall so determine, new Securities of that series so modified as to conform, in the opinion of the Board of Directors of the Company, to any modification of this Indenture contained in any such supplemental indenture may be prepared by the Company, authenticated by the Trustee and delivered in exchange for the Securities of that series then Outstanding.

**Section 9.05**         **Execution of Supplemental Indentures.**

Upon the request of the Company, accompanied by Board Resolutions authorizing the execution of any such supplemental indenture, and, if applicable, upon the filing with the Trustee of evidence of the consent of Securityholders required to consent thereto as aforesaid, the Trustee shall join with Tyco and the Company in the execution of such supplemental indenture unless such supplemental indenture affects the Trustee's own rights, duties or immunities under this Indenture or otherwise, in which case the Trustee in its discretion may but shall not be obligated to enter into such supplemental indenture. The Trustee, subject to the provisions of Section 7.01, may receive an Opinion of Counsel and Officers' Certificate as conclusive evidence that any supplemental indenture executed pursuant to this Article IX is authorized or permitted by, and conforms to, the terms of this Article IX and that it is proper for the Trustee under the provisions of this Article IX to join in the execution thereof; provided, however, that such Opinion of Counsel and Officers' Certificate need not be provided in connection with the execution of a supplemental indenture that establishes the terms of a series of Securities pursuant to Section 2.01.

Promptly after the execution by the Company and the Trustee of any supplemental indenture pursuant to the provisions of this Section 9.05, the Trustee shall transmit by mail, first class postage prepaid, a notice, setting forth in general terms the substance of such supplemental indenture, to the Securityholders of all series affected thereby as their names and addresses appear upon the Security Register. Any failure of the Trustee to mail such notice, or any defect therein, shall not, however, in any way impair or affect the validity of any such supplemental indenture.

**ARTICLE X.**

**SUCCESSOR CORPORATION**

**Section 10.01**         **Consolidation, Merger and Sale of Assets.**

Each of Tyco and the Company, covenants that it will not merge or consolidate with any other Person or sell or convey all or substantially all of its assets to any Person, unless

(i) either Tyco or the Company, as the case may be, shall be the continuing entity, or the successor entity or the Person which acquires by sale or conveyance substantially all the assets of Tyco or the Company, as the case may be (if other than Tyco or the Company, as the case may be), (A) shall expressly assume the due and punctual payment of the principal of, premium, if any, and interest on all

52

the Securities or, if applicable, the obligations under any Guarantee, as the case may be, according to their tenor, and the due and punctual performance and observance of all of the covenants and agreements of this Indenture to be performed or observed by Tyco or the Company, as the case may be, by supplemental indenture satisfactory to the Trustee, executed and delivered to the Trustee by such Person and (B) is an entity treated as a "corporation" for United States tax purposes or Tyco or the Company, as the case may be, obtains either (x) an opinion, in form and substance reasonably acceptable to the Trustee, of tax counsel of recognized standing reasonably acceptable to the Trustee, which counsel shall include Gibson, Dunn & Crutcher LLP, or (y) a ruling from the United States Internal Revenue Service, in either case to the effect that such merger or consolidation, or such sale or conveyance, will not result in an exchange of the Securities for new debt instruments for United States federal income tax purposes; and

(ii) no Event of Default and no event that, after notice or lapse of time or both, would become an Event of Default shall be continuing immediately after such merger or consolidation, or such sale or conveyance.

The Company shall deliver to the Trustee prior to the consummation of the proposed transaction an Officers' Certificate to the foregoing effect and an Opinion of Counsel stating that the proposed transaction and such supplemental indenture comply with this Indenture.

To the extent that a Board Resolution or supplemental indenture pertaining to any series provides for different provisions relating to the subject matter of this Article X, the provisions in such Board Resolution or supplemental indenture shall govern for purposes of such series.

**Section 10.02    Successor Person Substituted.**

Upon any consolidation or merger, or any sale, lease, conveyance or other disposition of all or substantially all of the assets of Tyco or the Company, as the case may be, the successor Person formed by such consolidation or into or with which Tyco or the Company, as the case may be, is merged or to which such sale, lease, conveyance or other disposition is made shall succeed to, and be substituted for, and may exercise every right and power of, Tyco or the Company, as the case may be, under this Indenture with the same effect as if such successor Person has been named as Tyco or the Company, as the case may be, herein. In the event of any such sale or conveyance (other than a conveyance by way of lease) Tyco or the Company, as the case may be, or any successor entity which shall theretofore have become such in the manner described in this Article, shall be discharged from all obligations and covenants under this Indenture, the Securities and any Guarantee and may be liquidated and dissolved.

53

## ARTICLE XI.

### SATISFACTION AND DISCHARGE

**Section 11.01**  **Applicability of Article.**

If the Securities of a series are denominated and payable only in Dollars (except as provided pursuant to Section 2.01), then the provisions of this Article XI relating to defeasance of Securities shall be applicable except as otherwise specified pursuant to Section 2.01 for Securities of such series. Defeasance provisions, if any, for Securities denominated in a Foreign Currency may be specified pursuant to Section 2.01.

**Section 11.02**  **Satisfaction and Discharge of Indenture.**

If at any time: (a) Tyco or the Company shall have delivered or shall have caused to be delivered to the Trustee for cancellation all Securities of a series theretofore authenticated (other than any Securities that shall have been destroyed, lost or stolen and that shall have been replaced or paid as provided in Section 2.07) and Securities for whose payment funds or Governmental Obligations have theretofore been deposited in trust or segregated and held in trust by Tyco or the Company (and thereupon repaid to Tyco or the Company or discharged from such trust, as provided in Section 11.06); or (b) all such Securities of a particular series not theretofore delivered to the Trustee for cancellation shall have become due and payable or are by their terms to become due and payable within one year or are to be called for redemption within one year under arrangements satisfactory to the Trustee for the giving of notice of redemption, and Tyco or the Company shall irrevocably deposit or cause to be deposited with the Trustee as trust funds the entire amount (in funds or Governmental Obligations sufficient or a combination thereof) in Dollars (except as otherwise provided pursuant to Section 2.01) sufficient to pay at maturity or upon redemption all Securities of such series not theretofore delivered to the Trustee for cancellation, including principal, premium, if any, and interest due or to become due on such date of maturity or redemption date, as the case may be, and if in either case Tyco or the Company shall also pay or cause to be paid all other sums payable hereunder with respect to such series by the Company, then this Indenture shall cease to be of further effect with respect to such series except for the provisions of Sections 2.03, 2.04, 2.05, 2.07, 4.01, 4.02, 4.03, 7.05 and 7.10, that shall survive until the date of maturity or redemption date, as the case may be, and Sections 7.06 and 11.06, that shall survive to such date and thereafter, and the Trustee, on demand of the Company and at the cost and expense of the Company shall execute proper instruments acknowledging satisfaction of and discharging this Indenture with respect to such series.

**Section 11.03**  **Defeasance and Discharge of Obligations; Covenant Defeasance.**

(a)     If at any time all such Securities of a particular series not theretofore delivered to the Trustee for cancellation or that have not become due and payable as described in Section 11.02 shall have been paid by Tyco or the Company by depositing irrevocably with the Trustee in trust funds or an amount of Governmental Obligations sufficient to pay at maturity or upon redemption all such Securities of that series not theretofore delivered to the Trustee for cancellation, including principal, premium, if any, and interest due or to become due to such date

54

of maturity or date fixed for redemption, as the case may be, and if Tyco or the Company shall also pay or cause to be paid all other amounts payable hereunder by the Company with respect to such series, then after the date such funds or Governmental Obligations, as the case may be, are deposited with the Trustee the obligations of Tyco and the Company under this Indenture with respect to such series shall cease to be of further effect except, to the extent applicable to each, for the provisions of Sections 2.03, 2.04, 2.05, 2.07, 4.01, 4.02, 4.03, 7.05 and 7.10 hereof that shall survive until such Securities shall mature and be paid. Thereafter, Sections 7.06 and 11.06 shall survive such satisfaction and discharge.

(b)    In addition, each of Tyco and the Company, at its option and at any time, by written notice executed by an Officer delivered to the Trustee, may elect to have its obligations, to the extent applicable to each, under Section 5.03 and any covenant contained in Article X, and any other covenant contained in the Board Resolution or supplemental Indenture relating to such series pursuant to Section 2.01, discharged with respect to all Outstanding Securities of a series, this Indenture and any indentures supplemental to this Indenture insofar as such Securities are concerned ("covenant defeasance"), such discharge to be effective on the date the conditions set forth in clauses (i) through (vi) of this Section 11.03(b) are satisfied, and such Securities shall thereafter be deemed to be not "Outstanding" for the purposes of any direction, waiver, consent or declaration of Securityholders (and the consequences of any thereof) in connection with such covenants, but shall continue to be "Outstanding" for all other purposes under this Indenture. For this purpose, such covenant defeasance means that, with respect to the Outstanding Securities of a series, Tyco and the Company may omit to comply with and shall have no liability in respect of any term, condition or limitation set forth in any such covenant, whether directly or indirectly, by reason of any reference elsewhere herein to any such covenant or by reason of reference in any such covenant to any other provision herein or in any other document and such omission to comply shall not constitute an Event of Default under Section 6.01(a)(4) or otherwise, but except as specified in this Section 11.03(b), the remainder of Tyco's and the Company's obligations under the Securities of such series, this Indenture, and any indentures supplemental to this Indenture with respect to such series shall be unaffected thereby.

The following shall be the conditions to the application of Section 11.03(b) to the Outstanding Securities of the applicable series:

(i)    Tyco or the Company irrevocably deposits in trust with the Trustee or, at the option of the Trustee, with a trustee satisfactory to the Trustee and Tyco or the Company, as the case may be, under the terms of an irrevocable trust agreement in form and substance satisfactory to the Trustee, funds or Governmental Obligations sufficient to pay principal of, premium, if any, and interest on the Outstanding Securities of such series to maturity or redemption, as the case may be, and to pay all other amounts payable by it hereunder, provided that (A) the trustee of the irrevocable trust shall have been irrevocably instructed to pay such funds or the proceeds of such Governmental Obligations to the Trustee and (B) the Trustee shall have been irrevocably instructed to apply such funds or the proceeds of such Governmental Obligations to the payment of said principal, premium, if any, and interest with respect to the Securities of such series;

(ii)    Tyco or the Company, as the case may be, delivers to the Trustee an Officers' Certificate stating that all conditions precedent specified herein relating to defeasance or covenant defeasance, as the case may be, have been complied with, and an Opinion of Counsel to the same effect;

(iii)    no Event of Default under clauses (1), (2), (3), (5), (6) or (7) of Section 6.01(a) shall have occurred and be continuing, and no event which with notice or lapse of time or both would become such an Event of Default shall have occurred and be continuing, on the date of such deposit;

(iv)    Tyco or the Company, as the case may be, shall have delivered to the Trustee an Opinion of Counsel or a ruling received from the Internal Revenue Service to the effect that the holders of the Securities of such series will not recognize income, gain or loss for Federal income tax purposes as a result of Tyco's or the Company's exercise of either option under this Section 11.03 and will be subject to Federal income tax in the same amount and in the same manner and at the same times as would have been the case if such election had not been exercised;

(v)    such covenant defeasance shall not (i) cause the Trustee to have a conflicting interest for purposes of the Trust Indenture Act with respect to any Securities or (ii) result in the trust arising from such deposit to constitute, unless it is qualified, a regulated investment company under the Investment Company Act of 1940; and

(vi)    notwithstanding any other provisions of this Section 11.03, such covenant defeasance shall be effected in compliance with any additional or substitute terms, conditions or limitations which may be imposed on Tyco or the Company pursuant to Section 2.01.

After such irrevocable deposit made pursuant to this Section 11.03(b) and satisfaction of the other conditions set forth herein, the Trustee upon request shall acknowledge in writing the discharge of Tyco's and the Company's obligations pursuant to this Section 11.03(b).

## Section 11.04    Deposited Funds to be Held in Trust.

All funds or Governmental Obligations deposited with the Trustee pursuant to Sections 11.02 or 11.03 shall be held in trust and shall be available for payment as due, either directly or through any paying agent (including Tyco or the Company acting as its own paying agent), to the holders of the particular series of Securities for the payment or redemption of which such funds or Governmental Obligations have been deposited with the Trustee.

## Section 11.05    Payment of Funds Held by Paying Agents.

In connection with the provisions of Section 11.02 or 11.03, all funds or Governmental Obligations then held by any paying agent under the provisions of this Indenture shall, upon demand of Tyco or the Company, be paid to the Trustee and thereupon such paying agent shall be released from all further liability with respect to such funds or Governmental Obligations.

**Section 11.06**          **Repayment to Tyco or the Company.**

Any funds or Governmental Obligations deposited with any paying agent or the Trustee, or then held by Tyco or the Company, in trust for payment of principal of, premium, if any, or interest on the Securities of a particular series that are not applied but remain unclaimed by the holders of such Securities for at least two years after the date upon which the principal of, premium, if any, or interest on such Securities shall have respectively become due and payable, shall be repaid to Tyco or the Company, as applicable, on the last Business Day of each fiscal year of Tyco or the Company, as applicable, or (if then held by Tyco or the Company) shall be discharged from such trust; and thereafter, the paying agent and the Trustee shall be released from all further liability with respect to such funds or Governmental Obligations, and the holder of any of the Securities entitled to receive such payment shall thereafter, as an unsecured general creditor, look only to Tyco or the Company, as applicable, for the payment thereof. Anything in this Article XI to the contrary notwithstanding, subject to Section 7.06, the Trustee shall deliver or pay to Tyco or the Company, as applicable, from time to time upon request by Tyco or the Company any funds or Governmental Obligations (or other property and any proceeds therefrom) held by it as provided in Sections 11.02 or 11.03 which, in the opinion of a nationally recognized firm of independent public accountants expressed in a written certification thereof delivered to the Trustee, are in excess of the amount thereof which would then be required to be deposited to effect a defeasance or covenant defeasance, as the case may be, in accordance with this Article XI.

**Section 11.07**          **Reinstatement.**

If the Trustee or paying agent is unable to apply any funds or Governmental Obligations in accordance with Section 11.02 or 11.03 by reason of any legal proceeding or by reason of any order or judgment of any court or governmental authority enjoining, restraining or otherwise prohibiting such application, Tyco and the Company's obligations under this Indenture, any indentures supplemental to the Indenture with respect to the applicable series of Securities and the Securities of such series shall be revived and reinstated as though no deposit had occurred pursuant to Section 11.02 or 11.03, as the case may be, until such time as the Trustee or paying agent is permitted to apply all such funds or Governmental Obligations in accordance with Section 11.02 or 11.03, as the case may be; provided, however, that if Tyco or the Company has made any payment of principal, premium, if any, or interest on any Securities of such series following the reinstatement of its obligations as aforesaid, Tyco or the Company, as applicable, shall be subrogated to the rights of the holders of such Securities of such series to receive such payment from the funds or Governmental Obligations held by the Trustee or paying agent.

## ARTICLE XII.

### IMMUNITY OF INCORPORATORS, STOCKHOLDERS, OFFICERS AND DIRECTORS

**Section 12.01**          **No Recourse.**

No recourse under or upon any obligation, covenant or agreement of this Indenture, or of any Security, or for any claim based thereon or otherwise in respect thereof, shall be had against

any incorporator, shareholder, officer or director, past, present or future as such, of Tyco or the Company or of any predecessor or successor corporation, either directly or through Tyco or the Company or any such predecessor or successor corporation, whether by virtue of any constitution, statute or rule of law, or by the enforcement of any assessment or penalty or otherwise; it being expressly understood that this Indenture and the obligations issued hereunder are solely corporate obligations, and that no such personal liability whatsoever shall attach to, or is or shall be incurred by, the incorporators, shareholders, officers or directors as such, of Tyco or the Company or of any predecessor or successor corporation, or any of them, because of the creation of the indebtedness hereby authorized, or under or by reason of the obligations, covenants or agreements contained in this Indenture or in any of the Securities or implied therefrom; and that any and all such personal liability of every name and nature, either at common law or in equity or by constitution or statute, of, and any and all such rights and claims against, every such incorporator, shareholder, officer or director as such, because of the creation of the indebtedness hereby authorized, or under or by reason of the obligations, covenants or agreements contained in this Indenture or in any of the Securities or implied therefrom, are hereby expressly waived and released as a condition of, and as a consideration for, the execution of this Indenture and the issuance of such Securities.

### ARTICLE XIII.

### MISCELLANEOUS PROVISIONS

**Section 13.01**      Effect on Successors and Assigns.

All the agreements of Tyco and the Company in this Indenture or the Securities shall bind its respective successor whether so expressed or not. All agreements of the Trustee in this Indenture shall bind its successor whether so expressed or not.

**Section 13.02**      Actions by Successor.

Any act or proceeding by any provision of this Indenture authorized or required to be done or performed by any board, committee or officer of Tyco or the Company shall and may be done and performed with like force and effect by the corresponding board, committee or officer of any corporation that shall at the time be the lawful sole successor of Tyco or the Company, as applicable.

**Section 13.03**      Notices.

Any notice or communication by Tyco, the Company or the Trustee to the others is duly given if in writing and delivered in person or mailed by first-class mail (registered or certified, return receipt requested), telex, telecopier or overnight air courier guaranteeing next day delivery, to the other's address:

If to the Company:       Tyco International Group S.A.
17, Boulevard Grande Duchesse Charlotte
1-1331 Luxembourg
Attention: The Managing Directors
Facsimile No.: 352 46 43 50

58

If to Tyco:

    Tyco International Ltd.
    90 Pitts Bay Road
    Pembroke HM08
    Bermuda
    Attn: Chief Corporate Counsel
    Facsimile No.: (441) 295–9647

In either case, with copies to:

    Tyco International (US), Inc.
    9 Roszel Road
    Princeton, New Jersey 08540
    Attn: Treasurer
    Facsimile No.: (609) 720–4208

and

    Gibson, Dunn & Crutcher LLP
    200 Park Avenue
    New York, New York 10166
    Attention:  Steven R. Finley
    Facsimile No.: (212) 351–4035

If to the Trustee:

    The Bank of New York
    101 Barclay Street, 21 W
    New York, New York  10286
    Attention:  Corporate Trust Administration
    Telephone No.: (212) 815–5619
    Facsimile No.: (212) 815–5802

Tyco, the Company or the Trustee by notice to the others may designate additional or different addresses for subsequent notices or communications.

All notices and communications (other than those sent to Securityholders) shall be deemed to have been duly given: at the time delivered by hand, if personally delivered; five Business Days after being deposited in the mail, postage prepaid, if mailed; when answered back, if telexed; when receipt acknowledged, if telecopied; and the next Business Day after timely delivery to the courier, if sent by overnight air courier guaranteeing next day delivery.

Any notice or communication to a Securityholder shall be mailed by first–class mail, certified or registered, return receipt requested, to his address shown on the Security Register. Failure to mail a notice or communication to a Securityholder or any defect in it shall not affect its sufficiency with respect to other Securityholders.

In the event of suspension of regular mail service or by reason of any other cause it shall be impracticable to give notice by mail, then such notification as shall be given with the approval of the Trustee shall constitute sufficient notice for every purpose hereunder.

If a notice or communication is mailed in the manner provided above within the time prescribed, it is conclusively presumed duly given, whether or not the addressee receives it.

### Section 13.04        Governing Law.

This Indenture and each Security shall be deemed to be a contract made under the internal laws of the State of New York, and for all purposes shall be construed in accordance with the laws of said State without regard to conflicts of laws principles that would require the application of any other law. This Indenture is subject to the provisions of the Trust Indenture Act that are required to be part of this Indenture and shall, to the extent applicable, be governed by such provisions.

### Section 13.05        Treatment of Securities as Debt.

It is intended that the Securities will be treated as indebtedness and not as equity for United States Federal income tax purposes. The provisions of this Indenture shall be interpreted to further this intention.

### Section 13.06        Compliance Certificates and Opinions.

(a)     Upon any application or demand by Tyco or the Company to the Trustee to take any action under any of the provisions of this Indenture, Tyco or the Company shall furnish to the Trustee an Officers' Certificate stating that, in the opinion of the signers, all conditions precedent provided for in this Indenture relating to the proposed action have been complied with and an Opinion of Counsel stating that in the opinion of such counsel all such conditions precedent have been complied with, except that in the case of any such application or demand as to which the furnishing of such documents is specifically required by any provision of this Indenture relating to such particular application or demand, no additional certificate or opinion need be furnished.

(b)     Each certificate or opinion provided for in this Indenture and delivered to the Trustee with respect to compliance with a condition or covenant in this Indenture shall include: (1) a statement that the Person making such certificate or opinion has read such covenant or condition; (2) a brief statement as to the nature and scope of the examination or investigation upon which the statements or opinions contained in such certificate or opinion are based; (3) a statement that, in the opinion of such Person, he has made such examination or investigation as is necessary to enable him to express an informed opinion as to whether or not such covenant or condition has been complied with; and (4) a statement as to whether or not, in the opinion of such Person, such condition or covenant has been complied with.

### Section 13.07        Payments on Business Days.

Except as provided pursuant to Section 2.01 pursuant to a Board Resolution, and as set forth in an Officers' Certificate or established in one or more indentures supplemental to this Indenture, in any case where the date of maturity of interest or principal of any Security or the date of redemption of any Security shall not be a Business Day, then payment of principal, premium, if any, or interest or principal (and premium, if any) may be made on the next

succeeding Business Day with the same force and effect as if made on the nominal date of maturity or redemption, and no interest shall accrue for the period after such nominal date.

### Section 13.08          Conflict with Trust Indenture Act.

If and to the extent that any provision of this Indenture limits, qualifies or conflicts with the duties imposed by Sections 310 to 317, inclusive, of the Trust Indenture Act, such imposed duties shall control.

### Section 13.09          Counterparts.

This Indenture may be executed in any number of counterparts, each of which shall be an original, but such counterparts shall together constitute but one and the same instrument.

### Section 13.10          Separability.

In case any one or more of the provisions contained in this Indenture or in the Securities of any series shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provisions of this Indenture or of such Securities, but this Indenture and such Securities shall be construed as if such invalid or illegal or unenforceable provision had never been contained herein or therein.

### Section 13.11          No Adverse Interpretation of Other Agreements.

This Indenture may not be used to interpret another indenture, loan or debt agreement of Tyco, the Company or a Subsidiary. Any such indenture, loan or debt agreement may not be used to interpret this Indenture.

### Section 13.12          Table of Contents, Headings, Etc.

The Table of Contents, Cross-Reference Table and Headings of the Articles and Sections of this Indenture have been inserted for convenience of reference only, are not to be considered a part hereof and shall in no way modify or restrict any of the terms or provisions hereof.

### Section 13.13          Consent to Jurisdiction and Service of Process.

Each of Tyco and the Company agrees that any legal suit, action or proceeding brought by any party to enforce any rights under or with respect to this Indenture, any Security and any Guarantee or any other document or the transactions contemplated hereby or thereby may be instituted in any state or federal court in The City of New York, State of New York, United States of America, irrevocably waives to the fullest extent permitted by law any objection which it may now or hereafter have to the laying of venue of any such suit, action or proceeding, irrevocably waives to the fullest extent permitted by law any claim that any such action, suit or proceeding brought in such court has been brought in an inconvenient forum and irrevocably submits to the non-exclusive jurisdiction of any such court in any such suit, action or proceeding or for recognition and enforcement of any judgment in respect thereof.

61

Each of Tyco and the Company hereby irrevocably and unconditionally designates and appoints CT Corporation System, 1633 Broadway, New York, New York 10019, U.S.A. (and any successor entity) as its authorized agent to receive and forward on its behalf service of any and all process which may be served in any such suit, action or proceeding in any such court and agrees that service of process upon CT Corporation shall be deemed in every respect effective service of process upon the Company in any such suit, action or proceeding and shall be taken and held to be valid personal service upon Tyco or the Company, as the case may be. Said designation and appointment shall be irrevocable. Nothing in this Section 13.13 shall affect the right of the Holders to serve process in any manner permitted by law or limit the right of the Holders to bring proceedings against Tyco or the Company in the courts of any jurisdiction or jurisdictions. Each of Tyco and the Company further agrees to take any and all action, including the execution and filing of any and all such documents and instruments, as may be necessary to continue such designation and appointment of CT Corporation in full force and effect so long as the Securities are outstanding. Each of Tyco and the Company hereby irrevocably and unconditionally authorizes and directs CT Corporation to accept such service on its behalf. If for any reason CT Corporation ceases to be available to act as such, each of Tyco and the Company agrees to designate a new agent in New York City.

To the extent that Tyco or the Company has or hereafter may acquire any immunity from jurisdiction of any court (including, without limitation, any court in the United States, the State of New York, Luxembourg, Bermuda or any political subdivisions thereof) or from any legal process (whether through service of notice, attachment prior to judgment, attachment in aid of execution, execution or otherwise) with respect to itself or its property or assets, this Indenture, the Securities, any Guarantees or any other documents or actions to enforce judgments in respect of any thereof, then each of Tyco and the Company hereby irrevocably waives such immunity, and any defense based on such immunity, in respect of its obligations under the above-referenced documents and the transactions contemplated thereby, to the extent permitted by law.

Section 13.14    Waiver of Jury Trial.

EACH OF THE COMPANY AND THE TRUSTEE HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE NOTES OR THE TRANSACTIONS CONTEMPLATED HEREBY.

## ARTICLE XIV.

### ADDITIONAL AMOUNTS; CERTAIN TAX PROVISIONS

Section 14.01    Redemption Upon Changes in Withholding Taxes.

The Securities of any series may be redeemed, as a whole but not in part, at the option of the Company, upon not less than 30 nor more than 60 days notice (which notice shall be irrevocable), at a redemption price equal to 100% of the principal amount thereof, together with accrued interest, if any, to the redemption date and Additional Amounts (as defined in Section 14.2), if any, if as a result of any amendment to, or change in, the laws or regulations of

Luxembourg or Bermuda or any political subdivision or taxing authority thereof or therein having power to tax (a **"Taxing Authority"**), or any change in the application or official interpretation of such laws or regulations which amendment or change is announced or becomes effective after the date the Securities of such series are issued, Tyco or the Company has become or will become obligated to pay Additional Amounts, on the next date on which any amount would be payable with respect to the Securities of such series, and such obligation cannot be avoided by the use of reasonable measures available to Tyco or the Company, as the case may be; provided, however, that (a) no such notice of redemption may be given earlier than 90 days prior to the earliest date on which Tyco or the Company, as the case may be, would be obligated to pay such Additional Amounts, and (b) at the time such notice of redemption is given, such obligation to pay such Additional Amounts remains in effect. Prior to the giving of any notice of redemption described in this paragraph, the Company shall deliver to the Trustee (i)(A) a certificate signed by two directors of the Company stating that the obligation to pay Additional Amounts cannot be avoided by the Company taking reasonable measures available to it or (B) a certificate signed by two executive officers of Tyco stating that the obligation to pay Additional Amounts cannot be avoided by Tyco taking reasonable measures available to it, as the case may be, and (ii) a written opinion of independent legal counsel to Tyco or the Company, as the case may be, of recognized standing to the effect that the Company has or will become obligated to pay Additional Amounts as a result of a change, amendment, official interpretation or application described above and that Tyco or the Company, as the case may be, cannot avoid the payment of such Additional Amounts by taking reasonable measures available to it.

Section 14.02            **Payment of Additional Amounts.**

      All payments made by Tyco or the Company under or with respect to the Securities and the Guarantees will be made free and clear of and without withholding or deduction for or on account of any present or future taxes, duties, levies, imposts, assessments or governmental charges of whatever nature imposed or levied by or on behalf of any Taxing Authority (**"Taxes"**), unless Tyco or the Company, as the case may be, is required to withhold or deduct Taxes by law or by the interpretation or administration thereof. In the event that Tyco or the Company is required to so withhold or deduct any amount for or on account of any Taxes from any payment made under or with respect to the Securities or the Guarantees, as the case may be, Tyco or the Company, as the case may be, will pay such additional amounts (**"Additional Amounts"**) as may be necessary so that the net amount received by each holder of Securities (including Additional Amounts) after such withholding or deduction will equal the amount that such Holder would have received if such Taxes had not been required to be withheld or deducted; provided that no Additional Amounts will be payable with respect to a payment made to a holder of Securities to the extent:

      (a)    that any such Taxes would not have been so imposed but for the existence of any present or former connection between such Holder and the Taxing Authority imposing such Taxes (other than the mere receipt of such payment, acquisition, ownership or disposition of such Securities or the exercise or enforcement of rights under such Securities, the Guarantees or this Indenture);

      (b)    of any estate, inheritance, gift, sales, transfer, or personal property Taxes imposed with respect to such Securities, except as otherwise provided herein;

(c)    that any such Taxes would not have been so imposed but for the presentation of such Securities (where presentation is required) for payment on a date more than 30 days after the date on which such payment became due and payable or the date on which payment thereof is duly provided for, whichever is later, except to the extent that the beneficiary or Holder thereof would have been entitled to Additional Amounts had the Securities been presented for payment on any date during such 30-day period;

(d)    that such Holder would not be liable or subject to such withholding or deduction of Taxes but for the failure to make a valid declaration of non-residence or other similar claim for exemption or to provide a certificate declaring its non-residence, if (x) the making of such declaration or claim or the provision of such certificate is required or imposed by statute, treaty, regulation, ruling or administrative practice of the relevant Taxing Authority as a precondition to an exemption from, or reduction in, the relevant Taxes, and (y) at least 60 days prior to the first payment date with respect to which Tyco or the Company shall apply this clause (d), Tyco or the Company shall have notified all Holders of Securities in writing that they shall be required to provide such declaration or claim; or

(e)    of any combination of Section 14.02(a), (b), (c) and (d).

Such Additional Amounts also will not be payable where, had the beneficial owner of Securities been the Holder of such Securities, it would not have been entitled to payment of Additional Amounts by reason of Section 14.02(a), (b), (c), (d) or (e).

Tyco or the Company, as the case may be, will also (i) make such withholding or deduction of Taxes and (ii) remit the full amount of Taxes so deducted or withheld to the relevant Taxing Authority in accordance with all applicable laws. Tyco or the Company, as applicable, will use its reasonable efforts to obtain certified copies of tax receipts evidencing the payment of any Taxes so deducted or withheld from each Taxing Authority imposing such Taxes. Tyco or the Company, as the case may be, will, upon request, make available to the holders of the Securities, within 90 days after the date the payment of any Taxes so deducted or withheld is due pursuant to applicable law, certified copies of tax receipts evidencing such payment by Tyco or the Company or if, notwithstanding Tyco's or the Company's efforts to obtain such receipts, the same are not obtainable, other evidence of such payments by Tyco or the Company.

At least 30 days prior to each date on which any payment under or with respect to the Securities or Guarantees is due and payable, if Tyco or the Company will be obligated to pay Additional Amounts with respect to such payment, Tyco or the Company will deliver to the Trustee an Officers' Certificate stating the fact that such Additional Amounts will be payable, the amounts so payable and will set forth such other information as is necessary to enable such Trustee to pay such Additional Amounts to holders of Securities on the payment date.

In addition, the Company will pay any stamp, issue, registration, documentary or other similar taxes and duties, including interest, penalties and Additional Amounts with respect thereto, payable in Luxembourg or the United States or any political subdivision or taxing

64

authority of or in the foregoing in respect of the creation, issue, offering, enforcement, redemption or retirement of the Securities.

The provisions of this Article XIV shall survive any termination of the discharge of this Indenture and shall apply mutatis mutandis to any jurisdiction in which Tyco or the Company or any successor Person to Tyco or the Company, as the case may be, is organized or is engaged in business for tax purposes or any political subdivisions or taxing authority or agency thereof or therein; provided, however, the date on which Tyco or the Company changes its jurisdiction in which it is organized or such Person becomes a successor to Tyco or the Company, as the case may be, shall be substituted for the date on which the series of Securities was issued.

Whenever in this Indenture, the Securities or any Guarantees there is mentioned, in any context, the payment of principal (and premium, if any), redemption price, interest or any other amount payable under or with respect to any Security, such mention shall be deemed to include mention of the payment of Additional Amounts to the extent that, in such context, Additional Amounts are, were or would be payable in respect thereof.

## ARTICLE XV.

### GUARANTEES

**Section 15.01**        **Guarantee.**

Tyco hereby fully and unconditionally guarantees (i) to each holder of each Security of a series for which it is established pursuant to Section 2.01 that Tyco is to provide a Guarantee and which is authenticated and delivered by the Trustee, and (ii) to the Trustee on behalf of such Holder, the due and punctual payment of the principal of, premium, if any, and interest on such Security when and as the same shall become due and payable, whether at the stated maturity, by acceleration, call for redemption or otherwise, in accordance with the terms of such Security and of this Indenture. In case of the failure of the Company punctually to make any such payment, Tyco hereby agrees to cause such payment to be made punctually when and as the same shall become due and payable, whether at the stated maturity or by acceleration, call for redemption or otherwise, and as if such payment were made by the Company.

Tyco hereby agrees that its obligations hereunder shall be absolute and unconditional, irrespective of, and shall be unaffected by, the validity, regularity or enforceability of such Security or this Indenture, the absence of any action to enforce the same or any release, amendment, waiver or indulgence granted to the Company or Tyco or any consent to departure from any requirement of any other guarantee of all or any of the Securities or any other circumstances which might otherwise constitute a legal or equitable discharge or defense of a surety or guarantor. Tyco hereby waives the benefits of diligence, presentment, demand for payment, any requirement that the Trustee or any of the Holders protect, secure, perfect or insure any security interest in or other lien on any property subject thereto or exhaust any right or take any action against the Company or any other Person or any collateral, filing of claims with a court in the event of insolvency or bankruptcy of the Company, any right to require a proceeding first against the Company, protest or notice with respect to such Security or the indebtedness evidenced thereby and all demands whatsoever, and covenants that this Guarantee will not be

65

discharged in respect of such Security except by complete performance of the obligations contained in such Security and in such Guarantee. Tyco agrees that if, after the occurrence and during the continuance of an Event of Default, the Trustee or any of the Holders of the applicable series of Securities are prevented by applicable law from exercising their respective rights to accelerate the maturity of such Securities, to collect interest on such Securities, or to enforce or exercise any other right or remedy with respect to such Securities, Tyco agrees to pay to the Trustee for the account of such Holders, upon demand therefor, the amount that would otherwise have been due and payable had such rights and remedies been permitted to be exercised by the Trustee or any of such Holders.

Tyco shall be subrogated to all rights of the holders of the Securities of the series upon which its Guarantee is endorsed against the Company in respect of any amounts paid by such Guarantor on account of such Security pursuant to the provisions of its Guarantee or this Indenture; provided, however, that Tyco shall not be entitled to enforce or to receive any payment arising out of, or based upon, such right of subrogation until the principal of and interest on all Securities of such series issued hereunder shall have been paid in full.

The Guarantee shall remain in full force and effect and continue to be effective should any petition be filed by or against the Company for liquidation or reorganization, should the Company become insolvent or make an assignment for the benefit of creditors or should a receiver or trustee be appointed for all or any part of the Company's assets, and shall, to the fullest extent permitted by law, continue to be effective or be reinstated, as the case may be, if at any time payment and performance of such Securities, is, pursuant to applicable law, rescinded or reduced in amount, or must otherwise be restored or returned by any holder of such Securities, whether as a "voidable preference," "fraudulent transfer," or otherwise, all as though such payment or performance had not been made. In the event that any payment, or any part thereof, is rescinded, reduced, restored or returned, such Securities shall, to the fullest extent permitted by law, be reinstated and deemed reduced only by such amount paid and not so rescinded, reduced, restored or returned.

Any term or provision of the Guarantee to the contrary notwithstanding, the aggregate amount of the obligations guaranteed hereunder shall be reduced to the extent necessary to prevent such Guarantee from violating or becoming voidable under applicable law relating to fraudulent conveyance or fraudulent transfer or similar laws affecting the rights of creditors generally.

### Section 15.02    Execution and Delivery of Guarantee.

The Guarantee to be endorsed on the applicable Securities shall include the terms of the Guarantee set forth in Section 15.01 and shall be substantially in the form established pursuant to Section 2.16. Tyco hereby agrees to execute its Guarantee, in a form established pursuant to Section 2.16, to be endorsed on each applicable Security authenticated and delivered by the Trustee.

The Guarantee shall be executed on behalf of Tyco by any one of its chairman of the Board of

66

Directors, president, vice presidents or other person duly authorized by Tyco's Board of Directors. The signature of any or all of these persons on the Guarantee may be manual or facsimile.

A Guarantee bearing the manual or facsimile signature of individuals who were at any time the proper officers of Tyco shall bind Tyco, notwithstanding that such individuals or any of them have ceased to hold such offices prior to the authentication and delivery of the Security on which such Guarantee is endorsed or did not hold such offices at the date of such Guarantee.

The delivery of any Security by the Trustee of a series guaranteed by Tyco pursuant to Section 2.01, after the authentication thereof hereunder, shall constitute due delivery of the Guarantee endorsed thereon on behalf of Tyco and shall bind Tyco notwithstanding the fact that the Guarantee does not bear the signature of Tyco. Tyco agrees that its Guarantee set forth in Section 15.1 and in the form of Guarantee established pursuant to Section 2.16 shall remain in full force and effect notwithstanding any failure to endorse a Guarantee on any such Security.

**Section 15.03          Release of Guarantee.**

Notwithstanding anything in this Article XV to the contrary, concurrently with the payment in full of the principal of, premium, if any, and interest on Securities of a series guaranteed by Tyco pursuant to Section 2.01, Tyco shall be released from and relieved of its obligations under this Article XV. Upon the delivery by the Company to the Trustee of an Officers' Certificate and an Opinion of Counsel to the effect that the transaction giving rise to the release of this Guarantee was made by the Company in accordance with the provisions of this Indenture and the Securities, the Trustee shall execute any documents reasonably required in order to evidence the release of Tyco from its obligations under this Guarantee. If any of the obligations to pay the principal of, premium, if any, and interest on such Securities and all other obligations of the Company are revived and reinstated after the termination of this Guarantee, then all of the obligations of Tyco under this Guarantee shall be revived and reinstated as if this Guarantee had not been terminated until such time as the principal of, premium, if any, and interest on such Securities are paid in full, and Tyco shall enter into an amendment to this Guarantee, reasonably satisfactory to the Trustee, evidencing such revival and reinstatement.

IN WITNESS WHEREOF, the parties hereto have caused this Indenture to be duly executed all as of the day and year first above written.

TYCO INTERNATIONAL GROUP S.A.

By:   /s/ Michelangelo Stefani
     Name: Michelangelo Stefani
     Title: Managing Director


TYCO INTERNATIONAL LTD.

By:   /s/ David J. FitzPatrick
     Name: David J. FitzPatrick
     Title: Executive Vice President and Chief Financial Officer


THE BANK OF NEW YORK
as Trustee
By:   /s/ Patricia M. Phillips
     Name: Patricia M. Phillips
     Title: Assistant Vice President

68

## EXHIBIT A

### FORM OF CERTIFICATE OF TRANSFER

Tyco International Group S.A.
17, Boulevard Grande Duchesse Charlotte
L–1331 Luxembourg
Attention: The Managing Directors

The Bank of New York
101 Barclay Street, Floor 21W
New York, NY 10286

Re: [insert description of Securities]

Ladies and Gentlemen,

      Reference is hereby made to the Indenture, dated as of _____, ____, among Tyco International Group S.A., a Luxembourg company (the "Company"), Tyco International Ltd., a Bermuda company ("Tyco"), and _____, a _____, as trustee (the "Trustee"), [as supplemented by that certain supplemental indenture dated as of _____][and the Board Resolution adopted _____) (together, the "Indenture"). Capitalized terms used but not defined herein shall have the meanings given to them in the Indenture. _____ (the "Transferor") owns and proposes to transfer the Security or Securities or interest[s] in such Security or Securities specified in Annex A hereto, in the principal amount of $_____ in such Security or Securities or interest[s] (the "Transfer"), to _____ (the "Transferee"), as further specified in Annex A hereto. In connection with the Transfer, the Transferor hereby certifies that:

[CHECK ALL THAT APPLY

1.    ☐    *Check if Transferee will take delivery of a beneficial interest in the 144A Global Security or a Definitive Security Pursuant to Rule 144A.* The Transfer is being effected pursuant to and in accordance with Rule 144A under the United States Securities Act of 1933, as amended (the "Securities Act"), and, accordingly, the Transferor hereby further certifies that the beneficial interest or Definitive Security is being transferred to a Person that the Transferor reasonably believed and believes is purchasing the beneficial interest or Definitive Security for its own account, or for one or more accounts with respect to which such Person exercises sole investment discretion, and such Person and each such account is a "qualified institutional buyer" within the meaning of Rule 144A (a "QIB") in a transaction meeting the requirements of Rule 144A and such Transfer is in compliance with any applicable blue sky securities laws of any State of the United States. Upon consummation of the proposed Transfer in accordance with the terms of the Indenture, the transferred beneficial interest or Definitive Security will be subject to the restrictions on transfer enumerated in the Private Placement Legend printed on the 144A Global Security and/or the Definitive Security and in the Indenture and the Securities Act.

A-1

2. ☐ *Check if Transferee will take delivery of a beneficial interest in the Regulation S Global Security or a Definitive Security pursuant to Regulation S.* The Transfer is being effected pursuant to and in accordance with Rule 903 or Rule 904 under the Securities Act and, accordingly, the Transferor hereby further certifies that (i) the Transfer is not being made to a person in the United States and (y) at the time the buy order was originated, the Transferee was outside the United States or such Transferor and any Person acting on its behalf reasonably believed and believes that the Transferee was outside the United States or (z) the transaction was executed in, on or through the facilities of a designated offshore securities market and neither such Transferor nor any Person acting on its behalf knows that the transaction was prearranged with a buyer in the United States, (ii) no directed selling efforts have been made in contravention of the requirements of Rule 903(b) or Rule 904 (b) of Regulation S under the Securities Act, (iii) the transaction is not part of a plan or scheme to evade the registration requirements of the Securities Act and (iv) if the proposed Transfer is being made prior to the expiration of the Distribution Compliance Period, the Transfer is not being made to a U.S. person (as such is defined in Regulation S) or for the account or benefit of a U.S. person (other than an initial purchaser of the Securities) and the interest transferred will be held immediately thereafter through Euroclear or Clearstream Upon consummation of the proposed Transfer in accordance with the terms of the Indenture, the transferred beneficial interest or Definitive Security will be subject to the restrictions on transfer enumerated in the Private Placement Legend printed on the Regulation S Global Security and/or the Definitive Security and in the Indenture and the Securities Act.

3. ☐ *Check and complete if Transferee will take delivery of a beneficial interest in a Definitive Security pursuant to any provision of the Securities Act other than Rule 144A or Regulation S.* The Transfer is being effected in compliance with the transfer restrictions applicable to beneficial interests in Restricted Global Securities and Restricted Definitive Securities and pursuant to and in accordance with the Securities Act and any applicable blue sky securities laws of any State of the United States, and accordingly the Transferor hereby further certifies that (check one):

(a) ☐ Such Transfer is being effected pursuant to and in accordance with Rule 144 under the Securities Act; or

(b) ☐ Such Transfer is being effected to the Company or a subsidiary thereof; or

(c) ☐ Such Transfer is being effected pursuant to an effective registration statement under the Securities Act and in compliance with the prospectus delivery requirements of the Securities Act; or

(d) ☐ Such Transfer is being effected to an Institutional Accredited Investor and pursuant to an exemption from the registration requirements of the Securities Act other than Rule 144A, Rule 144 or Rule 904, and the Transferor hereby further certifies that it has not engaged in any general solicitation within the meaning of Regulation D under the Securities Act and the Transfer complies with the transfer restrictions applicable to

A-2

beneficial interests in a Restricted Global Security or Restricted Definitive Security and the requirements of the exemption claimed, which certification is supported by a certificate executed by the Transferee in the form attached as Exhibit C to the Indenture. Upon consummation of the proposed Transfer in accordance with the terms of the Indenture, the Definitive Security will be subject to the restrictions on transfer enumerated in the Private Placement Legend printed on the Definitive Security and in the Indenture and the Securities Act.

4. ☐ *Check if Transferee will take delivery of a beneficial interest in an Unrestricted Global Security or of an Unrestricted Definitive Security.*

(a) ☐ *Check if Transfer is pursuant to Rule 144.* (i) The Transfer is being effected pursuant to and in accordance with Rule 144 under the Securities Act and in compliance with the transfer restrictions contained in the Indenture and any applicable blue sky securities laws of any State of the United States and (ii) the restrictions on transfer contained in the Indenture and the Private Placement Legend are not required in order to maintain compliance with the Securities Act. Upon consummation of the proposed Transfer in accordance with the terms of the Indenture, the transferred beneficial interest or Definitive Security will no longer be subject to the restrictions on transfer enumerated in the Private Placement Legend printed on the Restricted Global Securities, on Restricted Definitive Securities and in the Indenture and the Securities Act.

(b) ☐ *Check if Transfer is Pursuant to Regulation S.* (i) The Transfer is being effected pursuant to and in accordance with Rule 903 or Rule 904 under the Securities Act and in compliance with the transfer restrictions contained in the Indenture and any applicable blue sky securities laws of any State of the United States and (ii) the restrictions on transfer contained in the Indenture and the Private Placement Legend are not required in order to maintain compliance with the Securities Act. Upon consummation of the proposed Transfer in accordance with the terms of the Indenture, the transferred beneficial interest or Definitive Security will no longer be subject to the restrictions on transfer enumerated in the Private Placement Legend printed on the Restricted Global Securities, on Restricted Definitive Securities and in the Indenture and the Securities Act.

(c) ☐ *Check if Transfer is Pursuant to Other Exemption.* (i) The Transfer is being effected pursuant to and in compliance with an exemption from the registration requirements of the Securities Act other than Rule 144, Rule 903 or Rule 904 and in compliance with the transfer restrictions contained in the Indenture and any applicable blue sky securities laws of any State of the United States and (ii) the restrictions on transfer contained in the Indenture and the Private Placement Legend are not required in order to maintain compliance with the Securities Act. Upon consummation of the proposed Transfer in accordance with the terms of the Indenture, the transferred beneficial interest or Definitive Security will not be subject to the restrictions on transfer enumerated in the Private Placement Legend printed on the Restricted Global Securities or Restricted Definitive Securities and in the Indenture.

This certificate and the statements contained herein are made for your benefit and the benefit of the Company.

Dated:

_____

[Insert Name of Transferor]

By:

_____
Name

Title:

A-4

## ANNEX A TO CERTIFICATE OF TRANSFER

1.    The Transferor owns and proposed to transfer the following:

[CHECK ONE OF (a) OR (b)]

(a)    ☐    a beneficial interest in the:

(i)    ☐    144A Global Security (CUSIP _____), or

(ii)    ☐    Regulation S Global Security (CUSIP _____), or

(b)    ☐    a Restricted Definitive Security.

2.    After the transfer the Transferee will hold:

(a)    ☐    a beneficial interest in the:

(i)    ☐    144A Global Security (CUSIP _____), or

(ii)    ☐    Regulation S Global Security (CUSIP _____), or

(iii)    ☐    Unrestricted Global Security (CUSIP _____); or

(b)    ☐    a Restricted Definitive Security; or

(c)    ☐    an Unrestricted Definitive Security,

in accordance with the terms of the Indenture.

## EXHIBIT B

### FORM OF CERTIFICATE OF EXCHANGE

Tyco International Group S.A.
17, Boulevard Grande Dutchesse Charlotte
L-1331 Luxembourg
Attention: The Managing Directors

[Address of Trustee]

Re: [insert description of the Securities]

Ladies and Gentlemen,

Reference is hereby made to the Indenture, dated as of _____, _____, among Tyco International Group S.A., a Luxembourg company (the "Company"), Tyco International Ltd., a Bermuda company ("Tyco"), and _____, as trustee (the "Trustee") [as supplemented by that certain supplemental indenture dated as of _____] [and the Board Resolution adopted _____] (together, the "Indenture"). Capitalized terms used but not defined herein shall have the meanings given to them in the Indenture.

_____, (the "Owner") owns and proposes to transfer the Security or Securities or interest[s] in such Security or Securities specified herein, in the principal amount of $_____ in such Security or Securities or interest[s] (the "Exchange"). In connection with the Transfer, the Transferor hereby certifies that:

    1.    *Exchange of Restricted Definitive Securities or Beneficial Interests in a Restricted Global Security for Unrestricted Definitive Securities or Beneficial Interests in an Unrestricted Global Security.*

    (a)    ☐    *Check if Exchange is from beneficial interest in a Restricted Global Security to beneficial interest in an Unrestricted Global Security.* In connection with the Exchange of the Owner's beneficial interest in a Restricted Global Security for a beneficial interest in an Unrestricted Global Security in an equal principal amount, the Owner hereby certifies (i) the beneficial interest is being acquired for the Owner's own account without transfer, (ii) such Exchange has been effected in compliance with the transfer restrictions applicable to the Global Securities and pursuant to and in accordance with the United States Securities Act of 1933, as amended (the "Securities Act"), (iii) the restrictions on transfer contained in the Indenture and the Private Placement Legend are not required in order to maintain compliance with the Securities Act and (iv) the beneficial interest in an Unrestricted Global Security is being acquired in compliance with any applicable blue sky securities laws of any State of the United States.

B-1

(b)  ☐  *Check if Exchange is from beneficial interest in a Restricted Global Security to Unrestricted Definitive Security.* In connection with the Exchange of the Owner's beneficial interest in a Restricted Global Security for an Unrestricted Definitive Security in an equal principal amount, the Owner hereby certifies (i) the Definitive Security is being acquired for the Owner's own account without transfer, (ii) such Exchange has been effected in compliance with the transfer restrictions applicable to the Restricted Global Securities and pursuant to and in accordance with the Securities Act, (iii) the restrictions on transfer contained in the Indenture and the Private Placement Legend are not required in order to maintain compliance with the Securities Act and (iv) the Definitive Security is being acquired in compliance with any applicable blue sky securities laws of any State of the United States.

(c)  ☐  *Check if Exchange is from Restricted Definitive Security to beneficial interest in an Unrestricted Global Security.* In connection with the Owner's Exchange of a Restricted Definitive Security for a beneficial interest in an Unrestricted Global Security, the Owner hereby certifies (i) the beneficial interest is being acquired for the Owner's own account without transfer, (ii) such Exchange has been effected in compliance with the transfer restrictions applicable to Restricted Definitive Securities and pursuant to and in accordance with the Securities Act, (iii) the restrictions on transfer contained in the Indenture and the Private Placement Legend are not required in order to maintain compliance with the Securities Act and (iv) the beneficial interest in an Unrestricted Global Security is being acquired in compliance with any applicable blue sky securities laws of any State of the United States.

(d)  ☐  *Check if Exchange is from Restricted Definitive Security to Unrestricted Definitive Security.* In connection with the Owner's Exchange of a Restricted Definitive Security for an Unrestricted Definitive Security, the Owner hereby certifies (i) the Unrestricted Definitive Security is being acquired for the Owner's own account without transfer, (ii) such Exchange has been effected in compliance with the transfer restrictions applicable to Restricted Definitive Securities and pursuant to and in accordance with the Securities Act, (iii) the restrictions on transfer contained in the Indenture and the Private Placement Legend are not required in order to maintain compliance with the Securities Act and (iv) the Unrestricted Definitive Security is being acquired in compliance with any applicable blue sky securities laws of any State of the United States.

2.  *Exchange of Restricted Definitive Securities or Beneficial Interests in Restricted Global Securities for Restricted Definitive Securities or Beneficial Interests in Restricted Global Securities.*

(a)  ☐  *Check if Exchange is from beneficial interest in a Restricted Global Security to Restricted Definitive Security.* In connection with the Exchange of the Owner's beneficial interest in a Restricted Global Security for a Restricted Definitive Security with an equal principal amount, the Owner hereby certifies that the Restricted Definitive Security is being acquired for the Owner's own account without transfer. Upon consummation of the proposed Exchange in accordance with the terms of the Indenture, the Restricted Definitive Security issued will continue to be subject to the restrictions on transfer enumerated in the

B-2

Private Placement Legend printed on the Restricted Definitive Security and in the Indenture and the Securities Act.

(b)    ☐    *Check if Exchange is from Restricted Definitive Security to beneficial interest in a Restricted Global Security.* In connection with the Exchange of the Owner's Restricted Definitive Security for a beneficial interest in the: [CHECK ONE] ☐ 144A Global Security or ☐ Regulation S Global Security with an equal principal amount, the Owner hereby certifies (i) the beneficial interest is being acquired for the Owner's own account without transfer and (ii) such Exchange has been effected in compliance with the transfer restrictions applicable to Restricted Global Securities and pursuant to and in accordance with the Securities Act, and in compliance with any applicable blue sky securities laws of any State of the United States. Upon consummation of the proposed Exchange in accordance with the terms of the Indenture, the beneficial interest issued will be subject to the restrictions on transfer enumerated in the Private Placement Legend printed on the relevant Restricted Global Security and in the Indenture and the Securities Act.

This certificate and the statements contained herein are made for your benefit and the benefit of the Company.

[Insert Name of Owner]

By:

    Name:

    Title:

Dated: _____

## EXHIBIT C

### FORM OF CERTIFICATE FROM ACQUIRING
### INSTITUTIONAL ACCREDITED INVESTOR

Tyco International Group S.A.
17, Boulevard Grande Duchesse Charlotte
L-1331 Luxembourg
Attention: The Managing Directors

[Address of Trustee]

Re: [insert description of the Securities]

Ladies and Gentlemen,

Reference is hereby made to the Indenture, dated as of _____, _____, among Tyco International Group S.A., a Luxembourg company (the "Company"), Tyco International Ltd., a Bermuda company ("Tyco"), and _____, as trustee (the "Trustee") [as supplemented by that certain supplemental indenture dated as of _____][and the Board Resolution adopted _____] (together, the "Indenture"). Capitalized terms used but not defined herein shall have the meanings given to them in the Indenture.

In connection with our proposed purchase of $_____ aggregate principal amount of: (a) a beneficial interest in a Global Security, or (b) a Definitive Security, we confirm that:

1.    We understand that any subsequent transfer of the Securities or any interest therein is subject to certain restrictions and conditions set forth in the Indenture and the undersigned agrees to be bound by, and not to resell, pledge or otherwise transfer the Securities or any interest therein except in compliance with, such restrictions and conditions and the United States Securities Act of 1933, as amended (the "Securities Act").

2.    We understand that the offer and sale of the Securities have not been registered under the Securities Act, and that the Securities and any interest therein may not be offered or sold except as permitted in the following sentence. We agree, on our own behalf and on behalf of any accounts for which we are acting as hereinafter stated, that if we should sell the Securities or any interest therein, we will do so only (1) in the United States to a person whom the seller reasonably believes is a "qualified institutional buyer" (as defined in Rule 144A under the Securities Act) in a transaction meeting the requirements of Rule 144A, (2) outside the United States in an offshore transaction in accordance with Rule 904 under the Securities Act, (3) pursuant to an exemption from registration under the Securities Act provided by Rule 144 thereunder (if available) or (4) pursuant to an effective registration statement under the Securities Act, in each of cases (1) through (4) in accordance with any applicable securities laws of any state of the United States, and we further agree to notify any purchaser of the Securities from us of the resale restrictions referred to above.

C-1

3.    We understand that, on any proposed resale of the Securities or beneficial interest therein, we will be required to furnish to you and the Company such certifications, legal opinions and other information as you and the Company may reasonably require to confirm that the proposed sale complies with the foregoing restrictions. We further understand that any subsequent transfer by us of the Securities or beneficial interest therein acquired by us must be effected through one of the initial purchasers of the Securities.

4.    We are an institutional "accredited investor" (as defined in Rule 501(a)(1), (2), (3) or (7) of Regulation D under the Securities Act) and have such knowledge and experience in financial and business matters as to be capable of evaluating the merits and risks of our investment in the Securities, and we and any accounts for which we are acting are each able to bear the economic risk of our or its investment.

5.    We are acquiring the Securities or beneficial interest therein purchased by us for our own account or for one or more accounts (each of which is an institutional "accredited investor") as to each of which we exercise sole investment discretion.

C-2

You and the Company are entitled to rely upon this letter and are irrevocably authorized to produce this letter or a copy hereof to any interested party in any administrative or legal proceedings or official inquiry with respect to the matters covered hereby.

Dated: _____ , _____

[Insert Name of Accredited Investor]

By: _____

    Name:

    Title:

C-3



# TYCO INTERNATIONAL LTD /BER/ (TYC)

90 PITTS BAY ROAD
THE ZURICH CENTRE SECOND FLOOR
PEMROKE HM 08 BERMU, D0
441. 292.8674
http://www.tyco.com/

## EX-4.1

EX-4.1
10-Q filed on 02/11/2004 - Period: 12/31/2003
File Number 001-13836



GSI