# EXHIBIT C

OFFER TO PURCHASE AND CONSENT SOLICITATION STATEMENT

# TYCO INTERNATIONAL GROUP S.A.

## OFFER TO PURCHASE AND SOLICITATION OF CONSENTS
## FOR ANY AND ALL OF ITS OUTSTANDING SECURITIES
## LISTED IN THE TABLE BELOW

| Title of Securities | CUSIP Number | Outstanding Amount | UST Reference Security | Fixed Spread (bp) | Bloomberg Reference Page | Early Consent Payment |
|---|---|---|---|---|---|---|
| **2003 Indenture Notes** | | | | | | |
| 6.0% notes due 2013 | 902118BK3 | $1,000,000,000 | 4.25% due 11/15/2013 | 40 | PX6 | $30.00 |
| **1998 Indenture Notes** | | | | | | |
| 6.125% notes due 2008 | 902118AM0 | $400,000,000 | 4.875% due 10/31/2008 | 30 | PX4 | $30.00 |
| 6.125% notes due 2009 | 902118AJ7 | $400,000,000 | 3.250% due 1/15/2009 | 35 | PX4 | $30.00 |
| 6.75% notes due 2011 | 902118AY4 | $1,000,000,000 | 5.000% due 2/15/2011 | 35 | PX5 | $30.00 |
| 6.375% notes due 2011 | 902118BC1 | $1,500,000,000 | 4.500% due 9/30/2011 | 40 | PX6 | $30.00 |
| 7.0% notes due 2028 | 902118AC2 | $500,000,000 | 4.75% due 2/15/2037 | 60 | PX1 | $30.00 |
| 6.875% notes due 2029 | 902118AK4 | $800,000,000 | 4.75% due 2/15/2037 | 60 | PX1 | $30.00 |

THE CONSENT SOLICITATIONS WILL EXPIRE AT 5:00 P.M., NEW YORK CITY TIME, ON THURSDAY, MAY 10, 2007, UNLESS EXTENDED OR EARLIER TERMINATED (SUCH TIME AND DATE, AS THE SAME MAY BE EXTENDED, THE "EARLY CONSENT DATE"). THE TENDER OFFERS WILL EXPIRE AT 12:00 MIDNIGHT, NEW YORK CITY TIME, ON THURSDAY, MAY 24, 2007, UNLESS EXTENDED OR EARLIER TERMINATED (SUCH TIME AND DATE, AS THE SAME MAY BE EXTENDED, THE "EXPIRATION DATE").

Tyco International Group S.A. (the "Company") hereby offers to purchase for cash any and all of the outstanding notes (collectively, the "Notes") listed in the tables above. The Notes were issued at various times in an aggregate principal amount of approximately $5.6 billion, of which substantially all remained outstanding as of the date of this Offer to Purchase and Consent Solicitation Statement (the "Offer to Purchase").

The offers to purchase the 2003 Notes (as defined herein) (the "2003 Tender Offer") and the 1998 Notes (as defined herein) (the "1998 Tender Offer" and, together with the 2003 Tender Offer, the "Tender Offers") are being made upon the terms and subject to the conditions set forth in this Offer to Purchase and the accompanying Letter of Transmittal and Consent (the "Letter of Transmittal" and, together with this Offer to Purchase, the "Offer Documents").

*The Dealer Managers for the Tender Offers and the Solicitation Agents for the Consent Solicitations are:*

## Goldman, Sachs & Co.

## Morgan Stanley

April 27, 2007

Concurrently with the Tender Offers, the Company is soliciting from the holders of the Notes (each a "Holder" and, collectively, the "Holders") consents ("Consents") to amend the indentures (as defined herein) under which the Notes were issued to clarify the application of certain provisions of the Indentures to the Proposed Separation (as defined herein). While Tyco International Ltd. ("Tyco"), the guarantor of the Notes, and the Company believe that the various steps in the Proposed Separation are not prohibited by the Indentures, Tyco and the Company believe it is desirable, prior to completing the Proposed Separation but after completion of the Consent Solicitations, to eliminate any uncertainty by amending the Indentures.

For any Notes validly delivered and not withdrawn before the Early Consent Date, the Company will pay total consideration for each $1,000 principal amount of Notes (the "Total Consideration"), which will equal the present value of the Notes, calculated as described under "The Tender Offers and Consent Solicitations," based on:

- the yield to maturity of the United States Treasury ("UST") reference security specified for such Notes in the table on the cover pages (as calculated by the Dealer Managers (as defined below) in accordance with standard market practice based on the bid side price of such reference security at 2:00 p.m., New York City time, two business days prior to the Expiration Date),

- plus the fixed spread specified for that series in the table on the cover page.

The formula for calculating the Total Consideration of each of the Notes appears in Annex C, and a sample calculation of a hypothetical Total Consideration for each of the Notes appears in Annex D.

The Total Consideration includes a consent payment of $30.00 per $1,000 principal amount of Notes (the "Early Consent Payment") payable to each registered Holder of the Notes who validly delivers (and does not validly revoke) its Consent on or prior to the Early Consent Date. For any Notes validly delivered after the Early Consent Date and prior to the Expiration Date, the Company will pay the Total Consideration minus the Early Consent Payment (the "Purchase Price"). In addition, the Company will pay accrued and unpaid interest on such $1,000 principal amount up to, but not including, the day of payment for (or deposit of an amount with Global Bondholder Services Corporation as Depositary (the "Depositary"), sufficient to pay for) Notes accepted for purchase.

The Notes were issued under two different indentures. The Company's 6.125% notes due 2008 (CUSIP No. 902118AM0), 6.125% notes due 2009 (CUSIP No. 902118AJ7), 6.75% notes due 2011 (CUSIP No. 902118AY4), 6.375% notes due 2011 (CUSIP No. 902118BC1), 7.0% notes due 2028 (CUSIP No. 902118AC2) and 6.875% notes due 2029 (CUSIP No. 902118AK4) (collectively, the "1998 Notes") were issued under an indenture, dated as of June 9, 1998 (as supplemented from time to time, the "1998 Indenture") among the Company, Tyco, as guarantor, and The Bank of New York, as trustee (the "Trustee"). In order to clarify the application of certain provisions of the 1998 indenture to the Proposed Separation, the Company seeks Consents to the amendment of Article Eight of the 1998 Indenture and to the execution and delivery by the Company, Tyco and the Trustee of a supplemental indenture (the "1998 Supplemental Indenture") containing the proposed amendments to the 1998 Indenture (the "1998 Indenture Amendments," and such consent solicitation, the "1998 Consent Solicitation").

The 1998 Indenture Amendments will not become effective unless the Company receives the consent of the Holders of at least a majority in outstanding aggregate principal amount of the 1998 Notes, voting together as one class (the "1998 Requisite Consents"). For purposes of determining the number of Consents required to approve the 1998 Indenture Amendments, the aggregate principal value of all 1998 Notes, excluding those 1998 Notes held by the Company, Tyco or any affiliate of the Company or Tyco (the "1998 Outstanding Amount"), will be counted, and, for such purpose, as of the date of this Offer to Purchase, the aggregate outstanding principal amount of the 1998 Notes is approximately $4.6 billion.

The Company's 6.0% notes due 2013 (CUSIP No. 902118BK3) (the "2003 Notes") were issued under an indenture, dated as of November 12, 2003, as amended by the First Supplemental Indenture, dated as of November 12, 2005 (the "First Supplemental Indenture" and, as amended thereby, the "2003 Indenture"), among the Company, Tyco, as guarantor, and The Bank of New York, as Trustee. In order to clarify the application of certain provisions of the 2003 Indenture to the Proposed Separation, the Company seeks Consents to the amendment of Article X of the 2003 Indenture and to the execution and delivery by the Company, Tyco and the Trustee of a supplemental indenture (the "2003 Supplemental Indenture" and such consent solicitation, the "2003 Consent Solicitation") containing the proposed amendments to the 2003 Indenture (the "2003 Indenture Amendments"). The 2003 Indenture Amendments will not become effective unless the Company receives the consent of the holders of at least a majority in aggregate principal amount of the outstanding

2003 Notes (the "2003 Requisite Consents"). For purposes of determining the number of Consents required to approve the 2003 Indenture Amendments, the aggregate principal value of all 2003 Notes, excluding those 2003 Notes held by the Company, Tyco or any affiliate of the Company or Tyco (the "2003 Outstanding Amount"), will be counted.

The 1998 Indenture and the 2003 Indenture are referred to collectively herein as the "Indentures"; the 1998 Indenture Amendments and 2003 Indenture Amendments are referred to collectively herein as the "Proposed Amendments"; the 1998 Supplemental Indenture and the 2003 Supplemental Indenture are referred to collectively herein as the "Supplemental Indentures"; the 1998 Requisite Consents and the 2003 Requisite Consents are referred to collectively herein as the "Requisite Consents"; and the 1998 Consent Solicitation and 2003 Consent Solicitation are referred to herein collectively as the "Consent Solicitations."

Any questions or requests for assistance concerning the Tender Offers and the Consent Solicitations may be directed to Goldman, Sachs & Co. or Morgan Stanley (the "Dealer Managers" and the "Solicitation Agents") at the addresses and telephone numbers set forth on the back cover of this Offer to Purchase. Requests for additional copies of this Offer to Purchase, the Letter of Transmittal or any other documents relating to the Tender Offers and the Consent Solicitations may be directed to Global Bondholder Services Corporation (the "Information Agent") at the address and telephone numbers set forth on the back cover of this Offer to Purchase. Beneficial owners also may contact their broker, dealer, commercial bank, trust company or other nominee (each, a "Custodian") for assistance concerning the Tender Offers and the Consent Solicitations.

NONE OF THE COMPANY, TYCO, THE DEALER MANAGERS, THE SOLICITATION AGENTS, THE INFORMATION AGENT, THE DEPOSITARY, OR THE TRUSTEE MAKES ANY RECOMMENDATION IN CONNECTION WITH THE TENDER OFFERS OR THE CONSENT SOLICITATIONS.

The Company will pay the Total Consideration to Holders who validly tender (and do not validly withdraw) their Notes, and validly deliver (and do not validly revoke) their Consents, to the Depositary on or prior to the Early Consent Date (assuming the satisfaction or waiver of the conditions of the Tender Offers and Consent Solicitations described below). Any Holder who tenders Notes pursuant to the Tender Offers also must deliver a Consent to the Proposed Amendments and to the execution and delivery of the Supplemental Indentures. Holders who validly tender their Notes pursuant to the Tender Offers will be deemed by such tender to have delivered their Consents. Additionally, Holders must tender their Notes in order to deliver a Consent.

Holders who validly tender their Notes subsequent to the Early Consent Date and on or prior to the Expiration Date will receive the Purchase Price but are not entitled to receive the Early Consent Payment and will not have withdrawal rights. Payments of the Total Consideration or the Purchase Price, as applicable, for Notes validly tendered (and not validly withdrawn) and accepted for purchase are expected to be made promptly after the Expiration Date if Notes are accepted for purchase (the "Payment Date").

In the event that either of the Tender Offers and Consent Solicitations are terminated, withdrawn or otherwise not consummated prior to the Expiration Date, neither the Purchase Price nor Total Consideration, as the case may be, will become payable to Holders who have validly tendered (and not validly withdrawn) their Notes and validly delivered (and not validly revoked) their Consents in connection with such Tender Offers and Consent Solicitations. In any such event, the Notes previously tendered pursuant to such Tender Offers will be promptly returned to the tendering Holders.

Tenders of Notes pursuant to the Tender Offers may be validly withdrawn and Consents delivered pursuant to the Consent Solicitations may be validly revoked at any time on or prior to the Early Consent Date by following the procedures described herein under the captions "Withdrawal of Tenders and Revocation of Consents; Absence of Appraisal Rights." Tenders of Notes also may be withdrawn and Consents delivered pursuant to the Consent Solicitations validly revoked if the Tender Offers are terminated without any Notes being purchased thereunder. A valid withdrawal of tendered Notes on or prior to the Early Consent Date will be deemed a valid revocation of the related Consent. Any Notes tendered on or prior to the Early Consent Date that are not validly withdrawn on or prior to the Early Consent Date may not be withdrawn thereafter. Notes tendered after the Early Consent Date may not be validly withdrawn.

In each of the 2003 Consent Solicitation and 1998 Consent Solicitation, the Company is seeking Consents to all of the applicable Proposed Amendments as a single proposal. Accordingly, a Consent purporting to consent to only some of the Proposed Amendments will not be valid, and the delivery of a Consent by a Holder is the delivery of a Consent to all of either the 1998 Indenture Amendments or the 2003 Indenture Amendments, as applicable. If the

2003 Requisite Consents or the 1998 Requisite Consents are obtained by the Early Consent Date, the Company, Tyco and the Trustee will execute on, or as soon as practicable after, the Early Consent Date the applicable Supplemental Indenture containing the relevant Proposed Amendments, with such Proposed Amendments becoming operative on the date the Company notifies the Trustee and the Depositary that an amount of Notes representing the Requisite Consents for such Proposed Amendments has been accepted for purchase. In the event the 2003 Notes or 1998 Notes are not accepted for purchase by the Company for any reason, the applicable Supplemental Indenture will not become operative, and the applicable Indenture will remain in full force and effect in its present form.

Notwithstanding any other provision of the Tender Offers or the Consent Solicitations, (i) the Company's obligation to accept for purchase, and to pay for, any Notes validly tendered and not validly withdrawn pursuant to each of the Tender Offers is conditioned upon the following having occurred or having been waived by the Company on or prior to the Expiration Date: (a) the Company having available from the Company's Bridge Loan Facilities dated as of April 25, 2007 (the "Bridge Loan Facilities") and cash on hand, on or prior to the Expiration Date, funds sufficient to pay the aggregate Total Consideration (the "Financing Condition"); (b) the receipt of the applicable Requisite Consents on or prior to the Early Consent Date (the "Requisite Consent Condition"); (c) the execution of the applicable Supplemental Indenture (the "Supplemental Indenture Condition"); and (d) satisfaction of the General Conditions (as described in this Offer to Purchase under "Conditions Of The Tender Offers And Consent Solicitations"), and the Company's obligation to make Early Consent Payments is conditioned upon the Company's acceptance of the Notes for purchase pursuant to the applicable Tender Offer. The Company reserves the right to waive any and all conditions of the Tender Offers and the Consent Solicitations. See "Conditions of the Tender Offers and Consent Solicitations."

The Company expressly reserves the right, in its sole discretion, subject to applicable law, to (i) terminate prior to the Expiration Date one or both of the Tender Offers and the Consent Solicitations and not accept for payment any applicable Notes not theretofore accepted for payment, (ii) waive on or prior to the Expiration Date any and all of the conditions of the Tender Offer and the Consent Solicitations, (iii) extend the Expiration Date or the Early Consent Date with respect to the Tender Offers and Consent Solicitations and (iv) amend the terms of the Tender Offer or the Consent Solicitations. The foregoing rights are in addition to the Company's right to delay acceptance for payment of Notes tendered under the Tender Offer or the payment for Notes accepted for payment in order to comply with any applicable law, subject to Rule 14e-1(c) under the Securities Exchange Act of 1934, as amended (the "Exchange Act"), which requires that an offeror pay the consideration offered or return the securities deposited by or on behalf of the holders thereof promptly after the termination or withdrawal of a tender offer.

In the event that one or both of the Tender Offers and the Consent Solicitations are terminated, withdrawn or otherwise not consummated prior to the Expiration Date, neither the Total Consideration nor the Purchase Price, as the case may be, will be paid or become payable to Holders who have validly tendered (and not validly withdrawn) their Notes and validly delivered (and not validly revoked) their Consents in connection with such Tender Offers and Consent Solicitations. In any such event, the Notes previously tendered pursuant to the Tender Offers will be promptly returned to such tendering Holders.

From time to time after the Expiration Date or termination of the Tender Offers, the Company or its affiliates may acquire any Notes that are not tendered pursuant to the Tender Offers through open market purchases, privately negotiated transactions, tender offers, exchange offers, redemptions or otherwise, upon such terms and at such prices as the Company may determine, which may be more or less than the price to be paid pursuant to the Tender Offers and the Consent Solicitations and could be for cash or other consideration. There can be no assurance as to which, if any, of these alternatives or combinations thereof the Company or its affiliates will choose to pursue in the future.

See "Certain Considerations" and "Material United States Federal Income Tax Considerations" for a discussion of certain factors that should be considered in evaluating the Tender Offers and the Consent Solicitations, and also see "Proposed Amendments to the Indenture" and Annexes A and B hereto for a description of the Proposed Amendments and the consequences of the adoption thereof to Holders of unpurchased Notes.

This Offer to Purchase constitutes neither an offer to purchase Notes nor a solicitation of Consents in any jurisdiction in which, or to or from any person to or from whom, it is unlawful to make such offer or consent solicitations under applicable securities or "blue sky" laws. The delivery of this Offer to Purchase shall not under any circumstances create any implication that the information contained herein or incorporated herein by reference is correct as of any time subsequent to the date hereof or, in the case of information incorporated herein by reference, subsequent to the date thereof, or that there has been no change in the information set forth herein or

iv

incorporated herein by reference or in any attachments hereto or to the affairs of the Company, Tyco or any of their respective affiliates since the date hereof.

## IMPORTANT INFORMATION

Any Holder desiring to tender Notes pursuant to the Tender Offers and to deliver Consents pursuant to the Consent Solicitations should either: (i) in the case of a beneficial owner whose Notes are held in book-entry form, request such beneficial owner's Custodian to effect the transaction for such beneficial owner; or (ii) in the case of a Holder who holds physical certificates evidencing such Notes, complete and sign the accompanying Letter of Transmittal (or a facsimile thereof) in accordance with the instructions set forth therein, have the signature thereon guaranteed (if required by Instruction 3 of the Letter of Transmittal), and deliver that manually signed Letter of Transmittal (or a facsimile thereof), together with the certificates evidencing the Notes and any other required documents, to the Depositary. Only registered holders of Notes are entitled to tender Notes and deliver Consents. A beneficial owner whose Notes are registered in the name of a Custodian must contact such Custodian if such beneficial owner desires to tender Notes and deliver Consents with respect to Notes so registered. See "Procedures for Tendering Notes and Delivering Consents."

The Depositary and The Depository Trust Company ("DTC") have confirmed that the Tender Offers and the Consent Solicitations are eligible for DTC's Automated Tender Offer Program ("ATOP"). Accordingly, DTC participants may electronically transmit their acceptance of a Tender Offer and deliver Consents by causing DTC to transfer their Notes and indicate delivery of their Consents to the Depositary in accordance with DTC's ATOP procedures for such a transfer. DTC will then send an Agent's Message (as defined herein) to the Depositary. Holders desiring to tender their Notes on or prior to the Early Consent Date or the Expiration Date, as the case may be, should note that such Holders must allow sufficient time for completion of the ATOP procedures during normal business hours of DTC on such date. See "Procedures for Tendering Notes and Delivering Consents."

## DOCUMENTS INCORPORATED BY REFERENCE

The following documents have been filed with the Securities and Exchange Commission (the "Commission") and are incorporated herein by reference:

    (a) Tyco's Annual Report on Form 10-K for the fiscal year ended September 29, 2006 filed on December 11, 2006, as amended by the Form 10-K/A filed on April 20, 2007;

    (b) Tyco's Quarterly Report on Form 10-Q for the quarter ended December 29, 2006 filed on February 6, 2007, as amended by the Form 10-Q/A filed on April 20, 2007;

    (c) Tyco's Definitive Proxy Statement on Schedule 14A filed January 30, 2007; and

    (d) Tyco's Current Reports on Form 8-K filed January 8, 2007, January 17, 2007, February 6, 2007, February 20, 2007, April 12, 2007 and April 26, 2007.

All documents filed by Tyco pursuant to Sections 13(a), 13(c), 14 or 15(d) of the Exchange Act, after the date of this Offer to Purchase and prior to the expiration or termination of these Tender Offers shall be deemed to be incorporated by reference in this Offer to Purchase and to be a part hereof from the date of filing such documents. Please also see the amended registration statements on Form 10 filed on April 20, 2007 by Covidien Ltd. ("Covidien") and by Tyco Electronics Ltd. ("Tyco Electronics"), and the amended registration statements on Form S-1 filed on April 20, 2007 by Covidien and Covidien International Finance S.A. and by Tyco Electronics and Tyco Electronics Group S.A., and the amended registration statement on Form S-1 filed on April 20, 2007 by Tyco and Tyco International Finance S.A. ("TIFSA"), for information regarding the Proposed Separation.

Any statement contained in this Offer to Purchase or incorporated herein by reference shall be deemed to be modified or superseded to the extent that a statement contained in any documents and reports filed by Tyco pursuant to Sections 13(a), 13(c), 14 or 15(d) of the Exchange Act after the date of this Offer to Purchase modifies or supersedes such statement. Any statement so modified or superseded shall not be deemed, except as so modified or superseded, to constitute a part of this Offer to Purchase. Subject to the foregoing, all information appearing in this Offer to Purchase is qualified in its entirety by the information appearing in the documents incorporated by reference.

The Company will provide without charge to each person to whom this Offer to Purchase is delivered, upon the request of such person, a copy of any or all the documents incorporated herein by reference, other than exhibits to such documents (unless such exhibits are specifically incorporated by reference into such documents). Requests for such documents should be directed to Investor Relations, Tyco International (US), Inc., 9 Roszel Road, Princeton, New Jersey 08540, telephone: (609) 720-4200.

### AVAILABLE INFORMATION

Tyco is subject to the periodic reporting requirements of the Exchange Act, and in accordance therewith files reports and other information with the Commission. Such reports and other information filed with the Commission by Tyco may be inspected and copied at the public reference facilities maintained by the Commission at 100 F Street, Room 1580, Washington, D.C. 20549. Copies of such material can be obtained at prescribed rates from the Public Reference Section of the Commission at 100 F Street, Room 1580, Washington, D.C. 20549. Such material also may be accessed electronically at the Commission's internet website located at http://www.sec.gov. Statements made in this Offer to Purchase concerning the provisions of any contract, agreement, indenture, security document or other document referred to herein are not necessarily complete. With respect to each such statement concerning a contract, agreement, indenture, security document or other document filed with the Commission, reference is made to such filing for a more complete description of the matter involved, and each such statement is qualified in its entirety by such reference.

### STATEMENT REGARDING FORWARD-LOOKING INFORMATION

Certain statements in this Offer to Purchase and the documents incorporated in this Offer to Purchase by reference constitute "forward-looking statements." All forward-looking statements involve risks and uncertainties. All statements contained or incorporated by reference herein that are not clearly historical in nature are forward-looking, and the words "anticipate," "believe," "expect," "estimate," "project" and similar expressions are generally intended to identify forward-looking statements. Any forward-looking statement contained herein, in press releases, written statements or other documents filed with the Commission, or in Tyco's communications and discussions with investors and analysts in the normal course of business through meetings, web casts, phone calls and conference calls, regarding expectations with respect to sales, earnings, cash flows, operating efficiencies, product expansion, backlog, the consummation and benefits of acquisitions and divestitures, the Proposed Separation or other matters, as well as financings and repurchases of debt or equity securities, are subject to known and unknown risks, uncertainties and contingencies. Many of these risks, uncertainties and contingencies are beyond the Company's or Tyco's control, and may cause actual results, performance or achievements to differ materially from anticipated results, performance or achievements.

These forward-looking statements speak only as of the date of this Offer to Purchase. Except as required by applicable law, the Company and Tyco expressly disclaim any obligation or undertaking to release publicly any updates or revisions to any forward-looking statements contained herein to reflect any change in the Company's or Tyco's expectations with regard thereto or any change in events, conditions or circumstances on which any such statement is based.

THIS OFFER TO PURCHASE (INCLUDING THE ANNEXES HERETO) AND THE LETTER OF TRANSMITTAL CONTAIN IMPORTANT INFORMATION THAT SHOULD BE READ CAREFULLY AND IN THEIR ENTIRETY BEFORE ANY DECISION IS MADE WITH RESPECT TO THE TENDER OFFERS AND THE CONSENT SOLICITATIONS.

NO DEALER, SALESPERSON OR OTHER PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR TO MAKE ANY REPRESENTATION NOT CONTAINED IN THIS OFFER TO PURCHASE AND, IF GIVEN OR MADE, SUCH INFORMATION OR REPRESENTATION MAY NOT BE RELIED UPON AS HAVING BEEN AUTHORIZED BY THE COMPANY, TYCO, THE INFORMATION AGENT, THE DEPOSITARY, THE DEALER MANAGERS OR THE SOLICITATION AGENTS.

## TABLE OF CONTENTS

Page

IMPORTANT INFORMATION.................................................................................................. v
DOCUMENTS INCORPORATED BY REFERENCE ........................................................... v
AVAILABLE INFORMATION .............................................................................................. vi
STATEMENT REGARDING FORWARD-LOOKING INFORMATION ............................ vi
SUMMARY ............................................................................................................................... 1
INFORMATION CONCERNING THE COMPANY, TIFSA AND TYCO ......................... 6
THE PROPOSED SEPARATION .......................................................................................... 6
PURPOSE AND BACKGROUND OF THE TENDER OFFERS AND CONSENT SOLICITATIONS ....... 7
CERTAIN CONSIDERATIONS .............................................................................................. 7
THE TENDER OFFERS AND CONSENT SOLICITATIONS .............................................. 8
PROPOSED AMENDMENTS TO THE INDENTURES...................................................... 9
EXPIRATION DATE; EXTENSION; AMENDMENT; TERMINATION........................... 11
ACCEPTANCE OF NOTES FOR PURCHASE; PAYMENT FOR NOTES AND CONSENTS............ 11
PROCEDURES FOR TENDERING NOTES AND DELIVERING CONSENTS .................. 13
WITHDRAWAL OF TENDERS AND REVOCATION OF CONSENTS; ABSENCE OF APPRAISAL RIGHTS ....... 15
CONDITIONS OF THE TENDER OFFERS AND CONSENT SOLICITATIONS ............... 16
MARKET AND TRADING INFORMATION........................................................................ 18
DESCRIPTION OF NOTES .................................................................................................... 18
MATERIAL UNITED STATES FEDERAL INCOME TAX CONSIDERATIONS ............ 19
DEALER MANAGERS; SOLICITATION AGENTS; INFORMATION AGENT; DEPOSITARY ....... 21
MISCELLANEOUS.................................................................................................................. 22
ANNEX A – THE 1998 PROPOSED AMENDMENTS ........................................................ A-1
ANNEX B – THE 2003 PROPOSED AMENDMENTS ........................................................ B-1
ANNEX C – FORMULA FOR CALCULATING THE TOTAL CONSIDERATION ........... C-1
ANNEX D – HYPOTHETICAL CALCULATIONS OF TOTAL CONSIDERATION .......... D-1

| Date | Calendar Date | Event |
|------|---------------|-------|
| Early Consent Date.................................. | The Early Consent Date will be 5:00 p.m., New York City time, on Thursday, May 10, 2007. | Holders tendering Notes after the Early Consent Date will receive only the Purchase Price for their Notes; they will not receive the Early Consent Payment. There will be no withdrawal rights after the Early Consent Date. |
| Price Determination Date.................... | The Company expects that this date will be 2:00 p.m., New York City time, on Tuesday, May 22, 2007, which is two business days prior to the Expiration Date. | The Dealer Managers will determine the Reference Yield and calculate the Total Consideration for each of the Notes. The Company will issue a press release announcing the Total Consideration for each of the Notes. |
| Expiration Date.............................. | The Tender Offers will expire at 12:00 midnight, New York City time, on Thursday, May 24, 2007, unless extended or earlier terminated. | The last day for Notes to be tendered pursuant to the Tender Offers. |
| Payment Date................................. | In respect of all Notes validly tendered and not withdrawn on or prior to 12:00 midnight New York City time, on the Expiration Date, the Company expects the Payment Date will occur promptly after the Expiration Date. | The Company will deposit with the Depositary an amount of cash sufficient to pay the aggregate Total Consideration, or the Purchase Price, as the case may be, of all Notes tendered in the Tender Offers, and accrued and unpaid interest to, but not including, the Payment Date. |

## SUMMARY

*The following summarizes in a question-and-answer format certain material terms of the Tender Offers and the Consent Solicitations. You should carefully read this entire Offer to Purchase and the Letter of Transmittal, as well as all schedules, annexes, appendices and related documents for more detailed information and instructions.*

### Who is offering to buy my Notes and soliciting my Consent?

The Company, the issuer of the Notes, is offering to purchase the Notes and requesting Consents to the Proposed Amendments.

### What securities are the subject of the Consent Solicitations and the Tender Offers?

The Company is offering to purchase, and is requesting Consents from the Holders of, all of its outstanding 6.0% notes due 2013(CUSIP No. 902118BK3), 6.125% notes due 2008 (CUSIP No. 902118AM0), 6.125% notes due 2009 (CUSIP No. 902118AJ7), 6.75% notes due 2011 (CUSIP No. 902118AY4), 6.375% notes due 2011 (CUSIP No. 902118BC1), 7.0% notes due 2028 (CUSIP No. 902118AC2) and 6.875% notes due 2029 (CUSIP No. 902118AK4). The 1998 Notes were issued under and are governed by the 1998 Indenture, dated as of June 9, 1998 (as supplemented from time to time) among the Company, Tyco, as guarantor, and the Trustee. The 2003 Notes were issued under and are governed by the 2003 Indenture, dated as of November 12, 2003, as amended by the First Supplemental Indenture, dated as of November 12, 2003, among the Company, Tyco and the Trustee. As of the date of this Offer to Purchase, there was approximately $1 billion outstanding principal amount of 2003 Notes and an aggregate of approximately $4.6 billion principal amount of the 1998 Notes.

### What is the purpose of the Tender Offers and the Consent Solicitations?

The principal purpose of the Tender Offers is to acquire all of the outstanding Notes in connection with a refinancing of the Company's outstanding debt. See "Purpose and Background of the Tender Offer and Consent Solicitation" and "The Proposed Separation."

The principal purpose of the Consent Solicitations is to obtain your Consent to the Proposed Amendments.

### What are the 1998 Indenture Amendments?

The 1998 Indenture Amendments would amend existing Article Eight of the 1998 Indenture entitled "Consolidation, Merger, Sale or Conveyance" to clarify the application of Article Eight to the Proposed Separation. As discussed in greater detail under "The Proposed Separation," Article Eight of the 1998 Indenture will be clarified to confirm that the transfer of assets by the Company to Tyco Electronics and Covidien will not constitute the transfer of all or substantially all of the Company's or Tyco's assets, that the transfer of assets by the Company to TIFSA, will constitute the transfer of substantially all of the Company's assets (but not all or substantially all of Tyco's assets), that upon such transfer TIFSA will become the successor to the Company under the Indenture (at which time the Company will be discharged from all obligations and covenants under the Indenture and the Notes and may be liquidated and dissolved), and that the distribution to Tyco's shareholders of its electronics and healthcare businesses will not constitute the transfer of all or substantially all of Tyco's assets. The 1998 Consent Solicitation also seeks the Consents of Holders of Notes to the execution by the Company, Tyco and the Trustee of the 1998 Supplemental Indenture containing the foregoing amendments. See "The Proposed Separation" and "Proposed Amendments to the Indenture."

### What are the 2003 Indenture Amendments?

The 2003 Indenture Amendments would amend existing Article X of the 2003 Indenture entitled "Successor Corporation" to clarify the application of Article X to the Proposed Separation. As discussed in greater detail under "The Proposed Separation," Article X of the 2003 Indenture will be clarified to confirm that the transfer of assets by the Company to Tyco Electronics and Covidien will not constitute the transfer of all or substantially all of the Company's or Tyco's assets, that the transfer of assets by the Company to TIFSA will constitute the transfer of substantially all of the

1

Company's assets (but not all or substantially all of Tyco's assets), that upon such transfer TIFSA will become the successor to the Company under the Indenture (at which time the Company will be discharged from all obligations and covenants under the Indenture and the Notes and may be liquidated and dissolved), and that the distribution to Tyco's shareholders of its electronics and healthcare businesses will not constitute the transfer of all or substantially all of Tyco's assets. The 2003 Consent Solicitation also seeks the Consents of Holders of Notes to the execution by the Company, Tyco and the Trustee of the 2003 Supplemental Indenture containing the foregoing amendments. See "The Proposed Separation" and "Proposed Amendments to the Indenture."

### *When do the Proposed Amendments to the Indentures become effective?*

The 1998 Indenture Amendments will not become effective unless the Company receives the Consent of Holders of at least a majority of the 1998 Outstanding Amount voting as one class. The 2003 Indenture Amendments will not become effective unless the Company receives the Consent of Holders of at least a majority of the 2003 Outstanding Amount. See "Conditions of the Tender Offers and Consent Solicitations."

If the Requisite Consents are obtained for either of the Consent Solicitations, the Company and Tyco intend to execute the Supplemental Indentures containing the relevant Proposed Amendments on, or as soon as practicable after, the Early Consent Date. Each of the Supplemental Indentures will become effective upon execution of such Supplemental Indenture by the Company, Tyco and the Trustee, with such Proposed Amendments becoming operative on the date the Company notifies the Trustee and the Depositary that an amount of Notes representing the Requisite Consents for such Proposed Amendments has been accepted for purchase. In the event that the 1998 Notes or 2003 Notes are not accepted for purchase by the Company for any reason, the applicable Indenture will remain in effect in its present form.

### *What happens to my Notes if the Requisite Consents are obtained but I do not validly tender my Notes?*

Any Notes not tendered and purchased pursuant to the Tender Offers will remain outstanding. As a result of the consummation of the Tender Offers, the aggregate principal amount of Notes that remains outstanding is expected to be significantly reduced, which may adversely affect the liquidity of and, consequently, the market prices for, any Notes that remain outstanding after consummation of the Tender Offers. See "Certain Considerations — Limited Trading Market." If the transactions described under "The Proposed Separation" occur as anticipated, any such remaining Notes will become obligations of TIFSA, guaranteed by Tyco, and the Company will be released from its obligations on the Notes.

### *What happens if the Requisite Consents are obtained with respect to only the 2003 Notes or only the 1998 Notes?*

The 2003 Tender Offer and the 1998 Tender Offers are not conditioned on each other. The 2003 Tender Offer is conditioned upon the receipt of the 2003 Requisite Consents and the 1998 Tender Offer is conditioned upon receipt of the 1998 Requisite Consents. The Company reserves the right to waive any and all conditions of either of the Tender Offers and the Consent Solicitations on or prior to the Expiration Date. See "Conditions of the Tender Offers and Consent Solicitations."

### *What price will I receive for my Notes if I validly tender them to you and for my Consents if I deliver them to you?*

The Company is offering to pay you the Total Consideration for your Notes, if you validly tender and do not validly withdraw your Notes before the Early Consent Date. The Total Consideration for each of the Notes will be calculated as described under "The Tender Offers and the Consent Solicitations." Annex C contains the formula to be used in calculating the Total Consideration for each of the Notes, and Annex D contains a hypothetical calculation of the Total Consideration for each of the Notes.

If you validly tender and do not validly withdraw your Notes, you will be deemed to have given your Consent; you may not do one without the other. The Total Consideration includes an amount, which is referred to as the Early Consent Payment, which is equal to $30.00 per $1,000 principal amount of Notes and is payable only to Holders who validly tender and do not validly withdraw their Notes prior to the Early Consent Date. If, *but only if*, you validly tender

your Notes and do not validly withdraw your Notes before 5:00 p.m., New York City time, on May 10, 2007, which is the Early Consent Date, and the applicable Tender Offers are consummated, you will be paid the Total Consideration for your Notes. If you validly tender your Notes after the Early Consent Date but before the Expiration Date, you will be deemed to have given your consent, but you will be paid only the Purchase Price as indicated under "The Tender Offers and Consent Solicitations." See "The Tender Offers and Consent Solicitations — Total Consideration and Purchase Price."

### *If I validly tender any Notes, will I be paid accrued interest?*

Yes, but only if the applicable Tender Offers are consummated. In addition to the Total Consideration or Purchase Price, as applicable, the Company will pay all accrued and unpaid interest on all Notes validly tendered and accepted for payment pursuant to the Tender Offers up to, but not including, the Payment Date.

### *May I validly tender my Notes without delivering my Consent, or vice versa?*

No. Holders of Notes may only give a Consent in respect of such Notes by validly tendering them into the Tender Offers. A valid tender of your Notes will be deemed to be a valid delivery of your Consent. To receive the Total Consideration, which includes the Early Consent Payment, you must validly tender (and not have validly withdrawn) your Notes by 5:00 p.m., New York City time, on Thursday, May 10, 2007.

### *Do you have the resources to pay for all of the outstanding Notes?*

The Tender Offers are part of the Company's plan to refinance its debt in connection with the Proposed Separation. The Company has entered into the $10.0 billion Bridge Loan Facilities, a portion of which will be used to pay for your validly tendered Notes.

### *What are the significant conditions to the Tender Offers?*

Each of the Tender Offers is conditioned on, among other things, the satisfaction of the Financing Condition, the Requisite Consent Condition, the Supplemental Indenture Condition, and the General Conditions. The Company reserves the right to waive any and all conditions of either of the Tender Offers and the Consent Solicitations on or prior to the Expiration Date. See "Conditions of the Tender Offers and Consent Solicitations."

### *When do the Consent Solicitations and Tender Offers expire?*

The Consent Solicitations will expire at 5:00 p.m., New York City time, on May 10, 2007, unless extended or earlier terminated. The Tender Offers will expire at 12:00 midnight, New York City time, on May 24, 2007, unless extended or earlier terminated.

### *When is the Early Consent Date?*

To receive the Total Consideration, which includes the Early Consent Payment, you must validly tender (and not have validly withdrawn) your Notes by 5:00 p.m., New York City time, on May 10, 2007.

### *Can the Tender Offers and the Consent Solicitations or the Early Consent Date be extended, and if so, how will I be notified?*

Yes, the Company has the right to extend the Expiration Date and the Early Consent Date at any time by giving oral or written notice to Global Bondholder Services Corporation, the Depositary, and such extension may apply to one or both of the Tender Offers and Consent Solicitations. The Company will make a public announcement if it extends the Expiration Date or the Early Consent Date no later than 9:00 a.m., New York City time, on the first business day after the previously scheduled time. Although the Company may choose to issue an announcement of this type in some other manner, it will have no obligation to do so other than by issuing a release to the *Dow Jones News Service*, *Business Wire*, or another similar service, and to DTC. See "Acceptance of Notes for Purchase; Payment for Notes and Consents."

*When will I receive payment for my validly tendered Notes and delivered Consents?*

Payment of the Total Consideration, or the Purchase Price, as applicable, will be made on the Payment Date, which will promptly follow the Expiration Date, assuming the conditions to the relevant Tender Offer and Consent Solicitation are satisfied or waived and the applicable Notes are accepted for purchase. See "Acceptance of Notes for Purchase; Payment for Notes."

*May I revoke my Consent or withdraw my tendered Notes?*

Tender of Notes pursuant to the Tender Offers may be validly withdrawn and Consents delivered pursuant to the Consent Solicitations may be validly revoked at any time prior to the Early Consent Date by following the procedures described herein. A valid withdrawal of tendered Notes prior to the Early Consent Date will be deemed a valid revocation of the related Consent. A Holder may not revoke a Consent except by validly withdrawing such Holder's previously tendered Notes. In addition, a Holder may not withdraw validly tendered Notes or revoke Consents after the Early Consent Date. Any Notes validly tendered prior to the Early Consent Date that are not validly withdrawn prior to the Early Consent Date and any Notes validly tendered after the Early Consent Date may not be withdrawn. To withdraw your tendered Notes and revoke your Consent, please follow the instructions under "Withdrawal of Tenders and Revocation of Consents; Absence of Appraisal Rights."

*What are the tax consequences to me if I validly tender my Notes and deliver my Consent?*

Please see "Material United States Federal Income Tax Considerations" for a summary of certain United States federal income tax considerations applicable to the Tender Offers and Consent Solicitations.

*How should I validly tender my Notes and deliver my related Consent?*

You may tender a Note and deliver a related Consent only by validly tendering such Note into the Tender Offers. The manner in which you may validly tender your Notes will depend on the manner in which you hold the Notes:

- if you hold your Notes in book-entry form, contact your Custodian if you desire to tender Notes and deliver Consents; or

- if you hold physical certificates evidencing the Notes, complete and sign the enclosed Letter of Transmittal (or a facsimile thereof) in accordance with the instructions set forth therein, have the signature thereon guaranteed (if required by Instruction 3 of the Letter of Transmittal), and deliver such manually signed Letter of Transmittal (or a facsimile thereof), together with the certificates evidencing the Notes being tendered and any other required documents, to the Depositary.

Only registered holders of Notes are entitled to tender Notes and deliver Consents. As noted above, a beneficial owner whose Notes are registered in the name of a Custodian must contact the Custodian if such beneficial owner desires to tender Notes and deliver Consents with respect to such registered Notes.

*Are you making any recommendation about the Tender Offers and the Consent Solicitations?*

No. Neither the Company nor Tyco expresses any opinion and both remain neutral with respect to whether Holders should tender Notes in response to the Tender Offers and deliver Consents in response to the Consent Solicitations. The Trustee, the Dealer Managers, the Solicitation Agents, the Depositary and the Information Agent likewise make no recommendation. Holders should determine whether to tender Notes and deliver Consents based upon their own assessment of market value, liquidity needs and investment objectives.

*Whom can I contact if I want more information?*

Any questions or requests for assistance concerning the Tender Offers and the Consent Solicitations may be directed to either of the Dealer Managers/Solicitation Agents at their respective addresses and telephone numbers set forth on the back cover of this Offer to Purchase. Requests for additional copies of this Offer to Purchase and the Letter of Transmittal may be directed to the Information Agent at the address and telephone numbers set forth on the back cover of this Offer to Purchase. Requests for copies of the Indentures and the forms of the Supplemental Indentures may also be directed to the Information Agent. Beneficial owners may also contact their Custodian for assistance concerning the Tender Offers and the Consent Solicitations.

## INFORMATION CONCERNING THE COMPANY,
## TIFSA AND TYCO

The Company was formed as a Luxembourg company on March 30, 1998, as a wholly owned subsidiary of Tyco. The Company is a holding company whose only business is to own indirectly a substantial portion of the operating subsidiaries of Tyco and to perform treasury operations for Tyco companies. Otherwise, it conducts no independent business.

Tyco is a diversified manufacturing and service company that, through its subsidiaries:

* designs, manufactures and distributes electrical and electronic components and related solutions;

* designs, manufactures, installs, monitors and services electronic security and fire protection systems;

* designs, manufactures and distributes medical devices and supplies, imaging agents, pharmaceuticals and adult incontinence and infant care products; and

* designs, manufactures, distributes and services engineered products, including industrial valves and controls, as well as steel tubular goods, and provides consulting, engineering and construction management and operating services.

Tyco maintains its registered and principal executive offices at 90 Pitts Bay Road, Second Floor, Pembroke HM 08, Bermuda. The executive offices of Tyco's principal United States subsidiaries are located at 9 Roszel Road, Princeton, NJ 08540. The telephone number there is (609) 720-4200. The Company, a Luxembourg company, maintains its registered and principal executive offices at 58, rue Charles Martel, L-2134 Luxembourg. The Company's telephone number is (352) 464-340-1. TIFSA is a newly-formed holding company established in connection with the spin-offs of the Company's healthcare and electronics businesses to directly and indirectly own Tyco's fire and security and engineered products and services operating subsidiaries, to issue new notes and to perform Tyco's treasury operations. Otherwise, it conducts no independent business. TIFSA's registered and principal offices are located at 58, rue Charles Martel, L-2134 Luxembourg. Its telephone number at that address is (352) 464-340-1.

## THE PROPOSED SEPARATION

In January 2006, Tyco announced that its board of directors had approved a plan (the "Proposed Separation") to separate Tyco into three independent, publicly-traded companies: one for Tyco's electronics businesses (Tyco Electronics), one for its healthcare businesses (Covidien), with the third (Tyco) continuing operations with its fire and security and engineered products and services businesses. The Proposed Separation will occur through tax-free distributions to Tyco's shareholders as of a record date that Tyco will set of all of the common shares of Tyco Electronics and Covidien, two subsidiaries that hold or will hold, through their respective subsidiaries, all of the assets and liabilities of the electronics and healthcare businesses, respectively. The fire and security and engineered products and services businesses will remain with Tyco after the distribution.

Prior to the distribution to its shareholders but after completion of these Tender Offers and similar offers to purchase certain of the Company's other outstanding public indebtedness, and as necessary steps to enable Tyco to make the distribution, the Company will contribute the assets and liabilities relating to its electronics businesses to Tyco Electronics, and the assets and liabilities relating to its healthcare businesses to Covidien. The assets and liabilities relating to its fire and security and engineered products and services businesses will be contributed to TIFSA, and TIFSA will assume the liabilities of the Company under its indentures and under any of the Company's public debt that remains outstanding upon completion of the Tender Offers and the similar offers referred to above. After the contribution of all of its assets and liabilities, the Company will liquidate and, as a final liquidating distribution, will distribute to Tyco all of the outstanding shares of capital stock of TIFSA, Tyco Electronics and Covidien. Tyco then will distribute the shares of Tyco Electronics and Covidien to its shareholders.

The amendments to the indentures that are the subject of the Consent Solicitations would clarify:

- with respect to the 1998 Indenture, the application of Article Eight to the Proposed Separation by confirming, for purposes of Article Eight, that the contribution of assets to Tyco Electronics and Covidien will not constitute a sale or conveyance of all or substantially all of Tyco's or the Company's assets, that the contribution to TIFSA of the assets relating to Tyco's fire and security and engineered products and services businesses will constitute the sale or conveyance of substantially all of the Company's (but not Tyco's) assets to TIFSA, that TIFSA will be the successor obligor to the Company under the Indenture and that the distribution to Tyco's shareholders of all of the shares of capital stock of Tyco Electronics and Covidien will not constitute the sale or conveyance of all or substantially all of Tyco's assets; and

- with respect to the 2003 Indenture, the application of Article X to the Proposed Separation by confirming, for purposes of Article X, that the contribution of assets to Tyco Electronics and Covidien will not constitute a transfer of substantially all of Tyco's or the Company's assets, that the contribution to TIFSA of the assets relating to Tyco's fire and security and engineered products and services businesses will constitute the transfer of substantially all of the Company's (but not Tyco's) assets to TIFSA, that TIFSA will be the successor obligor to the Company under the Indenture, and that the distribution to Tyco's shareholders of all of the shares of capital stock of Tyco Electronics and Covidien will not constitute the transfer of all or substantially all of Tyco's assets.

## PURPOSE AND BACKGROUND OF THE TENDER OFFERS AND CONSENT SOLICITATIONS

The principal purpose of the Tender Offers and the Consent Solicitations is to acquire all of the outstanding Notes and to clarify the application of Article Eight of the 1998 Indenture and Article X of the 2003 Indenture to the Proposed Separation.

Following the consummation of the Tender Offers and the Consent Solicitations, if any Notes remain outstanding, the Company or its affiliates, from time to time, may acquire Notes through open market purchases, privately negotiated transactions, tender offers, exchange offers, redemptions or otherwise, upon such terms and at such prices as it may determine, which may be more or less than the price paid pursuant to the Tender Offers and may involve cash or other consideration.

The total amount of funds required to purchase all of the Notes sought pursuant to the Tender Offers, to make Early Consent Payments with respect to all of the Notes, to pay any and all accrued and unpaid interest on the Notes, and to pay all fees and expenses in connection therewith is expected to be approximately $7.3 billion, assuming all outstanding Notes are validly tendered prior to the Early Consent Date. The Company intends to obtain these funds primarily from the Bridge Loan Facilities.

## CERTAIN CONSIDERATIONS

In deciding whether to participate in the Tender Offers and the Consent Solicitations, in addition to the other information contained or incorporated by reference in this Offer to Purchase, each Holder should consider carefully and in its entirety the following:

### Limited Trading Market

To the extent that Notes are traded, prices for the Notes may fluctuate greatly depending on the trading volume and the balance between buy and sell orders. To the extent that Notes are tendered and accepted in the Tender Offers, the trading market for the Notes would become more limited. A debt security with a smaller outstanding principal amount available for trading (a smaller "float") may command a lower price than would a comparable debt security with a greater float. Therefore, the market price for Notes not tendered or not purchased may be affected adversely to the extent that the principal amount of Notes tendered pursuant to the Tender Offers reduces the float. The reduced float also may tend to make the trading price more volatile. Holders of Notes not tendered or not purchased may attempt to obtain quotations for their Notes from their brokers; however, there can be no assurance that any trading market will exist for the Notes following consummation of the Tender Offers. The extent of the public market for the Notes following consummation of the Tender Offers will depend upon, among other things, the remaining outstanding principal amount of Notes after the Tender Offers, the number of Holders of such Notes remaining at such time and the interest in maintaining a market in the Notes on the part of securities firms and other factors. The Company does not intend to create or sustain a market for any Notes that remain outstanding following consummation of the Tender Offers.

**Effect of the Proposed Amendments on Unpurchased Notes**

The Proposed Amendments will not relieve the Company or TIFSA, as the case may be, from its obligation to make scheduled payments of principal and accrued interest on the Notes not purchased pursuant to the Tender Offers in accordance with the terms of the Indenture as currently in effect. If the transactions described under "The Proposed Separation" occur as anticipated, any such remaining Notes will become obligations of TIFSA, guaranteed by Tyco, and the Company will be released from its obligations on the Notes.

## THE TENDER OFFERS AND CONSENT SOLICITATIONS

The Offer Documents contain important information that should be read carefully and in their entirety prior to making any decision with respect to the Tender Offers and the Consent Solicitations.

**Introduction**

The Company hereby offers, upon the terms and subject to the conditions set forth in the Offer Documents, to purchase for cash any and all of the outstanding Notes that are validly tendered (and not validly withdrawn) to the Depositary prior to the Expiration Date for the consideration described below. The Company will accept tenders of Notes in principal amounts of $1,000 or integral multiples thereof.

**Total Consideration**

The Company is offering to purchase for cash, on the terms and subject to the conditions described in the Offer Documents, any and all of the outstanding Notes. The Dealer Managers will calculate the Total Consideration, which includes the Early Consent Payment, for each of the Notes, as the present value of the cash payments of interest and principal due on such Notes, based on a yield to maturity (the "Cash Flow Yield") for such Notes equal to the yield to maturity of the UST Reference Security for such Notes calculated as described below (the "Reference Yield" for such Notes) plus the fixed spread for such Notes indicated in the table on the cover page.

Specifically, the Dealer Managers will calculate the Total Consideration for each of the Notes equal to the value per $1,000 principal amount of such Notes, assuming those Notes will be repaid in full at maturity, of all remaining payments of principal thereof and interest thereon to be made through maturity, discounted to the date of payment of the Total Consideration, at a rate equal to the Cash Flow Yield for such Notes (in a manner consistent with the methodology underlying the formula for the Total Consideration set forth in Annex C), minus accrued and unpaid interest per $1,000 principal amount of such Notes to, but excluding, the date of payment of the Total Consideration. In addition, each Holder will receive any and all accrued and unpaid interest on such $1,000 principal amount up to, but not including, the Payment Date.

The Dealer Managers will calculate the Reference Yield used to determine the Total Consideration for each of the Notes in accordance with standard market practice based on the bid-side price of the UST Reference Security for such Notes as displayed on Bloomberg Bondtrader Pages PX1 through PX6 as of 2:00 p.m., New York City time, two business days prior to the Expiration Date (or, if the dealer managers determine that such pages are not operational or are displaying inaccurate information at that time, the bid-side price of such UST Reference Security as determined at or around 2:00 p.m., New York City time, on such date by such other means as the Dealer Managers may consider to be appropriate under the circumstances). The Company will issue a press release specifying the final Reference Yields promptly after they are calculated.

The Total Consideration for each of the Notes includes an Early Consent Payment of $30.00 per $1,000 principal amount of Notes payable only to Holders who validly tender (and do not validly withdraw) their Notes prior to the Early Consent Date. Upon the terms and subject to the conditions set forth in this Offer to Purchase, the Company will pay the Total Consideration to Holders who validly tender (and do not validly withdraw) their Notes prior to the Early Consent Date. Holders who tender their Notes after the Early Consent Date and prior to the Expiration Date will receive only the Purchase Price as described above. Payment of the Total Consideration or the Purchase Price, as applicable, will be made promptly after the Expiration Date, if such Notes are accepted for payment.

8

Payment for Notes validly tendered (and not validly withdrawn) and accepted for payment will be made by the deposit of immediately available funds by the Company with the Depositary. The Depositary will act as agent for the tendering Holders for the purpose of receiving payments from the Company and transmitting such payments to Holders.

**Early Consent Payment**

Upon the terms and subject to the conditions of the Consent Solicitations (including, if either of the Consent Solicitations are extended or amended, the terms and conditions of any such extension or amendment), the Company is soliciting from Holders Consents with respect to the Proposed Amendments. The Total Consideration includes the Early Consent Payment, and Holders who tender their Notes after the Early Consent Date will, upon purchase of their Notes by the Company, receive only the Purchase Price, which equals the Total Consideration minus the Early Consent Payment. Holders who desire to tender their Notes pursuant to the Tender Offers and receive the Total Consideration (i.e., the Purchase Price and the Early Consent Payment) are required to tender their Notes and deliver their Consents to the Proposed Amendments on or prior to the Early Consent Date. If a Holder's Notes are not validly tendered pursuant to the Tender Offers on or prior to the Early Consent Date such Holder will not receive an Early Consent Payment, even though, assuming the Requisite Consents are obtained and the Supplemental Indentures are executed, the Proposed Amendments will be effective and operative as to any of such Holder's Notes that are not purchased in the Tender Offers. See "Proposed Amendments to the Indenture."

The Purchase Price and, if applicable, the Early Consent Payment will be paid on the Payment Date assuming the Notes are accepted for purchase and the satisfaction or waiver of the conditions to the Tender Offers and Consent Solicitations. **HOLDERS WHO VALIDLY TENDER (AND DO NOT VALIDLY WITHDRAW) THEIR NOTES WILL BE DEEMED BY SUCH TENDER TO HAVE DELIVERED THEIR CONSENTS AND, IF SUCH TENDER IS AFTER THE EARLY CONSENT DATE, WILL RECEIVE THE PURCHASE PRICE, BUT ARE NOT ENTITLED TO RECEIVE THE EARLY CONSENT PAYMENT.**

Tenders of Notes pursuant to the Tender Offers may be validly withdrawn and Consents delivered pursuant to the Consent Solicitations may be validly revoked at any time prior to the Early Consent Date by following the procedures described herein. A Holder may not validly revoke a Consent except by validly withdrawing such Holder's previously tendered Notes, and the valid withdrawal of a Holder's previously tendered Notes will constitute the concurrent valid revocation of such Holder's Consent. Any Notes tendered on or prior to the Early Consent Date that are not validly withdrawn prior to the Early Consent Date may not be withdrawn thereafter. A Holder who validly withdraws previously tendered Notes will not receive the Purchase Price or an Early Consent Payment, unless such Notes are retendered on or prior to the Early Consent Date (in which case the Holder will receive the Total Consideration) or the Expiration Date (in which case the Holder will be entitled to receive the Purchase Price only).

The Company has reserved the right to extend, amend or terminate the Tender Offers and the Consent Solicitations. See "Expiration Date; Extension; Amendment; Termination."

## PROPOSED AMENDMENTS TO THE INDENTURES

**Proposed Amendments to the 1998 Indenture**

The Company is soliciting the Consents of the Holders of the 1998 Notes to the 1998 Indenture Amendments substantially in the form of Annex A hereto and to the execution and delivery by the Company and Tyco of the 1998 Supplemental Indenture to effect the 1998 Indenture Amendments. All statements herein regarding the substance of any provision of the 1998 Indenture Amendments and the 1998 Indenture are qualified in their entirety by reference to the language set forth in Annex A and to the 1998 Indenture. Initially capitalized terms used below that are not otherwise defined herein have the meanings assigned to them in the 1998 Indenture. Copies of the 1998 Indenture are available upon request from the Information Agent at the address and telephone number set forth on the back cover of this Offer to Purchase.

The 1998 Indenture Amendments would amend Article Eight of the 1998 Indenture to clarify the applicability of Article Eight to the Proposed Separation. While Tyco and the Company believe that the various steps in the Proposed Separation are not prohibited by the 1998 Indenture, Tyco and the Company believe it is desirable, prior to completing the Proposed Separation but after completion of the Tender Offers, to eliminate any uncertainty by amending Article Eight of the 1998 Indenture to clarify that:

- the contribution of the Company's assets and liabilities relating to Tyco's electronics businesses to Tyco Electronics and the Company's assets and liabilities relating to Tyco's healthcare businesses to Covidien will not constitute the sale or conveyance of all or substantially all of Tyco's or the Company's assets;

- the contribution of the Company's assets and liabilities relating to Tyco's fire and security and engineered products and services business to TIFSA will constitute the conveyance of substantially all of the Company's assets (but not all or substantially all of Tyco's assets) to TIFSA;

- upon compliance with the conditions precedent set forth in Article Eight, TIFSA will be the successor obligor to the Company under the Indenture and the Notes and the Company will be discharged from its obligations under the Indenture and the Notes and may be liquidated and dissolved; and

- the distribution to Tyco's shareholders of all of the shares of capital stock of Tyco Electronics and Covidien will not constitute the sale or conveyance of all or substantially all of Tyco's assets.

**The 2003 Indenture Amendments**

The Company is soliciting the Consents of the Holders of the 2003 Notes to the 2003 Indenture Amendments substantially in the form of Annex B hereto and to the execution and delivery by the Company and Tyco of the 2003 Supplemental Indenture to effect the 2003 Indenture Amendments. All statements herein regarding the substance of any provision of the 2003 Indenture Amendments and the 2003 Indenture are qualified in their entirety by reference to the language set forth in Annex B and to the 2003 Indenture. Initially capitalized terms used below that are not otherwise defined herein have the meanings assigned to them in the 2003 Indenture. Copies of the 2003 Indenture are available upon request from the Information Agent at the address and telephone number set forth on the back cover of this Offer to Purchase.

The 2003 Indenture Amendments would amend Article X of the 2003 Indenture to clarify the applicability of Article X to the Proposed Separation. While Tyco and the Company believe that the various steps in the Proposed Separation are not prohibited by the 2003 Indenture, Tyco and the Company believe it is desirable, prior to completing the Proposed Separation but after completion of the Tender Offers, to eliminate any uncertainty by amending Article X of the 2003 Indenture to clarify that:

- the contribution of the Company's assets and liabilities relating to Tyco's electronics businesses to Tyco Electronics and the Company's assets and liabilities relating to Tyco's healthcare businesses to Covidien will not constitute the sale or conveyance of all or substantially all of Tyco's or the Company's assets;

- the contribution of the Company's assets and liabilities relating to Tyco's fire and security and engineered products and services business to TIFSA will constitute the conveyance of substantially all of the Company's assets (but not all or substantially all of Tyco's assets) to TIFSA;

- upon compliance with the conditions precedent set forth in Article X, TIFSA will be the successor obligor to the Company under the Indenture and the Notes and the Company will be discharged from its obligations under the Indenture and the Notes and may be liquidated and dissolved; and

- the distribution to Tyco's shareholders of all of the shares of capital stock of Tyco Electronics and Covidien will not constitute the transfer of all or substantially all of Tyco's assets.

**General**

The Proposed Amendments will be set forth in the Supplemental Indentures. The Supplemental Indentures will be executed on, or as soon as practicable after, the Early Consent Date by the Company, Tyco and the Trustee if the Requisite Consents have been obtained.

The Supplemental Indentures will become effective upon execution by the Company, Tyco and the Trustee, but will provide that the Proposed Amendments will not become operative until the date the Company notifies the Trustee and the Depositary that an amount of Notes representing the Requisite Consents with respect to such Proposed Amendments has been accepted for purchase. The Indentures will remain in effect, without giving effect to the Proposed Amendments,

10

until the Proposed Amendments become operative. The 1998 Indenture Amendments and the 2003 Indenture Amendments are each being presented as separate and complete proposals. Consequently, the delivery of a Consent by a Holder is the delivery of a Consent to all of the either all of the 1998 Indenture Amendments or all of the 2003 Indenture Amendments, as applicable, and a Consent purporting to consent to only some of the applicable Proposed Amendments will not be valid. If the Supplemental Indentures are executed and the Proposed Amendments become operative, the Holders of Notes that are not purchased for any reason will be bound thereby even though they have not consented to the Proposed Amendments. See "Certain Considerations."

In addition, the Company reserves the right to make certain technical changes to the Indenture pursuant to the provisions thereof and to include such changes in the Supplemental Indenture.

### EXPIRATION DATE; EXTENSION; AMENDMENT; TERMINATION

The Tender Offers will expire at 12:00 midnight, New York City time, on Thursday, May 24, 2007, unless extended or earlier terminated by the Company. The Consent Solicitations will expire at 5:00 p.m., New York City time, on Thursday, May 10, 2007, unless extended or earlier terminated by the Company. In the event the Tender Offers and the Consent Solicitations are extended, the terms "Expiration Date" and "Early Consent Date" with respect to such extended Tender Offers or Consent Solicitations shall mean the time and date on which the Tender Offers or the Consent Solicitations, as so extended, shall expire. The Company reserves the right to extend either of the Tender Offers and the Consent Solicitations from time to time or for such period or periods as it may determine in its sole discretion by giving oral (to be confirmed in writing) or written notice of such extension to the Depositary and by making a public announcement by press release to the *Dow Jones News Service*, *Business Wire*, or another similar service, at or prior to 9:00 a.m., New York City time, on the next business day following the previously scheduled Early Consent Date or Expiration Date, as the case may be. During any extension of a Tender Offer, all Notes previously tendered and not accepted for purchase will remain subject to such Tender Offer and, subject to the terms and conditions of such Tender Offer, may be accepted for purchase by the Company. During any extension of the Consent Solicitations, all Consents validly delivered to the Depositary will remain effective unless validly revoked prior to such extended Early Consent Date.

To the extent it is legally permitted to do so, the Company reserves the right, in its sole discretion, at any time prior to the Expiration Date, to waive any condition to either of the Tender Offers or the Consent Solicitations, to amend any of the terms of either of the Tender Offers or the Consent Solicitations, and to modify the Purchase Price of any or all Notes or the Early Consent Payment. Any waiver or amendment to either of the Tender Offers or the Consent Solicitations will apply to all Notes tendered pursuant to such Tender Offer, except that any modification of the Purchase Price shall only apply to the particular series of Notes affected. If the Company makes a material change in the terms of the Tender Offers or waives a material condition of either of the Tender Offers, the Company will give oral (to be confirmed in writing) or written notice of such amendment or such waiver to the Depositary and will disseminate additional Offer Documents and will extend the applicable Tender Offer to the extent required by law. If either of the Consent Solicitations are amended on or prior to the Early Consent Date in a manner determined by the Company to constitute a material change to Holders of the applicable Notes, the Company promptly will give oral (to be confirmed in writing) or written notice of such amendment to the Depositary, disseminate additional Consent Solicitations materials and, if necessary, extend the Consent Solicitations with respect to the applicable Tender Offer for a period deemed by the Company to be adequate to permit Holders of the applicable Notes to deliver or revoke their Consents. If any such amendment occurs after the Early Consent Date, the Company may solicit Consents for a revised supplemental indenture.

The Company reserves the right, in its sole discretion, to terminate either of the Tender Offers and Consent Solicitations. Any such termination will be followed promptly by public announcement thereof. In the event the Company terminates either of the Tender Offers, it shall give immediate notice thereof to the Depositary, and all applicable Notes theretofore tendered and not accepted for payment shall be returned promptly to the tendering Holders thereof. In the event that either of the Tender Offers and the Consent Solicitations are terminated, withdrawn or otherwise not consummated prior to the Expiration Date, neither the Purchase Price nor the Early Consent Payment will become payable. See "Withdrawal of Tenders and Revocation of Consents; Absence of Appraisal Rights" and "Conditions of the Tender Offers and Consent Solicitations."

### ACCEPTANCE OF NOTES FOR PURCHASE; PAYMENT FOR NOTES AND CONSENTS

Upon the terms and subject to the conditions of the Tender Offers, the Company will accept for purchase Notes validly tendered pursuant to the Tender Offers (or defectively tendered, if such defect has been waived by the Company)

and not validly withdrawn upon the satisfaction or waiver of the conditions to the Tender Offers specified herein under "Conditions of the Tender Offers and Consent Solicitations."

The Company reserves the right, in its sole discretion, to delay acceptance for purchase of Notes tendered under the Tender Offers or the payment for Notes accepted for purchase (subject to Rule 14e-1 under the Exchange Act, which requires that an offeror pay the consideration offered or return the securities deposited by or on behalf of the Holders thereof promptly after the termination or withdrawal of a tender offer), or to terminate the Tender Offers and not accept for purchase any Notes not theretofore accepted for purchase, if any of the conditions set forth under "Conditions of the Tender Offers and Consent Solicitations" shall not have been satisfied or waived by the Company, or in order to comply with any applicable law. In all cases, payment for Notes accepted for purchase pursuant to the Tender Offers will be made only after timely receipt by the Depositary of certificates representing the Notes (or confirmation of book-entry transfer thereof), a properly completed and duly executed Letter of Transmittal and Consent related thereto (or a facsimile thereof or satisfaction of DTC's ATOP procedures) and any other documents required thereby.

For purposes of the Tender Offers, the Company will be deemed to have accepted for purchase validly tendered Notes (or defectively tendered Notes, if such defect has been waived by the Company) when the Company gives oral (confirmed in writing) or written notice thereof to the Depositary. Payment for Notes accepted for purchase in the Tender Offers and Consents delivered on or prior to the Early Consent Date in the Consent Solicitations will be made by the Company by depositing such payment with the Depositary, which will act as agent for the tendering and consenting Holders for the purpose of receiving the Purchase Price and the Early Consent Payment, as applicable, and transmitting the Purchase Price and the Early Consent Payment (and accrued and unpaid interest up to, but not including, the Payment Date) to such Holders. Upon the terms and subject to the conditions of the Tender Offers, delivery by the Depositary of the Purchase Price shall be made on the Payment Date for: (i) Notes that have been validly tendered and not validly withdrawn on or prior to the Early Consent Date (or, with respect to defectively tendered Notes, if the Company has waived such defect), along with the Early Consent Payment therefor; or (ii) for Notes that have been validly tendered after the Early Consent Date but on or prior to the Expiration Date.

Tenders of Notes and delivery of Consents pursuant to the Tender Offers and the Consent Solicitations, as well as withdrawal of previously tendered Notes and revocation of previously delivered Consents, will be accepted only in principal amounts equal to $1,000 or any integral multiple thereof.

If, for any reason, acceptance for purchase of, or payment for, validly tendered Notes pursuant to the Tender Offers are delayed or the Company is unable to accept for purchase, or to pay for, validly tendered Notes pursuant to the Tender Offers, then the Depositary, nevertheless, on behalf of the Company, may retain tendered Notes, without prejudice to the rights of the Company described under "Expiration Date; Extension; Amendment; Termination," "Conditions of the Tender Offers and Consent Solicitations" and "Withdrawal of Tenders and Revocation of Consents; Absence of Appraisal Rights" (subject to Rule 14e-1 under the Exchange Act, which requires that an offeror pay the consideration offered or return the securities deposited by or on behalf of the Holders thereof promptly after the termination or withdrawal of a tender offer).

If any tendered Notes are not accepted for purchase for any reason pursuant to the terms and conditions of the applicable Tender Offers, or if certificates are submitted evidencing more Notes than those which are tendered, certificates evidencing unpurchased Notes will be returned, without expense, to the tendering Holder, unless otherwise requested by such Holder under "Special Delivery Instructions" in the Letter of Transmittal (or, in the case of any Notes tendered by book-entry transfer into the Depositary's account at the Book-Entry Transfer Facility (as defined below) pursuant to the procedures set forth under the caption "Procedures for Tendering Notes and Delivering Consents - Book-Entry Transfer," such Notes will be credited to the account maintained at the Book-Entry Transfer Facility from which such Notes were delivered), promptly following the Expiration Date or the termination of the Tender Offers.

The Company reserves the right to transfer or assign, in whole or from time to time in part, to one or more of its respective affiliates, the right to purchase all or any portion of the Notes tendered pursuant to either of the Tender Offers and to pay all or any portion of the Early Consent Payments due pursuant to either of the Consent Solicitations, but any such transfer or assignment will not relieve the Company of its obligations under the Tender Offers or the Consent Solicitations and will in no way prejudice the rights of tendering Holders to receive payment for their Notes validly tendered and not validly withdrawn and accepted for payment pursuant to the Tender Offers, or to receive Early Consent Payments for Consents validly delivered and not validly revoked prior to the Early Consent Date.

Holders whose Notes are tendered and accepted for purchase pursuant to the Tender Offers will be entitled to any and all accrued and unpaid interest on their Notes up to, but not including, the Payment Date. Under no circumstances will any additional interest be payable because of any delay in the transmission of funds to the Holders of purchased Notes or otherwise.

Tendering Holders of Notes purchased in the Tender Offers will not be obligated to pay brokerage commissions, fees or transfer taxes with respect to the purchase of their Notes unless the box entitled "Special Issuance Instructions" or the box entitled "Special Delivery Instructions" on a Letter of Transmittal has been completed, as described in the Instructions thereto. The Company will pay all other charges and expenses in connection with the Tender Offers. See "Dealer Managers; Solicitation Agents; Information Agent; Depositary" and "Miscellaneous."

## PROCEDURES FOR TENDERING NOTES AND DELIVERING CONSENTS

The tender of Notes pursuant to the Tender Offers and in accordance with the procedures described below also will be deemed to constitute delivery of a Consent with respect to the Notes tendered. Holders who tender their Notes pursuant to the Tender Offers are obligated to deliver their Consent to the applicable Proposed Amendments and to the execution and delivery of the applicable Supplemental Indenture. Holders may not deliver a Consent without tendering their Notes pursuant to the applicable Tender Offer. A defective tender of Notes (which defect is not waived by the Company) will not constitute valid delivery of a Consent to the applicable Proposed Amendments, will not be counted for purposes of determining whether the Requisite Consents have been obtained and will not entitle the Holder thereof to an Early Consent Payment. Any beneficial owner whose Notes are registered in the name of a Custodian or held through the Book-Entry Transfer Facility and who wishes to tender its Notes and deliver a Consent should contact such Holder promptly and instruct such Holder to tender its Notes and deliver Consents on such beneficial owner's behalf.

### Tender of Notes Held Through DTC and Delivery of Consents

The Depositary and DTC have confirmed that the Tender Offers and the Consent Solicitations are eligible for ATOP. Accordingly, DTC participants may electronically transmit their acceptance of the applicable Tender Offers by causing DTC to transfer their Notes to the Depositary in accordance with DTC's ATOP procedures for such a transfer. In addition, DTC participants may electronically deliver their Consents pursuant to the Consent Solicitations as part of the electronic transmission of their acceptance of the applicable Tender Offers. DTC will then send an Agent's Message to the Depositary.

The term "Agent's Message" means a message transmitted by DTC, received by the Depositary and forming part of the Book-Entry Confirmation (as defined below), which states that DTC has received an express acknowledgment from the DTC participant tendering Notes which are the subject of such Book-Entry Confirmation that such DTC participant (i) has received and agrees to be bound by the terms of the Tender Offers and the Consent Solicitations as set forth in this Offer to Purchase and the Letter of Transmittal and that the Company may enforce such agreement against such participant, and (ii) consents to the Proposed Amendments and the execution and delivery of the Supplemental Indenture as described in this Offer to Purchase. Holders desiring to tender their Notes on the Early Consent Date or the Expiration Date should note that they must allow sufficient time for completion of the ATOP procedures during the normal business hours of DTC on such respective date. Tenders not received by the Depositary on or prior to the Expiration Date will be disregarded and of no effect.

### Tender of Notes held in Physical Form and Delivery of Consents

For a Holder to validly tender its Notes held in physical form pursuant to the Consent Solicitations or the Tender Offers, the certificates for the tendered Notes, a properly completed and validly executed Letter of Transmittal (or a facsimile thereof), together with any signature guarantees and any other documents required by the instructions to the Letter of Transmittal, must be received by the Depositary at its address set forth on the back cover of this Offer to Purchase on or prior to the Early Consent Date or the Expiration Date, as the case may be.

The Letter of Transmittal and Notes should be sent only to the Depositary, and not to Tyco, the Company, the Dealer Managers, the Information Agent or the Book-Entry Transfer Facility.

The method of delivery of Notes, the Letter of Transmittal and all other required documents to the Depositary is at the election and risk of the Holder tendering Notes and delivering Consents. Delivery of such documents will be deemed made only when actually received by the Depositary. If such delivery is by mail, it is suggested that the

13

Holder use properly insured, registered mail with return receipt requested, and that the mailing be made sufficiently in advance of the Early Consent Date or the Expiration Date, as the case may be, to permit delivery to the Depositary on or prior to such respective date. No alternative, conditional or contingent tenders of Notes or deliveries of Consents will be accepted.

## Signature Guarantees

Signatures on the Letter of Transmittal must be guaranteed by a firm that is a participant in the Security Transfer Agents Medallion Program or the Stock Exchange Medallion Program or is otherwise an "eligible guarantor institution" as that term is defined in Rule 17A6-15 under the Exchange Act (generally a member of a registered national securities exchange, a member of the National Association of Securities Dealers, Inc., or a commercial bank or trust company having an office in the United States) (an "Eligible Institution"), unless (i) the Letter of Transmittal is signed by the registered Holder of the Notes tendered therewith and payment of the Purchase Price and the Early Consent Payment, if applicable, is to be made, or if any Notes for principal amounts not tendered or not accepted for purchase are to be issued, directly to such Holder and neither the "Special Issuance Instructions" box nor the "Special Delivery Instructions" box on the Letter of Transmittal has been completed, or (ii) such Notes are tendered and Consents delivered for the account of an Eligible Institution.

## Book-Entry Transfer

The Depositary will establish and maintain an account with respect to the Notes at DTC (the "Book-Entry Transfer Facility") promptly after the date of this Offer to Purchase (to the extent such arrangements have not been made previously by the Depositary), and any financial institution that is a participant in the Book-Entry Transfer Facility system and whose name appears on a security position listing as the owner of the Notes may make book-entry delivery of Notes by causing the Book-Entry Transfer Facility to transfer such Notes into the Depositary's account in accordance with the Book-Entry Transfer Facility's procedures for such transfer. The confirmation of a book-entry transfer of Notes into the Depositary's account at the Book-Entry Transfer Facility as described above is referred to herein as a "Book-Entry Confirmation." Delivery of documents to the Book-Entry Transfer Facility in accordance with such Book-Entry Transfer Facility procedures does not constitute delivery to the Depositary.

## Lost or Missing Certificates

If a Holder desires to tender Notes pursuant to the Tender Offers and to deliver Consents pursuant to the Consent Solicitations, but the certificates representing such Notes have been mutilated, lost, stolen or destroyed, such Holder should write to or telephone the Trustee at the address or telephone number listed below, about procedures for obtaining replacement certificates for such Notes or arranging for indemnification or any other matters that require handling by the Trustee:

The Bank of New York
101 Barclay St., 4E
New York, NY 10286
Facsimile: (212) 815-5802
Attention: Global Finance Unit

## Other Matters

Notwithstanding any other provision hereof, payment for Notes accepted for payment pursuant to the Tender Offers will in all cases be made only after timely receipt by the Depositary of (i) certificates for, or a timely Book-Entry Confirmation with respect to, such Notes, (ii) a properly completed and validly executed Letter of Transmittal (or a facsimile thereof), with any required signature guarantees, or, in the case of a book-entry transfer, an Agent's Message, and (iii) any other documents required by the Letter of Transmittal. Under no circumstances will interest be paid on the Purchase Price or the Early Consent Payment as a result of any delay in making such payments.

Tenders of Notes and deliveries of Consents pursuant to any of the procedures described above, and acceptance thereof by the Company for purchase, will constitute a binding agreement between the Company and the tendering and consenting Holder of such Notes, upon the terms and subject to the conditions of the Tender Offers and the Consent Solicitations in effect on the Expiration Date.

By executing a Letter of Transmittal as set forth above (or by tendering Notes through book-entry transfer), and subject to and effective upon acceptance for purchase of, and payment for, the Notes tendered therewith, a tendering Holder: (i) irrevocably sells, assigns and transfers to or upon the order of the Company all right, title and interest in and to all the Notes tendered thereby; (ii) waives any and all other rights with respect to the Notes (including the tendering Holder's waiver of any existing or past defaults and their consequences in respect of the Notes and the Indenture under which the Notes were issued); (iii) releases and discharges the Company, TIPSA and Tyco from any and all claims such Holder may have now, or may have in the future, arising out of, or related to, the Notes, including any claims that such Holder is entitled to receive additional principal or interest payments with respect to the Notes or to participate in any redemption or defeasance of the Notes; (iv) delivers such Holder's consent to the 1998 Indenture Amendments or the 2003 Indenture Amendments, as applicable; and (v) irrevocably constitutes and appoints the Depositary as the true and lawful agent and attorney-in-fact of such Holder with respect to any such tendered Notes, with full power of substitution and resubstitution (such power of attorney being deemed to be an irrevocable power coupled with an interest) to (a) deliver certificates representing such Notes, or transfer ownership of such Notes on the account books maintained by DTC, together, in any such case, with all accompanying evidences of transfer and authenticity, to the Company, (b) present such Notes for transfer on the relevant security register, (c) receive all benefits or otherwise exercise all rights of beneficial ownership of such Notes (except that the Depositary will have no rights to, or control over, funds from the Company, except as agent for the tendering Holders, for the Total Consideration or Purchase Price, as the case may be, and accrued and unpaid interest for any tendered Notes that are purchased by the Company), and (d) deliver to the Company and the Depositary the Letter of Transmittal as evidence of the Holder's Consent to the Proposed Amendments and to the execution and delivery of the Supplemental Indenture and as certification that consents to the Proposed Amendments duly executed by Holders have been received, all in accordance with the terms of the Tender Offers and the Consent Solicitations.

All questions as to the form of all documents and the validity (including time of receipt) and acceptance of all tenders of Notes and deliveries of Consents will be determined by the Company, in its sole discretion, the determination of which shall be final and binding. Alternative, conditional or contingent tenders of Notes or deliveries of Consents will not be considered valid. The Company reserves the absolute right, in its sole discretion, to reject any or all tenders of Notes and deliveries of Consents that are not in proper form or the acceptance of which, in the Company's opinion, would be unlawful. The Company also reserves the right to waive any defects, irregularities or conditions of tender as to particular Notes or of delivery as to accompanying Consents.

The Company's interpretation of the terms and conditions of the Tender Offers and the Consent Solicitations (including the instructions in the Letter of Transmittal) will be final and binding.

Any defect or irregularity in connection with tenders of Notes or deliveries of Consents must be cured within such time as the Company determines, unless waived by the Company. Tenders of Notes and deliveries of Consents shall not be deemed to have been made until all defects and irregularities have been waived by the Company or cured. A defective tender (which defect is not waived by the Company) will constitute neither a valid tender of Notes nor a valid Consent. None of Tyco, the Company, the Depositary, the Trustee, the Information Agent, the Dealer Managers, the Solicitation Agents or any other person will be under any duty to give notice of any defects or irregularities in tenders of Notes and accompanying deliveries of Consents, or will incur any liability to Holders for failure to give any such notice.

## WITHDRAWAL OF TENDERS AND REVOCATION OF CONSENTS; ABSENCE OF APPRAISAL RIGHTS

Holders who tender their Notes in the Tender Offers and Consent Solicitations are obligated to deliver a Consent to all of the applicable Proposed Amendments. Notes tendered prior to the Early Consent Date may be validly withdrawn at any time prior to the Early Consent Date (by following the procedures set forth below), but not thereafter unless the relevant Tender Offer is terminated without any Notes being purchased thereunder. A valid withdrawal of tendered Notes prior to the Early Consent Date will be deemed a valid revocation of the related Consent. Any Notes tendered after the Early Consent Date may not be withdrawn after the Early Consent Date, but if the Tender Offer with respect to any of the Notes is terminated thereafter without any such Notes having been purchased, the related Proposed Amendments will not become operative.

Holders who wish to exercise their right of withdrawal with respect to a Tender Offer and Consent Solicitation must give written notice of withdrawal by mail, hand delivery or manually signed facsimile transmission, or a properly transmitted "Request Message" through ATOP, which notice must be received by the Depositary at one of its addresses set forth on the back cover of this Offer to Purchase (or, in the case of Notes tendered by book-entry transfer, through ATOP) on or prior to the Early Consent Date or at such other permissible times as are described herein. In order to be valid, a notice of withdrawal must specify the name of the person who deposited the Notes to be withdrawn (the "Depositor"), the name in which the Notes are registered (or, if tendered by book-entry transfer, the name of the participant in the Book-Entry Transfer Facility whose name appears on the security position listing as the owner of such Notes), if different from that of the Depositor, and the principal amount of Notes to be withdrawn and related Consents to be revoked. If certificates have been delivered or otherwise identified (through confirmation of book-entry transfer of such Notes) to the Depositary, the name of the Holder and the certificate number or numbers relating to such Notes withdrawn must also be furnished to the Depositary as aforesaid prior to the physical release of the certificates for the withdrawn Notes (or, in the case of Notes transferred by book-entry transfer, the name and number of the account at the Book-Entry Transfer Facility to be credited with withdrawn Notes). The notice of withdrawal (other than a notice transmitted through ATOP) must be signed by the Holder in the same manner as the Letter of Transmittal (including, in any case, any required signature guarantees), or be accompanied by evidence satisfactory to the Company that the person withdrawing the tender has the legal authority to withdraw such tender on behalf of the Holder. Holders may not rescind withdrawals of tendered Notes. However, validly withdrawn Notes may be retendered by following the procedures therefor described elsewhere in this Offer to Purchase at any time prior to the Expiration Date.

A Holder may not validly revoke a Consent except by validly withdrawing such Holder's previously tendered Notes, and the valid withdrawal of a Holder's Notes will constitute the concurrent valid revocation of such Holder's Consent. As a result, a Holder who validly withdraws previously tendered Notes will not receive the Purchase Price or the Early Consent Payment unless such Notes are retendered in accordance with the procedures and deadlines described in this Offer to Purchase. Any Notes validly tendered and Consents validly delivered prior to the Early Consent Date may not be withdrawn after the Early Consent Date.

All questions as to the form and validity (including time of receipt) of any tender of a Note delivery or delivery of a Consent or revocation of a tender of a Note and delivery of a Consent, will be determined by the Company, in its sole discretion, which determination shall be final and binding. None of Tyco, the Company, the Trustee, the Depositary, the Information Agent, the Dealer Managers, the Solicitation Agents or any other person will be under any duty to give notification of any defect or irregularity in any delivery or revocation of a Consent or incur any liability for failure to give any such notification.

If the Company is delayed in its acceptance for purchase of, or payment for, the Notes or is unable to accept for purchase or pay for Notes pursuant to the Tender Offers for any reason, then, without prejudice to the Company's rights hereunder, tendered Notes may be retained by the Depositary on behalf of the Company (subject to Rule 14e-1 under the Exchange Act, which requires that an offeror pay the consideration offered or return the securities deposited by or on behalf of the Holders thereof promptly after the termination or withdrawal of a tender offer).

**Appraisal Rights**

The Notes are debt obligations of the Company guaranteed as to payment of principal, premium, if any, and interest by Tyco, and are governed by the Indenture. There are no appraisal or other similar statutory rights available to Holders in connection with the Tender Offers or the Consent Solicitations.

## CONDITIONS OF THE TENDER OFFERS AND CONSENT SOLICITATIONS

Notwithstanding any other provision of the Tender Offers and the Consent Solicitations, the Company will not be required to accept for purchase, or to pay for, Notes tendered pursuant to the Tender Offers and may terminate, extend or amend either of the Tender Offers and may (subject to Rule 14e-1 under the Exchange Act, which requires that an offeror pay the consideration offered or return the securities deposited by or on behalf of the Holders thereof promptly after the termination or withdrawal of a tender offer) postpone the acceptance for purchase of, and payment for, Notes so tendered if, on or prior to the Expiration Date, any of the following shall not have occurred with respect to either of the Tender Offers: (a) the Company having available from the Bridge Loan Facilities and from cash on hand, prior to the Expiration Date, funds sufficient to pay the aggregate Total Consideration; (b) the receipt of the applicable Requisite Consents on or prior to the Early Consent Date; (c) the execution of the applicable Supplemental Indenture containing the Proposed Amendments following receipt of the applicable Requisite Consents; and (d) satisfaction of the General Conditions set

16

forth in the following paragraph. The Company will not be required to make any Early Consent Payment in connection with a Tender Offer unless the Company shall have accepted the applicable Notes for purchase pursuant to such Tender Offers. The Company reserves the right to waive any and all conditions of either of the Tender Offers and the Consent Solicitations.

For purposes of the foregoing provision, all of the "General Conditions" shall be deemed to be satisfied, unless any of the following conditions, as applicable to each Tender Offer and Consent Solicitation, shall occur and not be waived on or after the date of this Offer to Purchase:

(i) There shall have been instituted, threatened or be pending any action or proceeding before or by any court, governmental, regulatory or administrative agency or instrumentality, or by any other person, in connection with the applicable Tender Offer or Consent Solicitation, that is, or is reasonably likely to be, in the sole judgment of the Company, materially adverse to the business, operations, properties, condition (financial or otherwise), assets, liabilities or prospects of the Company, TIFSA or Tyco, or their respective subsidiaries or affiliates or which would or might, in the reasonable judgment of the Company, prohibit, prevent, restrict or delay consummation of the Tender Offers or the Consent Solicitations;

(ii) There shall have occurred any development which would, in the reasonable judgment of the Company, materially adversely affect the business, operations, properties, condition (financial or otherwise), assets, liabilities or prospects of the Company, TIFSA, Tyco or their respective subsidiaries or affiliates;

(iii) An order, statute, rule, regulation, executive order, stay, decree, judgment or injunction shall have been proposed, enacted, entered, issued, promulgated, enforced or deemed applicable by any court or governmental, regulatory or administrative agency or instrumentality (collectively, a "Legal Event") that, in the reasonable judgment of the Company, would or might prohibit, prevent, restrict or delay consummation of the Tender Offers or the Consent Solicitations;

(iv) There shall have occurred or be reasonably likely to occur (a) any event affecting the business, operations, properties, condition (financial or otherwise), assets, liabilities or prospects of the Company, TIFSA, Tyco or their respective subsidiaries or affiliates that, in the sole judgment of the Company, would or might prohibit, prevent, restrict or delay consummation of the Tender Offers or the Consent Solicitations, or (b) any Legal Event which in the sole judgment of the Company is, or is reasonably likely to be, materially adverse to the business, operations, properties, condition (financial or otherwise), assets, liabilities or prospects of the Company, TIFSA, Tyco or their respective subsidiaries or affiliates;

(v) The Trustee under the Indenture shall have objected in any respect to or taken any action that could, in the reasonable judgment of the Company, adversely affect the consummation of the Tender Offers or Consent Solicitations or the Company's ability to effect any of either the 1998 Indenture Amendments or the 2003 Indenture Amendments, as applicable, or shall have taken any action that challenges the validity or effectiveness of the procedures used by the Company in soliciting the Consents (including the form thereof) or in the making of the Tender Offers or Consent Solicitations or the acceptance of, or payment for, the Notes or the Consents;

(vi) There shall exist, in the sole judgment of the Company, any actual or threatened legal impediment (including a default under an agreement, indenture or other instrument or obligation to which the Company, TIFSA or Tyco is a party, or by which it is bound) to the acceptance for payment of, or payment for, any of the Notes or to the scope, validity or effectiveness of the Consents solicited hereby; or

(vii) There shall have occurred (a) any general suspension of, or limitation on prices for, trading in the United States securities or financial markets or any other significant adverse change in United States securities or financial markets, (b) a material impairment in the trading market for debt securities, (c) a declaration of a banking moratorium or any suspension of payments in respect of banks by federal or state authorities in the United States, Bermuda or Luxembourg (whether or not mandatory), (d) any limitation (whether or not mandatory) by any government or governmental, administrative or regulatory authority or agency, domestic or foreign, or other event that, in the sole judgment of the Company, might affect the extension of credit by banks or other lending institutions, (e) there is (i) an outbreak or escalation of hostilities or acts of terrorism involving the United States or declaration of a national emergency or war by the United States or (ii) any other calamity or crisis or any change in political, financial or economic conditions, if the effect of any such event in (i) or (ii), in the Company's sole judgment, makes it

impracticable or inadvisable to proceed with such Tender Offer and Consent Solicitation, or (f) in the case of any of the foregoing existing on the date hereof, a material acceleration or worsening thereof.

The conditions to the Tender Offers and Consent Solicitations are for the sole benefit of the Company and may be asserted by the Company in its sole discretion regardless of the circumstances giving rise to such conditions or may be waived by the Company, in whole or in part, and with respect to either of the Tender Offers and Consent Solicitations, in its sole discretion, whether or not any other condition of the Tender Offers and the Consent Solicitations also is waived. The Company has not made a decision as to what circumstances would lead it to waive any such condition, and any such waiver would depend on circumstances prevailing at the time of such waiver. Any determination by the Company concerning the events described in this section shall be final and binding upon all Holders. The failure by the Company at any time to exercise any of the foregoing rights will not be deemed a waiver of any other right and each right will be deemed an ongoing right which may be asserted at any time and from time to time.

Although the Company has no present plans or arrangements to do so, the Company reserves the right to amend, at any time prior to the Expiration Date, the terms of the Tender Offers or the Consent Solicitations. The Company will give Holders notice of such amendments as may be required by applicable law.

## MARKET AND TRADING INFORMATION

None of the Notes are listed on any national or regional securities exchange or reported on a national quotation system. To the extent that any of the Notes are traded, prices of the Notes may fluctuate greatly depending on the trading volume and the balance between buy and sell orders. Holders are urged to obtain current information with respect to the market prices for their Notes.

## DESCRIPTION OF NOTES

### The 1998 Notes

The 1998 Notes were issued pursuant to the 1998 Indenture among the Company, Tyco and the Trustee. The terms of the 1998 Notes are those stated in the 1998 Indenture, as supplemented, and those made part of the 1998 Indenture by reference to the Trust Indenture Act. The 1998 Notes are subject to all such terms and the Holders of the 1998 Notes are referred to the 1998 Indenture and the Trust Indenture Act for a statement thereof. The 1998 Notes are redeemable at the Company's option on any date prior to the maturity date, in whole or in part, at a redemption price determined in accordance with the 1998 Indenture. The title, principal amount issued, date of issuance and interest payment dates of the 1998 Notes are as follows:

| Title of Securities | Principal Amount Issued | Date Issued | Interest Payment Date(s) |
|---|---|---|---|
| 6.125% notes due 2008 | $400,000,000 | November 2, 1998 | May 1st, November 1st |
| 6.125% notes due 2009 | $400,000,000 | January 12, 1999 | January 15th, July 15th |
| 6.75% notes due 2011 | $1,000,000,000 | February 21, 2001 | February 15th, August 15th |
| 6.375% notes due 2011 | $1,500,000,000 | October 26, 2001 | April 15th, October 15th |
| 7.0% notes due 2028 | $500,000,000 | June 9, 1998 | June 15th, December 15th |
| 6.85% notes due 2029 | $800,000,000 | January 12, 1999 | January 15th, July 15th |

Substantially all of the 1998 Notes remained outstanding as of the date of this Offer to Purchase.

### The 2003 Notes

The 2003 Notes were issued pursuant to the 2003 Indenture among the Company, Tyco and the Trustee. The terms of the 2003 Notes are those stated in the 2003 Indenture and those made part of the 2003 Indenture by reference to the Trust Indenture Act. The 2003 Notes are subject to all such terms and the Holders of the 2003 Notes are referred to the 2003 Indenture and the Trust Indenture Act for a statement thereof. Copies of the 2003 Indenture are available from the Information Agent at the address and telephone numbers set forth on the back cover of this Offer to Purchase.

The 2003 Notes were issued on November 12, 2003 in an original aggregate principal amount of $1.0 billion substantially all of which remained outstanding as of the date of this Offer to Purchase. Interest on the 2003 Notes is

18

payable semi-annually, on each May 15 and November 15, to the holders of record at the close of business on the date 15 days prior to the payment date, at an annual rate of 6.0%.

The 2003 Notes are redeemable at the Company's option on any date prior to the maturity date, in whole or in part, at a redemption price determined in accordance with the 2003 Indenture.

Copies of the Indentures are available from the Information Agent at the address and telephone numbers set forth on the back cover of this Offer to Purchase.

## MATERIAL UNITED STATES FEDERAL INCOME TAX CONSIDERATIONS

TO ENSURE COMPLIANCE WITH INTERNAL REVENUE SERVICE CIRCULAR 230, YOU ARE HEREBY NOTIFIED THAT THE DISCUSSION OF TAX MATTERS SET FORTH IN THIS STATEMENT WAS WRITTEN IN CONNECTION WITH THE PROMOTION AND MARKETING OF THE TENDER OFFER AND THE CONSENT SOLICITATION AND WAS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, FOR THE PURPOSE OF AVOIDING TAX-RELATED PENALTIES UNDER UNITED STATES FEDERAL, STATE, OR LOCAL TAX LAW. EACH HOLDER SHOULD SEEK ADVICE BASED ON ITS PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

The following is a general discussion of the material United States federal income tax consequences of the Tender Offer and Consent Solicitation to Holders. This discussion is a summary for general information purposes only and does not consider all aspects of United States federal income taxation which may be relevant to particular Holders in light of their individual investment circumstances or to certain types of Holders subject to special tax rules (e.g., financial institutions, broker-dealers, traders in securities that elect to use a mark-to-market method of accounting for their securities holdings, banks, insurance companies, tax-exempt organizations, persons liable for the alternative minimum tax, persons that hold Notes as part of a "straddle," a "hedge," a "conversion transaction" or other integrated transaction, U.S. Holders (as defined below) that have a functional currency other than the U.S. dollar and investors in pass-through entities), nor does it address state, local or foreign tax considerations. This summary assumes that Holders have held their Notes as "capital assets" within the meaning of Section 1221 of the Internal Revenue Code of 1986, as amended (the "Code"). This summary is based on the Code and applicable Treasury Regulations, rulings, administrative pronouncements and decisions as of the date hereof, all of which are subject to change or differing interpretations at any time with possible retroactive effect.

HOLDERS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS REGARDING THE SPECIFIC FEDERAL, STATE, LOCAL AND FOREIGN INCOME AND OTHER TAX CONSIDERATIONS APPLICABLE TO THE TENDER OFFERS AND THE CONSENT SOLICITATIONS.

### Consequences to U.S. Holders

For purposes of this discussion, a U.S. Holder means a beneficial owner of Notes that, for U.S. federal income tax purposes, is: (i) a citizen or resident of the United States; (ii) a corporation created or organized in or under the laws of the United States or any state thereof (or the District of Columbia); (iii) an estate the income of which is subject to United States federal income taxation regardless of its source; or (iv) a trust if (a) a court within the United States can exercise primary supervision over its administration, and one or more United States persons have the authority to control all of the substantial decisions of that trust, or (b) the trust has a valid election in effect under applicable U.S. Treasury regulations to be treated as a U.S. person. If a partnership holds Notes, the tax treatment of a partner in the partnership will generally depend on the status of the partner and the activities of the partnership. A Holder that is a partner in a partnership holding Notes should consult its own tax advisor regarding the tax consequences of the Tender Offers and Consent Solicitations.

#### Tendering and Consenting U.S. Holders

*Tender of a Note.* The receipt of cash by a U.S. Holder in exchange for a Note will be a taxable transaction for United States federal income tax purposes. Subject to the market discount rules discussed below, a U.S. Holder will recognize capital gain or loss in an amount equal to the difference between (i) the amount of cash received (other than amounts attributable to any accrued but unpaid interest not previously included in income by the U.S. Holder and the Early Consent Payment if it is not treated as proceeds from the sale or exchange of a Note for United States federal income tax purposes) and (ii) the U.S. Holder's adjusted tax basis in the Note. Generally, a U.S. Holder's adjusted tax basis in a Note will be equal to the price paid for the Note by such U.S. Holder, reduced (but not below zero) by any amortizable bond premium

deducted with respect to the Note, and increased by any market discount with respect to the Note that has previously been taken into income by the U.S. Holder. Such capital gain or loss will be long-term capital gain or loss if the U.S. Holder held the Note for more than one year at the time the Note was purchased by the Company. Long-term capital gains of non-corporate taxpayers are generally taxed at lower rates than those applicable to ordinary income. The deductibility of capital losses is subject to certain limitations. Any cash received attributable to accrued but unpaid interest that has not yet been included in the U.S. Holder's income will be taxable as ordinary income.

*Market Discount.* A Note has "market discount" if its stated principal amount exceeds the U.S. Holder's tax basis in the Note immediately after its acquisition by the U.S. Holder, unless a statutorily defined de minimis exception applies. Gain recognized by a U.S. Holder with respect to a Note acquired with market discount will generally be subject to tax as ordinary income to the extent of the market discount accrued, unless the U.S. Holder previously had elected to include market discount in income as it accrued for United States federal income tax purposes.

*Early Consent Payment.* The tax treatment of the receipt of an Early Consent Payment by a U.S. Holder whose Note is purchased pursuant to a Tender Offer is uncertain because there are no authorities that directly address the treatment of such payment. Under Section 1271 of the Code, any amount received by a holder on retirement of a debt instrument is treated as being received in exchange for the debt instrument. It is possible, however, that the Early Consent Payment may be treated as a separate fee that would be subject to tax as ordinary income, rather than additional consideration for the Note. If the Early Consent Payment is treated as additional consideration for the Note, the Early Consent Payment would be treated as part of the amount of cash received, as provided in the discussion under the caption "Tender of a Note."

### Non-Tendering U.S. Holders

Generally, the modification of a debt instrument will be treated, for United States federal income tax purposes, as a "deemed" exchange of an old debt instrument for a new debt instrument if such modification is "significant" as determined for United States federal income tax purposes. Under the Treasury Regulations that govern the determination of whether a modification is a significant modification, a change in the obligor of a recourse debt instrument is treated as a significant modification unless certain exceptions apply. In the case of the Notes, because there will be a change in obligor and none of the enumerated exceptions apply, the modification will be treated as "significant". Accordingly, a non-tendering U.S. Holder will be treated as having exchanged its "old" Notes for "new" Notes for United States federal income tax purposes. If the "old" Notes and the "new" Notes are both treated as "securities" for United States federal income tax purposes, such exchange would be treated as a tax-free reorganization for United States federal income tax purposes. In such case, (a) a non-tendering U.S. Holder would not recognize any gain or loss on the deemed exchange, except that a portion of the "new" Notes of a non-tendering U.S. Holder may be allocated to the accrued but unpaid interest on the "old" Notes and the U.S. Holder may be required to recognize ordinary income equal to that amount, (b) except for any portion of the "new" Notes which may be allocated to such interest, a non-tendering U.S. Holder should have the same adjusted tax basis and holding period in the "new" Notes as in its "old" Notes immediately prior to the deemed exchange, and (c) if the "old" Notes have "market discount" in the hands of the non-tendering U.S. Holder, such market discount may be treated as market discount on the "new" Notes (thereby resulting in ordinary income treatment upon the disposition of the "new" Notes). The Company believes that the "old" Notes and "new" Notes should be treated as "securities" for U.S. federal income tax purposes.

If the deemed exchange does not qualify as a tax-free reorganization for United States federal income tax purposes, a non-tendering U.S. Holder would recognize capital gain or loss in an amount equal to the difference between the U.S. Holder's adjusted tax basis in the "old" Notes and the issue price of the "new" Notes deemed received in exchange therefor. However, any such gain attributable to accrued but previously unrecognized market discount, and any portion of the "new" Notes attributable to accrued but unpaid interest, would be subject to tax as ordinary income. In such case, the non-tendering U.S. Holder's holding period in the "new" Notes would begin the day after the effective date of the Proposed Amendments and such non-tendering U.S. Holder's basis in the "new" Notes would equal the issue price thereof. If the Notes are not considered to be readily tradable on an established securities market (as that term is defined for purposes of the installment sale rules), gain, if any, recognized on the deemed exchange may be eligible for reporting under the installment sale rules. U.S. Holders should consult their own tax advisors regarding the timing and character of any recognized gain on a deemed exchange.

In the case of a deemed exchange, if neither the "old" Notes nor the "new" Notes are traded on an established securities market (for purposes of the original issue discount provisions of the Code), the issue price of such "new" Notes should equal their stated principal amount. If the "old" Notes were traded on an established securities market, but such "new" Notes are not so traded, the issue price would be equal to the fair market value of the "old" Notes on the date the

"new" Notes are deemed to be issued; if such "new" Notes are so traded, their issue price would equal the fair market value of the "new" Notes as of the date the "new" Notes are deemed to be issued. In any such case, the "new" Notes may be issued with original issue discount if their stated redemption price at maturity exceeds their issue price, or, alternatively, may be issued with bond premium (which may be amortizable to the extent provided in Section 171 of the Code) if the adjusted tax basis of the "new" Notes exceeds the amount payable at maturity. Except where it falls under a statutory de minimis rule, any original issue discount would be required to be included in the income of the Holders of the "new" Notes on a constant yield to maturity basis over the term of the "new" Notes and in advance of cash payments attributable to such income regardless of such Holder's regular method of tax accounting.

### Backup Withholding and Information Reporting

A U.S. Holder may be subject to backup withholding at the applicable withholding rate with respect to the receipt of cash in exchange for a Note unless the U.S. Holder provides to the Company a correct Taxpayer Identification Number ("TIN") and certifies that the U.S. Holder is a U.S. person, the TIN is correct (or that the U.S. Holder is awaiting a TIN) and the U.S. Holder is either (a) exempt from backup withholding, (b) has not been informed by the Internal Revenue Service ("the IRS") that backup withholding is required due to underreporting of interest and dividends from payments made to the U.S. Holder or (c) has been informed by the IRS that backup withholding is no longer required. Any amount paid as backup withholding would be allowed as a credit against the U.S. Holder's federal income tax liability and may entitle the U.S. Holder to a refund, provided the required information is provided to the IRS.

We will provide information statements to the IRS reporting the payment of the consideration pursuant to the Tender Offer, except with respect to U.S. Holders that are exempt from the information reporting rules, such as corporations.

### Consequences to Non-U.S. Holders

A Non-U.S. Holder is any beneficial owner of Notes that is not a U.S. Holder and that is not an entity or arrangement treated as a partnership for United States federal income tax purposes.

This discussion does not describe the U.S. federal income tax consequences to Non-U.S. Holders who are engaged in a trade or business in the United States with which the Notes are effectively connected.

Subject to the discussion below regarding the backup withholding requirements of the Code, a Non-U.S. Holder will generally not be subject to U.S. federal income tax on any gain recognized by a Non-U.S. Holder on the tender of a Note, on the receipt of any accrued but unpaid interest or on the receipt of an Early Consent Payment.

*Backup Withholding and Information Reporting.* Any payment received by a Non-U.S. Holder from the sale of a Note to or through a foreign office of a broker will not be subject to backup withholding. In addition, any payment received by a Non-U.S. Holder from the sale of a Note to or through the United States office of a broker will be subject to backup withholding unless the Non-U.S. Holder properly establishes an exemption from backup withholding. Backup withholding is not an additional tax. The amount of any backup withholding from a payment to a Non-U.S. Holder will be allowed as a credit against such holder's United States federal income tax liability and may entitle the Non-U.S. Holder to a refund, provided the required information is furnished to the IRS.

When required, we will provide information statements to the IRS reporting the payment of consideration pursuant to a Tender Offer.

THE FEDERAL INCOME TAX DISCUSSION SET FORTH ABOVE IS INCLUDED FOR GENERAL INFORMATION PURPOSES ONLY. HOLDERS SHOULD CONSULT THEIR OWN TAX ADVISORS TO DETERMINE THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE TENDER OF NOTES PURSUANT TO THE TENDER OFFERS, THE CONSENT SOLICITATIONS AND THE ADOPTION OF THE PROPOSED AMENDMENTS.

### DEALER MANAGERS; SOLICITATION AGENTS; INFORMATION AGENT; DEPOSITARY

The Company has retained Goldman, Sachs & Co. and Morgan Stanley to act as the Dealer Managers for the Tender Offers and Solicitation Agents for the Consent Solicitations. In their capacities as Dealer Managers and Solicitation Agents, they may contact Holders regarding the Tender Offers and the Consent Solicitations and may request Custodians to forward this Offer to Purchase and related materials to beneficial owners of Notes.

The Company has agreed to pay Goldman, Sachs & Co. and Morgan Stanley customary fees and to reimburse Goldman, Sachs & Co. and Morgan Stanley for their reasonable out-of-pocket expenses for their services in connection with the Tender Offers and the Consent Solicitations. The Company also has agreed to indemnify Goldman, Sachs & Co. and Morgan Stanley and their respective affiliates against certain liabilities under federal or state law or otherwise caused by, relating to or arising out of the Tender Offers and the Consent Solicitations.

The Dealer Managers and their respective affiliates have provided investment banking and financial advisory services to the Company and its affiliates in the past, for which they have received or will receive customary compensation. The Dealer Managers and their respective affiliates may also from time to time be engaged in transactions with and perform services in the ordinary course of their business for the Company and its affiliates.

In addition, at any time the Dealer Managers and their respective affiliates may trade or hold, or may have traded or held, the Notes or other securities issued by the Company or its affiliates, for their own account or for the accounts of customers, and, accordingly, may hold or may have held a long or short position in the Notes or such other securities. In addition, each of the Dealer Managers may tender Notes in the Tender Offers for its own account.

Global Bondholder Services Corporation has been appointed the Information Agent with respect to the Tender Offers and the Consent Solicitations. The Company will pay the Information Agent customary fees for its services and reimburse the Information Agent for its reasonable out-of-pocket expenses in connection therewith. The Company also has agreed to indemnify the Information Agent for certain liabilities. Requests for additional copies of documentation may be directed to the Information Agent at the address and telephone numbers set forth on the back cover of this Offer to Purchase.

Global Bondholder Services Corporation has been appointed the Depositary for the Tender Offers and the Consent Solicitations. All deliveries and correspondence sent to the Depositary should be directed to one of the addresses set forth on the back cover of this Offer to Purchase. The Company will pay the Depositary customary fees for its services and reimburse the Depositary for its reasonable out-of-pocket expenses in connection therewith. The Company has also agreed to indemnify the Depositary for certain liabilities.

None of the Dealer Managers, the Information Agent or the Depositary assumes any responsibility for the accuracy or completeness of the information concerning the Company or its affiliates contained in this Offer to Purchase or related documents or for any failure by the Company to disclose events that may have occurred and may affect the significance or accuracy of such information.

NONE OF THE COMPANY, TYCO, THE TRUSTEE, THE DEALER MANAGERS, THE SOLICITATION AGENTS, THE DEPOSITARY OR THE INFORMATION AGENT MAKES ANY RECOMMENDATION TO YOU AS TO WHETHER OR NOT YOU SHOULD TENDER YOUR NOTES UNDER THE TENDER OFFERS AND DELIVER YOUR CONSENT TO THE PROPOSED AMENDMENTS IN THE CONSENT SOLICITATIONS, AND NO ONE HAS BEEN AUTHORIZED BY ANY OF THEM TO MAKE ANY SUCH RECOMMENDATION. HOLDERS SHOULD MAKE THEIR OWN DECISION AS TO WHETHER TO TENDER NOTES AND DELIVER CONSENTS TO THE PROPOSED AMENDMENTS.

## MISCELLANEOUS

The Tender Offers and the Consent Solicitations are not being made to (nor will tenders of Notes or deliveries of Consents be accepted from or on behalf of) Holders of Notes in any jurisdiction in which the making or acceptance of the Tender Offers and the Consent Solicitations would not be in compliance with the laws of such jurisdiction. However, the Company, in its sole discretion, may take such action as it may deem necessary to make or extend the Tender Offers and the Consent Solicitations in any such jurisdiction.

No person has been authorized to give any information or make any representation on behalf of the Company that is not contained in this Offer to Purchase or in the Letter of Transmittal and, if given or made, such information or representation should not be relied upon.

22

## ANNEX A

### THE PROPOSED AMENDMENTS TO THE 1998 INDENTURE

The following is a description of the 1998 Indenture Amendments to be made effective in accordance with the terms of Article Seven of the 1998 Indenture. Holders of Notes who desire to be eligible to receive the Total Consideration, including the Early Consent Payment, must tender Notes and Consent to the 1998 Indenture Amendments on or prior to the Early Consent Date. Such amendments will be contained and reflected in the 1998 Supplemental Indenture.

The provisions of the 1998 Indenture reprinted below are qualified in their entirety by reference to the 1998 Indenture, copies of which can be obtained without charge from the Information Agent. Capitalized terms used in this Annex A without definition have the same meanings as set forth in the 1998 Indenture.

**Article Eight of the Indenture would be amended to read in its entirety as follows:**

SECTION 8.1        Issuer and Guarantors May Consolidate, etc., on Certain Terms.

(a)  Each of the Issuer, Tyco and any other Guarantors, if any, covenants that it will not merge or consolidate with any other Person or sell or convey all or substantially all of its assets to any Person, unless (i) either the Issuer or such Guarantor, as the case may be, shall be the continuing entity, or the successor entity or the Person which acquires by sale or conveyance substantially all the assets of the Issuer or such Guarantor, as the case may be (if other than the Issuer or such Guarantor, as the case may be), shall expressly assume the due and punctual payment of the principal of and interest on all the Securities or the obligations under the Guarantees, as the case may be, according to their tenor, and the due and punctual performance and observance of all of the covenants and agreements of this Indenture to be performed or observed by the Issuer or such Guarantor, as the case may be, by supplemental indenture satisfactory to the Trustee, executed and delivered to the Trustee by such corporation, and (ii) the Issuer or such Guarantor, as the case may be, or such successor corporation, as the case may be, shall not, immediately after such merger or consolidation, or such sale or conveyance, be in default in the performance of any such covenant or agreement.

(b)  In connection with the Separation Transactions (as defined in Section 8.1(c)), the provisions of Section 8.1(a) shall be interpreted as follows:

> (i)      the transfer of a portion of the Issuer's assets to Tyco Electronics (as defined in Section 8.1(c)) and a portion of the Issuer's assets to Covidien (as defined in Section 8.1(c)), as contemplated by the Separation Transactions, shall be deemed not to be a sale or conveyance of all or substantially all of the Issuer's assets or Tyco's assets;

> (ii)     the transfer of a portion of the Issuer's assets to Tyco International Finance S.A. (as defined in Section 8.1(c)), as contemplated by the Separation Transactions, shall be deemed to be a conveyance of substantially all of the Issuer's assets to Tyco International Finance S.A. and be deemed not to be a sale or conveyance of all or substantially all of Tyco's assets; and

> (iii)    the distribution by Tyco to its shareholders of the shares of Covidien Ltd. and Tyco Electronics Ltd. shall be deemed not to be a sale or conveyance of all or substantially all of Tyco's assets.

(c) For purposes of this Article, the following terms have the meanings ascribed to them.

"*Covidien*" refers to both Covidien Ltd., a Bermuda company, and Covidien International Finance S.A., a Luxembourg company.

"*Separation Transactions*" means the series of transactions pursuant to which Tyco will separate its businesses into three independent, publicly traded companies: one for its healthcare businesses (Covidien); one for its electronics businesses (Tyco Electronics); and a third for its fire and security and engineered products and services businesses (Tyco and Tyco International Finance S.A.). The steps of the Separation Transactions will include: (i) the contribution of the assets and liabilities of the healthcare businesses of the Issuer to Covidien International Finance S.A., the contribution of the assets and liabilities of the electronics businesses of the Issuer to Tyco Electronics Group S.A., and the contribution of the assets and liabilities of the fire and security and engineered products and services businesses of the Issuer to Tyco

International Finance S.A.; (ii) the assumption by Tyco International Finance S.A. as the successor entity under this Article of the Issuer's obligations under this Indenture and under the Securities, which will continue to be guaranteed by Tyco; (iii) the liquidation of the Issuer and the liquidating distribution to Tyco in connection therewith of all of the shares of capital stock of Covidien Ltd., Tyco Electronics Ltd. and Tyco International Finance S.A.; and (iv) the distribution by Tyco to its shareholders of the shares of Covidien Ltd. and Tyco Electronics Ltd.

"*Tyco Electronics*" refers to both Tyco Electronics Ltd., a Bermuda company, and Tyco Electronics Group S.A., a Luxembourg company.

"*Tyco International Finance S.A.*" refers to Tyco International Finance S.A., a Luxembourg company.

SECTION 8.2    Successor Entity Substituted.

In case of any such consolidation, merger, sale or conveyance in which the Issuer or any Guarantor, as the case may be, is not the continuing entity, and following such an assumption by the successor entity, such successor entity shall succeed to and be substituted for the Issuer or such Guarantor, as the case may be, with the same effect as if it had been named herein. Such successor entity may cause to be signed, and may issue either in its own name or in the name of the Issuer or such Guarantor, as the case may be, prior to such succession any or all of the Securities or Guarantees as the case may be, issuable hereunder which theretofore shall not have been signed by the Issuer or such Guarantor, as the case may be, and delivered to the Trustee; and, upon the order of such successor entity instead of the Issuer or such Guarantor, as the case may be, and subject to all the terms, conditions and limitations in this Indenture prescribed, the Trustee shall authenticate and shall deliver any Securities or Guarantees, as the case may be, which previously shall have been signed and delivered by the officers of the Issuer or such Guarantor, as the case may be, to the Trustee for authentication, and any Securities or Guarantees, as the case may be, which such successor entity thereafter shall cause to be signed and delivered to the Trustee for that purpose. All of the Securities or Guarantees, as the case may be, so issued shall in all respects have the same legal rank and benefit under this Indenture as the Securities or Guarantees, as the case may be, theretofore or thereafter issued in accordance with the terms of this Indenture as though all of such Securities or such Guarantees, as the case may be, had been issued at the date of the execution hereof.

In case of any such consolidation, merger, sale, lease or conveyance such changes in phraseology and form (but not in substance) may be made in the Securities or Guarantees thereafter to be issued as may be appropriate.

In the event of any such sale or conveyance (other than a conveyance by way of lease) the Issuer or any Guarantor or any successor entity which shall theretofore have become such in the manner described in this Article shall be discharged from all obligations and covenants under this Indenture, the Securities and any Guarantee and may be liquidated and dissolved.

SECTION 8.3    Opinion of Counsel to Trustee.

The Trustee, subject to the provisions of Sections 5.1 and 5.2, may receive an Opinion of Counsel, prepared in accordance with Section 11.5, as conclusive evidence that any such consolidation, merger, sale, lease or conveyance, and any such assumption, and any such liquidation or dissolution, complies with the applicable provisions of this Indenture.

SECTION 8.4    Exception Applicable to Certain Guarantors.

The provisions of this Article shall not apply to a merger, consolidation, sale or conveyance of a Guarantor other than Tyco, if, in connection with such merger, consolidation, sale or conveyance, the Guarantee of such Guarantor is released and discharged in accordance with Section 3.11(b).

**ANNEX B**

**THE PROPOSED AMENDMENTS TO THE 2003 INDENTURE**

The following is a description of the 2003 Indenture Amendments to the 2003 Indenture to be made effective in accordance with the terms of Article IX of the 2003 Indenture. Holders of Notes who desire to be eligible to receive the Total Consideration, including the Early Consent Payment, must tender Notes and Consent to the 2003 Indenture Amendments on or prior to the Early Consent Date. Such amendments will be contained and reflected in the 2003 Supplemental Indenture.

The provisions of the 2003 Indenture reprinted below are qualified in their entirety by reference to the 2003 Indenture, copies of which can be obtained without charge from the Information Agent. Capitalized terms used in this Annex B without definition have the same meanings as set forth in the 2003 Indenture.

**Article X of the Indenture would be amended to read in its entirety as follows:**

Section 10.01    Consolidation, Merger and Sale of Assets.

(a) Each of Tyco and the Company covenants that it will not merge or consolidate with any other Person or sell or convey all or substantially all of its assets to any Person, unless

        (i)    either Tyco or the Company, as the case may be, shall be the continuing entity, or the successor entity or the Person which acquires by sale or conveyance substantially all the assets of Tyco or the Company, as the case may be (if other than Tyco or the Company, as the case may be), (A) shall expressly assume the due and punctual payment of the principal of, premium, if any, and interest on all the Securities, or, if applicable, the obligations under any Guarantee, as the case may be, according to their tenor, and the due and punctual performance and observance of all of the covenants and agreements of this Indenture to be performed or observed by Tyco or the Company, as the case may be, by supplemental indenture satisfactory to the Trustee, executed and delivered to the Trustee by such Person and (B) is an entity treated as a "corporation" for United States tax purposes or Tyco or the Company, as the case may be, obtains either (x) an opinion, in form and substance reasonably acceptable to the Trustee, of tax counsel of recognized standing reasonably acceptable to the Trustee, which counsel shall include Gibson, Dunn & Crutcher LLP, or (y) a ruling from the United States Internal Revenue Service, in either case to the effect that such merger or consolidation, or such sale or conveyance, will not result in an exchange of the Securities for new debt instruments for United States federal income tax purposes; and

        (ii)    no Event of Default and no event that, after notice or lapse of time or both, would become an Event of Default shall be continuing immediately after such merger or consolidation, or such sale or conveyance.

(b) In connection with the Separation Transactions (as defined in Section 10.03), the provisions of Section 10.01(a) shall be interpreted as follows:

        (i)    the transfer of a portion of the Company's assets to Tyco Electronics (as defined in Section 10.03) and a portion of the Company's assets to Covidien (as defined in Section 10.03) as contemplated by the Separation Transactions shall be deemed not to be a sale or conveyance of all or substantially all of the Company's assets or Tyco's assets;

        (ii)    the transfer of a portion of the Company's assets to Tyco International Finance S.A. (as defined in Section 10.03) as contemplated by the Separation Transactions shall be deemed to be a conveyance of substantially all of the Company's assets to Tyco International Finance S.A. and be deemed not to be a sale or conveyance of all or substantially all of Tyco's assets; and

(iii)    the distribution by Tyco to its shareholders of the shares of Covidien Ltd. and Tyco Electronics Ltd. shall be deemed not to be a sale or conveyance of all or substantially all of Tyco's assets.

(c)  The Company shall deliver to the Trustee prior to the consummation of the proposed transaction an Officer's Certificate to the foregoing effect and an Opinion of Counsel stating that the proposed transaction and such supplemental indenture comply with this Indenture.

(d)  To the extent that a Board Resolution or supplemental indenture pertaining to any series provides for different provisions relating to the subject matter of this Article X, the provisions in such Board Resolution or supplemental indenture shall govern for purposes of such series.

Section 10.02    Successor Person Substituted.

Upon any consolidation or merger, or any sale, lease, conveyance or other disposition of all or substantially all of the assets of Tyco or the Company, as the case may be, the successor Person formed by such consolidation or into or with which Tyco or the Company, as the case may be, is merged or to which such sale, lease, conveyance or other disposition is made shall succeed to, and be substituted for, and may exercise every right and power of, Tyco or the Company, as the case may be, under this Indenture with the same effect as if such successor Person has been named as Tyco or the Company, as the case may be, herein. In the event of any such sale or conveyance (other than a conveyance by way of lease) Tyco or the Company, as the case may be, or any successor entity which shall theretofore have become such in the manner described in this Article, shall be discharged from all obligations and covenants under this Indenture, the Securities and any Guarantee and may be liquidated and dissolved.

Section 10.03    Definitions of Certain Terms.

For purposes of this Article X, the following terms have the meanings ascribed to them.

"Covidien" refers to both Covidien Ltd., a Bermuda company, and Covidien International Finance S.A., a Luxembourg company.

"Separation Transactions" means the series of transactions pursuant to which Tyco will separate its businesses into three independent, publicly traded companies: one for its healthcare businesses (Covidien); one for its electronics businesses (Tyco Electronics); and a third for its fire and security and engineered products and services businesses (Tyco and Tyco International Finance S.A.). The steps of the Separation Transactions will include: (i) the contribution of the assets and liabilities of the healthcare businesses of the Company to Covidien International Finance S.A., the contribution of the assets and liabilities of the electronics businesses of the Company to Tyco Electronics Group S.A. and the contribution of the assets and liabilities of the fire and security and engineered products and services businesses of the Company to Tyco International Finance S.A.; (ii) the assumption by Tyco International Finance S.A. as the successor person under this Article X of the Company's obligations under this Indenture and under the Securities, which will continue to be guaranteed by Tyco; (iii) the liquidation of the Company and the liquidating distribution to Tyco in connection therewith of the shares of Covidien Ltd., Tyco Electronics Ltd. and Tyco International Finance S.A.; and (iv) the distribution by Tyco to its shareholders of all of the shares of capital stock of Covidien Ltd. and Tyco Electronics Ltd.

"Tyco Electronics" refers to both Tyco Electronics Ltd., a Bermuda corporation and Tyco Electronics Group S.A., a Luxembourg company.

"Tyco International Finance S.A." refers to Tyco International Finance S.A., a Luxembourg company.

## ANNEX C

### FORMULA TO DETERMINE THE TOTAL CONSIDERATION

| | | |
|---|---|---|
| YLD | = | Cash Flow Yield expressed as a percentage rounded to three decimal places. |
| CPN | = | The nominal rate of interest currently payable on Notes expressed as a percentage. |
| N | = | The number of semi-annual interest payments from (but not including) the most recent payment of semi-annual interest to (and including) the maturity date. |
| S | = | The number of days from and including the semi-annual interest payment date immediately preceding the applicable Payment Date up to (but not including) the applicable Payment Date. The number of days is computed using the 30/360 day-count method. |
| R | = | $1,000 principal amount of the Notes. |
| / | = | Divide. The term immediately to the left of the division symbol is divided by the term immediately to the right of the division symbol before any other addition or subtraction operations are performed. |
| Exp | = | Exponentiate. The term to the left of "exp" is raised to the power indicated by the term to the right of "exp". |
| $\sum_{k=1}^{N}$ | = | Summate. The term in the brackets to the right of the summation symbol is separately calculated "N" times (substituting for "k" in that term each whole number between 1 and N, inclusive), and the separate calculations are then added. |
| Total Consideration | = | The Total Consideration to be paid per $1,000 principal amount of Notes. The Total Consideration is rounded to the nearest cent, with five one-thousandths of a dollar to be taken as a full cent. |
| Accrued Interest | = | Accrued and unpaid interest per $1,000 principal amount up to but not including the Payment Date. The accrued interest is rounded to the nearest cent with five one-thousandths of a dollar to be taken as a full cent. |

Accrued Interest = $1000(CPN/2)(S/180)$

$$\text{Total Consideration} = \left[ \frac{R}{(1 + YLD/2)\exp(N - S/180)} \right] + \sum_{k=1}^{N} \left[ \frac{1000(CPN/2)}{(1 + YLD/2)\exp(k - S/180)} \right]$$

$$- 1000(CPN/2)(S/180)$$

## ANNEX D

## HYPOTHETICAL PRICING EXAMPLES

Set forth below are hypothetical illustrations of the Total Consideration for the Notes based on hypothetical data. It should, therefore, be used solely for the purpose of obtaining an understanding of the calculation of the Total Consideration as quoted at hypothetical rates and times and should not be used or relied upon for any other purpose.

Assumed Payment Date: May 29, 2007

Pricing as of April 26, 2007

| Coupon | Maturity | Benchmark Rate | Offer Spread (bps) | YLD | Purchase Price | Consent Payment | Total Consideration | N | S | Accrued Interest |
|--------|----------|----------------|--------------------|-----|----------------|-----------------|---------------------|-----|-----|------------------|
| 6.000% | 11/15/13 | 4.601% | 40 | 5.001% | $1,024.55 | $30.00 | $1,054.55 | 13 | 14 | $2.33 |
| 6.125% | 11/01/08 | 4.820% | 30 | 5.120% | $983.57 | $30.00 | $1,013.57 | 3 | 28 | $4.76 |
| 6.125% | 01/15/09 | 4.731% | 35 | 5.081% | $986.04 | $30.00 | $1,016.04 | 4 | 134 | $22.80 |
| 6.750% | 02/15/11 | 4.537% | 35 | 4.887% | $1,032.44 | $30.00 | $1,062.44 | 8 | 104 | $19.50 |
| 6.375% | 10/15/11 | 4.578% | 40 | 4.978% | $1,024.28 | $30.00 | $1,054.28 | 9 | 44 | $7.79 |
| 7.000% | 06/15/28 | 4.797% | 60 | 5.397% | $1,170.14 | $30.00 | $1,200.14 | 43 | 164 | $31.89 |
| 6.875% | 01/15/29 | 4.797% | 60 | 5.397% | $1,157.21 | $30.00 | $1,187.21 | 44 | 134 | $25.99 |

*The Depositary for the Tender Offers and the Consent Solicitations is:*

Global Bondholder Services Corporation

| *By Facsimile (Eligible Institutions Only):* | *By Mail or Hand:* |
|---|---|
| (212) 430-3775<br>Attention: Corporate Actions<br>For Information or<br>Confirmation by Telephone:<br>(212) 430-3774 | Global Bondholder Services Corporation<br>65 Broadway – Suite 723<br>New York, New York 10006<br>Attention: Corporate Actions |

Any questions or requests for assistance may be directed to the Dealer Managers at the addresses and telephone numbers set forth below. Requests for additional copies of this Offer to Purchase and the Letter of Transmittal may be directed to the Information Agent. Requests for copies of the Indentures and the forms of the Supplemental Indentures may also be directed to the Information Agent. Beneficial owners may also contact their Custodian for assistance concerning the Tender Offers and the Consent Solicitations.

*The Information Agent for the Tender Offers and the Consent Solicitations is:*

Global Bondholder Services Corporation
65 Broadway – Suite 723
New York, New York 10006
Attn: Corporate Actions
Bank and Brokers Call Collect: (212) 430-3774
All Others Please Call Toll-Free: (866) 470-3700

*The Dealer Managers for the Tender Offers and the Solicitation Agents for the Consent Solicitations are:*

| Morgan Stanley<br>Liability Management Group<br>1585 Broadway, Floor 04<br>New York, NY 10036<br>(212) 761-1941<br>Toll Free: (800) 624-1808 | Goldman, Sachs & Co.<br>Liability Management<br>1 New York Plaza<br>New York, NY 10004<br>(212) 902-9077<br>Toll Free: (800) 828-3182 |
|---|---|

LETTER OF TRANSMITTAL AND CONSENT

of

# Tyco International Group S.A.

Pursuant to the Offer to Purchase and Consent Solicitation Statement
dated April 27, 2007
for Any and All of its Outstanding
Securities Listed on the Table Below

| Title of Securities | CUSIP Number | Outstanding Amount | UST Reference Security | Fixed Spread (bp) | Bloomberg Reference Page | Early Consent Payment |
|---|---|---|---|---|---|---|
| **2003 Indenture Notes** | | | | | | |
| 6.0% notes due 2013 | 902118BK3 | $1,000,000,000 | 4.25% due 11/15/2013 | 40 | PX6 | $30.00 |
| **1998 Indenture Notes** | | | | | | |
| 6.125% notes due 2008 | 902118AM9 | $400,000,000 | 4.875% due 10/31/2008 | 30 | PX4 | $30.00 |
| 6.125% notes due 2009 | 902118AJ7 | $400,000,000 | 3.250% due 1/15/2009 | 35 | PX4 | $50.00 |
| 6.75% notes due 2011 | 902118AY4 | $1,000,000,000 | 5.000% due 2/15/2011 | 35 | PX5 | $30.00 |
| 6.375% notes due 2011 | 902118BC1 | $1,500,000,000 | 4.500% due 9/30/2011 | 40 | PX6 | $30.00 |
| 7.0% notes due 2028 | 902118AC2 | $500,000,000 | 4.75% due 2/15/2037 | 60 | PX1 | $30.00 |
| 6.875% notes due 2029 | 902118AK4 | $800,000,000 | 4.75% due 2/15/2037 | 60 | PX1 | $30.00 |

THE CONSENT SOLICITATIONS WILL EXPIRE AT 5:00 P.M., NEW YORK CITY TIME, ON THURSDAY, MAY 10, 2007, UNLESS EXTENDED OR EARLIER TERMINATED (SUCH TIME AND DATE, AS THE SAME MAY BE EXTENDED, THE "EARLY CONSENT DATE"). THE TENDER OFFERS WILL EXPIRE AT 12:00 MIDNIGHT, NEW YORK CITY TIME, ON THURSDAY, MAY 24, 2007, UNLESS EXTENDED OR EARLIER TERMINATED (SUCH TIME AND DATE, AS THE SAME MAY BE EXTENDED, THE "EXPIRATION DATE").

*The Depositary for the Tender Offers and the Consent Solicitations is:*
Global Bondholder Services Corporation

*By Facsimile*
*(Eligible Institutions Only):*
(212) 430-3775
Attention: Corporate Actions
For Information or Confirmation by Telephone:
(212) 430-3774

*By Registered or Certified Mail,*
*Hand or Overnight Delivery:*
Global Bondholder Services Corporation
65 Broadway – Suite 723
New York, New York 10006
Attention: Corporate Actions

DELIVERY OF THIS LETTER OF TRANSMITTAL AND CONSENT (THIS "LETTER OF TRANSMITTAL") TO AN ADDRESS OTHER THAN AS SET FORTH ON THE BACK COVER OF THIS LETTER OF TRANSMITTAL, OR TRANSMISSIONS OF INSTRUCTIONS VIA A FACSIMILE NUMBER OTHER THAN AS SET FORTH ON THE BACK COVER OF THIS LETTER OF TRANSMITTAL, WILL NOT CONSTITUTE A VALID DELIVERY TO THE DEPOSITARY.

THE INSTRUCTIONS ACCOMPANYING THIS LETTER OF TRANSMITTAL SHOULD BE READ CAREFULLY AND IN THEIR ENTIRETY BEFORE THIS LETTER OF TRANSMITTAL IS COMPLETED.

All capitalized terms used but not defined herein shall have the meanings ascribed to them in the Offer to Purchase and Consent Solicitation Statement, dated April 27, 2007 (the "Offer to Purchase").

This Letter of Transmittal is to be used by holders (each, a "Holder," and collectively, the "Holders") of Notes if certificates representing Notes are to be physically delivered to the Depositary, in which case such certificates must be delivered by the Holders of Notes together with this Letter of Transmittal. This Letter of Transmittal also is being supplied only for informational purposes to persons who hold Notes in book-entry form through the facilities of DTC.

Tender of the Notes and delivery of Consents held through DTC must be made pursuant to the procedures described under "Procedures for Tendering Notes and Delivering Consents — Tender of Notes Held Through DTC and Delivery of Consents" in the Offer to Purchase.

Holders of Notes who are tendering by book-entry transfer to the Depositary's account at DTC must tender Notes and deliver Consents through ATOP. DTC Participants that are accepting the Tender Offers must transmit their acceptance (and thereby deliver their Consents) to DTC, which will verify the acceptance and execute a book-entry delivery to the Depositary's account at DTC. DTC will then send an Agent's Message to the Depositary for its acceptance. Delivery of the Agent's Message by DTC means that DTC has received an express acknowledgment from each DTC Participant tendering through ATOP that such DTC Participant (i) has received this Letter of Transmittal and agrees to be bound by the terms of this Letter of Transmittal and that the Company may enforce such agreement against such DTC Participant and (ii) consents to the Proposed Amendments and to the execution and delivery of the applicable Supplemental Indentures as described in the Offer to Purchase.

HOLDERS WHO WISH TO BE ELIGIBLE TO RECEIVE THE TOTAL CONSIDERATION FOR THEIR NOTES, AS SET FORTH IN THE OFFER TO PURCHASE, MUST VALIDLY TENDER AND NOT VALIDLY WITHDRAW THEIR NOTES AND VALIDLY DELIVER AND NOT VALIDLY REVOKE THEIR CONSENTS ON OR PRIOR TO THE EARLY CONSENT DATE. HOLDERS WHO VALIDLY TENDER THEIR NOTES AFTER THE EARLY CONSENT DATE BUT ON OR PRIOR TO THE EXPIRATION DATE WILL RECEIVE ONLY THE PURCHASE PRICE, AS SET FORTH IN THE OFFER TO PURCHASE.

In the event that the Tender Offers and the Consent Solicitations are terminated, withdrawn or otherwise not completed, neither the Total Consideration nor the Purchase Price, as the case may be, will be paid or become payable and any tendered Notes will be promptly returned to the tendering Holders.

Holders who validly tender their Notes in the Tender Offers are obligated to consent to the Proposed Amendments. Pursuant to the terms of the Offer to Purchase and this Letter of Transmittal, the completion, execution and delivery by a Holder of this Letter of Transmittal in connection with the tender of Notes will be deemed to constitute the Consent of the tendering Holder to the applicable Proposed Amendments. Holders may not deliver Consents without tendering their Notes in the Tender Offers. Holders who validly tender and do not validly withdraw their Notes after the Early Consent Date but on or prior to the Expiration Date will receive only the Purchase Price for their Notes, and not the Early Consent Payment. The Tender Offers and Consent Solicitations are made upon the terms and subject to the conditions set forth in the Offer to Purchase and in this Letter of Transmittal. Holders should carefully read in its entirety the information set forth therein and herein.

THIS LETTER OF TRANSMITTAL DOES NOT CONSTITUTE AN OFFER TO PURCHASE IN ANY JURISDICTION IN WHICH, OR TO OR FROM ANY PERSON TO OR FROM WHOM, IT IS UNLAWFUL TO MAKE SUCH OFFER UNDER APPLICABLE SECURITIES OR "BLUE SKY" LAWS. THE DELIVERY OF THIS LETTER OF TRANSMITTAL SHALL NOT UNDER ANY CIRCUMSTANCES CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AS OF ANY TIME SUBSEQUENT TO THE DATE HEREOF OR THAT THERE HAS BEEN NO CHANGE IN THE INFORMATION SET FORTH HEREIN OR IN ANY ATTACHMENTS HERETO OR IN THE AFFAIRS OF THE COMPANY OR ANY OF ITS SUBSIDIARIES OR AFFILIATES SINCE THE DATE HEREOF, EXCEPT AS REQUIRED BY APPLICABLE LAW, THE COMPANY DISCLAIMS ANY OBLIGATION TO UPDATE OR REVISE ANY INFORMATION CONTAINED IN THIS LETTER OF TRANSMITTAL.

## TENDER OF NOTES AND DELIVERY OF CONSENTS

List below the Notes to which this Letter of Transmittal relates. If the space provided is inadequate, list the certificate numbers and principal amounts on a separately executed schedule and affix the schedule to this Letter of Transmittal. See Instruction 11. Tender of the Notes and delivery of Consents will be accepted only in principal amounts equal to $1,000 or integral multiples thereof. This form need not be completed by Holders tendering Notes and delivering Consents by ATOP.

| 6.0% notes due 2013 (CUSIP No. 902118BK3) | | | |
|---|---|---|---|
| Name(s) and Address(es) of Holders(s) (Please fill in if blank) | Notes Tendered (Attach additional list(s) if necessary) | | |
| | Certificate Numbers | Aggregate Principal Amount Represented | Principal Amount Tendered And As To Which Consents Are Given* |
| | | | |
| | | | |
| | | | |
| | | | |
| | Total Principal Amount Tendered: | | |

* Unless otherwise indicated in the column labeled "Principal Amount Tendered And As To Which Consents Are Given" and subject to the terms and conditions of the Offer to Purchase, the entire principal amount represented by the certificates for all Notes delivered to the Depositary will be deemed to have been tendered, and a related Consent in respect thereof given. See Instruction 1.

3

| 6.125% notes due 2035 (CUSIP No. 902118AM9) | | | |
|---|---|---|---|
| **Name(s) and Address(es) of Holder(s)** **(Please fill in if blank)** | **Notes Tendered** **(Attach additional list(s) if necessary)** | | |
| | **Certificate Numbers** | **Aggregate Principal Amount Represented** | **Principal Amount Tendered And As To Which Consents Are Given\*** |
| | | | |
| | | | |
| | | | |
| | | | |
| | **Total Principal Amount Tendered:** | | |

\* Unless otherwise indicated in the column labeled "Principal Amount Tendered And As To Which Consents Are Given" and subject to the terms and conditions of the Offer to Purchase, the entire principal amount represented by the certificates for all Notes delivered to the Depositary will be deemed to have been tendered, and a related Consent in respect thereof given. See Instruction 2.

4

| 6.125% notes due 2009 (CUSIP No. 902118AJ7) | | | |
|---|---|---|---|
| Name(s) and Address(es) of Holders(s) (Please fill in if blank) | Notes Tendered (Attach additional list(s) if necessary) | | |
| | Certificate Numbers | Aggregate Principal Amount Represented | Principal Amount Tendered And As To Which Consents Are Given* |
| | | | |
| | | | |
| | | | |
| | | | |
| | Total Principal Amount Tendered: | | |

| 6.75% notes due 2011 (CUSIP No. 902118AY4) | | | |
|---|---|---|---|
| Name(s) and Address(es) of Holders(s) (Please fill in if blank) | Notes Tendered (Attach additional list(s) if necessary) | | |
| | Certificate Numbers | Aggregate Principal Amount Represented | Principal Amount Tendered And As To Which Consents Are Given* |
| | | | |
| | | | |
| | | | |
| | | | |
| | Total Principal Amount Tendered: | | |

\* Unless otherwise indicated in the column labeled "Principal Amount Tendered And As To Which Consents Are Given" and subject to the terms and conditions of the Offer to Purchase, the entire principal amount represented by the certificates for all Notes delivered to the Depositary will be deemed to have been tendered, and a related Consent in respect thereof given. See Instruction 2.

| 6.375% notes due 2011 (CUSIP No. 902118BC1) | | | |
|---|---|---|---|
| Name(s) and Address(es) of Holders(s) (Please fill in if blank) | Notes Tendered (Attach additional list(s) if necessary) | | |
| | Certificate Numbers | Aggregate Principal Amount Represented | Principal Amount Tendered And As To Which Consents Are Given* |
| | | | |
| | | | |
| | | | |
| | Total Principal Amount Tendered: | | |

| 7.0% notes due 2025 (CUSIP No. 902118AC2) | | | |
|---|---|---|---|
| Name(s) and Address(es) of Holders(s) (Please fill in if blank) | Notes Tendered (Attach additional list(s) if necessary) | | |
| | Certificate Numbers | Aggregate Principal Amount Represented | Principal Amount Tendered And As To Which Consents Are Given* |
| | | | |
| | | | |
| | | | |
| | | | |
| | Total Principal Amount Tendered: | | |

\* Unless otherwise indicated in the column labeled "Principal Amount Tendered And As To Which Consents Are Given" and subject to the terms and conditions of the Offer to Purchase, the entire principal amount represented by the certificates for all Notes delivered to the Depositary will be deemed to have been tendered, and a related Consent in respect thereof given. See Instruction 2.

6

| 6.875% notes due 2029 (CUSIP No. 962118AK6) | | | |
|---|---|---|---|
| **Name(s) and Address(es) of Holders(s)**<br>**(Please fill in if blank)** | **Notes Tendered**<br>**(Attach additional list(s) if necessary)** | | |
| | **Certificate Numbers** | **Aggregate Principal Amount Represented** | **Principal Amount Tendered And As To Which Consents Are Given\*** |
| | | | |
| | | | |
| | | | |
| | **Total Principal Amount Tendered:** | | |

\* Unless otherwise indicated in the column labeled "Principal Amount Tendered And As To Which Consents Are Given" and subject to the terms and conditions of the Offer to Purchase, the entire principal amount represented by the certificates for all Notes delivered to the Depositary will be deemed to have been tendered, and a related Consent in respect thereof given. See instruction 2.

The names and addresses of the Holders should be printed above exactly as they appear on the certificates representing the Notes tendered and Consents delivered hereby. The Notes and the principal amount of the Notes that the undersigned Holder wishes to tender and as to which Consents are given should be indicated in the appropriate boxes.

7

**NOTE: SIGNATURES MUST BE PROVIDED BELOW**
**PLEASE READ THE ACCOMPANYING INSTRUCTIONS CAREFULLY**

Ladies and Gentlemen:

The undersigned hereby tenders to Tyco International Group S.A., Luxembourg company (the "Company"), the aggregate principal amount of Notes indicated in this Letter of Transmittal upon the terms and subject to the conditions set forth in this Letter of Transmittal and the Offer to Purchase and Consent Solicitation Statement, dated April 27, 2007 (the "Offer to Purchase"), receipt of which is hereby acknowledged.

Upon the terms and subject to the conditions of the Tender Offers and the Consent Solicitations, the undersigned hereby consents to the applicable Proposed Amendments to the Indentures and to the execution and delivery of the applicable Supplemental Indentures that will give effect to the applicable Proposed Amendments with respect to the Notes.

Subject to, and effective upon, acceptance for payment of, and payment for, Notes tendered herewith in accordance with the terms of the Offer to Purchase (including, if the Tender Offers are extended or amended, the terms and conditions of such extension or amendment), the undersigned hereby: (a) irrevocably sells, assigns and transfers to, or upon the order of, the Company, all right, title and interest in and to all Notes that are being tendered hereby; (b) waives any and all rights with respect to the Notes (including any existing or past defaults and their consequences in respect of the Notes and the Indentures under which the Notes were issued); (c) releases and discharges the Company, Tyco International Finance S.A. ("TIFSA") and Tyco from any and all claims such Holder may have now, or may have in the future arising out of, or related to, the Notes, including, any claims that such Holder is entitled to receive additional principal or interest payments with respect to the Notes or to participate in any redemption or defeasance of the Notes; (d) delivers such Holder's Consent to the applicable Proposed Amendments and to the execution and delivery of the applicable Supplemental Indentures; and (e) irrevocably constitutes and appoints the Depositary the true and lawful agent and attorney-in-fact of such Holder with respect to any such tendered Notes, with full power of substitution and resubstitution (such power of attorney being deemed to be an irrevocable power coupled with an interest) to (i) deliver certificates representing such Notes, or transfer ownership of such Notes on the account books maintained by DTC, together, in any such case, with all accompanying evidences of transfer and authenticity, to the Company, (ii) present such Notes for transfer on the relevant security register, (iii) receive all benefits or otherwise exercise all rights of beneficial ownership of such Notes (except that the Depositary will have no rights to, or control over, funds from the Company, except as agent for the consenting and tendering Holders, for the Total Consideration or the Purchase Price, as the case may be, and accrued and unpaid interest for any tendered Notes that are accepted for payment by the Company) and (iv) deliver to the Company this Letter of Transmittal as evidence of the undersigned's Consent to the applicable Proposed Amendments and to the execution and delivery of the applicable Supplemental Indentures and as certification that the Requisite Consents (defined below) to the applicable Proposed Amendments duly executed by Holders have been received, all in accordance with the terms of the Offer to Purchase.

The undersigned agrees and acknowledges that, by the execution and delivery hereof, the undersigned makes and provides the written Consent, with respect to the principal amount of Notes tendered hereby or represented hereby, to the Proposed Amendments to the Indentures and to the execution and delivery of the Supplemental Indentures. The Company intends to execute and deliver each of the Supplemental Indentures on, or as soon as practicable after, the Early Consent Date if the 1998 Requisite Consents or 2003 Requisite Consents have been obtained, as applicable.

The undersigned understands that Notes tendered on or prior to the Early Consent Date may be withdrawn by written notice of withdrawal (or a properly transmitted "Request Message" through ATOP) received by the Depositary at any time on or prior to the Early Consent Date, but not thereafter, unless the applicable Tender Offer is terminated without any Notes being purchased thereunder. Notes validly tendered and Consents validly delivered and not validly withdrawn or revoked on or prior to the Early Consent Date may not be withdrawn or revoked after the Early Consent Date. In the event of a termination of either of the Tender Offers, Notes tendered pursuant to such Tender Offer will be returned to the tendering Holder promptly.

A Holder may not validly revoke a Consent except by validly withdrawing such Holder's previously tendered Notes, and the valid withdrawal of a Holder's Notes will constitute the concurrent valid revocation of such Holder's Consent. As a result, a Holder who validly withdraws previously tendered Notes will not receive the Purchase Price or the Early Consent Payment, as applicable, with respect to those Notes. ANY NOTES VALIDLY TENDERED AND CONSENTS VALIDLY DELIVERED AND NOT VALIDLY WITHDRAWN OR REVOKED ON OR PRIOR TO THE EARLY CONSENT DATE MAY NOT BE WITHDRAWN OR REVOKED AFTER THE EARLY CONSENT DATE.

The undersigned hereby represents and warrants that the undersigned (i) owns the Notes tendered and is entitled to tender such Notes and (ii) has full power and authority to tender, sell, assign and transfer the Notes tendered hereby and to deliver the Consent contained herein and that, when the same are accepted for payment by the Company, the Company will acquire good, marketable and unencumbered title thereto, free and clear of all liens, restrictions, charges and encumbrances, and the same will not be subject to any adverse claim. The undersigned will, upon request, execute and deliver any additional documents deemed

8

by the Depositary or the Company to be necessary or desirable to complete the sale, assignment and transfer of the Notes tendered hereby or to perfect the undersigned's Consent to the applicable Proposed Amendments and to complete the execution of the applicable Supplemental Indentures.

No authority herein conferred or agreed to be conferred shall be affected by, and all such authority shall survive, the death or incapacity of the undersigned. All obligations of the undersigned hereunder shall be binding upon the heirs, personal and legal representatives, administrators, trustees in bankruptcy, successors and assigns of the undersigned.

The undersigned understands that tender of the Notes pursuant to any of the procedures described under the caption "Procedures for Tendering Notes and Delivering Consents" in the Offer to Purchase and in the instructions hereto will constitute a binding agreement between the undersigned and the Company upon the terms and subject to the terms and conditions set forth in the Offer to Purchase, including the Company's right to amend such terms and conditions.

For purposes of the Tender Offers and Consent Solicitations, the undersigned understands that the Company will be deemed to have accepted for payment validly tendered Notes (or defectively tendered Notes with respect to which the Company has waived such defect or defects) only when the Company gives oral or written notice thereof to the Depositary. Payment for Notes accepted for payment pursuant to the Offer to Purchase will be made by deposit with the Depositary of the Total Consideration or Purchase Price, as the case may be, and accrued and unpaid interest. The Depositary will act as agent for the tendering and consenting Holders for the purpose of receiving payment from the Company and transmitting payment to each Holders.

The undersigned understands that the delivery and surrender of Notes is not effective, and the risk of loss of the Notes does not pass to the Depositary, until receipt by the Depositary of this Letter of Transmittal, or a facsimile hereof, properly completed and duly executed, together with all accompanying evidences of transfer and authenticity and any other required documents in a form satisfactory to the Company.

The undersigned hereby recognizes and acknowledges that: (i) all questions as to the validity, form, eligibility (including time of receipt) and acceptance for payment of Notes and deliveries of Consents will be resolved by the Company, whose determination will be final and binding; (ii) the Company reserves the absolute right to reject any or all tenders and Consents that are not in proper form or the acceptance, withdrawal or revocation of which may, in the opinion of counsel for the Company, be unlawful; (iii) the Company reserves the absolute right to waive any condition to the Tender Offers and any irregularities or conditions of tender as to particular Notes or of delivery as to particular consents; (iv) the Company's interpretation of the terms and conditions of the Offer to Purchase (including the instructions in this Letter of Transmittal) will be final and binding; (v) unless waived, any irregularities in connection with tenders of Notes or deliveries of Consents must be cured within such time as the Company shall determine; (vi) the Company and the Depositary shall not be under any duty to give notification of defects in such tenders of Notes or deliveries of Consents and shall not incur liabilities, for failure to give such notification; (vii) tenders of Notes or deliveries of Consents will not be deemed to have been made until such irregularities have been cured or waived; (viii) any Notes received by the Depositary that are not validly tendered and as to which the irregularities have not been cured or waived will be returned by the Depositary to the tendering Holder, unless otherwise provided in this Letter of Transmittal, as soon as practicable following the Expiration Date; and (ix) the consummation of the Tender Offers and the Consent Solicitations is conditioned upon, among other things, the satisfaction of the Financing Condition, the Requisite Consent Condition, and the Supplemental Indenture Condition and the General Conditions, as described under the caption "Conditions of the Tender Offer and Consent Solicitation" in the Offer to Purchase.

Unless otherwise indicated herein under "Special Issuance Instructions," the undersigned hereby requests that any Notes representing principal amounts not tendered be issued in the name(s) of the undersigned, and checks constituting payments for Notes purchased and Early Consent Payments made in connection with the Tender Offers and the Consent Solicitations be issued to the order of the undersigned. Similarly, unless otherwise indicated herein under "Special Delivery Instructions," the undersigned hereby requests that any Notes representing principal amounts not tendered and checks constituting payments for Notes to be purchased and the Early Consent Payments made in connection with the Tender Offers and Consent Solicitations be delivered to the undersigned at the address(es) shown herein. In the event that the "Special Issuance Instructions" box or the "Special Delivery Instructions" box, or both, are completed, the undersigned hereby requests that any Notes representing principal amounts not tendered be issued in the name(s) of, certificates for such Notes be delivered to, and checks constituting payments for Notes purchased and Early Consent Payments made in connection with the Tender Offers and Consent Solicitations, be issued in the name(s) of and be delivered to, the person(s) at the address(es) so indicated, as applicable.

9

**SPECIAL ISSUANCE INSTRUCTIONS**
(See Instructions 2, 4, 5 and 7)

To be completed ONLY if certificates(s) for the Notes not tendered or not purchased, and/or the check for the Total Consideration, or the Purchase Price, as the case may be, of the Notes purchased, are to be issued in the name of someone other than the undersigned.

☐ Issue check and Certificate(s) to:

Name: _____
(Please Type or Print)

Address: _____
(Include Zip Code)

_____
(Employer Identification or
Social Security Number)

(See Substitute Form W-9 Included Herewith)

---

**SPECIAL DELIVERY INSTRUCTIONS**
(See Instructions 2, 4, 5 and 7)

To be completed ONLY if certificates(s) for the Notes not tendered or not purchased, and/or the check for the Total Consideration, or the Purchase Price, as the case may be, of Notes purchased are to be sent to someone other than the undersigned.

☐ Mail check and Certificate(s) to:

Name: _____
(Please Type or Print)

Address: _____
(Include Zip Code)

_____
(Employer Identification or
Social Security Number)

(See Substitute Form W-9 Included Herewith)

10

**IMPORTANT**
**HOLDER(S) SIGN HERE**
**(SEE INSTRUCTIONS 1 AND 3)**
**(PLEASE ALSO COMPLETE SUBSTITUTE FORM W-9 CONTAINED HEREIN)**

Authorized Signature: _____

Authorized Signature: _____
                              Signature(s) of Holder(s):

Dated: _____

(Must be assigned by registered Holder(s) exactly as name(s) appear(s) on certificate(s) or by person(s) authorized to become registered Holder(s) by certificate(s) and documents transmitted with this Letter of Transmittal. If signed by person(s) to whom the Notes represented hereby have been assigned or transferred as evidenced by endorsement or stock powers transmitted herewith, the signatures must be guaranteed. See Instruction 3. If signature is by trustee(s), executor(s), administrator(s), guardian(s), attorney(s)-in-fact, officer(s), agent(s), corporation(s) or other person(s) acting in a fiduciary or representative capacity, please provide the following information and see Instruction 3.)

Name(s): _____
                              (Please Print)

Capacity (Full Title): _____

Address: _____

_____
                              (Include Zip Code)

_____
                    (Daytime Telephone Number, including Area Code)

_____
              (Employer Identification or Social Security Number)
                    (See Substitute Form W-9 Included Herewith)

**SIGNATURE GUARANTEE**
**(IF REQUIRED-SEE INSTRUCTION 3)**

Authorized Signature: _____

Name: _____
                              (Please Print)

Name of Firm: _____

Address: _____
                    (Include Zip Code and Place Seal Here)

Telephone Number, including Area Code: _____

Dated: _____, 2007

11

## INSTRUCTIONS
### FORMING PART OF THE TERMS AND CONDITIONS OF THE TENDER OFFERS
### AND CONSENT SOLICITATIONS

**1.    Procedures for Tendering Notes and Delivering Consents; Withdrawal of Tenders and Revocation of Consents.**
To tender Notes in the Tender Offers and to deliver Consents in the Consent Solicitations, certificates representing such Notes,
together with a properly completed and duly executed copy (or facsimile) of this Letter of Transmittal, and any other documents
required by this Letter of Transmittal must be received by the Depositary at the address set forth herein on or prior to the Early
Consent Date or the Expiration Date, as the case may be. The method of delivery of this Letter of Transmittal, certificates for
Notes and all other required documents to the Depositary is at the election and risk of Holders. If such delivery is to be made by
mail, it is suggested that Holders use properly insured registered mail, return receipt requested, and that the mailing be made
sufficiently in advance of the Early Consent Date or the Expiration Date, as the case may be, to permit delivery to the Depositary
on or prior to such date. Except as otherwise provided below, the delivery will be deemed made when actually received or
confirmed by the Depositary. THIS LETTER OF TRANSMITTAL AND NOTES SHOULD BE SENT ONLY TO THE
DEPOSITARY, AND NOT TO TYCO, THE COMPANY, THE DEALER MANAGERS, THE SOLICITATION
AGENTS, THE INFORMATION AGENT OR THE BOOK-ENTRY TRANSFER FACILITY.

This Letter of Transmittal also is being supplied only for informational purposes to persons who hold Notes in book-entry
form through the facilities of DTC. Tender of Notes held through DTC must be made pursuant to the procedures described in the
Offer to Purchase under the caption "Procedures for Tendering Notes and Delivering Consents — Tender of Notes Held Through
DTC and Delivery of Consents."

Except as provided herein for the book-entry procedures, unless Notes being tendered and Consents being delivered are
deposited with the Depositary prior to the Early Consent Date or Expiration Date (accompanied by the appropriate, properly
completed and duly executed Letter of Transmittal and any required signature guarantees and other documents required by this
Letter of Transmittal, unless validly tendered through ATOP), as the case may be, the Company may, in its sole discretion, reject
such tender and Consent. Payment for Notes will be made only against deposit of tendered Notes and delivery of all other required
documents.

UPON RECEIPT OF THE 1998 REQUISITE CONSENTS OR 2003 REQUISITE CONSENTS, AS APPLICABLE,
THE COMPANY INTENDS TO CAUSE THE EXECUTION OF THE APPLICABLE SUPPLEMENTAL INDENTURES
PROVIDING FOR THE APPLICABLE PROPOSED AMENDMENTS TO OCCUR ON, OR AS SOON AS
PRACTICABLE AFTER, THE EARLY CONSENT DATE. UPON ITS BECOMING OPERATIVE, EACH OF THE
SUPPLEMENTAL INDENTURES WILL BE BINDING UPON EACH HOLDER OF THE APPLICABLE NOTES,
WHETHER OR NOT SUCH HOLDER HAS TENDERED ITS NOTES AND CONSENTED TO THE PROPOSED
AMENDMENTS.

By executing this Letter of Transmittal (or a facsimile thereof) or tendering through ATOP, a tendering Holder waives any
right to receive any notice of the acceptance for payment of tendered Notes.

For a full description of the procedures for tendering Notes, see "Procedures for Tendering Notes and Delivering Consents"
in the Offer to Purchase.

Holders who tender their Notes in the Tender Offers are obligated to deliver Consents to the Proposed Amendments. Notes
validly tendered on or prior to the Early Consent Date may be validly withdrawn by following the procedures set forth in the Offer
to Purchase at any time on or prior to the Early Consent Date, but not thereafter, unless the Tender Offers are terminated without
any Notes being purchased thereunder. Notes validly tendered after the Early Consent Date may not be withdrawn. A valid
withdrawal of tendered Notes on or prior to the Early Consent Date will be deemed a valid revocation of the related Consents.

Holders who wish to exercise their right of withdrawal with respect to the Tender Offers and revocation of their Consents
must give written notice of withdrawal and revocation, delivered by mail, hand delivery or manually signed facsimile
transmission, or a properly transmitted "Request Message" through ATOP, which notice must be received by the Depositary at its
address set forth on the back cover of this Letter of Transmittal on or prior to the Early Consent Date. In order to be valid, a
notice of withdrawal and revocation must specify the name of the person who deposited the Notes to be withdrawn (the
"Depositor"), the name in which those Notes are registered (or, if tendered by a book-entry transfer, the name of the participant in
the Book-Entry Transfer Facility whose name appears on the security position listing as the owner of such Notes), if different
from that of the Depositor, and the principal amount of Notes to be withdrawn. If certificates have been delivered or otherwise
identified (through confirmation of book-entry transfer of such Notes) to the Depositary, the name of the Holder and the
certificate number or numbers relating to such Notes withdrawn also must be furnished to the Depositary as aforesaid prior to the
physical release of the certificates for the withdrawn Notes (or, in the case of Notes transferred by book-entry transfer, the name
and number of the account at the Book-Entry Transfer Facility to be credited with withdrawn Notes). The notice of withdrawal

12

and revocation (other than a notice transmitted through ATOP) must be signed by the Holder in the same manner as this Letter of Transmittal (including, in any case, any required signature guarantee(s)) or be accompanied by evidence satisfactory to the Company that the person withdrawing the tender has the legal authority to withdraw such tender on behalf of the Holder. Holders may not rescind withdrawals of tendered Notes. However, validly withdrawn Notes at any time on or prior to the Expiration Date may be re-tendered by following the procedures therefor described elsewhere in the Offer to Purchase.

The valid withdrawal of a tender of a Holder's Notes will constitute the concurrent valid revocation of such Holder's Consent. A Holder who validly withdraws previously tendered Notes will not receive the Purchase Price or an Early Consent Payment with respect to those Notes. ANY NOTES VALIDLY TENDERED AND CONSENTS VALIDLY DELIVERED AND NOT VALIDLY WITHDRAWN OR REVOKED ON OR PRIOR TO THE EARLY CONSENT DATE MAY NOT BE WITHDRAWN OR REVOKED AFTER THE EARLY CONSENT DATE.

2.   Partial Tenders and Consents. Tenders of Notes pursuant to the Tender Offers and the corresponding Consents thereto pursuant to the Consent Solicitations will be accepted only in principal amounts equal to $1,000 or integral multiples thereof. If less than the entire principal amount of any Notes evidenced by a submitted certificate is tendered, the tendering Holder must fill in the principal amount tendered in the last column of the box entitled "Description of the Notes" herein. Unless otherwise indicated, the entire principal amount represented by the certificates for all Notes delivered to the Depositary will be deemed to have been tendered, and a related Consent in respect thereof given. If the entire principal amount of all Notes is not tendered, certificates for the principal amount of Notes not tendered will be sent to the Holder unless otherwise provided in the appropriate box on this Letter of Transmittal (see Instruction 4), promptly after the Notes are accepted for payment.

3.   Signatures on this Letter of Transmittal, Bond Powers and Guarantee of Signatures. If this Letter of Transmittal is signed by the Holder(s) of the Notes tendered hereby, the signature(s) must correspond with the name(s) as written on the face of the certificate(s) without alteration, enlargement or any change whatsoever.

IF THIS LETTER OF TRANSMITTAL IS EXECUTED BY A HOLDER OF NOTES WHO IS NOT THE REGISTERED HOLDER, THEN THE REGISTERED HOLDER MUST SIGN A VALID POWER OF ATTORNEY, WITH THE SIGNATURE OF SUCH REGISTERED HOLDER GUARANTEED BY AN ELIGIBLE INSTITUTION.

If any Notes tendered hereby are owned of record by two or more joint owners, all such owners must sign this Letter of Transmittal. If any tendered Notes are registered in different names on several certificates, it will be necessary to complete, sign and submit as many copies of this Letter of Transmittal and any necessary accompanying documents as there are different names in which certificates are held.

If this Letter of Transmittal is signed by the Holder, and the certificates for any principal amount of Notes not tendered for purchase are to be issued (or if a principal amount of Notes that is not tendered for purchase is to be reissued or returned) to the Holder, and checks constituting payments for Notes to be purchased and Early Consent Payment made in connection with the Tender Offers and the Consent Solicitations are to be issued to the order of the Holder, then the Holder need not endorse any certificates for tendered Notes nor provide a separate bond power. In any other case (including if this Letter of Transmittal is not signed by the Holder), the Holder must either properly endorse the certificates for Notes tendered or transmit a separate properly completed bond power with this Letter of Transmittal (in either case, executed exactly as the name(s) of the registered Holder(s) appear(s) on such Notes), with the signature on the endorsement or bond power guaranteed by an Eligible Institution, unless such certificates or bond powers are executed by an Eligible Institution.

No signature guarantee is required if: (i) this Letter of Transmittal is signed by the registered Holder(s) of the Notes tendered herewith and the payments for Notes to be purchased are to be made, or any Notes for principal amounts not tendered for purchase are to be issued, directly to such registered Holder(s) and neither the "Special Issuance Instructions" box nor the "Special Delivery Instructions" box of this Letter of Transmittal has been completed; or (ii) such Notes are tendered for the account of an Eligible Institution. In all other cases, all signatures on Letters of Transmittal accompanying Notes must be guaranteed by an Eligible Institution.

If this Letter of Transmittal or any certificates representing Notes or bond powers are signed by trustees, executors, administrators, guardians, attorneys-in-fact, officers of corporations, agents or others acting in a fiduciary or representative capacity, such persons should so indicate when signing, and proper evidence satisfactory to the Company of their authority so to act must be submitted with this Letter of Transmittal.

4.   Special Issuance and Special Delivery Instructions. Tendering Holders should indicate in the applicable box or boxes the name(s) and address(es) to which Notes for principal amounts not tendered or not accepted for payment or checks constituting payments for Notes to be purchased and Early Consent Payments made in connection with the Tender Offers and the Consent Solicitations are to be issued or sent, if different from the name(s) and address(es) of the Holder signing this Letter of Transmittal. In the case of issuance in a different name, the employer identification or social security number of the person named must also be

13

indicated. If no instructions are given, Notes not validly tendered or not accepted for payment will be returned to the Holder of the Notes tendered.

5.   **Taxpayer Identification Number and Substitute Form W-9.** Each tendering U.S. Holder is required to provide the Depositary with such U.S. Holder's correct taxpayer identification number ("TIN"), generally the U.S. Holder's social security or employer identification number, on the Substitute Form W-9 provided after the section titled "Important Tax Information" below or, alternatively, to establish another basis for exemption from backup withholding. A U.S. Holder must cross out item (2) in Part II of the Substitute Form W-9 if such U.S. Holder is subject to backup withholding. Failure to provide the information on the form may subject the tendering U.S. Holder to backup withholding at a rate equal to the fourth lowest rate of income tax applicable to unmarried individuals (which is currently 28%) on the payments made to the U.S. Holder with respect to Notes purchased pursuant to the Tender Offers and the Consent Solicitations. The "Applied For" box in Part I of the Form W-9 should be checked if the tendering U.S. Holder has not been issued a TIN and has applied for a TIN or intends to apply for a TIN in the near future. If the "Applied For" box in Part I is checked and the Depositary is not provided with a TIN by the time of payment, the Depositary will withhold 28% from all such payments with respect to Notes to be purchased and Early Consent Payments until a TIN is provided to the Depositary.

6.   **Transfer Taxes.** The Company will pay all transfer taxes, if any, payable on the purchase and transfer of Notes purchased pursuant to the Tender Offers. If, however, Notes not validly tendered are to be registered or issued in the name of any person other than the registered Holder of the Notes tendered hereby, or if tendered Notes are registered in the name of any person other than the person signing this Letter of Transmittal, or if a transfer tax is imposed for any reason other than the transfer of Notes to the Company or its order pursuant to the Tender Offers and Consent Solicitations, the amount of any such transfer taxes (whether imposed on the registered Holder or any other person), will be payable by the tendering Holder. If satisfactory evidence of payment of such taxes or exemption therefrom is not submitted herewith, the amount of such transfer taxes will be billed directly to such tendering Holder.

7.   **Determination of Validity.** All questions as to the validity, form, eligibility (including the time of receipt) and acceptance for payment of any tenders of Notes and deliveries of Consents pursuant to the procedures described in the Offer to Purchase and this Letter of Transmittal and the form and validity of all documents will be determined by the Company, in its sole discretion, which determination shall be final and binding on all parties. The Company reserves the absolute right to reject any or all tenders of Notes and deliveries of Consents determined by it not to be in proper form or the acceptance of or payment for which may be unlawful. The Company also reserves the absolute right to waive, in whole or in part, any of the conditions of the Tender Offers and the Consent Solicitations and any defect or irregularity in the tender of any particular Notes or in the delivery of Consents. The Company's interpretations of the terms and conditions of the Tender Offers and the Consent Solicitations (including the instructions in this Letter of Transmittal) shall be final and binding. No alternative, conditional or contingent tenders will be accepted. Unless waived, any irregularities in connection with tenders or deliveries of Consents must be cured within such time as the Company shall determine. None of the Company, TIFSA, Tyco, the Depositary, the Information Agent, the Dealer Managers, the Solicitation Agents or any other person will be under any duty to give notification of any defects or irregularities in such tenders or deliveries of Consents or will incur any liability to Holders for failure to give such notification. Tenders of such Notes shall not be deemed to have been made until such irregularities have been cured or waived. Any Notes received by the Depositary that are not properly tendered and as to which the irregularities have not been cured or waived will be returned by the Depositary to the tendering Holders, unless such Holders have otherwise provided herein, as promptly as practical following the Expiration Date.

8.   **Mutilated, Lost, Stolen or Destroyed Certificates for Notes.** Any Holder of Notes whose certificates for Notes have been mutilated, lost, stolen or destroyed should contact the Depositary for further instruction at the address or telephone number set forth on the back cover of this Letter of Transmittal.

9.   **Requests for Assistance or Additional Copies.** Questions relating to the procedure for tendering Notes and delivering Consents and requests for assistance or additional copies of the Offer to Purchase and this Letter of Transmittal may be directed to, and additional information about the Tender Offers may be obtained from Goldman, Sachs & Co. or Morgan Stanley, the Dealer Managers and Solicitation Agents for the Tender Offers and Consent Solicitations, or to Global Bondholder Services Corporation, the Information Agent for the Tender Offers and Consent Solicitations, whose addresses and telephone numbers appear on the back cover of this Letter of Transmittal. Requests for additional copies of the Offer to Purchase and this Letter of Transmittal also may be obtained from the Information Agent.

10.   **Non-U.S. Holders.** Each Non-U.S. Holder must submit the appropriate completed IRS Form W-8 (generally Form W-8BEN) to avoid backup withholding. The appropriate form may be obtained via the Internal Revenue Service website at www.irs.gov or by contacting the Depositary at the address on the back cover of this Letter of Transmittal.

11.   **Inadequate Space.** If the space provided herein is inadequate, the certificate numbers of the Notes and the principal amounts represented by such Notes should be listed on a separately signed schedule and affixed to this Letter of Transmittal.

14

IMPORTANT: THIS LETTER OF TRANSMITTAL (OR A FACSIMILE THEREOF) PROPERLY COMPLETED AND DULY EXECUTED (TOGETHER WITH ANY REQUIRED SIGNATURE GUARANTEES AND TIME CERTIFICATES OR CONFIRMATION OF BOOK-ENTRY TRANSFER AND ALL OTHER REQUIRED DOCUMENTS) MUST BE RECEIVED BY THE DEPOSITARY ON OR PRIOR TO THE EXPIRATION DATE OR, TO RECEIVE THE TOTAL CONSIDERATION, ON OR PRIOR TO THE EARLY CONSENT DATE.

### IMPORTANT TAX INFORMATION

Under United States federal income tax law, a tendering Holder may be subject to backup withholding tax at a rate of 28% with respect to payments by the Depositary pursuant to the Tender Offers and the Consent Solicitations unless such Holder: (i) is a corporation or other exempt recipient and, if required, establishes its exemption from backup withholding; (ii) provides its correct TIN and certifies that (A) the TIN provided is correct (or that such Holder is awaiting a TIN) and (B) it is not currently subject to backup withholding; or (iii) certifies as to its non-United States status. If such Holder is an individual, the TIN is his or her social security number. Completion of the Substitute Form W-9, in the case of a U.S. Holder, provided in this Letter of Transmittal, should be used for this purpose. Failure to provide such Holder's TIN on the Substitute Form W-9, if applicable, may subject the tendering Holder (or other payee) to a $50.00 penalty imposed by the Internal Revenue Service, and payments that are made to such tendering Holder pursuant to the Tender Offers and the Consent Solicitations may be subject to backup withholding (see below). More serious penalties may be imposed for providing false information which, if wilfully done, may result in fines and/or imprisonment. The "Applied For" box in Part I of the Substitute Form W-9 may be checked if the tendering U.S. Holder (or other payee) has not been issued a TIN and has applied for a TIN or intends to apply for a TIN in the near future. If the "Applied For" box in Part I is so checked and the Depositary is not provided with a TIN by the time of payment, the Depositary will withhold 28% on all such payments received pursuant to the Tender Offers and the Consent Solicitations until a TIN is provided to the Depositary. A tendering U.S. Holder who checks the "Applied For" box in Part I in lieu of furnishing his or her TIN should furnish the Depositary with such Holder's TIN as soon as it is received. In order for a Non-U.S. Holder to qualify as an exempt recipient, that Non-U.S. Holder should submit the appropriate Internal Revenue Service Form W-8 (which are available from the Depositary) signed under penalties of perjury, attesting to that Non-U.S. Holder's foreign status.

If backup withholding applies to a tendering Holder, the Depositary is required to withhold 28% of any payments made to such Holder pursuant to the Tender Offers and the Consent Solicitations. Backup withholding is not an additional tax. Rather, provided that the required information is timely furnished to the IRS, the U.S. federal income tax liability of persons subject to backup withholding will be reduced by the amount of tax withheld or, if withholding results in an overpayment of taxes, a refund may be obtained by filing a tax return with the Internal Revenue Service. The Depositary cannot refund amounts withheld by reason of backup withholding. Tendering Holders are urged to consult their own tax advisers to determine whether they are exempt from these backup withholding and reporting requirements.

**SUBSTITUTE FORM W-9**
**Request for Taxpayer Identification Number and Certification**
**Department of the Treasury**
**Internal Revenue Service**

**PAYER'S NAME: Global Bondholder Services Corporation, as Depositary**

| PAYEE INFORMATION (please print or type) | | | |
|---|---|---|---|
| Individual or business name: | | | |
| Check appropriate box: | ☐ Individual/Sole Proprietor | ☐ Corporation | ☐ Partnership |
| | ☐ Other | ☐ Exempt from backup withholding | |
| Address (number, street, and apt. or suite no.): | | | |
| City, state and ZIP code: | | | |

**PART I: Taxpayer Identification Number ("TIN")**

Enter your TIN below. For individuals, your TIN is your social security number. Sole proprietors may enter either their social security number or their employer identification number. For other entities, your TIN is your employer identification number.

Social security number:

☐ ☐ ☐ - ☐ ☐ - ☐ ☐ ☐ ☐

or

Employer identification number:

☐ ☐ ☐ - ☐ ☐ - ☐ ☐ ☐ ☐

☐    Applied For

**PART II: Certification**

Certification Instructions: You must cross out item 2 below if you have been notified by the Internal Revenue Service (the "IRS") that you are currently subject to backup withholding because of underreporting interest or dividends on your tax return. However, if after being notified by the IRS that you were subject to backup withholding you received another notification from the IRS that you are no longer subject to backup withholding, do not cross out item 2.

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct TIN (or a TIN has not been issued to me and either (a) I have mailed or delivered an application to receive a TIN to the appropriate IRS Center or Social Security Administration Office, or (b) I intend to mail or deliver an application in the near future). I understand that until I provide my TIN to the payer, a portion of all reportable payments made to me by the payer may be withheld and remitted to the IRS as backup withholding;

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, (b) I have not been notified by the IRS that I am subject to backup withholding as a result of a failure to report all interest or dividends or (c) the IRS has notified me that I am no longer subject to backup withholding;

3. I am a U.S. person (including a U.S. resident alien); and

4. All of the information provided on this form is true and correct.

The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

Signature _____    Date _____ , 2007

**NOTE: FAILURE TO COMPLETE AND RETURN THIS FORM MAY RESULT IN BACKUP WITHHOLDING OF 28% OF ANY PAYMENTS MADE TO YOU PURSUANT TO THE TENDER OFFERS AND THE CONSENT SOLICITATIONS AND A $50 PENALTY IMPOSED BY THE IRS. PLEASE REVIEW THE ENCLOSED *GUIDELINES FOR CERTIFICATION OF TAXPAYER IDENTIFICATION NUMBER ON SUBSTITUTE FORM W-9* FOR ADDITIONAL DETAILS.**

## GUIDELINES FOR CERTIFICATION OF TAXPAYER IDENTIFICATION
## NUMBER ON SUBSTITUTE FORM W-9

**Guidelines for Determining the Proper Identification Number to Give the Payer - Social security numbers have nine digits separated by two hyphens: i.e., 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. Employer identification numbers have nine digits separated by only one hyphen: i.e., 00-0000000. The table below will help determine the number to give the payer.**

| For this type of account: | Give the SOCIAL SECURITY number of— | For this type of account: | Give the EMPLOYER IDENTIFICATION number of— |
|---|---|---|---|
| 1. Individual | The individual | 8. Sole proprietorship account | The Owner (4) |
| 2. Two or more individuals (joint account) | The actual owner of the account or, if combined funds, the first individual on the account (1) | 9. A valid trust, estate, pension trust | Legal entity (Do not furnish the identifying number of the personal representative or trustee unless the legal entity itself is not designated in the account title.) (5) |
| 3. Husband and wife (joint account) | The actual owner of the account or, if joint funds, the first individual on the account (1) | 10. Corporate | The corporation |
| 4. Custodian account of a minor (Uniform Gift to Minors Act) | The minor (2) | 11. Religious, charitable, or educational organization | The organization |
| 5. Adult and minor (joint account) | The adult or, if the minor is the only contributor, the minor (1) | 12. Partnership held in the name of the business | The partnership |
| 6. Account in the name of guardian or committee for a designated ward, minor, or incompetent person | The ward, minor, or incompetent person (3) | 13. Association, club or other tax-exempt organization | The organization |
| 7. a. The usual revocable savings trust account (grantor is also trustee) | The grantor-trustee (1) | 14. A broker or registered nominee | The broker or nominee |
| b. So-called trust account that is not a legal or valid trust under State Law | The actual owner (1) | 15. Account with the Department of Agriculture in the name of a public entity (such as a State or local government, school district or prison) that received agricultural program payments. | The public entity |

(1)  List first and circle the name of the person whose number you furnish. If only one person on a joint account has a social security number, that person's social security number must be furnished.
(2)  Circle the minor's name and furnish the minor's social security number.
(3)  Circle the ward's, minor's or incompetent person's name and furnish such person's social security number.
(4)  You must show your individual name, but you may also enter your business or "doing business as" name. You may use either your social security number or your employer identification number (if you have one).
(5)  List first and circle the name of the legal trust, estate or pension trust.

Note: If no name is circled when there is more than one name listed, the number will be considered to be that of the first name listed.

17

## GUIDELINES FOR CERTIFICATION OF TAXPAYER IDENTIFICATION NUMBER ON SUBSTITUTE FORM W-9

### Page 2

**Obtaining a Number**

If you don't have a taxpayer identification number or you don't know your number, obtain Form SS-5, Application for a Social Security Number Card, or Form SS-4, Application for Employer Identification Number, at the local office of the Social Security Administration or the Internal Revenue Service and apply for a number.

**Payees Exempt from Backup Withholding**

Payees specifically exempted from backup withholding generally include the following:

* A corporation.
* A financial institution.
* An organization exempt from tax under Section 501 (a), an individual retirement plan or a custodial account under Section 403 (b) (7) if the account satisfies the requirements of Section 401 (f) (2).
* The United States or any agency or instrumentality thereof.
* A state, the District of Columbia, a possession of the United States, or any subdivision or instrumentality thereof.
* A foreign government, a political subdivision of a foreign government, or any agency or instrumentality thereof.
* An international organization or any agency or instrumentality thereof.
* A registered dealer in securities or commodities registered in the U.S., the District of Columbia or a possession of the U.S.
* A real estate investment trust.
* A common trust fund operated by a bank under Section 584(a).
* An entity registered at all times under the Investment Company Act of 1940.
* A foreign central bank of issue.

Payments of dividends and patronage dividends not generally subject to backup withholding include the following:

* Payments to nonresident aliens subject to withholding under Section 1441.
* Payments to partnerships not engaged in a trade or business in the U.S. and which have at least one nonresident partner.
* Payments of patronage dividends not paid in money.

Payments made by certain foreign organizations. Payments of interest not generally subject to backup with-holding include the following:

* Payments of interest on obligations issued by individuals. *Note: You may be subject to backup withholding of this interest is $600 or more and is paid in the course of the payer's trade or business and you have not provided your correct taxpayer identification number to the payer.*
* Payments of tax-exempt interest (including exempt-interest dividends under Section 852).
* Payments described in Section 6049 (b)( 5) to nonresident aliens.

* Payments on tax-free covenant bonds under Section 1451.
* Payments made by certain foreign organizations."

Exempt payees described above should file Form W-9 to avoid possible erroneous backup withholding. FILE THIS FORM WITH THE PAYER, FURNISH YOUR TAXPAYER IDENTIFICATION NUMBER, WRITE "EXEMPT" ON THE FACE OF THE FORM, AND RETURN IT TO THE PAYER. IF THE PAYMENTS ARE INTEREST DIVIDENDS, OR PATRONAGE DIVIDENDS, ALSO SIGN AND DATE THE FORM.

Certain payments other than interest, dividends, and patronage dividends that are not subject to information reporting are also not subject to backup withholding. For details, see Sections 6041, 6041A(a), 6042, 6044, 6045, 6049, 6050A and 6050N, and their regulations.

**Privacy Act Notice.** – Section 6109 requires most recipients of dividend, interest, or other payments to give their correct taxpayer identification numbers to payers who must report the payments to the IRS. The IRS uses the numbers for identification purposes and to help verify the accuracy of tax returns. The IRS may also provide this information to the Department of Justice for civil and criminal litigation and to cities, states and the District of Columbia to carry out their tax laws. Payers must be given the numbers whether or not recipients are required to file tax returns. Payers must generally withhold federal income tax on taxable interest, dividend, and certain other payments to a payee who does not furnish a taxpayer identification number to a payer. Certain penalties may also apply.

**Penalties**

(1) **Penalty for Failure to Furnish Taxpayer Identification Number.** – If you fail to furnish your taxpayer identification number to a payer, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

(2) **Civil Penalty for False Information With Respect to Withholding.** – If you make a false statement with no reasonable basis which results in no imposition of backup withholding, you are subject to a penalty of $500.

(3) **Criminal Penalty for Falsifying Information.** – Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

(4) **Misuse of Taxpayer Identification Numbers.** – If the requester discloses or uses taxpayer identification numbers in violation of federal law, the requester may be subject to civil and criminal penalties.

FOR ADDITIONAL INFORMATION CONTACT YOUR TAX CONSULTANT OR THE INTERNAL REVENUE SERVICE.

*Unless otherwise indicated, all references are to the Internal Revenue Code of 1986, as amended.

18

*The Depositary for the Tender Offers and the Consent Solicitations is:*

Global Bondholder Services Corporation

*By Facsimile (Eligible Institutions Only):*

(212) 430-3775
Attention: Corporate Actions
For Information or
Confirmation by Telephone:
(212) 430-3774

*By Mail or Hand:*

Global Bondholder Services Corporation
65 Broadway – Suite 723
New York, New York 10006
Attention: Corporate Actions

Any questions or requests for assistance may be directed to the Dealer Managers at the addresses and telephone numbers set forth below. Requests for additional copies of this Offer to Purchase and the Letter of Transmittal may be directed to the Information Agent. Requests for copies of the Indentures and the forms of the Supplemental Indentures may also be directed to the Information Agent. Beneficial owners may also contact their Custodian for assistance concerning the Tender Offers and the Consent Solicitations.

*The Information Agent for the Tender Offer and Consent Solicitation is:*

Global Bondholder Services Corporation
65 Broadway – Suite 723
New York, New York 10006
Attn: Corporate Actions
Bank and Brokers Call Collect: (212) 430-3774
All Others Please Call Toll-Free: (866) 470-3700

*The Dealer Managers for the Tender Offer and the Solicitation Agents for the Consent Solicitation are:*

Morgan Stanley
Liability Management Group
1585 Broadway, Floor 04
New York, NY 10036
(212) 761-1941
Toll Free: (800) 624-1808

Goldman, Sachs & Co.
Liability Management
1 New York Plaza
New York, NY 10004
(212) 902-9077
Toll Free: (800) 828-3182

## Tyco International Group S.A.
### Offer to Purchase and Solicitation of Consents
### for Any and All of its Outstanding
### Securities Listed on the Table Below

| Title of Securities | CUSIP Number | Outstanding Amount | UST Reference Security | Fixed Spread (bp) | Bloomberg Reference Page | Early Consent Payment |
|---|---|---|---|---|---|---|
| **2003 Indenture Notes** | | | | | | |
| 6.0% notes due 2013 | 902116BK3 | $1,000,000,000 | 4.25% due 11/15/2013 | 40 | PX6 | $30.00 |
| **1998 Indenture Notes** | | | | | | |
| 6.125% notes due 2008 | 902118AM0 | $400,000,000 | 4.875% due 10/31/2008 | 30 | PX4 | $30.00 |
| 6.125% notes due 2009 | 902118AJ7 | $400,000,000 | 3.250% due 1/15/2009 | 35 | PX4 | $30.00 |
| 6.75% notes due 2011 | 902118AY4 | $1,000,000,000 | 5.000% due 2/15/2011 | 35 | PX5 | $30.00 |
| 6.375% notes due 2011 | 902118BC1 | $1,500,000,000 | 4.500% due 9/30/2011 | 40 | PX6 | $30.00 |
| 7.0% notes due 2028 | 902118AC2 | $500,000,000 | 4.75% due 2/15/2037 | 60 | PX1 | $30.00 |
| 6.875% notes due 2029 | 902118AK4 | $800,000,000 | 4.75% due 2/15/2037 | 60 | PX1 | $30.00 |

> THE CONSENT SOLICITATIONS WILL EXPIRE AT 5:00 P.M., NEW YORK CITY TIME, ON THURSDAY, MAY 10, 2007, UNLESS EXTENDED OR EARLIER TERMINATED (SUCH TIME AND DATE, AS THE SAME MAY BE EXTENDED, THE " EARLY CONSENT DATE"). THE TENDER OFFERS WILL EXPIRE AT 12:00 MIDNIGHT, NEW YORK CITY TIME, ON THURSDAY, MAY 24, 2007, UNLESS EXTENDED OR EARLIER TERMINATED (SUCH TIME AND DATE, AS THE SAME MAY BE EXTENDED, THE "EXPIRATION DATE").

April 27, 2007

To Brokers, Dealers, Commercial Banks, Trust Companies and Other Nominees:

Enclosed is an Offer to Purchase and Consent Solicitation Statement, dated April 27, 2007 (the "Offer to Purchase"), and a form of Letter of Transmittal and Consent (the "Letter of Transmittal") and instructions thereto relating to (i) the offers (the "Tender Offers") by Tyco International Group S.A. (the "Company") to purchase upon the terms and subject to the conditions set forth in the Offer to Purchase and the Letter of Transmittal, any and all of its outstanding 6.0% notes due 2013 (CUSIP No. 902116BK3) (the "2003 Notes", and its 6.125% notes due 2008 (CUSIP No. 902118AM0), 6.125% notes due 2009 (CUSIP No. 902118AJ7), 6.75% notes due 2011 (CUSIP No. 902118AY4), 6.375% notes due 2011 (CUSIP No. 902118BC1), 7.0% notes due 2028 (CUSIP No. 902118AC2), and 6.875% notes due 2029 (CUSIP No. 902118AK4) (the "1998 Notes," and together with the 2003 Notes, the "Notes"), and (ii) the solicitations (the "Consent Solicitations") of consents (the "Consents") to certain proposed amendments to the indenture, dated as of June 9, 1998, as supplemented from time to time, among the Company, Tyco International, Ltd., as Guarantor, and The Bank of New York, as Trustee, under which the 1998 Notes were issued, and the indenture, dated as of November 12, 2003, as amended by the First Supplemental Indenture, dated as of November 12, 2003, among the Company, Tyco International, Ltd., as Guarantor, and The Bank of New York, as Trustee under which the 2003 Notes were issued, upon the terms and subject to the conditions set forth in the Offer to Purchase and the Letter of Transmittal. All capitalized terms used herein and not otherwise defined shall have the respective meanings ascribed to them in the Offer to Purchase.

For any Notes validly delivered and not withdrawn before the Early Consent Date, the Company will pay total consideration for each $1,000 principal amount of Notes (the "Total Consideration"), which will be calculated, as described in the Offer to Purchase, based on:

- the yield to maturity of the United States Treasury ("UST") reference security specified for such Notes in the table on the cover page (as calculated by the Dealer Managers (as defined below) in accordance

with standard market practice based on the bid side price of such reference security at 2:00 p.m., New York City time, two business days prior to the Expiration Date);

- plus the fixed spread specified for that series in the table on the cover page of the Offer to Purchase, which is also reproduced in this letter.

The formula for calculating the Total Consideration of the Notes and a sample calculation of a hypothetical Total Consideration for the Notes appear on Annexes C and D, respectively, to the Offer to Purchase.

The Total Consideration includes a consent payment of $30.00 per $1,000 principal amount of Notes (the "Early Consent Payment"). For any Notes validly delivered after the Early Consent Date and prior to the Expiration Date, the Company will pay the Total Consideration minus the Early Consent Payment.

In addition, the Company will pay accrued and unpaid interest on each $1,000 principal amount up to, but not including, the day of payment for (or deposit of an amount with Global Bondholder Services Corporation as Depositary (the "Depositary"), sufficient to pay for) Notes accepted for purchase.

We are asking you to contact your clients for whom you hold Notes registered in your name or in the name of your nominee. In addition, we ask you to contact your clients who, to your knowledge, hold Notes registered in their own name.

Enclosed is a copy of each of the following documents for forwarding to clients:

1.  the Offer to Purchase;

2.  a Letter of Transmittal to be used by Holders in accepting the Tender Offer (including Substitute Form W-9 and Guidelines for Certification of Taxpayer Identification Number on Substitute Form W-9); and

3.  a form of letter addressed "To Our Clients" that may be sent to your clients for whose accounts you hold Notes registered in your name or the name of your nominee, with space provided for obtaining the clients' instructions with regard to the Tender Offer and Consent Solicitation.

WE URGE YOU TO CONTACT YOUR CLIENTS AS PROMPTLY AS POSSIBLE IN ORDER TO OBTAIN THEIR INSTRUCTIONS. PLEASE NOTE THAT THE CONSENT SOLICITATIONS WILL EXPIRE AT 5:00 P.M., NEW YORK CITY TIME, ON THURSDAY, MAY 10, 2007, UNLESS EXTENDED OR EARLIER TERMINATED, AND THE TENDER OFFERS WILL EXPIRE AT 12:00 MIDNIGHT, NEW YORK CITY TIME, ON THURSDAY, MAY 24, 2007, UNLESS EXTENDED OR EARLIER TERMINATED.

In all cases, payment for Notes accepted for payment pursuant to the Tender Offers will be made only after timely receipt by the Depositary of certificates evidencing such Notes (or a confirmation of book-entry transfer of such Notes into the Depositary's account at DTC), a Letter of Transmittal and Consent (or a facsimile thereof), properly completed and duly executed (or an Agent's Message if the Notes are tendered through the DTC's ATOP procedures) and any other required documents in accordance with the instructions contained in the Letter of Transmittal.

The Company, upon request, will pay brokerage houses and other custodians, nominees and fiduciaries the reasonable and customary handling and mailing expenses incurred by them in forwarding copies of the Offer to Purchase and related documents to the beneficial owners of Notes and in handling or forwarding tenders of Notes by their customers. The Company will pay or cause to be paid any transfer taxes payable with respect to the transfer of the Notes pursuant to the Tender Offers and the Consent Solicitations, except as otherwise provided in Instruction 6 of the Letter of Transmittal.

Questions relating to the Tender Offers and the Consent Solicitations may be directed to Goldman, Sachs & Co. or Morgan Stanley, the Dealer Managers and Solicitation Agents, at the addresses and phone numbers set forth on the back cover of the Offer to Purchase. Inquiries relating to the Tender Offers and the Consent Solicitations and requests for additional copies of the Offer to Purchase, the Letter of Transmittal and any related documents may be directed to Global Bondholder Services Corporation, the Information Agent, at the address and phone numbers set forth on the back cover of the Offer to Purchase.

Very truly yours,

2

Goldman, Sachs & Co.
Morgan Stanley

NOTHING HEREIN OR IN THE ENCLOSED DOCUMENTS SHALL CONSTITUTE YOU OR ANY PERSON AN AGENT OF THE COMPANY, TYCO, THE DEALER MANAGERS, THE SOLICITATION AGENTS, THE DEPOSITARY OR THE INFORMATION AGENT, OR AUTHORIZE YOU OR ANY OTHER PERSON TO USE ANY DOCUMENT OR MAKE ANY STATEMENT ON BEHALF OF ANY OF THEM WITH RESPECT TO THE TENDER OFFERS AND CONSENT SOLICITATIONS, EXCEPT FOR STATEMENTS EXPRESSLY MADE IN THE OFFER TO PURCHASE OR THE LETTER OF TRANSMITTAL. IF ANY UNAUTHORIZED INFORMATION OR REPRESENTATION IS GIVEN OR MADE BY A BROKER, DEALER, SALESPERSON OR OTHER NOMINEE, IT MAY NOT BE RELIED UPON AS HAVING BEEN AUTHORIZED BY THE COMPANY, TYCO, THE DEALER MANAGERS, THE SOLICITATION AGENTS, THE DEPOSITARY OR THE INFORMATION AGENT.

# Tyco International Group S.A.
### Offer to Purchase and Solicitation of Consents
### for Any and All of its Outstanding
### Securities Listed on the Table Below

| Title of Securities | CUSIP Number | Outstanding Amount | UST Reference Security | Fixed Spread (bp) | Bloomberg Reference Page | Early Consent Payment |
|---|---|---|---|---|---|---|
| 2003 Indenture Notes | | | | | | |
| 6.0% notes due 2013 | 902118BK3 | $1,000,000,000 | 4.25% due 11/15/2013 | 40 | PX6 | $30.00 |
| 1998 Indenture Notes | | | | | | |
| 6.125% notes due 2008 | 902118AM0 | $400,000,000 | 4.875% due 10/31/2008 | 30 | PX4 | $30.00 |
| 6.125% notes due 2009 | 902118AJ7 | $400,000,000 | 3.250% due 1/15/2009 | 35 | PX4 | $30.00 |
| 6.75% notes due 2011 | 902118AY4 | $1,000,000,000 | 5.000% due 2/15/2011 | 35 | PX5 | $30.00 |
| 6.375% notes due 2011 | 902118BC1 | $1,500,000,000 | 4.500% due 9/30/2011 | 40 | PX6 | $30.00 |
| 7.0% notes due 2028 | 902118AC2 | $500,000,000 | 4.75% due 2/15/2037 | 60 | PX1 | $30.00 |
| 6.875% notes due 2029 | 902118AK4 | $800,000,000 | 4.75% due 2/15/2037 | 60 | PX1 | $30.00 |

> THE CONSENT SOLICITATIONS WILL EXPIRE AT 5:00 P.M., NEW YORK CITY TIME, ON THURSDAY, MAY 10, 2007, UNLESS EXTENDED OR EARLIER TERMINATED (SUCH TIME AND DATE, AS THE SAME MAY BE EXTENDED, THE "CONSENT DATE"). THE TENDER OFFERS WILL EXPIRE AT 12:00 MIDNIGHT, NEW YORK CITY TIME, ON THURSDAY, MAY 24, 2007, UNLESS EXTENDED OR EARLIER TERMINATED (SUCH TIME AND DATE, AS THE SAME MAY BE EXTENDED, THE "EXPIRATION DATE").

April 27, 2007

To Our Clients:

Enclosed for your consideration is an Offer to Purchase and Consent Solicitation Statement, dated April 27, 2007 (the "Offer to Purchase"), and a form of Letter of Transmittal and Consent (the "Letter of Transmittal") and instructions thereto relating to (i) the offers (the "Tender Offers") by Tyco International Group S.A. (the "Company") to purchase upon the terms and subject to the conditions set forth in the Offer to Purchase and the Letter of Transmittal, any and all of its outstanding 6.0% notes due 2013 (CUSIP No. 902118BK3) (the "2003 Notes"), and its 6.125% notes due 2008 (CUSIP No. 902118AM0), 6.125% notes due 2009 (CUSIP No. 902118AJ7), 6.75% notes due 2011 (CUSIP No. 902118AY4), 6.375% notes due 2011 (CUSIP No. 902118BC1), 7.0% notes due 2028 (CUSIP No. 902118AC2), and 6.875% notes due 2029 (CUSIP No. 902118AK4) (the "1998 Notes," and together with the 2003 Notes, the "Notes") and (ii) the solicitations (the "Consent Solicitations") of consents (the "Consents") to certain proposed amendments to the indenture, dated as of June 9, 1998, as supplemented from time to time, among the Company, Tyco International, Ltd., as Guarantor, and The Bank of New York, as Trustee under which the 1998 Notes were issued, and the indenture, dated as of November 12, 2003, as amended by the First Supplemental Indenture, dated as of November 12, 2003, among the Company, Tyco International, Ltd., as Guarantor, and The Bank of New York, as Trustee under which the 2003 Notes were issued, upon the terms and subject to the conditions set forth in the Offer to Purchase and the Letter of Transmittal. All capitalized terms used herein and not otherwise defined shall have the respective meanings ascribed to them in the Offer to Purchase.

For any Notes validly delivered and not withdrawn before the Consent Date, the Company will pay total consideration for each $1,000 principal amount of Notes (the "Total Consideration"), which will be calculated, as described under "The Tender Offers and Consent Solicitations," based on:

- the yield to maturity of the United States Treasury ("UST") reference security specified for such Notes in the table on the cover page (as calculated by the Dealer Managers (as defined below) in accordance

with standard market practice based on the bid side price of such reference security at 2:00 p.m., New York City time, two business days prior to the Expiration Date);

• plus the fixed spread specified for that series in the table on the cover page.

The formula for calculating the Total Consideration of the Notes and a sample calculation of a hypothetical Total Consideration for the Notes appear on Annexes C and D, respectively, to the Offer to Purchase.

The Total Consideration includes a consent payment of $30.00 per $1,000 principal amount of Notes (the "Early Consent Payment"). For any Notes validly delivered after the Consent Date and prior to the Expiration Date, the Company will pay the Total Consideration minus the Early Consent Payment.

In addition, the Company will pay accrued and unpaid interest on such $1,000 principal amount up to, but not including, the day of payment for (or deposit of an amount with Global Bondholder Services Corporation as Depositary (the "Depositary"), sufficient to pay for) Notes accepted for purchase.

We (directly or through our nominee) are the holder of record of the Notes held by us for your account. A tender of such Notes and the delivery of a Consent can be made only by us (or our nominee) as the holder of record and pursuant to your instructions. The enclosed Letter of Transmittal is furnished to you for your information only and cannot be used by you to tender Notes held by us (or our nominee) or deliver Consents with respect to Notes held by us for your account.

Accordingly, we request instruction as to whether you wish to have us tender on your behalf any or all Notes held by us (or our nominee) for your account and deliver a Consent for your benefit pursuant to the terms and conditions set forth in the Offer to Purchase and in the Letter of Transmittal. We urge you to read carefully and in their entirety the Offer to Purchase and Letter of Transmittal before instructing us to tender your Notes or deliver a Consent.

Your instructions to us should be forwarded as promptly as possible in order to permit us to tender Notes and deliver a Consent on your behalf in accordance with the provisions of the Tender Offers and the Consent Solicitations.

Your attention is directed to the following:

1. The Company is offering to purchase any and all of the outstanding Notes for a Total Consideration that will be determined after 2:00 p.m., two business days before the Expiration Date. The Total Consideration will be calculated as described in the Offer to Purchase. The formula for calculating the Total Consideration and a sample calculation of a hypothetical Total Consideration appear in Annexes C and D, respectively, to the Offer to Purchase.

2. The Consent Solicitations will expire at 5:00 p.m., New York City time, on Thursday, May 10, 2007, unless the Company, in its sole discretion, extends the period of time during which the Consent Solicitations will remain open or the Company terminates the Consent Solicitations earlier. The Tender Offers will expire at 12:00 midnight, New York City time, on Thursday, May 24, 2007, unless the Company, in its sole discretion, extends the period of time during which the Tender Offers will remain open or the Company terminates the Tender Offers earlier. If you wish to receive the Total Consideration, we must receive your instructions in ample time to permit us to effect a tender of your Notes and deliver the related Consent on or prior to the Consent Date. If you wish to receive only the Purchase Price, we must receive your instructions in ample time to permit us to effect a tender of your Notes on or prior to the Expiration Date.

3. Tendering Holders will not be obligated to pay brokerage fees or commissions or, except as set forth in Instruction 6 of the Letter of Transmittal, transfer taxes on the purchase of Notes by the Company pursuant to the Tender Offers and Consent Solicitations. However, United States federal income tax backup withholding at a rate of 28% may be required unless the Tendering Holder submits a properly completed Form Substitute W-9. See Instruction 5 of the Letter of Transmittal.

4. Notes tendered and Consents delivered prior to the Consent Date may be validly withdrawn or revoked, as the case may be, at any time prior to the Consent Date by following the procedures set forth in the Offer to Purchase, but not thereafter unless the Tender Offers are terminated without any Notes being purchased thereunder. Notes tendered after the Consent Date may not be validly withdrawn. See "Withdrawal of Tenders and; Revocation of Consents; Absence of Appraisal Rights" in the Offer to Purchase.

2

5.   The Company's obligation to accept for payment, and to pay for, any Notes validly tendered and not validly withdrawn pursuant to the Tender Offers is conditioned upon satisfaction, or waiver by the Company, of the Financing Condition, the Requisite Consent Condition, the Supplemental Indenture Condition and the General Conditions, on or prior to the Expiration Date.  See "Conditions of the Tender Offer and Consent Solicitation" in the Offer to Purchase. In the event that the Tender Offers and the Consent Solicitations are terminated, withdrawn or otherwise not consummated, the Total Consideration or Purchase Price, as the case may be, will not be paid or become payable to Holders of Notes who have tendered their Notes and delivered Consents pursuant to the Tender Offers and the Consent Solicitations, and Notes previously tendered pursuant to the Tender Offers and the Consent Solicitations will be promptly returned to the tendering Holders.

6.   Consummation of the Tender Offers and Consent Solicitations may have adverse consequences to non-tendering Holders.  In addition, the reduced amount of outstanding Notes as a result of the Tender Offers may adversely affect the trading market, liquidity and market price of the Notes.  With respect to each of the 1998 Proposed Amendments and the 2003 Proposed Amendments, if the Requisite Consents are received and accepted, and the Supplemental Indentures are executed and become operative, the applicable Proposed Amendments will be binding on all non-tendering Holders of either the 1998 Notes or the 2003 Notes, as the case may be.

If you wish to have us tender on your behalf any or all of the Notes held by us for your account or benefit and deliver a Consent with respect thereto, please so instruct us by completing, executing and returning to us the instruction form that appears on the next page.  If you authorize the tender of your Notes, all such Notes will be tendered and related Consents delivered unless otherwise specified below.  Your instructions should be forwarded to us in ample time to permit us to submit a tender on your behalf on or prior to the Early Consent Date or the Expiration Date, as the case may be.

3

# Tyco International Group S.A.
## Offer to Purchase and Solicitation of Consents
### for Any and All of its Outstanding
### Securities Listed on the Table Below

| Title of Securities | CUSIP Number | Outstanding Amount | UST Reference Security | Fixed Spread (bp) | Bloomberg Reference Page | Early Consent Payment |
|---|---|---|---|---|---|---|
| **2001 Indenture Notes** | | | | | | |
| 6.0% notes due 2013 | 902118BK3 | $1,000,000,000 | 4.25% due 11/15/2013 | 40 | PX6 | $30.00 |
| **1998 Indenture Notes** | | | | | | |
| 6.125% notes due 2008 | 902118AM0 | $400,000,000 | 4.875% due 10/31/2008 | 30 | PX4 | $30.00 |
| 6.125% notes due 2009 | 902118AJ7 | $400,000,000 | 3.250% due 1/15/2009 | 35 | PX4 | $30.00 |
| 6.75% notes due 2011 | 902118AY6 | $1,000,000,000 | 5.000% due 2/15/2011 | 35 | PX5 | $30.00 |
| 6.375% notes due 2011 | 902118BC1 | $1,500,000,000 | 4.500% due 9/30/2011 | 40 | PX6 | $30.00 |
| 7.0% notes due 2028 | 902118AC2 | $500,000,000 | 4.75% due 2/15/2037 | 60 | PX1 | $30.00 |
| 6.875% notes due 2029 | 902118AK4 | $800,000,000 | 4.75% due 2/15/2037 | 60 | PX1 | $30.00 |

## INSTRUCTIONS

The undersigned acknowledge(s) receipt of your letter and the enclosed Offer to Purchase and Consent Solicitation Statement and the Letter of Transmittal and Consent (collectively, the "Offer Documents") in connection with the offer by Tyco International Group S.A. to purchase for cash any and all of its outstanding 6.0% notes due 2013 (CUSIP No. 902118BK3), 6.125% notes due 2008 (CUSIP No. 902118AM0), 6.125% notes due 2009 (CUSIP No. 902118AJ7), 6.75% notes due 2011 (CUSIP No. 902118AY4), 6.375% notes due 2011 (CUSIP No. 902118BC1), 7.0% notes due 2028 (CUSIP No. 902118AC2), and 6.875% notes due 2029 (CUSIP No. 902118AK4) (collectively, the "Notes") upon the terms and subject to the conditions set forth in the Offer Documents.

This will instruct you to tender the aggregate principal amount of Notes indicated below held by you for the account or benefit of the undersigned (or, if no amount is indicated below, for all of the aggregate principal amount of Notes held by you for the account of the undersigned) upon the terms and subject to the conditions set forth in the Offer Documents.

_____
Signature(s) of Holder(s)

_____
Name (Please Print)

_____
Address

_____
City, State and Zip Code

_____
Signature(s) of Holder(s)

_____
Name (Please Print)

_____
Telephone Number (including Area Code)

_____
Date

4

Aggregate principal amount of Notes to be tendered and as to which Consent is given*:

| Securities Being Tendered | Principal Amount Tendered** |
|---|---|
| **2003 Indenture Notes** | |
| Tyco International Group S.A. 6.0% notes due 2013 (CUSIP No. 90211HBK3) | $ _____ |
| **1998 Indenture Notes** | |
| Tyco International Group S.A. 6.125% notes due 2008 (CUSIP No. 902118AM0) | $ _____ |
| Tyco International Group S.A. 6.125% notes due 2009 (CUSIP No. 902118AJ7) | $ _____ |
| Tyco International Group S.A. 6.75% notes due 2011 (CUSIP No. 902118AY4) | $ _____ |
| Tyco International Group S.A. 6.375% notes due 2011 (CUSIP No. 902118BC1) | $ _____ |
| Tyco International Group S.A. 7.0% notes due 2028 (CUSIP No. 902118AC2) | $ _____ |
| Tyco International Group S.A. 6.875% notes due 2029 (CUSIP No. 902118AK4) | $ _____ |

\* The tender of Notes will constitute consent to the applicable Proposed Amendments and execution and delivery of the applicable Supplemental Indentures pursuant to the terms of the Offer Documents.

\*\* Unless otherwise indicated, it will be assumed that you intend for us to tender and deliver Consents for all of the aggregate principal amount of Notes held by us for your account.

**YOU MUST RETURN THIS INSTRUCTION FORM IN ADVANCE OF THE EARLY CONSENT DATE OR EXPIRATION DATE, AS THE CASE MAY BE, TO THE BROKER, DEALER, COMMERCIAL BANK, TRUST COMPANY OR OTHER NOMINEE WHO SENT YOU THE ENCLOSED LETTER TO ALLOW SUCH PERSON SUFFICIENT TIME TO TENDER YOUR NOTES PRIOR TO SUCH DATE. SENDING THIS FORM TO THE COMPANY, TYCO, THE DEALER MANAGERS, THE SOLICITATION AGENT, THE DEPOSITARY, THE INFORMATION AGENT OR ANY OTHER PERSON WILL NOT CONSTITUTE A VALID TENDER IN THE TENDER OFFERS OR A VALID CONSENT IN THE CONSENT SOLICITATIONS.**

# EXHIBIT D

From: BANK OF NY

06/01/2007 16:33

#780 P.001/006

TYCO INTERNATIONAL GROUP S.A.,
as Issuer,

TYCO INTERNATIONAL FINANCE S.A.,
as co-obligor,

TYCO INTERNATIONAL LTD.,
as Guarantor,

AND

THE BANK OF NEW YORK,
as Trustee

SUPPLEMENTAL INDENTURE NO. 21
Dated as of May 30, 2007

From:BANK OF NY    08/01/2007 16:34    #780 P. 002/005

THIS SUPPLEMENTAL INDENTURE NO. 21 is dated as of May 30, 2007 among Tyco International Group S.A., a Luxembourg company (the "Issuer"), Tyco International Finance S.A., a Luxembourg company ("TIFSA"), Tyco International Ltd., a Bermuda company ("Tyco"), and The Bank of New York, a New York banking association (the "Trustee").

## RECITALS

A.    The Issuer has executed and delivered to the Trustee an Indenture, dated as of June 9, 1998 (as heretofore amended, the "Indenture"), to provide for the issuance by the Issuer of the Securities.

B.    The Boards of Directors of the Issuer and TIFSA have determined it is desirable to add TIFSA as a co-obligor under the Indenture with respect to the Securities, with the Issuer remaining as an obligor and Tyco remaining as Guarantor under the Indenture with respect to the Securities.

C.    Pursuant to this Supplemental Indenture No. 21, TIFSA is willing to become a co-obligor with respect to the due and punctual payment of the principal of and interest on all the Securities according to their tenor, and the due and punctual performance and observance of all of the covenants and agreements of the Indenture to be performed or observed by the Issuer.

D.    This Supplemental Indenture No. 21 is being entered into pursuant to Section 7.1(d) of the Indenture and the entry into this Supplemental Indenture No. 21 by the parties hereto is in all respects authorized by the provisions of the Indenture.

E.    All things necessary to make this Supplemental Indenture No. 21 a valid indenture and agreement according to its terms have been done.

NOW, THEREFORE, for and in consideration of the foregoing premises, the Issuer, TIFSA, Tyco and the Trustee mutually covenant and agree for the equal and proportionate benefit of the respective holders from time to time of the Securities as follows:

## ARTICLE I

Section 1.1    Additional Obligor.

TIFSA hereby expressly agrees to become a co-obligor with respect to the due and punctual payment of the principal of and interest on all the Securities according to their tenor, and the due and punctual performance and observance of all of the covenants and agreements of the Indenture to be performed or observed by the Issuer. In connection with TIFSA becoming such a co-obligor, the Issuer shall remain as an obligor and Tyco shall remain as Guarantor under the Indenture with respect to the Securities.

2

06/01/2007 16:34     From:BANK OF NY     #780 P.003/005

## ARTICLE II

### MISCELLANEOUS

**Section 2.1    Definitions.**

Capitalized terms used but not defined in this Supplemental Indenture No. 21 shall have the meanings ascribed thereto in the Indenture.

**Section 2.2    Confirmation of Indenture.**

The Indenture, as supplemented and amended by this Supplemental Indenture No. 21, is in all respects ratified and confirmed, and the Indenture, this Supplemental Indenture No. 21 and all indentures supplemental thereto shall be read, taken and construed as one and the same instrument.

**Section 2.3    Concerning the Trustee.**

In carrying out the Trustee's responsibilities hereunder, the Trustee shall have all of the rights, protections and immunities which it possesses under the Indenture. The Trustee assumes no responsibility for the correctness of the recitals contained herein. The Trustee makes no representations as to the validity or sufficiency of this Supplemental Indenture No. 21.

**Section 2.4    NEW YORK LAW TO GOVERN.**

THIS SUPPLEMENTAL INDENTURE NO. 21 SHALL BE DEEMED TO BE A CONTRACT UNDER THE LAWS OF THE STATE OF NEW YORK, AND FOR ALL PURPOSES SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF SUCH STATE, WITHOUT REGARD TO PRINCIPLES OF THE CONFLICT OF LAWS THEREOF.

**Section 2.5    Effectiveness.**

This Supplemental Indenture No. 21 shall become effective upon execution by the Issuer, TIFSA, Tyco and the Trustee.

**Section 2.6    Counterparts.**

This Supplemental Indenture No. 21 may be executed in any number of counterparts each of which shall be an original, but such counterparts shall together constitute but one and the same instrument.

**Section 2.7    No Benefit.**

Nothing in this Supplemental Indenture No. 21, express or implied, shall give to any Person other than the parties hereto and their successors or assigns, and the holders of the Securities, any benefit or legal or equitable rights, remedy or claim under this Supplemental Indenture No. 21 or the Indenture.

3

IN WITNESS WHEREOF, the parties hereto have caused this Supplemental Indenture No. 21 to be duly executed all as of the day and year first above written.

TYCO INTERNATIONAL GROUP S.A.

By: _____
Name: _____ Michelangelo F. Stefani
Title: MANAGING DIRECTOR

TYCO INTERNATIONAL FINANCE S.A.

By: _____
Name: _____ Michelangelo F. Stefani
Title: MANAGING DIRECTOR

TYCO INTERNATIONAL LTD.

By: _____
Name:
Title:

THE BANK OF NEW YORK,
as Trustee

By: _____
Name:
Title:

5

06/01/2007 18:34     #780 P. 004/005

From: BANK OF NY

IN WITNESS WHEREOF, the parties hereto have caused this Supplemental Indenture No. 21 to be duly executed all as of the day and year first above written.

TYCO INTERNATIONAL GROUP S.A.

By:_____
 Name:
 Title:

TYCO INTERNATIONAL FINANCE S.A.

By:_____
 Name:
 Title:

TYCO INTERNATIONAL LTD.

By:_____
 Name:
 Title:  Christopher J. Coughlin
   Executive Vice President and
   Chief Financial Officer

THE BANK OF NEW YORK,
 as Trustee

By:_____
 Name:
 Title:

5

From:BANK OF NY                                    06/01/2007 19:37    #764 P.001/003

# GIBSON, DUNN & CRUTCHER LLP

## LAWYERS

A REGISTERED LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

200 Park Avenue  New York, New York 10166-0193
(212) 351-4000
www.gibsondunn.com

www.gibsondunn.com

May 30, 2007

**Direct Dial**
(212) 351-4000

**Fax No.**

**Client No.**
C 92220-00198

The Bank of New York, as trustee
101 Barclay Street, 4 E
New York, New York 10286

Re:    *Tyco International Group S.A./Indenture dated as of June 9, 1998*

Ladies and Gentlemen:

We have acted as counsel to Tyco International Group S.A., a Luxembourg company (the "Issuer"), in connection with the preparation of Supplemental Indenture No. 21 dated the date hereof (the "Supplemental Indenture") to the Indenture, dated as of June 9, 1998 (as heretofore amended, the "Indenture"), among the Issuer, the Guarantor party thereto (the "Guarantor") and you, as Trustee (the "Trustee"), relating to the Issuer's 6.125% Notes due 2008, 6.125% Notes due 2009, 6.375% Notes due 2011, 6.75% Notes due 2011, 7.0% Notes due 2028 and 6.875% Notes due 2029 (the "Securities"). Capitalized terms used herein and not otherwise defined herein are used herein as defined in the Indenture. This letter is delivered to you pursuant to Sections 7.4 and 10.5 of the Indenture.

In arriving at the opinions expressed below, we have examined originals, or copies certified or otherwise identified to our satisfaction, of the Indenture, the Supplemental Indenture, the resolutions of the Boards of Directors of the Issuer and the Guarantor, approving the execution, delivery and performance of the Supplemental Indenture, the Officers' Certificate delivered by the Issuer to the Trustee pursuant to Sections 7.4 and 10.5 of the Indenture (the "Officers' Certificate") and such other documents, corporate records, certificates of officers of the Issuer and the Guarantor and of public officials and other instruments as we have deemed necessary or advisable to enable us to render the opinions set forth below.

In our examination, we have assumed the genuineness of all signatures, the legal capacity and competency of all natural persons, the authenticity of all documents submitted to us as originals and the conformity to original documents of all documents submitted to us as copies. As to any facts material to these opinions, we have relied to the extent we deemed appropriate

LOS ANGELES  NEW YORK  WASHINGTON, D.C.  SAN FRANCISCO  PALO ALTO
LONDON  PARIS  MUNICH  BRUSSELS  ORANGE COUNTY  CENTURY CITY  DALLAS  DENVER

From:BANK OF NY                                06/01/2007 18:37    #784 P.002/003

# GIBSON, DUNN & CRUTCHER LLP

The Bank of New York
May 30, 2007
Page 2

and without independent investigation upon statements and representations of officers and other representatives of the Issuer and the Guarantor and others, including the statements made in the Officers' Certificate.

In connection with the preparation of this opinion, we have read Sections 7.1, 7.4 and 10.5 of the Indenture and the definitions of the defined terms used therein. In our opinion, we have made such examination or investigation as is necessary to enable us to express an informed opinion as to (i) whether or not the Supplemental Indenture complies with the applicable provisions of the Indenture and (ii) whether or not the conditions precedent under the Indenture to the execution and delivery of the Supplemental Indenture by the Trustee have been complied with.

Based upon the foregoing, and subject to the assumptions, qualifications and limitations set forth herein, we are of the opinion that (i) the Supplemental Indenture complies with the applicable provisions of the Indenture and (ii) the conditions precedent under the Indenture to the execution and delivery of the Supplemental Indenture by the Trustee have been complied with.

We render no opinion herein as to matters involving the laws of any jurisdiction other than the State of New York. This opinion is limited to the effect of the current state of the laws of the State of New York and the facts as they currently exist. We assume no obligation to revise or supplement this opinion in the event of future changes in such laws or the interpretations thereof or such facts.

From: BANK OF NY                                    08/01/2007 18:37     #764 P.003/003

# GIBSON, DUNN & CRUTCHER LLP

The Bank of New York
May 30, 2007
Page 3

    The opinions expressed above are solely for your benefit in connection with the Supplemental Indenture and are not to be used for any other purpose or circulated, quoted or otherwise referred to without, in each case, our written permission.

           Very truly yours,

           *Gibson, Dunn & Crutcher LLP*

From:BANK OF NY                                    06/01/2007 16:36     #762 P.001/003

## TYCO INTERNATIONAL GROUP S.A.

### May 30, 2007

### OFFICERS' CERTIFICATE PURSUANT TO SECTIONS 7.4 AND 10.5 OF THE INDENTURE

Reference is made to the Indenture, dated as of June 9, 1998 (as heretofore amended, the "Indenture"), among Tyco International Group S.A., a Luxembourg company (the "Issuer"), Tyco International Ltd., a Bermuda company (the "Guarantor"), and The Bank of New York, as trustee (the "Trustee"). Capitalized terms used herein without definition shall have the meanings ascribed to such terms in the Indenture. This certificate is issued pursuant to Sections 7.4 and 10.5 of the Indenture in connection with the Issuer's request that the Trustee enter into Supplemental Indenture No. 21, dated as of the date hereof, among the Issuer, Tyco International Finance S.A., the Guarantor and the Trustee. Each of the undersigned, being a duly elected and appointed managing director of the Issuer, hereby certifies to the Trustee, in his capacity as such a managing director and not in his individual capacity, as follows:

    1.    I have read the applicable covenants and conditions in the Indenture relating to the execution and delivery of the Supplemental Indenture No. 21 by the parties thereto. In particular, I have read and reviewed the pertinent provisions of Sections 7.1, 7.4 and 10.5 of the Indenture.

    2.    In my opinion, I have made such examination or investigation as is necessary to enable me to express an informed opinion as to (i) whether or not Supplemental Indenture No. 21 complies with the applicable provisions of the Indenture and (ii) whether or not all conditions precedent provided for in the Indenture relating to the execution and delivery of Supplemental Indenture No. 21 have been complied with. Such investigation has included examinations of documents I deemed applicable.

    3.    On the basis of the foregoing, I am of the opinion that (i) Supplemental Indenture No. 21 complies with the applicable provisions of the Indenture and (ii) all conditions precedent provided for in the Indenture relating to the execution and delivery of Supplemental Indenture No. 21 have been complied with.

[Remainder of page intentionally left blank.]

From:BANK OF NY                                      08/01/2007 18:38    #762 P.002/008

IN WITNESS WHEREOF, the undersigned have executed this Officers' Certificate as of the date first written above.

TYCO INTERNATIONAL GROUP S.A.

By: _____

Title:
Name: Michelangele F. STEFANI    MANAGING DIRECTOR

By: _____

Title:
Name:

From:BANK OF NY                     06/01/2007 16:36    #782 P.003/003

     IN WITNESS WHEREOF, the undersigned have executed this Officers' Certificate as of the date first written above.

                            TYCO INTERNATIONAL GROUP S.A.

                    By: _____
                        Title:
                        Name:Kevin O'Kelly-Lynch
                             Managing Director

                    By: _____
                        Title:
                        Name:

Very truly yours,

TYCO INTERNATIONAL GROUP S.A.

By: _____

Name: ── Michelangelo T. STEFANI

Title: MANAGING DIRECTOR

[Order to Execute Supplemental Indenture to November 12, 2003 Indenture]

From:BANK OF NY                                06/01/2007 16:30    #768 P.001/006

TYCO INTERNATIONAL GROUP S.A.,
as Issuer,


TYCO INTERNATIONAL FINANCE S.A.,
as co-obligor,


TYCO INTERNATIONAL LTD.,
as Guarantor,


AND


THE BANK OF NEW YORK,
as Trustee


SUPPLEMENTAL INDENTURE NO. 2
Dated as of May 30, 2007

From:BANK OF NY                                      08/01/2007 18:31     #758 P.002/006

THIS SUPPLEMENTAL INDENTURE NO. 2 is dated as of May 30, 2007 among Tyco International Group S.A., a Luxembourg company (the "Company"), Tyco International Finance S.A., a Luxembourg company ("TIFSA"), Tyco International Ltd., a Bermuda company ("Tyco"), and The Bank of New York, a New York banking association (the "Trustee").

## RECITALS

A.     The Company has executed and delivered to the Trustee an Indenture, dated as of November 12, 2003 (as heretofore amended, the "Indenture"), to provide for the issuance by the Company of the Securities.

B.     The Boards of Directors of the Company and TIFSA have determined it is desirable to add TIFSA as a co-obligor under the Indenture with respect to the Securities, with the Company remaining as an obligor and Tyco remaining as Guarantor under the Indenture with respect to the Securities.

C.     Pursuant to this Supplemental Indenture No. 2, TIFSA is willing to become a co-obligor with respect to the due and punctual payment of the principal of, premium, if any, and interest on all the Securities according to their tenor, and the due and punctual performance and observance of all of the covenants and agreements of the Indenture to be performed or observed by the Company.

D.     This Supplemental Indenture No. 2 is being entered into pursuant to Section 9.01(h) of the Indenture and the entry into this Supplemental Indenture No. 2 by the parties hereto is in all respects authorized by the provisions of the Indenture.

E.     All things necessary to make this Supplemental Indenture No. 2 a valid indenture and agreement according to its terms have been done.

NOW, THEREFORE, for and in consideration of the foregoing premises, the Company, TIFSA, Tyco and the Trustee mutually covenant and agree for the equal and proportionate benefit of the respective holders from time to time of the Securities as follows:

## ARTICLE I

### Section 1.1    Additional Obligor.

TIFSA hereby expressly agrees to become a co-obligor with respect to the due and punctual payment of the principal of, premium, if any, and interest on all the Securities according to their tenor, and the due and punctual performance and observance of all of the covenants and agreements of the Indenture to be performed or observed by the Company. In connection with TIFSA becoming such a co-obligor, the Company shall remain as an obligor and Tyco shall remain as Guarantor under the Indenture with respect to the Securities.

2

From:BANK OF NY                                    09/01/2007 18:31    #758 P.003/005

## ARTICLE II

## MISCELLANEOUS

### Section 2.1    Definitions.

Capitalized terms used but not defined in this Supplemental Indenture No. 2 shall have the meanings ascribed thereto in the Indenture.

### Section 2.2    Confirmation of Indenture.

The Indenture, as supplemented and amended by this Supplemental Indenture No. 2, is in all respects ratified and confirmed, and the Indenture, this Supplemental Indenture No. 2 and all indentures supplemental thereto shall be read, taken and construed as one and the same instrument.

### Section 2.3    Concerning the Trustee.

In carrying out the Trustee's responsibilities hereunder, the Trustee shall have all of the rights, protections and immunities which it possesses under the Indenture. The Trustee assumes no responsibility for the correctness of the recitals contained herein. The Trustee makes no representations as to the validity or sufficiency of this Supplemental Indenture No. 2.

### Section 2.4    GOVERNING LAW.

THIS SUPPLEMENTAL INDENTURE NO. 2 SHALL BE DEEMED TO BE A CONTRACT MADE UNDER THE INTERNAL LAWS OF THE STATE OF NEW YORK, AND FOR ALL PURPOSES SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF SAID STATE WITHOUT REGARD TO CONFLICTS OF LAWS PRINCIPLES THAT WOULD REQUIRE THE APPLICATION OF ANY OTHER LAW.

### Section 2.5    Effectiveness.

This Supplemental Indenture No. 2 shall become effective upon execution by the Company, TIFSA, Tyco and the Trustee.

### Section 2.6    Counterparts.

This Supplemental Indenture No. 2 may be executed in any number of counterparts each of which shall be an original, but such counterparts shall together constitute but one and the same instrument.

### Section 2.7    No Benefit.

Nothing in this Supplemental Indenture No. 2, express or implied, shall give to any Person other than the parties hereto and their successors or assigns, and the holders of the Securities, any benefit or legal or equitable rights, remedy or claim under this Supplemental Indenture No. 2 or the Indenture.

IN WITNESS WHEREOF, the parties hereto have caused this Supplemental Indenture No. 2 to be duly executed all as of the day and year first above written.

TYCO INTERNATIONAL GROUP S.A.

By:
Name:     Michelangelo F. STEFANI
Title: MANAGING DIRECTOR

TYCO INTERNATIONAL FINANCE S.A.

By:
Name:     Michelangelo F. STEFANI
Title: MANAGING DIRECTOR

TYCO INTERNATIONAL LTD.

By:
Name:
Title:

THE BANK OF NEW YORK,
as Trustee

By:
Name:
Title:

5

From:BANK OF NY                                    09/01/2007 16:31    #756 P.005/005

IN WITNESS WHEREOF, the parties hereto have caused this Supplemental Indenture No. 2 to be duly executed all as of the day and year first above written.

TYCO INTERNATIONAL GROUP S.A.

By:_____
   Name:
   Title:

TYCO INTERNATIONAL FINANCE S.A.

By:_____
   Name:
   Title:

TYCO INTERNATIONAL LTD.

By:_____
   Name: Christopher J. Coughlin
   Title: Executive Vice President and
       Chief Financial Officer

THE BANK OF NEW YORK,
as Trustee

By:_____
   Name:
   Title:

5

From:BANK OF NY                                    06/01/2007 16:32    #758 P.001/001

**Tyco International Group S.A.**
**17 Boulevard Grande Dutchesse Charlotte**
**L-1331 Luxembourg**

May 30, 2007

The Bank of New York, as trustee
101 Barclay Street, 21W
New York, New York 10286
Attention: Corporate Trust Administration

      Re:   *Tyco International Group S.A./Indenture dated as of November 12, 2003*

Ladies and Gentlemen:

      Pursuant to Section 9.05 of the Indenture, dated as of November 12, 2003 (as amended by the First Supplemental Indenture, dated as of November 12, 2003, the "Indenture"), among Tyco International Group S.A., a Luxembourg company (the "Company"), Tyco International Ltd., a Bermuda company (the "Guarantor"), and you, as trustee, relating to the Company's 6.0% Notes due 2013, you are hereby requested to join with the Company, Tyco International Finance S.A. and the Guarantor in the execution of Supplemental Indenture No. 2 dated the date hereof.

      In this connection, we have enclosed Supplemental Indenture No. 2 and an officers' certificate, each executed by the Company, and an opinion of counsel.

      In conversations with you and your counsel earlier today, you did not indicate whether you would join in the execution of Supplemental Indenture No. 2.

      Given that we have complied with the requirements of the Indenture to enter into Supplemental Indenture No. 2, pursuant to Section 9.01(h) without the consent of securityholders, we believe that you have no basis for not complying with our request and joining in the execution of Supplemental Indenture No. 2.

      *[The remainder of this page is intentionally left blank. Signature page to follow.]*

**Tyco International Group S.A.**
**17 Boulevard Grande Duchesse Charlotte**
**L-1331 Luxembourg**

May 31, 2007

The Bank of New York, as trustee
101 Barclay Street, 21W
New York, New York 10286
Attention: Corporate Trust Administration

    Re:    *Tyco International Group S.A./Indenture dated as of November 12, 2003*

Ladies and Gentlemen:

    Attached are the resolutions that your counsel requested with respect to Supplemental Indenture No. 2 to the Indenture, dated as of November 12, 2003, among Tyco International Group S.A., a Luxembourg company, Tyco International Ltd., a Bermuda company, and you, as trustee, relating to the Company's 6.0% Notes due 2013, which Supplemental Indenture No. 2 was delivered to you earlier today.

                               Very truly yours,

                               Tyco International Group S.A.

**Managing Director's Certificate**

**May 31, 2007**

I, Michelangelo Stefani, Managing Director of Tyco International Group S.A. ("TIGSA"), in my capacity as Managing Director thereof and not in my personal capacity, hereby certify on behalf of TIGSA that the Board of Directors of TIGSA adopted the following resolutions on or about April 17, 2007:

The Board resolves to authorize and empower any Director or either of his or her designees, and each of them hereby is, in the name and on behalf of the Company authorized, to:

(ii) approve the form, terms, provisions, execution and performance of any and all documents, agreements, certificates, instruments or guarantees relating to various strategies and options presented to the Board and discussed at the occasion of meetings held in Luxembourg on 30 November 2006 and on 16 February 2007, including namely the calling of or the making of offers for the purchase or redemption of some or all of the Existing Public Debt and the solicitation of consents to waivers under or modifications to the Existing Public Debt Documentation (the "Existing Public Debt Transactions") or the Credit Linked Notes Actions, including approving any of the Board Presentations, or any changes, including material changes, or alternatives thereto, to call and hold meetings of noteholders, to execute and deliver all such documents, agreements, certificates, instruments or guarantees, to pay all such amounts, costs, fees and expenses and to take all such other action as any such officer may approve as necessary, proper, convenient or desirable in order to effectuate the Existing Public Debt Transactions and to perform the obligations thereunder or the Credit Linked Notes Actions; and

(iii) take or cause to be taken all actions, to enter into and deliver any document in connection with the transactions contemplated by the foregoing resolutions and which is not specifically authorized in the preceding resolutions, and to execute and deliver all such documents, agreements, certificates, instruments or guarantees, to pay all such amounts, costs, fees and expenses and to take all such other action as any such officer may approve as necessary, proper, convenient or desirable in order to effectuate the matters approved hereunder.

[Remainder of the Page Intentionally Left Blank]

[Signature Page to Tyco International Group S.A. Managing Director's Certificate]

IN WITNESS WHEREOF, the undersigned has executed this Certificate as of the date first set forth above.

By
Name:
Title: Managing Director

From:BANK OF NY                                                    06/01/2007 16:32    #757 P.001/009

# GIBSON, DUNN & CRUTCHER LLP

### LAWYERS

A REGISTERED LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

200 Park Avenue  New York, New York 10166-0193
(212) 351-4000
www.gibsondunn.com

www.gibsondunn.com

**May 30, 2007**

Direct Dial                                                        Client No.
(212) 351-4000                                                     C 92220-00198
Fax No.

The Bank of New York, as trustee
101 Barclay Street, 4 E
New York, New York 10286

Re:    *Tyco International Group S.A./Indenture dated as of November 12, 2003*

Ladies and Gentlemen:

We have acted as counsel to Tyco International Group S.A., a Luxembourg company (the "Company"), in connection with the preparation of Supplemental Indenture No. 2 dated the date hereof (the "Supplemental Indenture") to the Indenture, dated as of November 12, 2003 (as heretofore amended, the "Indenture"), among the Company, the Guarantor party thereto (the "Guarantor") and you, as Trustee (the "Trustee"), relating to the Company's 6.0% Notes due 2013 (the "Securities"). Capitalized terms used herein and not otherwise defined herein are used herein as defined in the Indenture. This letter is delivered to you pursuant to Sections 9.05 and 13.06 of the Indenture.

In arriving at the opinions expressed below, we have examined originals, or copies certified or otherwise identified to our satisfaction, of the Indenture, the Supplemental Indenture, the resolutions of the Boards of Directors of the Company and the Guarantor, approving the execution, delivery and performance of the Supplemental Indenture, the Officers' Certificate delivered by the Company to the Trustee pursuant to Sections 9.05 and 13.06 of the Indenture (the "Officers' Certificate") and such other documents, corporate records, certificates of officers of the Company and the Guarantor and of public officials and other instruments as we have deemed necessary or advisable to enable us to render the opinions set forth below.

In our examination, we have assumed the genuineness of all signatures, the legal capacity and competency of all natural persons, the authenticity of all documents submitted to us as originals and the conformity to original documents of all documents submitted to us as copies. As to any facts material to these opinions, we have relied to the extent we deemed appropriate and without independent investigation upon statements and representations of officers and other

LOS ANGELES  NEW YORK  WASHINGTON, D.C.  SAN FRANCISCO  PALO ALTO
LONDON  PARIS  MUNICH  BRUSSELS  ORANGE COUNTY  CENTURY CITY  DALLAS  DENVER

## GIBSON, DUNN & CRUTCHER LLP

The Bank of New York
May 30, 2007
Page 2

representatives of the Company and the Guarantor and others, including the statements made in the Officers' Certificate.

In connection with the preparation of this opinion, we have read Sections 9.01, 9.05 and 13.06 of the Indenture and the definitions of the defined terms used therein. In our opinion, we have made such examination or investigation as is necessary to enable us to express an informed opinion as to (i) whether or not the Supplemental Indenture is authorized or permitted by, and conforms to, the terms of Article IX of the Indenture, (ii) whether or not it is proper for the Trustee under the provisions of Article IX of the Indenture to join in the execution of the Supplemental Indenture, (iii) whether or not the conditions precedent under the Indenture to the execution and delivery of the Supplemental Indenture by the Trustee have been complied with and (iv) whether or not the Supplemental Indenture complies with the Indenture.

Based upon the foregoing, and subject to the assumptions, qualifications and limitations set forth herein, we are of the opinion that (i) the Supplemental Indenture is authorized or permitted by, and conforms to, the terms of Article IX of the Indenture, (ii) it is proper for the Trustee under the provisions of Article IX of the Indenture to join in the execution of the Supplemental Indenture, (iii) the conditions precedent under the Indenture to the execution and delivery of the Supplemental Indenture by the Trustee have been complied with and (iv) the Supplemental Indenture complies with the Indenture.

We render no opinion herein as to matters involving the laws of any jurisdiction other than the State of New York. This opinion is limited to the effect of the current state of the laws of the State of New York and the facts as they currently exist. We assume no obligation to revise or supplement this opinion in the event of future changes in such laws or the interpretations thereof or such facts.

From: BANK OF NY

08/01/2007 16:32     #757 P.003/003

# GIBSON, DUNN & CRUTCHER LLP

The Bank of New York
May 30, 2007
Page 3

    The opinions expressed above are solely for your benefit in connection with the Supplemental Indenture and are not to be used for any other purpose or circulated, quoted or otherwise referred to without, in each case, our written permission.

        Very truly yours,

        *Gibson, Dunn & Crutcher LLP*

# EXHIBIT E

TYCO INTERNATIONAL GROUP S.A.,
as Issuer,


TYCO INTERNATIONAL FINANCE S.A.,
as co-obligor,


TYCO INTERNATIONAL LTD.,
as Guarantor and as successor Issuer,


AND


THE BANK OF NEW YORK,
as Trustee


SUPPLEMENTAL INDENTURE NO. 22
Dated as of June 1, 2007

THIS SUPPLEMENTAL INDENTURE NO. 22 is dated as of June 1, 2007 among Tyco International Group S.A., a Luxembourg company (the "Issuer"), Tyco International Finance S.A., a Luxembourg company ("TIFSA"), Tyco International Ltd., a Bermuda company ("Tyco"), and The Bank of New York, a New York banking association (the "Trustee").

## RECITALS

A.    The Issuer has executed and delivered to the Trustee an Indenture, dated as of June 9, 1998 (as heretofore amended, the "Indenture"), to provide for the issuance by the Issuer of the Securities.

B.    The Issuer on the date hereof will make a distribution of all of its assets to Tyco.

C.    Section 8.1 of the Indenture provides that the Issuer may not sell or convey all or substantially all of its assets to any person, unless the person which acquires by sale or conveyance substantially all of the assets of the Issuer shall expressly assume the due and punctual payment of the principal of and interest on all the Securities according to their tenor, and the due and punctual performance and observance of all of the covenants and agreements of the Indenture to be performed or observed by the Issuer, by a supplemental indenture.

D.    Section 8.2 of the Indenture provides that the successor entity to which such conveyance or transfer is made shall succeed to, and be substituted for, the Issuer with the same effect as if the successor person had been named therein; and the Issuer shall be discharged from all obligations and covenants under the Indenture and the Securities and may be liquidated and dissolved.

E.    In accordance with the above requirements of the Indenture, the Boards of Directors of the Issuer, TIFSA and Tyco have determined it is desirable that, upon the distribution by the Issuer of all of its assets to Tyco (the "Transfer"), Tyco shall assume the Issuer's obligations with respect to the due and punctual payment of the principal of and interest on all the Securities according to their tenor and the due and punctual performance and observance of all of the covenants and agreements of the Indenture to be performed or observed by the Issuer, and the Issuer shall be discharged from all obligations and covenants under the Indenture and the Securities and may be liquidated and dissolved.

F.    TIFSA will continue to be obligated under the Indenture with respect to the due and punctual payment of the principal of and interest on all the Securities according to their tenor and the due and punctual performance and observance of all of the covenants and agreements of the Indenture to be performed or observed by TIFSA.

G.    The entry into this Supplemental Indenture No. 22 by the parties hereto is in all respects authorized by the provisions of the Indenture.

H.    All things necessary to make this Supplemental Indenture No. 22 a valid indenture and agreement according to its terms have been done.

2

NOW, THEREFORE, for and in consideration of the foregoing premises, the Issuer, TIFSA, Tyco and the Trustee mutually covenant and agree for the equal and proportionate benefit of the respective holders from time to time of the Securities as follows:

## ARTICLE I

### Section 1.1    Assumption and Succession.

Upon the Transfer and in accordance with Sections 8.1 and 8.2 of the Indenture, Tyco hereby expressly assumes all of the obligations of the Issuer under the Indenture, including the obligation to make the due and punctual payment of the principal of and interest on all the Securities according to their tenor and the due and punctual performance and observance of all of the covenants and agreements of the Indenture to be performed or observed by the Issuer, and Tyco shall succeed to, and be substituted for, the Issuer with the same effect as if Tyco had been named therein and the Issuer shall be discharged from all obligations and covenants under the Indenture and the Securities and may be liquidated and dissolved.

## ARTICLE II

## MISCELLANEOUS

### Section 2.1    Definitions.

Capitalized terms used but not defined in this Supplemental Indenture No. 22 shall have the meanings ascribed thereto in the Indenture.

### Section 2.2    Confirmation of Indenture.

The Indenture, as supplemented and amended by this Supplemental Indenture No. 22, is in all respects ratified and confirmed, and the Indenture, this Supplemental Indenture No. 22 and all indentures supplemental thereto shall be read, taken and construed as one and the same instrument.

### Section 2.3    Concerning the Trustee.

In carrying out the Trustee's responsibilities hereunder, the Trustee shall have all of the rights, protections and immunities which it possesses under the Indenture. The Trustee assumes no responsibility for the correctness of the recitals contained herein. The Trustee makes no representations as to the validity or sufficiency of this Supplemental Indenture No. 22.

### Section 2.4    NEW YORK LAW TO GOVERN.

THIS SUPPLEMENTAL INDENTURE NO. 22 SHALL BE DEEMED TO BE A CONTRACT UNDER THE LAWS OF THE STATE OF NEW YORK, AND FOR ALL PURPOSES SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF SUCH STATE, WITHOUT REGARD TO PRINCIPLES OF THE CONFLICT OF LAWS THEREOF.

Section 2.5    **Effectiveness.**

This Supplemental Indenture No. 22 shall become effective upon execution by the Issuer, TIFSA, Tyco and the Trustee.

Section 2.6    **Counterparts.**

This Supplemental Indenture No. 22 may be executed in any number of counterparts each of which shall be an original, but such counterparts shall together constitute but one and the same instrument.

Section 2.7    **No Benefit.**

Nothing in this Supplemental Indenture No. 22, express or implied, shall give to any Person other than the parties hereto and their successors or assigns, and the holders of the Securities, any benefit or legal or equitable rights, remedy or claim under this Supplemental Indenture No. 22 or the Indenture.

4

IN WITNESS WHEREOF, the parties hereto have caused this Supplemental Indenture No. 22 to be duly executed all as of the day and year first above written.

TYCO INTERNATIONAL GROUP S.A.

By: _____
    Name:
    Title:    Michelangelo F. STEFANI
              Managing Director

TYCO INTERNATIONAL FINANCE S.A.

By: _____
    Name:    Michelangelo F. STEFANI
    Title:   Managing Director

TYCO INTERNATIONAL LTD.

By: _____
    Name:
    Title:

THE BANK OF NEW YORK,
as Trustee

By: _____
    Name:
    Title:

5

IN WITNESS WHEREOF, the parties hereto have caused this Supplemental Indenture No. 22 to be duly executed all as of the day and year first above written.

TYCO INTERNATIONAL GROUP S.A.

By:_____
   Name:
   Title:

TYCO INTERNATIONAL FINANCE S.A.

By:_____
   Name:
   Title:

TYCO INTERNATIONAL LTD.

By:_____
   Name: Christopher J. Coughlin
   Title: Executive Vice President and Chief Financial Officer

THE BANK OF NEW YORK,
as Trustee

By:_____
   Name:
   Title:

5

## TYCO INTERNATIONAL GROUP S.A.

### June 1, 2007

### <u>OFFICERS' CERTIFICATE PURSUANT TO SECTIONS 7.4 AND 10.5 OF THE INDENTURE</u>

Reference is made to the Indenture, dated as of June 9, 1998 (as heretofore amended, the "Indenture"), among Tyco International Group S.A., a Luxembourg company (the "Issuer"), Tyco International Ltd., a Bermuda company (the "Guarantor"), and The Bank of New York, as trustee (the "Trustee"). Capitalized terms used herein without definition shall have the meanings ascribed to such terms in the Indenture. This certificate is issued pursuant to Sections 7.4 and 10.5 of the Indenture in connection with the Issuer's request that the Trustee enter into Supplemental Indenture No. 22, dated as of the date hereof, among the Issuer, Tyco International Finance S.A., the Guarantor and the Trustee. Each of the undersigned, being a duly elected and appointed managing director of the Issuer, hereby certifies to the Trustee, in his capacity as such a managing director and not in his individual capacity, as follows:

1.      I have read the applicable covenants and conditions in the Indenture relating to the execution and delivery of the Supplemental Indenture No. 22 by the parties thereto. In particular, I have read and reviewed the pertinent provisions of Sections 7.1, 7.4 and 10.5 of the Indenture.

2.      In my opinion, I have made such examination or investigation as is necessary to enable me to express an informed opinion as to (i) whether or not Supplemental Indenture No. 22 complies with the applicable provisions of the Indenture and (ii) whether or not all conditions precedent provided for in the Indenture relating to the execution and delivery of Supplemental Indenture No. 22 have been complied with. Such investigation has included examinations of documents I deemed applicable.

3.      On the basis of the foregoing, I am of the opinion that (i) Supplemental Indenture No. 22 complies with the applicable provisions of the Indenture and (ii) all conditions precedent provided for in the Indenture relating to the execution and delivery of Supplemental Indenture No. 22 have been complied with.

[Remainder of page intentionally left blank.]

IN WITNESS WHEREOF, the undersigned have executed this Officers' Certificate as of the date first written above.

TYCO INTERNATIONAL GROUP S.A.

By: _____

Title:
Name:    Michelangelo F. STEFANI
         Managing Director

By: _____

Title:    MANAGING DIRECTOR
Name:    KEVIN O'KELLY-LYNCH

Officers' Certificate to Trustee

# GIBSON, DUNN & CRUTCHER LLP

## LAWYERS

A REGISTERED LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

200 Park Avenue  New York, New York 10166-0193

(212) 351-4000

www.gibsondunn.com

www.gibsondunn.com

June 1, 2007

Direct Dial

(212) 351-4000

Fax No.

Client No.
C 92220-00198

The Bank of New York, as trustee
101 Barclay Street, 4 E
New York, New York 10286

Re:    *Tyco International Group S.A./Indenture dated as of June 9, 1998*

Ladies and Gentlemen:

We have acted as counsel to Tyco International Group S.A., a Luxembourg company (the "Issuer"), in connection with the preparation of Supplemental Indenture No. 22 dated the date hereof (the "Supplemental Indenture") to the Indenture, dated as of June 9, 1998 (as heretofore amended, the "Indenture"), among the Issuer, Tyco International Finance S.A., a Luxembourg company ("TIFSA"), Tyco International Ltd, a Bermuda company ("Tyco") and you, as Trustee (the "Trustee"), relating to the Issuer's 6.125% Notes due 2008, 6.125% Notes due 2009, 6.375% Notes due 2011, 6.75% Notes due 2011, 7.0% Notes due 2028 and 6.875% Notes due 2029 (the "Securities"). Capitalized terms used herein and not otherwise defined herein are used herein as defined in the Indenture. This letter is delivered to you pursuant to Sections 7.4, 8.3 and 10.5 of the Indenture.

In arriving at the opinions expressed below, we have examined originals, or copies certified or otherwise identified to our satisfaction, of the Indenture, the Supplemental Indenture, the resolutions of the Boards of Directors of the Issuer, TIFSA and Tyco, approving the execution, delivery and performance of the Supplemental Indenture, the Officers' Certificate delivered by the Issuer to the Trustee pursuant to Sections 7.4 and 10.5 of the Indenture (the "Officers' Certificate") and such other documents, corporate records, certificates of officers of the Issuer, TIFSA and Tyco and of public officials and other instruments as we have deemed necessary or advisable to enable us to render the opinions set forth below.

In our examination, we have assumed the genuineness of all signatures, the legal capacity and competency of all natural persons, the authenticity of all documents submitted to us as originals and the conformity to original documents of all documents submitted to us as copies.

LOS ANGELES  NEW YORK  WASHINGTON, D.C.  SAN FRANCISCO  PALO ALTO
LONDON  PARIS  MUNICH  BRUSSELS  ORANGE COUNTY  CENTURY CITY  DALLAS  DENVER

**GIBSON, DUNN & CRUTCHER LLP**

The Bank of New York
June 1, 2007
Page 2

As to any facts material to these opinions, we have relied to the extent we deemed appropriate and without independent investigation upon statements and representations of officers and other representatives of the Issuer, TIFSA and Tyco and others, including the statements made in the Officers' Certificate.

In connection with the preparation of this opinion, we have read Sections 7.1, 7.4, 8.1, 8.2, 8.3 and 10.5 of the Indenture and the definitions of the defined terms used therein. In our opinion, we have made such examination or investigation as is necessary to enable us to express an informed opinion as to (i) whether or not the Supplemental Indenture complies with the applicable provisions of the Indenture, (ii) whether or not the Transfer (as defined in the Supplemental Indenture) complies with the applicable provisions of the Indenture, (iii) whether or not the assumption by Tyco of the obligations of the Issuer as provided in the Supplemental Indenture complies with the applicable provisions of the Indenture, (iv) whether or not the discharge and liquidation of TIGSA comply with the applicable provisions of the Indenture and (v) whether or not the conditions precedent under the Indenture to the execution and delivery of the Supplemental Indenture by the Trustee, such Transfer, such assumption and such discharge and liquidation have been complied with.

Based upon the foregoing, and subject to the assumptions, qualifications and limitations set forth herein, we are of the opinion that (i) the Supplemental Indenture complies with the applicable provisions of the Indenture, (ii) the Transfer complies with the applicable provisions of the Indenture, (iii) the assumption by Tyco of the obligations of the Issuer as provided in the Supplemental Indenture complies with the applicable provisions of the Indenture, (iv) the discharge and liquidation of the Issuer comply with the applicable provisions of the Indenture and (v) the conditions precedent under the Indenture to the execution and delivery of the Supplemental Indenture by the Trustee, such Transfer, such assumption and such discharge and liquidation have been complied with.

We render no opinion herein as to matters involving the laws of any jurisdiction other than the State of New York. This opinion is limited to the effect of the current state of the laws of the State of New York and the facts as they currently exist. We assume no obligation to revise or supplement this opinion in the event of future changes in such laws or the interpretations thereof or such facts.

The opinions expressed above are solely for your benefit in connection with the Supplemental Indenture and are not to be used for any other purpose or circulated, quoted or otherwise referred to without, in each case, our written permission.

Very truly yours,

*Gibson, Dunn & Crutcher LLP*

**Tyco International Group S.A.**
**17 Boulevard Grande Dutchesse Charlotte**
**L-1331 Luxembourg**

May 31, 2007

The Bank of New York, as trustee
101 Barclay Street, 21 W
New York, New York 10286
Attn: Corporate Trust Administration

Re:    *Tyco International Group S.A./Indenture dated as of June 9, 1998*

Ladies and Gentlemen:

Pursuant to Section 7.1 of the Indenture, dated as of June 9, 1998 (as heretofore amended), among Tyco International Group S.A., a Luxembourg company (the "Issuer"), Tyco International Finance S.A., a Luxembourg company ("TIFSA"), Tyco International Ltd., a Bermuda company (the "Guarantor"), and you, as trustee, relating to the Issuer's 6.125% Notes due 2008, 6.125% Notes due 2009, 6.375% Notes due 2011, 6.75% Notes due 2011, 7.0% Notes due 2028 and 6.875% Notes due 2029, you are hereby requested to join with the Issuer, TIFSA and the Guarantor in the execution of Supplemental Indenture No. 22 dated as of June 1, 2007.

In this connection, we have enclosed Supplemental Indenture No. 22 and an officers' certificate, each executed by the Issuer, and an opinion of counsel.

In conversations with you and your counsel yesterday, you did not indicate whether you would join in the execution of Supplemental Indenture No. 22.

Given that we have complied with the requirements of the Indenture to enter into Supplemental Indenture No. 22, pursuant to Section 7.1(b) without the consent of securityholders, we believe that you have no basis for not complying with our request and joining in the execution of Supplemental Indenture No. 22.

[*The remainder of this page is intentionally left blank. Signature page to follow.*]

Very truly yours,

TYCO INTERNATIONAL GROUP S.A.

By:

Name: KEVIN O'KELLY-LYNCH
Title: MANAGING DIRECTOR

[Order to Execute Supplemental Indenture No. 22 to June 9, 1998 Indenture]

CARTER LEDYARD & MILBURN, LLP
James Gadsden (JG 4990)
Gerald W. Griffin (GG 2778)
Two Wall Street
New York, New York 10005
(212) 732-3200

Attorneys for Plaintiff, The Bank of New York, as Indenture Trustee

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE BANK OF NEW YORK, as Indenture Trustee<br><br>                                Plaintiff,<br><br>                  – *against* –<br><br>TYCO INTERNATIONAL GROUP, S.A., and<br>TYCO INTERNATIONAL, LTD<br><br>                             Defendants. | Civil Action<br>No. _____<br><br><br>__COMPLAINT__ |

        Plaintiff, THE BANK OF NEW YORK, as Indenture Trustee (the "Trustee") under the Indentures dated as of June 9, 1998 and November 12, 2003 (the "Indentures"), by its attorneys, Carter Ledyard & Milburn LLP, for its complaint against defendants Tyco International Group, S.A. ("TIGSA") and Tyco International Ltd. ("Tyco International"; collectively, the "Company"), alleges as follows:

### NATURE OF THE ACTION

        1.  There is an existing dispute concerning the demand by the Company that the Trustee execute the Proposed Supplements (as hereinafter defined) to the Indentures to facilitate the Proposed Separation (as hereafter defined) of the Company's businesses.

2. The Trustee brings this action seeking a declaratory judgment to determine whether execution of the Proposed Supplements is permitted or authorized by the Indentures. The Company has demanded that the Trustee execute the Proposed Supplements. Trustee has received a direction from the holders of a majority of the Notes under each of the Indentures directing it not to do so. The Noteholders assert that the Proposed Separation would violate the successor obligor article of each Indenture because, giving effect to all of the transactions included in the Proposed Separation, no successor obligor will hold substantially all of TIGSA's assets.

3. The Trustee also seeks a judgment declaring that TIGSA is liable to pay and reimburse the Trustee all of its reasonable expenses incurred in resolving the proper construction of the Indentures, including attorneys' fees and expenses.

### THE PARTIES

4. The Bank of New York is a New York State chartered bank with trust powers with its principal place of business located at One Wall Street, New York, New York 10005.

5. Defendant Tyco International Group S.A. is a Luxembourg company with its principal place of business located at Boulevard Royal 26, Luxembourg, Luxembourg L-2449.

6. Defendant Tyco International, Ltd. is a Bermuda company with its principal place of business located at 90 Pitts Bay Road, Pembroke HM 08, Bermuda.

## JURISDICTION AND VENUE

7.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. Section 1332 based on diversity of the parties, and pursuant to 28 U.S.C. §§ 2201 and 2202 in that Plaintiff seeks a declaratory judgment.

8.  Venue is proper in this district pursuant to 28 U.S.C. § 1391.

9.  Defendants consented to the jurisdiction and venue of this Court in the Indentures. Section 10.8 of the 1998 Indenture and Section 13.04 of the 2003 Indenture each provide that any legal suit, action or proceeding based upon the Indenture shall be governed by New York law. Section 10.9 of the 1998 Indenture and Section 13.13 of the 2003 Indenture each provide that each party to the Indentures irrevocably submits to the exclusive jurisdiction of the state and federal courts located in the city and state of New York.

## FACTUAL BACKGROUND

10. The Bank of New York is Indenture Trustee under the Indenture dated as of June 9, 1998 (the "1998 Indenture") with TIGSA as issuer and Tyco International as Guarantor pursuant to which the 6.125% Notes due 2008, the 6.125% Notes due 2009, the 6.75% Notes due 2011, the 6.375% Notes due 2011, the 7.0% Notes due 2028 and the 6.875% Notes due 2029 were issued. Notes in the aggregate principal amount of $4,600,000,000 were issued under the 1998 Indenture. A true and correct copy of the 1998 Indenture is attached to this Complaint as Exhibit A.

11. The Bank of New York is Indenture Trustee under the Indenture dated as of November 12, 2003 (the "2003 Indenture") with TIGSA as issuer and Tyco International as Guarantor pursuant to which the 6.0% Notes due 2013 were issued.

Notes in the aggregate principal amount $1,000,000,000 were issued under the 2003 Indenture. A true and correct copy of the 2003 Indenture is attached to this Complaint as Exhibit B.

12. Each of the Indentures prohibits each of TIGSA and Tyco International from disposing of all or substantially all of its assets unless the person acquiring all or substantially all of the assets of the company assume the liabilities of the company under the Indenture (1998 Indentures Art. 8; Ex. A., pp. 39-40; 2003 Indenture, Art. 10, Exhibit B, pp. 39-40).

13. As described in an Offer to Purchase and Consent Solicitation dated April 27, 2007 (the "Consent Solicitation"), the Company has announced its intent to engage in a series of transactions that effect a disposition of all of the assets of TIGSA in a manner that the Noteholders allege does not comport with the terms of the Indentures. A true and correct copy of the Consent Solicitation is attached to this Complaint as Exhibit C. The Tyco International board of directors approved a plan to implement the series of transactions, described as the "Proposed Separation" to separate the Company into three independent, publicly traded companies: one for Tyco's electronics business ("Tyco Electronics"), one for its healthcare businesses ("Covidien") with the third continuing its fire and security and engineered products and services business (the "Service Businesses") with the assets of the Service Businesses held by a newly organized subsidiary Tyco International Finance S.A. ("TIFSA"). The Company then proposes to dissolve TIGSA and distribute the shares of Tyco Electronics and Covidien to the shareholders of Tyco International. (Consent Solicitation, Exhibit C, p. 6).

14. The Noteholders assert that the effect of the Proposed Separation would be a disposition by TIGSA of all or substantially all of its assets other than to an entity that assumed the obligations under the Indentures since, after the distribution of the shares of Tyco Electronics and Covidien to its shareholders, Tyco International would not hold all or substantially all of the assets of TIGSA.

15. The Noteholders assert that they would be harmed by the Proposed Separation because the Tyco Electric and Covidien businesses, which the Company has represented to be approximately 53% of the value of the businesses presently owned by TIGSA, will be distributed to the shareholders of Tyco through a distribution of the shares of those companies to Tyco's shareholders. Those businesses will no longer be owned by the entities with continuing liability for the billions of dollars in principal amount of outstanding Notes.

16. Acknowledging at least the need to "clarify" whether the Proposed Separation transactions were permitted by the Indentures, the Company initiated a tender offer and consent solicitation under which it offered to purchase any or all of the outstanding Notes. It was a condition to the tender that the tendering Noteholders consent to amendments to the Indentures to "clarify" that the transactions to implement the Proposed Separation would not trigger a default under the Indentures (Consent Solicitation, Ex. C, pp. 9-10).

17. On May 9, 2007, Noteholders commenced an action in this court, seeking a declaratory judgment that the Proposed Separation (identified therein as the Proposed Liquidation Transaction) violated the successor obligor clauses of the Indentures and for other relief, AIG Global Investment Corp. v. Tyco International

Group, S.A, 07-Civ.-03693-(SAS).   That action was voluntary dismissed without prejudice on May 25, 2007.

18. The Company was informed that more than a majority of the Noteholders would not tender their Notes and consent to the amendments to the Indentures.

19. The Consent Solicitation expired without the Company obtaining the consent of the majority of the Noteholders under either Indenture necessary to approve the amendments which were the subject of the Consent Solicitation.  On May 25, 2007, the Company announced that as of the expiration of the Consent Solicitation, 33.67% of the Notes outstanding under the 1998 Indenture and 34.39% of the Notes outstanding under the 2003 Indenture had tendered their securities and executed the consents sought by the Company.

20. On May 25, 2007, the Trustee received a direction executed by Noteholders holding more than 50% of the Notes under each of the Indentures (the "Majority Noteholders") directing it not to execute any supplement authorizing the Proposed Separation (identified therein as the Proposed Liquidation Transaction).

21. Despite the failure to obtain the consents necessary to amend the Indentures in the manner sought by the Consent Solicitation, the Company has proceeded to seek to implement the Proposed Separation through supplements to the Indentures.

22. On May 30, 2007, the Company tendered to the Trustee Supplement No. 21 to the 1998 Indenture and Supplement No. 2 to the 2003 Indenture, each dated as of May 31, 2007 (the "First Step Supplements").  True and correct copies of the First

Step Supplements and the accompanying Officers' Certificates and Opinions of Counsel are attached to this Complaint as Exhibits D.

23. On May 31, 2007, the Company tendered to the Trustee Supplement No. 22 to the 1998 Indenture and Supplement No. 3 to the 2003 Indenture, each dated as of June 1, 2007 (the "Second Step Supplements; together with the First Step Supplements, the "Proposed Supplements"). True and correct copies of the Second Step Supplements and the accompanying Officers' Certificates and Opinions of Counsel are attached to this Complaint as Exhibits E.

24. Pursuant to First Step Supplements, TIFSA, the subsidiary newly organized to hold the assets of the Services Businesses, is to become a co-obligor under the Indentures.

25. Pursuant to the Second Step Supplements, all of the assets of TIGSA are distributed to Tyco International and Tyco International assumes liability for the obligations under the Indenture.

26. The Company has informed the Trustee that it intends to proceed with the Proposed Separation, including the distribution of the stock of Tyco Electronics and Covidien to the shareholders of Tyco International upon the execution of the Proposed Supplements and has demanded that the Trustee execute the Proposed Supplements.

27. The Majority Noteholders have directed the Trustee not to execute the Proposed Supplements.

28. The Majority Noteholders assert that the Proposed Supplements are not permitted under the Indenture since they facilitate the Proposed Separation and, after

the completion of the Proposed Separation, Tyco International will not hold all or substantially all of the assets of TIGSA.

## FIRST CAUSE OF ACTION

### (Declaratory Judgment)

29. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 27 hereof as though fully set forth herein.

30. Based on the foregoing, an actual controversy exists concerning the interpretation of the Indentures.   This dispute is suitable for resolution by the Court through the entry of a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

31. The Trustee is entitled a declaratory judgment determining whether or not the execution of the Proposed Supplements is permitted or authorized under the Indentures.

## SECOND CAUSE OF ACTION

### (Trustee's Fees and Expenses)

32. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 30 hereof as though fully set forth herein.

33.  Section of the 5.6 of the 1998 Indenture and Section 7.6 of the 2003 Indenture require TIGSA to pay the Trustee reasonable compensation and to pay and reimburse the Trustee for all reasonable expenses, including the fees and expenses of counsel and to indemnify the Trustee against liabilities incurred in connection to the administration of its duties under the Indentures.

34. The Trustee is entitled to a declaratory judgment that TIGSA is obligated to pay the Trustee reasonable compensation and to pay and reimburse the Trustee for all reasonable expenses, including the fees and expenses of its counsel

incurred in connection with the steps taken by the Company to implement the Proposed

Separation, including the fees and expenses of counsel incurred resolving the proper

interpretation of the Indentures, including those incurred in connection with this action.

WHEREFORE, the Trustee respectfully request entry of judgment

(a)    determining whether the execution of the Proposed Supplements is permitted or authorized by the Indentures;

(b)    declaring that TIGSA is liable to pay to the Trustee reasonable compensation and to pay and reimburse it for all of its reasonable expenses, including fees and expense of counsel incurred in connection with the steps taken by the Company to implement the proposed Separation, including the attorneys fees and expenses incurred in resolving the proper interpretation of the Indentures, including those incurred in connection with this action; and

(c)    granting the Trustee such other and further relief as may be just

and proper.

Dated:   New York, New York
         June 4, 2007

CARTER LEDYARD & MILBURN LLP


By:_____
James Gadsden (JG 4990)
Gerald W. Griffin (GG 2778)
Two Wall Street
New York, New York 10005
(212) 732-3200
Attorneys for The Bank of New York, as Indenture
Trustee

**TYCO INTERNATIONAL GROUP S.A.,**
as Issuer,

**TYCO INTERNATIONAL FINANCE S.A.,**
as co-obligor,

**TYCO INTERNATIONAL LTD.,**
as Guarantor and as successor Issuer,

AND

**THE BANK OF NEW YORK,**
as Trustee

**SUPPLEMENTAL INDENTURE NO. 3**
Dated as of June 1, 2007

THIS SUPPLEMENTAL INDENTURE NO. 3 is dated as of June 1, 2007 among Tyco International Group S.A., a Luxembourg company (the "Company"), Tyco International Finance-S.A., a Luxembourg company ("TIFSA"), Tyco International Ltd., a Bermuda company ("Tyco"), and The Bank of New York, a New York banking association (the "Trustee").

## RECITALS

A.    The Company has executed and delivered to the Trustee an Indenture, dated as of November 12, 2003 (as heretofore amended, the "Indenture"), to provide for the issuance by the Company of the Securities.

B.    The Company on the date hereof will make a distribution of all of its assets to Tyco.

C.    Section 10.01 of the Indenture provides that the Company may not sell or convey all or substantially all of its assets to any person, unless the person which acquires by sale or conveyance substantially all of the assets of the Company shall expressly assume the due and punctual payment of the principal of, premium, if any, and interest on all the Securities according to their tenor, and the due and punctual performance and observance of all of the covenants and agreements of the Indenture to be performed or observed by the Company, by a supplemental indenture.

D.    Section 10.02 of the Indenture provides that the successor person to which such sale, conveyance or other disposition is made shall succeed to, and be substituted for, and may exercise every right and power of, the Company under the Indenture with the same effect as if such successor had been named as the Company therein; and the Company shall be discharged from all obligations and covenants under the Indenture and the Securities and may be liquidated and dissolved.

E.    In accordance with the above requirements of the Indenture, the Boards of Directors of the Company, TIFSA and Tyco have determined it is desirable that, upon the distribution by the Company of all of its assets to Tyco (the "Transfer"), Tyco shall assume the Company's obligations with respect to the due and punctual payment of the principal of, premium, if any, and interest on all the Securities according to their tenor, and the due and punctual performance and observance of all of the covenants and agreements of the Indenture to be performed or observed by the Company and the Company shall be discharged from all obligations and covenants under the Indenture and the Securities and may be liquidated and dissolved.

F.    TIFSA will continue to be obligated under the Indenture with respect to the due and punctual payment of the principal of and interest on all the Securities according to their tenor and the due and punctual performance and observance of all of the covenants and agreements of the Indenture to be performed or observed by TIFSA.

G.    The entry into this Supplemental Indenture No. 3 by the parties hereto is in all respects authorized by the provisions of the Indenture.

2

H.     All things necessary to make this Supplemental Indenture No. 3 a valid indenture and agreement according to its terms have been done.

NOW, THEREFORE, for and in consideration of the foregoing premises, the Company, TIFSA, Tyco and the Trustee mutually covenant and agree for the equal and proportionate benefit of the respective holders from time to time of the Securities as follows:

## ARTICLE I

### Section 1.1     Assumption and Succession.

Upon the Transfer and in accordance with Sections 10.01 and 10.02 of the Indenture, Tyco hereby expressly assumes all of the obligations of the Company under the Indenture, including the obligation to make the due and punctual payment of the principal of, premium, if any, and interest on all the Securities according to their tenor and the due and punctual performance and observance of all of the covenants and agreements of the Indenture to be performed or observed by the Company, and Tyco shall succeed to, and be substituted for, and may exercise every right and power of the Company under the Indenture with the same effect as if Tyco had been named as the Company therein and the Company shall be discharged from all obligations and covenants under the Indenture and the Securities and may be liquidated and dissolved.

## ARTICLE II

## MISCELLANEOUS

### Section 2.1     Definitions.

Capitalized terms used but not defined in this Supplemental Indenture No. 3 shall have the meanings ascribed thereto in the Indenture.

### Section 2.2     Confirmation of Indenture.

The Indenture, as supplemented and amended by this Supplemental Indenture No. 3, is in all respects ratified and confirmed, and the Indenture, this Supplemental Indenture No. 3 and all indentures supplemental thereto shall be read, taken and construed as one and the same instrument.

### Section 2.3     Concerning the Trustee.

In carrying out the Trustee's responsibilities hereunder, the Trustee shall have all of the rights, protections and immunities which it possesses under the Indenture. The Trustee assumes no responsibility for the correctness of the recitals contained herein. The Trustee makes no representations as to the validity or sufficiency of this Supplemental Indenture No. 3.

### Section 2.4     GOVERNING LAW.

THIS SUPPLEMENTAL INDENTURE NO. 3 SHALL BE DEEMED TO BE A CONTRACT MADE UNDER THE INTERNAL LAWS OF THE STATE OF NEW

3

YORK, AND FOR ALL PURPOSES SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF SAID STATE WITHOUT REGARD TO CONFLICTS OF LAWS PRINCIPLES THAT WOULD REQUIRE THE APPLICATION OF ANY OTHER LAW.

Section 2.5    Effectiveness.

This Supplemental Indenture No. 3 shall become effective upon execution by the Company, TIFSA, Tyco and the Trustee.

Section 2.6    Counterparts.

This Supplemental Indenture No. 3 may be executed in any number of counterparts each of which shall be an original, but such counterparts shall together constitute but one and the same instrument.

Section 2.7    No Benefit.

Nothing in this Supplemental Indenture No. 3, express or implied, shall give to any Person other than the parties hereto and their successors or assigns, and the holders of the Securities, any benefit or legal or equitable rights, remedy or claim under this Supplemental Indenture No. 3 or the Indenture.

4

IN WITNESS WHEREOF, the parties hereto have caused this Supplemental Indenture No. 3 to be duly executed all as of the day and year first above written.

TYCO INTERNATIONAL GROUP S.A.

By:_____

   Name:    Michelangelo F. STEFANI

   Title:   MANAGING DIRECTOR


TYCO INTERNATIONAL FINANCE S.A.

By:_____

   Name:    Michelangelo F. STEFANI

   Title:  MANAGING DIRECTOR


TYCO INTERNATIONAL LTD.

By:_____

   Name:

   Title:


U.S. BANK NATIONAL ASSOCIATION,
as Trustee

By:_____

   Name:

   Title:

5

IN WITNESS WHEREOF, the parties hereto have caused this Supplemental Indenture No. 3 to be duly executed all as of the day and year first above written.

TYCO INTERNATIONAL GROUP S.A.

By:_____
  Name:
  Title:

TYCO INTERNATIONAL FINANCE S.A.

By:_____
  Name:
  Title:

TYCO INTERNATIONAL LTD.

By:_____
  Name: Christopher J. Coughlin
  Title: Executive Vice President and
      Chief Financial Officer

THE BANK OF NEW YORK,
as Trustee

By:_____
  Name:
  Title:

5

## TYCO INTERNATIONAL GROUP S.A.

### June 1, 2007

### OFFICERS' CERTIFICATE PURSUANT TO SECTIONS 9.05, 10.01 AND 13.06 OF THE INDENTURE

Reference is made to the Indenture, dated as of November 12, 2003 (as heretofore amended, the "Indenture"), among Tyco International Group S.A., a Luxembourg company (the "Company"), Tyco International Ltd., a Bermuda company (the "Guarantor"), and The Bank of New York, as trustee (the "Trustee"). Capitalized terms used herein without definition shall have the meanings ascribed to such terms in the Indenture. This certificate is issued pursuant to Sections 9.05, 10.01 and 13.06 of the Indenture in connection with the Company's request that the Trustee enter into Supplemental Indenture No. 3, dated as of the date hereof, among the Company, Tyco International Finance S.A., the Guarantor and the Trustee. Each of the undersigned, being a duly elected and appointed managing director of the Company, hereby certifies to the Trustee, in his capacity as such a managing director and not in his individual capacity, as follows:

1.     I have read the applicable covenants and conditions in the Indenture relating to the execution and delivery of Supplemental Indenture No. 3 by the parties thereto. In particular, I have read and reviewed the pertinent provisions of Sections 9.01, 9.05, 10.01, 10.02 and 13.06 of the Indenture.

2.     In my opinion, I have made such examination or investigation as is necessary to enable me to express an informed opinion as to (i) whether or not Supplemental Indenture No. 3 is authorized or permitted by, and conforms to, the terms of Article IX of the Indenture, (ii) whether or not it is proper for the Trustee under the provisions of Article IX of the Indenture to join in the execution of Supplemental Indenture No. 3, (iii) whether or not the conditions precedent under the Indenture relating to the execution and delivery of Supplemental Indenture No. 3 by the Trustee have been complied with and (iv) whether or not the Transfer (as defined in Supplemental Indenture No. 3) and Supplemental Indenture No. 3 comply with the Indenture. Such investigation has included examinations of documents I deemed applicable.

3.     On the basis of the foregoing, I am of the opinion that (i) Supplemental Indenture No. 3 is authorized or permitted by, and conforms to, the terms of Article IX of the Indenture, (ii) it is proper for the Trustee under the provisions of Article IX of the Indenture to join in the execution of Supplemental Indenture No. 3, (iii) the conditions precedent under the Indenture relating to the execution and delivery of Supplemental Indenture No. 3 by the Trustee have been complied with and (iv) the Transfer (as defined in Supplemental Indenture No. 3) and Supplemental Indenture No. 3 comply with the Indenture.

[Remainder of page intentionally left blank.]

IN WITNESS WHEREOF, the undersigned have executed this Officers' Certificate as of the date first written above.

TYCO INTERNATIONAL GROUP S.A.

By: _____

Title: __Michelangelo F. STEFANI__

Name: __Managing Director__

By: _____

Title: MANAGING DIRECTOR

Name: KEVIN O'KELLY – LYNCH

Officers' Certificate to Trustee

# GIBSON, DUNN & CRUTCHER LLP

## LAWYERS

A REGISTERED LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

200 Park Avenue  New York, New York 10166-0193
(212) 351-4000
www.gibsondunn.com

www.gibsondunn.com

June 1, 2007

Direct Dial                                                                     Client No.
(212) 351-4000                                                              C 92220-00198
Fax No.

The Bank of New York, as trustee
101 Barclay Street, 4 E
New York, New York 10286

    Re:   *Tyco International Group S.A./Indenture dated as of November 12, 2003*

Ladies and Gentlemen:

       We have acted as counsel to Tyco International Group S.A., a Luxembourg company (the
"Issuer"), in connection with the preparation of Supplemental Indenture No. 3 dated the date
hereof (the "Supplemental Indenture") to the Indenture, dated as of November 12, 2003 (as
heretofore amended, the "Indenture"), among the Issuer, the Guarantor party thereto (the
"Guarantor") and you, as Trustee (the "Trustee"), relating to the Issuer's 6.0% Notes due 2013
(the "Securities"). Capitalized terms used herein and not otherwise defined herein are used
herein as defined in the Indenture. This letter is delivered to you pursuant to Sections 9.05,
10.01 and 13.06 of the Indenture.

       In arriving at the opinions expressed below, we have examined originals, or copies
certified or otherwise identified to our satisfaction, of the Indenture, the Supplemental Indenture,
the resolutions of the Boards of Directors of the Issuer and the Guarantor, approving the
execution, delivery and performance of the Supplemental Indenture, the Officers' Certificate
delivered by the Issuer to the Trustee pursuant to Sections 9.05, 10.01 and 13.06 of the Indenture
(the "Officers' Certificate") and such other documents, corporate records, certificates of officers
of the Issuer and the Guarantor and of public officials and other instruments as we have deemed
necessary or advisable to enable us to render the opinions set forth below.

       In our examination, we have assumed the genuineness of all signatures, the legal capacity
and competency of all natural persons, the authenticity of all documents submitted to us as
originals and the conformity to original documents of all documents submitted to us as copies.
As to any facts material to these opinions, we have relied to the extent we deemed appropriate
and without independent investigation upon statements and representations of officers and other

LOS ANGELES   NEW YORK   WASHINGTON. D.C.   SAN FRANCISCO   PALO ALTO
LONDON   PARIS   MUNICH   BRUSSELS   ORANGE COUNTY   CENTURY CITY   DALLAS   DENVER

**GIBSON, DUNN & CRUTCHER LLP**

The Bank of New York
June 1, 2007
Page 2

representatives of the Issuer and the Guarantor and others, including the statements made in the Officers' Certificate.

In connection with the preparation of this opinion, we have read Sections 9.01, 9.05, 10.01, 10.02 and 13.06 of the Indenture and the definitions of the defined terms used therein. In our opinion, we have made such examination or investigation as is necessary to enable us to express an informed opinion as to (i) whether or not the Supplemental Indenture is authorized or permitted by, and conforms to, the terms of Article IX of the Indenture, (ii) whether or not it is proper for the Trustee under the provisions of Article IX of the Indenture to join in the execution of the Supplemental Indenture, (iii) whether or not the conditions precedent under the Indenture to the execution and delivery of the Supplemental Indenture by the Trustee have been complied with and (iv) whether or not the Transfer (as defined in the Supplemental Indenture) and the Supplemental Indenture comply with the Indenture.

Based upon the foregoing, and subject to the assumptions, qualifications and limitations set forth herein, we are of the opinion that (i) the Supplemental Indenture is authorized or permitted by, and conforms to, the terms of Article IX of the Indenture, (ii) it is proper for the Trustee under the provisions of Article IX of the Indenture to join in the execution of the Supplemental Indenture, (iii) the conditions precedent under the Indenture to the execution and delivery of the Supplemental Indenture by the Trustee have been complied with and (iv) the Transfer (as defined in the Supplemental Indenture) and the Supplemental Indenture comply with the Indenture.

We render no opinion herein as to matters involving the laws of any jurisdiction other than the State of New York. This opinion is limited to the effect of the current state of the laws of the State of New York and the facts as they currently exist. We assume no obligation to revise or supplement this opinion in the event of future changes in such laws or the interpretations thereof or such facts.

The opinions expressed above are solely for your benefit in connection with the Supplemental Indenture and are not to be used for any other purpose or circulated, quoted or otherwise referred to without, in each case, our written permission.

Very truly yours,

*Gibson, Dunn & Crutcher LLP*

**Tyco International Group S.A.**
**17 Boulevard Grande Dutchesse Charlotte**
**L-1331 Luxembourg**

May 31, 2007

The Bank of New York, as trustee
101 Barclay Street, 21W
New York, New York 10286
Attn: Corporate Trust Administration

      Re:    *Tyco International Group S.A./Indenture dated as of November 12, 2003*

Ladies and Gentlemen:

      Pursuant to Section 9.05 of the Indenture, dated as of November 12, 2003 (as heretofore amended, the "Indenture"), among Tyco International Group S.A., a Luxembourg company (the "Company"), Tyco International Finance S.A., a Luxembourg company ("TIFSA"), Tyco International Ltd., a Bermuda company (the "Guarantor"), and you, as trustee, relating to the Company's 6.0% Notes due 2013, you are hereby requested to join with the Company, TIFSA and the Guarantor in the execution of Supplemental Indenture No. 3 dated as of June 1, 2007.

      In this connection, we have enclosed Supplemental Indenture No. 3 and an officers' certificate, each executed by the Company, a certificate of a managing director of the Company certifying as to certain Board resolutions and an opinion of counsel.

      In conversations with you and your counsel yesterday, you did not indicate whether you would join in the execution of Supplemental Indenture No. 3.

      Given that we have complied with the requirements of the Indenture to enter into Supplemental Indenture No. 3, pursuant to Section 9.01(b) without the consent of securityholders, we believe that you have no basis for not complying with our request and joining in the execution of Supplemental Indenture No. 3.

      *[The remainder of this page is intentionally left blank. Signature page to follow.]*

Very truly yours,

TYCO INTERNATIONAL GROUP S.A.

By: _____

Name:      Michelangelo F. STEFANI

Title:      *Managing Director*

[Order to Execute Supplemental Indenture No. 3 to November 12, 2003 Indenture]