UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
THE BANK OF NEW YORK, as Indenture :
Trustee, :
:
:
Plaintiff, :
: 07 Civ. 4659 (SAS)
v. :
: ECF Case
TYCO INTERNATIONAL GROUP S.A. and :
TYCO INTERNATIONAL LTD., :
:
Defendants. :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


# DEFENDANTS' MEMORANDUM OF LAW IN PARTIAL OPPOSITION
# TO MOTION TO INTERVENE AND JOIN PARTIES


GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, New York 10166-0193
(212) 351-4000

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Defendants

July 13, 2007

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................... 1

COUNTERSTATEMENT OF THE CASE.................................................................................... 2

      A.     Factual Background ................................................................................................ 3

            1.     The Notes and the Indentures .................................................................... 3

            2.     The Spin-Off Transaction .......................................................................... 5

      B.     Procedural Background........................................................................................... 6

ARGUMENT................................................................................................................................... 8

      IF THE COURT DECIDES TO PERMIT INTERVENTION, IT SHOULD
      NEVERTHELESS DENY THE MOTION TO JOIN ADDITIONAL
      DEFENDANTS WHO ARE NOT PARTIES TO THE INDENTURES .......................... 8

CONCLUSION............................................................................................................................. 15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*A & V 425 LLC Contracting Co. v. RFD 55th Street LLC*,
  15 Misc. 3d 196, 830 N.Y.S.2d 637 (Sup. Ct. N.Y. County 2007) ......................................... 12

*Aetna Cas. & Sur. Co. v. Rasa Mgmt. Co.*,
  621 F. Supp. 892 (D. Nev. 1985) ........................................................................................... 11

*Benson v. RMJ Secs. Corp.*,
  683 F. Supp. 359 (S.D.N.Y. 1988) ........................................................................................ 10

*Carroll v. Bhd. of R.R. Trainmen*,
  417 F.2d 1025 (1st Cir. 1969) ................................................................................................ 10

*Geren v. Quantum Chem. Corp.*,
  832 F. Supp. 728 (S.D.N.Y. 1993) .......................................................................................... 4

*Gonzalez v. Leonard*,
  497 F. Supp. 1058 (D. Conn. 1980) ....................................................................................... 10

*Hartford Fire Ins. Co. v. Federated Dep't Stores, Inc.*,
  723 F. Supp. 976 (S.D.N.Y. 1989) .......................................................................................... 4

*HDR, Inc. v. Int'l Aircraft Parts, Inc.*,
  257 A.D.2d 603, 683 N.Y.S.2d 867 (2d Dep't 1999) ............................................................ 12

*Hollinger Inc. v. Hollinger Int'l, Inc.*,
  858 A.2d 342 (Del. Ch. 2004) ................................................................................................. 8

*Hotel Aquarius, B.V. v. PRT Corp.*,
  No. 92 Civ. 4498 (MBM), 1992 WL 391264 (S.D.N.Y. Dec. 22, 1992) ............................... 11

*Hotel Constructors, Inc. v. Seagrave Corp.*,
  99 F.R.D. 591 (S.D.N.Y. 1983) ............................................................................................. 11

*In re Joint E. & S. Dist. Asbestos Litig. (In re Keene Corp.)*,
  14 F.3d 726 (2d Cir. 1993) .................................................................................................... 10

*Int'l Bhd. of Teamsters v. Brennan*,
  859 F. Supp. 761 (S.D.N.Y. 1994) ................................................................................... 10, 11

*Intercon Research Assocs., Ltd. v. Dresser Indus., Inc.*,
  696 F.2d 53 (7th Cir. 1982) ................................................................................................... 10

*Lumbermens Mutual Casualty Co. v. Borden Co.*,
    241 F. Supp. 683 (S.D.N.Y. 1965) .................................................................................. 12, 13

*Olin Corp. v. Consol. Aluminum Corp.*,
    5 F.3d 10 (2d Cir. 1993) ........................................................................................................ 11

*Potomac Ins. Co. v. Pella Corp.*,
    No. 00-4013-DES, 2001 WL 421255  (D. Kan. Apr. 20, 2001) ............................................. 11

*S. Jackson & Son, Inc. v. Coffee, Sugar & Cocoa Exch. Inc.*,
    24 F.3d 427 (2d Cir. 1994) ............................................................................................. 11, 13

*Sharon Steel Corp. v. Chase Manhattan Bank, N.A.*,
    691 F.2d 1039 (2d Cir. 1982) .................................................................................................. 4

### Statutes and Rules

28 U.S.C. § 2201 ................................................................................................................ 10, 11

Fed. R. Civ. P. 20(a) ........................................................................................................ 2, 9, 10

### Other Authorities

7 Charles Alan Wright et al., *Federal Practice & Procedure* § 1657 (3d ed. 2001) ..................... 9

American Bar Foundation, *Commentaries on Model Debenture Indenture
    Provisions* (1971) ................................................................................................................ 3, 4

**PRELIMINARY STATEMENT**

Defendants Tyco International Group S.A. ("TIGSA") and Tyco International Ltd. ("Tyco") (collectively, "Defendants") respectfully submit this memorandum of law in partial opposition to the motion of certain Proposed Intervenor-Plaintiffs to intervene in this action and to join additional defendants.

Defendants do not oppose Proposed Intervenors' request to intervene as plaintiffs in this action, but do oppose Proposed Intervenors' motion to join certain additional defendants. Proposed Intervenors' motion erroneously describes the transactions underlying their purported claims, is riddled with unwarranted attacks on Defendants, and fails to comply with the Court's individual rules concerning motion practice. Most significantly for present purposes, however, the motion to join parties fails because Proposed Intervenors do not, and cannot, allege any claim for relief against the entities they seek to join.

Proposed Intervenors' proffered complaint in intervention (the "Proposed Complaint") purports to assert a declaratory judgment claim concerning the interpretation of two indenture agreements (the "Indentures"). But the entities that Proposed Intervenors seek to join are not parties to the Indentures. Therefore, these entities have no rights, obligations, or liabilities in connection with those contracts, and cannot be sued on them.

Indeed, Proposed Intervenors all but admit that their declaratory judgment claim will not, and cannot, affect the legal rights or obligations of the entities they seek to join as defendants. As the Proposed Complaint makes clear:

- Proposed Intervenors seek a declaratory judgment as to the contractual obligations of "the Company" under the indentures; the Proposed Complaint defines "the Company" only as TIGSA. *See* Prop. Compl. ¶¶ 1, 61-68.

1

- Proposed Intervenors allege that "[t]he Indentures are valid and enforceable contracts *to which the Company and the [Proposed Intervenors] (as third-party beneficiaries) are parties*." *Id.* ¶ 61 (emphasis added). They do not allege that the Indentures bind any entity other than "the Company."

- Proposed Intervenors do not allege any breach of the Indentures by the entities they seek to join as defendants, but instead claim only a breach by "the Company." *Id.* ¶ 65 ("transfers without a concurrent assumption of the Notes by such entities would render *the Company* in breach of the 1998 and 2003 Indentures") (emphasis added).

- Proposed Intervenors expressly allege: "By virtue of the foregoing, an actual controversy exists *among the [Proposed Intervenors] and the Company*." Prop. Compl. ¶ 66 (emphasis added). The Proposed Complaint does not allege any case or controversy between the Proposed Intervenors, on the one hand, and the entities they seek to join as defendants, on the other.

Rule 20(a) of the Federal Rules of Civil Procedure only permits a plaintiff to join additional defendants where the plaintiff can state a claim for relief against them. That is manifestly not the case here. There is no conceivable basis for any claim against the proposed additional defendants, nor for any relief to be granted against them. Accordingly, there is no basis to join these additional entities as defendants.

**COUNTERSTATEMENT OF THE CASE**

Most of the Proposed Intervenors' 27-page memorandum of law ("Intervenors' Mem.") purports to address the merits of the claims that Proposed Intervenors seek leave to assert. There is much that is wrong with Proposed Intervenors' version of events. And much of their argument

2

is irrelevant to the questions of whether the Court should permit intervention and joinder of additional defendants. Thus, Defendants will save for another day their complete responses to Proposed Intervenors' arguments on the merits.

However, because Proposed Intervenors have misrepresented the basic facts concerning the transactions that give rise to this dispute, a brief counterstatement of facts is required.

**A.     Factual Background**

**1.     The Notes and the Indentures**

Proposed Intervenors claim to be holders of certain publicly traded notes (the "Notes") issued by defendant TIGSA (and guaranteed by defendant Tyco) under indentures dated June 9, 1998 (the "1998 Indenture") and November 12, 2003 (the "2003 Indenture").[1] Proposed Intervenors have not alleged when each of them bought the Notes, what each of them paid, or how much each of them owns.[2]

Although many bond indentures contain provisions prohibiting the issuer from engaging in certain types of restructuring or other transactions, the 1998 and 2003 Indentures contain very few such provisions. Neither Indenture places any restriction on TIGSA's or Tyco's ability to pay dividends to its shareholders, and neither Indenture limits in any way TIGSA's or Tyco's right to dispose of anything *less* than "substantially all" of its assets.[3] The sole relevant

---

[1] Copies of the Indentures are attached as Exhibits A and B to the Declaration of Marshall R. King, dated July 13, 2007.

[2] Instead, although they do not purport to sue in a representative capacity, the Proposed Intervenors allege that each of them is a "member" of a larger, unidentified group of Noteholders, and that the larger group "collectively" owns or controls approximately $2.7 billion of Notes. Intervenors' Mem. at 5; Prop. Compl. ¶ 20.

[3] Provisions imposing such limitations are well known in debt financing, *see* American Bar Foundation, *Commentaries on Model Debenture Indenture Provisions* (1971)
[Footnote continued on next page]

restriction in the Indentures is the merger covenant, which permits TIGSA (or Tyco) to sell or convey "all or substantially all" of its assets to another person, provided, among other things, that the transferee of the assets expressly assumes TIGSA's obligations on the Notes (or Tyco's obligations on its guaranty).  1998 Indenture § 8.1; 2003 Indenture § 10.01.

Each of the Indentures provides that an "Event of Default" occurs if, among other things, TIGSA breaches any covenant or agreement in the Indenture, and such breach continues for 90 days after having been given notice of such breach.  1998 Indenture § 4.1(d); 2003 Indenture § 6.01(a)(4).  In such case, the Indentures provide an express remedy:  The Trustee (or the holders of at least 25% in principal amount of the Notes) may "declare the entire principal . . . of all Securities then outstanding and interest accrued thereon, if any, to be due and payable immediately."  1998 Indenture § 4.1; *see also* 2003 Indenture § 6.01(b).  In the present case, neither the Trustee nor the holders of Notes has given notice of default or accelerated the principal and interest on the Notes.  The Trustee is authorized to pursue all rights of action and

---

[Footnote continued from previous page]
("*Commentaries*"), at 422-31, and, had the parties intended to impose such restrictions, they could have and would have included such provisions in the Indentures.  *See, e.g.*, *Geren v. Quantum Chem. Corp.*, 832 F. Supp. 728, 733 (S.D.N.Y. 1993) ("If the challenged transaction does not violate any express term of the indenture, or prevent the bondholder from obtaining the benefit of an express indenture term, a bondholder may not challenge an action by the corporation on the basis of breach of the indenture contract."); *Hartford Fire Ins. Co. v. Federated Dep't Stores, Inc.*, 723 F. Supp. 976, 992 (S.D.N.Y. 1989) ("[T]he Indenture could easily have been drafted to incorporate expressly the terms the Plaintiffs now urge this court to imply. . . .  Because the risk of a takeover – and the indenture provisions available to limit that risk – were well-known, to imply such provisions could impose on the parties terms they affirmatively excluded from their contract.").  As the Second Circuit observed in the case on which Proposed Intervenors so heavily rely, "[t]he debt securityholder can do nothing to protect himself against actions of the borrower which jeopardize its ability to pay the debt unless he . . . establishes his rights through contractual provisions set forth in the . . . indenture."  *Sharon Steel Corp. v. Chase Manhattan Bank, N.A.*, 691 F.2d 1039, 1049 (2d Cir. 1982) (alteration in original) (quoting *Commentaries*, at 2).

4

claims under the Indenture on behalf of the Noteholders.  1998 Indenture § 4.2; 2003 Indenture § 6.02(d).

### 2. The Spin-Off Transaction

Until recently, defendant Tyco operated a diverse group of businesses through its wholly owned subsidiary, TIGSA.  On January 13, 2006, Tyco announced that its Board of Directors had approved a plan to separate into three independent, publicly traded companies (the "Spin-Off Transaction"):  one for its electronics business; one for its healthcare business; and one for its fire and security and its engineered products and services businesses.[4]  The Spin-Off Transaction, which is now complete, was an enormously complex series of transactions.  One critical step in the process for purposes of this dispute was TIGSA's transfer of all of its assets – at the time, consisting entirely of the shares of TIGSA's three wholly owned subsidiaries, which corresponded to the three, soon-to-be separate companies – to its parent, Tyco.[5]  At the same

---

[4] Proposed Intervenors characterize this announced transaction as a "liquidation" (Intervenors' Mem. at 2), but the January 2006 announcement never used that term, and instead described Tyco's intention to spin-off its electronics and healthcare businesses by way of a tax-free dividend distribution to shareholders.

[5] Specifically, on June 1, 2007, TIGSA transferred to Tyco its shares of:

(a) Tyco Electronics Ltd. ("Tyco Electronics"), which, along with its wholly owned subsidiary, Tyco Electronics Group S.A. ("TEGSA"), was organized to hold Tyco's electronics business;

(b) Covidien Ltd. ("Covidien"), which, along with its wholly owned subsidiary, Covidien International Finance S.A. ("CIFSA"), was organized to hold Tyco's healthcare business; and

(c) Tyco International Finance S.A. ("TIFSA"), a Luxembourg company that was organized to hold Tyco's fire and security and engineered products and services businesses.

Proposed Intervenors seek to join each of these entities as additional defendants in this action.

5

time as it transferred all of its assets to Tyco, TIGSA also assigned to Tyco (and Tyco expressly assumed) all of TIGSA's obligations under the Indentures and on the Notes.[6]

On June 29, 2007, the final, major step in the Spin-Off Transaction was completed when Tyco distributed to its shareholders all of the common shares of Tyco Electronics and Covidien, the two Bermuda companies comprising the electronics and healthcare businesses, respectively. Tyco continues to own and operate, through TIFSA, a wholly owned subsidiary that has replaced TIGSA in the corporate structure, the fire and security and the engineered products and services businesses. Tyco and TIFSA remain obligated on the Notes and, after giving effect to the Spin-Off Transaction, have in excess of $30 billion in total assets, $18.5 million in annual revenue, and $25.2 billion in market capitalization as of July 12, 2007.[7]

**B.   Procedural Background**

This action was commenced on June 4, 2007 by the Trustee under the 1998 and 2003 Indentures, seeking a declaratory judgment as to whether certain supplemental indentures

---

[6] Contrary to the assertion of the Proposed Intervenors (*see* Intervenors' Mem. at 4-5), TIGSA has *not* transferred the Notes or its obligations on the Notes to TIFSA. While an earlier plan for the structure of the Spin-Off Transaction contemplated the assignment of the obligations on the Notes to TIFSA, the Spin-Off Transaction, as ultimately implemented, involved the assignment of the Notes by TIGSA *to Tyco*, at the same time as TIGSA transferred all of its assets to Tyco. Before that assignment, as permitted by the Indentures, TIFSA joined TIGSA as a co-obligor on the Notes and, today, both Tyco and TIFSA are obligors on the Notes.

[7] The total assets available to Tyco today to support repayment of the Notes is far in excess of Tyco's and TIGSA's total assets at the time of issuance of almost half of the outstanding Notes. Thus, Proposed Intervenors' contention that Tyco is "spinning off substantially all of the assets that originally induced noteholders to invest in the Company" (Intervenors' Mem. at 18) rings particularly false.

6

executed by TIGSA, TIFSA, and Tyco were permitted or authorized under the Indentures.[8]  The Trustee has not alleged that the Spin-Off Transaction is prohibited by the Indentures or that it is not permitted or authorized to execute the supplemental indentures, and has not claimed that a default or an event of default has occurred under the Indentures.  The Trustee asserted that it had received a direction from the holders of a majority of the Notes directing it not to execute the supplemental indentures.  The Trustee did not attach to its Complaint a copy of this "direction," and it refused to provide a copy to Defendants.

On June 25, 2007, without having first requested a pre-motion conference or informed Defendants of their intended motion, Proposed Intervenors filed the present motion.  Asserting that an actual controversy exists between themselves and "the Company," *i.e.*, TIGSA (Prop. Compl. ¶¶ 1, 15, 66), Proposed Intervenors seek a declaratory judgment that the Spin-Off Transaction violates the Indentures and "the law regarding the application of Successor Obligor Clauses," and that the Trustee may not sign the supplemental indentures.  *Id.* at 29-30.  Proposed Intervenors do not appear to allege any injury from Tyco's decision to rationalize its corporate structure into three coherent business lines, nor from Tyco's assumption of TIGSA's obligations on the Notes.  Instead, it seems to be only the final step in the Spin-Off Transaction about which Proposed Intervenors complain – *i.e.*, the distribution of the electronics and healthcare businesses to Tyco's public shareholders.  Thus, the ultimate question for decision in this action will be whether the Indentures preclude the obligor from distributing a portion of its assets – whether 50% or, as Proposed Intervenors would have it, even 66% to 80% – when two significant

---

[8] Specifically, the supplemental indentures effectuated (a) the addition of TIFSA as a co-obligor on the Notes, and (b) the assumption by Tyco of all of TIGSA's obligations under the Indentures and on the Notes and the release of TIGSA from such obligations.

7

businesses, constituting $30 billion in assets, $18.5 billion in annual revenue, and market capitalization in excess of $25 billion, continue to be obligated to service the Notes.  Although they have misstated the facts of the Spin-Off Transaction, Proposed Intervenors' claim is that Tyco's distribution of Tyco Electronics and Covidien to its shareholders was a transfer of "all or substantially all" of TIGSA's assets without a concomitant assumption of the Notes by the recipients.[9]

Proposed Intervenors seek to join additional defendants, including Tyco Electronics, TEGSA, Covidien, and CIFSA, although Proposed Intervenors do not – and, for the reasons discussed below, cannot – assert the existence of any dispute with those entities or that they are parties to the Indentures.

## ARGUMENT

### IF THE COURT DECIDES TO PERMIT INTERVENTION, IT SHOULD NEVERTHELESS DENY THE MOTION TO JOIN ADDITIONAL DEFENDANTS WHO ARE NOT PARTIES TO THE INDENTURES

Defendants do not oppose Proposed Intervenors' request for permission to intervene. Although there is ample reason to challenge the arguments advanced in support of intervention – for instance, the Proposed Intervenors have not demonstrated that *they*, as opposed to the "Ad Hoc Committee of Noteholders," have a "substantial interest in the outcome of this action"

---

[9] Given that Tyco continues to own some $30 billion of assets in two businesses generating annual revenue of approximately $18.5 billion, that argument bears little chance of success. No one, or even two, of Tyco's four main business segments represented "substantially all" of TIGSA's assets and, therefore, nothing in the Indenture prohibited Tyco from spinning off any one or two of them.  *See, e.g., Hollinger Inc. v. Hollinger Int'l, Inc.*, 858 A.2d 342, 377 (Del. Ch. 2004) ("A fair and succinct equivalent to the term 'substantially all' would therefore be 'essentially everything.'").  Here, Tyco obviously has real operating assets remaining even after the spin-off.

(Intervenors' Mem. at 23), or that the Trustee "is not representing the Noteholders" (*id.* at 24) – Defendants believe it would be acceptable for the Court to permit intervention.

If the Court permits intervention, however, it should not permit the Proposed Intervenors to join Tyco Electronics, TEGSA, Covidien, or CIFSA as additional defendants.[10] Although styled as a request for a declaratory judgment, the essence of Proposed Intervenors' claim is that the spin-off of Tyco's electronics and healthcare businesses constitutes a breach of the Indentures. Yet none of these additional entities is a party to the 1998 Indenture or the 2003 Indenture, and thus it is impossible for any of them to have breached the Indentures. Proposed Intervenors, accordingly, have no claim against these additional entities and joinder under Fed. R. Civ. P. 20(a) would therefore be improper.

Rule 20(a) provides that multiple defendants may be joined in a single action "if there is asserted against them jointly, severally, or in the alternative, *any right to relief* in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a) (emphasis added). Ordinarily, cases addressing the propriety of joinder hinge on whether claims arise out of the same transaction or present common questions of law or fact. Here, however, Proposed Intervernors' motion for permission to join additional defendants fails on a much more basic ground – because they do not assert against the additional entities "any right to relief."

"Rule 20 requires that a right to relief be asserted against each defendant in order to allow their joinder." 7 Charles Alan Wright et al., *Federal Practice & Procedure* § 1657, at 428 (3d

---

[10] Defendants take no position regarding the proposed joinder of TIFSA, which has executed a supplemental indenture to become a co-obligor on the Notes. Therefore, TIFSA is in a very different position than the other proposed additional defendants.

9

ed. 2001); *see also Gonzalez v. Leonard*, 497 F. Supp. 1058, 1076-77 (D. Conn. 1980) (Cabranes, J.) (denying joinder "with a view to short-circuiting . . . pointless proceedings" where plaintiffs could not state claim against proposed defendants). Indeed, courts routinely find misjoinder where (1) "no relief is demanded from one or more of the parties joined as defendants," (2) "a particular defendant lacks authority to provide the requested relief," (3) "a defendant has no discernible legal obligation to provide the requested relief," or (4) "a defendant's presence is not necessary to afford all the requested relief." *Benson v. RMJ Secs. Corp.*, 683 F. Supp. 359, 378 (S.D.N.Y. 1988) (citations omitted).[11] Each of these four circumstances is present here and, accordingly, the Court should deny Proposed Intervenors' motion to join additional defendants.

To state a claim, the Proposed Complaint for declaratory relief must, at a minimum, show that a "case or controversy" exists between the Proposed Intervenors and the entities sought to be joined. *See* 28 U.S.C. § 2201 (expressly incorporating "case or controversy" requirement of Article III of the United States Constitution); *see also In re Joint E. & S. Dist. Asbestos Litig. (In re Keene Corp.)*, 14 F.3d 726, 731 (2d Cir. 1993) ("the statute authorizing the declaratory judgment remedy explicitly incorporates the Article III case or controversy limitation"). "A mere demand for declaratory relief does not by itself establish a case or controversy." *Int'l Bhd. of Teamsters v. Brennan*, 859 F. Supp. 761, 763 (S.D.N.Y. 1994).

---

[11] *See also Intercon Research Assocs., Ltd. v. Dresser Indus., Inc.*, 696 F.2d 53, 58 (7th Cir. 1982) ("Rule 20(a) was designed to allow a plaintiff to join only those parties against whom the plaintiff has a legitimate claim, and not to permit a plaintiff to bring all of a defendant's debtors into a lawsuit."); *Carroll v. Bhd. of R.R. Trainmen*, 417 F.2d 1025, 1027 (1st Cir. 1969) ("To justify permissive joinder, plaintiff must demonstrate that he has some right to relief against the Railroad growing out of the events in question.").

Rather, for Proposed Intervenors to meet the case or controversy standard, "a dispute must exist between two parties having *adverse legal interests*" and the remedy sought cannot be "a mere declaration of the law without implications for practical enforcement upon the parties." *S. Jackson & Son, Inc. v. Coffee, Sugar & Cocoa Exch. Inc.*, 24 F.3d 427, 431-32 (2d Cir. 1994) (emphasis added; internal quotations and citations omitted) (dismissing declaratory judgment claim where parties' substantive rights in relation to each other would not be altered by outcome of litigation); *see also Olin Corp. v. Consol. Aluminum Corp.*, 5 F.3d 10, 17 (2d Cir. 1993) (if case or controversy requirement is not met, declaratory judgment becomes an impermissible advisory opinion); *Int'l Bhd. of Teamsters*, 859 F. Supp. at 764 (same).[12]

No case or controversy exists here, however, because Proposed Intervenors seek a declaratory judgment about the proper interpretation of contracts to which none of the defendants sought to be joined is a party. As many courts have recognized, "[i]n general, if an entity is not a party to a contract, no valid breach of contract claim exists against that entity." *Hotel Aquarius, B.V. v. PRT Corp.*, No. 92 Civ. 4498 (MBM), 1992 WL 391264, at *6 (S.D.N.Y. Dec. 22, 1992); *see also Hotel Constructors, Inc. v. Seagrave Corp.*, 99 F.R.D. 591, 591-92 (S.D.N.Y. 1983) (denying joinder because plaintiff could not state a claim under the contract against third party);

---

[12] "[O]nly those parties *directly involved with the case's controversy* should be joined as defendants . . . [because] . . . [a]t the core of § 2201 lies a requirement that any relief granted will directly impact and/or resolve an existing conflict between the parties." *Potomac Ins. Co. v. Pella Corp.*, No. 00-4013-DES, 2001 WL 421255, at *2 -3 (D. Kan. Apr. 20, 2001) (emphasis added) (granting joined defendant's motion to dismiss declaratory judgment action; while a controversy existed between plaintiff and defendant, the joined defendant was "a party with which plaintiff has no contractual relationship" and relationship between joined defendant and defendant did not create an actual controversy between plaintiff and joined defendant); *see also Aetna Cas. & Sur. Co. v. Rasa Mgmt. Co.*, 621 F. Supp. 892, 893 (D. Nev. 1985) (dismissing declaratory judgment claim against shareholder because, "[a]lthough [the shareholder] is an interested party to this declaratory judgment action, there must be a case of actual controversy between [the shareholder] and Aetna").

*HDR, Inc. v. Int'l Aircraft Parts, Inc.*, 257 A.D.2d 603, 604, 683 N.Y.S.2d 867 (2d Dep't 1999) ("Neither of these defendants was a party to the contract alleged to have been breached. As such, they cannot be bound by the contract."); *A & V 425 LLC Contracting Co. v. RFD 55th Street LLC*, 15 Misc. 3d 196, 203-04, 830 N.Y.S.2d 637, 643-44 (Sup. Ct. N.Y. County 2007) (holding "bare allegation" that certain defendants are jointly and severally liable for claimed breaches of contract "not sufficient to state a cause of action" where "entities and individuals are not alleged to be parties to the Contract, nor are there any allegations in the complaint that provide a basis for holding them contractually liable under any other theory"). Because Proposed Intervenors have no claims against the proposed additional defendants, joinder is improper.

The cases cited by Proposed Intervenors are not to the contrary. As even Proposed Intervenors seem to acknowledge, cases permitting joinder of *guarantors* are easily distinguishable from the present case because, in such cases, the new defendant has a "contractual obligation to the plaintiffs seeking to join them." Intervenors' Mem. at 26. Having affirmatively and voluntarily assumed duties to the plaintiffs, a guarantor is obviously subject to claims for breach of those obligations. Tyco Electronics, TEGSA, Covidien, and CIFSA, by contrast, have no obligations to Proposed Intervenors.

Similarly, *Lumbermens Mutual Casualty Co. v. Borden Co.*, 241 F. Supp. 683 (S.D.N.Y. 1965), is inapposite. There, the plaintiff-insurer brought a declaratory judgment action against its insured as well as against other insurers who had issued policies to the insured, arguing that the "other insurance" clause in the policy limited the plaintiff-insurer's liability to the insured. The court held that it was proper to join the other insurers as defendants because, if the plaintiff-insurer had paid more than its share of any loss suffered by the insured, it would be entitled to

12

recover from the other insurers as subrogee of the insured. 241 F. Supp. at 691. Thus, even though there was no present contractual obligation between the insurers, there was a contingent obligation that was properly resolved in the same action. *Id.* at 692-93. Here, by contrast, the proposed additional defendants have no obligation – present, contingent, or otherwise – to the Proposed Intervenors, and none is alleged in the Proposed Complaint.

Proposed Intervenors seek to justify the joinder of these additional entities on the ground that the proposed additional defendants are affected by the "legal uncertainty" concerning the Spin-Off Transaction because they "will be receiving assets and liabilities pursuant to that plan." Intervenors' Mem. at 25. If the plan is "invalid" with respect to TIGSA, Proposed Intervenors claim, it is "equally invalid" with respect to the additional entities. *Id.*

These arguments should be summarily rejected. Proposed Intervenors have not sought – nor could they seek – to "invalidate," enjoin, or unwind the Spin-Off Transaction, but only to declare that it violates the Indentures. If they are correct – and, make no mistake, they are not – then they may be entitled to monetary relief against TIGSA (or Tyco, as guarantor) for breach of contract.[13] But nothing requested in the Proposed Complaint would – or could – involve the unscrambling of the now completed Spin-Off Transaction. Accordingly, no declaration of rights with respect to the Indentures or the "validity" of TIGSA's actions will in any way affect Tyco Electronics, TEGSA, Covidien, or CIFSA. *See S. Jackson & Son*, 24 F.3d at 431 (dismissing declaratory judgment action for lack of subject matter jurisdiction because if plaintiff were to prevail "it would not be entitled to any relief against the [defendant]").

---

[13] Proposed Intervenors have not alleged – much less, demonstrated – that Tyco is incapable of servicing the Notes as principal and interest become due, or of making all payments required under the Indentures if a default were declared and the Notes were accelerated.

In their brief, Proposed Intervenors also assert that they seek to add these additional entities "in order to request a declaratory judgment that these entities . . . assume and be held liable for the Notes as well." Intervenors' Mem. at 26. Notably, this relief is *not* requested in the Proposed Complaint, and for good reason: Proposed Intervenors offer no authority that would justify forcing these additional entities to become parties to the Indentures or to assume obligations thereunder. Proposed Intervenors have an adequate legal remedy available against TIGSA and Tyco. Because the Proposed Complaint asserts no right to relief against the proposed additional defendants, joinder of the additional defendants is improper.[14]

---

[14] Proposed Intervenors' theory fails for other reasons as well. First, it is not Tyco Electronics, TEGSA, Covidien or CIFSA that has received TIGSA's assets. The shares of those entities *were* TIGSA's assets, and they are now owned by Tyco's many public shareholders or others who have purchased the shares of those companies since they began trading publicly on July 2, 2007. Second, the Indentures do not contemplate that more than one entity may assume the Notes as the successor corporation upon receiving "substantially all" of TIGSA's assets. The Indentures contemplate that only a single successor may qualify, and here, that successor is Tyco – not Tyco Electronics, TEGSA, Covidien, and CIFSA, and certainly not *all* of their public shareholders.

**CONCLUSION**

For the foregoing reasons, Proposed Intervenors' motion should be denied insofar as it seeks leave to join Tyco Electronics, TEGSA, Covidien, and CIFSA as additional defendants.

Dated: New York, New York
       July 13, 2007

| | |
|---|---|
| SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP | GIBSON, DUNN & CRUTCHER LLP |
| By: /s/ Joseph N. Sacca<br>  Jonathan J. Lerner (JL-7117)<br>  Joseph N. Sacca (JS-9435) | By: /s/ Marshall R. King<br>  Wesley G. Howell (WH-8660)<br>  Marshall R. King (MK-1642) |
| Four Times Square<br>New York, New York 10036<br>(212) 735-3000 | 200 Park Avenue, 47th Floor<br>New York, New York 10166-0193<br>(212) 351-4000 |

Attorneys for Defendants Tyco International Group S.A. and Tyco International Ltd.

100256718_8.DOC