# EXHIBIT A

TYCO INTERNATIONAL GROUP S.A.,
as Issuer

AND

TYCO INTERNATIONAL LTD.,
as Guarantor

AND

THE BANK OF NEW YORK,
as Trustee

Indenture

Dated as of June 9, 1998

----------------

TABLE OF CONTENTS

Page

ARTICLE ONE:  DEFINITIONS...................................................................................1

        SECTION 1.1  Certain Terms Defined.............................................................1

ARTICLE TWO:  SECURITIES....................................................................................7

        SECTION 2.1   Forms Generally...................................................................7
        SECTION 2.2   Form of Guarantee.................................................................7
        SECTION 2.3   Form of Trustee's Certificate of Authentication....................................8
        SECTION 2.4   Amount Unlimited; Issuable in Series...........................................8
        SECTION 2.5   Authentication and Delivery of Securities.....................................9
        SECTION 2.6   Execution of Securities........................................................10
        SECTION 2.7   Certificate of Authentication..................................................11
        SECTION 2.8 Denomination and Date of Securities; Payments of Interest.....................11
        SECTION 2.9   Registration, Transfer and Exchange............................................11
        SECTION 2.10  Mutilated, Defaced, Destroyed, Lost and Stolen Securities.....................12
        SECTION 2.11  Cancellation of Securities; Destruction Thereof..............................13
        SECTION 2.12  Temporary Securities...........................................................13
        SECTION 2.13  Securities Issuable in the Form of a Global Security..........................14
        SECTION 2.14  CUSIP Numbers..................................................................15

ARTICLE THREE:  COVENANTS OF THE ISSUER AND THE TRUSTEE .....................................15

        SECTION 3.1   Payment of Principal and Interest..............................................15
        SECTION 3.2   Offices for Payments, etc......................................................16
        SECTION 3.3   Appointment to Fill a Vacancy in Office of Trustee.............................16
        SECTION 3.4   Paying Agent...................................................................16
        SECTION 3.5   Certificate of the Issuer and the Guarantors...................................17
        SECTION 3.6   Securityholders Lists..........................................................17
        SECTION 3.7   Reports by the Issuer and Tyco.................................................17
        SECTION 3.8   Reports by the Trustee.........................................................17
        SECTION 3.9  Limitations on Liens...........................................................17
        SECTION 3.10  Limitation on Sale and Lease-Back Transactions................................19
        SECTION 3.11  Limitation on Indebtedness of Subsidiaries....................................20
        SECTION 3.12  Notice to Trustee..............................................................21

ARTICLE FOUR:  REMEDIES OF THE TRUSTEE AND SECURITYHOLDERS ON EVENT OF DEFAULT ............21
                                -----------------------------------------------------------------

        SECTION 4.1   Event of Default Defined; Acceleration of Maturity; Waiver of Default...........21
        SECTION 4.2   Collection of Indebtedness by Trustee; Trustee May Prove Debt..................24
        SECTION 4.3   Application of Proceeds........................................................25
        SECTION 4.4   Suits for Enforcement..........................................................26
        SECTION 4.5   Restoration of Rights on Abandonment of Proceedings............................26
        SECTION 4.6   Limitations on Suits by Securityholders........................................27
        SECTION 4.7   Unconditional Right of Securityholders to Institute Certain Suits..............27
        SECTION 4.8   Powers and Remedies Cumulative; Delay or Omission Not Waiver of Default.........27

1

Source: TYCO INTERNATIONAL L, POS AM, June 09, 1998

                                                                                    Page

        SECTION 4.9   Control by Securityholders.................................................27
        SECTION 4.10  Waiver of Past Defaults...................................................28
        SECTION 4.11  Trustee to Give Notice of Default, But May Withhold in Certain Circumstances.............28
        SECTION 4.12  Right of Court to Require Filing of Undertaking to Pay Costs..................................29

ARTICLE FIVE:   CONCERNING THE TRUSTEE  ................................................29

        SECTION 5.1   Duties and Responsibilities of the Trustee; During Default; Prior to Default...............29
        SECTION 5.2   Certain Rights of the Trustee.............................................30
        SECTION 5.3   Trustee Not  Responsible  for Recitals,  Disposition of Securities or Application of
                      Proceeds Thereof.........................................................31
        SECTION 5.4   Trustee and Agents May Hold Securities; Collections, etc...................32
        SECTION 5.5   Moneys Held by Trustee...................................................32
        SECTION 5.6   Compensation and Indemnification of Trustee and Its Prior Claim............32
        SECTION 5.7   Right of Trustee to Rely on Officers' Certificate, etc....................32
        SECTION 5.8   Persons Eligible for Appointment as Trustee...............................33
        SECTION 5.9   Resignation and Removal; Appointment of Successor Trustee.................33
        SECTION 5.10  Acceptance of Appointment by Successor Trustee...........................34
        SECTION 5.11  Appointment of Co-Trustee................................................35
        SECTION 5.12  Merger, Conversion, Consolidation or Succession to Business of Trustee....................36

ARTICLE SIX:   CONCERNING THE SECURITYHOLDERS ...........................................36

        SECTION 6.1   Evidence of Action Taken by Securityholders...............................36
        SECTION 6.2   Proof of Execution of Instruments and of Holding of Securities; Record Date.................36
        SECTION 6.3   Holders to be Treated as Owners..........................................37
        SECTION 6.4   Securities Owned by Issuer Deemed Not Outstanding........................37
        SECTION 6.5   Right of Revocation of Action Taken......................................37

ARTICLE SEVEN:  SUPPLEMENTAL INDENTURES.................................................38

        SECTION 7.1   Supplemental Indentures Without Consent of Securityholders...............38
        SECTION 7.2   Supplemental Indentures With Consent of Securityholders..................39
        SECTION 7.3   Effect of Supplemental Indenture.........................................40
        SECTION 7.4   Documents to Be Given to Trustee.........................................40
        SECTION 7.5   Notation on Securities in Respect of Supplemental Indentures...............40

ARTICLE EIGHT:  CONSOLIDATION, MERGER, SALE OR CONVEYANCE ................................40

        SECTION 8.1   Issuer and Guarantors May Consolidate, etc., on Certain Terms...........41
        SECTION 8.2   Successor Entity Substituted.............................................41
        SECTION 8.3   Opinion of Counsel to Trustee............................................41
        SECTION 8.4   Exception Applicable to Certain Guarantors...............................42

2

Source: TYCO INTERNATIONAL L, POS AM, June 09, 1998

Page

ARTICLE NINE:  SATISFACTION AND DISCHARGE OF INDENTURE; UNCLAIMED MONEYS.........................................42

    SECTION 9.2   Issuer's Option to Effect Defeasance or Covenant Defeasance.................................43
    SECTION 9.3   Defeasance and Discharge....................................................................43
    SECTION 9.4   Covenant Defeasance..........................................................................43
    SECTION 9.5   Conditions to Defeasance or Covenant Defeasance.............................................43
    SECTION 9.6   Application by Trustee of Funds Deposited for Payment of Securities.........................45
    SECTION 9.7   Repayment of Moneys Held by Paying Agent....................................................45
    SECTION 9.8   Return of Moneys Held by Trustee and Paying Agent Unclaimed for Two Years...................45
    SECTION 9.9   Indemnity for Direct Obligations of the United States......................................46
    SECTION 9.10  Reinstatement...............................................................................46

ARTICLE TEN:  MISCELLANEOUS PROVISIONS.......................................................................46

    SECTION 10.1  Incorporators, Shareholders, Officers and Directors of Issuer and Guarantors
              Exempt from Individual Liability............................................................46
    SECTION 10.2  Provisions of Indenture for the Sole Benefit of Parties and Securityholders...............46
    SECTION 10.3  Successors and Assigns of Issuer and Guarantors Bound by Indenture.........................47
    SECTION 10.4  Notices and Demands on Issuer, Guarantors Trustee and Securityholders......................47
    SECTION 10.5  Officers' Certificates and Opinions of Counsel; Statements to Be Contained Therein........48
    SECTION 10.6  Payments Due on Saturdays, Sundays and Holidays...........................................48
    SECTION 10.7  Conflict of Any Provision of Indenture with Trust Indenture Act of 1939....................49
    SECTION 10.8  New York Law to Govern......................................................................49
    SECTION 10.8  Consent to Jurisdiction and Service of Process.............................................49
    SECTION 10.8  Judgment Currency...........................................................................50
    SECTION 10.9  Counterparts................................................................................50
    SECTION 10.10 Effect of Headings..........................................................................50

ARTICLE ELEVEN:  REDEMPTION OF SECURITIES AND SINKING FUNDS..................................................50

    SECTION 11.1  Applicability of Article....................................................................50
    SECTION 11.2  Notice of Redemption; Partial Redemptions...................................................50
    SECTION 11.3  Payment of Securities Called for Redemption................................................51
    SECTION 11.4  Exclusion of Certain Securities from Eligibility for Selection for Redemption..............52
    SECTION 11.5  Mandatory and Optional Sinking Funds........................................................52

ARTICLE TWELVE:  ADDITIONAL AMOUNTS; CERTAIN TAX PROVISIONS..................................................54

    SECTION 12.1  Redemption Upon Changes in Withholding Taxes...............................................54
    SECTION 12.2  Payment of Additional Amounts...............................................................54

ARTICLE THIRTEEN:  GUARANTEES................................................................................56

Source: TYCO INTERNATIONAL L, POS AM, June 09, 1998

Page

SECTION 13.1  Guarantee...................................................................................56
SECTION 13.2  Execution and Delivery of Guarantees.......................................................57
SECTION 13.3  Release of Guarantees.......................................................................58
SECTION 13.4  Additional Guarantors.......................................................................58

4

Source: TYCO INTERNATIONAL L, POS AM, June 09, 1998

THIS INDENTURE, dated as of June 9, 1998, among TYCO INTERNATIONAL GROUP S.A., a Luxembourg company (the "Issuer"), TYCO INTERNATIONAL LTD., a Bermuda company ("Tyco"), and THE BANK OF NEW YORK, a New York banking corporation (the "Trustee").

W I T N E S S E T H :
- - - - - - - - - - -

WHEREAS, the Issuer has duly authorized the issue from time to time of its unsecured debentures, notes or other evidences of indebtedness to be issued in one or more series (the "Securities") up to such principal amount or amounts as may from time to time be authorized in accordance with the terms of this Indenture and to provide, among other things, for the authentication, delivery and administration thereof, and the Issuer has duly authorized the execution and delivery of this Indenture;

WHEREAS, Tyco has duly authorized the execution and delivery of this Indenture and deems it appropriate from time to time to issue its guarantees of the Securities on the terms and substantially in the form herein provided; and

WHEREAS, all things necessary to make this Indenture a valid indenture and agreement according to its terms have been done;

NOW, THEREFORE:

In consideration of the premises and the purchases of the Securities by the holders thereof, the Issuer, Tyco and the Trustee mutually covenant and agree for the equal and proportionate benefit of the respective holders from time to time of the Securities as follows:

ARTICLE ONE

DEFINITIONS

SECTION 1.1 Certain Terms Defined. The following terms (except as otherwise expressly provided or unless the context otherwise clearly requires) for all purposes of this Indenture and of any indenture supplemental hereto shall have the respective meanings specified in this Section. All other terms used in this Indenture that are defined in the Trust Indenture Act of 1939 or the definitions of which in the Securities Act of 1933 are referred to in the Trust Indenture Act of 1939, including terms defined therein by reference to the Securities Act of 1933 (except as herein otherwise expressly provided or unless the context otherwise clearly requires), shall have the meanings assigned to such terms in said Trust Indenture Act and in said Securities Act as in force at the date of this Indenture. All accounting terms used herein and not expressly defined shall have the meanings assigned to such terms in accordance with generally accepted accounting principles, and the terms "generally accepted accounting principles" means such accounting principles as are generally accepted in the United States at the time of any computation. The words "herein", "hereof" and "hereunder" and other words of similar import refer to this Indenture as a whole and not to any particular Article, Section or other subdivision. The terms defined in this Article have the meanings assigned to them in this Article and include the plural as well as the singular.

"Acquired Indebtedness" means Indebtedness of a Person (i) existing at the time such Person becomes a Restricted Subsidiary or (ii) assumed in connection with the acquisition of assets by such Person, in each case, other than Indebtedness incurred in connection with, or in contemplation of, such Person becoming a Restricted Subsidiary or such acquisition, as the case

1

Source: TYCO INTERNATIONAL L, POS AM, June 09, 1998

may be.

"Affiliate" means, with respect to any specified Person: (i) any other Person directly or indirectly controlling or controlled by or under direct or indirect common control with such specified Person; (ii) any other Person that owns, directly or indirectly, 10% or more of such specified Person's Capital Stock or any officer or director of any such specified Person or other Person; (iii) any other Person 10% or more of the Voting Stock of which is beneficially owned or held directly or indirectly by such specified Person. For the purposes of this definition, "control" when used with respect to any specified Person means the power to direct the management and policies of such Person, directly or indirectly, whether through ownership of voting securities, by contract or otherwise; and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

"Attributable Debt" means in connection with a Sale and Lease-Back Transaction, as of any particular time, the aggregate of present values (discounted at a rate per annum equal to the average interest borne by all outstanding Debt Securities (or, if set forth in a resolution of the Board of Directors or a supplemental indenture pursuant to Section 2.4 with respect to one or more series, the Outstanding Securities of such series) determined on a weighted average basis and compounded semi-annually) of the obligations of the Issuer or any Restricted Subsidiary for net rental payments during the remaining term of the applicable lease (including any period for which such lease has been extended or may, at the option of the lessor, be extended). The term "net rental payments" under any lease of any period shall mean the sum of the rental and other payments required to be paid in such period by the lessee thereunder, not including, however, any amounts required to be paid by such lessee (whether or not designated as rental or additional rental) on account of maintenance and repairs, reconstruction, insurance, taxes, assessments, water rates or similar charges required to be paid by such lessee thereunder or any amounts required to be paid by such lessee thereunder contingent upon the amount of sales, maintenance and repairs, reconstruction, insurance, taxes, assessments, water rates or similar charges.

"Board of Directors" means either the Board of Directors of the Issuer, Tyco or any other Guarantor, as the case may be, or any committee of such Board of Directors duly authorized to act hereunder.

"Business Day" means, with respect to any Security, a day that in the city (or in any of the cities, if more than one) in which amounts are payable, as specified in the form of such Security, is not a day on which banking institutions are authorized by law or regulation to close.

"Capital Stock" of any Person means any and all shares, interests, participations, rights in or other equivalents (however designated) of such Person's capital stock, other equity interests whether now outstanding or issued after the date of this Indenture, partnership interests, (whether general or limited), any other interest or participation that confers on a Person that right to receive a share of the profits and losses of, or distributions of assets of, the issuing Person and any rights (other than debt securities convertible into Capital Stock), warrants or options exchangeable for or convertible into such Capital Stock.

"Commission" means the Securities and Exchange Commission, as from time to time constituted, created under the Securities Exchange Act of 1934, or if at any time after the execution and delivery of this Indenture such Commission is not existing and performing the duties now assigned to it under the Trust Indenture Act of 1939, then the body performing such duties on such date.

"Consolidated Net Worth" means, at any date, the total assets less the total

2

liabilities, in each case appearing on the most recently prepared consolidated balance sheet of the Issuer and its subsidiaries as of the end of a fiscal quarter of the Issuer, prepared in accordance with generally accepted accounting principles as in effect on the date of calculation.

"Consolidated Tangible Assets" means, at any date, the total assets less all intangible assets appearing on the most recently prepared consolidated balance sheet of the Issuer and its subsidiaries as of the end of a fiscal quarter of the Issuer, prepared in accordance with generally accepted accounting principles as in effect on the date of calculation. "Intangible Assets" means the amount (if any) which would be stated under the heading "Costs in Excess of Net Assets of Acquired Companies" or under any other heading relating to intangible assets separately listed, in each case on the face of the aforesaid consolidated balance sheet.

"Corporate Trust Office" means the office of the Trustee at which the corporate trust business of the Trustee shall, at any particular time, be principally administered, which office is, at the date as of which this Indenture is dated, located at 101 Barclay Street, 21 W, New York, New York 10286, Attention: Corporate Trust Administration.

"Depositary" means, unless otherwise specified by the Issuer pursuant to either Section 2.4 or 2.15, with respect to Securities of any series issuable or issued as a Global Security, The Depository Trust Company, New York, New York, or any successor thereto registered under the Securities Exchange Act of 1934 or other applicable statute or regulation.

"Event of Default" means any event or condition specified as such in Section 4.1.

"Funded Indebtedness" means any Indebtedness maturing by its terms more than one year from the date of the determination thereof, including any Indebtedness renewable or extendible at the option of the obligor to a date later than one year from the date of the determination thereof.

"Global Security" means a Security issued to evidence all or part of any series of Securities which is executed by the Issuer and authenticated and delivered by the Trustee to the Depositary or pursuant to the Depositary's instruction, all in accordance with this Indenture and pursuant to an Issuer order which shall be registered in the name of the Depositary or its nominee.

"Guarantee" means the unconditional and unsubordinated guarantee by Tyco or any other Guarantor of the due and punctual payment of principal of and interest on the Securities when and as the same shall become due and payable, whether at the stated maturity, by acceleration, call for redemption or otherwise in accordance with the terms of the Securities and this Indenture.

"Guarantor" means Tyco or any Subsidiary that after the date of this Indenture executes a guarantee of the Debt Securities contemplated by Section 3.11 until a successor replaces such party pursuant to the applicable provisions of this Indenture and, thereafter, shall mean such successor.

"Holder", "holder of Securities", "Securityholder" or other similar terms mean the registered holder of any Security.

"Indebtedness" means, without duplication, the principal or face amount of (i) all obligations for borrowed money, (ii) all obligations evidenced by debentures, notes or other similar instruments, (iii) all obligations in respect of letters of credit or bankers acceptances or similar instruments (or reimbursement obligations with respect thereto), (iv) all obligations to pay

3

the deferred purchase price of property or services, except trade accounts payable arising in the ordinary course of business, (v) all obligations as lessee which are capitalized in accordance with generally accepted accounting principles, and (vi) all Indebtedness of others guaranteed by the Issuer or any of its subsidiaries or for which the Issuer or any of its subsidiaries is legally responsible or liable (whether by agreement to purchase indebtedness of, or to supply funds or to invest in, others).

"Indenture" means this instrument as originally executed and delivered or, if amended or supplemented as herein provided, as so amended or supplemented or both, and shall include the forms and terms of particular series of Securities established as contemplated hereunder.

"Interest" means, when used with respect to non-interest bearing Securities, interest payable after maturity.

"Issuer" means (except as otherwise provided in Article Five) Tyco International Group S.A., and, subject to Article Eight, its successors and assigns.

"Non-Recourse Indebtedness" means Indebtedness upon the enforcement of which recourse may be had by the holder(s) thereof only to identified assets of the Issuer, Tyco or any Subsidiary and not to the Issuer, Tyco or any Subsidiary personally.

"Officers' Certificate" means a certificate signed by two managing directors or by the chairman or any vice chairman of the Board of Directors or the president or any vice president and by the treasurer or any assistant treasurer or the secretary or any assistant secretary of the Issuer, Tyco or any other Guarantor, as the case may be, and delivered to the Trustee. Each such certificate shall comply with Section 314 of the Trust Indenture Act of 1939 and include the statements provided for in Section 10.5.

"Opinion of Counsel" means an opinion in writing signed by legal counsel who may be an employee of or counsel to the Issuer and who shall be satisfactory to the Trustee. Each such opinion shall comply with Section 314 of the Trust Indenture Act of 1939 and include the statements provided for in Section 10.5, if and to the extent required hereby.

"Original issue date" of any Security (or portion thereof) means the earlier of (a) the date of such Security or (b) the date of any Security (or portion thereof) for which such Security was issued (directly or indirectly) on registration of transfer, exchange or substitution.

"Original Issue Discount Security" means a Security that provides for an amount less than the principal amount thereof to be due and payable upon a declaration of acceleration of the maturity thereof pursuant to Section 4.1.

"Outstanding", when used with reference to Securities, shall, subject to the provisions of Section 6.4, mean, as of any particular time, all Securities authenticated and delivered by the Trustee under this Indenture, except

(a) Securities theretofore canceled by the Trustee or delivered to the Trustee for cancellation;

(b) Securities, or portions thereof, for the payment or redemption of which moneys in the necessary amount shall have been deposited in trust with the Trustee or with any paying agent (other than the Issuer) or shall have been set aside, segregated and

4

Source: TYCO INTERNATIONAL L, POS AM, June 09, 1998

held in trust by the Issuer for the Holders of such Securities (if the Issuer shall act as its own paying agent), provided that if such Securities, or portions thereof, are to be redeemed prior to the maturity thereof, notice of such redemption shall have been given as herein provided, or provision satisfactory to the Trustee shall have been made for giving such notice; and

(c) Securities in substitution for which other Securities shall have been authenticated and delivered, or which shall have been paid, pursuant to the terms of Section 2.9 (except with respect to any such Security as to which proof satisfactory to the Trustee is presented that such Security is held by a person in whose hands such Security is a legal, valid and binding obligation of the Issuer).

In determining whether the holders of the requisite principal amount of Outstanding Securities of any or all series have given any request, demand, authorization, direction, notice, consent or waiver hereunder, the principal amount of an Original Issue Discount Security that shall be deemed to be Outstanding for such purposes shall be the amount of the principal thereof that would be due and payable as of the date of such determination upon a declaration of acceleration of the maturity thereof pursuant to Section 4.1.

"Permitted Subsidiary Indebtedness" means any of the following: (i) Indebtedness in an aggregate amount, without duplication, not to exceed, as of the date of determination, 5% of the Consolidated Tangible Assets of the Issuer (which Indebtedness is exclusive of the Indebtedness described in clauses (ii) through (viii) hereof), (ii) Indebtedness owed to the Issuer, Tyco or any Subsidiary, (iii) obligations under standby letters of credit or similar arrangements supporting the performance of a Person under a contract or agreement in the ordinary course of business, (iv) obligations as lessee in the ordinary course of business which are capitalized in accordance with United States generally accepted accounting principles, (v) Indebtedness that was Permitted Subsidiary Indebtedness at the time that it was first incurred, (vi) Acquired Indebtedness that by its terms is not callable or redeemable prior to its stated maturity and that remains outstanding following such time as the Subsidiary obligated under such Acquired Indebtedness in good faith has made or caused to be made an offer to acquire all such Indebtedness, including, without limitation, an offer to exchange such Indebtedness for securities of the Issuer, on terms which, in the opinion of an independent investment banking firm of national reputation and standing, are consistent with market practices in existence at the time for offers of a similar nature, provided that the initial expiration date of any such offer shall not be later than the expiration of the time period set forth in Section 3.11(c), (vii) Indebtedness outstanding on the date of the Indenture and (viii) any renewals, extensions, substitutions, refundings, refinancings or replacements (collectively, a "refinancing") of any Indebtedness referred to in clause (vii) of this definition of "Permitted Subsidiary Indebtedness" of a Subsidiary organized under a jurisdiction other than the United States or any State thereof or the District of Columbia, including any successive refinancings so long as the borrower under such refinancing is such a Subsidiary and the aggregate principal amount of Indebtedness represented thereby (or if such Indebtedness provides for an amount less than the principal amount thereof to be due and payable upon a declaration of acceleration of the maturity thereof, the original issue price of such Indebtedness plus any accreted value attributable thereto since the original issuance of such Indebtedness) is not increased by such refinancing plus the lesser of (A) the stated amount of any premium or other payment required to be paid in connection with such a refinancing pursuant to the terms of the Indebtedness being refinanced or (B) the amount of premium or other payment actually paid at such time to refinance the Indebtedness, plus, in either case, the amount of expenses of such Subsidiary incurred in connection with such refinancing.

"Person" means any individual, corporation, partnership, limited liability company,

5

joint venture, association, joint stock company, trust, unincorporated organization or government or any agency or political subdivision thereof.

"principal" whenever used with reference to the Securities or any Security or any portion thereof, shall be deemed to include "and premium, if any".

"Principal Property" means any manufacturing, processing or assembly plant or facility or any warehouse or distribution facility which is used by any U.S. Subsidiary after the date hereof, other than any such plants, facilities, warehouses or portions thereof, which in the opinion of the Board of Directors of the Issuer, are not collectively of material importance to the total business conducted by the Issuer and its Restricted Subsidiaries as an entirety, or which, in each case, has a book value, on the date of the acquisition or completion of the initial construction thereof by the Issuer, of less than 1.5% of Consolidated Tangible Assets.

"Responsible Officer" when used with respect to the Trustee means any vice president, the treasurer, any trust officer, any assistant trust officer, any assistant vice president, any assistant treasurer, or any other officer or assistant officer of the Trustee customarily performing functions similar to those performed by the Persons who at the time shall be such officers, respectively, or to whom any corporate trust matter is referred because of his knowledge of and familiarity with the particular subject.

"Restricted Subsidiary" means any Subsidiary which owns or leases a Principal Property.

"Sale and Lease-Back Transaction" means an arrangement with any Person providing for the leasing by the Issuer or a Restricted Subsidiary of any Principal Property whereby such Principal Property has been or is to be sold or transferred by the Issuer or a Restricted Subsidiary to such Person; provided, however, that the foregoing shall not apply to any such arrangement involving a lease for a term, including renewal rights, for not more than three years.

"Security" or "Securities" has the meaning stated in the first recital of this Indenture, or, as the case may be, Securities that have been authenticated and delivered under this Indenture.

"Significant Subsidiary Guarantor" means any one or more Guarantors (other than Tyco) which, at the date of determination, together with its or their respective Subsidiaries in the aggregate, (i) for the most recently completed fiscal year of the Issuer accounted for more than 10% of the consolidated revenues of the Issuer or (ii) at the end of such fiscal year, was the owner (beneficial or otherwise) of more than 10% of the consolidated assets of the Issuer, as determined in accordance with generally accepted accounting principles and reflected on the Issuer's consolidated financial statements.

"Subsidiary" means any Person of which at least a majority of the outstanding Voting Stock shall at the time directly or indirectly be owned or controlled by the Issuer or by one or more Subsidiaries or by the Issuer and one or more Subsidiaries.

"Trustee" means the Person identified as "Trustee" in the first paragraph hereof and, subject to the provisions of Article Five, shall also include any successor trustee.

"Trust Indenture Act of 1939" (except as otherwise provided in Sections 7.1 and 7.2) means the Trust Indenture Act of 1939 as in force at the date as of which this Indenture was

6

originally executed.

"vice president" when used with respect to the Issuer, Tyco, any other Guarantor or the Trustee, means any vice president, whether or not designated by a number or a word or words added before or after the title of "vice president".

"Voting Stock" of a Person means Capital Stock of such Person of the class or classes pursuant to which the holders thereof have the general voting power under ordinary circumstances to elect at least a majority of the board of directors, managers or trustees of such Person (irrespective of whether or not at the time Capital Stock of any other class or classes shall have or might have voting power by reason of the happening of any contingency).

"Yield to Maturity" means the yield to maturity on a series of Securities, calculated at the time of issuance of such series, or, if applicable, at the most recent redetermination of interest on such series, and calculated in accordance with accepted financial practice.

## ARTICLE TWO

## SECURITIES
----------

SECTION 2.1 Forms Generally. The Securities of each series shall be substantially in such form (not inconsistent with this Indenture) as shall be established by or pursuant to a resolution of the Board of Directors of the Issuer, or in one or more indentures supplemental hereto, in each case with such appropriate insertions, omissions, substitutions and other variations as are required or permitted by this Indenture and may have imprinted or otherwise reproduced thereon such legend or legends, not inconsistent with the provisions of this Indenture, as may be required to comply with any law or with any rules or regulations pursuant thereto, or with any rules of any securities exchange or to conform to general usage, all as may be determined by the officers executing such Securities, as evidenced by their execution of the Securities.

The definitive Securities shall be printed, lithographed or engraved on steel engraved borders or may be produced in any other manner, all as determined by the officers executing such Securities as evidenced by their execution of such Securities.

SECTION 2.2. Form of Guarantee. The form of Guarantee shall be set forth on the Securities substantially as follows:

## GUARANTEE

For value received, Tyco hereby absolutely, unconditionally and irrevocably guarantees to the holder of this Security the payment of principal of, interest on and Additional Amounts in respect of the Security upon which this Guarantee is endorsed in the amounts and at the time when due and payable whether by declaration thereof, or otherwise, and interest on the overdue principal and interest, if any, of such Security, if lawful, and the payment or performance of all other obligations of the Issuer under the Indenture or the Securities, to the holder of such Security and the Trustee, all in accordance with and subject to the terms and limitations of such Security and Article Thirteen of the Indenture. This Guarantee will not become effective until the Trustee duly executes the certificate of authentication on this Security. This Guarantee shall be governed by and construed in accordance with the laws of the State of New York, without regard to conflict of law principles thereof.

7

Source: TYCO INTERNATIONAL L, POS AM, June 09, 1998

Dated:

TYCO INTERNATIONAL LTD.

By:
------------------------
    Name:
    Title:

SECTION 2.3 Form of Trustee's Certificate of Authentication. The Trustee's certificate of authentication on all Securities shall be in substantially the following form:

This is one of the Securities of the series designated herein and referred to in the within-mentioned Indenture.

THE BANK OF NEW YORK, as Trustee

By
------------------------
    Authorized Signatory

SECTION 2.4 Amount Unlimited; Issuable in Series. The aggregate principal amount of Securities which may be authenticated and delivered under this Indenture is unlimited.

The Securities may be issued in one or more series. There shall be established in or pursuant to a resolution of the Board of Directors of the Issuer and set forth in an Officers' Certificate of the Issuer, or established in one or more indentures supplemental hereto, prior to the issuance of Securities of any series:

(1) the title of the Securities of the series (which shall distinguish the Securities of the series from all other Securities);

(2) any limit upon the aggregate principal amount of the Securities of the series that may be authenticated and delivered under this Indenture (except for Securities authenticated and delivered upon registration of transfer of, or in exchange for, or in lieu of, other Securities of the series pursuant to Section 2.9, 2.10, 2.12 or 11.3);

(3) the date or dates on which the principal of the Securities of the series is payable;

(4) the rate or rates at which the Securities of the series shall bear interest, if any, or the method by which such rate shall be determined, the date or dates from which such interest shall accrue, the interest payment dates on which such interest shall be payable and the record dates for the determination of Holders to whom interest is payable;

(5) the place or places where the principal of and any interest on Securities of the series shall be payable (if other than as provided in Section 3.2);

(6) the obligation, if any, of the Issuer to redeem, purchase or repay Securities of the series pursuant to any sinking fund or analogous provisions or at the option of a Holder thereof and the price or prices at which and the period or periods within which and the terms and conditions upon which Securities of the series shall be redeemed, purchased

8

Source: TYCO INTERNATIONAL L, POS AM, June 09, 1998

or repaid, in whole or in part, pursuant to such obligation;

(7) if other than denominations of $1,000 and any multiple thereof, the denominations in which Securities of the series shall be issuable;

(8) if other than the principal amount thereof, the portion of the principal amount of Securities of the series which shall be payable upon declaration of acceleration of the maturity thereof pursuant to Section 4.1 or provable in bankruptcy pursuant to Section 4.2;

(9) whether the Securities of the series shall be issued in whole or in part in the form of a Global Security or Securities; the terms and conditions, if any, upon which such Global Security or Securities may be exchanged in whole or in part for other individual Securities; and the Depositary for Global Security or Securities;

(10) any other terms of the series (which terms shall not be inconsistent with the provisions of this Indenture); and

(11) if other than the Trustee, any trustees, authenticating or paying agents, transfer agents or registrars or any other agents with respect to the Securities of such series.

All Securities of any one series shall be substantially identical except as to denomination and except as may otherwise be provided in or pursuant to such resolution of the Board of Directors or in any such indenture supplemental hereto.

SECTION 2.5 Authentication and Delivery of Securities. At any time and from time to time after the execution and delivery of this Indenture, the Issuer may deliver Securities (with Guarantees endorsed thereon) of any series executed by the Issuer to the Trustee for authentication, and the Trustee shall thereupon authenticate and deliver such Securities to or upon the written order of the Issuer, signed by any two managing directors or by both (a) the chairman of its Board of Directors, or any vice chairman of its Board of Directors, or its president or vice president and (b) its secretary or any assistant secretary or its treasurer or any assistant treasurer, without any further action by the Issuer. In authenticating such Securities and accepting the additional responsibilities under this Indenture in relation to such Securities, the Trustee shall be entitled to receive, and (subject to Section 5.1) shall be fully protected in relying upon:

(1) a certified copy of any resolution or resolutions of the Board of Directors of the Issuer authorizing the action taken pursuant to the resolution or resolutions delivered under clause (2) below;

(2) a copy of any resolution or resolutions of the Board of Directors of the Issuer relating to such series, in each case certified by a director the secretary or any assistant secretary of the Issuer;

(3) an executed supplemental indenture setting forth the form and terms of the Securities as required pursuant to Sections 2.1 and 2.4 respectively, if any;

(4) an Officers' Certificate of the Issuer setting forth the form and terms of the Securities as required pursuant to Section 2.1 and 2.4, respectively and prepared in accordance with Section 10.5;

9

Source: TYCO INTERNATIONAL L, POS AM, June 09, 1998

(5) an Opinion of Counsel, prepared in accordance with Section 10.5, to the effect that

(a) that the form or forms and terms of such Securities have been established by or pursuant to a resolution of the Board of Directors of the Issuer or by a supplemental indenture as permitted by Sections 2.1 and 2.4 in conformity with the provisions of this Indenture;

(b) that such Securities, when authenticated in accordance with the terms of this Indenture and delivered by the Trustee and issued by and delivered by or to the order of the Issuer, against payment therefor, in the manner and subject to any conditions specified in such Opinion of Counsel, will constitute valid and binding obligations of the Issuer;

(c) that all laws and requirements in respect of the execution and delivery by the Issuer of the Securities have been complied with; and

(d) covering such other matters as the Trustee may reasonably request.

Notwithstanding the provisions of the preceding paragraph, if all Securities of a series are not to be originally issued at one time, it shall not be necessary to deliver an Opinion of Counsel otherwise required pursuant to such preceding paragraph at or prior to the authentication of such Security of such series if an Opinion of Counsel is delivered at or prior to the authentication upon original issuance of the first Security of such series to be issued and reasonably contemplates such authentication of each such Security.

The Trustee shall have the right to decline to authenticate and deliver any Securities under this Section if the Trustee, being advised by counsel, determines that such action may not lawfully be taken by the Issuer or if the Trustee in good faith shall determine that such action would expose the Trustee to personal liability to existing Holders.

SECTION 2.6 Execution of Securities. The Securities shall be signed on behalf of the Issuer by any two managing directors or by both (a) the chairman of its Board of Directors or any vice chairman of its Board of Directors or its president or any vice president and (b) the its treasurer or any assistant treasurer or its secretary or any assistant secretary, which may, but need not, be attested. Such signatures may be the manual or facsimile signatures of the present or any future such officers. The seal of the Issuer may be in the form of a facsimile thereof and may be impressed, affixed, imprinted or otherwise reproduced on the Securities. Typographical and other minor errors or defects in any such reproduction of the seal or any such signature shall not affect the validity or enforceability of any Security that has been duly authenticated and delivered by the Trustee.

In case any managing director or officer of the Issuer who shall have signed any of the Securities shall cease to be such managing director or officer before the Security so signed shall be authenticated and delivered by the Trustee or disposed of by the Issuer, such Security nevertheless may be authenticated and delivered or disposed of as though the person who signed such Security had not ceased to be such officer of the Issuer; and any Security may be signed on behalf of the Issuer by such persons as, at the actual date of the execution of such Security, shall be the proper managing directors or officers of the Issuer, although at the date of the execution and delivery of this Indenture any such Person was not such a managing director or an officer.

10

Source: TYCO INTERNATIONAL L, POS AM, June 09, 1998

SECTION 2.7 Certificate of Authentication. Only such Securities (and Guarantees endorsed thereon) as shall bear thereon a certificate of authentication substantially in the form hereinbefore recited, executed by the Trustee by the manual signature of one of its authorized signatories, shall be entitled to the benefits of this Indenture or be valid or obligatory for any purpose. Such certificate by the Trustee upon any Security executed by the Issuer shall be conclusive evidence that the Security so authenticated has been duly authenticated and delivered hereunder and that the holder is entitled to the benefits of this Indenture.

SECTION 2.8 Denomination and Date of Securities; Payments of Interest. The Securities shall be issuable as registered securities without coupons and in denominations as shall be specified as contemplated by Section 2.4. In the absence of any such specification with respect to the Securities of any series, the Securities of such series shall be issuable in denominations of $1,000 and any multiple thereof. The Securities shall be numbered, lettered, or otherwise distinguished in such manner or in accordance with such plan as the officers of the Issuer executing the same may determine with the approval of the Trustee as evidenced by the execution and authentication thereof.

Each Security shall be dated the date of its authentication, shall bear interest, if any, from the date and shall be payable on the dates, in each case, which shall be specified as contemplated by Section 2.4.

The Person in whose name any Security of any series is registered at the close of business on any record date applicable to a particular series with respect to any interest payment date for such series shall be entitled to receive the interest, if any, payable on such interest payment date notwithstanding any transfer or exchange of such Security subsequent to the record date and prior to such interest payment date, except if and to the extent the Issuer shall default in the payment of the interest due on such interest payment date for such series, in which case such defaulted interest shall be paid to the persons in whose names Outstanding Securities for such series are registered at the close of business on a subsequent record date (which shall not be less than five Business Days prior to the date of payment of such defaulted interest) established by notice given by mail by or on behalf of the Issuer to the holders of Securities not less than 15 days preceding such subsequent record date. The term "record date" as used with respect to any interest payment date (except a date for payment of defaulted interest) shall mean the date specified as such in the terms of the Securities of any particular series, or, if no such date is so specified, if such interest payment date is the first day of a calendar month, the fifteenth day of the next preceding calendar month or, if such interest payment date is the fifteenth day of a calendar month, the first day of such calendar month, whether or not such record date is a Business Day.

SECTION 2.9 Registration, Transfer and Exchange. The Issuer will keep or cause to be kept at each office or agency to be maintained for the purpose as provided in Section 3.2 a Security register for each series of Securities in which, subject to such reasonable regulations as it may prescribe, it will register, and will register the transfer of, Securities as in this Article provided. Such register shall be in written form in the English language or in any other form capable of being converted into such form within a reasonable time. At all reasonable times such Security register shall be open for inspection by the Trustee.

Upon due presentation for registration of transfer of any Security of any series at any such office or agency to be maintained for the purpose as provided in Section 3.2, the Issuer shall execute and the Trustee shall authenticate and deliver in the name of the transferee or transferees a new Security or Securities of the same series in authorized denominations for a like aggregate principal amount, and the Issuer shall record or cause to be recorded the transfer in the Security register or registers.

11

Source: TYCO INTERNATIONAL L, POS AM, June 09, 1998

Any Security or Securities of any series may be exchanged for a Security or Securities of the same series in other authorized denominations, in an equal aggregate principal amount. Securities of any series to be exchanged shall be surrendered at any office or agency to be maintained by the Issuer for the purpose as provided in Section 3.2, and the Issuer shall execute and the Trustee shall authenticate and deliver in exchange therefor the Security or Securities of the same series which the Securityholder making the exchange shall be entitled to receive, bearing numbers not contemporaneously outstanding.

All Securities presented for registration of transfer, exchange, redemption or payment shall (if so required by the Issuer or the Trustee) be duly endorsed by, or be accompanied by a written instrument or instruments of transfer in form satisfactory to the Issuer and the Trustee, duly executed by the Holder or his attorney duly authorized in writing.

The Issuer may require payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in connection with any exchange or registration of transfer of Securities. No service charge shall be made for any such transaction.

The Issuer shall not be required to exchange or register a transfer of (a) any Securities of any series for a period of 15 days next preceding the first mailing of notice of redemption of Securities of such series to be redeemed, or (b) any Securities selected, called or being called for redemption except, in the case of any Security where public notice has been given that such Security is to be redeemed in part, the portion thereof not so to be redeemed.

All Securities issued upon any transfer or exchange of Securities shall be valid obligations of the Issuer, evidencing the same debt, and entitled to the same benefits under this Indenture, as the Securities surrendered upon such transfer or exchange.

None of the Issuer, any Guarantor, the Trustee or any Paying Agent will have any responsibility or liability for any aspect of the records relating to or payments made on account of beneficial ownership interests of a Global Security or for maintaining, supervising or reviewing any records relating to such beneficial interests.

SECTION 2.10 Mutilated, Defaced, Destroyed, Lost and Stolen Securities. In case any temporary or definitive Security shall become mutilated, defaced or be destroyed, lost or stolen, the Issuer in its discretion may execute, and upon the written request of any officer of the Issuer, the Trustee shall authenticate and deliver, a new Security of the same series, bearing a number not contemporaneously outstanding, in exchange and substitution for the mutilated or defaced Security, or in lieu of and substitution for the Security so destroyed, lost or stolen. In every case the applicant for a substitute Security shall furnish to the Issuer, any Guarantor and to the Trustee and any agent of the Issuer, such Guarantor or the Trustee such security or indemnity as may be required by them to indemnify and defend and to save each of them harmless and, in every case of destruction, loss or theft, evidence to their satisfaction of the destruction, loss or theft of such Security and of the ownership thereof.

Upon the issuance of any substitute Security, the Issuer may require the payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in relation thereto and any other expenses (including the fees and expenses of the Trustee and any Guarantor) connected therewith. In case any security which has matured or is about to mature or has been called for redemption in full shall become mutilated or defaced or be destroyed, lost or stolen, the Issuer may instead of issuing a substitute Security, pay or authorize the payment of the same (without surrender thereof except in the case of a mutilated or defaced Security), if the

12

Source: TYCO INTERNATIONAL L, POS AM, June 09, 1998

applicant for such payment shall furnish to the Issuer, the Guarantors and to the Trustee and any agent of the Issuer, the Guarantors or the Trustee such security or indemnity as any of them may require to save each of them harmless, and, in every case of destruction, loss or theft, the applicant shall also furnish to the Issuer and the Trustee and any agent of the Issuer or the Trustee evidence to their satisfaction of the destruction, loss or theft of such Security and of the ownership thereof.

Every substitute Security of any series issued pursuant to the provisions of this Section by virtue of the fact that any such Security is destroyed, lost or stolen shall constitute an additional contractual obligation of the Issuer, whether or not the destroyed, lost or stolen Security shall be at any time enforceable by anyone and shall be entitled to all the benefits of (but shall be subject to all the limitations of rights set forth in) this Indenture equally and proportionately with any and all other Securities of such series duly authenticated and delivered hereunder. All Securities shall be held and owned upon the express condition that, to the extent permitted by law, the foregoing provisions are exclusive with respect to the replacement or payment of mutilated, defaced or destroyed, lost or stolen Securities and shall preclude any and all other rights or remedies notwithstanding any law or statute existing or hereafter enacted to the contrary with respect to the replacement or payment of negotiable instruments or other securities without their surrender.

SECTION 2.11 Cancellation of Securities; Destruction Thereof. All Securities surrendered for payment, redemption, registration of transfer or exchange, or for credit against any payment in respect of a sinking or analogous fund, if surrendered to the Issuer or any agent of the Issuer or the Trustee, shall be delivered to the Trustee for cancellation or, if surrendered to the Trustee, shall be canceled by it; and no Securities shall be issued in lieu thereof except as expressly permitted by any of the provisions of this Indenture. The Trustee shall dispose of canceled Securities held by it in accordance with its policy of disposal or, upon the written request of the Issuer, deliver such canceled Securities to the Issuer. If the Issuer shall acquire any of the Securities, such acquisition shall not operate as a redemption or satisfaction of the indebtedness represented by such Securities unless and until the same are delivered to the Trustee for cancellation.

SECTION 2.12 Temporary Securities. Pending the preparation of definitive Securities for any series, the Issuer may execute, the Guarantors shall endorse and the Trustee shall authenticate and deliver temporary Securities for such series (printed, lithographed, typewritten or otherwise reproduced, in each case in form satisfactory to the Trustee). Temporary Securities of any series shall be issuable as registered Securities without coupons, of any authorized denomination, and substantially in the form of the definitive Securities of such series but with such omissions, insertions and variations as may be appropriate for temporary Securities, all as may be determined by the Issuer with the concurrence of the Trustee. Temporary Securities may contain such reference to any provisions of this Indenture as may be appropriate. Every temporary Security shall be executed by the Issuer, endorsed by the Guarantors and be authenticated by the Trustee upon the same conditions and in substantially the same manner, and with like effect, as the definitive Securities. Without unreasonable delay the issuer shall execute and shall furnish definitive Securities of such series and thereupon temporary Securities of such series may be surrendered in exchange therefor without charge at each office or agency to be maintained by the Issuer for that purpose pursuant to Section 3.2, and the Trustee shall authenticate and deliver in exchange for such temporary Securities of such series a like aggregate principal amount of definitive Securities of the same series of authorized denominations. Until so exchanged, the temporary Securities of any series shall be entitled to the same benefits under this Indenture as definitive Securities of such series.

13

Source: TYCO INTERNATIONAL L, POS AM, June 09, 1998

SECTION 2.13 Securities Issuable in the Form of a Global Security. (a) If the Issuer shall establish pursuant to Section 2.4 that the Securities of a particular series are to be issued in whole or in part in the form of one or more Global Securities, then the Issuer shall execute and the Trustee shall, in accordance with Section 2.5 and the Issuer order delivered to the Trustee thereunder, authenticate and deliver, such Global Security or Securities, which (i) shall represent, and shall be denominated in an amount equal to the aggregate principal amount of, the Outstanding Securities of such series to be represented by such Global Security or Securities, (ii) shall be registered in the name of the Depositary for such Global Security or Securities or its nominee, (iii) shall be delivered by the Trustee to the Depositary or pursuant to the Depositary's instruction and (iv) shall bear a legend substantially to the following effect: "Unless and until it is exchanged in whole or in part for the individual Securities represented hereby, this Global Security may not be transferred except as a whole by the Depositary to a nominee of the Depositary or by a nominee of the Depositary to the Depositary or another nominee of the Depositary or by the Depositary or any such nominee to a successor Depositary or a nominee of such successor Depositary."

(b) Notwithstanding any other provision of this Section 2.13 or of Section 2.9, unless the terms of a Global Security expressly permit such Global Security to be exchanged in whole or in part for individual Securities, a Global Security may be transferred, in whole but not in part and in the manner provided in Section 2.9, only to another nominee of the Depositary for such Global Security, or by the nominee of the Depositary to the Depositary, or to a successor Depositary for such Global Security selected or approved by the Issuer or to a nominee of such successor Depositary.

(c) (i) If at any time the Depositary for a Global Security notifies the Issuer that it is unwilling or unable to continue as Depositary for such Global Security or if at any time the Depositary for the Securities for such series shall no longer be eligible or in good standing under the Securities Exchange Act of 1934, or other applicable statute or regulation, the Issuer shall appoint a successor Depositary with respect to such Global Security. If a successor Depositary for such Global Security is not appointed by the Issuer within 90 days after the Issuer receives notice or becomes aware of such ineligibility, the Issuer's election pursuant to Section 2.4(9) shall no longer be effective with respect to such Global Security and the Issuer will execute, and the Trustee, upon receipt of an Issuer order for the authentication and delivery of individual Securities of such series in exchange for such Global Security, will authenticate and deliver individual Securities of such series of like tenor and terms in a definitive form in an aggregate principal amount equal to the principal amount of the Global Security in exchange for such Global Security.

(ii) The Issuer may at any time and in its sole discretion determine that the Securities of any series issued or issuable in the form of one or more Global Securities shall no longer be represented by such Global Security or Securities. In such event the Issuer will execute, and the Trustee, upon receipt of an Issuer order for the authentication and delivery of individual Securities of such series in exchange in whole or in part for such Global Security, will authenticate and deliver individual Securities of such series of like tenor and terms in a definitive form in an aggregate principal amount equal to the principal amount of such Global Security or Securities representing such series in exchange for such Global Security or Securities.

(iii) If specified by the Issuer pursuant to Section 2.4 with respect to Securities issued or issuable in the form of a Global Security, the Depositary for such Global Security may surrender such Global Security in exchange in whole or in part for individual Securities of such series of like tenor and terms in definitive form on such terms as are acceptable to the Issuer and such Depositary. Thereupon the Issuer shall execute, and the Trustee shall authenticate and

14

deliver, without service charge, (1) to each Person specified by such Depositary a new Security or Securities of the same series of like tenor and terms and of any authorized denomination as requested by such Person in aggregate principal amount equal to and in exchange for such person's beneficial interest in the Global Security; and (2) to such Depositary a new Global Security of like tenor and terms and in a denomination equal to the difference, if any, between the principal amount of the surrendered Global Security and the aggregate principal amount of Securities delivered to Holders thereof.

(iv) In any exchange provided for in any of the preceding three paragraphs, the Issuer will execute, the Guarantors will endorse and the Trustee will authenticate and deliver individual Securities in definitive registered form in authorized denominations. Upon the exchange of a Global Security for individual Securities, such Global Security shall be canceled by the Trustee. Securities issued in exchange for a Global Security pursuant to this Section shall be registered in such names and in such authorized denominations as the Depositary for such Global Security, pursuant to instructions from its direct or indirect participants or otherwise, shall instruct the Trustee. The Trustee shall deliver such Securities to the Persons in whose names such Securities are so registered.

SECTION 2.14 CUSIP Numbers. The Issuer in issuing the Securities may use "CUSIP" numbers (if then generally in use), and, if so, the Trustee shall use "CUSIP" numbers in notices of redemption as a convenience to Holders; provided that any such notice may state that no representation is made as to the correctness of such numbers either as printed on the Securities or as contained in any notice of a redemption and that reliance may be placed only on the other identification numbers printed on the Securities, and any such redemption shall not be affected by any defect in or omission of such numbers. The Issuer will promptly notify the Trustee of any change in the "CUSIP" numbers.

ARTICLE THREE

COVENANTS OF THE ISSUER AND THE TRUSTEE
------------------------------------------

SECTION 3.1 Payment of Principal and Interest. The Issuer covenants and agrees for the benefit of each series of Securities that it will duly and punctually pay or cause to be paid the principal of, and interest on, each of the Securities of such series at the place or places, at the respective times and in the manner provided in such Securities. Each installment of interest on the Securities of any series may be paid by mailing checks for such interest payable to or upon the written order of the holders of Securities entitled thereto as they shall appear on the registry books of the Issuer.

SECTION 3.2 Offices for Payments, etc. So long as any of the Securities remain outstanding, the Issuer will maintain in The Borough of Manhattan, The City of New York for each series: an office or agency (a) where the Securities may be presented for payment, (b) where the Securities may be presented for registration of transfer and for exchange as in this Indenture provided and (c) where notices and demands to or upon the Issuer in respect of the Securities or of this Indenture may be served. The Issuer will give to the Trustee written notice of the location of any such office or agency and of any change of location thereof. Unless otherwise specified in accordance with Section 2.4, the Issuer hereby initially designates the Corporate Trust Office of The Bank of New York, 101 Barclay Street, 21 W, New York, New York 10286, acting as the Issuer's agent, as the office to be maintained by it for each such purpose. In case the Issuer shall fail to so designate or maintain any such office or agency or shall fail to give such notice of the location or of any change in the location thereof, presentations and demands may be made and notices may be served at the Corporate Trust Office.

15

SECTION 3.3 Appointment to Fill a Vacancy in Office of Trustee. The Issuer, whenever necessary to avoid or fill a vacancy in the office of the Trustee, will appoint, in the manner provided in Section 5.9, a Trustee, so that there shall at all times be a Trustee with respect to each series of Securities hereunder.

SECTION 3.4 Paying Agent. Whenever the Issuer shall appoint a paying agent other than the Trustee with respect to the Securities of any series, it will cause such paying agent to execute and deliver to the Trustee an instrument in which such agent shall agree with the Trustee, subject to the provisions of this Section.

(a) that it will hold all sums received by it as such agent for the payment of the principal of or interest on the Securities of such series (whether such sums have been paid to it by the Issuer or by any other obligor on the Securities of such series) in trust for the benefit of the Holders of the Securities of such series or of the Trustee,

(b) that it will give the Trustee notice of any failure by the Issuer (or by any other obligor on the Securities of such series) to make any payment of the principal of or interest on the Securities of such series when the same shall be due and payable, and

(c) pay any such sums so held in trust by it to the Trustee upon the Trustee's written request at any time during the continuance of the failure referred to in clause (b) above.

The Issuer will, on or prior to each due date of the principal of or interest on the Securities of such series, deposit with the paying agent a sum sufficient to pay such principal or interest so becoming due, and (unless such paying agent is the Trustee) the Issuer will promptly notify the Trustee of any failure to take such action.

If the Issuer shall act as its own paying agent with respect to the Securities of any series, it will, on or before each due date of the principal of or interest on the Securities of such series, set aside, segregate and hold in trust for the benefit of the Holders of the Securities of such series a sum sufficient to pay such principal or interest so becoming due. The Issuer will promptly notify the Trustee of any failure to take such action.

Anything in this Section to the contrary notwithstanding, the Issuer may at any time, for the purpose of obtaining a satisfaction and discharge with respect to one or more or all series of Securities hereunder, or for any other reason, pay or cause to be paid to the Trustee all sums held in trust for any such series by the Issuer or any paying agent hereunder, as required by this Section, such sums to be held by the Trustee upon the trusts herein contained.

Anything in this Section to the contrary notwithstanding, the agreement to hold sums in trust as provided in this Section is subject to the provisions of Section 9.3 and 9.4.

SECTION 3.5 Certificate of the Issuer and the Guarantors. So long as any of the Securities remain outstanding, the Issuer, Tyco and any other Guarantor will furnish to the Trustee on or before March 31 in each year (beginning with 1999) a brief certificate (which need not comply with Section 10.5) executed by the principal executive, financial or accounting officer of each of the Issuer, Tyco and such Guarantor on their respective behalf as to his or her knowledge of the Issuer's, Tyco's and such Guarantor's, as the case may be, compliance with all covenants and agreements under the Indenture required to be complied with by the Issuer, Tyco and such Guarantor, respectively, (such compliance to be determined without regard to any

16

period of grace or requirement of notice provided under the Indenture). Such certificate need not include a reference to any non-compliance that has been fully cured prior to the date as of which such certificate speaks.

SECTION 3.6 Securityholders Lists. If and so long as the Trustee shall not be the Security registrar for the Securities of any series, the Issuer will furnish or cause to be furnished to the Trustee a list in such form as the Trustee may reasonably require of the names and addresses of the holders of the Securities of such series pursuant to Section 312 of the Trust Indenture Act of 1939 (a) semi-annually not more than 15 days after each record date for the payment of interest on such Securities, as hereinabove specified, as of such record date and on dates to be determined pursuant to Section 2.4 for non-interest bearing securities in each year, and (b) at such other times as the Trustee may request in writing, within thirty days after receipt by the Issuer of any such request as of a date not more than 15 days prior to the time such information is furnished.

SECTION 3.7 Reports by the Issuer and Tyco. So long as any of the Securities remain outstanding, the Issuer and Tyco each covenants to file with the Trustee, within 15 days after the Issuer and Tyco are required to file the same with the Commission, copies of the annual reports and of the information, documents, and other reports which the Issuer and Tyco may be required to file with the Commission pursuant to Section 13 or Section 15(d) of the Securities Exchange Act of 1934; provided, however, that the Issuer and Tyco shall have no obligation to file such reports with the Trustee as long as no Securities of any series are Outstanding.

SECTION 3.8 Reports by the Trustee. Any Trustee's report required under Section 313(a) of the Trust Indenture Act of 1939 shall be transmitted on or before July 15 in each year following the date hereof, so long as any Securities are outstanding hereunder, and shall be dated as of a date convenient to the Trustee no more than 60 nor less than 45 days prior thereto.

SECTION 3.9 Limitations on Liens. After the date hereof and so long as any Securities are Outstanding (but subject to defeasance, as provided in the Indenture), the Issuer will not, and will not permit any Restricted Subsidiary to, issue, assume or guarantee any Indebtedness which is secured by a mortgage, pledge, security interest, lien or encumbrance (each a "lien") upon any Principal Property, or any shares of stock of or Indebtedness issued by any Restricted Subsidiary, whether now owned or hereafter acquired, without effectively providing that, for so long as such lien shall continue in existence with respect to such secured Indebtedness, the Securities (together with, if the Issuer shall so determine, any other Indebtedness of the Issuer ranking equally with the Securities, it being understood that for purposes hereof, Indebtedness which is secured by a lien and Indebtedness which is not so secured shall not, solely by reason of such lien, be deemed to be of different ranking) shall be equally and ratably secured by a lien ranking ratably with or equal to (or at the Issuer's option prior to) such secured Indebtedness; provided, however, that the foregoing covenant shall not apply to:

(a) liens existing on the date the Securities of the subject series are issued;

(b) liens on the stock, assets or Indebtedness of a Person existing at the same time such Person becomes a Restricted Subsidiary unless created in contemplation of such Restricted Subsidiary becoming such;

(c) liens on any assets or Indebtedness of a Person existing at the time such Person is merged into the Issuer or a Restricted Subsidiary or at the time of a purchase, lease or other acquisition of the assets of a corporation or firm as an entirety or substantially as an entirety by the Issuer or any Restricted Subsidiary;

17

Source: TYCO INTERNATIONAL L, POS AM, June 09, 1998

(d) liens on any Principal Property existing at the time of acquisition thereof by the Issuer or any Restricted Subsidiary, or liens to secure the payment of the purchase price of such Principal Property by the Issuer or any Restricted Subsidiary, or to secure any Indebtedness incurred, assumed or guaranteed by the Issuer or a Restricted Subsidiary for the purpose of financing all or any part of the purchase price of such Principal Property or improvements or construction thereon, which Indebtedness is incurred, assumed or guaranteed prior to, at the time of, or within one year after such acquisition (or in the case of real property, completion of such improvement or construction or commencement of full operation of such property, whichever is later); provided, however, that in the case of any such acquisition, construction or improvement, the lien shall not apply to any Principal Property theretofore owned by the Issuer or a Restricted Subsidiary, other than the Principal Property so acquired, constructed or improved;

(e) liens securing Indebtedness owing by any Restricted Subsidiary to the Issuer, Tyco or a Subsidiary or by the Issuer to Tyco;

(f) liens in favor of the United States or any State thereof, or any department, agency or instrumentality or political subdivision of the United States of America or any State thereof, or in favor of any other country, or any political subdivision thereof, to secure partial, progress, advance or other payments pursuant to any contract, statute, rule or regulation or to secure any Indebtedness incurred or guaranteed for the purpose of financing all or any part of the purchase price (or, in the case of real property, the cost of construction or improvement) of the Principal Property subject to such liens (including but not limited to, liens incurred in connection with pollution control, industrial revenue or similar financings);

(g) pledges, liens or deposits under worker's compensation or similar legislation, and liens thereunder which are not currently dischargeable, or in connection with bids, tenders, contracts (other than for the payment of money) or leases to which the Issuer or any Restricted Subsidiary is a party, or to secure the public or statutory obligations of the Issuer or any Restricted Subsidiary, or in connection with obtaining or maintaining self-insurance, or to obtain the benefits of any law, regulation or arrangement pertaining to unemployment insurance, old age pensions, social security or similar matters, or to secure surety, performance, appeal or customs bonds to which the Issuer or any Restricted Subsidiary is a party, or in litigation or other proceedings in connection with the matters heretofore referred to in this clause, such as, but not limited to, interpleader proceedings, and other similar pledges, liens or deposits made or incurred in the ordinary course of business;

(h) liens created by or resulting from any litigation or other proceeding which is being contested in good faith by appropriate proceedings, including liens arising out of judgments or awards against the Issuer or any Restricted Subsidiary with respect to which the Issuer or such Restricted Subsidiary is in good faith prosecuting an appeal or proceedings for review or for which the time to make an appeal has not yet expired; or final unappealable judgment liens which are satisfied within 15 days of the date of judgment; or liens incurred by the Issuer or any Restricted Subsidiary for the purpose of obtaining a stay or discharge in the course of any litigation or other proceeding to which the Issuer or such Restricted Subsidiary is a party;

(i) liens for taxes or assessments or governmental charges or levies not yet due or delinquent; or which can thereafter be paid without penalty, or which are being contested in good faith by appropriate proceedings; landlord's liens on property held under lease; and any other liens or charges incidental to the conduct of the business of the Issuer or any Restricted Subsidiary, or the ownership of their respective assets, which were not incurred in connection with the borrowing of money or the obtaining of advances or credit and which do not, in the

18

opinion of the Board of Directors of the Issuer, materially impair the use of such assets in the operation of the business of the Issuer or such Restricted Subsidiary or the value of such Principal Property for the purposes of such business;

(j) liens to secure the Issuer's or any Restricted Subsidiary's obligations under agreements with respect to spot, forward, future and option transactions, entered into in the ordinary course of business;

(k) liens not permitted by the foregoing clauses (a) to (j), inclusive, if at the time of, and after giving effect to, the creation or assumption of any such lien, the aggregate amount of all outstanding Indebtedness of the Issuer and its Restricted Subsidiaries (without duplication) secured by all such liens not so permitted by the foregoing clauses (a) through (j), inclusive, together with the Attributable Debt in respect of Sale and Lease-Back Transactions permitted by paragraph (a) under Section 3.10 do not exceed the greater of $100,000,000 and 10% of Consolidated Net Worth; and

(l) any extension, renewal or replacement (or successive extensions, renewals or replacements) in whole or in part, of any lien referred to in the foregoing clauses (a) to (k), inclusive; provided, however, that the principal amount of Indebtedness secured thereby unless otherwise excepted under clauses (a) through (k) shall not exceed the principal amount of Indebtedness so secured at the time of such extension, renewal or replacement, and that such extension, renewal or replacement shall be limited to all or a part of the assets (or any replacements therefor) which secured the lien so extended, renewed or replaced (plus improvements and construction on real property).

SECTION 3.10 Limitation on Sale and Lease-Back Transactions. The Issuer will not, and will not permit any Restricted Subsidiary to, enter into any Sale and Lease-Back Transaction unless:

(a) the Issuer or such Restricted Subsidiary would, at the time of entering into a Sale and Lease-Back Transaction, be entitled to incur Indebtedness secured by a lien on the Principal Property to be leased in an amount at least equal to the Attributable Debt in respect of such Sale and Lease-Back Transaction, without equally and ratably securing the Securities pursuant to Section 3.9; or

(b) the direct or indirect proceeds of the sale of the Principal Property to be leased are at least equal to the fair value of such Principal Property (as determined by the Issuer's Board of Directors) and an amount equal to the net proceeds from the sale of the property or assets so leased are applied, within 180 days of the effective date of any such Sale and Lease-Back Transaction, to the purchase or acquisition (or, in the case of real property, commencement of the construction) of property or assets or to the retirement (other than at maturity or pursuant to a mandatory sinking fund or mandatory redemption provision) of Securities, or of Funded Indebtedness of the Issuer or a consolidated Subsidiary ranking on a parity with or senior to the Securities; provided that there shall be credited to the amount of net worth proceeds required to be applied pursuant to this clause (b) an amount equal to the sum of (i) the principal amount of Securities delivered within 180 days of the effective date of such Sale and Lease-Back Transaction to the Trustee for retirement and cancellation and (ii) the principal amount of other Funded Indebtedness voluntarily retired by the Issuer within such 180-day period, excluding retirements of Securities and other Funded Indebtedness as a result of conversions or pursuant to mandatory sinking fund or mandatory prepayment provisions.

19

Source: TYCO INTERNATIONAL L, POS AM, June 09, 1998

SECTION 3.11 Limitation on Indebtedness of Subsidiaries. (a) The Issuer will not cause or permit any Subsidiary (which is not a Guarantor), directly or indirectly, to create, incur, assume, guarantee or otherwise in any manner become liable for the payment of or otherwise incur (collectively, "incur"), any Indebtedness (including any Acquired Indebtedness but excluding any Permitted Subsidiary Indebtedness) unless such Subsidiary simultaneously executes and delivers a supplemental indenture to the Indenture providing for a Guarantee of the Securities as provided in Section 3.14.

(b) Notwithstanding the foregoing, any Guarantee by a Subsidiary of the Securities shall provide by its terms that it (and all liens securing the same) shall be automatically and unconditionally released and discharged upon (i) any sale, exchange or transfer, to any Person not an Affiliate of the Issuer, of all of the Issuer's equity interests in, or all or substantially all the assets of, such Subsidiary, which transaction is in compliance with the terms of this Indenture and such Subsidiary is released from all guarantees, if any, by it of other Indebtedness of the Issuer or any Subsidiaries, (ii) the payment in full of all obligations under the Indebtedness giving rise to such Guarantee and (iii) with respect to Indebtedness described in clause (a) above constituting guarantees, the release by the holders of such Indebtedness of the guarantee by such Subsidiary (including any deemed release upon payment in full of all obligations under such Indebtedness), at such time as (A) no other Indebtedness (other than Permitted Subsidiary Indebtedness) has been guaranteed by such Subsidiary, as the case may be, or (B) the holders of all such other Indebtedness which is guaranteed by such Subsidiary also release the guarantee by such Subsidiary (including any deemed release upon payment in full of all obligations under such Indebtedness).

(c) For purposes of this Section 3.11, any Acquired Indebtedness shall not be deemed to have been incurred until 180 days from the date (A) the Person obligated on such Acquired Indebtedness becomes a Subsidiary or (B) the acquisition of assets in connection with which such Acquired Indebtedness was assumed is consummated.

SECTION 3.12 Notice to Trustee. The Issuer, Tyco or any other Guarantor shall provide written notice to the Trustee within 30 days of the occurrence of any Event of Default under Section 4.1.

ARTICLE FOUR

REMEDIES OF THE TRUSTEE AND SECURITYHOLDERS
ON EVENT OF DEFAULT

SECTION 4.1 Event of Default Defined; Acceleration of Maturity; Waiver of Default. "Event of Default" with respect to Securities of any series wherever used herein, means each one of the following events which shall have occurred and be continuing (whatever the reason for such Event of Default and whether it shall be voluntary or involuntary or be effected by operation of law or pursuant to any judgment, decree or order of any court or any order, rule or regulation of any administrative or governmental body):

(a) default in the payment of any installment of interest upon or any Additional Amounts in respect of any of the Securities of such series as and when the same shall become due and payable, and continuance of such default for a period of 30 days; or

(b) default in the payment of all or any part of the principal on any of the

20

Source: TYCO INTERNATIONAL L, POS AM, June 09, 1998

Securities of such series as and when the same shall become due and payable either at maturity, upon redemption, by declaration or otherwise; or

(c) default in the payment of any sinking fund installment as and when the same shall become due and payable by the terms of the Securities of such series; or

(d) default in the performance, or breach, of any covenant or agreement of the Issuer, Tyco or any other Guarantor in respect of the Securities of such series and related Guarantees (other than a covenant or agreement in respect of the Securities of such series and related Guarantees a default in whose performance or whose breach is elsewhere in this Section specifically dealt with), and continuance of such default or breach for a period of 90 days after the date on which there has been given, by registered or certified mail, to the Issuer by the Trustee or to the Issuer and the Trustee by the Holders of at least 25% in principal amount of the Outstanding Securities of all series affected thereby, a written notice specifying such default or breach and requiring it to be remedied and stating that such notice is a "Notice of Default" hereunder; or

(e) an event of default, as defined in any indenture, including this Indenture, or instrument evidencing or under which the Issuer, Tyco or any other Guarantor on the date any determination shall be made under this clause (e), shall have outstanding at least $50,000,000 aggregate principal amount of Indebtedness for borrowed money (other than Non-Recourse Indebtedness), shall happen and be continuing and such event of default shall involve the failure to pay the principal of or interest on such Indebtedness (or any part thereof) on the final maturity date thereof after the expiration of any applicable grace period with respect thereto, or such Indebtedness shall have been accelerated so that the same shall be or become due and payable prior to the date on which the same would otherwise have become due and payable, and such acceleration shall not be rescinded or annulled within ten Business Days after notice thereof shall have been given to the Issuer, Tyco or such Guarantor, as the case may be, by the Trustee (if such event be known to it), or to the Issuer, Tyco or such Guarantor, as the case may be, and the Trustee by the Holders of at least 25% in aggregate principal amount of all of the Securities at the time Outstanding (treated as one class); provided that, if such event of default under such indenture or instrument shall be remedied or cured by the Issuer, Tyco or such Guarantor, as the case may be, or waived by the requisite holders of such indebtedness, then the Event of Default hereunder by reason thereof shall be deemed likewise to have been thereupon remedied, cured or waived without further action upon the part of either the Trustee or any of the Securityholders, and provided further, however, that subject to the provisions of Sections 5.1 and 5.2, the Trustee shall not be charged with knowledge of any such event of default unless written notice thereof shall have been given to the Trustee by the Issuer, Tyco or such Guarantor, as the case may be, by the holder or an agent of the holder of any such Indebtedness, by the trustee then acting under any indenture or other instrument under which such default shall have occurred, or by the Holders of not less than 25% in the aggregate principal amount of the Securities at the time Outstanding (treated as one class);

(f) any Guarantee shall for any reason cease to be, or shall for any reason be asserted in writing by any Guarantor or the Issuer not to be in full force and effect and enforceable in accordance with its terms except to the extent contemplated by the Indenture and any such Guarantee;

(g) a court having jurisdiction in the premises shall enter a decree or order for relief in respect of the Issuer, Tyco or any Significant Subsidiary Guarantor in an

21

Source: TYCO INTERNATIONAL L, POS AM, June 09, 1998

involuntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect, or appointing a receiver, liquidator, assignee, custodian, trustee or sequestrator (or similar official) of the Issuer, Tyco or such Significant Subsidiary Guarantor or for any substantial part of its property or ordering the winding up or liquidation of its affairs, and such decree or order shall remain unstayed and in effect for a period of 60 consecutive days; or

(h) the Issuer, Tyco or any Significant Subsidiary Guarantor shall commence a voluntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect, or consent to the entry of an order for relief in an involuntary case under any such law, or consent to the appointment of or taking possession by a receiver, liquidator, assignee, custodian, trustee or sequestrator (or similar official) of the Issuer, Tyco or such Significant Subsidiary Guarantor or for any substantial part of its property, or make any general assignment for the benefit of creditors; or

(i) any other Event of Default provided in the supplemental indenture or resolution of the Board of Directors under which such series of Securities is issued or in the form of Security for such series.

If an Event of Default described in clauses (a), (b), (c), (d), (f) or (i) above (if the Event of Default under clause (d) or (i), as the case may be, is with respect to less than all series of Securities then Outstanding) occurs and is continuing, then, and in each and every such case, unless the principal of all of the Securities of such series shall have already become due and payable, either the Trustee or the Holders of not less than 25% in aggregate principal amount of the Securities of such series then Outstanding hereunder (each such series voting as a separate class) by notice in writing to the Issuer (and to the Trustee if given by Securityholders), may declare the entire principal (or, if the Securities of such series are Original Issue Discount Securities, such portion of the principal amount as may be specified in the terms of such series) of all Securities of such series and the interest accrued thereon, if any, to be due and payable immediately, and upon any such declaration the same shall become immediately due and payable. If an Event of Default described in clause (d) or (i) (if the Event of Default under clause (d) or (i), as the case may be, is with respect to all series of Securities then Outstanding), (e), (g) or (h) occurs and is continuing, then and in each and every such case, unless the principal of all the Securities shall have already become due and payable, either the Trustee or the Holders of not less than 25% in aggregate principal amount of all the Securities then Outstanding hereunder (treated as one class), by notice in writing to the Issuer (and the to Trustee if given by Securityholders), may declare the entire principal (or, if any Securities are Original Issue Discount Securities, such portion of the principal of all the Securities then outstanding and interest accrued thereon, if any, to be due and payable immediately, and upon any such declaration the same shall become immediately due and payable.

The foregoing provisions, however, are subject to the condition that if, at any time after the principal (or, if the Securities are Original Issue Discount Securities, such portion of the principal as may be specified in the terms thereof) of the Securities of any series (or of all the Securities, as the case may be) shall have been so declared due and payable, and before any judgment or decree for the payment of the moneys due shall have been obtained or entered as hereinafter provided, the Issuer, Tyco or any other Guarantor shall pay or shall deposit with the Trustee a sum sufficient to pay all matured installments of interest upon all the Securities of such series (or of all the Securities, as the case may be) and the principal of any and all Securities of such series (or of all the Securities, as the case may be) which shall have become due otherwise than by acceleration (with interest upon such principal and, to the extent that payment of such interest is enforceable under applicable law, on overdue installments of interest, at the same rate

22

as the rate of interest or Yield to Maturity (in the case of Original Issue Discount Securities) specified in the Securities of such series (or at the respective rates of interest or Yields to Maturity of all the Securities, as the case may be) to the date of such payment or deposit) and such amount as shall be sufficient to cover reasonable compensation to the Trustee, its agents, attorneys and counsel, and all other expenses and liabilities incurred, and all advances made, by the Trustee except as a result of negligence or bad faith, and if any and all Events of Default under the Indenture, other than the non-payment of the principal of Securities which shall have become due by acceleration, shall have been cured, waived or otherwise remedied as provided herein -- then and in every such case the Holders of a majority in aggregate principal amount of all the Securities of such series, each series voting as a separate class (or of all the Securities, as the case may be, voting as a single class), then outstanding, by written notice to the Issuer and to the Trustee, may waive all defaults with respect to such series (or with respect to all the Securities, as the case may be) and rescind and annul such declaration and its consequences, but no such waiver or rescission and annulment shall extend to or shall affect any subsequent default or shall impair any right consequent thereon.

For all purposes under this Indenture, if a portion of the principal of any Original Issue Discount Securities shall have been accelerated and declared due and payable pursuant to the provisions hereof, then, from and after such declaration, unless such declaration has been rescinded and annulled, the principal amount of such Original Issue Discount Securities shall be deemed, for all purposes hereunder, to be such portion of the principal thereof as shall be due and payable as a result of such acceleration, and payment of such portion of the principal thereof as shall be due and payable as a result of such acceleration, together with interest, if any, thereon and all other amounts owing thereunder, shall constitute payment in full of such Original Issue Discount Securities.

SECTION 4.2 Collection of Indebtedness by Trustee; Trustee May Prove Debt. Each of the Issuer, Tyco and any other Guarantor covenants that (a) in case default shall be made in the payment of any installment of interest on any of the Securities of any series when such interest shall have become due and payable, and such default shall have continued for a period of 30 days or (b) in case default shall be made in the payment of all or any part of the principal of any of the Securities of any series when the same shall have become due and payable, whether upon maturity of the Securities of such series or upon any redemption or by declaration or otherwise -- then upon demand of the Trustee, the Issuer, Tyco and such Guarantor will pay to the Trustee for the benefit of the Holders of the Securities of such series the whole amount that then shall have become due and payable on all Securities of series for principal or interest, as the case may be (with interest to the date of such payment upon the overdue principal and to the extent that payment of such interest is enforceable under applicable law, on overdue installments of interest at the same rate as the rate of interest or Yield to Maturity (in the case of Original Issue Discount Securities) specified in the Securities of such series); and in addition thereto, such further amount as shall be sufficient to cover the costs and expenses of collection, including reasonable compensation to the Trustee and each predecessor Trustee, their respective agents, attorneys and counsel, and any expenses and liabilities incurred, and all advances made, by the Trustee and each predecessor Trustee except as a result of its negligence or bad faith.

Until such demand is made by the Trustee, the Issuer may pay the principal of and interest on the Securities of any series to the Holders, whether or not the principal of and interest on the Securities of such series be overdue.

In case the Issuer, Tyco or any other Guarantor shall fail forthwith to pay such amounts upon such demand, the Trustee, in its own name and as trustee of an express trust, shall be entitled and empowered to institute any action or proceedings at law or in equity for the

23

collection of the sums so due and unpaid, and may prosecute any such action or proceedings to judgment or final decree, and may enforce any such judgment or final decree against the Issuer, Tyco, such Guarantor or other obligor upon such Securities and collect in the manner provided by law out of the property of the Issuer, Tyco, such Guarantor or other obligor upon such Securities, wherever situated, the moneys adjudged or decreed to be payable.

In case there shall be pending proceedings relative to the Issuer, Tyco, any other Guarantor or any other obligor upon the Securities under Title 11 of the United States Code or any other applicable Federal or state bankruptcy, insolvency or other similar law, or in case a receiver, assignee or trustee in bankruptcy or reorganization, liquidator, sequestrator or similar official shall have been appointed for or taken possession of the Issuer, Tyco or such Guarantor or their respective property or such other obligor or its property, or in case of any other comparable judicial proceedings relative to the Issuer, Tyco, such Guarantor or other obligor upon the Securities of any series, or to the creditors or property of the Issuer, Tyco, such Guarantor or such other obligor, the Trustee, irrespective of whether the principal of any Securities shall then be due and payable as therein expressed or by declaration or otherwise and irrespective of whether the Trustee shall have made any demand pursuant to the provisions of this Section, shall be entitled and empowered, by intervention in such proceedings or otherwise:

    (a) to file and prove a claim or claims for the whole amount of principal and interest (or, if the Securities of any series are Original Issue Discount Securities, such portion of the principal amount as may be specified in the terms of such series) owing and unpaid in respect of the Securities of any series, and to file such other papers or documents as may be necessary or advisable in order to have the claims of the Trustee (including any claim for reasonable compensation to the Trustee and each predecessor Trustee, and their respective agents, attorneys and counsel, and for reimbursement of all expenses and liabilities incurred, and all advances made, by the Trustee and each predecessor Trustee, except as a result of negligence or bad faith) and of the Securityholders allowed in any judicial proceedings relative to the Issuer Tyco, such Guarantor or other obligor upon the Securities of any series, or to the creditors or property of the Issuer Tyco, such Guarantor or such other obligor,

    (b) unless prohibited by applicable law and regulations, to vote on behalf of the holders of the Securities of any series in any election of a trustee or a standby trustee in arrangement, reorganization, liquidation or other bankruptcy or insolvency proceedings or person performing similar functions in comparable proceedings, and

    (c) to collect and receive any moneys or other property payable or deliverable on any such claims, and to distribute all amounts received with respect to the claims of the Securityholders and of the Trustee on their behalf; and any trustee, receiver, or liquidator, custodian or other similar official is hereby authorized by each of the Securityholders to make payments to the Trustee; and, in the event that the Trustee shall consent to the making of payments directly to the Securityholders, to pay to the Trustee such amounts as shall be sufficient to cover reasonable compensation to the Trustee, each predecessor Trustee and their respective agents, attorneys and counsel, and all other expenses and liabilities incurred, and all advances made, by the Trustee and each predecessor Trustee except as a result of negligence or bad faith and all other amounts due to the Trustee or any predecessor Trustee pursuant to Section 5.6.

Nothing herein contained shall be deemed to authorize the Trustee to authorize or consent to or vote for or accept or adopt on behalf of any Securityholder any plan or reorganization, arrangement, adjustment or composition affecting the Securities of any series or

24

Source: TYCO INTERNATIONAL L, POS AM, June 09, 1998

the rights of any Holder thereof, or to authorize the Trustee to vote in respect of the claim of any Securityholder in any such proceeding except, as aforesaid, to vote for the election of a trustee in bankruptcy or similar person.

All rights of action and of asserting claims under this Indenture, or under any of the Securities, may be enforced by the Trustee without the possession of any of the Securities or the production thereof in any trial or other proceedings relative thereto, and any such action or proceedings instituted by the Trustee shall be brought in its own name as trustee of an express trust, and any recovery of judgment, subject to the payment of the expenses, disbursements and compensation of the Trustee, each predecessor Trustee and their respective agents and attorneys, shall be for the ratable benefit of the Holders of the Securities in respect of which such action was taken.

In any proceedings brought by the Trustee (and also any proceedings involving the interpretation of any provision of this Indenture to which the Trustee shall be a party), the Trustee shall be held to represent all the Holders of the Securities in respect to which such action was taken, and it shall not be necessary to make any Holders of such Securities parties to any such proceedings.

SECTION 4.3 Application of Proceeds. Any moneys collected by the Trustee pursuant to this Article in respect of any series shall be applied in the following order at the date or dates fixed by the Trustee and, in case of the distribution of such moneys on account of principal or interest, upon presentation of the several Securities in respect of which monies have been collected and stamping (or otherwise noting) thereon the payment, or issuing Securities of such series in reduced principal amounts in exchange for the presented Securities of like series if only partially paid, or upon surrender thereof if fully paid:

FIRST: To the payment of costs and expenses applicable to such series in respect of which monies have been collected, including reasonable compensation to the Trustee and each predecessor Trustee and their respective agents and attorneys and of all expenses and liabilities incurred, and all advances made, by the Trustee and each predecessor Trustee except as a result of negligence or bad faith, and all other amounts due to the Trustee or any predecessor Trustee pursuant to Section 5.6;

SECOND: In case the principal of the Securities of such series in respect of which moneys have been collected shall not have become and be then due and payable, to the payment of interest on the Securities of such series in default in the order of the maturity of the installments of such interest, with interest (to the extent that such interest has been collected by the Trustee) upon the overdue installments of interest at the same rate as the rate of interest or Yield to Maturity (in the case of Original Issue Discount Securities) specified in such Securities, such payments to be made ratably to the persons entitled thereto, without discrimination or preference;

THIRD: in case the principal of the Securities of such series in respect of which moneys have been collected shall have become and shall be then due and payable, to the payment of the whole amount then owing and unpaid upon all the Securities of such series for principal and interest, with interest upon the overdue principal, and (to the extent that such interest has been collected by the Trustee) upon overdue installments of interest at the same rate as the rate of interest or Yield to Maturity (in the case of Original Issue Discount Securities) specified in the Securities of such series; and in case such moneys shall be insufficient to pay in full the whole amount so due and unpaid upon the Securities of such series, then to the payment of such principal and interest or Yield to Maturity,

25

Source: TYCO INTERNATIONAL L, POS AM, June 09, 1998

without preference or priority of principal over interest or Yield to Maturity, or of interest or Yield to Maturity over principal, or of any installment of interest over any other installment of interest, or of any Security of such series over any other Security of such series, ratably to the aggregate of such principal and accrued and unpaid interest or Yield to Maturity; and

FOURTH: To the payment of the remainder, if any, to the Issuer or any other person lawfully entitled thereto.

SECTION 4.4 Suits for Enforcement. In case an Event of Default has occurred, has not been waived and is continuing, the Trustee may in its discretion proceed to protect and enforce the rights vested in it by this Indenture by such appropriate judicial proceedings as the Trustee shall deem most effectual to protect and enforce any of such rights, either at law or in equity or in bankruptcy or otherwise, whether for the specific enforcement of any covenant or agreement contained in this Indenture or in aid of the exercise of any power granted in this Indenture or to enforce any other legal or equitable right vested in the Trustee by this Indenture or by law.

SECTION 4.5 Restoration of Rights on Abandonment of Proceedings. In case the Trustee shall have proceeded to enforce any right under this Indenture and such proceedings shall have been discontinued or abandoned for any reason, or shall have been determined adversely to the Trustee, then and in every such case the Issuer and the Trustee shall be restored respectively to their former positions and rights hereunder, and all rights, remedies and powers of the Issuer, the Trustee and the Securityholders shall continue as though no such proceedings had been taken.

SECTION 4.6 Limitations on Suits by Securityholders. No Holder of any Security of any series shall have any right by virtue or by availing of any provision of this Indenture to institute any action or proceeding at law or in equity or in bankruptcy or otherwise upon or under or with respect to this Indenture, or for the appointment of a trustee, receiver, liquidator, custodian or other similar official or for any other remedy hereunder, unless such Holder previously shall have given to the Trustee written notice of default and of the continuance thereof, as hereinbefore provided, and unless also the Holders of not less than 25% in aggregate principal amount of the Securities of such series then outstanding shall have made written request upon the Trustee to institute such action or proceedings in its own name as trustee hereunder and shall have offered to the Trustee such reasonable indemnity as it may require against the costs, expenses and liabilities to be incurred therein or thereby and the Trustee for 60 days after its receipt of such notice, request and offer of indemnity shall have failed to institute any such action or proceeding and no direction inconsistent with such written request shall have been given to the Trustee pursuant to Section 4.9; it being understood and intended, and being expressly covenanted by the taker and Holder of every Security with every other taker and Holder and the Trustee, that no one or more Holders of Securities of any series shall have any right in any manner whatever by virtue or by availing of any provision of this Indenture to affect, disturb or prejudice the rights of any other such Holder of Securities, or to obtain or seek to obtain priority over or preference to any other such Holder or to enforce any right under this Indenture, except in the manner herein provided and for the equal, ratable and common benefit of all Holders of Securities of the applicable series. For the protection and enforcement of the provisions of this Section, each and every Securityholder and the Trustee shall be entitled to such relief as can be given either at law or in equity.

26

Source: TYCO INTERNATIONAL L, POS AM, June 09, 1998