UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

THE BANK OF NEW YORK, as Indenture Trustee,

                Plaintiff,

    v.

TYCO INTERNATIONAL GROUP S.A., TYCO INTERNATIONAL LTD., and TYCO INTERNATIONAL FINANCE S.A.,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

07 Civ. 4659 (SAS)

<u>ANSWER AND FIRST AMENDED COUNTERCLAIMS</u>

       Defendants Tyco International Group S.A. ("TIGSA"), Tyco International Ltd. ("Tyco"), and Tyco International Finance S.A. ("TIFSA") (collectively, "Defendants" or "Counterclaimants"), by their undersigned attorneys, for their Answer and First Amended Counterclaims to the First Amended Complaint, state as follows:

       1.     Defendants deny the allegations contained in Paragraph 1, except admit that Plaintiff's action purports to seek damages of over $4.1 billion for a breach of the Indentures dated as of June 9, 1998 (the "1998 Indenture") and November 12, 2003 (the "2003 Indenture") (collectively, the "Indentures").

       2.     Defendants deny the allegations contained in Paragraph 2, except admit that, at various times between 1998 and 2003, Defendants sold Notes to the public and that the terms governing the Notes are set forth in the Indentures, to which Defendants respectfully refer for their contents.

3. Defendants deny the allegations contained in Paragraph 3, except admit that on January 13, 2006, Tyco announced a plan to separate the company into three publicly traded companies and that in late June 2007, that separation was completed.

4. Defendants deny the allegations contained in Paragraph 4, except deny knowledge or information sufficient to form a belief as to what any holders of the Notes directed Plaintiff to do or not do.

5. Defendants deny the allegations contained in Paragraph 5, except admit that Defendants continue to contend that Plaintiff was obligated to sign the supplemental indentures, and that Plaintiff's complaint purports to seek a declaratory judgment that it may not provide these signatures.

6. Defendants deny the allegations contained in Paragraph 6, except admit that TIGSA initiated a tender offer and consent solicitation, and respectfully refer the Court to the Offer to Purchase and Consent Solicitation dated April 27, 2007 (the "Solicitation Documents") and to the Indentures for their contents.

7. Defendants deny the allegations contained in Paragraph 7, except to the extent it contains conclusions of law, not allegations of fact, to which no response is required.

8. Defendants deny the allegations contained in Paragraph 8, except deny knowledge or information sufficient to form a belief as to what "bondholders" "care" about.

9. Defendants deny the allegations contained in Paragraph 9.

10. Defendants deny the allegations contained in Paragraph 10.

11. Defendants deny the allegations contained in Paragraph 11.

12. Defendants deny the allegations contained in Paragraph 12, except to the extent it contains conclusions of law, not allegations of fact, to which no response is required.

13. Defendants deny the allegations contained in Paragraph 13, except deny knowledge or information sufficient to form a belief as to the Trustee's "understanding."

14. Defendants deny the allegations contained in Paragraph 14, except to the extent it contains conclusions of law, not allegations of fact, to which no response is required.

15. Defendants deny the allegations contained in Paragraph 15.

16. Defendants deny the allegations contained in Paragraph 16, and respectfully refer the Court to the Indentures for their contents.

17. Defendants deny the allegations contained in Paragraph 17, except admit that Plaintiff's first cause of action purports to seek damages in excess of $4.1 billion and Plaintiff's second cause of action purports to seek a declaratory judgment determining that the transaction was unlawful and in violation of the Indentures.

18. Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18, except admit that Plaintiff serves as Indenture Trustee under the Indentures.

19. Defendants deny the allegations contained in Paragraph 19, except admit that TIGSA is organized under the laws of Luxembourg and is a wholly-owned subsidiary of Tyco, and that Tyco is organized under the laws of Bermuda, and Defendants aver that Tyco's principal place of business is located in Bermuda. Defendants further admit that Tyco is the guarantor of the Notes issued pursuant to the 1998 and 2003 Indentures.

20. Defendants deny the allegations contained in Paragraph 20, except admit that, prior to assigning its assets to its parent, Tyco, TIGSA was a holding company that, through its subsidiaries, engaged in four major lines of business, broadly defined as an electronics business, a healthcare business, a fire and security business, and an engineered products and services

business, and that, subsequent to the separation transaction, these businesses are now operated by three separate public companies.

21.     Defendants deny the allegations contained in Paragraph 21, except admit that TIFSA is a Luxembourg corporation that is now a wholly-owned subsidiary of Tyco with its principal place of business in Luxembourg, and admit that, when TIFSA was a wholly-owned subsidiary of TIGSA, TIGSA transferred its fire and security and engineered products and services businesses to TIFSA.  Defendants also admit that TIFSA is now a co-obligor on the Notes.

22.     Defendants deny the allegations contained in Paragraph 22, except admit that Tyco Electronics, Ltd. ("Tyco Electronics") is a Bermuda corporation and aver that its principal place of business is located in Bermuda.  Defendants further admit that Tyco Electronics Group S.A. ("TEGSA") is a wholly-owned subsidiary of Tyco Electronics, and that it is a Luxembourg corporation with its principal place of business in Luxembourg.  Defendants further admit that, when Tyco Electronics was a wholly-owned subsidiary of TIGSA, TIGSA transferred its electronics business to Tyco Electronics, and that, at the end of the separation transaction, shares of Tyco Electronics were distributed to Tyco's shareholders.

23.     Defendants deny the allegations contained in Paragraph 23, except admit that Covidien Ltd. ("Covidien") is a Bermuda corporation and aver that its principal place of business is located in Bermuda.  Defendants further admit that Covidien International Finance S.A. ("CIFSA") is a wholly-owned subsidiary of Covidien, and that it is a Luxembourg corporation with its principal place of business in Luxembourg.  Defendants further admit that, when Covidien was a wholly-owned subsidiary of TIGSA, TIGSA transferred its healthcare business

4

to Covidien, and that, at the end of the separation transaction, shares of Covidien were distributed to Tyco's shareholders.

24. Defendants admit that jurisdiction exists over the subject matter of this action.

25. Defendants admit that venue in this district is proper.

26. Defendants admit the allegations contained in Paragraph 26.

27. Defendants admit the allegations in Paragraph 27.

28. Defendants deny the allegations contained in Paragraph 28, except admit that TIGSA issued certain notes pursuant to the 2003 Indenture.

29. Defendants deny the allegations contained in Paragraph 29, except respectfully refer the Court to the Indentures for their contents.

30. Defendants deny the allegations contained in Paragraph 30, except respectfully refer the Court to the Indentures for their contents.

31. Defendants deny the allegations contained in Paragraph 31, except respectfully refer the Court to the Indentures for their contents.

32. For their response to Paragraph 32, Defendants aver that TIGSA issued certain notes pursuant to the 1998 Indenture in the approximate aggregate amount of $4,600,000,000 (along with additional notes that had been issued but were no longer outstanding at the time of the relevant events herein), and that TIGSA issued certain notes pursuant to the 2003 Indenture in the approximate aggregate amount of $1,000,000,000.

33. For their response to Paragraph 33, Defendants respectfully refer the Court to the Indentures for their contents.

34. Defendants deny the allegations contained in Paragraph 34, except to the extent it contains conclusions of law, not allegations of fact, to which no response is required.

35. Defendants deny the allegations contained in Paragraph 35, except admit that on January 13, 2006, Tyco announced a plan to separate into three publicly traded companies.

36. Defendants deny the allegations contained in Paragraph 36, except respectfully refer the Court to the Solicitation Documents for their contents.

37. Defendants deny the allegations contained in Paragraph 37, except respectfully refer the Court to the Solicitation Documents for their contents.

38. Defendants deny the allegations contained in Paragraph 38, except respectfully refer the Court to the Solicitation Documents for their contents.

39. Defendants deny the allegations contained in Paragraph 39, except respectfully refer the Court to the Solicitation Documents for their contents.

40. Defendants deny the allegations contained in Paragraph 40.

41. Defendants deny the allegations contained in Paragraph 41.

42. Defendants deny the allegations contained in Paragraph 42, except admit that on May 9, 2007, AIG Global Investment Corp., which purported to hold certain notes issued by TIGSA, commenced an action seeking a declaratory judgment and injunctive relief relating to the separation, that TIGSA issued a disclosure, and that the action was voluntarily dismissed by the plaintiff on May 25, 2007.

43. Defendants deny the allegations contained in Paragraph 43.

44. Defendants deny the allegations contained in Paragraph 44.

45. Defendants deny the allegations contained in Paragraph 45.

46. Defendants deny the allegations contained in Paragraph 46.

47. Defendants deny the allegations contained in Paragraph 47, except admit that TIGSA transferred the stock of TIFSA, Tyco Electronics and Covidien to Tyco, at the same time as Tyco assumed TIGSA's obligations on the Notes and under the Indentures.

48. Defendants deny the allegations contained in Paragraph 48.

49. Defendants deny the allegations contained in Paragraph 49, except to the extent it contains conclusions of law, not allegations of fact, to which no response is required.

50. Defendants deny the allegations contained in Paragraph 50.

51. Defendants deny the allegations contained in Paragraph 51.

52. Defendants deny the allegations contained in Paragraph 52, except admit that TIGSA's electronics and healthcare businesses were not "all or substantially all" of its assets.

53. Defendants deny the allegations contained in Paragraph 53, except respectfully refer the Court to the offering documents relating to the issuance of the Notes for their contents.

54. Defendants deny the allegations contained in Paragraph 54, except respectfully refer the Court to the Solicitation Documents for their contents.

55. Defendants deny the allegations contained in Paragraph 55.

56. Defendants deny the allegations contained in Paragraph 56, except respectfully refer the Court to the referenced "report" for its contents.

57. Defendants deny the allegations contained in Paragraph 57, except respectfully refer the Court to the referenced "report" for its contents.

58. Defendants deny the allegations contained in Paragraph 58, except respectfully refer the Court to the referenced "report" for its contents.

59. Defendants deny the allegations contained in Paragraph 59, except respectfully refer the Court to the referenced "report" for its contents and deny knowledge or information

7

sufficient to form a belief as to the truth of the allegations concerning what the "private equity market" has done.

60. Defendants deny the allegations contained in Paragraph 60.

61. Defendants deny the allegations contained in Paragraph 61, except respectfully refer the Court to Tyco's reported financial statements with respect to the historical financial results of its various businesses.

62. Defendants deny the allegations contained in Paragraph 62, except respectfully refer the Court to Tyco's reported financial statements with respect to the historical financial results of its various businesses.

63. Defendants deny the allegations contained in Paragraph 63.

64. Defendants deny the allegations contained in Paragraph 64.

65. For their response to Paragraph 65, Defendants incorporate by reference Paragraphs 1 through 64 of this Answer.

66. For their response to Paragraph 66, Defendants admit that the Indentures are valid and enforceable contracts, but aver that TIGSA is no longer a party to those contracts.

67. Paragraph 67 contains conclusions of law to which no response is required. To the extent that a response is required, Defendants respectfully refer the Court to the Indentures for their contents.

68. Defendants deny the allegations contained in Paragraph 68.

69. Defendants deny the allegations contained in Paragraph 69, except to the extent that it contains conclusions of law, not allegations of fact, to which no response is required.

70. Defendants deny the allegations contained in Paragraph 70.

71. Defendants deny the allegations contained in Paragraph 71.

72. Defendants deny the allegations contained in Paragraph 72.

73. Defendants deny the allegations contained in Paragraph 73, except to the extent that it contains conclusions of law, not allegations of fact, to which no response is required.

74. Defendants deny the allegations contained in Paragraph 74.

75. For their response to Paragraph 75, Defendants incorporate by reference Paragraphs 1 through 74 of this Answer.

76. Defendants deny the allegations contained in Paragraph 76.

77. Defendants deny the allegations contained in Paragraph 77.

78. For their response to Paragraph 78, Defendants incorporate by reference Paragraphs 1 through 77 of this Answer.

79. For their response to Paragraph 79, Defendants respectfully refer the Court to the Indentures for their contents.

80. Defendants deny the allegations contained in Paragraph 80.

## GENERAL DENIAL

81. Except as otherwise expressly recognized in Paragraphs 1 through 80 above, Defendants deny each and every allegation contained in Paragraphs 1 through 80, including, without limitation, the headings contained in the Complaint. Pursuant to Rule 8(d) of the Federal Rules of Civil Procedure, averments in the Complaint to which no responsive pleading is required shall be deemed denied. Defendants expressly reserve the right to amend and/or supplement their Answer.

## AFFIRMATIVE DEFENSES

82. The statement of any defense hereinafter does not assume the burden of proof for any issue as to which applicable law places the burden upon the Plaintiff. Defendants expressly reserve the right to amend and/or supplement their affirmative and other defenses.

## FIRST AFFIRMATIVE DEFENSE

83. The complaint fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

84. There is no legal basis for the Plaintiff to refuse to execute the proposed supplemental indentures.

## THIRD AFFIRMATIVE DEFENSE

85. Plaintiff's claims are barred, in whole or in part, by the doctrine of estoppel.

## FOURTH AFFIRMATIVE DEFENSE

86. Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver.

## FIFTH AFFIRMATIVE DEFENSE

87. There is nothing in the Indentures that prohibited Defendants from engaging in the transactions at issue, and the transactions were not in any way conditioned on the success of the tender offer or consent solicitation, or on the execution by Plaintiff of the supplemental indentures.

## SIXTH AFFIRMATIVE DEFENSE

88. Plaintiff's claims are barred, in whole or in part, because Plaintiff's own conduct caused the alleged breach.

## SEVENTH AFFIRMATIVE DEFENSE

89. Plaintiff's claims are barred, in whole or in part, due to Plaintiff's material breach of the Indentures, thereby discharging Defendants' duties under the Indentures.

## FIRST AMENDED COUNTERCLAIMS

**A.    The Parties**

90. Counterclaimant Tyco is organized under the laws of Bermuda with its principal place of business located in Bermuda.

91. Counterclaimant TIFSA is organized under the laws of Luxembourg with its principal place of business located in Luxembourg.

92. Upon information and belief, Counterclaim Defendant The Bank of New York ("BONY" or the "Trustee") is a New York banking corporation with its principal place of business in New York, New York.

**B.    Jurisdiction & Venue**

93. This Court has jurisdiction over these counterclaims, pursuant to 28 U.S.C. §§ 1332 and 1367. These counterclaims are between a citizen of a State and a citizen or subject of a foreign state, and involve an amount-in-controversy that exceeds the sum or value of $75,000. In addition, this Court has jurisdiction supplemental to the jurisdiction over the underlying action.

94. Venue in this district is proper pursuant to 28 U.S.C. § 1391(a).

**C.    Facts**

95. BONY is Indenture Trustee under Indentures dated June 9, 1998 and November 12, 2003 (the "Indentures"), with TIGSA initially named as Issuer and Counterclaimant Tyco initially named as Guarantor. As described below, Tyco subsequently assumed all of TIGSA's obligations under the Indenture, and Counterclaimant TIFSA agreed to become a co-obligor on the Notes that were issued pursuant to the Indentures.

96. The Indentures contain standard successor obligor clauses that prohibit the Issuer and the Guarantor from disposing of "all or substantially all" of their assets unless the entity acquiring the assets assumes the Issuer's or Guarantor's liabilities under the Indentures.

97. In May and June 2007, Counterclaimants and TIGSA consummated a series of transactions (the "Spin-Off Transaction") in which (i) TIFSA agreed to become a co-obligor on the Notes, (ii) TIGSA transferred all of its assets to Tyco and Tyco assumed all of TIGSA's

11

obligations under the Indentures and on the Notes, and (iii) two of Tyco's businesses were spun off to its shareholders by way of a dividend.

98. Counterclaimants and TIGSA executed and delivered to BONY two supplemental indentures under each of the 1998 and 2003 Indentures – one evidencing TIFSA's agreement to become a co-obligor on the Notes, and one evidencing Tyco's assumption of TIGSA's obligations under the Indentures. Counterclaimants and TIGSA also delivered to BONY all other documents required under the Indentures in connection with such supplemental indentures.

99. Under the terms of the Indentures, BONY was obligated to execute the supplemental indentures.

100. BONY refused to execute the supplemental indentures, instead commencing this action, claiming that it was instructed not to execute the supplemental indentures by a group of Noteholders. Under the terms of the Indentures, however, the consent of Noteholders was not required in order for BONY to execute the supplemental indentures, and also was not required in order for Counterclaimants and TIGSA to carry out the Spin-Off Transaction. BONY had and has no legal justification for its refusal to execute the supplemental indentures.

101. At the time that it refused to execute the supplemental indentures, BONY did not declare a default under the Indentures, and it did not believe that a default had occurred.

102. Until the filing of the First Amended Complaint, BONY took no position regarding the legality of either the supplemental indentures or the Spin-Off Transaction.

103. On November 8, 2007, after the filing of the First Amended Complaint and more than four months after completion of the Spin-Off Transaction, BONY delivered a Notice of Default under the Indentures.

104. Upon information and belief, at the time it filed the First Amended Complaint and at the time it delivered a Notice of Default, BONY had no reasonable basis to believe, and did not believe in good faith, that the supplemental indentures and the Spin-Off Transaction were prohibited by the terms of the Indentures or that a default had occurred.

105. BONY's wrongful delivery of a Notice of Default created a risk that Counterclaimants' bank lenders would be able to demand repayment of amounts outstanding under Counterclaimants' bank and letter of credit facilities and to terminate their commitments to extend additional credit thereunder. Accordingly, Counterclaimants secured renewed bridge facility commitments and incurred costs in doing so.

106. BONY has also violated the Indentures by attempting to misappropriate money from interest payments that were due to Noteholders.

107. On or about November 9, 2007, BONY directed The Depository Trust Company Clearing Corporation ("DTC"), the registered holder of the Notes, to withhold $3.25 million from interest payments that were to be distributed to the beneficial owners of the Notes. According to BONY, this $3.25 million was to be used as a "reserve" for fees and costs that the Trustee had not yet incurred. Under the terms of the Indentures, the Trustee has no right to collect a "reserve" by misappropriating money rightfully belonging to the Noteholders.

108. Because Counterclaimants were concerned about BONY's lack of good faith and intent to misappropriate money rightfully belonging to Noteholders, Counterclaimants arranged to make the interest payment due on November 15, 2007 directly to DTC, rather than allowing it to pass through BONY, thereby risking misappropriation. Counterclaimants' concerns were confirmed when, shockingly, BONY threatened to sue DTC if DTC distributed the full amount

13

of the interest payment to the beneficial owners.  DTC only agreed to distribute the full payment when Counterclaimants advanced additional money to DTC.

109.   BONY's attempt to claw back a portion of the Noteholders' interest payments that had been paid to DTC, the record holder of the Notes, for its own benefit is a fundamental breach of its obligations as Trustee under the Indentures.  Absent injunctive relief, BONY will likely renew its attempt to take money from the Noteholders at the time of each interest payment, thereby causing irreparable injury to Counterclaimants.

**FIRST COUNTERCLAIM**
**(BREACH OF CONTRACT)**

110.   Counterclaimants repeat and reallege the allegations contained in Paragraphs 90 through 109 as if fully set forth herein.

111.   The Indentures are valid and enforceable contracts.

112.   Counterclaimants have performed all of their obligations under the Indentures.

113.   The Indentures require that BONY, as indenture trustee, join Counterclaimants in the execution of any supplemental indenture that is authorized by the Indentures, and that does not affect the Trustee's own rights, duties or immunities.

114.   The supplemental indentures delivered to BONY were authorized by the terms of the Indentures.

115.   Nevertheless, BONY, without legal excuse, refused to execute the supplemental indentures.

116.   BONY's refusal to execute the supplemental indentures constitutes a breach of the 1998 Indenture and the 2003 Indenture.

117.   As a result of BONY's breach of contract, Counterclaimants have suffered damages in an amount to be determined at trial.

**SECOND COUNTERCLAIM**
**(BREACH OF CONTRACT)**

118. Counterclaimants repeat and reallege the allegations contained in Paragraphs 90 through 117 as if fully set forth herein.

119. The Indentures do not entitle BONY to collect money out of interest payments due to the Noteholders to form a "reserve" for costs and expenses not yet incurred.

120. To the contrary, the Indentures require the Trustee to hold funds in trust for the purposes for which they were received; thus, any interest payments that pass through the Trustee cannot be used for any purpose other than payment of interest to the Noteholders.

121. BONY's efforts to collect a "reserve" out of interest payments made to the record holder of the Notes for payment due to beneficial owners of the Notes, including holders who have not instructed the Trustee to take any action, constitute a breach of the 1998 Indenture and the 2003 Indenture.

122. As a result of BONY's breach of contract, Counterclaimants have suffered damages in an amount to be determined at trial.

123. In addition, interest payments are due on certain Notes on December 15, 2007, and at various times thereafter. BONY's continuing threat to take money belonging to the Noteholders threatens irreparable injury to Counterclaimants, including reputational and other harms, as to which an award of monetary damages alone cannot fully compensate Counterclaimants and they lack an adequate remedy at law. Therefore, Counterclaimants are entitled to specific performance and preliminary and permanent injunctive relief, including removal of BONY as Trustee under the Indentures.

## THIRD COUNTERCLAIM
### (BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING)

124.   Counterclaimants repeat and reallege the allegations contained in Paragraphs 90 through 123 as if fully set forth herein.

125.   There is, implied by law into the Indentures, a covenant of good faith and fair dealing.  BONY has breached the covenant of good faith and fair dealing by (i) its continued refusal to sign the supplemental indentures without legal justification, (ii) filing the First Amended Complaint and later delivering a Notice of Default despite its lack of good faith belief that the supplemental indentures and the Spin-Off Transaction were prohibited by the terms of the Indentures or that a default has occurred, and (iii) attempting to misappropriate portions of interest payments due to the Noteholders.

126.   As a result of BONY's breach of the duty of good faith and fair dealing, Counterclaimants have suffered damages in an amount to be determined at trial.  These damages include costs incurred by Counterclaimants in securing bridge facility commitments necessary to mitigate BONY's wrongful delivery of a Notice of Default.

127.   In addition, BONY's continuing threat to misappropriate money belonging to the Noteholders threatens irreparable injury to Counterclaimants, including reputational and other harms, as to which an award of monetary damages alone cannot fully compensate Counterclaimants and they lack an adequate remedy at law.  Therefore, Counterclaimants are entitled to specific performance and preliminary and permanent injunctive relief, including removal of BONY as Trustee under the Indentures.

## FOURTH COUNTERCLAIM
### (DECLARATORY JUDGMENT)

128.   Counterclaimants repeat and reallege the allegations contained in Paragraphs 90 through 127 as if fully set forth herein.

129. Because the Spin-Off Transaction was lawful and permitted under the Indentures, Counterclaimants are entitled to a judgment declaring that no default under the Indentures has occurred and that BONY is required by law and under the Indentures to sign the supplemental indentures.

130. Counterclaimants are further entitled to a judgment declaring that BONY has no right to collect any costs or expenses out of interest payments due to Noteholders, and that BONY should be removed as Trustee under the Indentures.

WHEREFORE, Defendants and Counterclaimants respectfully request that this Court enter judgment:

(1) dismissing the Complaint with prejudice;

(2) declining to enter the declaratory relief requested by Plaintiff;

(3) awarding Counterclaimants Tyco and TIFSA damages in an amount to be determined at trial;

(4) granting specific performance and preliminary and permanent injunctive relief prohibiting BONY from collecting any costs or expenses out of interest payments due to Noteholders, and removing BONY as Trustee under the Indentures;

(5) declaring that no default under the Indentures has occurred, that Plaintiff has no legal basis to refuse to execute the supplemental indentures, that there was nothing that prohibited Defendants from engaging in the Spin-Off Transaction, that BONY has no right to collect any costs or expenses out of interest payments due to Noteholders, and that BONY should be removed as Trustee under the Indentures;

(6) awarding Defendants their costs, expenses, and reasonable attorneys' fees; and

(7) awarding such other and further relief as the Court deems just and appropriate.

Dated: New York, New York
December 4, 2007

                    GIBSON, DUNN & CRUTCHER LLP


                    By:    /s/ Marshall R. King
                         Wesley G. Howell (WH-8660)
                         Marshall R. King (MK-1642)

                    200 Park Avenue, 47th Floor
                    New York, New York 10166-0193
                    (212) 351-4000

                    Attorneys for Defendants and
                    Counterclaimants