**EXHIBIT A**

QuickLinks -- Click here to rapidly navigate through this document

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

# FORM 10-K

**(Mark One)**

☒    **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the fiscal year ended September 29, 2006**

**OR**

☐    **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**001-13836**
**(Commission File Number)**

# TYCO INTERNATIONAL LTD.
### (Exact name of registrant as specified in its charter)

| | |
|---|---|
| **Bermuda** | **98-0390500** |
| (Jurisdiction of Incorporation) | (IRS Employer Identification No.) |

**Second Floor, 90 Pitts Bay Road, Pembroke HM 08, Bermuda**
(Address of registrant's principal executive office)

**441-292-8674**
(Registrant's telephone number)

**Securities registered pursuant to Section 12(b) of the Act:**

| **Title of each class** | **Name of each exchange on which registered** |
|---|---|
| Common Shares, Par Value $0.20 | New York Stock Exchange |

**Securities registered pursuant to Section 12(g) of the Act: None**

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act.    Yes ☒ No ☐

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act.    Yes ☐ No ☒

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.    Yes ☒ No ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III or this Form 10-K or any amendment to this Form 10-K.    ☐.

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, or a non-accelerated filer. See definition of "accelerated filer" and "large accelerated filer" in Rule 12b-2 of the Exchange Act (check one):
Large accelerated filer    ☒    Accelerated filer    ☐    Non-accelerated filer    ☐

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act).    Yes ☐ No ☒

The aggregate market value of voting common shares held by nonaffiliates of registrant was approximately $54,132,579,729 as of March 31, 2006.

The number of common shares outstanding as of December 6, 2006 was 1,988,853,457.

## DOCUMENTS INCORPORATED BY REFERENCE

Source: TYCO INTERNATIONAL L, 10-K, December 11, 2006

Portions of the registrant's proxy statement filed within 120 days of the close of the registrant's fiscal year in connection with the registrant's 2007 annual general meeting of shareholders are incorporated by reference into Part III of this Form 10-K.

See pages 78 to 84 for the exhibit index.

Source: TYCO INTERNATIONAL L, 10-K, December 11, 2006

PART I

**Item 1.   Business**

**General**

Tyco International Ltd. ("we," "Tyco" or the "Company") is a diversified manufacturing and service company that, through its subsidiaries:

- designs, manufactures and distributes electrical and electronic components and related solutions;

- designs, manufactures, installs, monitors and services electronic security and fire protection systems;

- designs, manufactures and distributes medical devices and supplies, imaging agents, pharmaceuticals and adult incontinence and infant care products; and

- designs, manufactures, distributes and services engineered products, including industrial valves and controls, as well as steel tubular goods, and provides consulting, engineering and construction management and operating services.

Tyco International Ltd., which is organized under the laws of Bermuda, was created as a result of the July 1997 acquisition of Tyco International Ltd., a Massachusetts corporation, by ADT Limited, a public company organized under the laws of Bermuda, at which time ADT Limited changed its name to Tyco International Ltd.

Unless otherwise indicated, references in this Annual Report to 2006, 2005 and 2004 are to Tyco's fiscal year ended September 29, 2006, September 30, 2005 and September 30, 2004, respectively.

**Strategy**

As previously reported in our periodic filings, on January 13, 2006, the Company announced that its Board of Directors approved a plan to separate the Company into three separate, publicly traded companies—Tyco Healthcare, one of the world's leading diversified healthcare companies; Tyco Electronics, the world's largest passive electronic components manufacturer; and a combination of Tyco Fire and Security and Engineered Products and Services, a global business with leading positions in residential and commercial security, fire protection and industrial products and services (the "Proposed Separation"). After thorough reviews of strategic options with our Board of Directors, we believe that this strategy is the best way to position our market-leading companies for sustained growth and value creation.

Consummation of the Proposed Separation is subject to certain conditions, including final approval by the Tyco Board of Directors, receipt of certain tax rulings, necessary opinions of counsel, the filing and effectiveness of registration statements with the Securities and Exchange Commission ("SEC") and the completion of any necessary debt refinancings. Approval by the Company's shareholders is not required as a condition to the consummation of the Proposed Separation. Tyco has received an initial private letter ruling from the Internal Revenue Service ("IRS") regarding the U.S. federal income tax consequences of the Proposed Separation noting it will qualify for favorable tax treatment. Tyco expects to file Registration Statements in connection with the Proposed Separation during the second quarter of 2007. Following the Proposed Separation, Tyco's shareholders will own 100% of the equity in all three companies through tax-free stock dividends.

We are also focused on growing profitability within each of these companies so that each may be well positioned for long-term growth as independent businesses. Following the Proposed Separation, we expect that all three companies will be dividend-paying companies. As we prepare for the Proposed Separation, we remain committed to returning excess cash to shareholders and will complete the

Source: TYCO INTERNATIONAL L, 10-K, December 11, 2006

remainder of the $2.0 billion share repurchase program that was approved by the Board of Directors in May 2006.

We are a high-quality, low-cost producer and provider in each of the markets we serve. We promote our leadership positions by investing in existing businesses and developing new markets. Our business strategy focuses on enhancing internal growth and operational efficiency primarily through new product innovation, increased market share, and continued geographic expansion. We have implemented and will continue to implement additional Six Sigma initiatives across our businesses to achieve best-in-class operating practices. We also remain committed to being a leader in corporate governance so that we can maintain the respect and confidence of our shareholders, employees, suppliers and customers as well as the financial community.

Over the past several years, the Company has engaged in a series of restructuring programs through which we have made our operations more efficient, including exiting certain non-core businesses or business lines and streamlining general operations. During 2006, we completed the sale of our Plastics and Adhesives segment and entered into a definitive agreement to sell the Printed Circuit Group ("PCG") business, a business of the Electronics segment. As such, the operations of the Plastics and Adhesives segment and PCG are reflected as discontinued operations in the Consolidated Financial Statements.

To further improve operating efficiency, during the first quarter of 2007, we have launched a restructuring program across all segments including the corporate organization which will streamline some of the businesses and reduce our operational footprint. We expect to incur charges of approximately $600 million over the next two years, of which $500 million is expected to be incurred in 2007. We expect that the total cash expenditures for this program will be approximately $450 million, of which $250 million is expected in 2007. We believe this restructuring program will strengthen our competitive position over the long term.

## Segments

See Note 23 to the Consolidated Financial Statements for certain segment and geographic financial data relating to our business.

## I.  Electronics

Tyco is the world's leading supplier of passive electronic components. With 2006 net revenue of $12.7 billion, our Electronics businesses comprise 31% of our consolidated net revenue. In 2005 and 2004, net revenue totaled $11.8 billion or 30% of our consolidated net revenue and $11.4 billion or 30% of our consolidated net revenue, respectively. The group's products and services include:

- designing, engineering and manufacturing electronic/electrical connector systems, fiber optic components, wireless devices including private radio systems and radar sensors, heat shrink products, circuit protection devices, magnetic devices, wire and cable, relays, sensors, touch screens, identification and labeling products, power systems and components, electronic modules, application tooling, switches and battery assemblies.

Tyco Electronics consists of four business units: Electronic Components, Wireless, Power Systems and Submarine Telecommunications.

With the exception of Submarine Telecommunications, these businesses design, manufacture and market a broad range of electronic, electrical and electro-optic passive and active devices and a number of interconnection systems and connector-intensive assemblies, as well as wireless products including radar sensors, global positioning satellite systems components, private radio systems, silicon and gallium arsenide semiconductors and microwave sub-systems. These products have potential uses wherever an electronic, electrical, computer or telecommunications system is involved. Products are sold under the

2

Source: TYCO INTERNATIONAL L, 10-K, December 11, 2006

| | 2006 | 2005 (Restated) | 2004 (Restated) |
|---|---|---|---|
| **Operating income:** | | | |
| Electronics | $ 1,808 | $ 1,849 | $ 1,744 |
| Fire and Security | 1,190 | 1,216 | 899 |
| Healthcare | 2,200 | 2,286 | 2,365 |
| Engineered Products and Services | 676 | 672 | 620 |
| Corporate [(1)(2)] | (400) | (255) | (482) |
| | $ 5,474 | $ 5,768 | $ 5,146 |

[(1)]     Includes gain on sale of the TGN of $301 million in 2005. In addition, includes TGN operating loss of $54 million and $73 million in 2005 and 2004, respectively, prior to the disposition. Also includes general overhead expenses previously allocated to the Plastics and Adhesives segment of $3 million in 2006 and $12 million in 2005 and 2004.

[(2)]     Operating income for 2005 and 2004 has been restated to reflect additional compensation expense of $24 million and $85 million, respectively, related to the review of prior period stock option grant practices and equity plan compliance. See Note 1.

Net revenue by groups of products within Tyco's segments for 2006, 2005 and 2004 is as follows ($ in millions):

| | 2006 | 2005 | 2004 |
|---|---|---|---|
| **Net revenue by groups of products:** | | | |
| Electronic Components | $ 11,041 | $ 10,203 | $ 9,485 |
| Wireless | 871 | 870 | 835 |
| Electrical Contracting Services | — | — | 353 |
| Power Systems | 513 | 447 | 492 |
| Submarine Telecommunications | 299 | 254 | 206 |
| Electronics | 12,724 | 11,774 | 11,371 |
| Electronic Security Services | 6,956 | 6,838 | 6,770 |
| Fire Protection Contracting and Services | 4,697 | 4,665 | 4,677 |
| Fire and Security | 11,653 | 11,503 | 11,447 |
| Medical Devices & Supplies | 7,573 | 7,549 | 7,124 |
| Retail | 855 | 830 | 912 |
| Pharmaceuticals | 1,213 | 1,164 | 1,074 |
| Healthcare | 9,641 | 9,543 | 9,110 |
| Flow Control and Fire & Building Products | 3,815 | 3,418 | 3,037 |
| Electrical & Metal Products | 1,867 | 1,745 | 1,545 |
| Infrastructure Services | 1,260 | 1,293 | 1,425 |
| Engineered Products and Services | 6,942 | 6,456 | 6,007 |
| Corporate [(1)] | — | 29 | 25 |
| | $ 40,960 | $ 39,305 | $ 37,960 |

[(1)]     Related to the TGN business.

152

Source: TYCO INTERNATIONAL L, 10-K, December 11, 2006

**EXHIBIT B**

AS FILED WITH THE SECURITIES AND EXCHANGE COMMISSION ON FEBRUARY 25, 1999

REGISTRATION NOS. 333-71493 AND 333-71493-01

--------------------------------------------------------------------------
--------------------------------------------------------------------------

SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549
-------------------------------

AMENDMENT NO. 2
TO
FORM S-4

REGISTRATION STATEMENT
UNDER
THE SECURITIES ACT OF 1933
-------------------------------

7382

(Primary Standard Industrial
Classification Code Number)

| TYCO INTERNATIONAL LTD. | TYCO INTERNATIONAL GROUP S.A. |
|---|---|
| (Exact name of registrant as specified in its charter) | (Exact name of registrant as specified in its charter) |
| BERMUDA | LUXEMBOURG |
| (State or other jurisdiction of incorporation or organization) | (State or other jurisdiction of incorporation or organization) |
| NOT APPLICABLE | NOT APPLICABLE |
| (IRS Employer Identification No.) | (IRS Employer Identification No.) |
| THE GIBBONS BUILDING 10 QUEEN STREET, SUITE 301 HAMILTON HM11, BERMUDA (441) 292-8674 | 6, AVENUE EMILE REUTER SECOND FLOOR L-2420 LUXEMBOURG (352) 46-43-40-1 |
| (Address, including zip code, and telephone number, including area code, of registrant principal executive offices) | (Address, including zip code, and telephone number, including area code, of registrant principal executive offices) |

-------------------------------

MARK H. SWARTZ
C/O TYCO INTERNATIONAL (US) INC.
ONE TYCO PARK
EXETER, NEW HAMPSHIRE 03833
(603) 778-9700
(Name, address, including zip code, and telephone number,
including area code, of agent for service)
-------------------------------

* Tyco International Ltd. maintains its registered and principal executive
offices at the Gibbons Building, 10 Queen Street, Suite 301, Hamilton HM 11
Bermuda. The executive offices of Tyco's principal U.S. subsidiary, Tyco
International (US) Inc., are located at One Tyco Park, Exeter, New Hampshire
03833. The telephone number there is (603) 778-9700.
-------------------------------

COPY TO:

JOSHUA M. BERMAN, ESQ.
ABBE L. DIENSTAG, ESQ.
KRAMER LEVIN NAFTALIS & FRANKEL LLP
919 THIRD AVENUE
NEW YORK, NEW YORK 10022
(212) 715-9100
-------------------------------

APPROXIMATE DATE OF COMMENCEMENT OF PROPOSED SALE TO THE PUBLIC:  As soon as
practicable after expiration of the exchange offer described herein.

If the securities being registered on this Form are being offered in
connection with the formation of a holding company and there is compliance with
General Instruction G, check the following box. / /

If this form is filed to register additional securities for an offering
pursuant to Rule 462(b) under the Securities Act, check the following box and
list the Securities Act registration statement number of the earlier effective

Source: TYCO INTERNATIONAL L, S-4/A, February 25, 1999

registration statement for the same offering. / / _____

If this form is a post-effective amendment filed pursuant to Rule 462(d) under the Securities Act, check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering. / / _____
                        ------------------------------

THE REGISTRANT HEREBY AMENDS THIS REGISTRATION STATEMENT ON SUCH DATE OR DATES AS MAY BE NECESSARY TO DELAY ITS EFFECTIVE DATE UNTIL THE REGISTRANT SHALL FILE A FURTHER AMENDMENT WHICH SPECIFICALLY STATES THAT THIS REGISTRATION STATEMENT SHALL THEREAFTER BECOME EFFECTIVE IN ACCORDANCE WITH SECTION 8(A) OF THE SECURITIES ACT OF 1933 OR UNTIL THE REGISTRATION STATEMENT SHALL BECOME EFFECTIVE ON SUCH DATE AS THE COMMISSION, ACTING PURSUANT TO SAID SECTION 8(A), MAY DETERMINE.

- ----------------------------------------------------------------------------
- ----------------------------------------------------------------------------

SUBJECT TO COMPLETION, DATED FEBRUARY 25, 1999

PROSPECTUS

$800,000,000
TYCO INTERNATIONAL GROUP S.A.
OFFER TO EXCHANGE
UP TO $400,000,000 5.875% NOTES DUE 2004
FOR ANY AND ALL OUTSTANDING 5.875% NOTES DUE 2004
AND
UP TO $400,000,000 6.125% NOTES DUE 2008
FOR ANY AND ALL OUTSTANDING 6.125% NOTES DUE 2008
FULLY AND UNCONDITIONALLY GUARANTEED BY

[LOGO]

Summary of the Exchange Offer

This document and accompanying Letters of Transmittal relate to the proposed
offer by Tyco International Group S.A. (the "Company") to exchange up to
$400,000,000 aggregate principal amount of new 5.875% notes due 2004 for any and
all of its outstanding 5.875% notes due 2004 and up to $400,000,000 aggregate
principal amount of new 6.125% notes due 2008 for any and all of its outstanding
6.125% notes due 2008. The new notes of each series, which are referred to as
the "Exchange Notes," will be freely transferable. The outstanding notes of each
series, which are referred to as the "Restricted Notes," have certain transfer
restrictions.

The Restricted Notes are, and the Exchange Notes will be, unsecured and
unsubordinated obligations of the Company that are fully and unconditionally
guaranteed on an unsecured and unsubordinated basis by Tyco International Ltd.
("Tyco"), the Company's corporate parent.

- The exchange offer expires 5:00 p.m. New York City time on March   , 1999,
  unless extended.

- All Restricted Notes that are tendered and not withdrawn will be exchanged
  promptly upon consummation of the exchange offer.

- There should be no United States federal income tax consequences to
  holders of Restricted Notes who exchange Restricted Notes for Exchange
  Notes pursuant to the exchange offer.

- Holders of Restricted Notes do not have any appraisal or dissenters'
  rights in connection with the exchange offer. Restricted Notes not
  exchanged in the exchange offer will remain outstanding and be entitled to
  the benefits of the indenture under which they were issued, but except
  under certain circumstances will not have further exchange or registration
  rights.

- The Company does not intend to apply for listing of the Exchange Notes on
  any securities exchange or to arrange for them to be quoted on any
  quotation system.

Each holder of Restricted Notes wishing to accept the exchange offer must
deliver the Restricted Notes to be exchanged, together with the appropriate
Letters of Transmittal that accompanies this document and any other required
documentation, to the exchange agent identified in this document. Alternatively,
you may effect a tender of Restricted Notes by book-entry transfer into the
exchange agent's account at the Depository Trust Company. All deliveries are at
the risk of the holder. You can find detailed instructions concerning delivery
in the "Exchange Offer" section of this document and in the accompanying Letters
of Transmittal.

---------------------------

NEITHER THE SECURITIES AND EXCHANGE COMMISSION NOR ANY STATE SECURITIES
COMMISSION HAS APPROVED OR DISAPPROVED OF THE EXCHANGE NOTES OR DETERMINED IF
THIS DOCUMENT IS TRUTHFUL OR COMPLETE. ANY REPRESENTATION TO THE CONTRARY IS A
CRIMINAL OFFENSE.

YOU SHOULD READ THIS ENTIRE DOCUMENT AND ACCOMPANYING LETTERS OF TRANSMITTAL
AND RELATED DOCUMENTS AND ANY AMENDMENTS OR SUPPLEMENTS CAREFULLY BEFORE MAKING
YOUR DECISION TO PARTICIPATE IN THE EXCHANGE OFFER.
---------------------------

The date of this prospectus is February   , 1999

TYCO

Tyco is a diversified manufacturing and service company that, through its subsidiaries:

- designs, manufactures and distributes electrical and electronic components and designs, manufactures, installs and services undersea cable communication systems;

- designs, manufactures and distributes disposable medical supplies and other specialty products, and conducts vehicle auctions and related services;

- designs, manufactures, installs and services fire detection and suppression systems and installs, monitors and maintains electronic security systems; and

- designs, manufactures and distributes flow control products.

Tyco's strategy is to be the low-cost, high quality producer and provider in each of its markets. It promotes its leadership position by investing in existing businesses, developing new markets and acquiring complementary businesses and products. Combining the strengths of its existing operations and its business acquisitions, Tyco seeks to enhance shareholder value through increased earnings per share and strong cash flows.

Tyco's registered and principal executive offices are located at The Gibbons Building, 10 Queen Street, Suite 301, Hamilton HM 11, Bermuda, and its telephone number is (441) 292-8674. The executive offices of Tyco International (US) Inc., Tyco's principal United States subsidiary, are located at One Tyco Park, Exeter, New Hampshire 03833, and its telephone number is (603) 778-9700.

THE COMPANY

Tyco International Group S.A., a Luxembourg company, is a wholly-owned subsidiary of Tyco. The registered and principal offices of the Company are located at 6, avenue Emile Reuter, 2nd Floor, L-2420 Luxembourg, and its telephone number is (352) 46 43 40-1. Through its subsidiaries, the Company owns substantially all of the assets, and engages in substantially all of the businesses, owned or engaged in by Tyco.

CURRENT DEVELOPMENTS

PENDING ACQUISITION OF AMP

On November 22, 1998, a subsidiary of Tyco entered into a definitive merger agreement for the acquisition of AMP Incorporated. It is estimated that Tyco will issue up to approximately 186.0 million common shares for delivery by its subsidiary to the former shareholders of AMP in the merger. AMP designs, manufactures and markets electronic, electrical and electro-optic connection devices and associated application tools and machines. AMP had annual revenues of approximately $5.5 billion in 1998. At December 31, 1998, AMP's total cash and cash equivalents was approximately $261 million, its total debt was approximately $702 million, including long-term debt of approximately $217 million, and its shareholders' equity was approximately $2.7 billion.

In the transaction, AMP shareholders will receive a fraction of a Tyco common share for each share of AMP common stock they own based upon an exchange ratio which is designed to give AMP shareholders between $51.00 and $55.95 in market value of Tyco common shares for each of their AMP shares. Under some circumstances, the value could be below this range. The exchange ratio will be determined based on an average stock price computed by taking the average of the daily weighted averages of the trading price of Tyco common shares on the New York Stock Exchange for the 15 trading days ending on March 26, 1999, which is the fourth trading day prior to the date of the special meeting of AMP shareholders to vote on the merger.

3

Source: TYCO INTERNATIONAL L, S-4/A, February 25, 1999

**EXHIBIT C**

<u>QuickLinks</u> -- Click here to rapidly navigate through this document

Filed Pursuant to Rule 424(b)(3)
Registration Nos. 333-113485
and 333-113485-01

PROSPECTUS

# TYCO INTERNATIONAL GROUP S.A.
### Offer to Exchange
### New 6% Notes due 2013
for
### All $1,000,000,000 of Outstanding 6% Notes due 2013
### Fully and Unconditionally Guaranteed by
# TYCO INTERNATIONAL LTD.



*This exchange offer will expire at 5 p.m., New York City time, on April 26, 2004, unless extended.*

**Terms of the exchange offer:**

- We will exchange all outstanding notes that are validly tendered and not withdrawn prior to the expiration of the exchange offer.

- You may withdraw tendered outstanding notes at any time prior to the expiration of the exchange offer.

- The exchange of outstanding notes for new notes will not be a taxable exchange for United States federal income tax purposes.

- The terms of the new notes to be issued are substantially identical to the terms of the outstanding notes, except that transfer restrictions, registration rights and additional interest provisions relating to the outstanding notes do not apply to the new notes.

- Each broker-dealer that receives new notes for its own account pursuant to the exchange offer must acknowledge that it will deliver a prospectus in connection with any resale of the exchange securities. The letter of transmittal accompanying this prospectus states that by so acknowledging and by delivering a prospectus, a broker-dealer will not be deemed to admit that it is an "underwriter" within the meaning of the Securities Act of 1933. This prospectus, as it may be amended or supplemented from time to time, may be used by a broker-dealer in connection with resales of exchange securities received in exchange for unregistered securities where the unregistered securities were acquired by the broker-dealer as a result of market-making activities or other trading activities. We have agreed that, for a period of 180 days after the date of this prospectus, we will make this prospectus available to any broker-dealer for use in connection with resale. See "Plan of Distribution".

- We will not receive any proceeds from the exchange offer.

- There is no existing market for the new notes to be issued, and we do not intend to apply for their listing on any securities exchange.

See the "Description of the Notes and the Guarantee" section beginning on page 29 for more information about the new notes to be issued in this exchange offer.

**This investment involves risks. See "Risk Factors", beginning on page 7, for a discussion of the risks that you should consider prior to tendering your outstanding notes for exchange.**

**Neither the Securities and Exchange Commission nor any state securities and exchange commission has approved or disapproved these securities or passed upon the adequacy or the accuracy of this prospectus. Any representation to the contrary is a criminal offense.**

Prospectus dated March 26, 2004

Source: TYCO INTERNATIONAL L, 424B3, April 01, 2004

# SUMMARY

*This summary highlights information contained elsewhere in this prospectus or the documents incorporated by reference. This summary may not contain all of the information that you should consider before deciding to tender your notes. We urge you to read this entire prospectus, including the "Risk Factors," and our public filings, including our consolidated financial statements and the notes to those statements incorporated by reference in this prospectus. The terms "Tyco," "we," "our," "us" and the "Company" refer to Tyco International Ltd. and its consolidated subsidiaries, and the term "TIG" refers to Tyco International Group S.A. Unless the context otherwise requires, references to any year refer to our fiscal year ended September 30.*

## Tyco International Ltd.

Tyco is a diversified manufacturing and service company that, through its subsidiaries:

- designs, manufactures, installs, monitors and services electronic security and fire protection systems;

- designs, manufactures and distributes electrical and electronic components, and designs, manufactures, installs, operates and maintains undersea fiber optic cable communications systems;

- designs, manufactures and distributes medical devices and supplies, imaging agents, pharmaceuticals and adult incontinence and infant care products;

- designs, manufactures, distributes and services engineered products including industrial valves and controls and steel tubular goods and provides environmental and other industrial consulting services; and

- designs, manufactures and distributes plastic products, adhesives and films.

Tyco operates in more than 100 countries around the world and reported net revenues of approximately $10 billion for the three months ended December 31, 2003 and $37 billion for its fiscal year ended September 30, 2003.

Tyco's strategy is to be a low-cost, high-quality producer and provider in each of the markets we serve. We promote our leadership position by investing in existing businesses and developing new markets. Leveraging the strengths of our existing operations, we seek to enhance value for our shareholders through operational excellence and maximization of cash flows.

Tyco International Ltd. is a Bermuda company. Our registered and principal executive office is located at 90 Pitts Bay Road, Pembroke HM 08, Bermuda. Our telephone number is (441) 292-8674. The executive office of our principal United States subsidiaries is located at 273 Corporate Drive, Suite 100, Portsmouth, New Hampshire 03801. The telephone number there is (603) 334-3900.

## Tyco International Group S.A.

Tyco International Group S.A., a Luxembourg company since 1998, is a wholly-owned subsidiary of Tyco International Ltd. TIG's registered and principal offices are located at 17, Boulevard de la Grande-Duchesse Charlotte, L-1331 Luxembourg. Its telephone number is (352) 464-340-1. TIG is a holding company whose only business is to own indirectly a substantial portion of the operating subsidiaries of Tyco and to perform treasury operations for Tyco companies. Otherwise, it conducts no independent business.

1

Source: TYCO INTERNATIONAL L, 424B3, April 01, 2004

**EXHIBIT D**

OFFER TO PURCHASE AND CONSENT SOLICITATION STATEMENT

# TYCO INTERNATIONAL GROUP S.A.

## OFFER TO PURCHASE AND SOLICITATION OF CONSENTS
## FOR ANY AND ALL OF ITS OUTSTANDING SECURITIES
## LISTED IN THE TABLE BELOW

| Title of Securities | CUSIP Number | Outstanding Amount | UST Reference Security | Fixed Spread (bp) | Bloomberg Reference Page | Early Consent Payment |
|---|---|---|---|---|---|---|
| 2003 Indenture Notes | | | | | | |
| 6.0% notes due 2013 | 902118BK3 | $1,000,000,000 | 4.25% due 11/15/2013 | 40 | PX6 | $30.00 |
| 1998 Indenture Notes | | | | | | |
| 6.125% notes due 2008 | 902118AM0 | $400,000,000 | 4.875% due 10/31/2008 | 30 | PX4 | $30.00 |
| 6.125% notes due 2009 | 902118AJ7 | $400,000,000 | 3.250% due 1/15/2009 | 35 | PX4 | $30.00 |
| 6.75% notes due 2011 | 902118AY4 | $1,000,000,000 | 5.000% due 2/15/2011 | 35 | PX5 | $30.00 |
| 6.375% notes due 2011 | 902118BC1 | $1,500,000,000 | 4.500% due 9/30/2011 | 40 | PX6 | $30.00 |
| 7.0% notes due 2028 | 902118AC2 | $500,000,000 | 4.75% due 2/15/2037 | 60 | PX1 | $30.00 |
| 6.875% notes due 2029 | 902118AK4 | $800,000,000 | 4.75% due 2/15/2037 | 60 | PX1 | $30.00 |

THE CONSENT SOLICITATIONS WILL EXPIRE AT 5:00 P.M., NEW YORK CITY TIME, ON THURSDAY, MAY 10, 2007, UNLESS EXTENDED OR EARLIER TERMINATED (SUCH TIME AND DATE, AS THE SAME MAY BE EXTENDED, THE "EARLY CONSENT DATE"). THE TENDER OFFERS WILL EXPIRE AT 12:00 MIDNIGHT, NEW YORK CITY TIME, ON THURSDAY, MAY 24, 2007, UNLESS EXTENDED OR EARLIER TERMINATED (SUCH TIME AND DATE, AS THE SAME MAY BE EXTENDED, THE "EXPIRATION DATE").

Tyco International Group S.A. (the "Company") hereby offers to purchase for cash any and all of the outstanding notes (collectively, the "Notes") listed in the tables above. The Notes were issued at various times in an aggregate principal amount of approximately $5.6 billion, of which substantially all remained outstanding as of the date of this Offer to Purchase and Consent Solicitation Statement (the "Offer to Purchase").

The offers to purchase the 2003 Notes (as defined herein) (the "2003 Tender Offer") and the 1998 Notes (as defined herein) (the "1998 Tender Offer" and, together with the 2003 Tender Offer, the "Tender Offers") are being made upon the terms and subject to the conditions set forth in this Offer to Purchase and the accompanying Letter of Transmittal and Consent (the "Letter of Transmittal" and, together with this Offer to Purchase, the "Offer Documents").

*The Dealer Managers for the Tender Offers and the Solicitation Agents for the Consent Solicitations are:*

**Goldman, Sachs & Co.**                              **Morgan Stanley**

**April 27, 2007**

Concurrently with the Tender Offers, the Company is soliciting from the holders of the Notes (each a "Holder" and, collectively, the "Holders") consents ("Consents") to amend the Indentures (as defined herein) under which the Notes were issued to clarify the application of certain provisions of the Indentures to the Proposed Separation (as defined herein). While Tyco International Ltd. ("Tyco"), the guarantor of the Notes, and the Company believe that the various steps in the Proposed Separation are not prohibited by the Indentures, Tyco and the Company believe it is desirable, prior to completing the Proposed Separation but after completion of the Consent Solicitations, to eliminate any uncertainty by amending the Indentures.

For any Notes validly delivered and not withdrawn before the Early Consent Date, the Company will pay total consideration for each $1,000 principal amount of Notes (the "Total Consideration"), which will equal the present value of the Notes, calculated as described under "The Tender Offers and Consent Solicitations," based on:

- the yield to maturity of the United States Treasury ("UST") reference security specified for such Notes in the table on the cover page (as calculated by the Dealer Managers (as defined below) in accordance with standard market practice based on the bid side price of such reference security at 2:00 p.m., New York City time, two business days prior to the Expiration Date),

- plus the fixed spread specified for that series in the table on the cover page.

The formula for calculating the Total Consideration of each of the Notes appears in Annex C, and a sample calculation of a hypothetical Total Consideration for each of the Notes appears in Annex D.

The Total Consideration includes a consent payment of $30.00 per $1,000 principal amount of Notes (the "Early Consent Payment") payable to each registered Holder of the Notes who validly delivers (and does not validly revoke) its Consent on or prior to the Early Consent Date. For any Notes validly delivered after the Early Consent Date and prior to the Expiration Date, the Company will pay the Total Consideration minus the Early Consent Payment (the "Purchase Price"). In addition, the Company will pay accrued and unpaid interest on such $1,000 principal amount up to, but not including, the day of payment for (or deposit of an amount with Global Bondholder Services Corporation as Depositary (the "Depositary"), sufficient to pay for) Notes accepted for purchase.

The Notes were issued under two different indentures. The Company's 6.125% notes due 2008 (CUSIP No. 902118AM0), 6.125% notes due 2009 (CUSIP No. 902118AJ7), 6.75% notes due 2011 (CUSIP No. 902118AY4), 6.375% notes due 2011 (CUSIP No. 902118BC1), 7.0% notes due 2028 (CUSIP No. 902118AC2) and 6.875% notes due 2029 (CUSIP No. 902118AK4) (collectively, the "1998 Notes") were issued under an indenture, dated as of June 9, 1998 (as supplemented from time to time, the "1998 Indenture") among the Company, Tyco, as guarantor, and The Bank of New York, as trustee (the "Trustee"). In order to clarify the application of certain provisions of the 1998 Indenture to the Proposed Separation, the Company seeks Consents to the amendment of Article Eight of the 1998 Indenture and to the execution and delivery by the Company, Tyco and the Trustee of a supplemental indenture (the "1998 Supplemental Indenture") containing the proposed amendments to this 1998 Indenture (the "1998 Indenture Amendments," and such consent solicitation, the "1998 Consent Solicitation").

The 1998 Indenture Amendments will not become effective unless the Company receives the consent of the Holders of at least a majority in outstanding aggregate principal amount of the 1998 Notes, voting together as one class (the "1998 Requisite Consents"). For purposes of determining the number of Consents required to approve the 1998 Indenture Amendments, the aggregate principal value of all 1998 Notes, excluding those 1998 Notes held by the Company, Tyco or any affiliate of the Company or Tyco (the "1998 Outstanding Amount"), will be counted, and, for such purpose, as of the date of this Offer to Purchase, the aggregate outstanding principal amount of the 1998 Notes is approximately $4.6 billion.

The Company's 6.0% notes due 2013 (CUSIP No. 902118BK3) (the "2003 Notes") were issued under an indenture, dated as of November 12, 2003, as amended by the First Supplemental Indenture, dated as of November 12, 2003 (the "First Supplemental Indenture" and, as amended thereby, the "2003 Indenture"), among the Company, Tyco, as guarantor, and The Bank of New York, as Trustee. In order to clarify the application of certain provisions of the 2003 Indenture to the Proposed Separation, the Company seeks Consents to the amendment of Article X of the 2003 Indenture and to the execution and delivery by the Company, Tyco and the Trustee of a supplemental indenture (the "2003 Supplemental Indenture" and such consent solicitation, the "2003 Consent Solicitation") containing the proposed amendments to the 2003 Indenture (the "2003 Indenture Amendments"). The 2003 Indenture Amendments will not become effective unless the Company receives the consent of the holders of at least a majority in aggregate principal amount of the outstanding

ii

The Company will provide without charge to each person to whom this Offer to Purchase is delivered, upon the request of such person, a copy of any or all the documents incorporated herein by reference, other than exhibits to such documents (unless such exhibits are specifically incorporated by reference into such documents). Requests for such documents should be directed to Investor Relations, Tyco International (US), Inc., 9 Roszel Road, Princeton, New Jersey 08540, telephone: (609) 720-4200.

## AVAILABLE INFORMATION

Tyco is subject to the periodic reporting requirements of the Exchange Act, and in accordance therewith files reports and other information with the Commission. Such reports and other information filed with the Commission by Tyco may be inspected and copied at the public reference facilities maintained by the Commission at 100 F Street, Room 1580, Washington, D.C. 20549. Copies of such material can be obtained at prescribed rates from the Public Reference Section of the Commission at 100 F Street, Room 1580, Washington, D.C. 20549. Such material also may be accessed electronically at the Commission's internet website located at http://www.sec.gov. Statements made in this Offer to Purchase concerning the provisions of any contract, agreement, indenture, security document or other document referred to herein are not necessarily complete. With respect to each such statement concerning a contract, agreement, indenture, security document or other document filed with the Commission, reference is made to such filing for a more complete description of the matter involved, and each such statement is qualified in its entirety by such reference.

## STATEMENT REGARDING FORWARD-LOOKING INFORMATION

Certain statements in this Offer to Purchase and the documents incorporated in this Offer to Purchase by reference constitute "forward-looking statements." All forward-looking statements involve risks and uncertainties. All statements contained or incorporated by reference herein that are not clearly historical in nature are forward-looking, and the words "anticipate," "believe," "expect," "estimate," "project" and similar expressions are generally intended to identify forward-looking statements. Any forward-looking statement contained herein, in press releases, written statements or other documents filed with the Commission, or in Tyco's communications and discussions with investors and analysts in the normal course of business through meetings, web casts, phone calls and conference calls, regarding expectations with respect to sales, earnings, cash flows, operating efficiencies, product expansion, backlog, the consummation and benefits of acquisitions and divestitures, the Proposed Separation or other matters, as well as financings and repurchases of debt or equity securities, are subject to known and unknown risks, uncertainties and contingencies. Many of these risks, uncertainties and contingencies are beyond the Company's or Tyco's control, and may cause actual results, performance or achievements to differ materially from anticipated results, performance or achievements.

These forward-looking statements speak only as of the date of this Offer to Purchase. Except as required by applicable law, the Company and Tyco expressly disclaim any obligation or undertaking to release publicly any updates or revisions to any forward-looking statements contained herein to reflect any change in the Company's or Tyco's expectations with regard thereto or any change in events, conditions or circumstances on which any such statement is based.

**THIS OFFER TO PURCHASE (INCLUDING THE ANNEXES HERETO) AND THE LETTER OF TRANSMITTAL CONTAIN IMPORTANT INFORMATION THAT SHOULD BE READ CAREFULLY AND IN THEIR ENTIRETY BEFORE ANY DECISION IS MADE WITH RESPECT TO THE TENDER OFFERS AND THE CONSENT SOLICITATIONS.**

**NO DEALER, SALESPERSON OR OTHER PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR TO MAKE ANY REPRESENTATION NOT CONTAINED IN THIS OFFER TO PURCHASE AND, IF GIVEN OR MADE, SUCH INFORMATION OR REPRESENTATION MAY NOT BE RELIED UPON AS HAVING BEEN AUTHORIZED BY THE COMPANY, TYCO, THE INFORMATION AGENT, THE DEPOSITARY, THE DEALER MANAGERS OR THE SOLICITATION AGENTS.**

## INFORMATION CONCERNING THE COMPANY,
### TIFSA AND TYCO

The Company was formed as a Luxembourg company on March 30, 1998, as a wholly owned subsidiary of Tyco. The Company is a holding company whose only business is to own indirectly a substantial portion of the operating subsidiaries of Tyco and to perform treasury operations for Tyco companies. Otherwise, it conducts no independent business.

Tyco is a diversified manufacturing and service company that, through its subsidiaries:

- designs, manufactures and distributes electrical and electronic components and related solutions;

- designs, manufactures, installs, monitors and services electronic security and fire protection systems;

- designs, manufactures and distributes medical devices and supplies, imaging agents, pharmaceuticals and adult incontinence and infant care products; and

- designs, manufactures, distributes and services engineered products, including industrial valves and controls, as well as steel tubular goods, and provides consulting, engineering and construction management and operating services.

Tyco maintains its registered and principal executive offices at 90 Pitts Bay Road, Second Floor, Pembroke HM 08, Bermuda. The executive offices of Tyco's principal United States subsidiaries are located at 9 Roszel Road, Princeton, NJ 08540. The telephone number there is (609) 720-4200. The Company, a Luxembourg company, maintains its registered and principal executive offices at 58, rue Charles Martel, L-2134 Luxembourg. The Company's telephone number is (352) 464-340-1. TIFSA is a newly-formed holding company established in connection with the spin-offs of the Company's healthcare and electronics businesses to directly and indirectly own Tyco's fire and security and engineered products and services operating subsidiaries, to issue new notes and to perform Tyco's treasury operations. Otherwise, it conducts no independent business. TIFSA's registered and principal offices are located at 58, rue Charles Martel, L-2134 Luxembourg. Its telephone number at that address is (352) 464-340-1.

### THE PROPOSED SEPARATION

In January 2006, Tyco announced that its board of directors had approved a plan (the "Proposed Separation") to separate Tyco into three independent, publicly-traded companies: one for Tyco's electronics businesses (Tyco Electronics), one for its healthcare businesses (Covidien), with the third (Tyco) continuing operations with its fire and security and engineered products and services businesses. The Proposed Separation will occur through tax-free distributions to Tyco's shareholders as of a record date that Tyco will set of all of the common shares of Tyco Electronics and Covidien, two subsidiaries that hold or will hold, through their respective subsidiaries, all of the assets and liabilities of the electronics and healthcare businesses, respectively. The fire and security and engineered products and services businesses will remain with Tyco after the distribution.

Prior to the distribution to its shareholders but after completion of these Tender Offers and similar offers to purchase certain of the Company's other outstanding public indebtedness, and as necessary steps to enable Tyco to make the distribution, the Company will contribute the assets and liabilities relating to its electronics businesses to Tyco Electronics, and the assets and liabilities relating to its healthcare businesses to Covidien. The assets and liabilities relating to its fire and security and engineered products and services businesses will be contributed to TIFSA, and TIFSA will assume the liabilities of the Company under its indentures and under any of the Company's public debt that remains outstanding upon completion of the Tender Offers and the similar offers referred to above. After the contribution of all of its assets and liabilities, the Company will liquidate and, as a final liquidating distribution, will distribute to Tyco all of the outstanding shares of capital stock of TIFSA, Tyco Electronics and Covidien. Tyco then will distribute the shares of Tyco Electronics and Covidien to its shareholders.

The amendments to the Indentures that are the subject of the Consent Solicitations would clarify:

6

Payment for Notes validly tendered (and not validly withdrawn) and accepted for payment will be made by the deposit of immediately available funds by the Company with the Depositary. The Depositary will act as agent for the tendering Holders for the purpose of receiving payments from the Company and transmitting such payments to Holders.

**Early Consent Payment**

Upon the terms and subject to the conditions of the Consent Solicitations (including, if either of the Consent Solicitations are extended or amended, the terms and conditions of any such extension or amendment), the Company is soliciting from Holders Consents with respect to the Proposed Amendments. The Total Consideration includes the Early Consent Payment, and Holders who tender their Notes after the Early Consent Date will, upon purchase of their Notes by the Company, receive only the Purchase Price, which equals the Total Consideration minus the Early Consent Payment. Holders who desire to tender their Notes pursuant to the Tender Offers and receive the Total Consideration (i.e., the Purchase Price and the Early Consent Payment) are required to tender their Notes and deliver their Consents to the Proposed Amendments on or prior to the Early Consent Date. If a Holder's Notes are not validly tendered pursuant to the Tender Offers on or prior to the Early Consent Date such Holder will not receive an Early Consent Payment, even though, assuming the Requisite Consents are obtained and the Supplemental Indentures are executed, the Proposed Amendments will be effective and operative as to any of such Holder's Notes that are not purchased in the Tender Offers. See "Proposed Amendments to the Indenture."

**The Purchase Price and, if applicable, the Early Consent Payment will be paid on the Payment Date assuming the Notes are accepted for purchase and the satisfaction or waiver of the conditions to the Tender Offers and Consent Solicitations. HOLDERS WHO VALIDLY TENDER (AND DO NOT VALIDLY WITHDRAW) THEIR NOTES WILL BE DEEMED BY SUCH TENDER TO HAVE DELIVERED THEIR CONSENTS AND, IF SUCH TENDER IS AFTER THE EARLY CONSENT DATE, WILL RECEIVE THE PURCHASE PRICE, BUT ARE NOT ENTITLED TO RECEIVE THE EARLY CONSENT PAYMENT.**

Tenders of Notes pursuant to the Tender Offers may be validly withdrawn and Consents delivered pursuant to the Consent Solicitations may be validly revoked at any time prior to the Early Consent Date by following the procedures described herein. A Holder may not validly revoke a Consent except by validly withdrawing such Holder's previously tendered Notes, and the valid withdrawal of a Holder's previously tendered Notes will constitute the concurrent valid revocation of such Holder's Consent. Any Notes tendered on or prior to the Early Consent Date that are not validly withdrawn prior to the Early Consent Date may not be withdrawn thereafter. A Holder who validly withdraws previously tendered Notes will not receive the Purchase Price or an Early Consent Payment, unless such Notes are retendered on or prior to the Early Consent Date (in which case the Holder will receive the Total Consideration) or the Expiration Date (in which case the Holder will be entitled to receive the Purchase Price only).

The Company has reserved the right to extend, amend or terminate the Tender Offers and the Consent Solicitations. See "Expiration Date; Extension; Amendment; Termination."

## PROPOSED AMENDMENTS TO THE INDENTURES

**Proposed Amendments to the 1998 Indenture**

The Company is soliciting the Consents of the Holders of the 1998 Notes to the 1998 Indenture Amendments substantially in the form of Annex A hereto and to the execution and delivery by the Company and Tyco of the 1998 Supplemental Indenture to effect the 1998 Indenture Amendments. All statements herein regarding the substance of any provision of the 1998 Indenture Amendments and the 1998 Indenture are qualified in their entirety by reference to the language set forth in Annex A and to the 1998 Indenture. Initially capitalized terms used below that are not otherwise defined herein have the meanings assigned to them in the 1998 Indenture. Copies of the 1998 Indenture are available upon request from the Information Agent at the address and telephone number set forth on the back cover of this Offer to Purchase.

The 1998 Indenture Amendments would amend Article Eight of the 1998 Indenture to clarify the applicability of Article Eight to the Proposed Separation. While Tyco and the Company believe that the various steps in the Proposed Separation are not prohibited by the 1998 Indenture, Tyco and the Company believe it is desirable, prior to completing the Proposed Separation but after completion of the Tender Offers, to eliminate any uncertainty by amending Article Eight of the 1998 Indenture to clarify that:

- the contribution of the Company's assets and liabilities relating to Tyco's electronics businesses to Tyco Electronics and the Company's assets and liabilities relating to Tyco's healthcare businesses to Covidien will not constitute the sale or conveyance of all or substantially all of Tyco's or the Company's assets;

- the contribution of the Company's assets and liabilities relating to Tyco's fire and security and engineered products and services business to TIFSA will constitute the conveyance of substantially all of the Company's assets (but not all or substantially all of Tyco's assets) to TIFSA;

- upon compliance with the conditions precedent set forth in Article Eight, TIFSA will be the successor obligor to the Company under the Indenture and the Notes and the Company will be discharged from its obligations under the Indenture and the Notes and may be liquidated and dissolved; and

- the distribution to Tyco's shareholders of all of the shares of capital stock of Tyco Electronics and Covidien will not constitute the sale or conveyance of all or substantially all of Tyco's assets.

**The 2003 Indenture Amendments**

The Company is soliciting the Consents of the Holders of the 2003 Notes to the 2003 Indenture Amendments substantially in the form of Annex B hereto and to the execution and delivery by the Company and Tyco of the 2003 Supplemental Indenture to effect the 2003 Indenture Amendments. All statements herein regarding the substance of any provision of the 2003 Indenture Amendments and the 2003 Indenture are qualified in their entirety by reference to the language set forth in Annex B and to the 2003 Indenture. Initially capitalized terms used below that are not otherwise defined herein have the meanings assigned to them in the 2003 Indenture. Copies of the 2003 Indenture are available upon request from the Information Agent at the address and telephone number set forth on the back cover of this Offer to Purchase.

The 2003 Indenture Amendments would amend Article X of the 2003 Indenture to clarify the applicability of Article X to the Proposed Separation. While Tyco and the Company believe that the various steps in the Proposed Separation are not prohibited by the 2003 Indenture, Tyco and the Company believe it is desirable, prior to completing the Proposed Separation but after completion of the Tender Offers, to eliminate any uncertainty by amending Article X of the 2003 Indenture to clarify that:

- the contribution of the Company's assets and liabilities relating to Tyco's electronics businesses to Tyco Electronics and the Company's assets and liabilities relating to Tyco's healthcare businesses to Covidien will not constitute the sale or conveyance of all or substantially all of Tyco's or the Company's assets;

- the contribution of the Company's assets and liabilities relating to Tyco's fire and security and engineered products and services business to TIFSA will constitute the conveyance of substantially all of the Company's assets (but not all or substantially of Tyco's assets) to TIFSA;

- upon compliance with the conditions precedent set forth in Article X, TIFSA will be the successor obligor to the Company under the Indenture and the Notes and the Company will be discharged from its obligations under the Indenture and the Notes and may be liquidated and dissolved; and

- the distribution to Tyco's shareholders of all of the shares of capital stock of Tyco Electronics and Covidien will not constitute the transfer of all or substantially all of Tyco's assets.

**General**

The Proposed Amendments will be set forth in the Supplemental Indentures. The Supplemental Indentures will be executed on, or as soon as practicable after, the Early Consent Date by the Company, Tyco and the Trustee if the Requisite Consents have been obtained.

The Supplemental Indentures will become effective upon execution by the Company, Tyco and the Trustee, but will provide that the Proposed Amendments will not become operative until the date the Company notifies the Trustee and the Depositary that an amount of Notes representing the Requisite Consents with respect to such Proposed Amendments has been accepted for purchase. The Indentures will remain in effect, without giving effect to the Proposed Amendments,

10

## ANNEX A

### THE PROPOSED AMENDMENTS TO THE 1998 INDENTURE

The following is a description of the 1998 Indenture Amendments to be made effective in accordance with the terms of Article Seven of the 1998 Indenture. Holders of Notes who desire to be eligible to receive the Total Consideration, including the Early Consent Payment, must tender Notes and Consent to the 1998 Indenture Amendments on or prior to the Early Consent Date. Such amendments will be contained and reflected in the 1998 Supplemental Indenture.

The provisions of the 1998 Indenture reprinted below are qualified in their entirety by reference to the 1998 Indenture, copies of which can be obtained without charge from the Information Agent. Capitalized terms used in this Annex A without definition have the same meanings as set forth in the 1998 Indenture.

Article Eight of the Indenture would be amended to read in its entirety as follows:

SECTION 8.1        Issuer and Guarantors May Consolidate, etc., on Certain Terms.

(a)  Each of the Issuer, Tyco and any other Guarantors, if any, covenants that it will not merge or consolidate with any other Person or sell or convey all or substantially all of its assets to any Person, unless (i) either the Issuer or such Guarantor, as the case may be, shall be the continuing entity, or the successor entity or the Person which acquires by sale or conveyance substantially all the assets of the Issuer or such Guarantor, as the case may be (if other than the Issuer or such Guarantor, as the case may be), shall expressly assume the due and punctual payment of the principal of and interest on all the Securities or the obligations under the Guarantees, as the case may be, according to their tenor, and the due and punctual performance and observance of all of the covenants and agreements of this Indenture to be performed or observed by the Issuer or such Guarantor, as the case may be, by supplemental indenture satisfactory to the Trustee, executed and delivered to the Trustee by such corporation, and (ii) the Issuer or such Guarantor, as the case may be, or such successor corporation, as the case may be, shall not, immediately after such merger or consolidation, or such sale or conveyance, be in default in the performance of any such covenant or agreement.

(b)  In connection with the Separation Transactions (as defined in Section 8.1(c)), the provisions of Section 8.1(a) shall be interpreted as follows:

> (i)        the transfer of a portion of the Issuer's assets to Tyco Electronics (as defined in Section 8.1(c)) and a portion of the Issuer's assets to Covidien (as defined in Section 8.1(c)), as contemplated by the Separation Transactions, shall be deemed not to be a sale or conveyance of all or substantially all of the Issuer's assets or Tyco's assets;

> (ii)       the transfer of a portion of the Issuer's assets to Tyco International Finance S.A. (as defined in Section 8.1(c)), as contemplated by the Separation Transactions, shall be deemed to be a conveyance of substantially all of the Issuer's assets to Tyco International Finance S.A. and be deemed not to be a sale or conveyance of all or substantially all of Tyco's assets; and

> (iii)      the distribution by Tyco to its shareholders of the shares of Covidien Ltd. and Tyco Electronics Ltd. shall be deemed not to be a sale or conveyance of all or substantially all of Tyco's assets.

(c) For purposes of this Article, the following terms have the meanings ascribed to them.

"Covidien" refers to both Covidien Ltd., a Bermuda company, and Covidien International Finance S.A., a Luxembourg company.

"Separation Transactions" means the series of transactions pursuant to which Tyco will separate its businesses into three independent, publicly traded companies: one for its healthcare businesses (Covidien); one for its electronics businesses (Tyco Electronics); and a third for its fire and security and engineered products and services businesses (Tyco and Tyco International Finance S.A.). The steps of the Separation Transactions will include: (i) the contribution of the assets and liabilities of the healthcare businesses of the Issuer to Covidien International Finance S.A., the contribution of the assets and liabilities of the electronics businesses of the Issuer to Tyco Electronics Group S.A. and the contribution of the assets and liabilities of the fire and security and engineered products and services businesses of the Issuer to Tyco

**EXHIBIT E**

---------------------------------------------------------------------------------

TYCO INTERNATIONAL GROUP S.A.,
as Issuer


AND


TYCO INTERNATIONAL LTD.,
as Guarantor


AND


THE BANK OF NEW YORK,
as Trustee



Indenture



Dated as of June 9, 1998



-----------------



---------------------------------------------------------------------------------

SECTION 3.11 Limitation on Indebtedness of Subsidiaries. (a) The Issuer will not cause or permit any Subsidiary (which is not a Guarantor), directly or indirectly, to create, incur, assume, guarantee or otherwise in any manner become liable for the payment of or otherwise incur (collectively, "incur"), any Indebtedness (including any Acquired Indebtedness but excluding  - any Permitted Subsidiary Indebtedness) unless such Subsidiary simultaneously executes and delivers a supplemental indenture to the Indenture providing for a Guarantee of the Securities as provided in Section 3.14.

(b) Notwithstanding the foregoing, any Guarantee by a Subsidiary of the Securities shall provide by its terms that it (and all liens securing the same) shall be automatically and unconditionally released and discharged upon (i) any sale, exchange or transfer, to any Person not an Affiliate of the Issuer, of all of the Issuer's equity interests in, or all or substantially all the assets of, such Subsidiary, which transaction is in compliance with the terms of this Indenture and such Subsidiary is released from all guarantees, if any, by it of other Indebtedness of the Issuer or any Subsidiaries, (ii) the payment in full of all obligations under the Indebtedness giving rise to such Guarantee and (iii) with respect to Indebtedness described in clause (a) above constituting guarantees, the release by the holders of such Indebtedness of the guarantee by such Subsidiary (including any deemed release upon payment in full of all obligations under such Indebtedness), at such time as (A) no other Indebtedness (other than Permitted Subsidiary Indebtedness) has been guaranteed by such Subsidiary, as the case may be, or (B) the holders of all such other Indebtedness which is guaranteed by such Subsidiary also release the guarantee by such Subsidiary (including any deemed release upon payment in full of all obligations under such Indebtedness).

(c) For purposes of this Section 3.11, any Acquired Indebtedness shall not be deemed to have been incurred until 180 days from the date (A) the Person obligated on such Acquired Indebtedness becomes a Subsidiary or (B) the acquisition of assets in connection with which such Acquired Indebtedness was assumed is consummated.

SECTION 3.12 Notice to Trustee. The Issuer, Tyco or any other Guarantor shall provide written notice to the Trustee within 30 days of the occurrence of any Event of Default under Section 4.1.

ARTICLE FOUR

REMEDIES OF THE TRUSTEE AND SECURITYHOLDERS
ON EVENT OF DEFAULT

SECTION 4.1 Event of Default Defined; Acceleration of Maturity; Waiver of Default. "Event of Default" with respect to Securities of any series wherever used herein, means each one of the following events which shall have occurred and be continuing (whatever the reason for such Event of Default and whether it shall be voluntary or involuntary or be effected by operation of law or pursuant to any judgment, decree or order of any court or any order, rule or regulation of any administrative or governmental body):

(a) default in the payment of any installment of interest upon or any Additional Amounts in respect of any of the Securities of such series as and when the same shall become due and payable, and continuance of such default for a period of 30 days; or

(b) default in the payment of all or any part of the principal on any of the

20

Securities of such series as and when the same shall become due and payable either at maturity, upon redemption, by declaration or otherwise; or

(c) default in the payment of any sinking fund installment as and when the same shall become due and payable by the terms of the Securities of such series; or

(d) default in the performance, or breach, of any covenant or agreement of the Issuer, Tyco or any other Guarantor in respect of the Securities of such series and related Guarantees (other than a covenant or agreement in respect of the Securities of such series and related Guarantees a default in whose performance or whose breach is elsewhere in this Section specifically dealt with), and continuance of such default or breach for a period of 90 days after the date on which there has been given, by registered or certified mail, to the Issuer by the Trustee or to the Issuer and the Trustee by the Holders of at least 25% in principal amount of the Outstanding Securities of all series affected thereby, a written notice specifying such default or breach and requiring it to be remedied and stating that such notice is a "Notice of Default" hereunder; or

(e) an event of default, as defined in any indenture, including this Indenture, or instrument evidencing or under which the Issuer, Tyco or any other Guarantor on the date any determination shall be made under this clause (e), shall have outstanding at least $50,000,000 aggregate principal amount of Indebtedness for borrowed money (other than Non-Recourse Indebtedness), shall happen and be continuing and such event of default shall involve the failure to pay the principal of or interest on such Indebtedness (or any part thereof) on the final maturity date thereof after the expiration of any applicable grace period with respect thereto, or such Indebtedness shall have been accelerated so that the same shall be or become due and payable prior to the date on which the same would otherwise have become due and payable, and such acceleration shall not be rescinded or annulled within ten Business Days after notice thereof shall have been given to the Issuer, Tyco or such Guarantor, as the case may be, by the Trustee (if such event be known to it), or to the Issuer, Tyco or such Guarantor, as the case may be, and the Trustee by the Holders of at least 25% in aggregate principal amount of all of the Securities at the time Outstanding (treated as one class); provided that, if such event of default under such indenture or instrument shall be remedied or cured by the Issuer, Tyco or such Guarantor, as the case may be, or waived by the requisite holders of such indebtedness, then the Event of Default hereunder by reason thereof shall be deemed likewise to have been thereupon remedied, cured or waived without further action upon the part of either the Trustee or any of the Securityholders, and provided further, however, that subject to the provisions of Sections 5.1 and 5.2, the Trustee shall not be charged with knowledge of any such event of default unless written notice thereof shall have been given to the Trustee by the Issuer, Tyco or such Guarantor, as the case may be, by the holder or an agent of the holder of any such Indebtedness, by the trustee then acting under any indenture or other instrument under which such default shall have occurred, or by the Holders of not less than 25% in the aggregate principal amount of the Securities at the time Outstanding (treated as one class);

(f) any Guarantee shall for any reason cease to be, or shall for any reason be asserted in writing by any Guarantor or the Issuer not to be in full force and effect and enforceable in accordance with its terms except to the extent contemplated by the Indenture and any such Guarantee;

(g) a court having jurisdiction in the premises shall enter a decree or order for relief in respect of the Issuer, Tyco or any Significant Subsidiary Guarantor in an

21

SECTION 4.7 Unconditional Right of Securityholders to Institute
Certain Suits. Notwithstanding any other provision in this Indenture and any
provision of any Security, the right of any Holder of any Security to receive
payment of the principal of and interest on such Security on or after the
respective due dates expressed in such Security, or to institute suit for the
enforcement of any such payment on or after such respective dates, shall not be
impaired or affected without the consent of such Holder.

SECTION 4.8 Powers and Remedies Cumulative; Delay or Omission Not
Waiver of Default. Except as provided in Section 4.6, no right or remedy herein
conferred upon or reserved to the Trustee or to the Securityholders is intended
to be exclusive of any other right or remedy, and every right and remedy shall,
to the extent permitted by law, be cumulative and in addition to every other
right and remedy given hereunder or now or hereafter existing at law or in
equity or otherwise. The assertion or employment of any right or remedy
hereunder, or otherwise, shall not prevent the concurrent assertion or
employment of any other appropriate right or remedy.

No delay or omission of the Trustee or of any Securityholder to
exercise any right or power accruing upon any Event of Default occurring and
continuing as aforesaid shall impair any such right or power or shall be
construed to be a waiver of any such Event of Default or an acquiescence
therein; and, subject to Section 4.6, every power and remedy given by this
Indenture or by law to the Trustee or to the Securityholders may be exercised
from time to time, and as often as shall be deemed expedient, by the Trustee or
by the Securityholders.

SECTION 4.9 Control by Securityholders. The Holders of a majority in
aggregate principal amount of the Securities of each series affected (with each
series voting as a separate class) at the time Outstanding shall have the right
to direct the time, method, and place of conducting any proceeding for any
remedy available to the Trustee, or exercising any trust or power conferred on
the Trustee with respect to the Securities of such series by this Indenture;
provided that such direction shall not be otherwise than in accordance with law
and the provisions of this Indenture and provided further that (subject to the
provisions of Section 5.1) the Trustee shall have the right to decline to follow
any such direction if the Trustee, being advised by counsel, shall determine
that the action or proceeding so directed may not lawfully be taken or if the
Trustee in good faith by its board of directors, the executive committee, or a
trust committee of directors or Responsible Officers of the Trustee shall
determine that the action or proceedings so directed would involve the Trustee
in personal liability or if the Trustee in good faith shall so determine that
the actions or forebearances specified in or pursuant to such direction would be
unduly prejudicial to the interests of Holders of the Securities of all series
so affected not joining in the giving of said direction, it being understood
that (subject to Section 5.1) the Trustee shall have no duty to ascertain
whether or not such actions or forebearances are unduly prejudicial to such
Holders.

Nothing in this Indenture shall impair the right of the Trustee in its
discretion to take any action deemed proper by the Trustee and which is not
inconsistent with such direction or directions by Securityholders.

SECTION 4.10 Waiver of Past Defaults. Prior to a declaration of the
acceleration of the maturity of the Securities of any series as provided in
Section 4.1, the Holders of a majority in aggregate principal amount of the
Securities of such series at the time Outstanding (each such series voting as a
separate class) may on behalf of the Holders of all the Securities of such
series waive any past default or Event of Default described in clause (d) or (i)
of Section 4.1 which relates to less than all series of Securities then
Outstanding, except a default in respect of a covenant or provision hereof which
cannot be modified or amended without the consent of each

27

not after) the evidencing to the Trustee, as provided in Section 6.1, of the taking of any action by the Holders of the percentage in aggregate principal amount of the Securities of any or all series, as the case may be, specified in this Indenture in connection with such action, any Holder of a Security the serial number of which is shown by the evidence to be included among the serial numbers of the Securities the Holders of which have consented to such action may, by filing written notice at the Corporate Trust Office and upon proof of holding as provided in this Article, revoke such action so far as concerns such Security. Except as aforesaid any such action taken by the Holder of any Security shall be conclusive and binding upon such Holder and upon all future Holders and owners of such Security and of any Securities issued in exchange or substitution therefor, irrespective of whether or not any notation in regard thereto is made upon any such Security. Any action taken by the Holders of the percentage in aggregate principal amount of the Securities of any or all series, as the case may be, specified in this Indenture in connection with such action shall be conclusively binding upon the Issuer, Tyco, any other Guarantor, the Trustee and the Holders of all the Securities affected by such action.

## ARTICLE SEVEN

## SUPPLEMENTAL INDENTURES

SECTION 7.1 Supplemental Indentures Without Consent of Securityholders. The Issuer, Tyco and any other Guarantor when authorized by resolutions of their respective Board of Directors, and the Trustee may from time to time and at any time enter into an indenture or indentures supplemental hereto for one or more of the following purposes:

(a) to convey, transfer, assign, mortgage or pledge to the Trustee as security for the Securities of one or more series any property or assets;

(b) to evidence the succession of another corporation to the Issuer or any Guarantor, or successive successions, and the assumption by the successor Person of the covenants, agreements and obligations of the Issuer pursuant to Article Eight;

(c) to add to the covenants of the Issuer or any Guarantor such further covenants, restrictions, conditions or provisions as its Board of Directors and the Trustee shall consider to be for the protection of the Holders of Securities, and to make the occurrence, or the occurrence and continuance, of a default in any such additional covenants, restrictions, conditions or provisions an Event of Default permitting the enforcement of all or any of the several remedies provided in this Indenture as herein set forth; provided, that in respect of any such additional covenant, restriction, condition or provision such supplemental indenture may provide for a particular period of grace after default (which period may be shorter or longer than that allowed in the case of other defaults) or may provide for an immediate enforcement upon such an Event of Default or may limit the remedies available to the Trustee upon such an Event of Default or may limit the right of the Holders of a majority in aggregate principal amount of the Securities of such series to waive such an Event of Default;

(d) to cure any ambiguity or to correct or supplement any provision contained herein or in any supplemental indenture which may be defective or inconsistent with any other provision contained herein or in any supplemental indenture; or to make such other provisions in regard to matters or questions arising under this Indenture or under any supplemental indenture as the Board of Directors of the Issuer may deem necessary or

37

desirable and which shall not adversely affect the interests of the Holders
of the Securities in any material respect;

(e) to establish the form or terms of Securities of any series as
permitted by Sections 2.1 and 2.4;

(f) to add a Guarantor pursuant to the provisions of Sections 3.11 and
13.4; and

(g) to evidence and provide for the acceptance of appointment
hereunder by a successor trustee with respect to the Securities of one or
more series and to add to or change any of the provisions of this Indenture
as shall be necessary to provide for or facilitate the administration of
the trusts hereunder by more than one trustee, pursuant to the requirements
of Section 5.10.

The Trustee is hereby authorized to join with the Issuer, Tyco and any
other Guarantor in the execution of any such supplemental indenture, to make any
further appropriate agreements and stipulations which may be therein contained
and to accept the conveyance, transfer, assignment, mortgage or pledge of any
property thereunder, but the Trustee shall not be obligated to enter into any
such supplemental indenture which affects the Trustee's own rights, duties or
immunities under this Indenture or otherwise.

Any supplemental indenture authorized by the provisions of this
Section may be executed without the consent of the Holders of any of the
Securities at the time outstanding, notwithstanding any of the provisions of
Section 7.2.

SECTION 7.2 Supplemental Indentures With Consent of Securityholders.
With the consent (evidenced as provided in Article Six) of the Holders of not
less than a majority in aggregate principal amount of the Securities at the time
outstanding of all series affected by such supplemental indenture (voting as one
class), the Issuer, Tyco and any other Guarantor, when authorized by resolutions
of their respective Boards of Directors, and the Trustee may, from time to time
and at any time, enter into an indenture or indentures supplemental hereto for
the purpose of adding any provisions to or changing in any manner or eliminating
any of the provisions of this Indenture or of any supplemental indenture or of
modifying in any manner the rights of the Holders of the Securities of each such
series; provided, that no such supplemental indenture shall (a) extend the final
maturity of any Security, or reduce the principal amount thereof, or reduce the
rate or extend the time of payment of interest thereon, or reduce any amount
payable on redemption thereof or reduce the amount of the principal of an
Original Issue Discount Security that would be due and payable upon an
acceleration of the maturity thereof pursuant to Section 4.1 or the amount
thereof provable in bankruptcy pursuant to Section 4.2, or impair or affect the
right of any Securityholder to institute suit for the payment thereof or, if the
Securities provide therefor, any right of repayment at the option of the
Securityholder without the consent of the Holder of each Security so affected,
or (b) reduce the aforesaid percentage of Securities of any series, the consent
of the Holders of which is required for any such supplemental indenture, without
the consent of the Holders of each Security so affected.

Upon the request of the Issuer, accompanied by a copy of a resolution
of the Board of Directors certified by a managing director or the secretary or
an assistant secretary of the Issuer authorizing the execution of any such
supplemental indenture, and upon the filing with the Trustee of evidence of the
consent of Securityholders as aforesaid and other documents, if any, required by
Section 6.1, the Trustee shall join with the Issuer, Tyco and any other
Guarantor in the execution of such supplemental indenture unless such
supplemental indenture affects the

38

Trustee's own rights, duties or immunities under this Indenture, or otherwise, in which case the Trustee may in its discretion, but shall not be obligated to, enter into such supplemental indenture.

It shall not be necessary for the consent of the Securityholders under this Section to approve the particular form of any proposed supplemental indenture, but it shall be sufficient if such consent shall approve the substance thereof.

Promptly after the execution by the Issuer, Tyco, any other Guarantor and the Trustee of any supplemental indenture pursuant to the provisions of this Section, the Issuer shall mail a notice thereof by first class mail to the Holders of Securities of each series affected thereby at their addresses as they shall appear on the registry books of the Issuer, setting forth in general terms the substance of such supplemental indenture. Any failure of the Issuer to mail such notice, or any defect therein, shall not, however, in any way impair or affect the validity of any such supplemental indenture.

SECTION 7.3 Effect of Supplemental Indenture. Upon the execution of any supplemental indenture pursuant to the provisions hereof, this Indenture shall be and be deemed to be modified and amended in accordance therewith and the respective rights, limitations of rights, obligations, duties and immunities under this Indenture of the Trustee, the Issuer, Tyco, any other Guarantor and the Holders of Securities of each series affected thereby shall thereafter be determined, exercised and enforced hereunder subject in all respects to such modifications and amendments, and all the terms and conditions of any such supplemental indenture shall be and be deemed to be part of the terms and conditions of this Indenture for any and all purposes.

SECTION 7.4 Documents to Be Given to Trustee. The Trustee, subject to the provisions of Sections 5.1 and 5.2, may receive an Officers' Certificate and an Opinion of Counsel as conclusive evidence that any supplemental indenture executed pursuant to this Article Seven complies with the applicable provisions of this Indenture.

SECTION 7.5 Notation on Securities in Respect of Supplemental Indentures. Securities of any series authenticated and delivered after the execution of any supplemental indenture pursuant to the provisions of this Article may bear a notation in form approved by the Trustee for such series as to any matter provided for by such supplemental indenture or as to any action taken at any such meeting. If the Issuer or the Trustee shall so determine, new Securities of any series so modified as to conform, in the opinion of the Trustee and the Board of Directors of the Issuer, to any modification of this Indenture contained in any such supplemental indenture may be prepared by the Issuer, Tyco and any other Guarantor, and authenticated by the Trustee and delivered in exchange for the Securities of such series then outstanding.

ARTICLE EIGHT

CONSOLIDATION, MERGER, SALE OR CONVEYANCE

SECTION 8.1 Issuer and Guarantors May Consolidate, etc., on Certain Terms. Each of the Issuer, Tyco and any other Guarantors, if any, covenants that it will not merge or consolidate with any other Person or sell or convey all or substantially all of its assets to any Person, unless (i) either the Issuer or such Guarantor, as the case may be, shall be the continuing entity, or the successor entity or the Person which acquires by sale or conveyance substantially all the assets of the Issuer or such Guarantor, as the case may be (if other than the Issuer or such Guarantor, as the case may be) shall expressly assume the due and punctual payment of the principal of and interest on all the Securities or the obligations under the Guarantees, as the case

39

may be, according to their tenor, and the due and punctual performance and observance of all of the covenants and agreements of this Indenture to be performed or observed by the Issuer or such Guarantor, as the case may be, by supplemental indenture satisfactory to the Trustee, executed and delivered to the Trustee by such corporation, and (ii) the Issuer or such Guarantor, as the case may be, or such successor corporation, as the case may be, shall not, immediately after such merger or consolidation, or such sale or conveyance, be in default in the performance of any such covenant or agreement.

SECTION 8.2 Successor Entity Substituted. In case of any such consolidation, merger, sale or conveyance in which the Issuer or any Guarantor, as the case may be, is not the continuing entity, and following such an assumption by the successor entity, such successor entity shall succeed to and be substituted for the Issuer or such Guarantor, as the case may be, with the same effect as if it had been named herein. Such successor entity may cause to be signed, and may issue either in its own name or in the name of the Issuer or such Guarantor, as the case may be, prior to such succession any or all of the Securities or Guarantees as the case may be, issuable hereunder which theretofore shall not have been signed by the Issuer or such Guarantor, as the case may be, and delivered to the Trustee; and, upon the order of such successor entity instead of the Issuer or such Guarantor, as the case may be, and subject to all the terms, conditions and limitations in this Indenture prescribed, the Trustee shall authenticate and shall deliver any Securities or Guarantees, as the case may be, which previously shall have been signed and delivered by the officers of the Issuer or such Guarantor, as the case may be, to the Trustee for authentication, and any Securities or Guarantees, as the case may be, which such successor entity thereafter shall cause to be signed and delivered to the Trustee for that purpose. All of the Securities or Guarantees, as the case may be, so issued shall in all respects have the same legal rank and benefit under this Indenture as the Securities or Guarantees, as the case may be, theretofore or thereafter issued in accordance with the terms of this Indenture as though all of such Securities or such Guarantees, as the case may be, had been issued at the date of the execution hereof.

In case of any such consolidation, merger, sale, lease or conveyance such changes in phraseology and form (but not in substance) may be made in the Securities or Guarantees thereafter to be issued as may be appropriate.

In the event of any such sale or conveyance (other than a conveyance by way of lease) the Issuer or any Guarantor or any successor entity which shall theretofore have become such in the manner described in this Article shall be discharged from all obligations and covenants under this Indenture, the Securities and any Guarantee and may be liquidated and dissolved.

SECTION 8.3 Opinion of Counsel to Trustee. The Trustee, subject to the provisions of Sections 5.1 and 5.2, may receive an Opinion of Counsel, prepared in accordance with Section 11.5, as conclusive evidence that any such consolidation, merger, sale, lease or conveyance, and any such assumption, and any such liquidation or dissolution, complies with the applicable provisions of this Indenture.

SECTION 8.4 Exception Applicable to Certain Guarantors. The provisions of this Article shall not apply to a merger, consolidation, sale or conveyance of a Guarantor other than Tyco, if, in connection with such merger, consolidation, sale or conveyance, the Guarantee of such Guarantor is released and discharged in accordance with Section 3.11(b).

40

are erroneous.

Any certificate, statement or opinion of an officer of the Issuer or any Guarantor or of counsel may be based, insofar as it relates to accounting matters, upon a certificate or opinion or representations by an accountant or firm of accountants in the employ of the Issuer or such Guarantor, as the case may be, unless such officer or counsel, as the case may be, knows that the certificate or opinion or representations with respect to the accounting matters upon which his certificate, statement or opinion may be based as aforesaid are erroneous.

Any certificate or opinion of any independent firm of public accountants filed with the Trustee shall contain a statement that such firm is independent.

SECTION 10.6 Payments Due on Saturdays, Sundays and Holidays. If the date of maturity of interest on or principal of the Securities of any series or the date fixed for redemption or repayment of any such Security shall not be a Business Day, then payment of interest or principal need not be made on such date, but may be made on the next succeeding Business Day with the same force and effect as if made on the date of maturity or the date fixed for redemption, and no interest shall accrue for the period after such date.

SECTION 10.7 Conflict of Any Provision of Indenture with Trust Indenture Act of 1939. If and to the extent that any provision of this Indenture limits, qualifies or conflicts with another provision included in this Indenture by operation of Sections 310 to 317, inclusive, of the Trust Indenture Act of 1939 (an "incorporated provision"), such incorporated provision shall control.

SECTION 10.8 New York Law to Govern. This Indenture, each Security and each Guarantee shall be deemed to be a contract under the laws of the State of New York, and for all purposes shall be construed in accordance with the laws of such State, without regard to principles of the conflict of laws thereof.

SECTION 10.9 Consent to Jurisdiction and Service of Process. Each of the Issuer and Tyco agrees that any legal suit, action or proceeding brought by any party to enforce any rights under or with respect to this Indenture, any Security and any Guarantee or any other document or the transactions contemplated hereby or thereby may be instituted in any state or federal court in The City of New York, State of New York, United States of America, irrevocably waives to the fullest extent permitted by law any objection which it may now or hereafter have to the laying of venue of any such suit, action or proceeding, irrevocably waives to the fullest extent permitted by law any claim that and agrees not to claim or plead in any court that any such action, suit or proceeding brought in such court has been brought in an inconvenient forum and irrevocably submits to the non-exclusive jurisdiction of any such court in any such suit, action or proceeding or for recognition and enforcement of any judgment in respect thereof.

Each of the Issuer and Tyco hereby irrevocably and unconditionally designates and appoints CT Corporation System, 1633 Broadway, New York, New York 10019, U.S.A. (and any successor entity) as its authorized agent to receive and forward on its behalf service of any and all process which may be served in any such suit, action or proceeding in any such court and agrees that service of process upon CT Corporation shall be deemed in every respect effective service of process upon the Issuer in any such suit, action or proceeding and shall be taken and held to be valid personal service upon the Issuer or Tyco, as the case may be. Said designation and appointment shall be irrevocable. Nothing in this Section 10.9 shall affect the right of the Holders to serve process in any manner permitted by law or limit the right of the Holders to bring proceedings against the Issuer or Tyco in the courts of any jurisdiction or jurisdictions. Each of

47

**EXHIBIT F**

Exhibit 4.1
EXECUTION COPY

**TYCO INTERNATIONAL GROUP S.A.,**
as Issuer

**AND**

**TYCO INTERNATIONAL LTD.,**
as Guarantor, if applicable

**AND**

**THE BANK OF NEW YORK,**
as Trustee

**INDENTURE**

Dated as of November 12, 2003

**UNSUBORDINATED DEBT SECURITIES**

(b)     Delivery of such reports, information and documents to the Trustee is for informational purposes only and the Trustee's receipt of such shall not constitute constructive notice of any information contained therein or determinable from information contained therein, including the Company's compliance with any of its covenants hereunder (as to which the Trustee is entitled to rely exclusively on Officers' Certificates).

Section 5.04          Reports by the Trustee.

(a)     Any Trustee's report required under Section 313(a) of the Trust Indenture Act shall be transmitted on or before July 15 in each year following the date hereof, so long as any Securities are outstanding hereunder, and shall be dated as of a date convenient to the Trustee no more than 60 nor less than 45 days prior thereto.

(b)     A copy of each such report shall, at the time of such transmission to Securityholders, be filed by the Trustee with the Company, with any stock exchange upon which any Securities are listed and with the Commission. The Company agrees to notify the Trustee when any Securities become listed on any stock exchange or delisted therefrom.

## ARTICLE VI.

## REMEDIES OF THE TRUSTEE AND SECURITYHOLDERS ON
## EVENT OF DEFAULT

Section 6.01          Events of Default.

(a)     Whenever used herein with respect to Securities of a particular series, "Event of Default" means any one or more of the following events that has occurred and is continuing, except with respect to any series of Securities for which the supplemental indenture or resolution of the Board of Directors under which such series of Securities is issued or in the form of Security for such series expressly provides that any such Event of Default shall not apply to such series of Securities:

(1)     default in the payment of any installment of interest upon any of the Securities of such series as and when the same shall become due and payable, and continuance of such default for a period of 30 days; or

(2)     default in the payment of all or any part of the principal or premium, if any, on any of the Securities of such series as and when the same shall become due and payable either at maturity, upon redemption, by declaration or otherwise; or

(3)     default in the payment of any sinking fund installment as and when the same shall become due and payable by the terms of the Securities of such series; or

(4)     default in the performance, or breach, of any covenant or agreement of Tyco or the Company in respect of the Securities of such series and, if applicable, the related Guarantee (other than a covenant or agreement in respect of the Securities of such series and, if applicable, the related Guarantee a default in whose performance or whose breach is elsewhere in this Section specifically dealt with), and continuance of such

33

default or breach for a period of 90 days after the date on which there has been given, by registered or certified mail, to Tyco and the Company by the Trustee or to Tyco, the Company and the Trustee by the Holders of at least 25% in principal amount of the Outstanding Securities of all series affected thereby, a written notice specifying such default or breach and requiring it to be remedied and stating that such notice is a "Notice of Default" hereunder; or

(5)     if Tyco shall have issued a Guarantee with respect to such Securities, such Guarantee shall for any reason cease to be, or shall for any reason be asserted in writing by Tyco or the Company not to be, in full force and effect and enforceable in accordance with its terms except to the extent contemplated by the Indenture and any such Guarantee;

(6)     a court having jurisdiction in the premises shall enter a decree or order for relief in respect of the Company or, if Tyco shall have issued a Guarantee with respect to such Securities, Tyco in an involuntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect, or appointing a receiver, liquidator, assignee, custodian, trustee or sequestrator (or similar official) of the Company or, if applicable, Tyco or for any substantial part of its property or ordering the winding up or liquidation of its affairs, and such decree or order shall remain unstayed and in effect for a period of 90 consecutive days; or

(7)     the Company or, if Tyco shall have issued a Guarantee with respect to such Securities, Tyco shall commence a voluntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter is effect, or consent to the entry of an order for relief in an involuntary case under any such law, or consent to the appointment of or taking possession by a receiver, liquidator, assignee, custodian, trustee or sequestrator (or similar official) of the Company or, if applicable, Tyco or for any substantial part of its property, or make any general assignment for the benefit of creditors; or

(8)     any other Event of Default provided in the supplemental indenture or resolution of the Board of Directors under which such series of Securities is issued or in the form of Security for such series.

(b)     In each and every such case, unless the principal of all the Securities of that series shall have already become due and payable, either the Trustee or the holders of not less than 25% in aggregate principal amount of the Securities of that series then Outstanding hereunder, by notice in writing to Tyco and the Company (and to the Trustee if given by such Securityholders), may declare the unpaid principal of all the Securities of that series to be due and payable immediately, and upon any such declaration the same shall become and shall be immediately due and payable, notwithstanding anything contained in this Indenture or in the Securities of that series or established with respect to that series pursuant to Section 2.01 to the contrary.

(c)     At any time after the principal of the Securities of that series shall have been so declared due and payable, and before any judgment or decree for the payment of the amount due shall have been obtained or entered as hereinafter provided, the holders of a majority in

34

expressed in such Security (or in the case of redemption, on the redemption date), or to institute suit for the enforcement of any such payment on or after such respective dates or redemption date, shall not be impaired or affected without the consent of such holder. By accepting a Security hereunder it is expressly understood, intended and covenanted by the taker and holder of every Security of such series with every other such taker and holder and the Trustee, that no one or more holders of Securities of such series shall have any right in any manner whatsoever by virtue or by availing of any provision of this Indenture to affect, disturb or prejudice the rights of the holders of any other of such Securities, or to obtain or seek to obtain priority over or preference to any other such holder, or to enforce any right under this Indenture, except in the manner herein provided and for the equal, ratable and common benefit of all holders of Securities of such series. For the protection and enforcement of the provisions of this Section 6.04, each Securityholder and the Trustee shall be entitled to such relief as can be given either at law or in equity.

Section 6.05          **Rights and Remedies Cumulative; Delay or Omission not Waiver.**

(a)          Except as otherwise provided in Section 2.07, all powers and remedies given by this Article VI to the Trustee or to the Securityholders, to the extent permitted by law, shall be deemed cumulative and not exclusive of any other powers and remedies available to the Trustee or the holders of the Securities, by judicial proceedings or otherwise, to enforce the performance or observance of the covenants and agreements contained in this Indenture or otherwise established with respect to such Securities.

(b)          No delay or omission of the Trustee or of any holder of any of the Securities to exercise any right or power accruing upon any Event of Default occurring and continuing shall impair any such right or power, or shall be construed to be a waiver of any such default or on acquiescence therein. Subject to the provisions of Section 6.04, every power and remedy given by this Article VI or by law to the Trustee or the Securityholders may be exercised from time to time, and as often as shall be deemed expedient, by the Trustee or by the Securityholders.

Section 6.06          **Control by Securityholders.**

The holders of a majority in aggregate principal amount of the Securities of any series at the time Outstanding, determined in accordance with Section 8.04, shall have the right to direct the time, method and place of conducting any proceeding for any remedy available to the Trustee or exercising any trust or power conferred on the Trustee with respect to such series; provided, however, that such direction shall not be in conflict with any rule of law or with this Indenture or be unduly prejudicial to the rights of holders of Securities of any other series at the time Outstanding determined in accordance with Section 8.04. Subject to the provisions of Section 7.01, the Trustee shall have the right to decline to follow any such direction if the Trustee in good faith, by a Responsible Officer or Responsible Officers of the Trustee, shall determine that the proceeding so directed would involve the Trustee in personal liability. The holders of a majority in aggregate principal amount of the Securities of any series at the time Outstanding affected thereby, determined in accordance with Section 8.04, on behalf of the holders of all of the Securities of such series may waive any past default in the performance of any of the covenants contained herein or established pursuant to Section 2.01 with respect to such series and its consequences, except a default in the payment of the principal of, premium, if any, or

concerns such Security. Except as aforesaid any such action taken by the holder of any Security shall be conclusive and binding upon such holder and upon all future holders and owners of such Security, and of any Security issued in exchange therefor, on registration of transfer thereof or in place thereof, irrespective of whether or not any notation in regard thereto is made upon such Security. Any action taken by the holders of the majority or percentage in aggregate principal amount of the Securities of a particular series specified in this Indenture in connection with such action shall be conclusively binding upon the Company, the Trustee and the holders of all the Securities of that series.

## ARTICLE IX.

## SUPPLEMENTAL INDENTURES

**Section 9.01**        <u>Supplemental Indentures Without the Consent of Securityholders.</u>

In addition to any supplemental indenture otherwise authorized by this Indenture, Tyco, the Company and the Trustee from time to time and at any time may enter into an indenture or indentures supplemental hereto (which shall conform to the provisions of the Trust Indenture Act as then in effect), without the consent of the Securityholders, for one or more of the following purposes:

(a)        to cure any ambiguity, defect, or inconsistency herein or in the Securities of any series, including making such changes as are required for this Indenture to comply with the Trust Indenture Act, or to make such other provisions in regard to matters or questions arising under this Indenture or under any supplemental indenture as the Board of Directors of the Company may deem necessary or desirable, and which shall not in either case adversely affect the interests of the Holders of the Securities in any material respects;

(b)        to evidence the succession of another Person to Tyco or the Company, or successive successions, and the assumption by the successor Person of the covenants, agreements and obligations of Tyco or the Company, as the case may be, pursuant to Article X;

(c)        to provide for uncertificated Securities in addition to or in place of certificated Securities;

(d)        to add to the covenants of the Company for the benefit of the holders of all or any outstanding series of Securities (and if such covenants are to be for the benefit of less than all outstanding series of Securities, stating that such covenants are expressly being included solely for the benefit of such series) or to surrender any right or power herein conferred upon Tyco or the Company;

(e)        to add any additional Events of Default for the benefit of the holders of all or any outstanding series of Securities (and if such Events of Default are to be applicable to less than all outstanding series, stating that such Events of Default are expressly being included solely to be applicable to such series);

(f)        to change or eliminate any of the provisions of this Indenture, provided that any such change or elimination shall not become effective with respect to any outstanding Security of

49

any series created prior to the execution of such supplemental indenture which is entitled to the benefit of such provision and as to which such supplemental indenture would apply;

(g)    to secure the Securities or to provide that any of the Company's obligations under any series of the Securities or this Indenture shall be guaranteed and the terms and conditions for the release or substitution of such security or guarantee;

(h)    to make any other change that does not adversely affect the rights of any Securityholder of Outstanding Securities in any material respect;

(i)    to provide for the issuance of and establish the form and terms and conditions of the Securities of any series as provided in Section 2.01, to provide which, if any, of the covenants of the Company shall apply to such series, to provide which of the Events of Default shall apply to such series, to establish the form of any certifications required to be furnished pursuant to the terms of this Indenture or any series of Securities, or to define the rights of the holders of any series of Securities;

(j)    to issue additional Securities of any series; provided that such additional Securities have the same terms as, and be deemed part of the same series as, the applicable series of Securities issued hereunder to the extent required by Section 2.01(b); or

(k)    to evidence and provide for the acceptance of appointment hereunder by a successor Trustee with respect to the Securities of one or more series and to add to or change any of the provision of this Indenture as shall be necessary to provide for or facilitate the administration of the trust hereunder by more than one Trustee.

Upon the request of the Company, accompanied by Board Resolutions authorizing the execution of any such supplemental indenture, and upon receipt by the Trustee of the documents described in Section 9.03, the Trustee shall join with Tyco and the Company in the execution of any such supplemental indenture, and to make any further appropriate agreements and stipulations that may be therein contained, but the Trustee shall not be obligated to enter into any such supplemental indenture that affects the Trustee's own rights, duties or immunities under this Indenture or otherwise.

Any supplemental indenture authorized by the provisions of this Section 9.01 may be executed by Tyco, the Company and the Trustee without the consent of the holders of any of the Securities at the time Outstanding, notwithstanding any of the provisions of Section 9.02.

Section 9.02    **Supplemental Indentures with Consent of Securityholders.**

With the consent (evidenced as provided in Section 8.01) of the holders of not less than a majority in aggregate principal amount of the Securities of each series at the time Outstanding affected by such supplemental indenture or indentures, Tyco and the Company, when authorized by Board Resolutions, and the Trustee from time to time and at any time may enter into an indenture or indentures supplemental hereto (which shall conform to the provisions of the Trust Indenture Act as then in effect) for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of this Indenture or of any supplemental indenture or of modifying in any manner not covered by Section 9.01 the rights of the holders of the

Securities of such series under this Indenture; provided, however, that no such supplemental indenture, without the consent of the holders of each Security then Outstanding and affected thereby, shall (i) extend a fixed maturity of or any installment of principal of any Securities of any series or reduce the principal amount thereof or reduce the amount of principal of any original issue discount security that would be due and payable upon declaration of acceleration of the maturity thereof; (ii) reduce the rate of or extend the time for payment of interest on any Security of any series; (iii) reduce the premium payable upon the redemption of any Security; (iv) make any Security payable in Currency other than that stated in the Security; (v) impair the right to institute suit for the enforcement of any payment on or after the fixed maturity thereof (or in the case of redemption, on or after the redemption date); or (vi) reduce the aforesaid percentage of Securities, the holders of which are required to consent to any such supplemental indenture or indentures.

A supplemental indenture which changes or eliminates any covenant, Event of Default or other provision of this Indenture that has been expressly included solely for the benefit of one or more particular series of Securities, if any, or which modifies the rights of the holders of Securities of such series with respect to such covenant, Event of Default or other provision, shall be deemed not to affect the rights under this Indenture of the holders of Securities, if any, of any other series.

It shall not be necessary for the consent of Securityholders of a series affected thereby under this Section 9.02 to approve the particular form of any proposed supplemental indenture, but it shall be sufficient if such consent shall approve the substance thereof.

Promptly after the execution by Tyco, the Company and the Trustee of any supplemental indenture pursuant to the provisions of this Section 9.02, the Company shall mail or caused to be mailed a notice thereof by first class mail to the Holders of Securities of each series affected thereby at their addresses as they shall appear on the Security Register, setting forth in general terms the substance of such supplemental indenture. Any failure of the Company to mail such notice, or any defect therein, shall not in any way impair or affect the validity of any such supplemental indenture.

Section 9.03        **Effect of Supplemental Indentures.**

Upon the execution of any supplemental indenture pursuant to the provisions of this Article IX or Section 10.01, this Indenture shall be and be deemed to be modified and amended with respect to such series in accordance therewith and the respective rights, limitations of rights, obligations, duties and immunities under this Indenture of the Trustee, Tyco, the Company and the holders of Securities of the series affected thereby shall thereafter be determined, exercised and enforced hereunder subject in all respects to such modifications and amendments, and all the terms and conditions of any such supplemental indenture shall be and be deemed to be part of the terms and conditions of this Indenture for any and all purposes.

Section 9.04        **Securities Affected by Supplemental Indentures.**

Securities of any series affected by a supplemental indenture and authenticated and delivered after the execution of such supplemental indenture pursuant to the provisions of this

51

Article or of Section 10.01 may bear a notation in form approved by the Company, provided such form meets the requirements of any exchange upon which such series may be listed, as to any matter provided for in such supplemental indenture. If the Company shall so determine, new Securities of that series so modified as to conform, in the opinion of the Board of Directors of the Company, to any modification of this Indenture contained in any such supplemental indenture may be prepared by the Company, authenticated by the Trustee and delivered in exchange for the Securities of that series then Outstanding.

Section 9.05          Execution of Supplemental Indentures.

Upon the request of the Company, accompanied by Board Resolutions authorizing the execution of any such supplemental indenture, and, if applicable, upon the filing with the Trustee of evidence of the consent of Securityholders required to consent thereto as aforesaid, the Trustee shall join with Tyco and the Company in the execution of such supplemental indenture unless such supplemental indenture affects the Trustee's own rights, duties or immunities under this Indenture or otherwise, in which case the Trustee in its discretion may but shall not be obligated to enter into such supplemental indenture. The Trustee, subject to the provisions of Section 7.01, may receive an Opinion of Counsel and Officers' Certificate as conclusive evidence that any supplemental indenture executed pursuant to this Article IX is authorized or permitted by, and conforms to, the terms of this Article IX and that it is proper for the Trustee under the provisions of this Article IX to join in the execution thereof; provided, however, that such Opinion of Counsel and Officers' Certificate need not be provided in connection with the execution of a supplemental indenture that establishes the terms of a series of Securities pursuant to Section 2.01.

Promptly after the execution by the Company and the Trustee of any supplemental indenture pursuant to the provisions of this Section 9.05, the Trustee shall transmit by mail, first class postage prepaid, a notice, setting forth in general terms the substance of such supplemental indenture, to the Securityholders of all series affected thereby as their names and addresses appear upon the Security Register. Any failure of the Trustee to mail such notice, or any defect therein, shall not, however, in any way impair or affect the validity of any such supplemental indenture.

## ARTICLE X.

## SUCCESSOR CORPORATION

Section 10.01          Consolidation, Merger and Sale of Assets.

Each of Tyco and the Company, covenants that it will not merge or consolidate with any other Person or sell or convey all or substantially all of its assets to any Person, unless

(i) either Tyco or the Company, as the case may be, shall be the continuing entity, or the successor entity or the Person which acquires by sale or conveyance substantially all the assets of Tyco or the Company, as the case may be (if other than Tyco or the Company, as the case may be), (A) shall expressly assume the due and punctual payment of the principal of, premium, if any, and interest on all

the Securities or, if applicable, the obligations under any Guarantee, as the case may be, according to their tenor, and the due and punctual performance and observance of all of the covenants and agreements of this Indenture to be performed or observed by Tyco or the Company, as the case may be, by supplemental indenture satisfactory to the Trustee, executed and delivered to the Trustee by such Person and (B) is an entity treated as a "corporation" for United States tax purposes or Tyco or the Company, as the case may be, obtains either (x) an opinion, in form and substance reasonably acceptable to the Trustee, of tax counsel of recognized standing reasonably acceptable to the Trustee, which counsel shall include Gibson, Dunn & Crutcher LLP, or (y) a ruling from the United States Internal Revenue Service, in either case to the effect that such merger or consolidation, or such sale or conveyance, will not result in an exchange of the Securities for new debt instruments for United States federal income tax purposes; and

(ii) no Event of Default and no event that, after notice or lapse of time or both, would become an Event of Default shall be continuing immediately after such merger or consolidation, or such sale or conveyance.

The Company shall deliver to the Trustee prior to the consummation of the proposed transaction an Officers' Certificate to the foregoing effect and an Opinion of Counsel stating that the proposed transaction and such supplemental indenture comply with this Indenture.

To the extent that a Board Resolution or supplemental indenture pertaining to any series provides for different provisions relating to the subject matter of this Article X, the provisions in such Board Resolution or supplemental indenture shall govern for purposes of such series.

Section 10.02     **Successor Person Substituted.**

Upon any consolidation or merger, or any sale, lease, conveyance or other disposition of all or substantially all of the assets of Tyco or the Company, as the case may be, the successor Person formed by such consolidation or into or with which Tyco or the Company, as the case may be, is merged or to which such sale, lease, conveyance or other disposition is made shall succeed to, and be substituted for, and may exercise every right and power of, Tyco or the Company, as the case may be, under this Indenture with the same effect as if such successor Person has been named as Tyco or the Company, as the case may be, herein. In the event of any such sale or conveyance (other than a conveyance by way of lease) Tyco or the Company, as the case may be, or any successor entity which shall theretofore have become such in the manner described in this Article, shall be discharged from all obligations and covenants under this Indenture, the Securities and any Guarantee and may be liquidated and dissolved.

53

If a notice or communication is mailed in the manner provided above within the time prescribed, it is conclusively presumed duly given, whether or not the addressee receives it.

Section 13.04         Governing Law.

This Indenture and each Security shall be deemed to be a contract made under the internal laws of the State of New York, and for all purposes shall be construed in accordance with the laws of said State without regard to conflicts of laws principles that would require the application of any other law. This Indenture is subject to the provisions of the Trust Indenture Act that are required to be part of this Indenture and shall, to the extent applicable, be governed by such provisions.

Section 13.05         Treatment of Securities as Debt.

It is intended that the Securities will be treated as indebtedness and not as equity for United States federal income tax purposes. The provisions of this Indenture shall be interpreted to further this intention.

Section 13.06         Compliance Certificates and Opinions.

(a)       Upon any application or demand by Tyco or the Company to the Trustee to take any action under any of the provisions of this Indenture, Tyco or the Company shall furnish to the Trustee an Officers' Certificate stating that, in the opinion of the signers, all conditions precedent provided for in this Indenture relating to the proposed action have been complied with and an Opinion of Counsel stating that in the opinion of such counsel all such conditions precedent have been complied with, except that in the case of any such application or demand as to which the furnishing of such documents is specifically required by any provision of this Indenture relating to such particular application or demand, no additional certificate or opinion need be furnished.

(b)       Each certificate or opinion provided for in this Indenture and delivered to the Trustee with respect to compliance with a condition or covenant in this Indenture shall include: (1) a statement that the Person making such certificate or opinion has read such covenant or condition; (2) a brief statement as to the nature and scope of the examination or investigation upon which the statements or opinions contained in such certificate or opinion are based; (3) a statement that, in the opinion of such Person, he has made such examination or investigation as is necessary to enable him to express an informed opinion as to whether or not such covenant or condition has been complied with; and (4) a statement as to whether or not, in the opinion of such Person, such condition or covenant has been complied with.

Section 13.07         Payments on Business Days.

Except as provided pursuant to Section 2.01 pursuant to a Board Resolution, and as set forth in an Officers' Certificate or established in one or more indentures supplemental to this Indenture, in any case where the date of maturity of interest or principal of any Security or the date of redemption of any Security shall not be a Business Day, then payment of principal, premium, if any, or interest or principal (and premium, if any) may be made on the next

60