UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE BANK OF NEW YORK, as
Indenture Trustee,

               Plaintiff,

      v.

TYCO INTERNATIONAL GROUP, S.A.,
TYCO INTERNATIONAL, LTD., and
TYCO INTERNATIONAL FINANCE
S.A.,

            Defendants.

Docket No. 07 CV 4659 (SAS)


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF THE BANK OF NEW
YORK'S MOTION TO DISMISS THE FIRST AMENDED COUNTERCLAIMS**


Dechert LLP
30 Rockefeller Plaza
New York, New York 10112
(212) 698-3500

Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019
(212) 373-3000

*Attorneys for Plaintiff The Bank of New York*

# TABLE OF CONTENTS

**Page**

Statement of the Case ................................................................................................................... 3

Argument ....................................................................................................................................... 6

THE COURT SHOULD GRANT THE TRUSTEE'S MOTION TO DISMISS ........................... 6

    A.    Counterclaimants' Claim That the Trustee Breached the Indentures
By Refusing To Sign the Proposed Supplemental Indentures Should Be
Dismissed ............................................................................................................... 7

        1.    The First Counterclaim Should Be Dismissed Because It Is Not a
Separate Claim for Relief but Merely Attacks the Bona Fides
Of Plaintiff's Main Claim ...................................................................... 7

        2.    The Indentures Do Not Require the Trustee To Execute the
Proposed Supplemental Indentures ......................................................... 7

        3.    The Trustee Has the Obligation and Duty To Determine Whether
the Proposed Supplemental Indentures Are Authorized by the
Indentures ............................................................................................... 9

    B.    Counterclaimants' Claim That the Trustee Breached the Indentures
By Requesting Creation of a Reserve Fund Should Be Dismissed ...................... 12

        1.    Tyco and TIFSA Have No Control Over Payments Held in Trust
And Have Suffered No Damages ........................................................... 13

        2.    The Indentures Permit the Trustee To Recoup Fees and Expenses .......... 15

    C.    Counterclaimants' Claims for Breach of the Implied Covenant of Good
Faith and Fair Dealing Should Be Dismissed ..................................................... 17

        1.    The Claim Is Duplicative of the Breach of Contract Claim ..................... 17

        2.    The Trustee Cannot Violate the Duty of Good Faith and Fair
Dealing by Exercising its Rights Under the Indentures ........................... 18

        3.    The Counterclaim Does Not Allege Any Facts Supporting the
Claim for Breach of the Duty of Good Faith and Fair Dealing ............... 19

    D.    Counterclaimants' Requests for a Declaratory Judgment Should Be
Dismissed ............................................................................................................. 20

Conclusion ................................................................................................................................. 22

# TABLE OF AUTHORITIES

**Page**

CASES

*Ambac Indem. Corp.* v. *Bankers Trust Co.*,
   573 N.Y.S.2d 204 (N.Y. Sup. Ct. 1991) ................................................................10

*Ari & Co., Inc.* v. *Regent Int'l Corp.*,
   273 F. Supp. 2d 518 (S.D.N.Y. 2003)..................................................................18

*Assocs. Capital Servs. Corp.* v. *Fairway Private Cars, Inc.*,
   590 F. Supp. 10 (E.D.N.Y. 1982) ..........................................................................18

*Bell Atl.* v. *Twombly*,
   550 U.S. __, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)......................................6, 7

*Broad* v. *Rockwell Int'l Corp.*,
   642 F.2d 929 (5th Cir. 1981) ..................................................................................18

*Canstar* v. *J.A. Jones Constr. Co.*,
   622 N.Y.S.2d 730 (N.Y. App. Div. 1995) ............................................................18

*CIBC Bank & Trust Co.* v. *Banco Cent. Do Braz.*,
   886 F. Supp. 1105 (S.D.N.Y. 1995)........................................................................18

*Elliott Assoc.* v. *J. Henry Schroder Bank & Trust Co.*,
   838 F.2d 66 (2d Cir. 1988).......................................................................................9

*Ezrasons, Inc.* v. *Am. Credit Indem. Co.*,
   683 N.Y.S.2d 264 (N.Y. App. Div. 1999) ............................................................18

*Fasolino Foods Co.* v. *Banca Nazionale del Lavoro*,
   961 F.2d 1052 (2d Cir. 1992)..................................................................................17

*First Nat'l Bank* v. *A. M. Castle & Co. Employee Trust*,
   180 F.3d 814 (7th Cir. 1999) ..................................................................................19

*Groseclose* v. *Merchants Nat'l Bank & Trust Co.*,
   335 N.Y.S.2d 652 (N.Y. Sup. Ct. 1972) ................................................................10

*Haas* v. *Rhody*,
   No. 07-cv-1021, 2007 WL 2089282 (S.D.N.Y. Jul. 20, 2007)..............................6, 7

*Harris* v. *Provident Life & Accident Ins. Co.*,
   310 F.3d 73 (2d Cir. 2002)......................................................................................17

*Harris* v. *Steinem*,
    571 F.2d 119 (2d Cir. 1978)................................................................7

*Hartford Fire Ins. Co.* v. *Federated Dep't Stores, Inc.*,
    723 F. Supp. 976 (S.D.N.Y. 1989) ......................................................18

*Kramer* v. *Time Warner Inc.*,
    937 F.2d 767 (2d Cir. 1991)................................................................3

*Lewis Tree Serv., Inc.* v. *Lucent Techs., Inc.*,
    No. 99-cv-8556, 2000 WL 1277303 (S.D.N.Y. Sept. 8, 2000) ................20

*Lincoln Nat'l Corp.* v. *Steadfast Ins. Co.*,
    No. 06 Civ. 58, 2006 WL 1660591 (N.D. Ind. June 9, 2006)..................20

*Nat'l Westminster Bank* v. *Ross*,
    130 B.R. 656 (S.D.N.Y. 1991)..............................................................18

*Page Mill Asset Mgmt.* v. *Credit Suisse First Boston Corp.*,
    No. 98-cv-6907, 2000 WL 877004 (S.D.N.Y. Jun. 30, 2000)..................9

*Petrohawk Energy Corp.* v. *Law Debenture Trust Co.*,
    No. 06-cv-9404, 2007 WL 211096 (S.D.N.Y. Jan. 29, 2007) ....................13, 14, 15

*Sharma* v. *Skaarup Ship Mgmt. Corp.*,
    699 F. Supp. 440 (S.D.N.Y. 1988) ......................................................18

*Sharon Steel Corp.* v. *Chase Manhattan Bank*,
    691 F.2d 1039 (2d Cir. 1982)..............................................................5, 21

*Siradas* v. *Chase Lincoln First Bank, N.A.*,
    No. 98-cv-4028, 1999 WL 787658 (S.D.N.Y. Sept. 30, 1999) ................18

*Stanley Works* v. *C.S. Mersick & Co.*,
    1 F.R.D. 43 (D. Conn. 1939)................................................................20

*United States* v. *Zanfei*,
    353 F. Supp. 2d 962 (N.D. Ill. 2005) ..................................................20

**STATUTES**

28 U.S.C. § 2201(a) ..................................................................................................20

**OTHER AUTHORITIES**

3 Moore's Federal Practice ¶ 13.13, at 13-308 (2d ed. 1974)..........................................7

Fed. R. Civ. P. 12(b)(6)............................................................................................6

Restatement (Third) of Trusts § 71 (2007) ................................................................19

The first amended counterclaims in this action are superfluous allegations that state no cognizable claim for relief.

There is no reason for these four counterclaims other than defendants wish to have some allegations – something, anything – to plead against plaintiff Trustee The Bank of New York.

Two of the counterclaims – asserting that the Trustee breached the Indentures by failing to sign supplements that defendants demanded – amount to premature and meritless malicious prosecution actions in masquerade. In this action, the Trustee alleges that defendants are in violation of the Indentures. Defendants' counterclaims – in their totality – are simply a denial that this is so; the counterclaims allege only that the Trustee was not permitted to bring this action seeking a declaration that defendants are in breach, that the Trustee has no right to claim that defendants violated the Indentures. This is no independent claim for relief; it merely asserts that the Trustee is wrong. That defendants can cite no damages from the Trustee's supposed breach (because defendants went ahead with the transaction anyway) only confirms as much.

A third counterclaim is an obvious effort to complicate the Trustee's prosecution of its claims against defendants by cutting off the Trustee's access to funds that the Indenture specifically allows the Trustee to use to fund litigation. The Trustee has the right, under the common law and under the terms of the Indentures, to create a reserve fund out of interest payments to the Noteholders. Defendants have no ownership stake in the interest payments once the payments are due and owing and paid to the Trustee or the paying agent, and therefore have no control over the subsequent disposition of those monies. Nevertheless, purporting to anoint themselves as guardians for the Noteholders (but in fact simply trying to bleed the Trustee),

defendants seek a declaration that the Trustee has no rights to these funds. As a matter of law, defendants are wrong.

The final counterclaim is merely a mirror-image of the Trustee's own claim for declaratory judgment; defendants want the opposite of the judgment the Trustee seeks. As a matter of law, such redundant and unnecessary claims have no place in this action.

These baseless counterclaims are in keeping with defendants' inexplicable and unworthy treatment of its public lenders. Two years ago, defendants announced one of the largest asset-stripping transactions in American history. The issuer of that public debt – Tyco International Group, S.A. or "TIGSA" – was a diversified global conglomerate. Defendants broke apart that company, transferred its most valuable assets to the shareholders for free, and placed TIGSA in liquidation. Before doing so, TIGSA sought the consent of its public lenders through misleading "clarifying amendments" to the Indentures, which the Noteholders overwhelmingly declined to grant. So TIGSA went forward anyway to break apart and liquidate itself.

Defendants have since followed this self-help model. TIGSA asked the Trustee to sign the supplemental indentures essential to transfer the Notes. When the Trustee said no and brought this action asking for guidance, defendants could have litigated the issue right then and there – exactly the issues it now redresses as counterclaims. Instead, rather than do so, defendants again just went ahead anyway to transfer the Notes. Since then, unhappy that the Trustee has pursued the Noteholders' rights, defendants have declined to pay interest due to the Trustee as paying agent in order to prevent the Trustee from creating a reserve fund for legal fees – once more, just doing whatever they want no matter the law or the Indentures. To add to the

burden and expense, they concoct counterclaims that are nothing but denials in other language. This Court should dismiss the counterclaims.

### Statement of the Case

This statement of the case is based on (1) the portions of the allegations of the Trustee's first amended complaint that were admitted in the answer, (2) the allegations in Tyco and TIFSA's first amended counterclaims, (3) the procedural history before this Court, and (4) the language of the Indentures, which are attached to the Trustee's first amended complaint, are incorporated by reference in the counterclaim, and are public documents filed with the Securities and Exchange Commission. *See Kramer* v. *Time Warner Inc.*, 937 F.2d 767, 773-74 (2d Cir. 1991) (court considering motion to dismiss may take judicial notice of the contents of documents filed with the Securities and Exchange Commission).[1]

**The Parties**

TIGSA is an issuer of Notes to public creditors. (Answer and First Amended Counterclaims ("Ans.") ¶ 95.) TIGSA issued Notes, backed by its assets, in the amount of approximately $4.6 billion pursuant to a 1998 Indenture and approximately $1 billion pursuant to a 2003 Indenture. (Ans. ¶ 32.) Tyco International, Ltd. is the Guarantor of these Notes. (Ans. ¶ 19.) As we explain below, this lawsuit arises from TIGSA's attempt to transfer these Notes, together with less than a third of its assets, to Tyco International Finance S.A. or "TIFSA."

The Bank of New York is the Indenture Trustee under each of these Indentures. (Ans. ¶ 95.)

---

[1]    For the convenience of the Court, the provisions of the Indentures that are cited in this memorandum are attached to the accompanying declaration of Douglas M. Pravda.

**The Asset-Stripping Transaction**

At the time it issued the Notes, TIGSA was a holding company and its assets consisted of an electronics business, a healthcare business, a fire and security business, and a engineered products and services business that were run by TIGSA's various subsidiaries. (Ans. ¶ 20.) In January 2006, TIGSA announced a plan to separate into three independent, publicly traded companies: one for its electronics business, one for its healthcare business, and one for its fire and security and engineered products and services company. (Ans. ¶ 35.)

The 1998 and 2003 Indentures contained standard "successor obligor clauses" that prohibited TIGSA from disposing of "all or substantially all" of its assets unless the entity acquiring the assets assumed all of TIGSA's liabilities under the Indentures. (Ans. ¶ 96.) In April 2007, TIGSA issued Solicitation Documents (Ans. ¶ 6), in which it requested that the Noteholders agree that transferring the Notes to the new fire and security and engineered products and services company would not violate the successor obligor clauses. Less than the requisite 50% of the Noteholders gave their approval. Nevertheless, in May 2007, TIGSA delivered to the Trustee two proposed supplemental indentures under which TIFSA would have become a co-obligor on the Notes and Tyco would have assumed TIGSA's obligations under the Indentures. (Ans. ¶¶ 97-98.) TIGSA asserted that the Trustee should sign these supplemental indentures notwithstanding its failure to obtain the consent of the Noteholders. (Ans. ¶ 100.)

On June 4, 2007, the Trustee filed a declaratory judgment action, naming Tyco and TIGSA as defendants and seeking a declaration as to whether it was permitted or authorized by the Indentures to sign the proposed supplemental indentures. Certain Noteholders then moved to intervene in the action and filed a complaint seeking a declaration that TIGSA's

proposed transformation would violate the successor obligor clauses and that the Trustee was prohibited from executing the proposed supplemental indentures.

Rather than waiting for the result of that action or even asking this Court to expedite a decision on that action, TIGSA went ahead with its transformation approximately one month later. It spun off its electronics and healthcare business to Tyco Electronics, Ltd. and Coviden Ltd., respectively (Ans. ¶¶ 22-23) and transferred its fire and security and engineered products and services businesses, along with the Notes, to TIFSA (the "Asset-Stripping Transaction"). As a result, the Notes, which at the time of issue had been backed by all of TIGSA's businesses, were left with only the assets of two of the four, which the Noteholders' complaint alleged were qualitatively and quantitatively the weakest of TIGSA's businesses.

### The Trustee's Damages Complaint and Summary Judgment Motion

In a conference with the Court on October 2, 2007, the parties and the Court agreed that the Trustee could bring a damages complaint on behalf of the Noteholders and could move for summary judgment as to whether the Asset-Stripping Transaction violated the Second Circuit's holding in *Sharon Steel* that successor obligor clauses "do not permit assignment of the public debt to another party in the course of a liquidation unless 'all or substantially all' of the assets of the company at the time the plan of liquidation is determined upon are transferred to a single purchaser." *Sharon Steel Corp.* v. *Chase Manhattan Bank*, 691 F.2d 1039, 1051 (2d Cir. 1982). The Trustee filed its damages complaint on October 18, 2007, adding to its existing declaratory judgment action a breach of contract claim on behalf of the Noteholders. Defendants answered that complaint and asserted counterclaims on November 15, 2007. On December 4, 2007, the Trustee filed the summary judgment motion for which it received this Court's approval at the earlier pre-motion conference.

**The Counterclaims**

That same day, Tyco (as the guarantor of the Notes issued by TIGSA) and TIFSA (as the purported obligor of the Notes in TIGSA's place) filed their first amended counterclaims. TIGSA, because of the liquidation, no longer exists as a functioning entity. In the counterclaims, which significantly overlap with the Trustee's claims in its complaint and motion for summary judgment, Tyco and TIFSA assert that (1) the Trustee breached its obligations under the Indentures when it refused to sign the proposed supplemental indentures; (2) the Trustee breached those same obligations when it allegedly created a reserve fund for this litigation from the interest payment pool for the Notes; (3) the Trustee's actions breached a duty of good faith and fair dealing; and (4) Tyco and TIFSA are entitled to declarations that (i) the Asset-Stripping Transaction is legal and the Trustee must therefore sign the proposed supplemental indentures, and (ii) the Trustee is not entitled to collect fees and expenses from the interest payment pool for the Notes and must be removed as trustee for allegedly doing so. The Trustee now moves to dismiss these counterclaims.

**Argument**

**THE COURT SHOULD GRANT
THE TRUSTEE'S MOTION TO DISMISS**

The standards applicable on a motion to dismiss are easily stated. Dismissal of a complaint or cause of action for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) is appropriate "where the complaint fails to plead 'enough facts to state a claim to relief that is plausible on its face.'" *Haas* v. *Rhody*, No. 07-cv-1021, 2007 WL 2089282, at *2 (S.D.N.Y. Jul. 20, 2007) (quoting *Bell Atl.* v. *Twombly*, 550 U.S. __, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)). "Where a plaintiff 'ha[s] not nudged [its] claims across the line from conceivable to

6

plausible, [its] complaint must be dismissed.'" *Id.* (quoting *Twombly*, 127 S. Ct. at 1974) (alterations in original).

**A.  Counterclaimants' Claim That the Trustee Breached the Indentures by Refusing To Sign the Proposed Supplemental Indentures Should Be Dismissed**

**1.  The First Counterclaim Should Be Dismissed Because It Is Not a Separate Claim for Relief but Merely Attacks the Bona Fides of Plaintiff's Main Claim**

In the first counterclaim, Tyco and TIFSA allege that the Trustee breached the 1998 and 2003 Indentures by refusing to execute the proposed supplemental indentures. That assertion is not a separate claim for relief; it is merely an argument that the Trustee's own claim is wrong. Through the counterclaim, Tyco and TIFSA attack the bona fides of the Trustee's claim, criticizing the Trustee for bringing a declaratory judgment claim rather than merely signing the proposed supplemental indentures. This counterclaim is nothing more than a malicious prosecution in masquerade, is premature and unavailing, and must be dismissed.

The Second Circuit affirmed just such a dismissal in *Harris* v. *Steinem*, 571 F.2d 119 (2d Cir. 1978):

> Judge Goettel correctly observed that the counterclaim, while artfully drafted, in essence is a claim for malicious prosecution and it is well settled that a claim in the nature of malicious prosecution, which arises out of the bringing of the main action, generally cannot be asserted either as a compulsory or a permissive counterclaim, since such a claim is premature prior to the determination of the main action.

*Id.* at 124 (quoting 3 Moore's Federal Practice ¶ 13.13, at 13-308 (2d ed. 1974)) (internal quotations omitted). This counterclaim should be dismissed.

**2.  The Indentures Do Not Require the Trustee To Execute the Proposed Supplemental Indentures**

The language of the Indentures confirms that the Trustee was not obligated to execute the proposed supplemental indentures merely because Tyco and TIFSA demanded that

the Trustee do so.  Tellingly, in their counterclaim, Tyco and TIFSA do not cite any language from the Indentures in support of their argument.

As the Court is aware from the pending summary judgment motion, the "successor obligor clauses" provide that TIGSA cannot sell, transfer or convey "all or substantially all" of its assets to another entity unless that transferee entity assumes TIGSA's obligations under the Notes.  (1998 Indenture § 8.1; 2003 Indenture § 10.01.)   Under the Indentures, any transaction, such as the Asset-Stripping Transaction TIGSA executed here, that implicates the successor obligor clauses must be authorized "by supplemental indenture *satisfactory* to the Trustee." (*Id.*; emphasis added.)   As a result, the Trustee, by the plain terms of the Indentures, was charged with determining whether the proposed supplemental indentures were satisfactory.  If they were not, then the Trustee was not obligated to sign the proposed supplemental indentures.

Tyco and TIFSA's position that the Trustee had to sign the proposed supplemental indentures appears to rely on a provision of the Indentures that provides that TIGSA, Tyco and the Trustee may enter into supplemental indentures without the consent of the Noteholders "to evidence the succession of another corporation to the Issuer or any Guarantor . . . and the assumption by the successor Person of the covenants, agreements and obligations of the Issuer." (1998 Indenture § 7.1(b); *see also* 2003 Indenture § 9.01(b).)  However, even these provisions of the Indentures are subject to the successor obligor clauses, which – as discussed above – require a "supplemental indenture *satisfactory* to the Trustee." (1998 Indenture § 8.1; 2003 Indenture § 10.01.)  Consequently, even if the Noteholders' consent were not required to effectuate the Asset-Stripping Transaction (which is not the case), the Trustee still had to make

its own independent determination that the proposed supplemental indentures were satisfactory to it before signing.

The contrast between the 1998 Indenture's language for supplemental indentures with and without the consent of securityholders is yet further evidence that the Trustee was not obligated to execute the proposed supplemental indentures. For supplemental indentures with the consent of the securityholders, the 1998 Indenture provides that the Trustee "*shall join* with the Issuer, Tyco and any other guarantor in the issuance of the supplemental indenture." (1998 Indenture § 7.2 (emphasis added).) (Any such supplemental indenture would, of course, still be required to be satisfactory to the Trustee.) In contrast, for proposed supplemental indentures without the consent of the securityholders, which Tyco and TIFSA assert is the case here, the 1998 Indenture provides that the Trustee "*is hereby authorized to join* with the Issuer, Tyco and any other Guarantor in the execution of any such supplemental indenture." (1998 Indenture § 7.1 (emphasis added).) Thus, for the proposed supplemental indentures at issue here – which did not have the consent of the securityholders – the Trustee was merely "authorized," but certainly not obligated, to execute them.

### 3. The Trustee Has the Obligation and Duty to Determine Whether the Proposed Supplemental Indentures Are Authorized by the Indentures

The Trustee is not required to execute a proposed supplemental indenture that violates the basic terms of the Indentures. If it did so, the Trustee would breach its fiduciary duty to the Noteholders. *See, e.g.*, *Page Mill Asset Mgmt.* v. *Credit Suisse First Boston Corp.*, No. 98-cv-6907, 2000 WL 877004, at *1 (S.D.N.Y. Jun. 30, 2000) ("An indenture trustee breaches its fiduciary duty when it fails to abide by the indenture.") (citing *Elliott Assoc.* v. *J. Henry Schroder Bank & Trust Co.*, 838 F.2d 66, 71 (2d Cir. 1988)). Indeed, we do not understand Tyco and TIFSA to allege that the Trustee is obligated to execute *any* proposed supplemental

9

indenture that is put before it, even if it plainly violates the terms of the Indentures. Rather, Tyco and TIFSA have alleged in their counterclaim that the Trustee is required to execute "any supplemental indenture *that is authorized by the Indentures,*" (Ans. ¶ 113; emphasis added), in other words, one that does not violate the basic terms of the Indentures.

It logically follows that the Trustee must therefore have the obligation and the duty to determine, when asked to execute a proposed supplemental indenture, whether that proposed supplemental indenture is in fact authorized by the terms of the Indentures. Indeed, courts have long recognized that a trustee owes noteholders "the obligations of care and prudence in the performance of his duties" and that the "bondholders have a right to rely upon the trustee to protect their rights." *Ambac Indem. Corp.* v. *Bankers Trust Co.*, 573 N.Y.S.2d 204, 208 (N.Y. Sup. Ct. 1991) (quoting *Groseclose* v. *Merchants Nat'l Bank & Trust Co.*, 335 N.Y.S.2d 652, 657 (N.Y. Sup. Ct. 1972)). If Tyco and TIFSA's position were correct, then every trustee who exercises its fiduciary obligations of care and prudence to Noteholders and later proves to have been mistaken in the position it took would be liable to the issuer – a result which would place trustees in an untenable position.

The Indentures themselves confirm these basic principles of indenture trust law. The rights granted by Tyco to the Trustee under the Indentures include numerous exculpations and rights to rely on both counsel and direction from the Noteholders. For instance, the Indentures provide that "the Trustee shall not be liable for any action taken or omitted by it in good faith and believed by it to be authorized or within the discretion, rights or powers conferred upon it by this Indenture." (1998 Indenture § 5.2(e); *see also* 2003 Indenture § 7.02(e).) Elsewhere, the Indentures provide that "the Trustee shall not be liable for any error of judgment made in good faith by a Responsible Officer or Responsible Officers of the Trustee, unless it

shall be proved that the Trustee was negligent in ascertaining the pertinent facts." (1998 Indenture § 5.1(b); *see also* 2003 Indenture § 7.01(b).) Finally, "the Trustee shall not be liable with respect to any action taken or omitted to be taken by it in good faith in accordance with the direction of the Holders . . . ." (1998 Indenture § 5.1(c); *see also* 2003 Indenture § 7.01(b).) These are just several of the numerous such exculpations and rights to rely on counsel and on the Noteholders that Tyco granted to the Trustee in the Indentures. These provisions confirm that the Indentures, as well as principles of indenture trust law, grant the Trustee the obligation and duty to exercise its independent judgment, and to rely on the advice of counsel, when asked to take certain acts under the Indentures. Here, the Trustee did not breach the Indentures by exercising its rights and duties under the Indentures. On the contrary, the Trustee appropriately exercised that obligation and duty.

Moreover, contrary to the allegations of Tyco and TIFSA's counterclaims, the Trustee did not "refuse" to sign the proposed supplemental indentures. Certain Noteholders requested that the Trustee refrain from signing the proposed supplemental indentures on the ground that the Asset-Stripping Transaction would breach the Indentures. The Court may take judicial notice, based on the proceedings before it, that the Trustee filed this declaratory judgment action *to clarify whether it was permitted or authorized to sign the proposed supplemental indentures.* That action is, of course, still pending, though it has now been amended to include a damages claim on behalf of the Noteholders. Tyco and TIGSA chose not to wait for the declaratory judgment action to be resolved or even seek to expedite resolution thereof. Having decided unilaterally that the Trustee did not have the authority to refuse to sign, Tyco and TIGSA went forward with the Asset-Stripping Transaction approximately one month later, without the Trustee's signature on the proposed supplemental indentures. Thus, the breach

11

that Tyco and TIFSA allege here is a "breach" that is entirely of their own making. Tyco and TIFSA could have tried to expedite the declaratory judgment action so that the Trustee's obligation, if any, to sign the proposed supplemental indentures would have been resolved prior to TIGSA's liquidation, but Tyco and TIFSA chose not to do so.

Finally, Tyco and TIFSA have alleged no damages from the Trustee's alleged refusal to sign the supplemental indentures. Because Tyco and TIGSA went forward with the Asset-Stripping Transaction even without the Trustee's signature on the proposed supplemental indentures, they could not have suffered damages from the Trustee's failure to sign. Indeed, Tyco and TIFSA state only that they are entitled to damages "in an amount to be determined at trial." (Ans. ¶ 117.)

## B.    Counterclaimants' Claim That the Trustee Breached the Indentures By Requesting Creation of a Reserve Fund Should Be Dismissed

In a blatant attempt to cut off the Trustee's funding for this litigation, Tyco and TIFSA allege in the second counterclaim that the Trustee breached the 1998 and 2003 Indentures by making efforts to collect a "reserve" out of interest payments to the Noteholders. Tyco and TIFSA also seek in the second counterclaim (and again in the fourth counterclaim), declaratory relief that the Trustee has no right to collect costs and expenses out of the interest payments to the Noteholders as well as preliminary and permanent injunctive relief to this effect, including the removal of BNY as the indenture trustee. As with the first counterclaim, this argument is contrary to well-settled law and to the plain language of the Indentures themselves.

Indeed, we note – though not germane to this motion to dismiss – that it is Tyco and TIFSA, not the Trustee, who have breached the Indentures. Since 1998, Tyco and TIGSA have made interest payments under the Indentures through the Trustee as paying agent. By now suddenly changing course and making their interest payments directly to the Depository Trust

Company Clearing Corporation ("DTC") rather than to the Trustee, as Tyco and TIFSA concede they have done (Ans. ¶ 108), they have breached the Indentures. Tyco and TIFSA have not identified, and cannot identify, any provisions of the Indentures that allow them to make payment directly to DTC. The Trustee intends to seek relief from this Court for Tyco and TIFSA's actions, which are contrary to the terms of the Indentures and to the parties' prior course of conduct.

### 1.    Tyco and TIFSA Have No Control Over Payments Held in Trust and Have Suffered No Damages

Tyco and TIFSA's claim that the Trustee breached the Indentures by seeking to create a reserve fund are foreclosed by Judge Cote's recent decision in *Petrohawk Energy Corp.* v. *Law Debenture Trust Co.*, No. 06-cv-9404, 2007 WL 211096 (S.D.N.Y. Jan. 29, 2007). On similar facts, the *Petrohawk* court held that "[o]nce the funds were deposited to be held in trust for the purpose of paying the Noteholders, [the issuer] no longer had control over the funds" and therefore could not direct or control the subsequent disposition of those funds. *Id.* at *4. Judge Cote also held that Petrohawk had not alleged or suffered any damages because Petrohawk "does not have ownership of the funds, nor does it have any continuing obligation to the Noteholders from paid funds." *Id.* at *6. Each of these rationales applies equally here. Once Tyco and TIFSA make the interest payments to the paying agent, they are deprived of any control over how that money is distributed, and may not then complain if the Trustee establishes a reserve fund to cover the cost of any expenses and fees. Moreover, Tyco and TIFSA cannot allege any damages once the interest payments are made to the paying agent, as their obligations to the Noteholders as to those payments cease.

*Petrohawk* arose out of several disputes between Petrohawk, which had merged with an issuer of notes pursuant to an indenture, and Law Debenture Trust Company of New

York, which had succeeded another entity as indenture trustee. Law Debenture sued in Delaware Court of Chancery to determine, among other issues, whether the noteholders were entitled to a change of control premium. To fund the litigation, Law Debenture obtained $1.2 million of the interest payment Petrohawk made to the paying agent under the notes. Petrohawk objected to this transfer of money from the paying agent to Law Debenture and filed a separate lawsuit in the Southern District of New York, alleging conversion and tortious interference with contract and seeking the imposition of a constructive trust. *See id.* at *1-2.

Judge Cote rejected Petrohawk's claims. Applying settled principles of trust law that "where a trust exists, depositors lose control over deposited funds," the court found that "[o]nce the funds were deposited to be held in trust for the purpose of paying the Noteholders, Petrohawk no longer had control over the funds." *Id.* at *4. Once Petrohawk deposited the funds with the paying agent, "it relinquished control over the funds and cannot claim ownership of the funds." *Id.* at *5. As a result, the court held, Petrohawk had no control over whether the indenture trustee could use the money to fund a separate lawsuit against Petrohawk.

Judge Cote also found that Petrohawk had not alleged any actual damages. Once Petrohawk made its payment to the paying agent, the Court held, "as a matter of law Petrohawk does not have ownership of the funds, nor does it have any continuing obligation to the Noteholders from paid funds." *Id.* at *6. As a result, the Court held that the alleged breach of creating a litigation reserve "caused no injury to Petrohawk because it no longer had any control of the funds." *Id.*

The relevant facts here are identical to those in *Petrohawk*. As in *Petrohawk*, the language and spirit of the Indentures show a clear intent "to place the funds in a trust and have the funds applied to the specific purpose of making interest payments to Noteholders." *Id.* at *4-

5. For instance, the Indentures provide that the interest payments on the Notes are to be made to the paying agent – here, the Trustee – which must agree to "hold all sums received by it . . . in trust for the benefit of the Holders of the Securities of such series." (1998 Indenture § 3.4; *see also* 2003 Indenture § 4.03(b).) Thus, as in *Petrohawk*, the Indentures here evince the "unambiguous intention to create a trust in the underlying Indenture." *See* 2007 WL 211096, at *5. Applying the trust law principles that the *Petrohawk* court applied, it is clear that Tyco and TIFSA lose any control over or ownership in the interest payments to the Trustee once those payments are made. At that point, Tyco's and TIFSA's obligations with respect to those payments have been discharged. Thus, Tyco and TIFSA simply have no control over what happens to the interest payments after they are made to the paying agent.

And Tyco and TIFSA have suffered no damages because they no longer have any obligations with respect to the funds at the time of the Trustee's alleged misappropriation of the funds to create a fee reserve. The Trustee and Noteholders cannot ask Tyco and TIFSA to pay additional interest simply because a portion of the interest payment was used to fund a fee reserve. Tyco's and TIFSA's interest payment obligations have been satisfied once the payment is made. Indeed, as *Petrohawk* observes, any claim by the Noteholders to recover their money would be against the trustee or the paying agent, and not against the issuer. *See Petrohawk*, 2007 WL 211096, at *5-6. Thus, the *Petrohawk* court's decision is dispositive of Tyco and TIFSA's second counterclaim.

2.    **The Indentures Permit the Trustee To Recoup Fees and Expenses**

In seeking to create a fee reserve, the Trustee is acting for the benefit of and at the express direction of a majority of Noteholders. The Indentures specifically provide that a majority of the Noteholders – with limited exceptions – may direct the Trustee's exercise of any trust or power conferred upon the Trustee. (1998 Indenture § 4.9, 2003 Indenture § 6.06.) Here,

15

the Trustee has acted pursuant to the direction of an overwhelming majority of the Noteholders. Specifically, holders of 73 percent of the Notes have directed and consented to the fee reserve.[2] Thus, the Trustee, as it is permitted and authorized to do under the Indentures, has acted pursuant to the direction of a majority of Noteholders in creating a fee reserve.

Moreover, far from being a breach of the Indentures, the creation of a reserve is specifically within the contemplation of the Indentures. For instance, in the event of a default – here, the Asset-Stripping Transaction – the Trustee has a claim to a portion of the interest payment made to the Noteholders:

> Any moneys collected by the Trustee pursuant to this Article in respect of any series shall be applied . . . FIRST: To the payment of costs and expenses . . . including reasonable compensation to the Trustee and each predecessor Trustee and their respective agents and attorneys and of all expenses and liabilities incurred, and all advances made, by the Trustee and each predecessor Trustee except as a result of negligence or bad faith, and all other amounts due to the Trustee or any predecessor Trustee . . . .

(1998 Indenture § 4.3; *see also* 2003 Indenture § 6.03.) The Indentures also grant the Trustee a lien on funds that it holds, a lien that is senior to the interest payments and that may be satisfied through deductions from the interest payments. (*See* 1998 Indenture § 5.6; 2003 Indenture § 7.06.) Other terms of the Indentures also ratify the Trustee's right to carve out a portion of the interest payment to pay its fees. For instance, the Indentures absolve the Trustee from being required to "expend or risk its own funds or otherwise incur personal financial liability in the performance of any of its duties or in the exercise of any of its rights or powers" (1998 Indenture

---

[2]    The Trustee's direction to DTC to withhold a certain amount of the interest payments to create the fee reserve, referenced at ¶ 107 of the Answer and Counterclaims, also explained to DTC (and forwarded documents showing) that the reserve was being taken pursuant to the instructions of the Noteholders. That notice is therefore referenced in the pleadings and may be considered on this motion to dismiss. To the extent the Court views the Noteholders' direction to the Trustee as outside the scope of the pleadings, it is not necessary for the Court to consider this fact on the motion to dismiss and the Court can dismiss the counterclaims without it.

§ 5.1; *see also* 2003 Indenture § 7.01(b)(4)), and absolve the Trustee of any obligation to exercise any of the trusts or powers granted to it by the Indentures at the request of the Noteholders unless "such Securityholders shall have offered to the Trustee reasonable security or indemnity against the costs, expenses and liabilities which might be incurred therein or thereby" (1998 Indenture § 5.2(d); *see also* 2003 Indenture § 7.02(d)). In short, the terms of the Indentures permit the Trustee to use interest payments to cover its own fees so that it will not incur any personal financial liability in the performance of its duties under the Indentures.

For all these reasons, the counterclaims for breach of contract and declaratory and injunctive relief on the fee reserve issue should be dismissed.

## C.    Counterclaimants' Claims for Breach of the Implied Covenant Of Good Faith and Fair Dealing Should Be Dismissed

In the third counterclaim, Tyco and TIFSA allege that the Trustee has breached the implied covenant of good faith and fair dealing by refusing to sign the proposed supplemental indentures (as alleged in the first counterclaim), by attempting to misappropriate moneys from the Noteholders for the creation of a reserve fund (as alleged in the second counterclaim) and by filing the complaint and serving a notice of default. These claims should be dismissed as a matter of law. The first two claims fail because they are redundant of the breach of contract claims in the first and second counterclaims, and the third claim fails because no claim for breach of good faith lies for the exercise of rights under a contract.

### 1.    The Claim Is Duplicative of the Breach of Contract Claim

It is black letter law that New York "does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Harris* v. *Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002); *see also Fasolino Foods Co.* v. *Banca Nazionale del Lavoro*, 961

F.2d 1052, 1056 (2d Cir. 1992); *Ezrasons, Inc.* v. *Am. Credit Indem. Co.*, 683 N.Y.S.2d 264, 266 (N.Y. App. Div. 1999); *Canstar* v. *J.A. Jones Constr. Co.*, 622 N.Y.S.2d 730, 730 (N.Y. App. Div. 1995). Such a claim for "breach of the implied covenant of good faith . . . can survive a motion to dismiss 'only if it is based on allegations different than those underlying the accompanying breach of contract claim.'" *Ari & Co., Inc.* v. *Regent Int'l Corp.*, 273 F. Supp. 2d 518, 522 (S.D.N.Y. 2003) (quoting *Siradas* v. *Chase Lincoln First Bank, N.A.*, No. 98-cv-4028, 1999 WL 787658, at *6 (S.D.N.Y. Sept. 30, 1999)). Here, Tyco and TIFSA's allegations of breach of the covenant of good faith and fair dealing are identical to their breach of contract claims. Tyco and TIFSA's counterclaims plead no facts suggesting that these claims are different than the breach of contract claims. Accordingly, they must be dismissed.

### 2.    The Trustee Cannot Violate the Duty of Good Faith and Fair Dealing By Exercising its Rights Under the Indentures

The Trustee's exercise of its rights under the Indentures by filing a complaint and by serving a notice of default cannot be deemed to violate the implied duty of good faith and fair dealing. It is well-settled that the implied terms of a contract may not conflict with its explicit provisions. *See, e.g., Sharma* v. *Skaarup Ship Mgmt. Corp.*, 699 F. Supp. 440, 449 (S.D.N.Y. 1988). Thus, "[t]he mere exercise of one's contractual rights, without more, cannot constitute … a breach [of the implied covenant of good faith and fair dealing]." *Hartford Fire Ins. Co.* v. *Federated Dep't Stores, Inc.*, 723 F. Supp. 976, 991 (S.D.N.Y. 1989) (quoting *Broad* v. *Rockwell Int'l Corp.*, 642 F.2d 929, 957 (5th Cir. 1981)) (alteration in original); *see also CIBC Bank & Trust Co.* v. *Banco Cent. Do Braz.*, 886 F. Supp. 1105, 1118 (S.D.N.Y. 1995); *Nat'l Westminster Bank* v. *Ross*, 130 B.R. 656, 679 (S.D.N.Y. 1991); *Assocs. Capital Servs. Corp.* v. *Fairway Private Cars, Inc.*, 590 F. Supp. 10, 16 (E.D.N.Y. 1982).

Here, the Indentures explicitly permit the Trustee to seek judicial enforcement of the Noteholders' rights. For instance, the Trustee may "proceed to protect and enforce the rights vested in it by this Indenture by such appropriate judicial proceedings as the Trustee shall deem most effectual to protect and enforce any of such rights" in the event of a default, such as the Asset-Stripping Transaction here. (1998 Indenture § 4.4; *see also* 2003 Indenture § 6.02.) Even without an event of default, the Trustee is well within its rights to seek judicial assistance concerning its duties and obligations. *See, e.g., First Nat'l Bank* v. *A. M. Castle & Co. Employee Trust*, 180 F.3d 814, 819 (7th Cir. 1999) ("[I]t is a traditional judicial office to give instructions to trustees who have substantial questions concerning their duties . . . ."); Restatement (Third) of Trusts § 71 (2007) ("A trustee or beneficiary may apply to an appropriate court for instructions regarding the administration or distribution of the trust if there is a reasonable doubt about the powers or duties of the trusteeship or about the proper interpretation of the trust provisions."). The Indentures also permit the Trustee to issue an appropriate notice of default to the Issuer and to the Noteholders. (*See* 1998 Indenture § 4.11; *see also* 2003 Indenture § 6.01(e)s.) In filing this lawsuit and issuing a notice of default, the Trustee has done nothing that is not explicitly authorized by the terms of the Indentures.

### 3. The Counterclaim Does Not Allege Any Facts Supporting The Claim for Breach of the Duty of Good Faith and Fair Dealing

We note, finally, that the third counterclaim alleges that the Trustee did not have a good faith belief that the proposed supplemental indentures and Asset-Stripping Transaction were prohibited by the terms of the Indentures or that a default had occurred. But the third counterclaim offers no facts in support of the assertion that the Trustee lacked such a good faith belief, and that failure to allege supporting facts requires dismissal of the counterclaim. A cause of action for breach of the implied covenant of good faith and fair dealing cannot survive a

motion to dismiss merely because the party alleging it recites – without any factual basis – that the action was not taken in good faith. *See, e.g., Lewis Tree Serv., Inc.* v. *Lucent Techs., Inc.*, No. 99-cv-8556, 2000 WL 1277303, at *5 (S.D.N.Y. Sept. 8, 2000) (dismissing claim for breach of duty of good faith and fair dealing because plaintiffs "fail[ed] to specify any particular conduct" that was allegedly not in good faith and because court was not required to accept conclusory allegations on a motion to dismiss).

       For all these reasons, the third counterclaim must be dismissed as a matter of law.

**D.    Counterclaimants' Requests for a Declaratory Judgment Should Be Dismissed**

       In the fourth counterclaim, Tyco and TIFSA seek a declaratory judgment that no default has occurred under the Indentures and the Trustee is required by law and under the Indentures to sign the proposed supplemental indentures. Because these requests are already pending before the Court in the form of requests for declaratory judgments sought by the Trustee, the Court should exercise its discretion to dismiss them.

       The Declaratory Judgment Act grants a court the discretion to decline to hear declaratory judgment claims. *See* 28 U.S.C. § 2201(a) ("[A]ny court . . . *may* declare the rights and other legal relations of any interested party seeking such declaration . . . .") (emphasis added). Courts regularly exercise that discretion to dismiss counterclaims seeking declaratory judgments which mirror those already sought in plaintiff's claims. *See, e.g., Lincoln Nat'l Corp.* v. *Steadfast Ins. Co.*, No. 06 Civ. 58, 2006 WL 1660591, at *4 (N.D. Ind. June 9, 2006) (refusing "to entertain a declaratory judgment action that merely seeks to determine issues already being litigated"); *United States* v. *Zanfei*, 353 F. Supp. 2d 962, 965 (N.D. Ill. 2005) (dismissing declaratory judgment counterclaim because the counterclaim "[sought] the opposite effect" of the complaint and therefore "merely restate[d] an issue already before [the] Court"); *Stanley Works* v. *C.S. Mersick & Co.*, 1 F.R.D. 43, 45 (D. Conn. 1939) ("[A] counterclaim which

serve[s] but to restate the controversy initiated by the complaint is wholly redundant and should be stricken.").

The declaration that Tyco and TIFSA seek here is a mirror image of relief sought in the Trustee's complaint. Specifically, the Trustee's complaint seeks a declaration that the Asset-Stripping Transaction violates *Sharon Steel* and the successor obligor clauses in the Indentures and that the Trustee need not sign the proposed supplemental indentures. The declarations that Tyco and TIFSA seek – that no default has occurred and the Trustee has to sign the proposed supplemental indentures – are merely a mirror-image of those declarations sought in the Trustee's complaint. Should the Court rule against the Trustee on this count – that is, decide that the Asset-Stripping Transaction does not violate the Indentures and that the Trustee was not entitled to refuse to sign the proposed supplemental indentures – the Court will in effect grant the declaration sought in Tyco and TIFSA's counterclaim. The Court should therefore not entertain this redundant claim.

## Conclusion

For all the foregoing reasons, this Court should grant the Trustee's motion to dismiss the first amended counterclaims.

Dated: January 7, 2008
New York, New York

Respectfully submitted,

DECHERT LLP

By: /s/ Kevin O'Brien
Kevin O'Brien
Glenn Siegel
Alissa Rossman

kevin.obrien@dechert.com

30 Rockefeller Plaza
New York City, New York 10112
(212) 698-3500

*Co-Counsel for the Trustee*

PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP

By: /s/ Gerard E. Harper
Gerard E. Harper
Andrew G. Gordon
Andrew N. Rosenberg

gharper@paulweiss.com

1285 Avenue of the Americas
New York City, New York 10019
(212) 373-3000

*Co-Counsel for the Trustee*