UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
THE BANK OF NEW YORK, :
:
           Plaintiff, :
: 07 Civ. 4659 (SAS)
  v. :
: EFC Case
TYCO INTERNATIONAL GROUP S.A., TYCO :
INTERNATIONAL LTD., TYCO :
INTERNATIONAL FINANCE S.A., :
:
           Defendant. :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### DECLARATION OF JOHN JENKINS IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

I, John Jenkins, pursuant to 28 U.S.C. § 1746, declare as follows:

1.     I am the Vice President and Corporate Secretary of Tyco International Ltd. ("Tyco").  I submit this declaration in opposition to Plaintiff's Motion for Summary Judgment and in support of Defendants' Cross-Motion for Summary Judgment.

2.     Defendant Tyco is, and at all relevant times was, a publicly traded corporation that holds investments in a variety of subsidiary businesses.

3.     Defendant Tyco International Group S.A. ("TIGSA"), unlike Tyco, was exempted from and did not file periodic reports with the SEC.

4.     The following table was complied from Tyco's SEC filings.  It reflects Tyco's reported total assets at each quarterly and annual reporting period, as originally reported (*i.e.*, not restated) in Tyco's SEC filings:

| Period ending | Form | Total Assets ($ MM) |
|---|---|---|
| Sep.2007 | 10-K | $32,815 |
| Jun.2007 | 10-Q | $32,161 |
| Mar.2007 | 10-Q | $64,471 |
| Dec.2006 | 10-Q | $63,676 |
| Sep.2006 | 10-K | $63,722 |
| Jun.2006 | 10-Q | $61,692 |
| Mar.2006 | 10-Q | $61,056 |
| Dec.2005 | 10-Q | $62,261 |
| Sep.2005 | 10-K | $62,621 |
| Jun.2005 | 10-Q | $61,577 |
| Mar.2005 | 10-Q | $62,772 |
| Dec.2004 | 10-Q | $64,135 |
| Sep.2004 | 10-K | $63,667 |
| Jun.2004 | 10-Q | $62,955 |
| Mar.2004 | 10-Q | $62,571 |
| Dec.2003 | 10-Q | $62,801 |
| Sep.2003 | 10-K | $63,545 |
| Jun.2003 | 10-Q | $64,393 |
| Mar.2003 | 10-Q | $63,498 |
| Dec.2002 | 10-Q | $66,835 |
| Sep.2002 | 10-K | $66,414 |
| Jun.2002 | 10-Q | $70,600 |
| Mar.2002 | 10-Q | $115,362 |
| Dec.2001 | 10-Q | $115,321 |
| Sep.2001 | 10-K | $111,287 |
| Jun.2001 | 10-Q | $106,893 |
| Mar.2001 | 10-Q | $53,441 |
| Dec.2000 | 10-Q | $49,757 |
| Sep.2000 | 10-K405 | $40,404 |
| Jun.2000 | 10-Q | $37,883 |
| Mar.2000 | 10-Q | $36,210 |
| Dec.1999 | 10-Q | $34,807 |
| Sep.1999 | 10-K | $32,362 |
| Jun.1999 | 10-Q | $28,026 |
| Mar.1999 | 10-Q | $22,041 |
| Dec.1998 | 10-Q | $20,417 |
| Sep.1998 | 10-K405 | $16,527 |
| Jun.1998 | 10-Q | $15,511 |
| Mar.1998 | 10-Q | $13,339 |
| Dec.1997 | 10-Q | $10,514 |
| Sep.1997 | 10-K405 | $10,447 |

5. Just prior to the transaction that is the subject of this action (the "Transaction"), Tyco's operating subsidiaries engaged in four principal activities through: (a) an electronics business; (b) a healthcare business; (c) a fire and security business; and (d) an engineered products and services business.

6. Attached hereto as Exhibit A is a true and correct copy of excerpts from Amendment No. 2 to Form S-1 Registration Statement, filed by Tyco International Ltd. and Tyco International Finance S.A. ("TIFSA") on May 18, 2007.

7. On multiple occasions between 1998 and 2003, Tyco raised money by issuing debt instruments, seven series of which are at issue here (the "Notes"). Tyco and TIGSA co-registered the Notes with the SEC and were both obligated on the Notes, with TIGSA as the "issuer" and Tyco giving a full and unconditional guarantee.

8. The 7% Notes due 2028 were offered pursuant to a Prospectus Supplement dated June 9, 1998, true and correct excerpts of which are attached hereto as Exhibit B. A full copy of this document is not attached in an effort to comply with the Court's rules regarding length of exhibits, but Defendants can provide the Court with a complete copy of the document upon request.

9. The 6.125% Notes due 2008 were offered pursuant to an Offering Memorandum dated October 28, 1998, true and correct excerpts of which are attached hereto as Exhibit C. A full copy of this document is not attached in an effort to comply with the Court's rules regarding length of exhibits, but Defendants can provide the Court with a complete copy of the document upon request.

10. The 6.125% Notes due 2009 and 6.875% Notes due 2029 were offered pursuant to a Prospectus Supplement dated January 12, 1999, true and correct excerpts of which are

attached hereto as Exhibit D.  A full copy of this document is not attached in an effort to comply with the Court's rules regarding length of exhibits, but Defendants can provide the Court with a complete copy of the document upon request.

11.     The 6.75% Notes due 2011 were offered pursuant to a Prospectus Supplement dated February 15, 2001, true and correct excerpts of which are attached hereto as Exhibit E.  A full copy of this document is not attached in an effort to comply with the Court's rules regarding length of exhibits, but Defendants can provide the Court with a complete copy of the document upon request.

12.     The 6.375% Notes due 2011 were offered pursuant to a 10/23/01 Prospectus Supplement dated October 23, 2001, true and correct excerpts of which are attached hereto as Exhibit F.  A full copy of this document is not attached in an effort to comply with the Court's rules regarding length of exhibits, but Defendants can provide the Court with a complete copy of the document upon request.

13.     The 6.0% Notes due 2013 were offered pursuant to an Offering Circular dated November 6, 2003, true and correct excerpts of which are attached hereto as Exhibit G.  A full copy of this document is not attached in an effort to comply with the Court's rules regarding length of exhibits, but Defendants can provide the Court with a complete copy of the document upon request.

14.     Attached hereto as Exhibit H is a true and correct excerpt of the Indenture dated June 9, 1998.

15.     Tyco completed the Transaction on June 29, 2007.  In examining the Trustee's claim, the relevant steps in the Transaction are as follows:

    (a)     Tyco's structure prior to the Transaction was:



**Opening Position**

Operating Companies

      (b)    <u>The "Reorganization" Step</u> – Tyco reorganized its operating assets under three subsidiaries, TIFSA, Covidien Ltd. ("Covidien"), and Tyco Electronics Ltd. ("Tyco Electronics"), corresponding to the three, soon-to-be independent companies. Tyco, through TIGSA, owned the stock of each of these subsidiaries. TIFSA executed supplemental indentures to the 1998 and 2003 Indentures in which it "agree[d] to become a co-obligor" with respect to payment on the Notes, but TIGSA also remained as an obligor, and Tyco remained as guarantor.

**After Reorganization Step**



    (c)    <u>The "Tyco Transfer" Step</u> – TIGSA then transferred all of its assets – at the time, consisting entirely of the shares of those three subsidiaries – to its parent, Tyco. At the same time as the Tyco Transfer, TIGSA also assigned to Tyco (and Tyco expressly assumed) all of TIGSA's obligations under the Indentures and on the Notes.



**After Tyco Transfer Step**

    This step of the Transaction represented a change from the contemplated structure. That change was made, at least in part, as a result of a previous lawsuit initiated by one of the Noteholders. In that suit, the Noteholder alleged that the form of the proposed transaction bore a resemblance to the form of the transaction in *Sharon Steel Corp. v. Chase Manhattan Bank, N.A.*, 691 F.2d 1039 (2d Cir. 1982), and was therefore impermissible. Tyco made a change to the *form* so as to eliminate any argument that either the form or the substance was prohibited.

    (d)    The "Distribution" Step – Tyco then distributed to its shareholders all of the common shares of Tyco Electronics and Covidien, the two companies comprising the electronics and healthcare businesses.



**After Distribution Step**

16.  In connection with the Transaction, Tyco, TIGSA and TIFSA executed and delivered supplemental indentures to the Trustee, along with officers' certificates and opinions of counsel concluding that the requirements of the indentures were being complied with.

17.  Prior to filing its First Amended Complaint, the Trustee never asserted to Tyco that it believed that the supplemental indentures were not satisfactory.

18.  After the Transaction, Tyco continues to own and operate its fire and security and its engineered products and services businesses, just as it did before, with a similar Luxembourg company as its primary subsidiary holding company.

19.  Both Tyco and TIFSA are obligated on the Notes, and continue to make interest payments when due.

20.  Tyco will continue to make all interest payments on the Notes when due.

21.  The annual total of the interest payments on the Notes is $240.9 million.

22.  Attached hereto as Exhibit I is a true and correct excerpt from Tyco's Form 10-K for the year ended September 28, 2007.

23. As of July 2, 2007 (the first trading date following completion of the Transaction), Tyco had a market capitalization of $26.4 billion, and it continues to be part of the S&P 500 index.

24. As of today's date, Tyco continues to enjoy investment grade ratings, as follows: Fitch, BBB; S&P, BBB; Moody's, Baa1.

25. The following table was prepared from information contained in the SEC filings of Tyco, Tyco Electronics and Covidien, and publicly available information regarding the market price of their stocks on July 2, 2007:

| Relative Metrics (in millions of dollars) | | | | |
|---|---|---|---|---|
| Metric | Healthcare | Electronics | Post-Spin Tyco | Post-Spin Tyco as Pct. of Total |
| Total assets (book value at 6/29/07) | 18,160 | 23,065 | 32,161 | 43.8% |
| Total assets (market value of equity at 7/2/07 plus book value of liabilities at 6/29/07) | 33,200 | 31,900 | 43,300 | 39.9% |
| Net revenue (year ended 9/28/07) | 10,170 | 13,460 | 18,781 | 44.3% |
| Net revenue (year ended 9/29/06) | 9,641 | 12,724 | 18,595 | 45.4% |
| Operating income (year ended 9/29/06) | 2,200 | 1,808 | 1,866 | 31.8% |

26. In April 2007, TIGSA tendered not only for the Notes at issue in this matter, but for all its outstanding public debt. Though Noteholders tendered about one-third of the principal amount of the Notes outstanding under the 1998 Indenture and the 2003 Indenture, holders of other series of debt tendered substantially in excess of 50% of the outstanding principal amounts.

27. The corrective disclosure that was sent out during the tender offer was sent to the registered holder of the Notes, which then disseminated the disclosure to the beneficial owners of the Notes.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 10th day of January, 2008.

_____
John Jenkins