UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| THE BANK OF NEW YORK,<br><br>               Plaintiff,<br><br>     v.<br><br>TYCO INTERNATIONAL GROUP S.A., TYCO INTERNATIONAL LTD., and TYCO INTERNATIONAL FINANCE S.A.,<br><br>               Defendants. | 07 Civ. 4659 (SAS)<br><br>ECF Case |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### DEFENDANTS' LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED

       Pursuant to Local Civil Rule 56.1, Defendants Tyco International Ltd. ("Tyco"), Tyco International Group S.A. ("TIGSA"), and Tyco International Finance S.A. ("TIFSA") (collectively, "Defendants") submit this statement of material facts as to which there is no genuine issue to be tried:

**A.**    **The Defendants**

       1.      Defendant Tyco is, and at all relevant times was, a publicly traded corporation that holds investments in a variety of subsidiary businesses.  (*See* 12/11/06 10-K of Tyco International Ltd. ("12/11/06 10-K") at 1, Declaration of Andrew G. Gordon in Support of Plaintiff's Motion for Summary Judgment ("Gordon Decl.") Ex. A; Declaration of John Jenkins in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Defendants' Cross-Motion for Summary Judgment ("Jenkins Decl.") ¶ 2)

2. Tyco's asset base fluctuated dramatically over the years. The following chart reflects Tyco's reported total assets at each quarterly and annual reporting period, as originally reported (*i.e.*, not restated) in Tyco's SEC filings:

| Period ending | Form | Total Assets ($ MM) |
|---|---|---|
| Sep.2007 | 10-K | $32,815 |
| Jun.2007 | 10-Q | $32,161 |
| Mar.2007 | 10-Q | $64,471 |
| Dec.2006 | 10-Q | $63,676 |
| Sep.2006 | 10-K | $63,722 |
| Jun.2006 | 10-Q | $61,692 |
| Mar.2006 | 10-Q | $61,056 |
| Dec.2005 | 10-Q | $62,261 |
| Sep.2005 | 10-K | $62,621 |
| Jun.2005 | 10-Q | $61,577 |
| Mar.2005 | 10-Q | $62,772 |
| Dec.2004 | 10-Q | $64,135 |
| Sep.2004 | 10-K | $63,667 |
| Jun.2004 | 10-Q | $62,955 |
| Mar.2004 | 10-Q | $62,571 |
| Dec.2003 | 10-Q | $62,801 |
| Sep.2003 | 10-K | $63,545 |
| Jun.2003 | 10-Q | $64,393 |
| Mar.2003 | 10-Q | $63,498 |
| Dec.2002 | 10-Q | $66,835 |
| Sep.2002 | 10-K | $66,414 |
| Jun.2002 | 10-Q | $70,600 |
| Mar.2002 | 10-Q | $115,362 |
| Dec.2001 | 10-Q | $115,321 |
| Sep.2001 | 10-K | $111,287 |
| Jun.2001 | 10-Q | $106,893 |
| Mar.2001 | 10-Q | $53,441 |
| Dec.2000 | 10-Q | $49,757 |
| Sep.2000 | 10-K405 | $40,404 |
| Jun.2000 | 10-Q | $37,883 |
| Mar.2000 | 10-Q | $36,210 |
| Dec.1999 | 10-Q | $34,807 |
| Sep.1999 | 10-K | $32,362 |
| Jun.1999 | 10-Q | $28,026 |
| Mar.1999 | 10-Q | $22,041 |
| Dec.1998 | 10-Q | $20,417 |
| Sep.1998 | 10-K405 | $16,527 |
| Jun.1998 | 10-Q | $15,511 |

| | | |
|---|---|---|
| Mar.1998 | 10-Q | $13,339 |
| Dec.1997 | 10-Q | $10,514 |
| Sep.1997 | 10-K405 | $10,447 |

(Jenkins Decl. ¶ 4)

3.      Just prior to the transaction that is the subject of this action (the "Transaction"), Tyco's operating subsidiaries engaged in four principal lines of business: (a) an electronics business; (b) a healthcare business; (c) a fire and security business; and (d) an engineered products and services business. (Jenkins Decl. ¶ 5; Gordon Decl. Ex. C)

4.      Defendant TIGSA is a Luxembourg company that is a wholly-owned subsidiary of Tyco. Prior to the Transaction, TIGSA was "a holding company whose only business was to own indirectly a substantial portion of the operating subsidiaries of Tyco and to perform treasury operations for Tyco companies. Otherwise, it conducted no independent business." (Gordon Decl. Exs. C & D)

5.      TIGSA, unlike Tyco, was exempted from and did not file periodic reports with the SEC. (Jenkins Decl. ¶ 3)

6.      Defendant TIFSA is a Luxembourg company that is a wholly-owned subsidiary of Tyco. It was created as part of the Transaction "to directly and indirectly own substantially all of the operating subsidiaries of Tyco International Ltd., to issue the notes and to perform treasury operations for [Tyco]. Otherwise, it conducts no independent business." (Amendment No. 2 to Form S-1 Registration Statement, filed by Tyco International Ltd. and Tyco International Finance S.A. on May 18, 2007 ("5/18/07 Form S-1"), at 3-4, Jenkins Decl. Ex. A)

**B.**    **The Notes and the Indentures**

7.      On multiple occasions between 1998 and 2003, Tyco raised money by issuing debt instruments, seven series of which are at issue here (the "Notes"). (Plaintiff's Local Rule

3

56.1 Statement of Undisputed Facts in Support of its Motion for Summary Judgment ("Pl. 56.1 Statement") ¶¶ 8, 9, 11; Jenkins Decl. ¶ 7)

8. Tyco and TIGSA co-registered the Notes with the SEC and were co-obligors on the Notes, with TIGSA as the "issuer" and Tyco giving a full and unconditional guarantee. (Jenkins Decl. ¶ 7)

9. The 7% Notes due 2028 were offered pursuant to a Prospectus Supplement dated June 9, 1998 ("6/9/98 Prospectus"). *See* Jenkins Decl., Ex. B. The 6/9/98 Prospectus provides substantial information concerning Tyco's business, its capital structure, and its financial data, and incorporates by reference a number of documents filed by Tyco with the SEC. *Id.* at S-4 to -16. The 6/9/98 Prospectus discloses only the following information concerning TIGSA:

> [TIGSA], a Luxembourg company (the "Company"), is a direct wholly-owned subsidiary of Tyco. The registered and principal offices of the Company are located at 6, Avenue Emile Reuter, 2nd Floor, L-2420 Luxembourg, and its telephone number is (352) 464-340-1. Through its subsidiaries, the Company owns substantially all of the assets, and engages in substantially all of the businesses, owned or engaged in by Tyco.

*Id.* at S-5.

10. The 6/9/98 Prospectus disclosed that, as of March 31, 1998, Tyco had total assets of $13,338,500,000. *Id.* at S-10.

11. The 6.125% Notes due 2008 were offered pursuant to an Offering Memorandum dated October 28, 1998 ("10/28/98 Offering Memo"). *See* Jenkins Decl., Ex. C. The 10/28/98 Offering Memo provides substantial information concerning Tyco's business, its capital structure, and its financial data, and incorporates by reference a number of documents filed by Tyco with the SEC. *Id.* at 1-11. The 10/28/98 Offering Memo discloses only the following information concerning TIGSA:

> [TIGSA], a Luxembourg company (the "Company"), is a wholly-owned subsidiary of Tyco. The registered and principal offices of the Company are

4

> located at 6, Avenue Emile Reuter, 2nd Floor, L-2420 Luxembourg, and its telephone number is (352) 464-340-1.  Through its subsidiaries, the Company owns substantially all of the assets, and engages in substantially all of the businesses, owned or engaged in by Tyco.

*Id.* at 3.

12.     The 10/28/98 Offering Memo disclosed that, as of June 30, 1998, Tyco had total assets of $15,510,500,000.  *Id.* at 8.  Giving effect to Tyco's October 1, 1998 acquisition of United States Surgical Corporation, Tyco reported pro forma total assets as of June 30, 1998 of $17,805,600,000.  *Id.* at 11.

13.     The 6.125% Notes due 2009 and 6.875% Notes due 2029 were offered pursuant to a Prospectus Supplement dated January 12, 1999 ("1/12/99 Prospectus").  *See* Jenkins Decl., Ex. D.  The 1/12/99 Prospectus provides substantial information concerning Tyco's business, its capital structure, and its financial data, and incorporates by reference a number of documents filed by Tyco with the SEC.  *Id.* at S-3 to -10.  The 1/12/99 Prospectus discloses only the following information concerning TIGSA:

> The Company, [TIGSA], is a Luxembourg company and a wholly-owned subsidiary of Tyco.  The registered and principal offices of the Company are located at 6, avenue Emile Reuter, 2nd Floor, L-2420 Luxembourg, and its telephone number is (352) 46 43 40-1.  Through its subsidiaries, the Company owns substantially all of the assets, and engages in substantially all of the businesses, owned or engaged in by Tyco.

*Id.* at S-4.

14.     The 1/12/99 Prospectus disclosed that, as of September 30, 1998, Tyco had total assets of $18,722,600,000.  *Id.* at S-9.

15.     The 6.75% Notes due 2011 were offered pursuant to a Prospectus Supplement dated February 15, 2001 ("2/15/01 Prospectus").  *See* Jenkins Decl., Ex. E.  The 2/15/01 Prospectus provides substantial information concerning Tyco's business, its capital structure, and its financial data, and incorporates by reference a number of documents filed by Tyco with the

5

SEC. *Id.* at S-3 to -11.  The 2/15/01 Prospectus discloses only the following information concerning TIGSA:

> [TIGSA], a Luxembourg company, was formed as a Luxembourg corporation on March 30, 1998, as a wholly-owned subsidiary of Tyco.  The registered and principal offices of the Company are located at 6, avenue Emile Reuter, 2nd Floor, L-2420 Luxembourg, and its telephone number is (352) 464-340-1.  The Company is a holding company whose only business is to own indirectly a substantial portion of the operating subsidiaries of Tyco and to perform treasury operations for Tyco companies.  Otherwise, it conducts no independent business.

*Id.* at S-6.

16.    The 2/15/01 Prospectus disclosed that, as of December 31, 2000, Tyco had total assets of $49,757,000,000.  *Id.* at S-10.

17.    The 6.375% Notes due 2011 were offered pursuant to a Prospectus Supplement dated October 23, 2001 ("10/23/01 Prospectus").  *See* Jenkins Decl., Ex. F.  The 10/23/01 Prospectus provides substantial information concerning Tyco's business, its capital structure, and its financial data, and incorporates by reference a number of documents filed by Tyco with the SEC. *Id.* at S-3 to -10.  The 10/23/01 Prospectus discloses only the following information concerning TIGSA:

> [TIGSA] was formed as a Luxembourg corporation on March 30, 1998, as a wholly-owned subsidiary of Tyco.  The registered and principal offices of the Company are located at 6, avenue Emile Reuter, 2nd Floor, L-2420 Luxembourg, and its telephone number is (352) 464-340-1.  The Company is a holding company whose only business is to own indirectly a substantial portion of the operating subsidiaries of Tyco and to perform treasury operations for Tyco companies.  Otherwise, it conducts no independent business.

*Id.* at S-4.

18.    The 6.0% Notes due 2013 were offered pursuant to an Offering Circular dated November 6, 2003 ("11/6/03 Circular").  *See* Jenkins Decl., Ex. G.  The 11/6/03 Circular provides substantial information concerning Tyco's business, its capital structure, and its

6

financial data, and incorporates by reference a number of documents filed by Tyco with the SEC.
*Id.* at iv, 1-6, 26-31. The 11/6/03 Circular discloses only the following information concerning TIGSA:

> [TIGSA], a Luxembourg company since 1998, is a wholly-owned subsidiary of Tyco International Ltd. [TIGSA's] registered and principal offices are located at 17, Boulevard de la Grande-Duchesse Charlotte, L-1331 Luxembourg. Its telephone number is (352) 464-340-1. [TIGSA] is a holding company whose only business is to own indirectly a substantial portion of the operating subsidiaries of Tyco and to perform treasury operations for Tyco companies. Otherwise, it conducts no independent business.

*Id.* at 1.

19.   The following graph illustrates Tyco's reported total assets at each quarterly and annual reporting period, as originally reported, as well as the dates that each series of the Notes was issued:



(Jenkins Decl. ¶¶ 4, 8-13)

20.     The Notes are governed by indentures dated June 9, 1998 (the "1998 Indenture") and November 12, 2003 (the "2003 Indenture" and, together with the 1998 Indenture, the "Indentures"), among Tyco, TIGSA, and Plaintiff Bank of New York, as Trustee ("Plaintiff" or the "Trustee").  (Pl. 56.1 Statement, ¶¶ 10, 12)

21.     The 1998 Indenture provides that an "Event of Default" means:

> default in the performance, or breach, of any covenant or agreement of the Issuer, Tyco or any other Guarantor in respect of the Securities of such series and related Guarantees (other than a covenant or agreement in respect of the Securities of such series and related Guarantees a default in whose performance or whose breach is elsewhere in this Section specifically dealt with), and continuance of such default or breach for a period of 90 days after the date on which there has been given, by registered or certified mail, to the Issuer by the Trustee or to the Issuer and the Trustee by the Holders of at least 25% in principal amount of the Outstanding Securities of all series affected thereby, a written notice specifying such default or breach and requiring it to be remedied and stating that such notice is a 'Notice of Default' hereunder. . . .

(1998 Indenture, at § 4.1(d), Gordon Decl. Ex. E)

22.     The 2003 Indenture provides that an "Event of Default" means:

> default in the performance, or breach, of any covenant or agreement of Tyco or the Company in respect of the Securities of such series and, if applicable, the related Guarantee (other than a covenant or agreement in respect of the Securities of such series and, if applicable, the related Guarantee a default in whose performance or whose breach is elsewhere in this Section specifically dealt with), and continuance of such default or breach for a period of 90 days after the date on which there has been given, by registered or certified mail, to Tyco and the Company by the Trustee or to Tyco, the Company and the Trustee by the Holders of at least 25% in principal amount of the Outstanding Securities of all series affect thereby, a written notice specifying such default or breach and requiring it to be remedied and stating that such notice is a 'Notice of Default' hereunder….

(2003 Indenture, § 6.01(4), Gordon Decl. Ex. F)

23.     Section 4.1 of the 1998 Indenture provides:

> If an Event of Default described in clause (d) or (i) (if the Event of Default under clause (d) or (i), as the case may b e, is with respect to all series of Securities then

8

Outstanding), (e), (g) or (h) occurs and is continuing, then and in each and every such case, unless the principal of all the Securities shall have already become due and payable, either the Trustee or the Holders of not less than 25% in aggregate principal amount of all the Securities then Outstanding hereunder (treated as one class), by notice in writing to the Issuer (and the to Trustee if given by Securityholders), may declare the entire principal (or, if any Securities are Original Issue Discount Securities, such portion of the principal as may be specified in the terms thereof) of all the Securities then outstanding and interest accrued thereon, if any, to be due and payable immediately, and upon any such declaration the same shall become immediately due and payable.

(Jenkins Decl. Ex. H)

    24.    Section 6.01(b) of the 2003 Indenture provides:

In each and every such case [of an Event of Default], unless the principal of all the Securities of that series shall have already become due and payable, either the Trustee or the holders of not less than 25% in aggregate principal amount of the Securities of that series then Outstanding hereunder, by notice in writing to Tyco and the Company (and to the Trustee if given by such Securityholders), may declare the unpaid principal of all the Securities of that series to be due and payable immediately, and upon any such declaration the same shall become and shall be immediately due and payable, notwithstanding anything contained in this Indenture or in the Securities of that series or established with respect to that series pursuant to Section 2.01 to the contrary.

(Gordon Decl. Ex. F)

    25.    The 1998 and 2003 Indentures each contains successor obligor provisions.

    26.    The 1998 Indenture provides that:

Each of the Issuer, Tyco, and any other Guarantors, if any, covenants that it will not merge or consolidate with any other Person or sell or convey all or substantially all of its assets to any Person, unless (i) either the Issuer or such Guarantor, as the case may be, shall be the continuing entity, or the successor entity or the Person which acquires by sale or conveyance substantially all the assets of the Issuer or such Guarantor, as the case may be (if other than the Issuer or such Guarantor, as the case may be) shall expressly assume the due and punctual payment of the principal of and interest on all the Securities or the obligations under the Guarantees, as the case may be, according to their tenor, and the due and punctual performance and observance of all of the covenants and agreements of this Indenture to be performed or observed by the Issuer or such Guarantor, as the case may be, by supplemental indenture satisfactory to the Trustee, executed and delivered to the Trustee by such corporation, and (ii) the Issuer or such Guarantor, as the case may be, or such successor corporation, as the case may be, shall not, immediately after such merger or consolidation, or such

9

sale or conveyance, be in default in the performance of any such covenant or agreement.

(1998 Indenture, at § 8.1, Gordon Decl. Ex. E)

In case of any such consolidation, merger, sale or conveyance in which the Issuer or any Guarantor, as the case may be, is not the continuing entity, and following such an assumption by the successor entity, such successor entity shall succeed to and be substituted for the Issuer or such Guarantor, as the case may be, with the same effect as if it had been named herein. Such successor entity may cause to be signed, and may issue either in its own name or in the name of the Issuer or such Guarantor, as the case may be, prior to such succession any or all of the Securities or Guarantees as the case may be, issuable hereunder which theretofore shall not have been signed by the Issuer or such Guarantor, as the case may be, and delivered to the Trustee; and, upon the order of such successor entity instead of the Issuer or such Guarantor, as the case may be, and subject to all the terms, conditions and limitations in this Indenture prescribed, the Trustee shall authenticate and shall deliver any Securities or Guarantees, as the case may be, which previously shall have been signed and delivered by the officers of the Issuer or such Guarantor, as the case may be, to the Trustee for authentication, and any Securities or Guarantees, as the case may be, which such successor entity thereafter shall cause to be signed and delivered to the Trustee for that purpose. All of the Securities or Guarantees, as the case may be, so issued shall in all respects have the same legal rank and benefit under this Indenture as the Securities or Guarantees, as the case may be, theretofore or thereafter issued in accordance with the terms of this Indentures as though all of such Securities or such Guarantees, as the case may be, had been issued at the date of the execution hereof.

In case of any such consolidation, merger, sale, lease or conveyance such changes in phraseology and form (but not in substance) may be made in the Securities or Guarantees thereafter to be issued as may be appropriate.

In the event of any such sale or conveyance (other than a conveyance by way of lease) the Issuer or any Guarantor or any successor entity which shall theretofore have become such in the manner described in this Article shall be discharged from all obligations and covenants under this Indenture, the Securities and any Guarantee and may be liquidated and dissolved.

(1998 Indenture, at § 8.2, Gordon Decl. Ex. E)

27.   The 2003 Indenture provides that:

Each of Tyco and the Company, covenants that it will not merge or consolidate with any other Person or sell or convey all or substantially all of its assets to any Person, unless (i) either Tyco or the Company, as the case may be, shall be the continuing entity, or the successor entity or the Person which acquires by sale or

10

> conveyance substantially all the assets of Tyco or the Company, as the case may be (if other than Tyco or the Company, as the case may be), (A) shall expressly assume the due and punctual payment of the principal of, premium, if any, and interest on all the Securities or, if applicable, the obligations under any Guarantee, as the case may be, according to their tenor, and the due and punctual performance and observance of all of the covenants and agreements of this Indenture to be performed or observed by Tyco or the Company, as the case may be, by supplemental indenture satisfactory to the Trustee, executed and delivered to the Trustee by such Person and (B) is an entity treated as a "corporation" for United States tax purposes or Tyco or the Company, as the case may be, obtains either (x) an opinion, in form and substance reasonably acceptable to the Trustee, of tax counsel of recognized standing reasonably acceptable to the Trustee, which counsel shall include Gibson, Dunn & Crutcher LLP, or (y) a ruling from the United States Internal Revenue Service, in either case to the effect that such merger or consolidation or such sale or conveyance, will not result in an exchange of the Securities for new debt instruments for United States federal income tax purposes; and (ii) no Event of Default and no event that, after notice or lapse of time or both, would become an Event of Default shall be continuing immediately after such merger or consolidation, or such sale or conveyance.

(2003 Indenture, at § 10.01, Gordon Decl. Ex. F)

> Upon any consolidation or merger, or any sale, lease, conveyance or other disposition of all or substantially all of the assets of Tyco or the Company, as the case may be, the successor Person formed by such consolidation or into or with which Tyco or the Company, as the case may be, is merged or to which such sale, lease, conveyance or other disposition is made shall succeed to, and be substituted for, and may exercise every right and power of, Tyco or the Company, as the case may be, under this Indenture with the same effect as if such successor Person has been named as Tyco or the Company, as the case may be, herein.  In the event of any such sale or conveyance (other than a conveyance by way of lease) Tyco or the Company, as the case may be, or any successor entity with shall theretofore have become such in the manner described in this Article, shall be discharged from all obligations and covenants under this Indenture, the Securities and any Guarantee and may be liquidated and dissolved.

(2003 Indenture, at § 10.02, Gordon Decl. Ex. F)

28. Each of the Notes has a stated maturity date, but permits the issuer at its option to redeem the notes at an earlier time.  (*See* Gordon Decl. Ex. G)

**C.    The Transaction**

29. On January 13, 2006, Tyco announced that it planned to separate into three independent, publicly traded companies:  one for its electronics business; one for its healthcare

11

business; and one for its fire and security and its engineered products and services businesses (the "Separation Plan"). Tyco issued the following announcement:

> PEMBROKE, Bermuda – Jan. 13, 2006 – Tyco International Ltd. (NYSE:TYC; BSX:TYC) today announced that its Board of Directors has approved a plan to separate the company's current portfolio of diverse businesses into three separate, publicly traded companies – Tyco Healthcare, one of the world's leading diversified healthcare companies; Tyco Electronics, the world's largest passive electronic components manufacturer, and the combination of Tyco Fire & Security and Engineered Products & Services (TFS/TEPS), a global business with leading positions in residential and commercial security, fire protection and industrial products and services.
>
> The company intends to accomplish the separation through tax-free stock dividends to Tyco shareholders, after which they will own 100% of the equity in three publicly traded companies. Each company will have its own independent Board of Directors and strong corporate governance standards. Tyco expects to complete the transactions during the first quarter of calendar 2007.
>
> According to Tyco Chairman and Chief Executive Officer Ed Breen, "In the past several years, Tyco has come a long way. Our balance sheet and cash flows are strong and many legacy financial and legal issues have been resolved. We are fortunate to have a great mix of businesses with market-leading positions. After a thorough review of strategic options with our Board of Directors, we have determined that separating into three independent companies is the best approach to enable these businesses to achieve their full potential. Healthcare, Electronics and TFS/TEPS will be able to move faster and more aggressively -- and ultimately create more value for our shareholders -- by pursuing their own growth strategies as independent companies."
>
> Tyco's Board of Directors and senior leadership have evaluated a broad range of strategic alternatives, including continuation of Tyco's current operating strategy, sales of select businesses, and separation of only one of the businesses. The company and Board concluded that separating into three businesses is the best way to position these market-leading companies for sustained growth and value creation.

(1/13/06 Press Release, Gordon Decl. Ex I)

30.     Tyco completed the Transaction on June 29, 2007. (Jenkins Decl. ¶ 15)  In examining the Trustee's claim, the relevant steps in the Transaction are as follows:

(a)     Tyco's structure prior to the Transaction was:



(Jenkins Decl. ¶ 15(a))

(b)     The "Reorganization" Step – Tyco reorganized its operating assets under three subsidiaries, TIFSA, Covidien Ltd. ("Covidien"), and Tyco Electronics Ltd. ("Tyco Electronics"), corresponding to the three, soon-to-be independent companies.  Tyco, through TIGSA, owned the stock of each of these subsidiaries.  TIFSA executed supplemental indentures to the 1998 and 2003 Indentures in which it "agree[d] to become a co-obligor" with respect to payment on the Notes, but TIGSA also remained as an obligor, and Tyco remained as guarantor.

13

**After Reorganization Step**



(Jenkins Decl. ¶ 15(b); Gordon Decl. Ex. L)

   (c) <u>The "Tyco Transfer" Step</u> – TIGSA then transferred all of its assets – at the time, consisting entirely of the shares of those three subsidiaries – to its parent, Tyco. At the same time as the Tyco Transfer, TIGSA also assigned to Tyco (and Tyco expressly assumed) all of TIGSA's obligations under the Indentures and on the Notes.

**After Tyco Transfer Step**



(Jenkins Decl. ¶ 15(c); Gordon Decl. Ex. L)

This step of the Transaction represented a change from the contemplated structure. That change was made, at least in part, as a result of the previous lawsuit initiated by one of the Noteholders. In that suit, the Noteholder alleged that the form of the Separation bore a resemblance to the form of the transaction in *Sharon Steel Corp. v. Chase Manhattan Bank, N.A.*, 691 F.2d 1039 (2d Cir. 1982), and was therefore impermissible. Tyco made a change to the *form* so as to eliminate any argument that either the form or the substance was prohibited. (Jenkins Decl. ¶ 15(c))

(d) The "Distribution" Step – Tyco then distributed to its shareholders all of the common shares of Tyco Electronics and Covidien, the two companies comprising the electronics and healthcare businesses.



(Jenkins Decl. ¶ 15(d))

31.   In connection with the Transaction, Tyco, TIGSA and TIFSA executed and delivered supplemental indentures to the Trustee, along with officers' certificates and opinions of counsel concluding that the requirements of the indentures were being complied with.  (Pl. 56.1 Statement ¶¶ 42-43, 53-55; Gordon Decl. Ex. L; Jenkins Decl. ¶ 16)

32.   Prior to filing its First Amended Complaint, the Trustee never asserted to Tyco that it believed that the supplemental indentures were not satisfactory.  (Jenkins Decl. ¶ 17)

**D.     The Situation After the Transaction**

33.   Tyco continues to own and operate its fire and security and its engineered products and services businesses, just as it did before, with a similar Luxembourg company as its primary subsidiary holding company.  (Jenkins Decl. ¶ 18)

34.   Both Tyco and TIFSA are obligated on the Notes, and continue to make interest payments when due.  (Jenkins Decl. ¶ 19)

35. Tyco will continue to make all interest payments on the Notes when due. (Jenkins Decl. ¶ 20)

36. The annual total of the interest payments on the Notes is $240.9 million. (Jenkins Decl. ¶ 21)

37. Following the Transaction, Tyco has total assets in excess of $32 billion. (2007 10-K of Tyco International Ltd. ("12/11/07 10-K"), at 100, Jenkins Decl. Ex. I). Its operating subsidiaries include companies that are among the world's largest providers of electronic security systems, fire detection and suppression systems, and flow control valves. (*Id.* at 2).

38. For the year ended September 28, 2007, Tyco's annual revenue (reflecting only the operations of Tyco's continuing businesses) was $18.8 billion and its net cash from operating activities was $1.8 billion. (*Id.* at 99) Tyco's total debt as of year-end 2007 was $4.5 billion, less than half of its total debt of $9.6 billion at year-end 2006. (*Id.* at 126)

39. As of July 2, 2007 (the first trading date following completion of the Transaction), Tyco had a market capitalization of $26.4 billion. (Jenkins Decl. ¶ 23)

40. Even after the Transaction, Tyco continues to be part of the S&P 500 index. (Jenkins Decl. ¶ 23)

41. As of today's date, Tyco continues to enjoy investment grade ratings, as follows: Fitch, BBB; S&P, BBB; Moody's, Baa1. (Jenkins Decl. ¶ 24)

42. The following chart reflects some of the relative measures of Tyco's continuing business against the two businesses that were distributed in the Transaction:

| Relative Metrics (in millions of dollars) | | | | |
|---|---|---|---|---|
| Metric | Healthcare | Electronics | Post-Spin Tyco | Post-Spin Tyco as Pct. of Total |
| Total assets (book value at 6/29/07) (Jenkins Decl. ¶ 25) | 18,160 | 23,065 | 32,161 | 43.8% |
| Total assets (market value of equity at 7/2/07 plus book value of liabilities at 6/29/07) (Jenkins Decl. ¶ 25) | 33,200 | 31,900 | 43,300 | 39.9% |
| Net revenue (year ended 9/28/07) (Jenkins Decl. ¶ 25) | 10,170 | 13,460 | 18,781 | 44.3% |
| Net revenue (year ended 9/29/06) (Gordon Decl. Ex. A) | 9,641 | 12,724 | 18,595 | 45.4% |
| Operating income (year ended 9/29/06) (Gordon Decl. Ex. A) | 2,200 | 1,808 | 1,866 | 31.8% |

Dated: New York, New York
January 11, 2008

GIBSON, DUNN & CRUTCHER LLP

By:   /s/ Marshall R. King
Wesley G. Howell (WH-8660)
Marshall R. King (MK-1642)

200 Park Avenue, 47th Floor
New York, New York 10166-0193
(212) 351-4000

Attorneys for Defendants

100360367_5.DOC