# Exhibit C

NOV. -15' 07(THU) 11:58    DTC CLAIMS/INQUIRIES                          TEL:212 855 4737      P. 002
Case 1:07-cv-04659-SAS    Document 57-4    Filed 01/28/2008    Page 2 of 8

11/09/2007  09:57    212-815-3676                    BNY STRATEGIC MGT                    PAGE 01/07

The Bank of New York
101 Barclay Street – SW
New York, NY 10286

November 9, 2007

To Holders of Notes
Issued by Tyco International Group, S.A.
6.125% unsecured notes due 2008 (CUSIP No. 902118AM0)[1]
6.125% unsecured notes due 2009 (CUSIP No. 902118AJ7)
6.750% unsecured notes due 2011 (CUSIP No. 902118AY4)
6.375% unsecured notes due 2011 (CUSIP No. 902118BC1)
7.000% unsecured notes due 2028 (CUSIP No. 902118AC2)
6.875% unsecured notes due 2029 (CUSIP No. 902118AK4)
6.000% unsecured notes due 2013 (CUSIP No. 902118BK3)

This Notice contains important information that is of interest to the beneficial owners of the subject securities. If applicable, all depositories, custodians and other intermediaries receiving this notice are requested to expedite retransmittal to such beneficial owners in a timely manner.

The Bank of New York hereby notifies Holders of the above-captioned Notes, issued by Tyco International Group, S.A. (the "Company"), pursuant to an indenture, dated June 9, 1998 (as supplemented, the "1998 Indenture"), and an indenture, dated November 12, 2003 (as supplemented, the "2003 Indenture," and together with the 1998 Indenture, the "Indentures"), by and among the Company, Tyco International, Ltd. ("Tyco"), as Guarantor, and The Bank of New York (the "Trustee"), as Trustee under the Indentures, of Events of Default under the Indentures.

On January 13, 2006, the Company announced a plan to liquidate itself. This plan of liquidation took effect in late June 2007, and, as confirmed by the most recent 10-Q of Tyco, the plan involved both breaking up the Company into three separate public companies and the liquidation of the Company that borrowed the $5.6 billion in Notes. In this "Spin-Off Transaction," Tyco distributed tens of billions of dollars in assets to its own shareholders.

On June 4, 2007, the Trustee filed a complaint in the United States District Court for the Southern District of New York seeking, among other things, a declaratory

---

[1] Note: The CUSIP numbers appearing herein have been included solely for the convenience of the holders of the Notes. The Bank of New York assumes no responsibility for the selection or use of such CUSIP numbers and makes no representation as to the correctness of the CUSIP numbers listed above or printed on the Notes.

NOV. -15 07(THU) 11:59   DTC CLAIMS/INQUIRIES                     TEL:212 855 4737      P. 003
Case 1:07-cv-04659-SAS    Document 57-4    Filed 01/28/2008    Page 3 of 8

11/09/2007  09:57    212-815-3676              BNY STRATEGIC MGT              PAGE 02/07

judgment on whether the Trustee should sign supplements to the 1998 Indenture and 2003 Indenture to affect the Spin-Off Transaction proposed by the Company (the "Declaratory Judgment Action"). Subsequently, certain Holders (the "Intervenors") filed a Motion to Intervene and Join Parties in the Declaratory Judgment Action, which the Court granted.

On October 1, 2007, the Trustee received an instruction, pursuant to sections 4.9, 7.1 and 8.1 of the 1998 Indenture and sections 6.06, 9.05 and 10.01 of the 2003 Indenture, from the beneficial owners of more than 51% of the aggregate outstanding principal amount of the Notes to commence an action against the Company and Tyco for damages as a result of breaches under the Indentures (the "Instruction"). On October 18, 2007, the Trustee, the Company and the Intervenors entered into a stipulation allowing the Trustee to file an amended complaint alleging an additional claim for breach of contract.

Pursuant to the Instruction, the Trustee intends to take a reserve of $3.25 million (the "Reserve") for fees and costs reasonably expected to be incurred in connection with the Instruction. The Reserve will be taken *pro rata* according to the amount outstanding under each of the Notes from the next interest payment due under each of the respective Notes, in the amounts shown on Exhibit A attached hereto.

The Trustee and the Intervenors allege that the Spin-Off Transaction consummated by the Company constitutes Events of Default under the Indentures. As such, the Trustee delivered a Notice of Default to the Company on November 8, 2007. For further information concerning the nature of the Events of Default, please see the copy of the Notice of Default attached hereto.

If Holders have any questions about this notice they may contact Gary Bush, Vice President, The Bank of New York, at (212) 815-2747 or gbush@bankofny.com.

The Bank of New York, as Trustee

2

EXHIBIT A

| 1998 Indenture Series of Notes | Current Outstanding | Date of Next Interest Payment | Amount of Next Interest Payment | Amount Withheld from Next Payment | Net Gross Distribution | Distribution per $1,000 Investment |
|---|---|---|---|---|---|---|
| 6.125% due 11/01/2008<br>CUSIP: 90211BAM0<br>Coupon payments: May 1—Nov. 1 | $300,317,000 | May 1, 2008 | $9,197,208.13 | $263,275.83 | $8,933,932.29 | $29.748340 |
| 6.125% due 1/15/2009<br>CUSIP: 90211BAJ7<br>Coupon payments: Jan. 15—July 15 | $215,429,500 | January 15, 2008 | $6,597,528.44 | $188,858.38 | $6,408,670.06 | $29.748340 |
| 6.75% due 2/15/2011<br>CUSIP: 90211BAY4<br>Coupon payments: Feb. 15-Aug. 15 | $515,823,000 | February 15, 2008 | $17,409,026.25 | $452,201.27 | $16,956,824.98 | $32.873340 |
| 6.375% due 10/15/2011<br>CUSIP: 90211BBC1<br>Coupon payments: April 15-Oct. 15 | $849,374,000 | April 15, 2008 | $27,073,796.25 | $744,612.02 | $26,329,184.23 | $30.998340 |
| 7.0% due 6/15/2028<br>CUSIP: 90211BAC2<br>Coupon payments: June 15-Dec. 15 | $438,867,000 | December 15, 2007 | $15,360,345.00 | $384,737.04 | $14,975,607.96 | $34.123340 |
| 6.875% due 1/15/2029<br>CUSIP: 90211BAK4<br>Coupon payments: Jan. 15-July 15 | $731,346,000 | January 15, 2008 | $25,140,018.75 | $641,141.62 | $24,498,877.13 | $33.498340 |

**2003 Indenture Note**

| | Current Outstanding | Date of Next Interest Payment | Amount of Next Interest Payment | Amount Withheld from Next Payment | Net Gross Distribution | Distribution per $1,000 Investment |
|---|---|---|---|---|---|---|
| 6.0% due 11/15/2013 CUSIP: 90211BBK3 | $656,097,000 | November 15, 2007 | $19,682,910.00 | $575,173.85 | $19,107,736.15 | $29.123340 |

Coupon payments: May 15 – Nov. 15

The Bank of New York
101 Barclay Street – 8W
New York, NY 10286

November 8, 2007

**VIA FACSIMILE AND OVERNIGHT MAIL CARRIER**

Tyco International Group, S.A.
17, Boulevard Grande Dutchesse
Charlotte
L-1331 Luxembourg
Attn: The Managing Directors
Facsimile: 352 46 43 50

Tyco International (US), Inc.
9 Roszel Road
Princeton, New Jersey 08540
Attn: Treasurer
Facsimile: (609) 720-4208

Tyco International Group, S.A.
Boulevard Royal, 26, Sixth Floor
L-2449 Luxembourg
Attn: The Managing Directors
Facsimile: (352) 464-3509

Tyco (US) Inc.
One Tyco Park
Exeter, New Hampshire 03833
Attn: Treasurer
Facsimile: (603) 778-7330

Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, New York 10166
Attn: Steven R. Finely
Facsimile: (212 351-4035

Re:  6.125% unsecured notes due 2008 (CUSIP No. 902118AM0)
     6.125% unsecured notes due 2009 (CUSIP No. 902118AJ7)
     6.750% unsecured notes due 2011 (CUSIP No. 902118AY4)
     6.375% unsecured notes due 2011 (CUSIP No. 902118BC1)
     7.000% unsecured notes due 2028 (CUSIP No. 902118AC2)
     6.875% unsecured notes due 2029 (CUSIP No. 902118AK4)
     6.000% unsecured notes due 2013 (CUSIP No. 902118BK3)

**NOTICE OF EVENTS OF DEFAULT**

Ladies and Gentlemen:

This Notice of Events of Default is provided without prejudice to the effectiveness of notices previously delivered.

NOV.-15 07(THU) 12:00    DTC CLAIMS/INQUIRIES                           TEL:212 855-4737                  P. 007
Case 1:07-cv-04659-SAS   Document 57-4    Filed 01/28/2008    Page 7 of 8

11/09/2007  09:57       212-815-3676                        BNY STRATEGIC MGT                        PAGE  06/07

Reference is hereby made to the above-captioned Notes, as defined below, issued by Tyco International Group, S.A. (the "Company"), pursuant to an indenture, dated June 9, 1998 (as supplemented, the "1998 Indenture"), and an indenture, dated November 12, 2003 (as supplemented, the "2003 Indenture," and together with the 1998 Indenture, the "Indentures"), by and among the Company, Tyco International, Ltd. ("Tyco"), as Guarantor, and The Bank of New York (the "Trustee"), as Trustee under the Indentures. All capitalized terms used herein and not defined shall have the respective meanings set forth in the Indentures.

There are six series of notes issued under the 1998 Indenture: 6.125% unsecured notes due 2008 (CUSIP No. 902118AM0); 6.125% unsecured notes due 2009 (CUSIP No. 902118AJ7); 6.750% unsecured notes due 2011 (CUSIP No. 902118AY4); 6.375% unsecured notes due 2011 (CUSIP No. 902118BC1); 7.000% unsecured notes due 2028 (CUSIP No. 902118AC2); and 6.875% unsecured notes due 2029 (CUSIP No. 902118AK4) (collectively, the "1998 Notes"). The remainder of the notes were issued under the 2003 Indenture: 6.000% unsecured notes due 2013 (CUSIP No. 902118BK3) (the "2003 Notes," and together with the 1998 Notes, the "Notes"). The Company issued over $4.6 billion of public debt under the 1998 Indenture and over $1 billion of public debt under the 2003 Indenture.

On January 13, 2006, the Company announced a plan to liquidate itself. This plan of liquidation took effect in late June 2007, and, as confirmed by the most recent 10-Q of Tyco, the plan involved both breaking up the Company into three separate public companies and the liquidation of the Company that borrowed the $5.6 billion in Notes. In this "Spin-Off Transaction," Tyco distributed tens of billions of dollars in assets to its own shareholders. This Spin-Off Transaction constitutes a breach under the Indentures.

First, under the Indentures governing the Notes, the Company cannot sell, transfer or convey "all or substantially all" of its assets to another entity unless that transferee entity assumes the Company's obligations under the Notes. Each of the Indentures specifically includes a Successor Obligor Clause, which says that the Company:

> will not merge or consolidate with any other Person or sell *or convey all of substantially all of its assets to any Person*, unless (i) either the Issuer or such Guarantor, as the case may be, shall be the continuing entity, or the successor entity or the Person which acquires by sale or conveyance substantially all the assets of the Issuer or such Guarantor, as the case may be (if other than the Issuer or such Guarantor, as the case may be) *shall expressly assume the due and punctual payment* of the principal of an interest on all the Securities or the obligations under the Guarantees, as the case may be, according to their tenor, and the due and punctual performance and observance of all of the covenants and agreements of this Indenture to be performed or observed by the Issuer or such Guarantor, as the case may be, by supplemental indenture satisfactory to Trustee, execute and delivered to the Trustee by such corporation . . . .

(1998 Indenture, at § 8.1; 2003 Indenture, at § 10.01 (emphasis added).) Failure to follow the terms of the Successor Obligor Clauses by both (i) permanently transferring substantially all of the Company's assets without also assigning the Notes to the transferee(s) receiving those assets and (ii) transferring less than

2

substantially all of the assets to a transferee and transferring the Notes in connection therewith are each a breach of these Successor Obligor Clauses.

Second, also pursuant to the Indentures, the Trustee's signature on any supplemental indentures is required to consummate the Spin-Off Transaction. However, despite never receiving the requisite signatures on the supplemental indentures, the Company completed the Spin-Off Transaction in violation of clear contractual language to the contrary.

The Company's breaches under the Indentures constitute Events of Default pursuant to section 4.1 of the 1998 Indenture and section 6.01 of the 2003 Indenture. Due to the Company's completion of the Spin-Off Transaction, the time to cure is futile, and as such, the Company is in default of the Indentures.

Pursuant to section 4.8 of the 1998 Indenture and section 6.05 of the 2003 Indenture, the Trustee reserves all rights and remedies arising out of or in connection with the Events of Default and the assertion of any particular right or remedy shall not prevent the concurrent assertion or employment of any other right or remedy.

Very Truly Yours,

THE BANK OF NEW YORK, as Trustee and not individually

By: _____
Gary S. Bush, Vice President

3