UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE BANK OF NEW YORK, as Indenture Trustee,<br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>TYCO INTERNATIONAL GROUP, S.A., TYCO INTERNATIONAL, LTD., and TYCO INTERNATIONAL FINANCE S.A.,<br>　　　　　Defendants. | Docket No. 07 CV 4659 (SAS) |

**REPLY MEMORANDUM OF LAW
IN SUPPORT OF PLAINTIFF THE BANK OF NEW YORK'S
<u>MOTION TO DISMISS THE FIRST AMENDED COUNTERCLAIMS</u>**

Dechert LLP
30 Rockefeller Plaza
New York, New York 10112
(212) 698-3500

Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019
(212) 373-3000

*Attorneys for Plaintiff The Bank of New York*

# TABLE OF CONTENTS

    Page

Preliminary Statement ................................................................................................................1

Reply Argument .........................................................................................................................2

    A.    This Court Should Dismiss the Claim that the Trustee Breached the Contract by Failing To Sign the Supplemental Indentures ......................................2

    B.    This Court Should Dismiss the Claim that the Trustee Breached the Contract by Requesting Creation of a Fee Reserve ................................................5

    C.    This Court Should Dismiss the Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing ............................................................................8

    D.    This Court Should Dismiss the Request for a Declaratory Judgment ..................10

Conclusion ................................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adelphia Comm'ns Corp. v. Bank of Am.*,
   No. 02-bk-41729, 2007 WL 2403553 (Bankr. S.D.N.Y. Aug. 17, 2007).................................8

*Cohen v. U.S. Fid. & Guar. Co.*,
   No. 04-cv-5921, 2005 WL 1036097 (S.D.N.Y. May 4, 2005) ..................................................9

*Frank B. Hall & Co. of N.Y. Inc. v. Orient Overseas Assocs.*,
   425 N.Y.S.2d 66 (N.Y. 1979) ...................................................................................................3

*Hoffman v. Empire Blue Cross & Blue Shield*,
   No. 96-cv-5448, 1999 WL 782518 (S.D.N.Y. Sept. 30, 1999) ................................................7

*Int'l Fidelity Ins. Co. v. County of Rockland*,
   98 F. Supp. 2d 400 (S.D.N.Y. 2000).........................................................................................3

*Orange County Choppers, Inc. v. Olaes Enterprises, Inc.*,
   497 F. Supp. 2d 541 (S.D.N.Y. 2007).......................................................................................8

*Petrohawk Energy Corp. v. Law Debenture Trust Co.*,
   No. 06-cv-9404, 2007 WL 211096 (S.D.N.Y. Jan. 29, 2007) ........................................1, 5, 6, 7

*Tucker v. Am. Bldg. Maint.*,
   451 F. Supp. 2d 591 (S.D.N.Y. 2006).......................................................................................8

*Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.*,
   341 F. Supp. 2d 258 (S.D.N.Y. 2004).......................................................................................8

Defendants' brief shows anew why their needless counterclaims – truly gratuitous burdens on the parties and this Court – are nothing but misguided defenses masquerading as claims and should be dismissed.

The two counterclaimants – Tyco and TIFSA – are *not even parties* to the contracts on which they purport to sue, the only parties to which are the Trustee and the (now-in-liquidation) issuer TIGSA. Even assuming Tyco has some vestigial right to sue, no claim for relief exists, and defendants' response proves it.

Thus, their claim that the Trustee was required to sign supplemental indentures on their unilateral demand is so untenable that, in defending it, defendants never once refer to the clear and unambiguous language requiring that these supplements be "satisfactory" to the Trustee, and never explain why *any* signature would be needed *unless* the Trustee had some discretion to sign or not.

Defendants' second claim – an unbecoming effort to interfere with the Trustee's ability to pursue the main action here by cutting off its financing – amounts to an arrogant usurpation of the *Trustee*'s role to protect Noteholders, seeks to control interest payments in which defendants have no cognizable interest, and contradicts the one decision within this Circuit – Judge Cote's ruling in *Petrohawk* – to consider the matter.

Defendants' redundant claim that the Trustee breached the implied covenant of "good faith and fair dealing" is not just duplicative of their other contract claims. It is barren of well-pleaded allegations of "bad faith." The record negates such an allegation. That defendants assert this claim fully aware that the Trustee *sought judicial guidance on the very actions that defendants summarily label "bad faith"* evinces, we respectfully suggest, defendants' own bad faith in making these claims.

And, finally, nowhere is defendants' intention to assert any claim (no matter the need or merit) more apparent than in their claim for a declaratory judgment mirroring the Trustee's own claims – counterclaims that are wholly unnecessary since the relief being sought is indistinguishable from the relief defendant would have with the Court's denial of the Trustee's claims. Defendants' counterclaims are a waste of time, and rewriting the record cannot make it otherwise.

Defendants do try. Beginning with their preliminary bullet points and continuing thereafter, defendants omit key facts and make others up. They say, for instance, that the Trustee "refused" to sign the supplemental indentures, when in fact the Trustee didn't "refuse" but sought judicial guidance on the issue. Defendants insist that "no change of fact or law" occurred between the filing of this original request for guidance (in June 2007) and the first amended complaint (in October 2007), yet inexplicably fail to mention to the Court the central fact that the Asset-Stripping Transaction took place in exactly that period. Defendants darkly suggest that the Trustee covertly and improperly "cut[] a deal with certain noteholders," even though the Trustee and the Noteholders told this Court on October 2 that precisely that course of action was planned, and that the Trustee amended its complaint to assert the Noteholders' claims *because it was required to do so under the terms of the Indentures*. Riddled throughout are unsupported, unsupportable, and irrelevant assertions about what the Trustee "thought" or "believed" in taking certain steps. Defendants' counterclaims state no claim entitled to relief.

## Reply Argument

### A. This Court Should Dismiss the Claim that the Trustee Breached the Contract by Failing To Sign the Supplemental Indentures

Our main brief showed that the Indentures' successor obligor clauses require a supplemental indenture to be "satisfactory to the Trustee" and that, without a supplemental

2

indenture satisfactory to the Trustee, the Trustee was not obligated to sign the proposed supplemental indentures. (Br. at 7-8.) Nowhere in their opposition brief do defendants address this language, as if by ignoring it they could make it disappear. Defendants have no response. This language alone is sufficient to defeat the counterclaim that the Trustee was obligated to execute the proposed supplemental indentures and had no discretion in the matter.[1]

Disregarding the dispositive language, defendants instead focus on other provisions of the Indentures that, they say, "required" the Trustee to sign the proposed supplements. (Opp. Br. at 6-7.) Defendants are wrong. To begin with, contrary to defendants' argument, the 1998 Indentures provide that "the Trustee *shall join* with the Issuer, Tyco and any other Guarantor in the execution of such supplemental indenture" (1998 Indenture § 7.2 (emphasis added)) only when a majority of securityholders *consent* to a proposed supplemental indenture; when no such consent exists (as here), the Indentures say only that the Trustee "*is hereby authorized to join* with the Issuer, Tyco and any other Guarantor in the execution of any such supplemental indenture" (1998 Indenture § 7.1 (emphasis added)) – a distinction between "required" and "authorized" that refutes defendants' argument under basic principles of contract law. *See, e.g., Int'l Fidelity Ins. Co. v. County of Rockland*, 98 F. Supp. 2d 400, 412-13 (S.D.N.Y. 2000) (giving effect to use of different words in two paragraphs of a surety agreement because contract drafters "must be presumed to know . . . how to use different words and construction to establish distinctions in meaning"); *Frank B. Hall & Co. of N.Y. Inc. v. Orient Overseas Assocs.*, 425 N.Y.S.2d 66, 67 (N.Y. 1979) (holding that "the parties [to a contract]

---

[1] Curiously, looking both ways at once, defendants argue in their reply to the summary judgment motion (for the first time) that defendants did not need the Trustee's signature on the supplemental indentures to go forward with their Asset-Stripping Transaction – a claim directly inconsistent with the whole theory of their counterclaim.

must be deemed to have intended different meanings" because of a "difference in the language of the two provisions").[2]

Defendants argue that the Trustee owed fiduciary duties to defendants, not to the Noteholders. (Opp. Br. at 8-9.) Defendants cite no law in support of this novel theory, and no law exists to support it. The only cases that defendants cite on an indenture trustee's duties to an issuer (*LNC Investments, Inc.* and *Sharon Steel*) show that the trustee also owes duties to noteholders, as defendants themselves appear later to recognize. (Opp. Br. at 9 ("In performing its obligations under the Indentures prior to an event of default, the Trustee was required to consider not only the Noteholders' interests but also the Issuer's.").) This explains why defendants do not challenge the cases in our main brief showing that the Trustee owes fiduciary obligations of care and prudence to the Noteholders. (Br. at 10.)[3]

These competing duties to the Noteholders and to the Issuer are why, faced with a conflict between TIGSA's demand that the Trustee sign the proposed supplemental indentures and the Noteholders' demand that it not do so, the Trustee filed a declaratory judgment action with this Court to determine whether it was permitted or authorized to sign the proposed supplemental indentures. Contrary to defendants' assertion that the Trustee failed to fulfill its duty to determine whether the supplemental indentures were authorized (Opp. Br. at 9 n.6), the

---

[2] It is true that the 2003 Indenture, in contrast to the 1998 Indenture, provides that the Trustee "shall join with Tyco and the [Issuer] in the execution of any such supplemental indentures," irrespective of whether those proposed supplemental indentures have the consent of a majority of securityholders. (2003 Indenture § 9.05.) This fact does not alter the language in the 2003 Indenture, identical to that in the 1998 Indentures, which in all instances requires a supplemental indenture to be "satisfactory" to the Trustee. That requirement has not been met here.

[3] It is undisputed that the Trustee owes fiduciary duties to the Noteholders after an Event of Default; it can be no more in dispute that the Trustee would violate that duty by executing a supplemental indenture in disregard of a demand from the Noteholders not to sign such supplemental indenture because it would cause an Event of Default.

Trustee did so by following the time-honored path of requesting judicial assistance, as it was well within its rights to do (Br. at 19). As noted in our moving brief, defendants – rather than expedite resolution of the Trustee's case so as to obtain a ruling prior to the Asset-Stripping Transaction – simply went ahead with it anyway and then added insult to injury by suing the Trustee for not aiding them in this illegal endeavor.

Finally, we note that the Indenture provisions relating to the officers' certificate and opinion of counsel do not "negate" the Trustee's fiduciary duties to the Noteholders. (Opp. Br. at 7.) On defendants' view, the Trustee can violate the Indenture at any time simply by relying on these documents. This cannot be. These documents merely offer the Trustee the option – though not the obligation – to rely on them in place of an independent investigation and immunize the Trustee from liability to the Noteholders should the Trustee choose to exercise that option. *See* 1998 Indenture § 8.3; 2003 Indenture § 9.05 ("The Trustee . . . *may receive* an Opinion of Counsel . . . as conclusive evidence . . . .").

**B.   This Court Should Dismiss the Claim that the Trustee Breached the Contract by Requesting Creation of a Fee Reserve**

We showed in our moving brief that defendants' next counterclaim – that the Trustee breached the Indentures by making efforts to collect a fee reserve from the interest payments to Noteholders – is foreclosed by Judge Cote's decision in *Petrohawk Energy Corp. v. Law Debenture Trust Co.*, No. 06-cv-9404, 2007 WL 211096 (S.D.N.Y. Jan. 29, 2007). (Br. at 13-15.) Indeed, because *Petrohawk* establishes that defendants have no further payment liability to the Noteholders once they make their interest payments, it confirms defendants' thinly veiled purpose in bringing this particular counterclaim – to disrupt the Trustee's litigation against them on behalf of the Noteholders. Defendants' efforts to get rid of *Petrohawk* are unconvincing.

Contrary to Tyco and TIFSA's argument (Opp. Br. at 15), Judge Cote's rulings did not turn solely on Petrohawk's lack of damages nor on the fact that Petrohawk's claims (for conversion, tortious interference, and constructive trust) were not contract claims. On the conversion claim (that Law Debenture had converted Petrohawk's $1.2 million by using it as a fee reserve rather than holding the money in trust for the noteholders), Judge Cote held that "[o]nce the funds were deposited to be held in trust for the purpose of paying the Noteholders, Petrohawk no longer had control over the funds" and therefore could not direct or control the subsequent disposition of those funds. 2007 WL 211096, at *4. The fact that Petrohawk had not alleged any damages, while essential to the court's ruling on the tortious interference claim, had no bearing on the conversion claim. Nor did the fact that Petrohawk's claims were tort claims rather than contract claims make a difference to the outcome.

Likewise, defendants mischaracterize *Petrohawk* in arguing that the case turns on language not present in the Indentures here which provided that interest payments were "considered paid" upon payment by the issuer to the paying agent. (Opp. Br. at 16-17.) Rather, Judge Cote held, based on principles of trust law, that Petrohawk had no control over the funds once they were paid to the noteholders, *id.* at *4, and *did not find it necessary to reach the question* whether the indenture's "considered paid" language affected the outcome in the case, *id.* at *5-6.

Defendants' arguments that the Indentures do not permit the Trustee to take a reserve from funds held in trust, from non-consenting noteholders, or for expenses not yet incurred (Opp. Br. at 11-14) are refuted yet again by *Petrohawk*. As here, the *Petrohawk* indentures contained similar language providing that payments made by Petrohawk to the paying agent were "to be held in trust for the benefit of Holders of the Securities." (Law Debenture Br.

at 10, citing indenture section 4.14(b), Supplemental Declaration of Douglas M. Pravda ("Pravda Supp. Decl.") Ex. A). As here, the Petrohawk indentures contained the identical language that the right of a noteholder to receive payment for principal and interest "shall not be impaired or affected without the consent of such Holder." *Petrohawk*, 2007 WL 211096, at *4. As here, the Petrohawk trustee was acting on behalf of roughly 70 percent of noteholders. (Law Debenture Br. at 2, Pravda Supp. Decl. Ex. A.) And, as here, the *Petrohawk* trustee sought a fee reserve to reimburse itself for "legal fees incurred and *to be reasonably* incurred." (Law Debenture Br. at 2, Pravda Supp. Decl. Ex. A.) None of these barred creation of a fee reserve in *Petrohawk*, nor should they do so here. Even defendants concede that the Trustee can assert a lien against Noteholders' payments to collect its fees; if these cannot be deducted from either principal or interest, then there is no source of Noteholders' payments that they can be deducted from and this right is rendered meaningless.

Defendants' remaining arguments merit little ink. Far from engaging in "prejudgment attachment" (Opp. Br. at 13) by collecting a fee reserve *from Noteholders*, the Trustee's claim for relief asserts that *defendants* are obligated to pay the Trustee's fees. Should the Court award the Trustee that relief, the Trustee would then return the fee reserve to the Noteholders. Nor does Tyco and TIFSA's counterclaim survive by virtue of the allegation that "the Trustee has acted in bad faith." (Opp. Br. at 13.) A court should accept well-pleaded allegations as true on a motion to dismiss, but "it need not accept [defendants'] legal conclusions and characterizations," *Hoffman v. Empire Blue Cross & Blue Shield*, No. 96-cv-5448, 1999 WL 782518, at *2 (S.D.N.Y. Sept. 30, 1999). Defendants' claims of bad faith here are bereft of factual allegations -- and defendants know very well that no such allegations could be made. Seeking judicial relief and acting under a contract are indicia of good faith.

7

### C. This Court Should Dismiss the Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing

We showed in our moving brief that New York does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based on the same facts, is pled. (Br. at 17-18.) In their opposition brief, defendants concede that two of the allegations on which their counterclaim for breach of the implied covenant rests – that the Trustee refused to sign the supplemental indentures and attempted to misappropriate interest payments – are identical to "the conduct underlying the two breach of contract claims." (Opp. Br. at 21.) Thus, these allegations should be dismissed.[4]

The third allegation should be dismissed as well, because no facts are alleged in support of it. Defendants summarily assert that the Trustee filed the complaint and served a notice of default without a good faith belief that the supplemental indentures and Asset-Stripping Transaction violated the Indentures (Opp. Br. at 21), but defendants do not allege any *facts* in their counterclaim indicating as much. Such conclusory allegations (whether of bad faith or otherwise) without supporting facts are not sufficient to survive a motion to dismiss. *See, e.g., Tucker v. Am. Bldg. Maint.*, 451 F. Supp. 2d 591, 595 (S.D.N.Y. 2006) (granting motion to

---

[4] Defendants incorrectly rely on *Orange County Choppers, Inc. v. Olaes Enterprises, Inc.*, 497 F. Supp. 2d 541 (S.D.N.Y. 2007), for support. That Court dismissed claims for breach of the covenant of good faith and fair dealing precisely because they were "identical to [the] breach of contract claims." *Id.* at 560-61 (holding that two counts of the complaint "clearly allege breaches of the express provisions of the Agreement and thus supersede a claim for breach of the covenant of good faith and fair dealing"). Furthermore, the case on which defendants rely for their ability to plead these claims in the alternative, *Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.*, 341 F. Supp. 2d 258 (S.D.N.Y. 2004), has been criticized and distinguished on this point. *See, e.g., Adelphia Comm'ns Corp. v. Bank of Am.*, No. 02-bk-41729, 2007 WL 2403553, at *8 (Bankr. S.D.N.Y. Aug. 17, 2007) ("While *Xpedior* supports that argument, *Xpedior* is thin in its support for what it said, and numerous cases in this district have held the opposite: a claim for breach of implied covenant of good faith and fair dealing based on the same facts as a breach of contract claim asserted in the same complaint is redundant and must be dismissed on a motion to dismiss." (citing cases)).

dismiss and finding that conclusory allegations were insufficient to support allegations of bad faith); *Cohen* v. *U.S. Fid. & Guar. Co.*, No. 04-cv-5921, 2005 WL 1036097, at *5-6 (S.D.N.Y. May 4, 2005) (granting motion to dismiss where plaintiff's allegations of bad faith in support of its claim for attorney's fees were conclusory).

Defendants' brief tries to correct these pleading deficiencies by saying that the Trustee must have acted in bad faith when it filed the first amended complaint and declared an event of default, because the Trustee had not previously asserted that defendants had breached the Indentures or declared an event of default when asked to sign the supplemental indentures or when the Asset-Stripping Transaction took place. (Opp. Br. at 18-19.) But defendants just ignore that the Trustee, far from refusing to sign the indentures in bad faith and far from conceding that the supplementary indentures or the Asset-Stripping Transaction did not violate the Indentures, filed a declaratory judgment action with the Court in June 2007 (without any formal direction from the Noteholders) to determine whether the supplemental indentures (and, by extension, the Asset-Stripping Transaction) were authorized by the Indentures. The Trustee could not declare a default or file the Noteholders' damage claim in June 2007 because the Asset-Stripping Transaction had not closed and hence there was not a default to declare or damages to claim at that time. That the Trustee ultimately chose not to wait for a resolution to the court proceeding before sending a notice of default and filing a first amended complaint asserting the claims of the Noteholders (as it was required to do under the Indentures) in no way suggests that either action was taken in bad faith.

Let there be no doubt: Defendants' counterclaim for breach of the covenant of good faith and fair dealing, like their claim for breach of contract, is nothing but a premature and

9

meritless claim for malicious prosecution. These are no counterclaims. They are arguments that the Trustee had no right to bring the claims in the Trustee's action. This Court should dismiss.

D.    **This Court Should Dismiss the Request for a Declaratory Judgment**

Tyco and TIFSA argue that three of their declaratory judgment claims are not redundant of the Trustee's own requests and should not be dismissed. But there is no reason for these declaratory judgment requests to remain part of the case. The request that BNY be removed as Indenture Trustee has been mooted by BNY's resignation, which will become effective once a successor trustee is appointed. The remaining requests – for declarations that the Trustee "must" sign the supplemental indentures and that the Trustee cannot collect a fee reserve out of interest payments to Noteholders – are subsumed within Tyco and TIFSA's identical breach of contract counterclaims. Any resolution of those claims will necessarily resolve the declaratory judgment claims; thus, there is no reason for these declaratory judgment claims to go forward.

## Conclusion

For all the foregoing reasons and for the reasons set forth in our moving brief, this Court should grant the Trustee's motion to dismiss the first amended counterclaims.

Dated: February 11, 2008
New York, New York

      Respectfully submitted,

| DECHERT LLP | PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP |
|---|---|
| By: /s/ Kevin O'Brien<br>Kevin O'Brien<br>Glenn Siegel<br>Alissa Rossman | By: /s/ Gerard E. Harper<br>Gerard E. Harper<br>Andrew G. Gordon<br>Andrew N. Rosenberg |
| kevin.obrien@dechert.com | gharper@paulweiss.com |
| 30 Rockefeller Plaza<br>New York City, New York 10112<br>(212) 698-3500 | 1285 Avenue of the Americas<br>New York City, New York 10019<br>(212) 373-3000 |
| *Co-Counsel for the Trustee* | *Co-Counsel for the Trustee* |