UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

THE BANK OF NEW YORK,

        Plaintiff,

    v.

TYCO INTERNATIONAL GROUP S.A., TYCO
INTERNATIONAL LTD., and TYCO
INTERNATIONAL FINANCE S.A.,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

07 Civ. 4659 (SAS)

ECF Case


# DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR AN INJUNCTION REQUIRING THAT INTEREST PAYMENTS BE MADE THROUGH THE TRUSTEE


GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, New York 10166-0193
(212) 351-4000

Attorneys for Defendants

April 1, 2008

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ....................................................................................... 2

ARGUMENT  THE TRUSTEE IS NOT ENTITLED TO AN INJUNCTION ............................ 5

    A.     The Standard on this Motion ................................................................. 5

    B.     The Trustee Has No Likelihood of Success on the Merits .................... 7

         1.     Tyco is Not Obligated to Use the Trustee as Paying Agent ...... 7

         2.     The Indentures Do Not Authorize the Trustee to Collect a Litigation Reserve ....................................................................... 8

    C.     The Trustee Cannot Demonstrate Irreparable Injury ........................... 12

    D.     The Balance of Hardships Favors Tyco .............................................. 15

CONCLUSION ................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*Bear U.S.A., Inc. v. A.J. Sheepskin & Leather Outerwear, Inc.*,
   909 F. Supp. 896 (S.D.N.Y. 1995) ........................................................ 15

*Christian v. New York State Bd. of Law Exam'rs*,
   No. 94 Civ. 0949 (JFK), 1994 WL 62797 (S.D.N.Y. Feb. 23, 1994) ......................................... 6

*General Textile Printing & Processing Corp. v. Expromtorg Int'l Corp.*,
   862 F. Supp. 1070 (S.D.N.Y. 1994) ...................................................... 13

*Gidatex v. Campaniello Imports, Ltd.*,
   13 F. Supp. 2d 417 (S.D.N.Y. 1998) ..................................................... 14

*Great Earth Int'l Franchising Corp. v. Milks Devs., Inc.*,
   302 F. Supp. 2d 248 (S.D.N.Y. 2004) ..................................................... 6

*Johnson v. Kay*,
   860 F.2d 529 (2d Cir. 1988) .............................................................. 6

*Jolly v. Coughlin*,
   76 F.3d 468 (2d Cir. 1996) .............................................................. 7

*JSG Trading Corp v. Tray-Wrap, Inc.*,
   917 F.2d 75 (2d Cir. 1990) ............................................................. 13

*Lincoln Cercpac v. Health and Hosps. Corp.*,
   920 F.Supp. 488 (S.D.N.Y. 1996) ....................................................... 12

*Loveridge v. Pendleton Woolen Mills, Inc.*,
   788 F.2d 914 (2d Cir. 1986) ........................................................... 12

*Marcy Playground, Inc. v. Capitol Records, Inc.*,
   6 F. Supp. 2d 277 (S.D.N.Y. 1998) ..................................................... 15

*Mazurek v. Armstrong*,
   520 U.S. 968 (1997)...................................................................... 6

*Petrohawk Energy Corp. v. Law Debenture Trust Co.*,
   No. 06 Civ. 9404 (DLC), 2007 WL 211096 (S.D.N.Y. Jan. 29, 2007) ........................... passim

*Register.com, Inc. v. Verio, Inc.*,
   356 F.3d 393 (2d Cir. 2004) ........................................................... 13

## TABLE OF AUTHORITIES
*(Continued)*

**Page(s)**

*Reuters Ltd. v. United Press Int'l, Inc.,*
  903 F.2d 904 (2d Cir. 1990) .................................................................. 12

*Richard A. Leslie Co., Inc. v. Birdie, LLC,*
  No. 07 Civ. 5933 (LAK), 2007 WL 4245847 (S.D.N.Y. Nov. 26, 2007) ............................... 15

*Rosenfeld v. W.B. Saunders,*
  728 F. Supp. 236 (S.D.N.Y. 1990), *aff'd*, 923 F.2d 845 (2d Cir. 1990) .................. 13

*Simmons v. Cranston,*
  No. 07 Civ. 3241 (RJH) (MHD), 2008 WL 820474 (S.D.N.Y. Jan. 14, 2007)......................... 6

*Tom Doherty Assoc., Inc. v. Saban Entm't, Inc.,*
  60 F.3d 27 (2d Cir. 1995) ............................................................... 6, 7

*Tough Traveler, Ltd. v. Outbound Prods.,*
  60 F.3d 964 (2d Cir. 1995) ............................................................. 14

*Tucker Anthony Realty Corp. v. Schlesinger,*
  888 F.2d 969 (2d Cir. 1989) ............................................................ 12

*Weinberger v. Romero-Barcelo,*
  456 U.S. 305 (1982)..................................................................... 13

### Statutes

15 U.S.C. § 77ppp.......................................................................... 11

### Other Authorities

American Bar Foundation, Commentaries on Model Debenture Indenture
  Provisions (1971) ................................................................... 10, 16

## PRELIMINARY STATEMENT

Defendants Tyco International Ltd., Tyco International Group S.A., and Tyco International Finance S.A. (together, "Tyco") respectfully submit this memorandum in opposition to Plaintiff's oral motion for an injunction requiring Tyco to make future interest payments to the Trustee, rather than to the registered holder of Tyco's Notes.

There is no basis whatsoever for the relief sought by Plaintiff.  The Indentures that govern the rights and obligations of the parties do not require Tyco to make interest payments through the Trustee.  Tyco is permitted to use a "paying agent" to make such payments – and may act as its own "paying agent" – but the function of the paying agent is simply to pass the payments on to the registered holder of the Notes.  Tyco's obligation under the Indentures is not satisfied until the registered holder receives the entire interest payment.

The Indentures give the Trustee no right to skim off portions of the interest payments to create a litigation reserve, which is the only reason the Trustee seeks to have the payments made to it.  In fact, the Indentures expressly prohibit the Trustee from doing so.  Among other provisions, the Indentures state, as required by the Trust Indenture Act of 1939, that the Trustee may not impair any holder's receipt of interest payments without that holder's consent; yet the Trustee proposes to do precisely that, absconding with interest payments owed to all holders to fund a "reserve" for expenses that have not yet been incurred and may never be incurred.  Under such circumstances, the Trustee cannot possibly demonstrate a likelihood of success on its claimed entitlement to purloin interest payments belonging to the holders of the Notes.

Similarly, Plaintiff cannot demonstrate any irreparable injury if Tyco makes payments directly to the registered holder of the Notes.  Plainly, Plaintiff has an adequate remedy at law, and has already asserted a claim against Tyco for recovery of its litigation costs; assuming that Plaintiff is entitled to reimbursement for expenses incurred – and, given the Trustee's bad faith

conduct, we vigorously contest that it is – the Court can grant such relief *after* trial, rather than in the form of a pre-trial injunction and without even requiring the Trustee to submit any evidence. Moreover, as Plaintiff's counsel recently conceded, the Trustee is already being indemnified by the beneficial owners of the Notes and therefore is not out of pocket even one penny. Furthermore, if as many beneficial owners support the Trustee as Plaintiff's counsel claims (albeit without the submission of any evidence), the consenting noteholders can cover the Trustee's litigation expenses by creating a litigation reserve *after* the interest payments are received by the beneficial owners.  Thus, Plaintiff has ample financial support for its continued litigation of this matter.  Any claim of irreparable injury is further belied by the fact that Tyco has made interest payments to the registered holder of the Notes on four occasions beginning in November, and yet the Trustee waited more than four months to seek relief – and did so almost as an afterthought, by an unsupported letter sent literally just hours before the recent status conference with the Court.

Accordingly, Plaintiff's motion must be denied.

## STATEMENT OF FACTS

Between 1998 and 2003, Tyco issued seven series of unsecured notes (the "Notes") governed by indentures dated June 9, 1998 (the "1998 Indenture") and November 12, 2003 (the "2003 Indenture" and, together with the 1998 Indenture, the "Indentures").[1]  Plaintiff The Bank of New York ("BNY") was the Trustee under both Indentures.  On January 24, 2008, BNY resigned from its role as indenture trustee, and later petitioned the Court to appoint a successor.

---

[1] Copies of relevant provisions of the Indentures are attached to the accompanying Declaration of Marshall R. King ("King Decl.") as Exhibits A and B.

King Decl. ¶ 4.  On March 25, 2008, the Court appointed Wilmington Trust Company

("Wilmington") as the successor Trustee.  *Id.* ¶ 5.

Each of the Notes was issued in the form of a "Global Security" in the name of The

Depository Trust Company Clearing Corporation (or its nominee, Cede & Co.) (together,

"DTC"), and DTC is the sole registered holder of the Notes.  *See* King Decl. Exs. C through H

(form of Notes issued under 1998 Indenture); *see also id.* Ex. I (form of Notes issued under 2003

Indenture); 1998 Indenture § 2.13 (Notes issued as Global Securities "shall be registered in the

name of the Depositary [DTC]"); 2003 Indenture § 2.11(a) (same).  Each of the Notes requires

that periodic interest "will be paid to the Person in whose name this Note is registered."  King

Decl. Exs. C through H; *see also id.* Ex. I ("The Company will pay interest on the Securities . . .

to the persons in whose name such Securities are registered . . . .").  Once DTC receives

payment, it further distributes the payments to its participants, and eventually on to the beneficial

owners of the Notes.

While Tyco's obligation is to pay interest to DTC, the registered holder, the Indentures

permit Tyco to use a "paying agent" to route those payments.  1998 Indenture § 3.4; 2003

Indenture § 4.03.  The only function of the paying agent is to receive the interest payments from

Tyco and to forward them on to DTC.  Tyco does not satisfy its obligations under the Indentures

unless the entire interest payment is received by DTC.[2]

Tyco traditionally utilized BNY as the "paying agent," and made its periodic interest

payments by transferring funds to BNY, which then forwarded the payments to DTC.

---

[2]  Unlike the indenture at issue in *Petrohawk Energy Corp. v. Law Debenture Trust Co.*, No. 06 Civ. 9404 (DLC), 2007 WL 211096, at *5 (S.D.N.Y. Jan. 29, 2007), the Tyco Indentures do *not* contain any provision stating that interest is "considered paid" when received by the paying agent.

Declaration of Andrea Goodrich ("Goodrich Decl.") ¶ 2.  That procedure continued even after

BNY commenced this action against Tyco in June 2007.  Tyco made interest payments via BNY

on July 15, 2007, August 15, 2007, October 15, 2007, and November 1, 2007.  *Id.* ¶ 3.  BNY

fulfilled its role as paying agent, receiving Tyco's payment and forwarding it in its entirety to

DTC.

On or about November 9, 2007, however, BNY announced its intention to withhold $3.25

million from the next several interest payments that were to be distributed to the beneficial

owners of the Notes.  King Decl. Ex. J.  The Trustee supposedly intended to use this $3.25

million as a "reserve" to fund this litigation (*id.*), even though the Trustee had already asserted a

claim against Tyco seeking reimbursement of its litigation and other expenses.  *See* First

Amended Complaint ¶¶ 78-80.  Worried that it would suffer reputational injuries and be the

subject of litigation by beneficial owners who did not receive their full interest payments, Tyco

arranged to make interest payments, beginning on November 15, 2007, directly to DTC, the

record holder, rather than allowing the payments to pass through – and be misappropriated by –

BNY.  Goodrich Decl. ¶ 4.  BNY then threatened to sue DTC if DTC distributed the full amount

of the interest payment to the beneficial owners.  *Id.* ¶ 5.  Tyco was forced to advance an

additional $575,173.85 – the amount that the Trustee sought to skim off of the November interest

payment – to DTC to persuade it to make the distributions that beneficial owners expected.  *Id.*

¶ 5.[3]

---

[3]  On January 17, 2008, BNY wrote to DTC, falsely stating that the $575,173.85 that Tyco
deposited with DTC in November had been "wired to [DTC] in error."  King Decl. Ex. K.
On that false pretense, BNY demanded that the $575,173.85 be wired by DTC to BNY.  *Id.*
Through its counsel, Tyco objected to BNY's demand, and DTC continues to hold Tyco's
money.  *Id.* ¶ 15.  Among the damages asserted by Tyco on its counterclaims against BNY is
that it has been without the use of those funds since November.

Since that time, Tyco has acted as its own "paying agent" and has made subsequent interest payments, on December 15, 2007, January 15, 2008, and February 15, 2008, directly to DTC.  Goodrich Decl. ¶ 6.

Although BNY has repeatedly complained about Tyco making payments directly to DTC, it delayed seeking relief from the Court until last week.  On December 21, 2007, for instance, BNY's lawyer called counsel for Tyco, indicating that BNY wanted to amend its complaint to add a claim for Tyco having "hijacked" the November interest payment.  King Decl. ¶ 14.  BNY never followed up with such an amendment.

On January 29, 2008, Plaintiff's counsel wrote to the Court, advising that they would soon be requesting a pre-motion conference "for relief from more of defendants' mischief."  King Decl. Ex. L.  Notwithstanding this warning, Plaintiff in fact did nothing.

Finally, after two more months, on March 25, 2008, the same day that the parties were scheduled to appear for a status conference, Plaintiff's counsel wrote to the Court, complaining about Tyco's payments being made directly to DTC.  *Id.* Ex. M (the "March 25 Letter").  At the status conference later that day, Plaintiff orally moved for an order requiring Tyco to make interest payments to the Trustee.  Transcript of Conference, March 25, 2008 ("March 25 Tr."), at 42 (King Decl. Ex. N).

## ARGUMENT

## THE TRUSTEE IS NOT ENTITLED TO AN INJUNCTION

A.     **The Standard on this Motion**

A party seeking preliminary injunctive relief has the burden of showing "(a) that it will suffer irreparable harm in the absence of an injunction and (b) either (i) a likelihood of success on the merits or (ii) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor."  *Great Earth*

*Int'l Franchising Corp. v. Milks Devs., Inc.*, 302 F. Supp. 2d 248, 251 (S.D.N.Y. 2004).

Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Simmons v. Cranston*, No. 07 Civ. 3241 (RJH) (MHD), 2998 WL 820474 (S.D.N.Y. Jan. 14, 2007) (quoting *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997)).

A typical preliminary injunction is prohibitory and "generally seeks only to maintain the status quo pending a trial on the merits." *Tom Doherty Assoc., Inc. v. Saban Entm't, Inc.,* 60 F.3d 27, 34 (2d Cir. 1995). In contrast, a mandatory injunction alters the status quo by commanding some positive act. *Id.* When the movant seeks to disturb the status quo by ordering affirmative relief, as the Trustee does here, a "somewhat higher standard is applied, under which the movant must show a substantial likelihood of success on the merits, rather than merely a likelihood of success." *Christian v. New York State Bd. of Law Exam'rs*, No. 94 Civ. 0949 (JFK), 1994 WL 62797, at *1-2 (S.D.N.Y. Feb. 23, 1994) (citing *Johnson v. Kay,* 860 F.2d 529, 541 (2d Cir. 1988) ("Mandatory injunctions, for which the higher standard is appropriate, are those that disturb the status quo by ordering affirmative relief, while prohibitory injunctions preserve the status quo.")).

Though the Trustee claims that Tyco's decision to make interest payments directly to DTC alters "the way interest payments have always been made under these Indentures" (King Decl. Ex. M, March 25 Letter at 2), it is actually the *Trustee* that is seeking to alter the status quo. For the past 10 years, BNY has forwarded interest payments to the registered holder of the Notes, for subsequent distribution to the beneficial owners, and not kept any of the funds for itself. If the Court directs Tyco to remit its interest payments to the Trustee, the registered holder and beneficial owners will no longer receive their full interest payments, as they have for ten

years, and as required by the Indentures.  As Tyco alleges in its counterclaims, and as explained

below, the Trustee's effort to misappropriate interest payments meant for the noteholders

constitutes a breach of the Trustee's obligations under the Indentures (and could cause a breach

by Tyco).  More than four months ago, Tyco acted to cease using BNY as its paying agent, to

avoid further injury to itself and to noteholders.  Thus, the Trustee is seeking a mandatory

injunction, asking the Court to require Tyco to perform an affirmative act that will alter the

current state of affairs, and the Court should therefore apply the heightened standard and require

that the Trustee make a clear showing that it is entitled to the relief requested.  *See e.g., Tom

Doherty Assocs.,* 60 F.3d at 34 (finding that "[b]ecause the preliminary relief arguably alters the

status quo by doing more than is required by the Agreement, it might be considered mandatory");

*Jolly v. Coughlin*, 76 F.3d 468, 474 (2d Cir. 1996) (concluding that injunction sought by inmate

requiring officials to release him from confinement would clearly alter the status quo because he

had been in confinement for the past three and a half years, and so injunction was mandatory).

Ultimately, however, whether the relief sought by the Trustee is considered to be a

prohibitory or a mandatory injunction is largely beside the point, because the Trustee has not and

cannot make the required showing under either standard.

**B.    The Trustee Has No Likelihood of Success on the Merits**

For numerous reasons, the Trustee cannot establish a likelihood of success on the merits,

or even serious questions on the merits making them a fair ground for litigation.

**1.    Tyco is Not Obligated to Use the Trustee as Paying Agent**

The Trustee has pointed to nothing in the Indentures that requires Tyco to use the Trustee

as its paying agent, and in fact there is nothing.  Each of the Indentures permits – but does not

require – Tyco to use a paying agent.  1998 Indenture § 3.4; 2003 Indenture § 4.03.  More

importantly, each of the Indentures expressly contemplates that Tyco may "act as its own paying

agent." 1998 Indenture § 3.4; *see also* 2003 Indenture § 4.03(a) ("Tyco, the Company or any of their Subsidiaries may act as paying agent."). Since November, that is what Tyco has done, and it is in complete compliance with the Indentures in doing so. Moreover, since Tyco's obligation is to pay interest "to the Person in whose name this Note is registered" (King Decl. Ex. C through H; *see also id.* Ex. I), making the interest payments to DTC, the registered holder of the Notes, is precisely what the Indentures require.[4] Tyco would not fulfill its obligations under the Indentures in the event there is a shortfall in the money received by DTC.

In the absence of any contractual or other legal obligation to use the Trustee as paying agent, the Trustee relies entirely an appeal to the way things have "always" been done. March 25 Letter at 1. But the Trustee fails to articulate any legal or equitable theory that would transform such historical practice into a legal right that the Trustee can enforce by an injunction.

Accordingly, Plaintiff has no likelihood of success on the merits.

### 2.    The Indentures Do Not Authorize the Trustee to Collect a Litigation Reserve

In the event the Court were to grant the injunction requested by the Trustee, the Trustee's stated intention is *not* to forward the interest payments in their entirety to the registered holder of the Notes – the way it has "always" done for the past ten years – but, rather, to skim off $3.25

---

[4] Plaintiff describes DTC simply as "a clearing house for the distribution of the interest payments to the Noteholders" (King Decl. Ex. M, March 25 Letter at 2), but in fact DTC's role is much more significant. As explained earlier, DTC is the sole registered holder of the Notes for all purposes under the Indentures. As such, DTC – and no one else – is considered "the absolute owner of such Security . . . for the purpose of receiving payment of or on account of the principal of and, subject to the provisions of this Indenture, interest on such Security and for all other purposes." 1998 Indenture § 6.3; *see also* 2003 Indenture § 8.03. Therefore, under the terms of the Indentures, DTC *is* the "Noteholder." Those whom Plaintiff repeatedly refers to as "Noteholders" have no status under the Indentures; they may or may not be beneficial owners of the Notes – certainly, no proof has been offered of that – but such status is of no import under the terms of the Indentures.

million of those payments to be used for future expenses in connection with this litigation. The Trustee claims that it has a "contractual right to assert a lien on interest payments to fund this litigation." March 25 Letter at 1. In fact, the Indentures do not permit the Trustee to amass a litigation reserve for costs not yet incurred, do not permit the Trustee to take interest payments from noteholders who have not consented, and do not provide for a lien on ordinary, periodic interest payments. The Trustee's attempt to misappropriate interest payments violates the Indentures.

Each of the Indentures entitles the Trustee to be "reimburse[d]" by Tyco for all "reasonable expenses, disbursements and advances *incurred or made* by or on behalf of it in accordance with any of the provisions of this Indenture . . . except to the extent any such expense, disbursement or advance may arise from its negligence or bad faith." 1998 Indenture § 5.6 (emphasis added); *see also* 2003 Indenture § 7.06(a). Even ignoring the important questions of whether the Trustee's expenses in connection with this litigation are (a) "reasonable," (b) incurred "in accordance with" the Indentures, and (c) not made through "negligence or bad faith,"[5] these Indenture provisions, which use the past tense ("incurred or made"), make clear that the Trustee is *only* entitled to reimbursement *after* such expenses have been incurred.

Those same Indenture provisions also make clear that such reimbursement may *not* be taken from ordinary, periodic interest payments. Thus, to the extent the Trustee is owed money for expenses previously incurred, the Trustee is granted a lien senior to that of the Notes on all funds that it may hold, "except funds held in trust for the benefit of the holders." 1998 Indenture

---

[5] These issues can only decided after trial, and the Trustee has offered no evidence that it is likely to succeed on any of these issues.

§ 5.6; 2003 Indenture § 7.06(b).  And the immediately preceding section of each Indenture

establishes that "all moneys received by the Trustee shall . . . be held in trust for the purposes for

which they were received."  1998 Indenture § 5.5; *see also* 2003 Indenture § 7.05.  Thus, in the

event that the Trustee were to receive interest payments for distribution to the noteholders, the

Trustee would be obligated to hold those funds in trust for that purpose (and that purpose only),

and could not take its fees, costs or expenses – whether already incurred or merely anticipated –

out of such funds.

This conclusion is supported by the American Bar Foundation, Commentaries on Model

Debenture Indenture Provisions (1971) ("*Commentaries*"), which, in commenting on the

standard debenture provision granting the Trustee a lien on funds, states:

> The last sentence of Section 607 is a typical provision giving the Trustee a lien
> upon all properties held by it as Trustee as security for the performance of the
> obligations of the Company under Section 607.  An exception is made with
> respect to funds held in trust for the benefit of the holders of particular debentures
> or coupons since, under Section 1003, these would be funds deposited with the
> Trustee in trust for a particular payment.  In fact, *in an unsecured debenture issue
> there is not likely to be any property held by the Trustee to which such lien would
> attach*.

*Commentaries* at 263 (emphasis added).[6]

The Trustee attempts to justify its effort to procure interest payments due to noteholders

by asserting – in an unsworn representation by counsel, without evidentiary support – that "73%

of the Noteholders . . . have directed the Trustee to establish such a reserve for the payment of its

legal fees."  King Dec. Ex. M, March 25 Letter at 1-2.  Even setting aside the utter failure of

proof, no matter how many noteholders (or beneficial owners) purportedly directed the Trustee

---

[6] Furthermore, the Trustee's lien applies only to funds "held or collected by the Trustee *as
such*."  1998 Indenture § 5.6 (emphasis added); 2003 Indenture § 7.06(b) (emphasis added).
In the event that interest payments were made to the Trustee *as paying agent* – rather than as
Trustee – the lien is inapplicable for that reason as well.

to withhold interest payments, the Trustee is expressly prohibited from doing so with respect to interest due to those noteholders who did not consent, and the Trustee concedes that at least 27% did not do so. As required by the Trust Indenture Act of 1939, the 1998 Indenture provides, in no uncertain terms:

> Notwithstanding any other provision in this Indenture and any provision of any Security, the right of any Holder of any Security to receive payment of the principal of and interest on such Security on or after the respective due dates expressed in such Security . . . shall not be impaired or affected without the consent of such Holder.

1998 Indenture § 4.7; *see also* 2003 Indenture § 6.04; 15 U.S.C. § 77ppp(b) ("the right of any holder of any indenture security to receive payment of the principal of and interest on such indenture security, on or after the respective due dates expressed in such indenture security, . . . shall not be impaired or affected without the consent of such holder"). Thus, even if the Trustee had consent from any noteholders to create a litigation reserve, it could not do so by misappropriating interest payments due to non-consenting noteholders. Doing so would violate the Trust Indenture Act of 1939 as well as the provisions of the Indentures.

As it did in seeking dismissal of Tyco's counterclaims, the Trustee relies on the *Petrohawk* case, in which Judge Cote dismissed tort claims asserted by an issuer against an indenture trustee that had taken a portion of a semiannual interest payment in order to fund litigation against the issuer. Judge Cote's decision, however, does not support the Trustee's contention that it has a right to take such funds, much less that Tyco can be forced to submit interest payments to the Trustee so that they can be depleted by the Trustee. Rather, her decision was based principally on the issuer's inability to establish any damages as a result of the trustee's conduct. *See* 2007 WL 211096, at *6. Under the express terms of the indenture in *Petrohawk*, the issuer's obligation to pay interest was satisfied by the payment to the trustee as paying agent; thus, the issuer faced no exposure to bondholders. *Id.* at *5. Here, by contrast, the Tyco

Indentures provide that Tyco's obligation is satisfied *only* by payment to the registered holder, and Tyco therefore faces potential liability to noteholders for any shortfall. Unlike the issuer in *Petrohawk*, Tyco would be damaged by any amounts taken by the Trustee. In any event, whether or not Tyco has a claim arising out of the Trustee's conduct is not relevant to whether the Trustee is entitled to an injunction compelling Tyco to make interest payments through the Trustee. Even in *Petrohawk*, Judge Cote acknowledged that the trustee might have acted wrongfully, but simply held that any remedy lay with the noteholders, rather than the issuer. *Id.* at *6. Thus, *Petrohawk* is inapposite.

Because the Trustee has no right to take a portion of any interest payment for the purposes of establishing a litigation reserve, it is plainly not entitled to a preliminary injunction compelling Tyco to make payments that would facilitate such wrongdoing.

## C.     The Trustee Cannot Demonstrate Irreparable Injury

A showing of probable irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *Lincoln Cercpac v. Health and Hosps. Corp.*, 920 F.Supp. 488, 495 (S.D.N.Y. 1996) (quoting *Reuters Ltd. v. United Press Int'l, Inc.,* 903 F.2d 904, 907 (2d Cir. 1990)). Plaintiff must demonstrate that such injury is "imminent, not remote or speculative," *Tucker Anthony Realty Corp. v. Schlesinger,* 888 F.2d 969, 975 (2d Cir. 1989), and that the alleged injury cannot be fully remedied by monetary damages. *See id.; Loveridge v. Pendleton Woolen Mills, Inc.,* 788 F.2d 914, 917-18 (2d Cir. 1986). Essential to a showing of irreparable harm is the unavailability, or at least inadequacy, of a money damages award. *See, e.g., Weinberger v. Romero-Barcelo,* 456 U.S. 305, 312 (1982) ("The Court has repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies."). In addition, the movant must establish more than a mere

"possibility" of irreparable harm.  Rather, it must show that irreparable harm is "likely" to occur. *JSG Trading Corp v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990).

Here, the Trustee cannot show that denial of an injunction directing Tyco to remit interest payments directly to the Trustee will result in irreparable injury.

First and foremost, the Trustee has an adequate remedy at law and, indeed, has already asserted a breach of contract claim against Tyco for money damages covering the Trustee's fees and expenses.  *See* First Amended Complaint ¶¶ 78-80.  "While the Court has the discretion to permit injunctive relief for breach of contract, the classic remedy for breach of contract is an action at law for damages.  If the injury complained of may be compensated by an award of monetary damages, then an adequate remedy at law exists and no irreparable harm may be found as a matter of law."  *General Textile Printing & Processing Corp. v. Expromtorg Int'l Corp.*, 862 F. Supp. 1070, 1075 (S.D.N.Y. 1994) (denying motion for injunction because "since the damages caused by defendant's alleged breach can be remedied at law, injunctive relief is inappropriate") (quoting *Rosenfeld v. W.B. Saunders*, 728 F. Supp. 236, 244 (S.D.N.Y. 1990), *aff'd*, 923 F.2d 845 (2d Cir. 1990)); *see also Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 426 (2d Cir. 2004) (holding that district court erred in granting injunction in breach of contract case where damages were possible to calculate).  Here, the Trustee has an adequate remedy at law, as it essentially concedes when its counsel writes, "*Other than a claim for indemnity against the issuer*, which the Trustee has asserted here, the Trustee has no right to a pool of money to finance the effort." King Decl. Ex. M, March 25 Letter at 3 (emphasis added).  If the Court determines that Tyco has breached the Indentures and that the Trustee is therefore entitled to litigation costs and expenses, such damages will be easily calculable.

13

Moreover, even if money damages were not an adequate remedy, an injunction would still be unnecessary here. The Trustee claims that 73% of noteholders "have directed the Trustee to establish . . . a reserve for the payment of its legal fees." *Id*. at 1-2. The Trustee further admitted to the Court that it is being indemnified by the noteholders. King Decl. Ex. N, March 25 Tr. at 11-12. Therefore, the Trustee, by its own admission, should be able to build a litigation reserve by collecting payment from the any consenting noteholders *after* Tyco's interest payments get distributed to beneficial owners, or by seeking immediate indemnification from those consenting owners of any litigation costs that it must spend. The Trustee therefore has no injury at all, much less an irreparable one.

Finally, the Trustee's delay in seeking injunctive relief undermines its claim of irreparable injury. "While delay 'may not warrant the denial of ultimate relief, it may, standing alone, preclude the granting of preliminary injunctive relief, because the failure to act sooner undercuts the sense of urgency' upon which the availability of the remedy is predicated." *Gidatex v. Campaniello Imports, Ltd.*, 13 F. Supp. 2d 417, 419 (S.D.N.Y. 1998) ("courts typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months") (quoting *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995)). Tyco first made an interest payment directly to DTC on November 15, 2007. The Trustee was obviously immediately aware of Tyco's actions – indeed, it threatened to sue DTC as a result – and was also immediately (albeit mistakenly) of the belief that Tyco violated the Indentures in doing so. Thereafter, on December 21, 2007, counsel for the Trustee sought Tyco's consent to its filing an amended complaint to assert a claim based on that conduct. King Decl. ¶ 14. The Trustee also knew that it could seek relief from the Court, and even told the Court that it would be doing so. King Decl. Ex. L (stating that the Trustee was "compelled to

14

seek a pre-motion conference for relief from more of defendants' mischief"). But the Trustee continued to do nothing. Since November, Tyco has made three additional interest payments directly to DTC, yet the Trustee still sought no relief. Now, more than four months after the Trustee believed it had a right to relief, it has finally moved for an injunction directing Tyco to make interest payments directly to the Trustee. The Trustee's unexplained and inexplicable delay in pressing its alleged right to create a litigation reserve out of Tyco's interest payments negates any claim that the Trustee will be irreparably harmed by Tyco making its payments directly to DTC, as it is authorized to do under the Indentures. *See, e.g.*, *Richard A. Leslie Co., Inc. v. Birdie, LLC*, No. 07 Civ. 5933 (LAK), 2007 WL 4245847, at *2 (S.D.N.Y. Nov. 26, 2007) (finding that unexcused second three months of six month delay "is sufficiently long, in and of itself, to warrant denial of preliminary relief") (citing, *inter alia*, *Marcy Playground, Inc. v. Capitol Records, Inc.*, 6 F. Supp. 2d 277, 281 (S.D.N.Y. 1998) ("presumption of irreparable injury vitiated by unexplained three month delay")); *Bear U.S.A., Inc. v. A.J. Sheepskin & Leather Outerwear, Inc.*, 909 F. Supp. 896, 909-10 (S.D.N.Y. 1995) (three month delay unreasonable)).

Because the Trustee cannot demonstrate any danger of irreparable harm, the Court should deny its request for an injunction.

## D.    The Balance of Hardships Favors Tyco

Finally, in the event the Court needs to balance the hardships facing each party, the granting of injunction would potentially expose Tyco to liability to noteholders because of a shortfall in the interest payments.

While the Trustee has asserted, in reliance on *Petrohawk*, that Tyco would not have to "make up the difference" of any funds taken by the Trustee for a fee reserve (March 25 Letter at 3), as explained above, there is an important difference in the terms of the Indentures here from

15

those at issue in *Petrohawk*.  In *Petrohawk*, the indenture expressly provided that interest payments were "considered paid" upon payment by the issuer to the paying agent.  2007 WL 211096, at *5.  As Judge Cote noted, however, such a provision is unusual and "is not found in the Model Provisions" of the ABF *Commentaries* (*id.*), and the Tyco Indentures do not have such a provision.  As such, under the Model Indenture and under the Tyco Indentures, "the Company bears the risk" if its paying agent fails to make payment to the registered holder.  *Commentaries* at 321.  Thus, unlike in *Petrohawk*, if Tyco's interest payments are made to the Trustee, and if the Trustee then purloins a portion of the interest payments before paying the registered holder, Tyco would not have satisfied its obligations to the noteholders, and might well be liable to "make up the difference."

The hardship to Tyco is further exacerbated by the fact that the Trustee – and hence the "paying agent" to whom the interest would be paid if an injunction is issued – is now Wilmington, an entity that was not chosen by Tyco and about which Tyco has almost no information, including whatever agreements Wilmington has made with BNY or beneficial owners of the Notes.  Thus, it strains the English language to suggest that Wilmington would be acting as Tyco's paying *agent*, and Tyco should not be enjoined to use Wilmington as such.

As explained above, any hardship to the Trustee is entirely mitigated by its ability to recover money damages against Tyco if it is correct, to obtain indemnification from the noteholders, and to have any consenting noteholders establish a litigation reserve *after* Tyco has made its interest payment to the registered holder and that payment is further distributed to beneficial owners.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiff's motion for a preliminary

injunction.

Dated: New York, New York
       April 1, 2008

                                        GIBSON, DUNN & CRUTCHER LLP

                                        By: ___/s/ Marshall R. King_____
                                             Wesley G. Howell (WH-8660)
                                             Marshall R. King (MK-1642)
                                        200 Park Avenue, 47th Floor
                                        New York, New York 10166-0193
                                        (212) 351-4000

                                        Attorneys for Defendants