# EXHIBIT M

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064

TELEPHONE (212) 373-3000
FACSIMILE (212) 757-3990

LLOYD K. GARRISON (1946-1991)
RANDOLPH E. PAUL (1946-1956)
SIMON H. RIFKIND (1950-1995)
LOUIS S. WEISS (1927-1950)
JOHN F. WHARTON (1927-1977)

WRITER'S DIRECT DIAL NUMBER
212-373-3263

WRITER'S DIRECT FACSIMILE
212-492-0263

WRITER'S DIRECT E-MAIL ADDRESS
gharper@paulweiss.com

1615 L STREET, NW
WASHINGTON, DC 20036-5694
TELEPHONE (202) 223-7300
FACSIMILE (202) 223-7420

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101
FACSIMILE (81-3) 3597-8120

UNIT 3601, FORTUNE PLAZA OFFICE TOWER A
NO. 7 DONG SANHUAN ZHONGLU
CHAO YANG DISTRICT
BEIJING 100020
PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86-10) 5828-6300
FACSIMILE (86-10) 6530-9070/9080

12TH FLOOR, HONG KONG CLUB BUILDING
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2536-9933
FACSIMILE (852) 2536-9622

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, U.K.
TELEPHONE (44 20) 7367 1600
FACSIMILE (44 20) 7367 1650

MATTHEW W. ABBOTT
MARK H. ALCOTT
ALLAN J. ARFFA
ROBERT A. ATKINS
JOHN F. BAUGHMAN
LYNN B. BAYARD
DANIEL J. BELLER
MITCHELL L. BERG
MARK S. BERGMAN
BRUCE BIRENBOIM
H. CHRISTOPHER BOEHNING
ANGELO BONVINO
RICHARD S. BORISOFF
HENK BRANDS
JAMES L. BROCHIN
RICHARD J. BRONSTEIN
SUSANNA M. BUERGEL
PATRICK S. CAMPBELL*
JEANETTE K. CHAN
YVONNE Y. F. CHAN
DOUGLAS A. CIFU
LEWIS R. CLAYTON
JAY COHEN
KELLEY A. CORNISH
CHARLES E. DAVIDOW
DOUGLAS R. DAVIS
THOMAS V. DE LA BASTIDE III
ARIEL J. DECKELBAUM
JAMES M. DUBIN
LESLIE GORDON FAGEN
MARC FALCONE
PETER L. FELCHER
ROBERTO FINZI
PETER E. FISCH
ROBERT C. FLEDER
MARTIN FLUMENBAUM
ANDREW J. FOLEY
HARRIS B. FREIDUS
KENNETH A. GALLO
MICHAEL E. GERTZMAN
PAUL D. GINSBERG
ERIC S. GOLDSTEIN
ERIC GOODISON
CHARLES H. GOOGE, JR.
ANDREW G. GORDON
BRUCE A. GUTENPLAN
GAINES GWATHMEY, III
ALAN S. HALPERIN
CLAUDIA HAMMERMAN
GERARD E. HARPER
BRIAN S. HERMANN
ROBERT M. HIRSH
MICHELE HIRSHMAN
JOYCE S. HUANG
JEH CHARLES JOHNSON
MEREDITH J. KANE
ROBERTA A. KAPLAN
BRAD S. KARP
JOHN C. KENNEDY
ALAN W. KORNBERG

DANIEL J. KRAMER
DAVID K. LAKHDHIR
JOHN E. LANGE
DANIEL J. LEFFELL
XIAOYU GREG LIU
JEFFREY D. MARELL
JULIA TARVER MASON
MARCO V. MASOTTI
EDWIN S. MAYNARD
DAVID W. MAYO
TOBY S. MYERSON
JOHN E. NATHAN
CATHERINE NYARADY
ALEX YOUNG K. OH
JOHN J. O'NEIL
KELLEY D. PARKER
ROBERT P. PARKER*
MARC E. PERLMUTTER
MARK F. POMERANTZ
VALERIE E. RADWANER
CAREY R. RAMOS
CARL L. REISNER
WALTER RIEMAN
RICHARD A. ROSEN
ANDREW N. ROSENBERG
STEVEN B. ROSENFELD
PETER J. ROTHENBERG
RAPHAEL M. RUSSO
JEFFREY D. SAFERSTEIN
JEFFREY B. SAMUELS
DALE M. SARRO
TERRY E. SCHIMEK
KENNETH M. SCHNEIDER
ROBERT B. SCHUMER
JAMES H. SCHWAB
STEPHEN J. SHIMSHAK
DAVID R. SICULAR
MOSES SILVERMAN
STEVEN SIMKIN
JOSEPH J. SIMONS
MARILYN SOBEL
TARUN M. STEWART
ERIC ALAN STONE
AIDAN SYNNOTT
ROBYN F. TARNOFSKY
JUDITH R. THOYER
DANIEL J. TOAL
MARK A. UNDERBERG
LIZA M. VELAZQUEZ
MARIA T. VULLO
LAWRENCE G. WEE
THEODORE V. WELLS, JR.
STEVEN J. WILLIAMS
LAWRENCE I. WITDORCHIC
JORDAN E. YARETT
KAYE N. YOSHINO
ALFRED D. YOUNGWOOD
TONG YU
T. ROBERT ZOCHOWSKI, JR.

*NOT ADMITTED TO THE NEW YORK BAR

March 25, 2008

**By Fax**

Hon. Shira A. Scheindlin
U.S. District Court for the
Southern District of New York
United States Courthouse
500 Pearl Street, Room 1620
New York, New York 10007

*The Bank of New York* v. *Tyco International Group S.A., et al.*
07 CV 4659 (SAS)

Dear Judge Scheindlin:

In anticipation of this afternoon's conference, I am writing to alert the Court to one issue that I hope to raise which has not previously been the subject of correspondence.

The issue concerns defendants' unprecedented and unsupportable interference with the Trustee's contractual right to assert a lien on interests payments to fund this litigation.

The Indentures provide that the periodic interest payments due on the Notes are to be paid to the paying agent, which is the Trustee. Since 1998, when the obligation to pay periodic interest payments on the Notes began, such payments have always been made to the Trustee as paying agent, which is a common feature of indentures generally. Here, as is also typical, the Indentures expressly grants the Trustee a lien on these interest payments, as a result of which the Trustee may, among other things, create a reserve to cover the legal fees and disbursements that the Trustee incurs in the performance of its duties. Although the Indentures do not require a majority of Noteholders to authorize the Trustee to do so, I represent to the Court that 73% of the

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Shira A. Scheindlin     2

Noteholders have not only consented, but have directed the Trustee to establish such a reserve for the payment of its legal fees.

Defendants, however, are intentionally interfering with this contractual right. On November 9, 2007, exercising its right under the Indenture, the Trustee arranged for the withholding of a sum of money as a fee reserve from the interest payment due to be made the next week. On November 15, 2007, in an unprecedented move to frustrate the Trustee's exercise of that right (and hence to prevent the payment of the Trustee's legal fees), defendants made the interest payment *not* to the Trustee as paying agent but to The Depository Trust Company Clearing Corporation ("DTC"), an entity that is a clearing house for the distribution of the interest payments to the Noteholders.

The explicit purpose and sole effect of defendants' disregard of the Indenture and common practice are to prevent the Trustee from access to funds to pay its legal fees in this action. When the Trustee protested, DTC agreed to distribute defendants' interest payment to the Noteholders without deducting for the fee reserve only after defendants agreed to advance a like amount of additional money to DTC, which DTC now holds but seeks to pay to the Trustee. Whether DTC may do so – and whether defendants should be stopped from any continued interference – is the subject we will ask the Court to address at today's conference. Specifically, we submit that the Court should direct defendants to make future interest payments to the Trustee as paying agent and instruct defendants to do nothing to interfere with the Trustee's creation of a fee reserve, including, without limitation, interfering with DTC's transfer to the Trustee of the funds currently held by DTC.

In counterclaims filed on December 4, 2007, defendants Tyco International Ltd. and Tyco International Finance, S.A. assert, among other things, that the Trustee's efforts to collect a fee reserve out of interest payments constitute a breach of the Indentures. On January 4, 2008, we moved to dismiss this truly baseless claim.

It appears that defendants believe that they have some right to protect any non-consenting Noteholder from having its interest payment diluted by the fee reserve. This allegation, and defendants' payment to DTC rather than the Trustee, constitute litigation gamesmanship of the ugliest kind. Once an interest payment is due, owing and paid, no defendant has any stake in the money. The money belongs to the Noteholders subject to the terms of the Indentures. Once the payment is made, the Trustee, not any defendant, is responsible for the proper safeguarding and distribution of the money.

No explanation exists for defendants' action other than an attempt to impede the Trustee's prosecution of this action by cutting off the source of funding for which the Indentures provide. Other than to cut off the Trustee from access to fees to fund a litigation defendants dislike, no reason exists to justify a change in the way interest payments have always been made under these Indentures.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Shira A. Scheindlin                                                                                          3

    Defendants' action is especially troubling owing to the Trustee's role in these matters. A trustee agrees to serve in that capacity for a comparatively modest annual fee. In the event that the Trustee is called upon or required to enforce rights and duties under the Indentures, the Trustee cannot fairly bear that cost because it has no economic stake in the matter. Other than a claim for indemnity against the issuer, which the Trustee has asserted here, the Trustee has no right to a pool of money to finance the effort. Hence the provision allowing the Trustee to create a fee reserve to fund actions like this one.

    Although we have moved to dismiss defendants' meritless counterclaim on this fee reserve issue, the dismissal of defendants' claim would not prevent defendants from continuing to interfere with the payment of interest to the Trustee. Such is the purpose of this letter.

    The law is clear. In *Petrohawk Energy Corp. v. Law Debenture Trust Co.*, No. 06-cv-9404, 2007 WL 211096, at *4 (S.D.N.Y. Jan. 29, 2007), a copy of which I enclose for the Court's convenience, Judge Cote ruled that, "[o]nce the [interest payments] were deposited to be held in trust for the purpose of paying the Noteholders, [the indebted party] no longer had control over the funds," and therefore could not direct the disposition of those funds. Judge Cote ruled also that, because the indebted party had no continuing obligation to Noteholders once it made the interest payments, it had suffered no damages as a result of the trustee's creation of a fee reserve. Simply put, if a fee reserve is deducted from the interest payments, defendants do not have to pay additional interest to the Noteholders to make up the difference and, hence, they have no right to direct the interest payment to deprive the Trustee of its right to deduct its fees and costs from such interest payments.

    I appreciate the Court's attention to this matter.

            Respectfully,

            Gerard E. Harper

cc:  All Counsel (by mail)