UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILMINGTON TRUST COMPANY, as
Indenture Trustee,
   Plaintiff,

v.

TYCO INTERNATIONAL GROUP, S.A.,
TYCO INTERNATIONAL, LTD., and
TYCO INTERNATIONAL FINANCE
S.A.,
   Defendants.

<u>ECF CASE</u>

Docket No. 07 CV 4659 (SAS)

# REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF WILMINGTON TRUST COMPANY'S MOTION FOR DECLARATORY RELIEF AND/OR A MANDATORY INJUNCTION TO RESTORE THE STATUS QUO

Dechert LLP
30 Rockefeller Plaza
New York, New York 10112
(212) 698-3500

Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019
(212) 373-3000

*Attorneys for Plaintiff Wilmington Trust Company*

April 8, 2008

13151517

## TABLE OF CONTENTS

|   |   |   |   | Page |
|---|---|---|---|---|
| I. | PRELIMINARY STATEMENT | | | 1 |
| II. | STATEMENT OF FACTS | | | 2 |
| | A. | Background and Procedural History | | 2 |
| | B. | The Paying Agent Dispute | | 3 |
| III. | ARGUMENT | | | 4 |
| | A. | THE COURT SHOULD RESTORE THE STATUS QUO THAT EXISTED PRIOR TO THE LITIGATION | | 4 |
| | | 1. | Defendants' Actions Changed the Status Quo | 4 |
| | | 2. | Defendants Failed to Take the Appropriate Action to Remove the Trustee as Paying Agent | 6 |
| | | 3. | The Court Should Restore the Status Quo | 7 |
| | B. | IT IS THE DEFENDANTS – NOT THE TRUSTEE – THAT SEEK TO ALTER THE STATUS QUO, AND THE DEFENDANTS CANNOT MEET THE STANDARDS FOR INJUNCTIVE RELIEF TO ALTER THE STATUS QUO | | 9 |
| | C. | THE COURT MAY ISSUE AN ORDER INVALIDATING THE DEFENDANTS' REMOVAL OF THE TRUSTEE AS PAYING AGENT | | 11 |
| | D. | THE COURT SHOULD ORDER THAT THE TRUSTEE MAY COLLECT THE RESERVE FUND HELD BY DTC AND CREDIT THAT AMOUNT AGAINST THE DEFENDANTS' FUTURE OBLIGATION FOR THE TRUSTEE'S REASONABLE EXPENSES | | 13 |
| IV. | CONCLUSION | | | 13 |

## TABLE OF AUTHORITIES

**CASES**

*Carty v. Am. Airlines, Inc. (In re Air Crash at Bell Harbor, N.Y. on Nov. 12, 2001),*
    No. MDL 1448 (RWS), 2005 WL 1115099 (Apr. 21, 2005 S.D.N.Y.) ..............................12

*F.T.C. v. Weyerhaeuser Co.,*
    648 F.2d 739 (D.C. Cir. 1981) ........................................................................................8

*Jones v. S.E.C.,*
    298 U.S. 1 (1936) ............................................................................................................8

*Lieferant v. Bartell,*
    36 Misc. 2d 477, 232 N.Y.S.2d 1003 (Sup. Ct. N.Y. County 1962) ...............................8

*MedImmune, Inc. v. Genentech, Inc.,*
    __ U.S. __, 127 S.Ct. 764 (2007) ..................................................................................11

*Moore v. Consol. Edison Co. of N.Y.,*
    409 F.3d 506 (2d Cir. 2005) ............................................................................................7

*Petrohawk Energy Corp. v. Law Debenture Trust Co. of N.Y.,*
    No. 06 CIV. 9494 DLC, 2007 WL 211096 (S.D.N.Y. Jan. 29, 2007) ........................5, 10

*Porter v. Lee,*
    328 U.S. 246 (1946) ........................................................................................................7

*Savoie v. Merchants Bank,*
    84 F.3d 52 (2d Cir. 1996) ................................................................................................7

*Software AG, Inc. v. Consist Software Solutions, Inc.,*
    No. 08 CIV. 389CMFM, 2008 WL 563449 (S.D.N.Y. Feb. 21, 2008) ...........................7

*Turner v. Liverpool Cent. Sch.,*
    186 F. Supp. 2d 187 (N.D.N.Y. 2002) ..........................................................................12

*United States ex rel. Wolfish v. Levi,*
    406 F. Supp. 1243 (S.D.N.Y. 1976) ................................................................................8

**FEDERAL STATUTES**

Fed. R. Civ. P. 54(c) ...........................................................................................................11

28 U.S.C. § 2201(a) (West 2008) ....................................................................................11, 12

**OTHER AUTHORITIES**

12-57 *Moore's Federal Practice-Civil* § 57.61 ..............................................................12

10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 2664 (3d ed. 1998) ..........................................................................12

Plaintiff Wilmington Trust Company ("Wilmington") respectfully submits this reply memorandum of law in further support of its oral motion for interim relief, requiring defendants Tyco International, Ltd., Tyco International Group, S.A., and Tyco International Finance S.A. (collectively, the "Defendants") to continue the course of dealing established over the past 10 years by using the Trustee as the paying agent under the Indentures, and in opposition to the Defendants' April 1, 2008 Memorandum of Law in Opposition ("Defs. Opp. Mem.").

I.  **PRELIMINARY STATEMENT**

This motion seeks to remedy the Defendants' unlawful self-help measures through which they effectively granted themselves the relief requested in their counterclaims, prior to any ruling, and despite a pending motion to dismiss those counterclaims. The Defendants asserted counterclaims which sought a declaratory judgment and an injunction to prevent the Trustee from creating a litigation reserve at the direction of the noteholders whom it represents. Without waiting for a ruling, or even seeking a temporary restraining order pending a ruling, the Defendants boldly took action to prevent the creation of the reserve. Now, the Defendants argue that it is not their burden to demonstrate entitlement to the relief that they unilaterally granted themselves, but it is the Trustee's burden to demonstrate an ability to undo purported actions unlawfully taken by the Defendants prior to any ruling by the Court.

The Court should not stand for this bad faith litigation tactic, and it has the equitable power to effectively undo unlawful actions taken by the Defendants – either by ordering a mandatory injunction to restore the status quo, or through a decree invalidating the Defendants' purported unlawful acts – to restore the status quo that existed prior to this litigation.

13151517

## II. STATEMENT OF FACTS

### A. Background and Procedural History.

In 1998 and 2003, defendant Tyco International Group, S.A. ("TIGSA") entered into Indentures (the "1998 Indenture," and the "2003 Indenture," collectively, the "Indentures") pursuant to which it issued notes ("Notes") to investors backed by TIGSA's assets. Defendants' Answer and First Amended Counterclaims ("Ans.") ¶ 95. TIGSA issued Notes in the amount of approximately $4.6 billion pursuant to the 1998 Indenture and approximately $1 billion pursuant to the 2003 Indenture to the noteholders ("Noteholders"). Ans. ¶ 32. The Bank of New York ("BNY," and collectively with Wilmington, the "Trustee") was the initial Trustee under the Indentures. Ans. ¶ 95. BNY has been replaced by Wilmington under the Indentures. April 1, 2008 Marshall King Declaration ("King Decl.") ¶ 5.

In April 2007, the Defendants issued the Solicitation Documents, where they attempted to transfer the obligor of the Notes to a separate entity. Trustee's Amended Complaint ("Compl.") ¶ 36. Less than half of the Noteholders gave their approval, believing that such a transfer would violate the successor obligor clauses of the Indentures. Compl. ¶¶ 44-45. Despite a majority of Noteholders withholding approval, in May 2007, the Defendants delivered to the Trustee two proposed supplemental indentures reflecting the Defendants' proposed transformation. Ans. ¶¶ 97-98.

On June 4, 2007, the Trustee filed a declaratory judgment action, seeking a declaration as to whether the Indentures permitted the Trustee to sign proposed supplemental indentures in light of the disapproval of a majority of Noteholders. Rather than wait for the result of that action or even expedite that action, TIGSA engaged in the same kind of self-help the Defendants engage in here, and went ahead with its proposed transformation. Ans. ¶¶ 97-98.

### B. The Paying Agent Dispute.

The Indentures require that periodic interest payments due on the Notes are to be paid to the paying agent. 1998 Indenture § 3.4 ("The issuer will, on or prior to each due date of the principal of or interest on the [Notes] … deposit with the paying agent a sum sufficient to pay such principal or interest so becoming due."); 2003 Indenture § 4.03 ("The Company may appoint one or more paying agents …. If the Company fails to appoint or maintain another entity as paying agent, the Trustee shall act as such."). From the issuance of the first series of Notes in 1998 through November 2007, TIGSA had always used the Trustee as the paying agent. March 31, 2008 Declaration of Andrea Goodrich ("Goodrich Decl.") ¶ 2.

On November 9, 2007, at the direction of 73% of the Noteholders, the Trustee exercised its right under the Indentures to arrange for the withholding of a sum of money as a fee reserve for this litigation from the interest payment due to be made the following week. April 8, 2008 Declaration of Patrick J. Healy ("Healy Decl.") ¶ 5. On November 15, 2007, the Defendants seized the opportunity to cut off their litigation adversary's funding by purporting to replace the Trustee with themselves as the paying agent. Goodrich Decl. ¶ 4. The Defendants provided no notice of the purported removal of the Trustee or the appointment of the Defendants as paying agent. Healy Decl. ¶ 7. In circumventing the Trustee, the Defendants made interest payments directly to the Depository Trust Company Clearing Corporation (or its nominee, Cede & Co.) (together "DTC"). Goodrich Decl. ¶ 4. In the corporate trust industry, it is extraordinary for the issuer to act as its own paying agent. Healy Decl. ¶ 8.

The Defendants' litigation gamesmanship conflicts with the course of dealing between the Defendants and the Trustee as paying agent established over nine years. Further, the lack of notice of any change in the paying agent highlights the Defendants' bad faith and surreptitious nature of their unprecedented move.

In amended counterclaims filed on December 4, 2007, the Defendants asserted causes of action for breach of contract, breach of the duty of good faith and fair dealing, and a declaratory judgment (Ans. ¶¶ 118-30), seeking damages and "preliminary and permanent injunctive relief prohibiting [the Trustee] from collecting any costs or expenses out of interest payments due to Noteholders," and a declaratory judgment that the Trustee "has no right to collect any costs or expenses out of interest payments due to Noteholders." Ans. WHEREFORE cls. (4)-(5).

In continuing to purportedly act as their own paying agent without proper notice, and circumventing the Trustee in making interest payments on the Notes directly to DTC, the Defendants have, in effect, engaged in vigilante justice and granted themselves the very relief their amended counterclaims seek.

## III.  ARGUMENT

### A.  THE COURT SHOULD RESTORE THE STATUS QUO THAT EXISTED PRIOR TO THE LITIGATION

#### 1. Defendants' Actions Changed the Status Quo

In their opposition, the Defendants take the extraordinary position that the Trustee – and not Defendants – altered the status quo. Defs. Opp. Mem. at 6. That is far from the case. It cannot be disputed that from the issuance of the first series of Notes in 1998 through November 2007 – a period of nearly ten years – TIGSA had always used the Trustee as the paying agent. Goodrich Decl. ¶ 2. Indeed, the Court recognized at the March 18 conference that TIGSA had used the Trustee as the paying agent up until (and beyond) the start of this lawsuit. *See* Tr., 42:16-19, King Decl. Ex. N.

The Defendants argue that the change in status quo occurred when the Noteholders instructed the Trustee to create a fee reserve for litigation expenses. Defs. Opp.

Mem. at 6-7. However, the relationship between the Noteholders and the Trustee is irrelevant to the Defendants. The Defendants acknowledge that the Trustee holds the interest payments "in trust" for the benefit of the Noteholders. Defs. Opp. Mem. at 9 (citing 1998 Indenture §§ 5.05-5.06 & 2003 Indenture §§ 7.05 & 7.06(b)). As Judge Cote recently held in *Petrohawk*, once Petrohawk's interest payments "were deposited to be held in trust for the purpose of paying the Noteholders, Petrohawk no longer had control over the funds." *Petrohawk Energy Corp. v. Law Debenture Trust Co. of N.Y.*, No. 06 Civ. 9404 DLC, 2007 WL 211096, at *4 (S.D.N.Y. Jan. 29, 2007). Therefore, the Defendants cannot complain about any direction given by the Noteholders to the Trustee concerning the interest payments. The Defendants are not involved in distributing those payments to the Noteholders, and have no obligations or stake once they make the interest payments to the paying agent. The only relevant relationship for purposes of the Defendants' request for injunctive relief is the relationship between the Defendants and the Trustee.

After the start of this lawsuit, when the Trustee (with the consent of a majority of noteholders) indicated that it was going to take a litigation reserve from the interest payments to the noteholders, the Defendants sought injunctive relief to prevent the Trustee from doing so. Indeed, in their opposition, the Defendants fail to mention that they – not the Trustee – initially sought injunctive relief. Ans. ¶¶ 123, 127. The Defendants asserted causes of action against the Trustee alleging that the Trustee breached the Indentures by following the direction of the Noteholders in creating a fee reserve from interest payments. Ans. ¶¶ 119-27 & 130. The Defendants claim they are entitled to injunctive and declaratory relief to prevent this purported breach. Ans. ¶¶ 123, 127, 130.

In short, the Defendants apparently realized that they would not be able to show "irreparable harm" or a likelihood of success on the merits, and that their request to enjoin the

Trustee from following the direction of the Noteholders would be denied. So the Defendants turned their request for injunctive and declaratory relief on its head by acting as judge and jury in granting their own cause of action for breach of contract, and unilaterally taking actions to effectively grant themselves their requested injunction and declaratory relief, despite a pending motion to dismiss those claims.

While the Defendants chide the Trustee for failing to amend its complaint to prevent the Defendants from circumventing the Trustee as paying agent (Defs. Opp. Mem. at 5, 14-15), the Trustee recognized that the propriety of the Defendants' actions was already placed at issue by the Defendants' counterclaims, and the Defendants should have been barred from taking matters into their own hands and granting themselves relief prior to a ruling on their counterclaims.

2. Defendants Failed to Take the Appropriate Action to Remove the Trustee as Paying Agent

The Trustee notes that, in engaging in self-help, the Defendants did not take any appropriate action to remove the Trustee as paying agent. The Defendants do not provide any document removing the Trustee as paying agent nor appointing any of the Defendant entities as paying agent. The Defendants merely offer the testimony of the associate general counsel of a subsidiary of one of the Defendant entities that after receiving notice that the Noteholders directed the Trustee to create a fee reserve, the Defendants "arranged to make interest payments ... directly to ... DTC." Goodrich Decl. ¶ 4. Further, "[s]ince that time, Tyco has acted as its own 'paying agent.'" Goodrich Decl. ¶ 6. The lack of any documentation concerning when and how this purported change in the paying agent occurred underscores the impropriety of the Defendants' action and motive. The Trustee submits that no documentation exists because no valid justification exists for the Defendants' actions other than attempting to impede the

Trustee's prosecution of this action. The course of dealing between the parties and the industry standard support the Trustee acting as paying agent and following the direction of the Noteholders to create a fee reserve to support this litigation. Healy Decl. ¶ 8.

### 3. The Court Should Restore the Status Quo

Having now engaged in self-help to prevent the Trustee from creating a litigation reserve – the very issue for which they seek an injunction in their counterclaims – the Defendants have the temerity to argue that it is not their burden to demonstrate their entitlement to the injunctive relief they requested, but instead, it is the Trustee's burden to demonstrate entitlement to mandatory injunctive relief in order to restore the status quo to undo what the Defendants wrongfully did. This is gamesmanship of the ugliest kind and should not be countenanced by this Court. The Court should use its equitable powers to grant declaratory relief and return the parties to the status quo that prevailed at the time of commencement of the litigation.

Even if it were necessary for the Trustee to request a mandatory injunction in order for the Court to return the parties to the status quo, the Trustee is not required to satisfy the stringent standards for a mandatory injunction set forth in the Defendants' opposition brief. A mandatory injunction is an appropriate remedy to restore the parties to the status that existed prior to the Defendants' unlawful acts. "[W]here a defendant with notice in an injunction proceeding completes the acts sought to be enjoined the court may by mandatory injunction restore the status quo." *Porter v. Lee*, 328 U.S. 246, 251 (1946); *see also Moore v. Consol. Edison Co.*, 409 F.3d 506, 510 n.4 (2d Cir. 2005) (same); *Savoie v. Merchants Bank*, 84 F.3d 52, 58-59 (2d Cir. 1996) (same); *Software AG, Inc. v. Consist Software Solutions, Inc.*, No. 08 Civ. 389CMFM, 2008 WL 563449, at *21 (S.D.N.Y. Feb. 21, 2008) (same). Here, not only did the Defendants have notice of an injunction proceeding, but the Defendants *commenced* the

injunction proceeding. The Defendants also completed acts that effectively granted them the relief they sought.[1]

When a party engages in the kind of vigilante justice that the Defendants have engaged in here, and court intervention is necessary to preserve the status quo, courts relax the prohibitive injunctive relief standards. *Jones v. S.E.C.*, 298 U.S. 1, 15, 17-18 (1936). In *Jones*, the Supreme Court stated that "[t]he rule is well settled ... that where a suit is brought to enjoin certain acts or activities ... of which suit the defendant has notice, the hands of the defendant are effectually tied pending a hearing and determination, even though no restraining order or preliminary injunction be issued." *Id.* at 15-16. The Court ruled that "after a defendant has been notified of the pendency of a suit seeking an injunction against him, even though a temporary injunction be not granted, he acts at his peril and subject to the power of the court to restore the status, *wholly irrespective of the merits as they may be ultimately decided.*" *Id.* at 17-18 (emphasis added); *see also F.T.C. v. Weyerhaeuser Co.*, 648 F.2d 739, 741 (D.C. Cir. 1981) (same); *United States ex rel. Wolfish v. Levi*, 406 F. Supp. 1243, 1249 (S.D.N.Y. 1976) ("[S]uch unilateral alterations of the very subject matter in suit has been held on occasion to subject the party so acting to a court's equity powers 'wholly irrespective of the merits as they may be ultimately decided.'"); *Lieferant v. Bartell*, 36 Misc. 2d 477, 479, 232 N.Y.S.2d 1003, 1004 (Sup. Ct. N.Y. County 1962) ("The jurisdiction of the court to undo the merger attached as soon as the injunction was sought regardless of whether or not it was granted."). That is precisely the case here.

---

[1] Usually, the party against whom the injunction is sought completes the act that was sought to be enjoined, while here, the Defendants both sought the injunction *and* completed the act that granted themselves relief. This is a distinction without difference – the principle that a party acts at his own peril when a request for injunctive relief is pending is applicable to all parties in a suit.

Thus, in the event that the Court demands that the Trustee seek a mandatory injunction, the Trustee submits that the Court should relax the standards for a showing of irreparable harm just as courts relax the standards for showing a likelihood of success on the merits. The Trustee is unaware of any case where a court specifically ruled that a demonstration of irreparable harm was or was not necessary in order to be entitled to a mandatory injunction which restores the status quo. Therefore, even if the Trustee were unable to show irreparable harm, that should not be the basis for this Court to deny mandatory injunctive relief which remedies the unlawful injunction the Defendants effectively granted themselves.

As such, the Court should order mandatory injunctive relief, ordering that Wilmington be recognized as the paying agent under the Indentures.

### B. IT IS THE DEFENDANTS – NOT THE TRUSTEE – THAT SEEK TO ALTER THE STATUS QUO, AND THE DEFENDANTS CANNOT MEET THE STANDARDS FOR INJUNCTIVE RELIEF TO ALTER THE STATUS QUO

The balance of the Defendants' argument focuses on the supposed inability of the Trustee to demonstrate irreparable harm, a likelihood of success on the merits, and the balance of equities. Defs. Opp. Mem. at 7-16. However, the same argument is more appropriately directed at the Defendants.

The Defendants cannot demonstrate a likelihood of success on the merits for their claims of injunctive relief. Given the arguments presented in the pending motion to dismiss before the Court, it is apparent that the Trustee has a substantial likelihood of success on the merits. *See generally* Trustee's January 7, 2008 Memorandum of Law at 12-20 & Trustee's February 11, 2008 Reply Memorandum of Law at 5-10 (establishing that since the Defendants have no further liability once the interest payments are made in full to the paying agent, the Defendants have no cause of action for any breach stemming from the Noteholders' direction to

the Trustee as to what to do with those interest payments). Since the Court is already familiar with these issues, it is not necessary to repeat them here, other than reiterating that the Defendants' counterclaims are without merit.

The Defendants' complaint that they would not fulfill their "obligations under the Indentures" if the Trustee follows the Noteholders' direction and creates a fee reserve from the interest payments is simply foreclosed by Judge Cote's ruling in *Petrohawk*, stating that "[s]hould the Noteholders ever seek to recover those diverted funds, the action lies against the trustee, not Petrohawk," and "[t]he Noteholders' relief lies with [the Trustee] or potentially the [paying agent], but not with Petrohawk." *Petrohawk*, 2007 WL 211096, at *6.[2] It is disingenuous for the Defendants to purport to champion the rights of the non-consenting Noteholders (Defs. Opp. Mem. at 10-11, 15-16), whom the Defendants are attempting to force to accept the Asset-Stripping Transaction, and who are suing the Defendants. This is a transparently bad faith litigation tactic that should not be permitted by this Court.

As to irreparable harm, neither the Defendants nor the Trustee can show that either side will suffer irreparable harm, regardless of whether the Trustee is allowed to follow the direction of the Noteholders. For instance, the Defendants cannot show, under *Petrohawk*, how the Trustee following the direction of the Noteholders to create a fee reserve causes the Defendants any irreparable harm (much less any harm whatsoever). Since the Defendants can not demonstrate irreparable harm, they should not have been entitled to the injunction they

---

[2] The Defendants again argue that *Petrohawk* is inapposite because "[u]nder the express terms of the indenture in *Petrohawk*, the issuer's obligation to pay interest was satisfied by the payment to the trustee as paying agent," and that such an express term is missing from the Indentures here. Defs. Opp. Mem. at 11-12. However, the *Petrohawk* court ruled, based on principles of trust law, that the issuer had no control over the funds once they were paid to the paying agent (*Petrohawk*, 2007 WL 211096, at *6), and did not find it "necessary to reach [the] issue" of whether the indenture's "considered paid" language affected the outcome in the case. *Id.* at *5-6.

effectively granted themselves in the first instance. The Court should not be constrained in undoing the Defendants' unlawful self-help actions.

As to the balancing of equities, should the Court grant the mandatory injunction, the Defendants concede they will not suffer any harm – instead they focus on the purported harm of the non-consenting Noteholders. Defs. Opp. Mem. at 15-16. However, without such an order, the Defendants have essentially granted themselves the ultimate relief they seek in their counterclaims. As such, the balancing of the equities favors the Trustee.

### C. THE COURT MAY ISSUE AN ORDER INVALIDATING THE DEFENDANTS' REMOVAL OF THE TRUSTEE AS PAYING AGENT

The Court may also grant the requested relief by invalidating the Defendants' removal of the Trustee as paying agent, to the extent any such removal actually took place. The Defendants' counterclaims request the Court to fashion whatever relief it deems appropriate. Ans. WHEREFORE cl., ¶ 7 (requesting the Court to award "such other and further relief as the Court deems just and appropriate.") As such, the Court can issue a decree invalidating the Defendants' purported removal of the Trustee as paying agent. *See* Declaratory Judgment Act (at 28 U.S.C. § 2201(a)) (any court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."). This Court has wide latitude in fashioning whatever declaratory relief it deems appropriate. *MedImmune, Inc. v. Genentech, Inc.*, __ U.S. __, 127 S.Ct. 764, 776 (2007) (the Declaratory Judgment Act "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.").

In fact, even if no parties sought a decree invalidating the purported removal of the Trustee as paying agent, the Court would still have the authority to make such an order. Fed. R. Civ. P. 54(c) (other than a default, "[e]very other final judgment should grant the relief to

- 11 -

which each party is entitled, even if the party has not demanded that relief in its pleadings."). In *Carty v. Am. Airlines, Inc. (In re Air Crash at Bell Harbor, N.Y. on Nov. 12, 2001)*, No. MDL 1448 (RWS), 2005 WL 1115099, at *3 (S.D.N.Y. Apr. 21, 2005), Judge Sweet held that:

> Although neither party has expressly sought declaratory relief, this Court has authority pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), and Fed. R. Civ. P. 54 and 57 to provide such relief *sua sponte*. As stated by one commentator:
>
> When a demand for coercive relief, such as a judgment for damages or injunctive relief, is not joined with a demand for declaratory relief and the coercive relief is deemed ungrantable or inappropriate, the court may *sua sponte* grant a declaration of rights if that relief serves a useful purpose. 12-57 *Moore's Federal Practice-Civil* § 57.61; *see also* 10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 2664 (3d ed. 1998) (stating that pursuant to Rule 54(c) "a party may be awarded declaratory relief ... even though the party has not demanded it....").

*See also Turner v. Liverpool Cent. Sch.*, 186 F. Supp. 2d 187, 190 n.5 (N.D.N.Y. 2002) ("Even where declaratory relief is not requested the courts may grant such relief where the pleading and proof show such to be appropriate.").

The remedy of declaratory relief in the form of an order invalidating the Defendants' removal of the Trustee as paying agent is particularly appropriate here. Given the course of dealing between the parties, the Defendants' failure to provide notice of the removal of the Trustee as paying agent, or any valid justification for such purported removal, the Court should issue an order invalidating any purported removal of the Trustee as paying agent, in effect, ordering that the Defendants revert to the status quo that existed between the parties for over nine years.

### D. THE COURT SHOULD ORDER THAT THE TRUSTEE MAY COLLECT THE RESERVE FUND HELD BY DTC AND CREDIT THAT AMOUNT AGAINST THE DEFENDANTS' FUTURE OBLIGATION FOR THE TRUSTEE'S REASONABLE EXPENSES

In effectuating their scheme to prevent the Noteholders from funding the Trustee's administration of the litigation, the Defendants advanced an additional $575,173.85 to DTC. Goodrich Decl. ¶ 5. DTC demanded that the Defendants provide DTC with a reserve equaling the amount that the Noteholders directed the Trustee to set aside as a fee reserve, so that DTC would be protected against its potential liability for participating in the Defendants' scheme. Goodrich Decl. ¶ 5.

The Trustee directed DTC to wire this money to the Trustee, and the Defendants objected (King Decl. ¶ 15), forcing DTC to act as the Defendants' escrow agent – a purpose to which DTC is not suited or accustomed.

The Court may resolve this issue by authorizing DTC to release the $575,173.85 it is currently holding in escrow to the Trustee. The Court should further direct the Trustee to credit that amount against the Defendants' current and future obligations for the Trustee's reasonable expenses, including legal fees. 1998 Indenture § 5.6 & 2003 Indenture § 7.06(a).

## IV. CONCLUSION

For all the foregoing reasons and for the reasons set forth in the transcript of the March 25, 2008 hearing, this Court should grant the Trustee's request for interim relief and order the status quo to be maintained pending final ruling on the merits by ordering the Defendants to continue using the Trustee as the paying agent under the Indentures, both by mandatory injunction and by invalidating the Defendants' purported removal of the Trustee as paying agent, and also ordering that the Trustee may collect the reserve fees held by DTC and the Trustee will credit that amount against future obligations of the Defendants for legal fees.

Dated: April 8, 2008
New York, New York

                    Respectfully submitted,

| DECHERT LLP | PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP |
|---|---|
| By: /s/ Kevin O'Brien<br>Kevin J. O'Brien<br>Glenn E. Siegel<br>Alissa Rossman | By: /s/ Gerard E. Harper<br>Gerard E. Harper<br>Andrew G. Gordon<br>Andrew N. Rosenberg |
| kevin.obrien@dechert.com | gharper@paulweiss.com |
| 30 Rockefeller Plaza<br>New York City, New York 10112<br>(212) 698-3500 | 1285 Avenue of the Americas<br>New York City, New York 10019<br>(212) 373-3000 |
| *Co-Counsel for the Trustee* | *Co-Counsel for the Trustee* |

- 14 -