UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WILMINGTON TRUST COMPANY, as
Indenture Trustee,

                    Plaintiff,

          v.

TYCO INTERNATIONAL GROUP, S.A.,
TYCO INTERNATIONAL, LTD., and
TYCO INTERNATIONAL FINANCE
S.A.,

                    Defendants.

Docket No. 07 CV 4659 (SAS)


ECF Case


# MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF WILMINGTON TRUST COMPANY'S MOTION
### FOR CERTIFICATION FOR INTERLOCUTORY APPEAL


Dechert LLP
30 Rockefeller Plaza
New York, New York 10112
(212) 698-3500

Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019
(212) 373-3000

*Attorneys for Plaintiff Wilmington Trust Company*

# TABLE OF CONTENTS

**Page**

Argument ..................................................................................................................3

A.    This Court Should Certify Its Order for Interlocutory Appeal Pursuant to § 1292(b) ........3

    1.    The Court's Order Resolves Controlling Questions of Law That
        Should Be Heard on Appeal ....................................................................4

    2.    The Order Presents Questions as to Which There Is A
        Substantial Ground for Difference of Opinion ........................................5

    3.    Immediate Appeal of the Order Would Materially Advance the
        Ultimate Resolution of the Litigation ....................................................6

Conclusion ..............................................................................................................7

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Coopers & Lybrand* v. *Livesay,*
    437 U.S. 463 (1978) .................................................................................................3

*In re Cement Antitrust Litig.,*
    673 F.2d 1020 (9th Cir. 1981) ...............................................................................4

*In re The Duplan Corp.,*
    591 F.2d 139 (2d Cir. 1978)...................................................................................4

*In re Dynex Capital, Inc. Sec. Litig.,*
    No. 05 Civ. 1897, 2006 U.S. Dist. LEXIS 35386 (S.D.N.Y. Jun. 2, 2006)............6

*Karaha Bodas Co., L.L.C.* v. *Perusahaan Pertambangan Minyak Dan Gas Bumi Negara,*
    313 F.3d 70 (2d Cir. 2002)....................................................................................3

*Klinghoffer* v. *S.N.C. Achille Lauro,*
    921 F.2d 21 (2d Cir. 1990)................................................................................4, 5

*Koehler* v. *Bank of Bermuda Ltd.,*
    101 F.3d 863 (2d Cir. 1996)...................................................................................6

*Mullins* v. *City of New York,*
    No. 04 Civ. 2979, 2008 U.S. Dist. LEXIS 2206 (S.D.N.Y. Jan. 10, 2008).....4, 6, 7

*New York Racing Ass'n* v. *Perlmutter Publ., Inc.,*
    959 F. Supp. 578 (N.D.N.Y. 1997) .......................................................................4

*Sharon Steel Corp.* v. *Chase Manhattan Bank, N.A.,*
    691 F.2d 1039 (2d Cir. 1982)...................................................................... passim

*Transport Workers Union of America, Local 100, AFL-CIO* v. *New York City Transit Authority,*
    358 F. Supp. 2d 347 (S.D.N.Y. 2005)..........................................................4, 5, 6, 7

STATUTES

28 U.S.C. § 1292(b) .............................................................................................3, 5, 6, 7

.

This Court's ruling denying the Trustee's motion for summary judgment should be certified to the Second Circuit because the ruling involves a controlling question of law as to which substantial ground exists for a difference of opinion and an immediate appeal may materially advance the ultimate termination of the litigation.

This is an especially compelling case for certification owing to the importance of the issue for the capital markets. This Court's ruling implicates longstanding expectations concerning the requirements of successor obligor clauses and the duties of indenture trustees. Particularly during these times of economic uncertainty in the credit markets, the Second Circuit's interpretation of its own precedent – *Sharon Steel Corp.* v. *Chase Manhattan Bank, N.A.*, 691 F.2d 1039 (2d Cir. 1982) – would be significant not just for the parties in this case, but also for the capital markets more broadly.

In its March 3, 2008 order, this Court ruled that *Sharon Steel* did not apply to Tyco's asset-stripping transaction because the transaction was an internal restructuring rather than a liquidation. (Op. at 18-19.) As the Court is aware, the *Sharon Steel* court treated the successor obligor clause as boilerplate language common to virtually all indentures in order to allow that provision to be interpreted in a uniform and consistent fashion to promote the efficient functioning of the capital markets and to permit the capital markets to "adjust their affairs" according to that interpretation. *See Sharon Steel*, 691 F.2d at 1048. That interpretation – that an issuer may not assign its public debt to a transferee unless the issuer also transfers "all or substantially all" of its assets to that transferee – has thus formed the backbone of indenture trust law for the last 30 years and has provided parties to all indentures with settled expectations for how successor obligor clauses operate.

1

By limiting the reach of *Sharon Steel* to the complete liquidation of an entire enterprise without also applying to other corporate reorganizations that achieve essentially the same results, this Court has upset the settled expectation of the capital markets. We respectfully submit that no substantive distinction exists between a liquidation of a company and the break-up of a company through a restructuring. Splitting apart a company into three pieces as part of a multi-year plan to refocus a business and alter its conglomerate status is not a sale in the "regular course of business" that *Sharon Steel* envisioned. To liken the spin-offs to a decision to sell is uniquely inapt because the spin-offs involved a dividend gifted to Tyco's shareholders and not an arms-length transaction exchanging those properties for equivalent value. More fundamentally, the calculated and strategic break-up of an enterprise is simply not a disposition of assets in the ordinary course of business, whether accomplished through a liquidation or through a restructuring. This goes to the very heart of *Sharon Steel*.

We submit with great respect, too, that if *Sharon Steel* means anything it means that, under the boilerplate language of successor obligor clauses, an issuer may not assign its public debt to a transferee unless the issuer also transfers "all or substantially all" of its assets to that transferee. Here, Tyco plainly transferred public debt to a transferee without "all or substantially all" of its assets at the time of the planned transfer. This Court said that, "assuming that Tyco Electronics and Covidien did not represent substantially all of TIGSA's assets, the lenders have maintained the requisite degree of continuity of assets" and "the successor obligor clauses require nothing more." (Op. at 21-22.) But the issue on the summary judgment motion was not whether the spun-off entities comprised "all or substantially all" of the assets, but whether the public debt was transferred together with "all or substantially all" of the assets at the point in time when the transfer was contemplated.

2

The Court's holding also reduced the role of an indenture trustee to that of a ministerial actor bound to obey an issuer's command. The Court held that an indenture trustee must execute a supplemental indenture so long as it does not violate the Indenture or affect the trustee's own rights and duties. (Op. at 25.) That ruling has also engendered surprise and confusion about the nature and scope of the powers of trustees under bond indentures.

These rulings, we respectfully submit, warrant immediate appellate review. These issues play out on a massive scale, as they are relevant not just to this case, but also to the entire bondholder and trustee community. The long-term interests of everyone, and the markets for public debt, may be best served by a definitive ruling there, be it an affirmance of this Court's ruling or otherwise. Thus, the Court should grant immediate appellate review of its order under 28 U.S.C. § 1292(b).

**Argument**

**A.     This Court Should Certify Its Order for Interlocutory Appeal Pursuant to § 1292(b)**

Section 1292(b) authorizes appellate jurisdiction over an interlocutory order that "involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Certification is available to avoid unnecessary expense and delay by expediting the resolution of crucial legal issues. *See Coopers & Lybrand* v. *Livesay*, 437 U.S. 463, 475 n.25 (1978). A district court may issue a certification in the original order or in a later order. *See, e.g.*, *Karaha Bodas Co., L.L.C.* v. *Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 313 F.3d 70, 81 (2d Cir. 2002).

We respectfully submit that the March 3 Order is appropriate for certification. The Court's rulings present significant, controlling questions of law, the ultimate resolution of which would expedite the efficient termination of this litigation and avoid significant expense

3

and delay. Indeed, as we explain below, the issues presented in the instant case bear striking similarities to two cases in which this Court granted requests for interlocutory appeal: *Mullins* v. *City of New York*, No. 04 Civ. 2979, 2008 U.S. Dist. LEXIS 2206 (S.D.N.Y. Jan. 10, 2008), and *Transport Workers Union of America, Local 100, AFL-CIO* v. *New York City Transit Authority*, 358 F. Supp. 2d 347, 352 (S.D.N.Y. 2005).

    1.    The Court's Order Resolves Controlling
           <u>Questions of Law That Should Be Heard on Appeal</u>

       There can be no dispute that the order determines "controlling" questions of law – issues "that could materially affect the outcome of the case." *New York Racing Ass'n* v. *Perlmutter Publ., Inc.*, 959 F. Supp. 578, 583 (N.D.N.Y. 1997) (citing *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981)); *see also In re The Duplan Corp.*, 591 F.2d 139, 148 n.11 (2d Cir. 1978) ("a . . . determination that may importantly affect the conduct of an action" may be a "controlling question of law"). "Although the resolution of an issue need not necessarily terminate an action in order to be 'controlling,' it is clear that a question of law is 'controlling' if reversal of the district court's order would terminate the action." *Transport Workers Union*, 358 F. Supp. 2d at 352 (quoting *Klinghoffer* v. *S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990)).

       Here, there were no genuine disputes of material fact precluding summary judgment, leaving only questions of law for the Court. The Court's rulings are plainly controlling. As in *Transport Workers Union*, reversal of the district court's order would terminate the action: If the appellate court rules that *Sharon Steel* applies to the facts of this case, the case is over. As this Court recognized, "[i]f *Sharon Steel* applies here, the transfer [of Tyco Electronics and Covidien] is invalid because Tyco clearly does not hold substantially all of the assets originally held by TIGSA." (Op. at 17.) Thus, there will be no need for the Court to

go through with a potentially lengthy hearing on the valuation of Tyco's assets to determine if the transfer of Tyco Electronics and Covidien, and possibly other assets subsequently transferred by TIFSA, represent "all or substantially all" of the assets that TIGSA held prior to its liquidation.

Moreover, this case raises "a novel issue of great importance" to many bondholders. *Transport Workers Union*, 358 F. Supp. 2d at 353. Because successor obligor clauses are common to virtually all bond indentures, bondholders have a great interest in understanding what protections are provided in an indenture by virtue of the successor obligor clause. Indeed, *Sharon Steel* intended for its interpretation of the successor obligor clause to promote the efficient functioning of the capital markets. Those capital markets need to have sufficient clarity on the meaning of successor obligor clauses – clarity that has been shaken by this Court's ruling – in order to "adjust their affairs" to that meaning. *Sharon Steel*, 691 F.2d at 1048. Expeditious review by the Second Circuit would provide that needed clarity.

2.    The Order Presents Questions as to Which There Is
A Substantial Ground for Difference of Opinion

District courts find "substantial grounds for difference of opinion" when a legal issue would present a case of first impression raising a substantial ground for dispute in the court of appeals. *See Klinghoffer*, 921 F.2d at 25 (granting § 1292(b) review where the district judge found the issues "difficult and of first impression"). In certifying the decision in *Transport Workers Union* for interlocutory appeal, this Court noted that "[t]he outcome of this litigation is almost entirely determined by a single . . . Second Circuit case." *Transport Workers Union*, 358 F. Supp. 2d at 351. In that case, the Second Circuit had addressed a novel question of law, provided general guidelines for the district court to consider, and then remanded for further factual development. *See id.* This Court considered the *Transport Workers Union* case to raise

5

substantial grounds for difference of opinion because there were "substantial questions" as to how the "guidelines should be applied to a fully developed factual record." *Id.*

Similarly, here, the decision turns on a single Second Circuit case, *Sharon Steel*. In that case, as the Court is aware, the Second Circuit addressed a novel question of law – the interpretation of a successor obligor clause in an indenture. The Second Circuit interpreted that clause and applied it to the factual context in that case, a complete liquidation. Yet we submit that there remain "substantial questions" as to how *Sharon Steel*'s interpretation of successor obligor clauses should be applied to a factual situation that is not a complete liquidation. This Court held that *Sharon Steel* did not apply to a corporate reorganization that had essentially the same effect as a complete liquidation. But *Sharon Steel*'s insistence on a uniform interpretation for successor obligor clauses would seem to require that the Court's holding apply not merely to complete liquidations but also to consolidations, mergers, sales and conveyances, all of which are governed by successor obligor clauses including the ones in the 1998 and 2003 Indentures at issue here.

3.    Immediate Appeal of the Order Would Materially
      <u>Advance the Ultimate Resolution of the Litigation</u>

Finally, appellate review clearly will materially advance the ultimate resolution of this litigation and avoid significant expense and delay. *See Koehler* v. *Bank of Bermuda Ltd.*, 101 F.3d 863, 865-66 (2d Cir. 1996) (certification pursuant to § 1292(b) is appropriate "where an intermediate appeal may avoid protracted litigation"); *In re Dynex Capital, Inc. Sec. Litig.*, No. 05 Civ. 1897, 2006 U.S. Dist. LEXIS 35386, at *9 (S.D.N.Y. Jun. 2, 2006) (granting certification pursuant to § 1292(b) when "substantial resources may be expended in vain both by the parties and this Court if [the Court's] initial conclusion proves incorrect"). In *Mullins*, the Court noted that reversal by the Court of Appeals would end the litigation and obviate the need for further

discovery or trial on the remaining issues. *See Mullins*, 2008 U.S. Dist. LEXIS, at \*7-9. Similarly, in *Transport Workers Union*, the Court noted that reversal by the Court of Appeals would obviate the need for "protracted and expensive litigation" applying the Court's ruling to other job titles. *Transport Workers Union*, 358 F. Supp. 2d at 351, 353.

As noted above, if the appellate court rules that *Sharon Steel* applies to the facts of this case, the case is over. Thus, a reversal by the Court of Appeals would obviate the need for any discovery and further proceedings on valuation. The Court would not then need to engage in a potentially lengthy hearing to determine the quantitative and qualitative valuation of the relevant assets that TIFSA held before and after the challenged transaction. Rather than proceed down this uncertain path, the Court should certify its March 3 Order for immediate interlocutory appeal.

### Conclusion

For the foregoing reasons, plaintiff respectfully requests that the Court grant its motion for certification for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

7

Dated: April 10, 2008
New York, New York

Respectfully submitted,

DECHERT LLP

By: /s/ Kevin O'Brien
Kevin O'Brien
Glenn Siegel
Alissa Rossman

kevin.obrien@dechert.com

30 Rockefeller Plaza
New York City, New York 10112
(212) 698-3500

*Co-Counsel for the Trustee*

PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP

By: /s/ Gerard E. Harper
Gerard E. Harper
Andrew G. Gordon
Andrew N. Rosenberg

gharper@paulweiss.com

1285 Avenue of the Americas
New York City, New York 10019
(212) 373-3000

*Co-Counsel for the Trustee*